The Honorable John C. Coughenour

1
2
3
4
5
6
7

8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11
12
13
14
15
16

WOLFIRE GAMES, LLC, William Herbert and Daniel Escobar, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

VALVE CORPORATION,

Defendant.

Case No. 2:21-cv-00563-JCC

17
18
19
20
21
22
23
24

SEAN COLVIN, EVERETT STEPHENS, RYAN LALLY, SUSANN DAVIS, and HOPE MARCHIONDA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

VALVE CORPORATION,

Defendant.

Case No. 2:21-cv-00650-JCC


**DEFENDANT VALVE CORPORATION'S MOTION TO COMPEL ARBITRATION**

**NOTE ON MOTION CALENDAR:**
**September 17, 2021**

25
26

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) -

123294342

1    **I.**     **INTRODUCTION**

2           Seven of the eight Plaintiffs are individual users of Valve's online gaming platform—

3    Steam—who purchased video games through Steam, using Steam accounts (the "Individual

4    Plaintiffs").[1]  In purchasing games on Steam, the Individual Plaintiffs repeatedly agreed to

5    Valve's Steam Subscriber Agreement ("SSA") and its requirement to arbitrate "all disputes and

6    claims between us."  Yet, instead of commencing arbitration as agreed, they sued in court.

7    Plaintiff Wolfire Games, LLC—a video game publisher—also joined their lawsuit.  All eight

8    Plaintiffs asserted identical claims against Valve based on the same alleged facts.

9           In a decision that was affirmed by the Ninth Circuit last year, this Court in another

10   proposed class action against Valve evaluated the SSA's arbitration agreement and held that it

11   was valid and enforceable against Steam users who agreed to the SSA when making purchases

12   on Steam—just like the Individual Plaintiffs here—or creating Steam accounts.  *G.G. v. Valve*

13   *Corp.*, No. C16-1941-JCC, 2017 WL 1210220 (W.D. Wash. Apr. 3, 2017), *affirmed in part and*

14   *vacated in part*, 799 F. App'x 557, 558–59 (9th Cir. Apr. 3, 2020).

15          In compelling arbitration of claims Steam users brought against Valve (and claims their

16   parents brought on their behalf) in *G.G. v. Valve*, this Court explained that "[t]he FAA reflects a

17   'liberal federal policy favoring arbitration.'"  2017 WL 1210220, at *2 (quoting *AT&T Mobility*

18   *LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).  This Court went on to observe that "[t]he FAA

19   requires courts to compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the

20   dispute falls within the scope of that agreement."  *Id.* (*citing Chiron Corp. v. Ortho Diagnostic*

21   *Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  "If both of these two requirements are fulfilled,

22   then the FAA 'leaves no place for the exercise of discretion by a district court, but instead

23   mandates that district courts shall direct the parties to proceed to arbitration.'"  *Id.* (quoting

24   *Chiron Corp.*, 207 F.3d at 1130).  And "any doubts concerning the scope of arbitrable issues

25

26   _____
[1] The Individual Plaintiffs are Sean Colvin, Susann Davis, Daniel Escobar, William Herbert, Ryan Lally, Hope Marchionda and Everett Stephens.

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 1

123294342

1   should be resolved in favor of arbitration, whether the problem at hand is the construction of the

2   contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.*

3   (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985)).

4         Applying these principles, this Court compelled arbitration of all claims brought against

5   Valve by or on behalf of Steam users. *Id.* at *3, 5.  The Ninth Circuit affirmed.  799 F. App'x at

6   558–59.  Nothing has changed since the Ninth Circuit's April 2020 decision.

7         The same arbitration agreement, the same logic, and the same Ninth Circuit authority

8   lead to the same result here.  Accordingly, Valve moves the Court for an order (1) compelling

9   the Individual Plaintiffs to arbitrate all claims against Valve individually as they agreed in the

10  SSA, and (2) staying all claims against Valve pending completion of arbitration, including all

11  claims brought by Wolfire Games.

12  **II.     STATEMENT OF FACTS**

13        **A.     Valve and Steam.**

14        Valve develops and distributes video games and content for use on personal computers.

15  Declaration of Christopher Boyd ("Boyd Decl.") ¶ 2.  Valve also operates Steam.  Steam is an

16  online platform that includes (1) an online store, where users can purchase subscriptions and

17  licenses for video games that can be played online, digital content, and virtual items related to

18  games, and (2) features such as matchmaking, achievement tracking, game updates, and a library

19  to store games.  *Id.*

20        **B.     Every Steam User or Game Purchaser Agrees to the SSA.**

21             *1.     All Users Agree to the SSA When Creating a Steam Account.*

22        Steam is free to use, but all users are required to first create a Steam account.  Boyd Decl.

23  ¶ 3; *G.G.*, 2017 WL 1210220, at *1.  As part of the account-creation process, the user is

24  presented with the SSA, which is also publicly accessible at any time at

25  https://store.steampowered.com/subscriber_agreement/.  Boyd Decl. ¶ 3.  At all times since at

26  least January 1, 2017, the SSA was (and continues to be) easily accessible on the account-

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 2

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

123294342

creation screen either because the entire SSA was presented on the same account creation screen or through a hyperlink to the words "Steam Subscriber Agreement" in the sentence requiring acceptance.  *Id.* ¶ 5.  It is impossible to create a Steam account unless the user affirmatively accepts the SSA by clicking a checkbox or button to indicate agreement:



*Id.* ¶ 4, Ex. A; *see also G.G.*, 2017 WL 1210220, at *1 ("A Steam account cannot be created unless the subscriber accepts the SSA.").

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 3

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

123294342

2.      *All Purchasers Agree to the SSA Each Time They Purchase Games or Digital Content on Steam.*

Purchases may be made on Steam only through a Steam account, created as discussed above.  Boyd Decl. ¶ 6.  All persons who purchase video games must agree anew to the SSA to complete each purchase.  *Id.*, Ex. B; *see also G.G.*, 2017 WL 1210220, at *1.

Before Steam will allow a purchaser to complete any purchase of a video game—regardless of whether Valve or a third party developed and published the game—the purchaser must click a checkbox that states, "I agree to the terms of the Steam Subscriber Agreement." Boyd Decl. ¶ 6.  The SSA is hyperlinked to the words "Steam Subscriber Agreement" and is available with a single click.  *Id.*, Ex. B.  Purchasers cannot complete any purchase until they click the box to accept the SSA (*id.*) as shown here:



MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 4

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

123294342

Boyd Decl., Ex. B at 3.

### C. The SSA Requires Arbitration of All Disputes Between Steam Users and Valve.

The SSA grants Steam users a license to use Steam and the content and services available on Steam. Boyd Decl., Ex. E ("SSA") ¶¶ 1(B), 2(A); *G.G.*, 2017 WL 1210220, at *1. But the granting of that license is conditioned upon Steam users' agreement to arbitrate all disputes. The arbitration agreement is conspicuous, clear, and consumer-friendly, and every version of the SSA in effect during the proposed class period includes an arbitration provision and a notice of that provision in capital letters near the top of the first page. *See* Boyd Decl., Exs. C–E.

The SSA's introductory paragraph directs Steam users to the arbitration provision: "SECTION 11 CONTAINS A BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER. IT AFFECTS HOW DISPUTES ARE RESOLVED. PLEASE READ IT." SSA at 1.

Section 11 of the SSA is titled "DISPUTE RESOLUTION/BINDING ARBITRATION/CLASS ACTION WAIVER" and states in part, in capital letters:

> YOU AND VALVE AGREE TO RESOLVE ALL DISPUTES AND CLAIMS BETWEEN US IN INDIVIDUAL BINDING ARBITRATION. THAT INCLUDES, BUT IS NOT LIMITED TO, ANY CLAIMS ARISING OUT OF OR RELATING TO: (i) ANY ASPECT OF THE RELATIONSHIP BETWEEN US; (ii) THIS AGREEMENT; OR (iii) YOUR USE OF STEAM, YOUR ACCOUNT, HARDWARE OR THE CONTENT AND SERVICES. IT APPLIES REGARDLESS OF WHETHER SUCH CLAIMS ARE BASED IN CONTRACT, TORT, STATUTE, FRAUD, UNFAIR COMPETITION, MISREPRESENTATION OR ANY OTHER LEGAL THEORY, AND INCLUDES ALL CLAIMS BROUGHT ON BEHALF OF ANOTHER PARTY.

It also explains that the FAA applies to the arbitration provision, and provides that the "[t]he arbitration will be governed by the Consumer Arbitration Rules (or the Commercial Arbitration Rules, if the Consumer Arbitration rules are inapplicable) of the American

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 5

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

123294342

Arbitration Association ('AAA') as modified by this Agreement." SSA § 11. The SSA even hyperlinks to the AAA website for ease of access. *Id*.

Section 11 includes other consumer-friendly provisions and plain-language explanations of the parties' arbitration agreement, such as:

- Agreeing that arbitration may be conducted by phone, on documents, or in person in the county where the Steam subscriber lives or at another agreed location. *Id*.

- Agreeing that for claims seeking $10,000 or less, Valve will reimburse filing fees, pay a user's share of AAA's arbitration costs, and not seek its attorneys' fees or costs unless the arbitrator determines the claims are frivolous or filed for harassment. *Id*.

- Describing the differences between arbitration and court proceedings in plain English. *Id*.

- Explaining that Steam users and Valve are waiving their rights to a trial in court. *Id*. ("YOU UNDERSTAND THAT YOU AND VALVE ARE GIVING UP THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BEFORE A JUDGE OR JURY.").

It also includes a conspicuous class action waiver and agreement to arbitrate claims individually:

D. Individual Binding Arbitration Only

YOU AND VALVE AGREE NOT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION, WHISTLE BLOWER ACTION, OR CLASS, COLLECTIVE, OR REPRESENTATIVE ARBITRATION, EVEN IF AAA's RULES WOULD OTHERWISE ALLOW ONE. THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT OF THAT PARTY'S INDIVIDUAL CLAIM. You and Valve also

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 6

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1

2

> agree not to seek to combine any action or arbitration with any other
> action or arbitration without the consent of all parties to this
> Agreement and all other actions or arbitrations.

3

4

> This Agreement does not permit class, collective, or representative
> arbitration. A court has exclusive authority to rule on any assertion
> that it does.

5

*Id.*

6

### D. The Individual Plaintiffs Repeatedly Agreed to the SSA, Including Its Arbitration Agreement.

7

8

All of the Individual Plaintiffs allege that they purchased PC games through the Steam

9

store. Dkt. #34 ("Consol. Compl.") ¶¶ 25–31. Two of the Individual Plaintiffs (Susann Davis

10

and Hope Marchionda) claim to have purchased games on Steam for their minor children, who

11

have their own Steam accounts. *Id.* ¶¶ 27, 30. Regardless of whether Plaintiffs Davis and

12

Marchionda created their own Steam accounts, they were required to agree to the SSA each time

13

they made a purchase on Steam. Boyd Decl. ¶ 6; *see also G.G.*, 2017 WL 1210220, at *1. The

14

other Individual Plaintiffs do not claim to have purchased games on Steam for anyone other than

15

themselves (Consol. Compl. ¶¶ 25–26, 28–29, 31), indicating they have (i) created their own

16

Steam accounts and (ii) purchased games through Steam, as discussed above.

### E. Procedural Background and Plaintiffs' Allegations.

17

18

Ignoring their obligations in the SSA not only to arbitrate their disputes but to do so

19

individually, Plaintiffs purport to bring this suit as a class action on behalf of a class defined as

20

"[a]ll persons and entities who, directly or through an agent, purchased or sold a PC game on the

21

Steam Store in the United States and its territories from January 28, 2017 through the

22

present . . . ." Consol. Compl. ¶ 302. All eight Plaintiffs seek to represent that proposed class,

23

but all except Wolfire Games, the game developer and publisher, agreed not to bring or

24

participate in a class action. Plaintiffs alternatively suggest that the proposed class can be broken

25

into proposed subclasses of "game purchasers," "non-subscriber game purchasers," and "game

26

publishers." *Id.* ¶ 303.

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 7

123294342

Plaintiffs' Consolidated Complaint alleges eight causes of action against Valve, including three Sherman Act Section 2 claims alleging monopolization, three Sherman Act Section 2 claims alleging attempted monopolization, a Sherman Act Section 1 claim alleging unreasonable restraints of trade, and a claim alleging violation of the Washington Consumer Protection Act ("CPA").  In short, Plaintiffs claim that Valve's success in building a popular PC video game platform and its alleged efforts to give Steam users access to low prices make Valve a monopolist whose actions should be found illegal.

## III.   ARGUMENT

The arbitration agreement in the SSA was considered by this Court and the Ninth Circuit in *G.G. v. Valve* as recently as last year.  Both courts held it was enforceable, and both courts held it required arbitration of claims brought against Valve by Steam-user plaintiffs.  The Individual Plaintiffs here agreed to the SSA's arbitration agreement, just as the Steam-user plaintiffs did in *G.G. v. Valve*.  Their agreement to arbitrate is just as enforceable here as the Steam users' agreement was in *G.G. v. Valve*.  Accordingly, the Individual Plaintiffs should be compelled to individually arbitrate all claims, as agreed, and litigation of all claims should be stayed pending the outcome of arbitration, including those brought by Plaintiff Wolfire Games.

### A.   The SSA's Arbitration Agreement Is Valid and Enforceable, and Requires Arbitration of the Individual Plaintiffs' Claims.

#### 1.   *This Court and the Ninth Circuit Both Enforced the SSA's Arbitration Agreement to Require Arbitration of Claims Brought By Steam Users in Another Recent Putative Class Action.*

This Court is familiar with the SSA's arbitration agreement.  In *G.G. v. Valve*, a group of minors who were Steam users and their parents brought a proposed class action against Valve claiming it violated Washington gambling laws and the CPA through certain features and sales on Steam.  2017 WL 1210220, at *2.  In granting Valve's motion to compel arbitration, this Court held:

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

123294342

- "The SSA has a binding and conspicuous arbitration agreement in Section 11 . . . ." *Id.* at *1.

- The minor Steam users agreed to the SSA and its arbitration agreement when they created Steam accounts, then again every time they made purchases on Steam. *Id.* at *1–2.

- "Plaintiffs' procedural unconscionability argument is unpersuasive" because the arbitration agreement was conspicuous and each party had an opportunity to understand its terms. *Id.* at *3.

- That the arbitration agreement required the plaintiffs to pay the upfront costs of arbitration, subject to reimbursement, did not make it substantively unconscionable. *Id.*

- "The arbitration agreement with the minor Plaintiffs is valid." *Id.*

The parties then individually arbitrated their claims, as agreed, and Valve prevailed in the individual arbitrations. On Plaintiffs' appeal, the Ninth Circuit last year affirmed the order compelling arbitration of all claims brought by and on behalf of the Steam users who had agreed to the SSA, holding that "[t]he plaintiffs failed to show that the arbitration agreement itself is unenforceable based on waiver, equitable estoppel, or public-policy grounds." *G.G.*, 799 F. App'x at 558 (internal citations omitted).[2]

As the Ninth Circuit held, the SSA's arbitration agreement is valid and enforceable against Steam users and purchasers, all of whom have accepted it once or more. The Individual Plaintiffs fall within that group because they allege they "purchased PC Desktop Games through the Steam Store." Consol. Compl. ¶¶ 25–31. While two of the Individual Plaintiffs, Davis and Marchionda, assert without pleading any supporting facts that they have "not agreed to the Steam Subscriber Agreement," each admits that she "purchased PC Desktop Games through the Steam

---

[2] The Ninth Circuit vacated the portion of the Court's order compelling the parent plaintiffs to arbitrate their own individual claims because the parents—who neither had Steam accounts nor made any purchases on Steam—had not agreed to the SSA. *G.G.*, 799 F. App'x at 558.

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

Store for her minor child." *Id.* ¶¶ 27, 30.  The Boyd Declaration proves that each time one

purchases a game on Steam—no matter whom it is for—one must agree to the SSA.  Boyd Decl.

¶ 6, Ex. B.

Thus, all of the Individual Plaintiffs agreed to and are bound by the SSA, including its

arbitration agreement, and should be required to individually arbitrate their claims, as agreed.

> 2. <u>*Extensive Other Authority Supports Enforcement of the Individual Plaintiffs' Arbitration Agreement in the SSA.*</u>

Ninth Circuit authority and other decisions from this Court support the conclusion that

the SSA's arbitration agreement is just as enforceable against the Individual Plaintiffs here as it

was in *G.G.*, where this court recognized the strong federal policy favoring arbitration.  *See* 2017

WL 1210220, at *2.  The Ninth Circuit has embraced the strong public policy favoring

arbitration by repeatedly enforcing arbitration agreements.  *See, e.g.*, *Balan v. Tesla, Inc.*, 840 F.

App'x 303, 305 (9th Cir. Mar. 22, 2021); *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151,

1159–60, 1162 (9th Cir. 2013); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 934, 938 (9th

Cir. 2013); *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1160–61 (9th Cir. 2012).

This Court has repeatedly enforced arbitration agreements in consumer contracts.  *See,

e.g.*, *In re Wyze Data Incident Litig.*, No. C20-0282-JCC, 2020 WL 6202724, at *4 (W.D. Wash.

Oct. 22, 2020) (Coughenour, J.) (enforcing clickwrap arbitration agreement and compelling

arbitration in putative consumer class action asserting state common law and privacy claims);

*Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1174–75, 1178 (W.D. Wash. 2014)

(Coughenour, J.) (compelling arbitration in a putative consumer class action and recognizing

district court's limited discretion to disregard valid arbitration agreements under *AT&T Mobility*

and Ninth Circuit law); *Coppock v. Citigroup, Inc.*, No. C11-1984-JCC, 2013 WL 1192632, at

*1, 10 (W.D. Wash. Mar. 22, 2013) (Coughenour, J.) (enforcing arbitration agreement in

putative consumer class action asserting TCPA and FDCPA claims).

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 10

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

123294342

1    This policy in favor of arbitration applies equally to the antitrust claims alleged here. *See*

2 *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103, 1115 (C.D. Cal. 2002) (compelling

3 arbitration of Sherman Act claims and explaining, "[t]he general policy in favor of arbitration

4 applies equally to antitrust claims") (citations omitted); *accord Simula, Inc. v. Autoliv, Inc.*, 175

5 F.3d 716, 723 (9th Cir. 1999).  The U.S. Supreme Court's decision in *American Express Co. v.*

6 *Italian Colors Restaurant* leaves no doubt that an arbitration agreement with a class action

7 waiver is just as enforceable in an antitrust case as in any other.  570 U.S. 228, 233–34 (2013).

8    As this Court recognized in *G.G.*, "[t]he FAA requires courts to compel arbitration if (1)

9 a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement."

10 2017 WL 1210220, at *2 (*citing Chiron Corp.*, 207 F.3d at 1130).  The Ninth Circuit's holding

11 in *G.G.* that a valid arbitration agreement exists between Valve and Steam users satisfies the first

12 requirement for enforcement.  Whether this dispute falls within the scope of the SSA's

13 arbitration agreement (the second requirement) is a question of arbitrability delegated to the

14 arbitrator by the incorporation of the AAA Consumer and Commercial Arbitration Rules into the

15 SSA's arbitration agreement, as the Ninth Circuit also held in *G.G.*  *See* 799 F. App'x at 558

16 (Steam users "clearly and unmistakably agreed to arbitrate questions of arbitrability because the

17 arbitration agreement incorporates AAA rules"); *see also In re Wyze Data Incident Litig.*, 2020

18 WL 6202724, at *3 (incorporation of AAA rules delegates issues of arbitrability to arbitrator).

19    When, as here, an arbitration provision satisfies these conditions, the FAA "leaves no

20 place for the exercise of discretion by a district court, but instead mandates that district courts

21 *shall* direct the parties to proceed to arbitration . . . ."  *Dean Witter Reynolds, Inc. v. Byrd*, 470

22 U.S. 213, 218 (1985) (emphasis in original); *see also G.G.*, 2017 WL 1210220, at *2 (same).

23 Accordingly, the Court should compel individual arbitration of the Individual Plaintiffs' claims.

24

25

26

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 11

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

123294342

1

2

**B.**     <u>All Claims Should Be Stayed Pending Arbitration.</u>

    *1.*     <u>*The Individual Plaintiffs' Claims Should Be Stayed.*</u>

3

4

5

6

7

Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims in accordance with the terms of the agreement . . . ." *AT&T Mobility*, 563 U.S. at 344 (internal quotations omitted); *see also G.G.*, 2017 WL 1210220, at *5 (staying case pending arbitration); *Coppock*, 2013 WL 1192632, at *10 (same). Accordingly, the Court should stay the Individual Plaintiffs' claims against Valve pending arbitration.

8

    *2.*     <u>*Wolfire Games' Claims Should Be Stayed Pending Arbitration.*</u>

9

10

11

12

13

14

15

16

The Court should also stay all proceedings on Wolfire Games' claims while the Individual Plaintiffs arbitrate their identical claims. All Plaintiffs pled the same claims and damages based on the same facts, and all Plaintiffs seek to represent the same class. Allowing Wolfire Games to proceed with its claims in this Court while the Individual Plaintiffs arbitrate their claims in parallel proceedings would be wasteful and risk conflicting decisions. To eliminate those inefficiencies and risks, and to vindicate the strong policy favoring arbitration, the Court should stay Wolfire Games' claims pending completion of the arbitrations of the Individual Plaintiffs' claims.

17

18

19

20

21

22

This Court's inherent authority to manage its docket includes broad discretion to stay litigation of Wolfire Games' claims pending arbitration of the Individual Plaintiffs' claims. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court (or to the state trial court under applicable state procedural rules) as a matter of its discretion to control its docket.").

23

24

25

Courts routinely exercise their discretion to stay non-arbitrable claims that arise out of the same facts as claims in arbitration or are otherwise intertwined with such claims. As Judge Martinez explained:

26

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

> In accordance with the FAA policy of staying any litigation that contravenes enforceable arbitration agreements, "if a suit against a nonsignatory is based upon the same operative facts and is inherently inseparable from the claims against a signatory, the trial court has discretion to grant a stay if the suit would undermine the arbitration proceedings and thwart the federal policy in favor of arbitration."

*T-Mobile USA, Inc. v. Montijo*, No. C12-1317-RSM, 2012 WL 6194204, at *6 (W.D. Wash. Dec. 11, 2012) (staying claims of non-signatory to arbitration agreement pending outcome of arbitration because of overlapping issues and for considerations of judicial economy and efficiency) (citation omitted); *see also Sunlight Prod. Techs. v. MPOWERD*, No. CV-15-126-MWF, 2015 WL 12655479, at *6 (C.D. Cal. Sept. 17, 2015) (staying non-arbitrable claims where "the various claims asserted in both the arbitration and present litigation rely on the same set of core facts"); *Bates v. Morgan Stanley Smith Barney LLC*, No. CIV.S-09-3049-FCD/GGH, 2010 WL 3341819, at *6 (E.D. Cal. Aug. 25, 2010) (judicial economy supported stay of non-arbitrable claims where the outcome of the arbitration could "well impact those claims in this action" and "[a]llowing the two matters to proceed concurrently would unnecessarily risk inconsistent judgments and defeat efficiency"); *Bischoff*, 180 F. Supp. 2d at 1115 (staying non-arbitrable claims in putative antitrust class action given the "similarity of the issues of law and fact" and the "potential for inconsistent findings absent a stay").

This case is precisely the situation in which the Court should exercise its discretion to stay Wolfire Games' claims to promote the purposes of the FAA, further judicial economy, and avoid the risk of inconsistent judgments.  Specifically:

- Wolfire Games' claims rest on the same alleged facts and legal arguments as the claims of the seven Individual Plaintiffs.
- All eight Plaintiffs assert identical antitrust causes of action alleging that Valve violated Sherman Act Sections 1 and 2, as well as the CPA.  Consol. Compl. ¶¶ 317–92.

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 13

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

123294342

- All Plaintiffs allege that Valve uses the same techniques to restrain trade, control prices, and exclude competition.  *See, e.g.*, *id.* ¶¶ 312, 379, 382, 389; *see also id.* ¶ 307 (alleging "Plaintiffs and all members of the Class were damaged by the same wrongful conduct of Valve").

- All Plaintiffs seek to represent the same putative class of persons and entities who "purchased or sold a PC game on the Steam Store."  *Id.* ¶ 302.  Plaintiffs suggest for the first time in the Consolidated Complaint that, in the alternative, the single class they pled could be broken into three subclasses (*id.* ¶ 303).  But the claims in the Consolidated Complaint are all based on the same facts and liability theories, for all plaintiffs and putative class and subclass members.

- Plaintiffs allege they are similarly situated to each other and the putative class with respect to important questions of law and fact, such as the definition of the relevant market and Valve's power and conduct within that market.  *Id.* ¶ 312.

Arbitrators hearing the Individual Plaintiffs' claims will consider and decide *all* of the underlying questions of liability and damages that Plaintiffs allege are common to the putative class as a whole, including those questions allegedly common to Wolfire Games and the Individual Plaintiffs.  *See In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018) ("A stay of all claims is particularly warranted in the class-action context because the complaint admits that common questions of fact and law predominate."); *Morales v. Lexxiom, Inc.*, No. CV-09-6549-SVW-DTBx, 2010 WL 11507515, at *10–11 (C.D. Cal. Jan. 29, 2010) (staying non-arbitrable claims pending arbitration; "Plaintiffs are hoisted by their own petard: because they seek a class action, their First Amended Complaint contains nearly two pages explaining that common issues are predominant in this litigation").

Moreover, all Plaintiffs seek injunctive relief requiring Valve to make substantial changes to its business practices, heightening the risk that each proceeding will impose different standards of conduct on Valve—specifically, (i) the arbitration as to the Individual Plaintiffs

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 14

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

123294342

1    (because the SSA permits arbitrators to order injunctive relief only in favor of the party

2    arbitrating and only to the extent of that party's individual claim (SSA § 11)), and (ii) the court

3    proceeding as to "the class and the public," if Wolfire Games should succeed (Consol. Compl.,

4    Prayer for Relief ¶ (a)).  *See In re DirecTV Early Cancellation Fee Mktg. & Sales Practices

5    Litig.*, No. MDL 09-2093-AG-ANx, 2010 WL 11469932, at *2 (C.D. Cal. Nov. 15, 2010)

6    (noting heightened risk of inconsistent determinations if injunctive relief claims proceeded

7    pending arbitration); *see also* Consol. Compl. ¶ 313 (alleging that "the prosecution of separate

8    actions by individual Class Members would create a risk of inconsistent or varying adjudications,

9    establishing incompatible standards of conduct for Defendant").

10            Importantly, Valve would be substantially prejudiced by going forward simultaneously in

11   arbitrations and in court, but Wolfire Games would be prejudiced, if at all, to a far lesser degree

12   by a stay of its claims while identical claims are being arbitrated.  "When considering whether to

13   stay an action, the Court must weigh 'the possible damage which may result from the granting of

14   a stay, the hardship or inequity which a party may suffer in being required to go forward, and the

15   orderly course of justice measured in terms of the simplifying or complicating of issues, proof,

16   and questions of law which could be expected to result from a stay.'"  *Babare v. Sigue Corp.*,

17   No. C20-0894-JCC, 2020 WL 8617424, at *1 (W.D. Wash. Sept. 30, 2020) (quoting *CMAX, Inc.*

18   *v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  Wolfire Games does not allege any ongoing harm

19   and "a delay in collecting potential damages is not a particularly severe hardship." *Id.* at *2.  In

20   contrast, requiring Valve to go forward simultaneously in both arbitration and in court would

21   cause significant hardship by creating significant duplication of work—and thereby multiplying

22   costs and business distraction—as well as creating a significant risk of inconsistent results, as

23   discussed above.  A stay of all claims, including those asserted by Wolfire Games, is warranted

24   on these facts.  *See, e.g.*, *Naini v. King Co. Pub. Hosp. Dist. No. 2*, No. C19-0886-JCC, 2020 WL

25   468910, at *2–3 (W.D. Wash. Jan. 29, 2020) (applying *CMAX* factors and staying litigation

26   pending completion of hospital hearing process when factual issues likely to arise in litigation

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 15

"will also be discussed and debated" during hearing process, even though defendants were unlikely to suffer hardship without a stay and plaintiff claimed prejudice from delay in completing hearing process and recovering damages).

Judge Burgess stayed litigation of non-arbitrable claims under similar circumstances in *Ballard v. Corinthian Colleges, Inc.*, No. C06-5256-FDB, 2006 WL 2380668 (W.D. Wash. Aug. 16, 2006), where a group of students sued a for-profit college. Several students had signed enrollment agreements containing an arbitration clause, while others had not. *Id.* at *1. The court enforced the arbitration agreements against students who signed them (*id.*), and held the claims of the non-signatory students should be stayed pending those arbitrations because those claims depended on the same facts and were inherently inseparable from the arbitrable claims:

> [T]he claims asserted in the complaint are brought by Plaintiffs jointly and are grounded in identical facts and legal theories. Simultaneous prosecution of the claims in arbitration and this litigation would clearly be a waste of judicial resources. In addition, given the interdependence of the claims, simultaneous litigation of such claims in separate forums would likely lead to a duplication of effort, as well as the risk of inconsistent decisions and inefficiencies. Although Plaintiffs briefly assert that there is no appropriate reason to stay these proceedings, the Court is convinced otherwise. Further, the Court finds imposition of a stay will present no significant [pre]judice to Plaintiffs.

*Id.* at *2.

This Court reached a similar conclusion in *Boeing Co. v. Agricultural Insurance Co.*, No. C05-021C, 2005 WL 2276770 (W.D. Wash. Sept. 29, 2005), and stayed claims brought by non-signatories to an arbitration agreement. *Id.* at *5–7. As this Court stated, "the Court's primary concern is to avoid proceeding in a way that renders the arbitration between Boeing and Federal 'redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration.'" *Id.* at *5 (quoting *Harvey v. Joyce*, 199 F.3d 790, 796 (5th Cir. 2000)). Because the facts and issues overlapped between the arbitrable claims and those not subject to arbitration, and to avoid the result of "the Court first compelling arbitration of a dispute, and then adjudicating that same

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

1  dispute," this Court stayed the non-arbitrated claims to promote the "same interests" as

2  compelling arbitration.  *Id.* at *6.

3      The same reasoning and analysis apply equally here to claims brought by Wolfire Games.

4  Accordingly, the Court should exercise its discretion to stay the claims of Wolfire Games in

5  order to promote judicial efficiency, avoid the risk of inconsistent judgments, and avoid

6  rendering the arbitrations between Valve and the Individual Plaintiffs "redundant and

7  meaningless . . . [thus] thwarting the federal policy in favor of arbitration."  *Id*. at *5 (quoting

8  *Harvey*, 199 F.3d at 795).

9  **IV.**   **CONCLUSION**

10      For the foregoing reasons, Valve respectfully requests that the Court (1) compel the

11  Individual Plaintiffs to arbitrate their claims against Valve individually, and (2) stay all claims of

12  all Plaintiffs, including Plaintiff Wolfire Games, pending the outcome of arbitration of the

13  Individual Plaintiffs' claims.

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 17

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

123294342

DATED this 23rd day of June, 2021.

FOX ROTHSCHILD LLP

*s/ Gavin W. Skok*

Gavin W. Skok, WSBA #29766
Laura P. Hansen, WSBA #48669
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
Telephone:     206.624.3600
Facsimile:     206.389.1708
E-mail:        gskok@foxrothschild.com
               lhansen@foxrothschild.com

MONTGOMERY McCRACKEN WALKER & RHOADS LLP

*s/ Charles B. Casper*

Charles B. Casper, *admitted pro hac vice*
1735 Market Street, 21st Floor
Philadelphia, PA  19103
Telephone:     215.772.1500
Email:         ccasper@mmwr.com

FOX ROTHSCHILD LLP

*s/ Kristen W. Broz*

Kristen W. Broz, *admitted pro hac vice*
2020 K Street, N.W., Suite 500
Washington, DC  20006
Telephone:     202.431.3100
E-mail:        kbroz@foxrothschild.com

*Attorneys for Defendant*

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

123294342

1

## **CERTIFICATE OF SERVICE**

2

3        I certify that I am a secretary at the law firm of Fox Rothschild LLP in Seattle,

4  Washington.  I am a U.S. citizen over the age of eighteen years and not a party to the within

5  cause.  On the date shown below, I caused to be served a true and correct copy of the foregoing

   on counsel of record for all other parties to this action as indicated below:

6

7

| **Service List** | |
|---|---|
| Alicia Cobb<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>1109 First Avenue, Suite 210<br>Seattle, WA  98101<br>Ph. 206-905-7000<br>Fax 206-905-7100<br>Email: aliciacobb@quinnemanuel.com | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |
| A. Owen Glist<br>Ankur Kapoor<br>Jeffrey I. Shinder<br>CONSTANTINE CANNON LLP<br>335 Madison Ave., 9th Floor<br>New York, NY  10017<br>Ph. 212-350-2776<br>Fax 212-350-2701<br>Email: oglist@constantinecannon.com<br>akapoor@constantinecannon.com<br>jshinder@constantinecannon.com | |
| Adam Wolfson<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, CA  90017<br>Ph. 213-443-3000<br>Email: adamwolfson@quinnemanuel.com | |
| Charles Stevens<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>50 California St., 22nd Floor<br>San Francisco, CA  94111<br>Ph. 415-875-6600<br>Email: charliestevens@quinnemanuel.com | |

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 19

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

123294342

David Golden
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave., 22nd Floor
Washington, DC  20004
Ph. 202-204-4527
Email: dgolden@constantinecannon.com

David Du LeRay
Steig David Olson
Shane Seppinni
QUINN EMANUEL URQYHART & SULLIVAN
51 Madison Ave., 22nd Floor
New York, NY  10010
Ph. 212-849-7630
Email: davidleray@quinnemanuel.com
steigolson@quinnemanuel.com
shaneseppinni@quinnemanuel.com

Kenneth J. Rubin
Timothy B. McGranor
Kara M. Mundy
VORYS SATER SEYMOUR & PEASE
52 E. Gay St.
PO Box 1008
Columbus, OH  43215
Ph. 614-464-6400
Email: kjrubin@vorys.com
tbmcgranor@vorys.com
kmmundy@vorys.com

*Attorneys for Plaintiffs*

    I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

    EXECUTED this 23rd day of June, 2021, in Seattle, Washington.


_____
Courtney R. Brooks

MOTION TO COMPEL ARBITRATION
(2:21-CV-00563-JCC) - 20

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

123294342