1

HON. JOHN C. COUGHENOUR

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

10

11

Wolfire Games, LLC, Sean Colvin, Susann
Davis, Daniel Escobar, William Herbert, Ryan

12

Lally, Hope Marchionda, Everett Stephens,
individually and on behalf of all others similarly

13

situated,

14

Plaintiffs,

15

v.

16

Valve Corporation,

17

Defendant.

Case No. 2:21-cv-00563-JCC

**MOTION FOR APPOINTMENT OF**
**INTERIM CO-LEAD CLASS**
**COUNSEL**

NOTED FOR MOTION CALENDAR:
August 13, 2021

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.................................................................................................1

II.   STATEMENT OF FACTS ...................................................................................3

III.  LEGAL STANDARD ...........................................................................................6

IV.   ARGUMENT.........................................................................................................6

       A.    Counsel Have Done Substantial Work to Investigate and Challenge
           Valve's Conduct .........................................................................................6

       B.    Counsel Have Significant Experience with Complex Class Actions
           and Deep Knowledge of Antitrust Law and Problems Posed by
           Large Technology Firms .............................................................................7

       C.    Counsel Will Bring Extensive Human and Financial Resources to
           Litigate These Proposed Class Actions...................................................11

       D.    Proposed Co-Lead Counsel Are Well Suited to Represent Both
           Consumers and Game Publishers .............................................................11

V.    CONCLUSION....................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apple Inc. v. Pepper,*
   139 S. Ct. 1514 (2019) ...............................................................................12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*
   288 F.R.D. 26 (S.D.N.Y. 2012) ...................................................................7

*In re Mun. Derivatives Antitrust Litig.,*
   252 F.R.D. 184 (S.D.N.Y. 2008) .................................................................7

*McFadden v. Microsoft Corp.,*
   2020 WL 5642822 (W.D. Wash. Sept. 22, 2020) .......................................6

*Michelle v. Artic Zero, Inc.,*
   2013 WL 791145 (S.D. Cal. Mar. 1, 2013) .................................................7

*TruePosition, Inc. v. LM Ericsson,*
   (E.D. Pa.) ...................................................................................................10

**Rules and Regulations**

Fed. R. Civ. P. 23(g)(1)(A) ................................................................................6

Fed. R. Civ. P. 23(g)(1)(A)(i) ............................................................................6

Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii) ...................................................................7

Fed. R. Civ. P. 23(g)(1)(A)(iv) ........................................................................11

Fed. R. Civ. P. 23(g)(1)(B) ................................................................................6

Fed. R. Civ. P. 23(g)(3) ..................................................................................3, 6

**Other Authorities**

Bruce H. Kobayashi and Larry E. Ribstein, Class Action Lawyers As Lawmakers, 46
   Ariz. L. Rev. 733 (2004) ..............................................................................2

MOORE'S FEDERAL PRACTICE § 23.120(3)(a) (3d. Ed. 2007) .........................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Plaintiffs in the instant *Wolfire* action propose a leadership structure for this putative class action (voluntarily consolidated from two previously-filed class actions),[1] as well as for any other subsequently-filed class actions that are consolidated into this action.[2] The proposed structure consists of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), Constantine Cannon LLP ("Constantine Cannon"), and Vorys, Sater, Seymour and Pease LLP ("Vorys") as Interim Co-Lead Class Counsel (collectively, "Proposed Co-Lead Class Counsel").

Proposed Co-Lead Class Counsel are collectively responsible for developing this antitrust case against Valve Corporation ("Valve"), the dominant platform for personal-computer ("PC") video games, and have been litigating this matter collaboratively for months. Vorys filed the first antitrust action against Valve on behalf of consumers on January 28, 2021, in the Central District of California. Quinn Emanuel and Constantine Cannon filed the *Wolfire* action in this Court on April 27, 2021, on behalf of consumers and game developers/publishers.[3] Each of these actions followed long investigations by counsel, dating back years. Recognizing the extensive overlap in the actions, Proposed Co-Lead Class Counsel, on their own initiative, collaborated and organized the two cases into a single consolidated action in this Court, and filed a Consolidated Amended Class Action Complaint on June 11, 2021, on behalf of a proposed class of game publishers and game purchasers.

Proposed Co-Lead Class Counsel negotiated with Defendant regarding a schedule for upcoming briefing, are already in the process of responding to Valve's motion to compel arbitration (Dkt. 35), and have begun responding to Valve's motion to dismiss (Dkt. 37). In

---

[1]  Consolidated Amended Class Action Complaint, ECF No. 34, *Wolfire Games, LLC, et al. v. Valve Corp.*, Case No. 2:21-cv-00563-JCC (W.D. Wash.) (filed Jun. 11, 2021).

[2]  Plaintiffs are aware of one other putative class action case filed as related to this case, but that is not yet consolidated—*Dark Catt Studios Holdings, Inc. v. Valve Corp.*, Case No. 2:21-cv-00872-JCC (W.D. Wash.) (filed Jun. 28, 2021). Plaintiffs have served a copy of these papers on counsel that have appeared for Dark Catt in that action.

[3]  Complaint, ECF No. 1, *Wolfire Games, LLC, et al. v. Valve Corp.*, Case No. 2:21-cv-00563-JCC (W.D. Wash.) (filed April 27, 2021).

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101

1   short, having developed this case, these counsel are already prosecuting it collaboratively and

2   efficiently and should be appointed as Co-Lead Class Counsel.

3          After substantial progress was made in this litigation, on June 28, 2021, a new case was

4   filed on behalf of game developers in the *Dark Catt* action, largely mimicking the existing claims

5   in the *Wolfire* action.[4]  Proposed Co-Lead Class Counsel reached out to the attorneys

6   representing Dark Catt ("Dark Catt Counsel") and offered to add their plaintiff to this case and

7   involve them in the action, but they have insisted on nothing less than being added as Co-Lead

8   Class Counsel for a publisher-only class. Dark Catt Counsel's proposal is unworkable.  Adding

9   a fourth lead counsel firm would not benefit the class—it would only result in inefficiency.  And

10  doing so is certainly not warranted for the *Dark Catt* Counsel that did not originate or develop

11  the case, and seek instead to piggyback off the efforts of Proposed Co-Lead Class Counsel.

12         Unlike many other antitrust class actions, this action is not a follow-on action from

13  investigations pursued by the Federal Trade Commission, Department of Justice, or other

14  governmental authority.  Instead, drawing upon their experience in litigating antitrust claims

15  regarding two-sided platforms in the *Interchange Fee* and *ATM Fee* litigations, as well as against

16  multiple online platform providers (such as Ticketmaster and Apple), Proposed Co-Lead Class

17  Counsel built this case independently from scratch, investing hundreds of hours of attorney time

18  into vetting potential claims, interviewing class members and industry sources, and consulting

19  with experts.  As a matter of public policy, to appoint counsel other than Proposed Co-Lead

20  Class Counsel would allow lawyers filing copycat complaints to "free-ride on the considerable

21  investments made by the drafting attorney[s], thereby reducing the return on investments in

22  producing complaints" and "reduc[ing] the incentive to engage in such activity."[5]

23         Appointing the three firms who originated this case and have been prosecuting it

24

25  ───────────────

    [4]   Complaint, ECF No. 1, *Dark Catt Studios Holdings, Inc. v. Valve Corp.*, Case No. 2:21-cv-00872-JCC
26  (W.D. Wash.) (filed Jun. 28, 2021).

27  [5]   Bruce H. Kobayashi and Larry E. Ribstein, Class Action Lawyers As Lawmakers, 46 Ariz. L. Rev.
    733, 752-53 (2004).  To identify prospective lawsuits such as this one, Quinn Emanuel for its part has
    configured a number of "Horizon" practice groups to investigate potential claims in developing areas.
28  Olson Decl. ¶ 13.

MOTION TO APPOINT LEADERSHIP - 2                QUINN EMANUEL URQUHART & SULLIVAN LLP
Case No. 2:21-cv-00563-JCC                             1109 FIRST AVENUE, SUITE 210
                                                         SEATTLE, WASHINGTON 98101

1    efficiently and collaboratively for months—Quinn Emanuel, Constantine Cannon, and Vorys—is

2    warranted under Federal Rule of Civil Procedure 23(g)(3).  Proposed Co-Lead Counsel have

3    invested substantial time and resources to investigate, file, consolidate, and litigate the claims at

4    issue in the proposed class actions.  They have deep experience prosecuting complex class

5    actions and antitrust cases—particularly in antitrust cases involving two-sided platforms such as

6    Valve's Steam platform—and will bring that experience, and their firms' vast resources, to these

7    cases. Counsel will coordinate closely with one another to prosecute the class actions efficiently

8    and effectively, without duplication of effort, and will represent the diversity of our society and

9    the legal profession with their varied backgrounds and experiences.  Plaintiffs, therefore,

10   respectfully request that the Court adopt the leadership structure proposed herein.

## II.    STATEMENT OF FACTS

12          Proposed Co-Lead Counsel initially filed two separate cases—one on behalf of

13   consumers and one on behalf of both consumers and video-game publishers—who have been

14   harmed and who continue to be harmed by Valve's anticompetitive conduct.  As alleged in the

15   Consolidated Amended Class Action Complaint ("CAC"), ECF No. 34, Valve dominates the

16   market for personal computer game distribution, "and thwarts effective competition by engaging

17   in two separate but related anticompetitive acts. First, Valve ties together the use of its gaming

18   platform to its store, requiring game publishers to sell their games in Valve's store if they want

19   access to the 'Steam' Gaming Platform, which is Valve's PC Desktop Gaming Platform.

20   Second, Valve imposes a Platform Most-Favored-Nations Clause (the 'Valve PMFN') on game

21   publishers, which inhibits the ability of publishers to sell their games at lower prices to

22   consumers through rival storefronts.  Together, these anticompetitive acts protect Valve's

23   dominance in the relevant markets and ensure Valve can continue to collect its 30% tax on nearly

24   every sale of computer games in the United States." CAC ¶ 4.

25          Vorys filed the first action, *Colvin et al. v. Valve Corp.*, Case No. 2:21-cv-00801 (C.D.

26   Cal. filed Jan. 28, 2021), after 18 months of factual investigation into Valve's business practices

27   on its dominant Steam platform and their effects. Rubin Decl. ¶ 19. Vorys' investigation

28   included the retention of a well-credentialed economist specializing in these issues. Rubin Decl.

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101

¶ 20.  The *Colvin* action challenged Valve's imposition of its most-favored-nations clause ("MFN") that prohibited game publishers from selling their games at lower prices on the few platforms that compete with Valve's dominant Steam platform, and thereby artificially inflated game prices to supra-competitive levels.  *Colvin* Compl.  ¶¶ 3-4, Rubin Decl. ¶ 21.  *Colvin* sought certification of: (i) a class of purchasers seeking damages for supra-competitive prices of PC games; (ii) a class of purchasers seeking injunctive relief; (iii) a sub-class of parents seeking damages for their purchases of PC games for their minor children; and (iv) a sub-class of parents seeking injunctive relief.  *Id.*, *Colvin* Compl. ¶¶ 98-100.  Vorys filed an amended complaint on April 8.

Quinn Emanuel and Constantine Cannon filed the second action, and the first in this Court, on April 27, 2021.  *Wolfire Games, LLC, et al. v. Valve Corp.*, Case No. 2:21-cv-00563-JCC (W.D. Wash. filed Apr. 27, 2021) (ECF No. 1).  Both firms had been investigating this action independently of Vorys.  Constantine Cannon had been retained by Wolfire Games, a video-game developer and publisher, in March 2019.  Golden Decl. ¶ 3.  Thereafter, Constantine Cannon conducted its own extensive factual investigation and research into Valve's business practices.  Golden Decl. ¶ 4.  In addition to researching publicly available information, Constantine Cannon lawyers interviewed multiple game developers, publishers, and industry insiders.  Golden Decl. ¶ 4.  Quinn Emanuel had also been investigating Valve's business practices and their effects, including by interviewing industry participants.  Olson Decl. ¶ 14.

Valve's alleged conduct harms both game publishers and consumers in the same core ways.[6]  Quinn Emanuel and Constantine Cannon's complaint, therefore, includes both sets of

---

[6]  *See, e.g.*, CAC ¶ 268 ("Gamers overpay when they buy their games from Valve directly, and publishers overpay when Valve extracts its commission before giving the publisher the proceeds"); CAC ¶ 271 ("These profit levels far exceed what would occur in a competitive market. Valve maintains them through the anticompetitive means described above, coming at the expense of the publishers who create the games and the gamers who play them"); CAC ¶ 283 ("With competition, Valve's commissions would be lower, and there would be lower retail prices available to gamers.  At lower prices, gamers would purchase more games, increasing output"); CAC ¶ 284 ("If publishers made more revenue per sale (as they would be able to do if commissions were more competitive), then they could develop more games and, by virtue of that

plaintiffs, as game consumers and publishers share an interest in proving that Valve's conduct is unlawful and raises overall prices on its platform, and litigating together is far more efficient and effective than litigating apart.

Aware of Vorys' *Colvin* case, Quinn Emanuel and Constantine Cannon reached out and discussed how to consolidate the cases. After conferring with Quinn Emanuel and Constantine Cannon, Vorys agreed the Western District of Washington would be a suitable venue and executed a stipulation with Valve to move the *Colvin* case to the Western District of Washington.[7]   To address the common interests of both consumers and publishers, Quinn Emanuel, Constantine Cannon, and Vorys agreed to jointly file the CAC, which they did on June 11.  Before filing the CAC, the three firms coordinated with Valve's counsel to enter into a stipulation, so-ordered by the Court, that consolidated the *Colvin* and *Wolfire* actions and set a schedule for filing the CAC, Valve's response, and any briefing.  Consolidation Order, May 20, 2021 (ECF No. 29).  Valve filed its motion to compel arbitration on June 26, 2021, with a noting date of September 17, 2021.  Counsel for Plaintiffs are in the midst of briefing their opposition.

Two weeks after Plaintiffs filed their CAC—and roughly five months after Vorys filed the *Colvin* action—Dark Catt Studios Holdings ("DCS Holdings") filed its complaint. According to its complaint, DCS Holdings "is a multimedia production company and development studio with a focus on film, animation, and narrative media forms," *Dark Catt* Compl. ¶ 24, and one of its subsidiaries previously sold PC desktop games on Steam (but no more).  *Id.* ¶¶ 26-27.  The *Dark Catt* complaint makes essentially identical allegations as Plaintiffs' CAC, and largely relies on the same theory of competitive harm and facts.  *Compare* CAC ¶¶ 1-22, 164-168, 184-205, 228-265 *with Dark Catt* Compl. ¶¶ 1-22, 59-73.

In light of the competing *Dark Catt* complaint, Quinn Emanuel, Constantine Cannon, and Vorys conferred, and agreed to the leadership structure proposed herein, which fairly recognizes

expanded development, there would be greater quantity and variety of games in the marketplace").

[7]  Joint Stipulation to Change Venue, ECF No. 35, *Colvin et al. v. Valve Corp.*, Case No. 2:21-cv-00801 (C.D. Cal. filed May 7, 2021).

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101

all three firms' contributions in investigating Valve's conduct and its effects, filing their individual complaints and the CAC, and responding to Valve's motion to compel arbitration and stay, along with Valve's motion to dismiss. Plaintiffs also agree this leadership structure will facilitate the efficient and successful litigation of all proposed class actions. In fact, the three firms also serve as counsel for dozens of opt-out merchant plaintiffs in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No 05-MD-01720 (MKB) (VMS). In that case, the three firms have collaborated on extraordinarily complex civil litigation against Visa, Mastercard, and the major issuers of credit and debit cards on behalf of their joint clients, which include most of the major merchants across the United States. Olson Decl. ¶¶ 9, 22, 26; Rubin Decl. ¶¶ 7-8, 25; Shinder Decl. ¶¶ 9, 15.

### III.   LEGAL STANDARD

Rule 23(g)(3) allows the Court to designate interim class counsel "to act on behalf of a putative class before determining whether to certify a matter as a class action." *McFadden v. Microsoft Corp.*, 2020 WL 5642822, at *1 (W.D. Wash. Sept. 22, 2020). "Factors relevant to the appointment of counsel include: '(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.'" *Id.* (quoting Fed. R. Civ. P. 23(g)(1)(A)). In addition, "[t]he Court may also 'consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(g)(1)(B)).

### IV.   ARGUMENT

**A.   Counsel Have Done Substantial Work to Investigate and Challenge Valve's Conduct**

As detailed above, Vorys, Quinn Emanuel, and Constantine Cannon are responsible for originating and efficiently organizing the prosecution of this important antitrust case regarding Valve's dominant Steam platform on behalf of both consumers and video game publishers. Rule 23(g)(1)(A)(i)—"the work counsel has done in identifying or investigating potential claims in the action"—thus strongly favors their leadership appointments. These three firms have collectively

and collaboratively expended significant time integrating the facts learned and alleged in the prior separate complaints, developing the CAC into a cohesive document that lays out, in great detail, Valve's anticompetitive conduct, coordinating with Valve's counsel for the efficient progress of the litigation, and working on the response to Valve's motion to compel arbitration. In effect, the three firms have already been proceeding as co-lead counsel for the proposed class.

In evaluating this factor, courts consider whether firms have "already devoted substantial time and resources" in vetting potential claims. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 44 (S.D.N.Y. 2012) (appointing firm that "already devoted substantial time and resources . . . in identifying and investigating the claims set forth in the complaint").[8] This is a particularly important factor here, as the Proposed Co-Lead Class Counsel developed the case in the absence of a governmental investigation (and are already well into motion practice).

Dark Catt Counsel may argue that they, too, conducted an independent investigation of the claims at issue. Their complaint, however, contains virtually no new substantive allegations. Further, the *Dark Catt* case comes roughly five months after the Vorys Complaint, after the Proposed Co-Lead Counsel stipulated with Valve to have the Vorys case moved to Seattle, after Proposed Co-Lead Counsel consolidated their cases, after Proposed Co-Lead Counsel collaborated on the CAC, and after Proposed Co-Lead Counsel began working to respond to Valve's motion to compel arbitration.

**B.   Counsel Have Significant Experience with Complex Class Actions and Deep Knowledge of Antitrust Law and Problems Posed by Large Technology Firms**

Quinn Emanuel, Constantine Cannon, and Vorys have vast experience with and knowledge of antitrust cases generally, antitrust cases involving two-sided technology platforms, and antitrust class actions. Rule 23(g)(1)(A)(ii)-(iii)—"counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action" and "counsel's knowledge of the applicable law"—thus also strongly favors the proposed leadership structure.

---

[8]   *See also Michelle v. Artic Zero, Inc.*, 2013 WL 791145, at *3 (S.D. Cal. Mar. 1, 2013) (selecting counsel who "demonstrated they have conducted more research and investigation in developing the case"); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008); MOORE'S FEDERAL PRACTICE § 23.120(3)(a) (3d. Ed. 2007).

1    Quinn Emanuel is the world's largest law firm devoted solely to business litigation.

2    Quinn Emanuel has been named a "litigation powerhouse" by *The American Lawyer*, a "global

3    force in litigation" by *The Wall Street Journal*, a "Tier One" antitrust practice by *Benchmark*

4    *Litigation*, "Antitrust Litigation Department of the Year" by *The Recorder*, and "Class Action

5    Group of the Year" by *Law360*, and is regularly named one of "The Four Firms that GCs Fear

6    The Most" by BTI Consulting Group. Olson Decl. Ex Nos. 1-5. Quinn Emanuel has a long

7    string of victories on behalf of antitrust and class plaintiffs and defendants. *See, e.g.*, *In re Credit*

8    *Default Swaps Antitrust Litig.*, No. 13-md-02476 (S.D.N.Y.) (obtaining over $1.87 billion in

9    settlements); *ISDAfix Antitrust Litig.*, No. 14-cv-7126 (S.D.N.Y.) (obtaining more than $500

10   million in settlements); *see also* Olson Decl. ¶¶ 4-7 (listing cases). The mediator in the *Credit*

11   *Default Swaps* case, the Hon. Daniel Weinstein (Ret.), declared that in his "30-plus years of

12   mediating high-stakes disputes, this was one of the finest examples of efficient and effective

13   lawyering by plaintiffs' counsel that I have ever witnessed." Weinstein Decl., *In re: Credit*

14   *Default Swaps Antitrust Litig.*, 13-md-2476, Dkt No. 447, ¶ 4. In appointing Quinn Emanuel as

15   class counsel in that case, Judge Cote of the Southern District of New York observed Quinn

16   Emanuel is "well equipped with trial lawyers who can actually go into court and try a case. It has

17   run massive discovery cases by itself essentially. And it has extraordinary strengths with respect

18   to appellate litigation." Olson Decl. ¶ 6.

19   **Steig D. Olson**, a partner at Quinn Emanuel, was one of the principal attorneys in *In re*

20   *Credit Default Swaps Antitrust Litigation*, resulting in one of the largest antitrust class action

21   settlements in history (Olson Decl. ¶¶ 4, 6), and has been named a "Rising Star in the field of

22   competition law by *Law360*, and a "Leading Lawyer" by *Legal 500 USA*. Olson Decl. Ex. Nos.

23   6-8. **Adam Wolfson**, also a partner at Quinn Emanuel, has played a significant role in a number

24   of antitrust and class actions involving two-sided platforms, including, *inter alia*, *Mackmin et al.*

25   *v. Visa Inc.*, No. 11-cv-0181 (D.D.C.) and *Songkick v. Live Nation Entertainment Inc. et al.*,

26   2:15-cv-09814 (C.D. Cal.). Olson Decl. ¶ 19. Mr. Wolfson has also taken class actions to final

27   judgment, including recovering $5.4 billion for two classes of health insurers. *See* Olson Decl. ¶

28   20. **Alicia Cobb** is Of Counsel in and leads Quinn Emanuel's Seattle office, and represents

MOTION TO APPOINT LEADERSHIP - 8
Case No. 2:21-cv-00563-JCC

plaintiffs in many significant antitrust cases including *The Home Depot v. Visa Inc. et al.*, No. 16-cv-5507 (E.D.N.Y.), and *In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL No. 1869 (D.D.C.). Olson Decl. ¶ 22.

Although Constantine Cannon has represented both antitrust plaintiffs and defendants over the past three decades, its renown has been for bringing large antitrust cases against dominant technology platforms. The firm was lead counsel for a certified litigation class of over 5,000,000 merchants in *In re Visa Check/MasterMoney Antitrust Litigation*. *Visa Check* settled on the eve of trial for a $3 billion cash payment (the third largest cash component among antitrust settlements) and the complete rescission of the challenged conduct. 297 F. Supp. 2d 503, 506-07 (E.D.N.Y. 2003). That injunctive relief is estimated to have saved merchants and the American economy over $25 billion, making it the highest valued antitrust settlement in history. *Id.* at 512. As described by the Court in approving the settlement:

> [T]he excellence of the representation of plaintiffs, especially in light of the very high quality of opposing counsel, cannot seriously be debated. Constantine & Partners is a premiere plaintiffs' litigation firm, specializing in antitrust litigation particularly and complex commercial litigation generally. Its work is uniformly excellent, and thus it is no surprise that it has led the effort that produced the largest antitrust settlement ever.

*Id.* at 524. Constantine Cannon's representation of certified antitrust classes and individual antitrust plaintiffs has consistently demonstrated its willingness and ability to take cases to trial, leading to highly successful results for its clients. *See* Shinder Decl. ¶¶ 3-11.

**Jeffrey Shinder** is the Managing Partner of Constantine Cannon's New York City office. Mr. Shinder is the lead attorney representing over 60 merchant plaintiffs in their antitrust claims against Visa and Mastercard in the *Interchange Fee* litigation. He was also among the lead lawyers in *Visa Check*. Mr. Shinder has been named a "Super Lawyer" as well as "Best Lawyer" in antitrust in New York and in the United States since 2007. **Ankur Kapoor** is a partner at Constantine Cannon and focuses on antitrust litigation. Shinder Decl. ¶ 13. He was lead counsel for the defense of All Nippon Airways Co., Ltd. against an antitrust class action involving passenger airfares, *In re Transpacific Passenger Air Transportation Antitrust Litigation* (N.D.

Cal.), which settled shortly before trial was scheduled to commence. Shinder Decl. ¶ 13. In 2017, he was named to Global Competition Review's *Who's Who Legal: Competition – Future Leaders*. **David Golden** is a partner at Constantine Cannon, and was also one of the principal attorneys representing the plaintiff in *TruePosition, Inc. v. LM Ericsson* (E.D. Pa.), an antitrust suit alleging conspiracy and monopolization claims against telecommunication suppliers and standards-setting organizations. Shinder Decl. ¶ 14. **Owen Glist** is a partner at Constantine Cannon. He has substantial expertise in class-certification matters, and clerked for the Honorable Denny Chin, then of the Southern District of New York. Shinder Decl. ¶ 15.[9]

Finally, Vorys is one of the largest law firms in the country, representing thousands of clients who range from start-up businesses to Fortune 500 corporations, from non-profit organizations to governmental entities and industry trade groups, and to parties embroiled in sprawling, multi-state class action litigation. Rubin Ex. E. Particularly relevant to this case, Vorys is a leader in litigation, including both antitrust and class-action cases for both plaintiffs and defendants. In connection with its litigation work, Vorys has obtained hundreds of millions of dollars in settlements and trial verdicts for thousands of plaintiffs over the years. Rubin Decl. ¶ 7. **Kenneth J. Rubin** is a partner with the Vorys' Columbus, Ohio office. Rubin Decl. ¶ 7. He is a member of the Litigation Group, is the Chair of the Antitrust Subgroup, and has tried numerous cases, including as first chair at trial in federal district court in a case regarding commercial litigation and competition issues. Mr. Rubin was co-lead counsel for plaintiffs in a multi-plaintiff commercial fraud case against a national insurance company in which the jury returned a verdict in our clients' favor, and has represented litigants in several class-action cases, achieving substantial class-action settlements on behalf of class members in two cases. **Timothy B. McGranor** is a partner in Vorys' Columbus, Ohio office. Rubin Decl. ¶ 8. He is a member of the Litigation Group, and has significant experience in complex litigation matters. In addition to his trial work in the state and federal courts, Mr. McGranor has appeared before the courts of appeals in Ohio and the Sixth Circuit, and regularly participates in actions before the Ohio

---

[9]  Messrs. Glist, Golden, and Kapoor are also among the principal attorneys at Constantine Cannon in the *Interchange Fee* litigation.

Supreme Court. Rubin Decl. ¶ 8. **Kara M. Mundy** is a senior associate in Vorys' Columbus, Ohio office. Rubin Decl. ¶ 10. She is a member of the Litigation Group and the Antitrust Subgroup. Ms. Mundy regularly represents litigants in antitrust and other complex disputes.

**C.      Counsel Will Bring Extensive Human and Financial Resources to Litigate These Proposed Class Actions**

Quinn Emanuel, Vorys, and Constantine Cannon together have more than sufficient human and financial resources to litigate a complex matter like this. Quinn Emanuel has more than 800 lawyers across 25 offices on four continents, and an office in Seattle headed up by Ms. Cobb. Vorys has nearly 375 attorneys who are located in eight offices in Ohio, Washington, D.C., Texas, Pennsylvania and California, and has a litigation technology department that can works to provide support across firms and e-discovery vendors. Constantine Cannon has 76 lawyers across four offices, and has maintained a focus on antitrust litigation and class-action practice since the firm's inception. Constantine Cannon also has an in-house e-discovery team, that can efficiently reduce or obviate the need for third-party discovery vendors.

Together, Proposed Co-Lead Class Counsel will provide unparalleled resources to prosecute this case against Valve. Rule 23(g)(1)(A)(iv)—"the resources that counsel will commit to representing the class"—also strongly favors the proposed leadership appointments.

**D.      Proposed Co-Lead Counsel Are Well Suited to Represent Both Consumers and Game Publishers**

As the *Wolfire* Plaintiffs allege in the Consolidated Amended Complaint, Valve's allegedly anticompetitive practices directly harm both game publishers and game purchasers. CAC VI, ¶¶ 266-301. "By blocking competition, Valve's conduct has directly led to gamers and publishers overpaying, allowing Valve to extract a supracompetitive cut of every game sale that far exceeds the costs Valve bears. Gamers overpay when they buy their games from Valve directly, and publishers overpay when Valve extracts its commission before giving the publisher the proceeds." *Id*. ¶ 268.

Accordingly, the Consolidated Amended Complaint brings this case on behalf of a class composed of those who were directly overcharged by Valve as a result of its unlawful conduct, defined as "All persons and entities who, directly or through an agent, purchased or sold a PC

MOTION TO APPOINT LEADERSHIP - 11
Case No. 2:21-cv-00563-JCC

game on the Steam Store in the United States and its territories from January 28, 2017 through the present (the 'Class Period')."[10]   Because all members of the class share a strong common interest in proving that Valve's conduct has harmed competition overall, across Valve's platform, Proposed Co-Lead Counsel believe that the most efficient course is for this case to be pursued on behalf of a single class.   Nevertheless, we understand that Dark Catt Counsel intends to argue that the case should be splintered into different two cases, with Dark Catt representing game publishers only.

But splitting this case and dividing the class of direct purchasers is neither efficient nor in the best interest of class members, and is not warranted at this stage. Notably, in its complaint, Dark Catt alleges the exact same price restraints and the exact same inability for game publishers to constrain (and push down) Valve's commissions by offering lower game prices on other storefronts with lower commissions.   *Dark Catt* Compl. ¶¶ 130-135.   That is what *all* class members will need to prove, including game consumers.  Appointing two sets of counsel will therefore not achieve any efficiencies nor avoid any actual conflicts; it will only magnify the costs the class members must bear. Moreover, if any actual conflicts actually do arise down the line, Proposed Co-Lead Counsel have already accounted for such possibilities by noting in the CAC that, if and as appropriate, the class could be divided into sub-classes. CAC ¶ 303.

## V.   CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court appoint Constantine Cannon, Quinn Emanuel, and Vorys as Interim Co-Lead Class Counsel.

---

[10]   Like other two-sided platforms, Valve has direct purchasers on both sides of its platform. *See, e.g., Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1525 (2019) (explaining that both iPhone consumers *and* iPhone app developers are direct purchasers under *Illinois Brick*).

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101

1    DATED: July 27, 2021

2    Respectfully submitted,

3                                               By    /s/ Alicia Cobb
                                                    Alicia Cobb, WSBA # 48685
4                                                   QUINN EMANUEL URQUHART &
                                                    SULLIVAN, LLP
5                                                   1109 First Avenue, Suite 210
                                                    Seattle, WA 98101
6                                                   Telephone: (206) 905-7000
                                                    Fax: (206) 905-7100
7                                                   Email: aliciacobb@quinnemanuel.com

8
                                                    Steig D. Olson (*pro hac vice*)
9                                                   David D. LeRay (*pro hac vice*)
                                                    Shane Seppinni (*pro hac vice*)
10                                                  QUINN EMANUEL URQUHART &
                                                    SULLIVAN, LLP
11                                                  51 Madison Avenue, 22nd Floor
                                                    New York, NY 10010
12                                                  Telephone: (212) 849-7000
                                                    Fax: (212) 849-2100
13                                                  Email: steigolson@quinnemanuel.com

14
                                                    Adam B. Wolfson (*pro hac vice*)
15                                                  QUINN EMANUEL URQUHART &
                                                    SULLIVAN, LLP
16                                                  865 South Figueroa Street, 10th Floor
                                                    Los Angeles, CA 90017-2543
17                                                  Telephone: (213) 443-3000
                                                    Fax: (213) 443-3100
18                                                  Email: adamwolfson@quinnemanuel.com

19
                                                    Charles B. Stevens (*pro hac vice*)
20                                                  QUINN EMANUEL URQUHART &
                                                    SULLIVAN, LLP
21                                                  50 California Street, 22nd Floor
                                                    San Francisco, CA 94111
22                                                  Telephone: (415) 875-6600
                                                    Fax: (415) 875-6700
23                                                  Email: charliestevens@quinnemanuel.com

24
                                                    *Attorneys for Daniel Escobar, William Herbert,*
25                                                  *and the class.*

26

27

28

MOTION TO APPOINT LEADERSHIP - 13                          QUINN EMANUEL URQUHART & SULLIVAN LLP
Case No. 2:21-cv-00563-JCC                                        1109 FIRST AVENUE, SUITE 210
                                                                 SEATTLE, WASHINGTON 98101

David D. Golden (*pro hac vice*)
CONSTANTINE CANNON LLP
1001 Pennsylvania Avenue, NW, Suite 1300N
Washington, DC 20004
Telephone: (202) 204-3500
Fax: (202) 204-3501
Email: dgolden@constantinecannon.com

A. Owen Glist (*pro hac vice*)
Ankur Kapoor (*pro hac vice*)
Jeffrey I. Shinder (*pro hac vice*)
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
Telephone: (212) 350-2700
Fax: (212) 350-2701
Email: akapoor@constantinecannon.com

Thomas N. McCormick (*pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE
LLP
4675 MacArthur Court
Suite 700
Newport Beach, CA 92660
Telephone: (949) 526-7903
Fax: (949) 383-
Email: tnmccormick@vorys.com

Kenneth J. Rubin (*pro hac vice*)
Timothy B. McGranor (*pro hac vice*)
Kara M. Mundy (*pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE
LLP
52 East Gay Street
Columbus, OH 43216-1008
Telephone: (614) 464-6400
Fax: (614) 719-6350
Email: kjrubin@vorys.com
tbmcgranor@vorys.com
kmmundy@vorys.com

*Attorneys for Wolfire Games, LLC and the class.*

*Attorneys for Sean Colvin, Susann Davis, Daniel Ryan Lally, Hope Marchionda, Everett Stephens, and the class.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2021, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which will send notification of such filing to counsel of record. I also caused a true and correct copy of the foregoing to be served on counsel for *Dark Catt* via email and first class mail to the addresses below:

### Service List:

Stephanie L. Jensen
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500
Facsimile: (206) 883-2699
Email: sjensen@wsgr.com

Kenneth R. O'Rourke
Scott A. Sher
Allison B. Smith
WILSON SONSINI GOODRICH & ROSATI,
1700 K Street, NW, Suite 500
Washington, DC 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
Emails: korourke@wsgr.com; ssher@wsgr.com; allison.smith@wsgr.com

W. Joseph Bruckner
Joseph C. Bourne
Leona B. Ajavon
LOCKRIDGE FRINDAL NAUEN P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Emails: wjbruckner@locklaw.com; jcbourne@locklaw.com; lbajavon@locklaw.com

*Attorneys for,*
*Dark Catt Studios Holdings, Inc. and Dark Catt Studios Interactive LLC*

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.
EXECUTED on this 27th day of July, 2021.

/s/ Alicia Cobb_____

Alicia Cobb

CERTIFICATE OF SERVICE
Case No. 2:21-cv-00563-JCC

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101