THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WOLFIRE GAMES, LLC, SEAN COLVIN, SUSANN DAVIS, DANIEL ESCOBAR, WILLIAM HERBERT, RYAN LALLY, HOPE MARCHIONDA, EVERETT STEPHENS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VALVE CORPORATION,<br><br>Defendant. | CASE NO.: 2:21-cv-00563-JCC |
| DARK CATT STUDIOS HOLDINGS, INC., and DARK CATT STUDIOS INTERACTIVE LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VALVE CORPORATION,<br><br>Defendant. | CASE NO.: 2:21-cv-00872-JCC<br><br>**DARK CATT PLAINTIFFS' MOTION FOR APPOINTMENT OF CO-LEAD INTERIM COUNSEL FOR PROPOSED DEVELOPER CLASS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(g)(3)**<br><br>NOTE ON MOTION CALENDAR: Sept. 17, 2021<br><br>ORAL ARGUMENT REQUESTED |

Mot. for Appointment of Co-Lead Interim Class
Counsel for Proposed Developer Class
No. 2:21-cv-00872-JCC

Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. PROCEDURAL BACKGROUND ..................................................................................... 3

III. ARGUMENT ........................................................................................................................ 5

    A. Conflicting Interests Between Game Developers and Game Buyers Require Appointment of Separate Interim Class Counsel ...................................... 5

    B. LGN and Wilson Sonsini, If Appointed as Co-Lead Interim Class Counsel, Will Effectively Represent the Proposed Developer Class ................................... 10

IV. CONCLUSION .................................................................................................................. 12

MOT. FOR APPOINTMENT OF CO-LEAD INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC

-i-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

# TABLE OF AUTHORITIES

Page

## CASES

*Alberton v. Commonwealth Land Title Ins. Co.*,
    264 F.R.D. 203 (E.D. Pa. 2010) ................................................................................................6

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................................................5

*Apple Inc. v. Pepper*,
    139 S. Ct. 1514 (2019) ..............................................................................................................8

*Baker v. Arnold*, No. C 03-05642 JF,
    2004 WL 7340186 (N.D. Cal. May 17, 2004) ..........................................................................5

*Baker v. Saint-Gobain Performance Plastics Corp.*, No. 1:16-CV-0220,
    2016 WL 4028974 (N.D.N.Y. July 27, 2016) ........................................................................12

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*,
    No. CV 20-4660-KSM, 2021 WL 1217395 (E.D. Pa. Mar. 26, 2021) ..................................6, 8

*In re Cardinal Health, Inc. ERISA Litig.*,
    225 F.R.D. 552 (S.D. Ohio 2005) .............................................................................................5

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11-md-2262-NRB, 2011 WL 5007957 (S.D.N.Y. Oct. 18, 2011) ......................................3

*In re Photochromic Lens Antitrust Litig.*,
    No. 8:10-CV-00984-T-27EA, 2014 WL 1338605 (M.D. Fla. Apr. 3, 2014) ............................5

*Krim v. pcOrder.com, Inc.*,
    210 F.R.D. 581 (W.D. Tex. 2002) ..........................................................................................10

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ..................................................................................................................5

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    301 F.R.D. 284 (N.D. Ill. 2014) ..............................................................................................10

## RULES

Fed. R. Civ. P. 23 ..............................................................................................................................3

Fed. R. Civ. P. 23(a) .........................................................................................................................5

Fed. R. Civ. P. 23(g)(1)(A) .............................................................................................................10

Fed. R. Civ. P. 23(g)(1)(A)(i) .........................................................................................................10

Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii) .................................................................................................11

MOT. FOR APPOINTMENT OF CO-LEAD INTERIM CLASS
COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC

-ii-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

1. Fed. R. Civ. P. 23(g)(1)(A)(iv) .................................................................................... 12
2. Fed. R. Civ. P. 23(g)(1)(B) ......................................................................................... 10
3. Fed. R. Civ. P. 23(g)(2) ............................................................................................... 10
4. Fed. R. Civ. P. 23(g)(3) ............................................................................................ 5, 10

Mot. for Appointment of Co-Lead Interim Class Counsel for Proposed Developer Class
No. 2:21-cv-00872-JCC
-iii-
Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

To align counsel with their clients' and class members' interests and to ensure the efficient prosecution of this and the related case,[1] Plaintiffs Dark Catt Studios Holdings, Inc. and Dark Catt Studios Interactive LLC (collectively, "Dark Catt") respectfully ask the Court to appoint Dark Catt's lead counsel from Lockridge Grindal Nauen PLLP ("LGN") and Wilson Sonsini Goodrich & Rosati PC ("WSGR") as co-lead interim class counsel for the proposed Developer Class.

Dark Catt's counsel devoted hundreds of attorney hours, interviewed multiple industry participants, consulted extensively with an economist, and researched this case in depth for many months before filing. The two distinct types of plaintiffs who have sued Valve—developers who sold games on Valve's Steam website and consumers who bought games through Steam—share certain interests supporting coordinated proceedings, but their interests diverge in material ways that require separate representation from the start of the litigation.[2]

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Dark Catt sued Valve on behalf of personal computer ("PC") game developers ("Developers") who contracted with Valve to distribute a PC video game via Steam and sold such a game on or after April 27, 2017 ("Developer Class"). *See* Compl. ¶ 202, ECF No. 1, No. 2:21-cv-00872-JCC ("*Dark Catt Action*"). Dark Catt alleges Valve maintains and expands its monopoly in the market for distribution of PC games through a variety of anticompetitive practices, including pricing, marketing, and output restrictions imposed on Developers, and collects hundreds of millions of dollars in monopoly profits at Developers' expense.

The *Wolfire Action* also challenges Valve's monopolization conduct but is brought on behalf of a much broader class comprised of *both* game developers and game buyers, defined as those who "purchased or sold a PC game on the Steam Store," regardless of whether they had a Steam account. *See Wolfire Action* Consol. Am. Compl. ¶ 302, ECF No. 34 ("Wolfire Compl.").

---

[1] *See Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC ("*Wolfire Action*"). This memorandum of points and authorities is also being filed in the *Wolfire Action* in partial opposition to the Motion for Appointment of Interim Co-Lead Class Counsel. *Wolfire Action,* ECF No. 38.

[2] This motion does not seek, or take a position on, appointment of counsel for game buyers.

| | | |
|---|---|---|
| MOT. FOR APPOINTMENT OF CO-LEAD INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS<br>NO. 2:21-CV-00872-JCC | -1- | **WILSON SONSINI GOODRICH & ROSATI**<br>701 Fifth Avenue, Suite 5100<br>Seattle, WA 98104-7036<br>Tel: (206) 883-2500 |

This is a critical distinction. Wolfire Plaintiffs' expansive proposed class of buyers *and* sellers creates an unavoidable conflict of interest for their proposed interim class counsel. That Wolfire Plaintiffs' counsel are experienced lawyers and two of the firms were the first to add a developer-plaintiff to the litigation does not answer the controlling question: Are Developers better represented by interim lead counsel devoted solely to advancing the Developers' interests against Valve, or by interim lead counsel owing a dual and at times materially conflicting allegiance to game buyers and Developers? Respectfully, the answer is clear.

*First,* Developers are better off in their own case. To accommodate both Developers and game buyers, the Wolfire Plaintiffs allege a more complex case than necessary to recover for Developers alone. The *Wolfire* approach will be more challenging in discovery, to certify as a class, and to prove at trial than Dark Catt's proposed Developer-only class.[3]

*Second*, in balancing competing interests, unitary counsel for a combined plaintiff group will make suboptimal litigation choices for Developers than if Developers were alone. Already, Developer Wolfire Games is facing a motion to stay its case while Valve seeks to compel arbitration against its consumer co-plaintiffs. The issue arose for Wolfire Games only because of its coextensive claims and combined proposed class with game buyers. Regardless of the outcome, defending the motion adds expense and a risk of substantial delay for the Developers' case as long as it is joined with the game buyers' case. As the litigation progresses, strategic questions presenting different answers for Developers and consumers will multiply.

*Third*, while liability issues will overlap, Developers and game buyers diverge in the necessary evidence development and trial strategy to maximize their respective recoveries. To take one issue, game buyers will pursue a robust record and expert opinions to show that, in the but-for world, Developers would have paid lower commissions to Valve *and* passed on to game buyers all or most of those savings in the form of lower prices. Developers, on the other hand, will be focused on establishing the supracompetitive commissions they paid to Valve; they do

---

[3] Dark Catt's counsel has never suggested it would represent game buyers and would not do so to gain an interim leadership position. O'Rourke Decl. ¶ 11.

MOT. FOR APPOINTMENT OF CO-LEAD INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC

-2-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

not want a discovery record developed or expert opinions offered that they would have passed on most or all of their savings. Nor do Developers want their own lawyer arguing to a jury determining damages for the combined Developers/buyers class that Developers would have passed on most or all of their savings to buyers in the but-for world.

Settlement presents another conflict: the same lawyers cannot negotiate and allocate a settlement fund among their game buyer and Developer clients that maximizes both groups' recoveries. The conflict cannot be solved by assigning interim class counsel to different subclasses, and bringing in new lawyers later on will increase costs and inefficiencies.

No doubt for these reasons and more, Wolfire Plaintiffs' proposed approach breaks from standard practice. It was also recently rejected.[4] We are not aware of a case allowing interim lead counsel to represent buyers and sellers, yet there are ample (and recent) cases appointing separate interim lead counsel.[5] In fact, in every case cited by Wolfire Plaintiffs' counsel to show their experience with two-sided platform cases, they represent only one type of market participant.

LGN and WSGR do not have divided loyalties and are well qualified to represent the proposed Developer Class. The firms will coordinate discovery with game buyers' interim lead counsel where interests align, while ensuring the vigorous, skilled and conflict-free representation Rule 23 requires and Developers deserve.

## II.    PROCEDURAL BACKGROUND

The *Dark Catt Action* challenges similar general anticompetitive conduct by Valve as alleged in the consolidated *Wolfire Action*, yet the factual allegations and theories of harm differ.

---

[4] *See* Order Regarding Appointment of Counsel, *In re Google Dig. Advert. Antitrust Litig.*, No. 5:20-cv-3556-BLF, ECF No. 133 (N.D. Cal. Apr. 26, 2021) (rejecting bid to be interim lead class counsel for advertisers and publishers); *see also* Case Mgmt. Order No. 1, ECF No. 89 (N.D. Cal. Feb. 9, 2021) (ordering separate consolidated complaints for advertising plaintiffs and publisher plaintiffs).

[5] The issue of separate counsel is rarely even contested. In antitrust cases with "two distinct groups of plaintiffs" or market participants, courts routinely "divide the plaintiffs into two proposed classes and appoint interim lead counsel for each class" prior to certification. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262-NRB, 2011 WL 5007957, at *3 (S.D.N.Y. Oct. 18, 2011). The animating concern is that the "two classes may be differently positioned at various stages of the litigation, creating a potential conflict in their joint representation." *Id.* at *3 (noting the example of antitrust standing and that the mere "likelihood that the argument will be raised is sufficient to generate a conflict").

MOT. FOR APPOINTMENT OF CO-LEAD INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC

-3-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

***Dark Catt Action:*** Dark Catt is a game developer that sold its PC game on Valve's Steam gaming website. Dark Catt Compl. ¶ 1. Dark Catt had no choice but to sell through Steam, and pay supracompetitive fees, because of Valve's monopolization of the market for PC game distribution and exclusion of competition. *Id.* ¶¶ 1-2. Valve's anticompetitive business practices include (i) controlling Developers' pricing and marketing on other, third-party storefronts where Developers sell the same games available on Steam; (ii) using a system of authorization numbers known as "Steam keys" to enforce its restrictive pricing and marketing terms and to control sales on other storefronts; and (iii) using its control of the publicity and visibility of games on the Steam store to keep game Developers in check, including through the Steam review system. *Id.* ¶¶ 9-19.

The Dark Catt Complaint is neither a copycat of nor derived from the Wolfire Complaint. The two complaints necessarily have overlapping factual allegations about Valve's anticompetitive conduct and its dominant position in the PC gaming ecosystem. But Dark Catt counsel's investigation focused on Developers' interactions with Valve in the market for PC game distribution. In contrast, because it must also cover buyers, the Wolfire Complaint contorts to define two relevant markets, and then alternatively proposes a third market. Dark Catt alleges facts and many examples detailing Valve's requirement that all games and add-on content be available on Steam at the same time as any other storefront, review bombing by Steam users, and retaliation to keep Developers compliant with its restrictions, none of which are in the Wolfire Complaint. On the other hand, Dark Catt does not allege Valve has price veto power or focus on Valve's lack of investment in Steam and content moderation.

Dark Catt's Complaint is brought on behalf of a unified group of similarly positioned industry participants having a common commercial relationship with Valve. It alleges one relevant market, a unified theory of causation, straightforward monopolization claims, and a single damages analysis. None of this is true for the Wolfire Complaint. The Wolfire Complaint relies on the Congressional Digital Markets Report and a two-sided platform theory of harm. *See* Wolfire Compl. ¶¶ 79, 111, 182, 248, 281-82. The Dark Catt Complaint does not. The Wolfire Complaint has six Section 2 claims given its relevant markets and tying claims, and a Section 1 claim alleging

Mot. for Appointment of Co-Lead Interim Class Counsel for Proposed Developer Class
No. 2:21-cv-00872-JCC

-4-

Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

unlawful agreements with game publishers, who Wolfire Plaintiffs purport to represent despite this claim. The Dark Catt Complaint does not.

**Wolfire Action**: Wolfire Plaintiffs' motion to appoint class counsel summarizes the procedural history of the *Colvin* consumer case[6] filed in the Central District of California, the *Wolfire* consumer and developer case filed three months later in this District, and the consolidated amended complaint. Counsel's organizational efforts in the two matters are noted.

Soon after the consolidated Wolfire Complaint was filed, Valve moved to compel arbitration of the game buyers' claims under the terms of the Steam Subscriber Agreement. *Wolfire Action* ECF No. 35. Valve does not contend that Wolfire Games' claims are subject to arbitration but nevertheless seeks to stay the claims pending the individual arbitrations of the game buyers' claims. Valve filed its motion to dismiss the Wolfire Complaint on July 26, 2021. *Wolfire Action* ECF No. 37. Wolfire Plaintiffs have not yet responded to either motion.

### III.   ARGUMENT

#### A.   Conflicting Interests Between Game Developers and Game Buyers Require Appointment of Separate Interim Class Counsel

The Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). To provide the "structural protection" of class members required by Rule 23(a), "separate representation to eliminate conflicting interests of counsel" is needed whenever conflicting interests exist. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856-57 (1999); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 627-28 (1997) (discussing proposed settlement). Separate representation is required even early in a case when the conflicting interests may not be fully manifest; separate counsel should be designated when the potential for conflict first appears. *See Baker v. Arnold*, No. C 03-05642 JF, 2004 WL 7340186, at *3-4 (N.D. Cal. May 17, 2004); *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 558 (S.D. Ohio 2005) (denying motion to appoint lead counsel

---

[6] *See Colvin v. Valve Corp.*, No. 2:21-cv-00801 (C.D. Cal. Jan. 28, 2021) ("*Colvin Action*").

MOT. FOR APPOINTMENT OF CO-LEAD INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC

-5-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

"because of the possibility of an appearance of divided loyalties"); *In re Photochromic Lens Antitrust Litig.*, No. 8:10-cv-00984-T-27EA, 2014 WL 1338605, at *10-11 (M.D. Fla. Apr. 3, 2014) (finding the "*potential* for a serious and fundamental conflict" between class members precludes appointment of the same counsel).

Class members who face "incentives to maximize their damages" that would involve "contradictory arguments" for separate subclasses present a "fundamental conflict" that prohibits counsel from serving as lead counsel for all class members, even if divided into subclasses. *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*, No. CV 20-4660-KSM, 2021 WL 1217395, at *9-10 (E.D. Pa. Mar. 26, 2021) (finding a disqualifying conflict).

The case theories of the Developers and game buyers present just such a "fundamental conflict" and should proceed with independent interim class counsel to protect their interests and insulate the results achieved from any later claim of divided loyalties. The groups are differently situated in their relationship to Valve, operate in different markets, contracted with Valve under different agreements (or under no agreement), and suffered different antitrust injuries. They are not united by a "uniformity of legal theory" to permit counsel to adequately represent them all. *Alberton v. Commonwealth Land Title Ins. Co.*, 264 F.R.D. 203, 208-09 (E.D. Pa. 2010).

Wolfire Plaintiff counsel's individual investigations and original complaints illustrate this point. They highlight the separateness of consumers and Developers. Vorys filed the *Colvin* complaint on behalf of game purchasers only and continues to represent "Consumer Plaintiffs." Rubin Decl. ¶ 1, *Wolfire Action* ECF No. 41. The *Colvin* complaint also sued eight "game developer Defendants," each of which "sells PC games through the Steam platform." *Colvin Action* Compl. ¶¶ 19-27, ECF No. 1. Vorys and its clients now seek to represent a class that includes at least some of these same entities.

Constantine Cannon was hired by developer Wolfire Games. Golden Decl. ¶ 3, *Wolfire Action* ECF No. 39. The original Wolfire complaint listed the firm as counsel for "Plaintiffs," which includes game buyers and Wolfire, but now states it represents only Wolfire out of the named plaintiffs. Wolfire Compl. at 96. Quinn Emanuel began investigating Valve's actions only

| Mot. for Appointment of Co-Lead Interim Class Counsel for Proposed Developer Class No. 2:21-cv-00872-JCC | -6- | Wilson Sonsini Goodrich & Rosati 701 Fifth Avenue, Suite 5100 Seattle, WA 98104-7036 Tel: (206) 883-2500 |
|---|---|---|

*after* the *Colvin* complaint was filed, and subsequently joined Constantine Cannon to file the original Wolfire complaint. Olson Decl. ¶ 14, *Wolfire Action* ECF No. 40. Quinn Emanuel also entered the litigation on behalf of "Plaintiffs," both game buyers and Developer Wolfire, and now states it represents only game buyer named plaintiffs. Wolfire Compl. at 96.

The Wolfire Complaint continues to recognize the conflict of interest and asserts that the proposed class "can also be broken out" into separate subclasses for game buyers and Developers if needed. *Id.* ¶ 303. They propose three subclasses: (1) game buyers who do not use the Steam gaming platform; (2) all game buyers who purchased a PC game on Steam; and (3) game publishers (*i.e.,* Developers) who sold PC games on Steam. *Id.* In seeking appointment as interim class counsel, the three firms have proposed that all three represent the full class.

The game buyers ultimately seek to show that a large amount of the overcharges Developers paid to Valve would have flowed to them. They argue that, in a competitive world in which Developers paid lower fees to Valve, Developers would pass on savings to game buyers as lower game prices. *See* Wolfire Compl. ¶¶ 275 ("[P]ublishers will steer consumers to lower-cost options for purchases if they are able to do so, passing on a portion of cost savings to consumers"), 297 ("[P]ublishers would pass on savings from lower commissions to consumers to some degree."). To increase their damages, they want to prove that a high portion was passed on to them.

If their claims are conjoined, this argument will undermine Developers' own damages argument. Game Developers undoubtedly will testify they would have used the extra revenue to improve their businesses and their games (*e.g.,* hire programmers, upgrade equipment, reduce corporate debt) as well as lower prices. To increase their damages, game buyers, by contrast, will not want this evidence of other uses for Developers' savings but want to show Developers would have passed on all or most of their savings. The difference means game buyers and Developers will develop opposing evidence in percipient and expert discovery and present differing evidence at class certification and trial.

Each group is entitled to present its claims fully and recover fully, but they cannot do so together, led by the same counsel arguing to the same jury that game buyers should be awarded

Mot. for Appointment of Co-Lead Interim Class Counsel for Proposed Developer Class
No. 2:21-cv-00872-JCC

-7-

Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

most or all of the same total overcharges that the jury should also award to Developers. That is, Developers' claims are undermined if their lawyer is arguing for, in effect, double recovery. This divergence in best interests carries through nearly every stage of the litigation—discovery, class certification, experts, and trial—and precludes the same lead counsel from representing both groups. *See Halman Aldubi Provident & Pension Fund*, 2021 WL 1217395, at *9-10.

Wolfire Plaintiffs state that Developers and buyers are direct purchasers from Valve, citing *Apple Inc. v. Pepper,* 139 S. Ct. 1514 (2019), and so each can recover their full damages. This does not address the factual conflict or differing litigation approaches for the sellers and buyers, as seen in the *Apple* case. The case involved a proposed class of app buyers, and the district court appointed separate counsel for the later-filed, related app developers' class case. Order, ECF No. 34, *In re Apple iPhone Antitrust Litig.*, No. 11-cv-6714 (N.D. Cal. Apr. 9, 2012) (appointing interim lead counsel for purchasers); Order, ECF No. 65, *Cameron v. Apple, Inc.*, No. 4:19-cv-3074 (N.D. Cal. Oct. 10, 2019) (appointing interim lead counsel for developers).[7]

The same counsel cannot credibly argue both that Developers should recover the full amount of the overcharge they paid to Valve, and that the buyers should also recover most or all of this same amount because it was passed through to them as higher retail prices. Again, the *Apple* litigation shows this. In their motion for class certification, the app buyers explained that they were able to show class-wide antitrust injury through their expert's two-part analysis: "first estimating Apple's but-for commission structure and then estimating the effect of Apple's but-for commission on the prices for apps and [in-app purchases]." Mot. for Class Certification at 21, ECF No. 441, *In re Apple iPhone Antitrust Litig.* (N.D. Cal. June 1, 2021) (estimating but-for commission rates of 10% to 12% and then pass through to purchasers). The analysis involved estimating consumer demand and "using profit maximization conditions to estimate developer costs and but-for prices" for apps if the App Store commission was lower.

---

[7] Wolfire Plaintiffs characterize the Apple App Store as analogous to Steam and rely on the related cases throughout their Complaint. *E.g.*, Wolfire Compl. ¶¶ 181-82, 275, 278-83.

MOT. FOR APPOINTMENT OF CO-LEAD INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC

-8-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

The Apple app developers also modeled the but-for commission structure Apple would have charged to show that damages are capable of class-wide proof, but their expert used a different methodology and different evidence, and arrived at a different percentage. Developer Pls.' Mot. for Class Certification at 18-20, ECF No. 332, *Cameron v. Apple, Inc.* (N.D. Cal. June 1, 2021) (estimating but-for commission rates of 13% to 14.8%).

Courts in this Circuit have repeatedly recognized the conflict in similar situations. In a consolidated case involving (i) advertisers who purchased ads on third-party websites through Google's advertising platform and (ii) publishers who sold ads on their websites using Google's advertising platform, the court ***rejected*** an attempt by counsel to represent both the publishers and advertisers. *See* Order re Appointment of Counsel, ECF No. 133, *In re Google Dig. Advert. Antitrust Litig.*, No. 5:20-cv-3556-BLF (N.D. Cal. Apr. 26, 2021). The court was unpersuaded by the law firm's arguments, as here, that it filed the earliest complaint, did so on behalf of both publisher and advertiser plaintiffs who had aligned interests and overlapping claims, and that separate representation for the publishers and advertisers could later be appointed if needed. Appl. of Girard Sharp LLP for Appointment as Interim Lead Counsel, ECF No. 102, *In re Google Dig. Advert. Antitrust Litig.* (N.D. Cal. Feb. 25, 2021).

The *In re Google Play Antitrust Litigation* (MDL No. 2981) is another example. *See, e.g.*, Order Appointing Interim Class Counsel, ECF No. 79, *In re Google Play Developer Antitrust Litig.*, No. 3:20-cv-5792 (N.D. Cal. Dec. 11, 2020) (appointing co-lead counsel for developers); Order re Interim Class Counsel, ECF No. 128, *In re Google Play Consumer Antitrust Litig.*, No. 3:20-cv-5761 (N.D. Cal. Dec. 16, 2020) (appointing separate co-lead counsel for consumers).

In another example, advertiser plaintiffs' counsel successfully argued that the proposed class needed to be represented by separate interim class counsel from the proposed user class. Advertiser Pls.' Mot. for Appointment of Interim Co-lead Counsel & Exec. Committee at 3, ECF No. 58, *Klein v. Facebook, Inc.*, No. 20-cv-8570-LHK (N.D. Cal. Mar. 5, 2021) (noting the proposed classes had "different theories of liability, antitrust injury, and damages occurring in different relevant markets" and "advertisers' priorities and concerns in discovery will vary from

MOT. FOR APPOINTMENT OF CO-LEAD INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC
-9-
WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

those of the users").[8] The uncontested split between groups of plaintiffs is also readily seen in cases brought by different groups of indirect purchasers of an allegedly price-fixed product acting at different stages of the distribution chain such as resellers and end consumers.

Wolfire Plaintiffs' counsel cannot zealously and fairly represent both the Developers and game buyers throughout this litigation to achieve the best possible outcome and damages award for each class independent of the outcome for the other class.[9] Separate lead counsel are required.

### B. LGN and Wilson Sonsini, If Appointed as Co-Lead Interim Class Counsel, Will Effectively Represent the Proposed Developer Class

Interim lead class counsel must represent the interests of the class. Fed. R. Civ. P. 23(g)(2). Courts must consider: (1) the work counsel has done in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," and no single factor is determinative. Fed. R. Civ. P. 23(g)(1)(B). Courts appointing interim class counsel under Rule 23(g)(3) before a class is certified apply these same factors. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 288 (N.D. Ill. 2014).

LGN and WSGR have already taken significant steps to identify and investigate the factual and legal basis of Dark Catt and the proposed Developer Class's claims. *See* Fed. R. Civ. P. 23(g)(1)(A)(i); Moore's Federal Practice § 23.120(3)(a) (2007) (court may consider whether an

---

[8] *See also* Mot. to Appoint Shana S. Scarlett of Hagens Berman Sobol Shapiro LLP and Brian D. Clark of Lockridge Grindal Nauen PLLP Interim Co-lead Counsel at 1 n.1, ECF No. 59 (N.D. Cal. Mar. 5, 2021) (not seeking appointment as to advertisers "due to the potential conflict of interests between the two groups of plaintiffs"); Order Appointing Interim Class Counsel, ECF No. 73 (N.D. Cal. Mar. 18, 2021) (appointing separate counsel).

[9] Nor could Wolfire Plaintiffs' counsel simply abandon the game purchasers and thereby sidestep their conflict of interest. *See Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 590-91 (W.D. Tex. 2002) ("This proposal not only fails to erase all of this Court's concerns about potential conflicts, it clearly illustrates them and causes the Court to question the zeal with which counsel are looking after their clients' interests as opposed to their own. Counsel quickly dropped the class in the lower-dollar state action, but decided to stay involved in this and the New York Litigation, both potentially more lucrative.").

MOT. FOR APPOINTMENT OF CO-LEAD INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC
-10-
WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

attorney has undertaken "the process of drafting the complaint [which] requires investigatory and analytical effort"). LGN and WSGR are committed to devoting the time and resources needed to successfully litigate the Developers' claims. They are experienced antitrust litigation firms with extensive experience prosecuting and defending antitrust actions and other complex litigation, and they have deep knowledge of antitrust law. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii). If appointed, LGN and WSGR will execute all duties and responsibilities of lead counsel to effectively resolve this litigation while ensuring the matter is adjudicated in an efficient manner.

**LGN** is a 58-attorney, five-office firm specializing in antitrust and other federal civil litigation for over 40 years. Bruckner Decl. ¶ 4. ***Joseph Bruckner, Joseph Bourne, Leona Ajavon***, and the firm's other attorneys have prosecuted major cases and class actions involving monopolization, attempted monopolization, exclusionary conduct, anticompetitive MFN agreements, price-fixing, industry cartels, predatory pricing, price discrimination, and other antitrust cases in courts nationwide. *Id.* ¶ 10. In just the past decade, LGN and its colleagues have recovered billions of dollars for their clients and class members in national and international antitrust cases. *Id.* ¶ 11. ***Joseph Bruckner***, a senior partner at LGN, is personally committed to prosecuting this case and will devote himself to its leadership. *Id.* ¶ 3. Mr. Bruckner leads LGN's antitrust law practice and is a nationally recognized antitrust leader with 30 years of experience representing plaintiffs in antitrust class actions and other complex litigation nationwide. *Id.* ¶ 16. Additional experience and qualifications are noted in the Bruckner Declaration.[10]

**WSGR** has approximately 900 attorneys in 16 offices worldwide, and for more than six decades, the firm has represented technology pioneers. O'Rourke Decl. ¶ 12. The firm's antitrust team is consistently recognized among the leading antitrust practices worldwide, especially in high-tech matters. *Id.* ¶ 15. The firm provides a full range of services to electronic gaming clients via its multi-disciplinary electronic gaming practice. *Id.* ¶ 13. ***Kenneth (Ken) O'Rourke*** is personally committed to prosecuting this case and will devote himself to its leadership. *Id.* ¶ 3.

---

[10] More information about LGN, its practice, and its record of accomplishment can be found at www.locklaw.com.

NO. 2:21-cv-00872-JCC

-11-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

For 35 years, Mr. O'Rourke has represented clients in complex litigation including several substantial antitrust cases through pre-trial and trial. *Id.* ¶ 25. **Scott Sher,** a leader of the firm's antitrust practice, is nationally recognized as a top antitrust lawyer. *Id.* ¶¶ 36, 40. **Allison B. Smith** is an antitrust associate in the Washington, DC office who has represented clients in several high-profile antitrust litigations. *Id.* ¶¶ 45-47. **Stephanie Jensen**, Of Counsel in the Seattle office, is a litigator and adjunct professor at Seattle University School of Law. *Id.* ¶¶ 43-44. She also serves on the Western District's Pro Bono Panel. *Id.* ¶ 43. Stephanie will serve as a team leader and local counsel for LGN and others on the WSGR team.

LGN and WSGR stand ready to dedicate the resources necessary to represent and protect the interests of the proposed Developer Class through rigorous motion practice, discovery, class certification, and trial. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv).

LGN and WSGR will continue to work cooperatively with all counsel. As demonstrated through their long history of success in complex litigation, LGN and WSGR have an effective management style. They will work closely with counsel for the game buyers, and will coordinate discovery and all other aspects of the litigation wherever it makes good sense to do so. They also have a demonstrated record of working professionally with counsel on both sides of cases, as well as with third parties, courts and their staff, and all others involved, and they will continue to do so in this litigation. *See Baker v. Saint-Gobain Performance Plastics Corp.*, No. 1:16-CV-0220 (LEK/DJS), 2016 WL 4028974, at *4 (N.D.N.Y. July 27, 2016) (interim counsel's "ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court" are important considerations) (internal quotations omitted).

## IV.    CONCLUSION

For these reasons, Dark Catt respectfully requests that the Court deny the Wolfire Plaintiffs' motion for appointment as interim counsel as to Developers, grant the present motion, and appoint LGN's and WSGR's lead counsel as co-lead interim class counsel for the proposed Developer Class.

Dated:  August 13, 2021

Mot. for Appointment of Co-Lead Interim Class Counsel for Proposed Developer Class
No. 2:21-cv-00872-JCC

-12-

Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

|   |   |
|---|---|
| 1 | By: s/ Stephanie L. Jensen |
| 2 | Stephanie L. Jensen, WSBA #42042<br>**WILSON SONSINI GOODRICH & ROSATI, P.C.** |
| 3 | 701 Fifth Avenue, Suite 5100<br>Seattle, WA 98104-7036 |

By: s/ Stephanie L. Jensen
Stephanie L. Jensen, WSBA #42042
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:   (206) 883-2500
Facsimile:   (206) 883-2699
Email:       sjensen@wsgr.com

Kenneth R. O'Rourke (*pro hac vice*)
Scott A. Sher (*pro hac vice*)
Allison B. Smith (*pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1700 K Street, NW, Suite 500
Washington, DC 20006
Telephone:   (202) 973-8800
Facsimile:   (202) 973-8899
Email:       korourke@wsgr.com
             ssher@wsgr.com
             allison.smith@wsgr.com

W. Joseph Bruckner (*pro hac vice*)
Joseph C. Bourne (*pro hac vice*)
Leona B. Ajavon (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone:   (612) 339-6900
Facsimile:   (612) 339-0981
Email:       wjbruckner@locklaw.com
             jcbourne@locklaw.com
             lbajavon@locklaw.com

*Attorneys for Plaintiffs Dark Catt Studios Holdings, Inc. and Dark Catt Studios Interactive LLC, and Putative Class*

MOT. FOR APPOINTMENT OF CO-LEAD INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC

-13-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500