1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hon. John C. Coughenour

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

Wolfire Games, LLC, Sean Colvin, Susann Davis, Daniel Escobar, William Herbert, Ryan Lally, Hope Marchionda, Everett Stephens, individually and on behalf of all others similarly situated,

            Plaintiffs,

    v.

Valve Corporation,

            Defendant.

Case No. 2:21-cv-00563-JCC

**PLAINTIFFS' OPPOSITION TO DEFENDANT VALVE CORPORATION'S MOTION TO COMPEL ARBITRATION**

**NOTE ON MOTION CALENDAR:**
September 17, 2021

**ORAL ARGUMENT REQUESTED**

Opposition to Motion to Compel Arbitration
Case No. Case No. 2:21-CV-563

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

1

2

**TABLE OF CONTENTS**

3

**Page**

4

I.      PRELIMINARY STATEMENT ............................................................................... 1

5

II.     BACKGROUND ..................................................................................................... 3

6

        A.      Plaintiffs Bring Federal Antitrust And Washington State CPA Claims
                Challenging Valve's Anticompetitive Practices ......................................... 3

7

8

        B.      Relevant Steam Subscriber Agreement Provisions .................................... 4

9

        C.      Wolfire's Claims Are Not Subject To Any Arbitration Agreement And Do Not
                Depend On The Consumer Plaintiffs ......................................................... 5

10

III.    ARGUMENT ......................................................................................................... 5

11

        A.      Valve's Contractual Provision Barring Injunctive Relief Is Substantively
                Unconscionable .......................................................................................... 5

12

13

                1.      Legal Standard ................................................................................. 5

14

                        (a)      Federal law prohibits prospective waivers of
                                antitrust remedies .................................................................. 6

15

                        (b)      Under Washington law, an arbitration agreement
                                that prevents one party from invoking statutory
                                remedies is substantively unconscionable ............................ 6

16

17

                2.      The SSA's Prohibitions Against Private Attorney
                        General Actions and Full Injunctive Relief Are
                        Substantively Unconscionable ......................................................... 7

18

                        (a)      It is unconscionable for Valve to preclude Plaintiffs
                                from bringing their private attorney general
                                antitrust and CPA claims ...................................................... 8

19

20

                        (b)      It is unconscionable for Valve to limit Plaintiff's
                                injunctive remedies in arbitration for their antitrust
                                and CPA claims ..................................................................... 9

21

22

                        (c)      Valve's likely counterarguments are meritless ................... 13

23

                3.      The SSA's Unconscionability Renders This Court the
                        Only Forum For All of Plaintiffs' Disputes With Valve ................... 14

24

                        (a)      Section 11.E's "poison pill" requires litigation in
                                this Court ............................................................................. 15

25

                        (b)      Substantive unconscionability permeates the SSA's
                                arbitration provisions, rendering the entire
                                arbitration agreement unenforceable ................................... 16

26

27

        B.      The Non-Subscriber Class Members Are Not Subject To Arbitration, Per The
                Ninth Circuit's Holding in *G.G. v. Valve* ............................................... 17

28

C.     Staying Wolfire's Claims Would Be Inappropriate and Inefficient ........................ 19

      1.    Legal Standard ........................................................................ 19

      2.    A Stay Would Deprive Wolfire and Other Game Publishers of a Forum to Litigate Their Dispute, Even While Suffering Ongoing Harm ........................................................ 19

      3.    Staying Wolfire's Claims Will Not Promote Judicial Economy; It Will Simply Delay a Case That Will Unquestionably Proceed Here ............................................................ 20

      4.    Valve Identifies No Cognizable Prejudice From Litigating With Wolfire ................................................................ 22

      5.    Valve's Various Case Citations Do Not Support a Stay Under These Facts ............................................................ 22

IV.     CONCLUSION ................................................................................................ 24

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

ii

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

## TABLE OF AUTHORITIES

**Cases**

*Al-Safin v. Cir. City Stores, Inc.*, 394 F.3d 1254 (9th Cir. 2005) ....................................................... 7

*Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013) ............................................... 6

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ........................................................ 5, 13

*B.F. v. Amazon.com Inc.*, -- Fed. App'x --, 2021 WL 1593003 (9th Cir. April 23, 2021) .............. 18

*Babare v. Sigue Corp.*, 2020 WL 8617424 (W.D. Wash. Sept. 30, 2020) .............................. 20, 23

*Ballard v. Corinthian Colleges, Inc.*, 2006 WL 2380668 (W.D. Wash. Aug. 16, 2006) .......... 23, 24

*Bates v. Morgan Stanley Smith Barney LLC*, 2010 WL 3341819 (E.D. Cal. Aug. 25, 2010) ........ 23

*Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002) .................................................. 23

*Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th Cir. 2019) ........................................................ passim

*Boeing v. Agricultural Insurance Co.*, 2005 WL 2276770 (W.D. Wash. Sept. 29, 2005)............. 24

*Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wash.2d 475, 209 P.3d 863 (2009), *as corrected* (Sept. 22, 2009)...................................................................................................... 8, 15

*Cargill Ferrous Int'l et al. v. The M/V Anatoli, in rem, et al.*, 935 F. Supp. 833 (E.D. La. 1996) .. 20

*CMAX v. Hall*, 300 F.2d 265 (9th Cir. 1962) ................................................................................ 19

*Coneff v. AT&T Corp.*, 673 F.3d 1155 (9th Cir. 2012) ..................................................................... 8

*Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983 (N.D. Cal. 2016) ..................................... 21, 24

*Corbray v. Stevenson*, 98 Wash.2d 410, 656 P.2d 473 (1982)........................................................ 8

*Cottrell v. AT&T Inc.*, 2020 WL 2747774 (N.D. Cal. May 27, 2020) ................................. 12, 14, 15

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059 (9th Cir. 2007) .......... 19, 22

*DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148 (9th Cir. 2021) ..................................................... 13, 14

*East West Bank v. Bingham*, 992 F. Supp. 2d 1130 (W.D. Wash 2014)..................................... 19, 24

*Fallon v. Locke, Liddell & Sapp LLP*, 2007 WL 2904052 (N.D. Cal. Oct. 2, 2007) ...................... 20

*Ford Motor Co. v. United States*, 405 U.S. 562 (1972)................................................................. 10

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980) ................................................................. 22

*G.G. v. Valve Corp.*, 2019 WL 1354152 (W.D. Wash. Mar. 26, 2019)............................ 2, 7, 11, 17

*G.G. v. Valve Corp.*, 799 F. App'x 557 (9th Cir. 2020) ........................................................ passim

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

iii

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

1   *Gandee v. LDL Freedom Enter., Inc.*, 176 Wn.2d 598, 608 (2013) .......................................... 14, 16

2   *Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000) ............................................................................... 23

3   *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash.2d 493 (2005) ....................................... 8, 9

4   *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) .............................................................................. 8

5   *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003) .................. 6

6   *In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, 2010 WL 11469932 (C.D.
     Cal. Nov. 15, 2010) ....................................................................................................................... 23

7   *In re Kaplan*, 143 F.3d 807 (3d Cir. 1998) ...................................................................................... 21

8   *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285 (N.D.
9     Cal. 2018) ...................................................................................................................................... 23

10  *Javelin Corp. v. Uniroyal, Inc.*, 546 F.2d 276 (9th Cir. 1976) ........................................................... 8

11  *Karstetter v. King Cty. Corr. Guild*, 193 Wash.2d 672, 444 P.3d 1185 (2019) ............................. 15

12  *Kater v. Churchill Downs Inc.*, 2019 WL 3944323 (W.D. Wash. Aug. 21, 2019) .......................... 24

13  *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) ....................................................... 19

14  *Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ..................................................................................... 19

15  *Lockyear v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ............................................................... 19

16  *Lotsoff v. Wells Fargo Bank, N.A.*, 2019 WL 4747667 (S.D. Cal. Sept. 30, 2019) ....................... 15

17  *McKee v. AT&T Corp.*, 164 Wash.2d 372 (2008) .............................................................. 6, 9, 16, 17

18  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ................... 6, 7, 9

19  *Naini v. King Co. Pub. Hosp. Dist. No. 2*, 2020 WL 468910 (W.D. Wash. Jan. 29, 2020) ............ 23

20  *Ohio Envtl. Council v. U.S. Dist. Court*, 565 F.2d 393 (9th Cir. 1977) ........................................... 19

21  *Regents of Univ. of California v. Am. Broad. Companies, Inc.*, 747 F.2d 511, 521 (9th Cir. 1984)
22    ....................................................................................................................................................... 10

23  *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974) ........................................... 22

24  *Roberts v. AT&T Mobility LLC*, 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018) ............................ 15

25  *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015) ................................ 5, 11, 13

26  *Scott v. Cingular Wireless*, 160 Wash.2d 843 (2007) .................................................................. 8, 10

27  *Simitar Entm't Inc. v. Silva Entm't Inc.*, 44 F. Supp. 2d 986 (D. Minn. 1999) .............................. 20

28  *Sunlight Prod. Techs. v. MPOWERD*, 2015 WL 12655479 (C.D. Cal. Sept. 17, 2015) ................. 23

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

iv

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

*T-Mobile USA, Inc. v. Montijo*, 2012 WL 6194204 (W.D. Wash. Dec. 11, 2012) .......................... 23

*United Commc'ns Hub. Inc. v. Qwest Commc'ns Inc.*, 46 F. App'x 412 (9th Cir. 2002) .............. 19

*United States v. Microsoft Corp.*, 253 F.3d 34, 103 (D.C. Cir.) ..................................................... 10

*Viking Bank v. Firgrove Commons 3, LLC*, 183 Wash. App. 706 (2014) ............................... 8, 9, 12

*Wagner v. Wagner*, 95 Wash.2d 94, 101, 621 P.2d 1279 (1980) ..................................................... 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) .................................. 10

*Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wash.2d 654, 669-70 (2000) .............................. 12

*Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash.2d 293 (2004) ................................................... 5, 7, 9

**Statutes & Rules**

15 U.S.C. § 26 ...................................................................................................................................... 6

9 U.S.C. § 2 .......................................................................................................................................... 5

9 U.S.C. § 9 ........................................................................................................................................ 21

Fed. R. Civ. P. 23(b)(3) ...................................................................................................................... 21

**Other Authorities**

Wright & Miller, 18B *Fed. Prac. & Proc.* §4475.1 ......................................................................... 21

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

v

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Plaintiffs Wolfire Games, LLC, Sean Colvin, Susann Davis, Daniel Escobar, William Herbert, Ryan Lally, Hope Marchionda, and Everett Stephens ("Plaintiffs") submit this opposition to Defendant Valve Corporation's ("Valve") motion to compel arbitration (Dkt. 35) ("Mot.").

## I.   PRELIMINARY STATEMENT

Plaintiffs' Complaint explains at length how Valve, the purveyor of the Steam online platform, is a monopolist in two separate PC desktop game-related markets: PC Desktop Gaming Platforms and PC Desktop Game Distribution. For nearly two decades, Valve has charged game publishers an industry-high commission for PC desktop game sales on the Steam Store. Valve's competitors have long tried to steer market share away from it by, *inter alia*, offering lower commissions. Had Valve not interfered with those efforts, real price competition from those different stores would have led to lower commissions (benefiting game publishers), and lower end prices for PC desktop games (benefiting game purchasers). Valve, however, imposed restraints on game publishers that eliminated their ability to encourage such competition, leading to higher prices for all. On this basis, Plaintiffs bring federal antitrust and Washington Consumer Protection Act ("CPA") claims, which seek damages for Valve's anticompetitive conduct, and an injunction against Valve's market-wide anticompetitive practices.

If Valve's motion to compel arbitration is granted, however, it would deny consumers the ability to seek and obtain the statutory relief available to them for Valve's monopolization and unfair business practices, because substantive unconscionability pervades Valve's Steam Subscriber Agreement ("SSA"). Valve attempts to sidestep this issue by relying on its previous, partial success on a motion to compel arbitration in *G.G. v. Valve Corp.* ("*G.G. II*"), 799 F. App'x 557 (9th Cir. 2020), but *G.G.* is not the panacea Valve assumes.

As an initial matter, the SSA's arbitration provisions are unenforceable under federal and Washington state law. This substantive unconscionability—analyzed from the *ex ante* perspective of a reasonable consumer reviewing the SSA when the contract is signed (as opposed to Valve's *ex post* rationale after litigation is commenced)—arises from several provisions. First, the SSA ostensibly waives "private attorney general action[s]," which include federal antitrust and CPA claims. But the U.S. Supreme Court and Washington Supreme Court are clear that a contract cannot

1

prospectively waive those claims. The SSA also waives consumers' ability to seek representative injunctive relief broader than their own personal claim. Federal and Washington state law each hold that waiving such statutory remedies is substantively unconscionable.[1]

This substantive unconscionability requires denying the motion to compel for two independent reasons. First, Section 11.E of the SSA contains a "poison pill" that requires invalidating **all** of the SSA's arbitration provisions if any ruling of unenforceability would permit "representative arbitration." Because proceeding with either of Plaintiffs' antitrust and CPA claims and the market-remedying injunctive relief they seek would be "representative," the poison pill applies and this dispute must be litigated in this Court. Moreover, and in any event, unconscionability permeates the SSA to such a degree that, even if this Court found the poison pill did not apply, Valve's entire arbitration agreement is unenforceable under Washington state law.

Next, as the Ninth Circuit held (and as Valve tries to avoid acknowledging, *compare* Mot. at 1, 2, 8; *with id.* at 9 n.2), *parents* whose children signed up for Steam, but who did not otherwise use Steam themselves, are not subject to the SSA and need not arbitrate any disputes with Valve. *G.G. II*, 799 F. App'x at 557; *see also* Mot. at 9 n.2 (conceding this was the holding in *G.G. II*). The Non-Subscriber Plaintiffs—*see* Consolidated Amended Class Action Complaint (Dkt. 34) ("CAC") ¶ 303—fall into this category and thus *G.G. II* itself supports denying Valve's motion as to them.

Even if these fundamental problems did not require denying Valve's motion as to the non-Wolfire Plaintiffs, Plaintiff Wolfire unquestionably is not subject to *any* arbitration agreement. Valve nevertheless argues that this Court should stay Wolfire's claims pending all the consumer arbitrations, even though Wolfire would not be bound by those arbitrations. Such a request is not sanctioned by law and, indeed, would be inefficient and unduly delay Wolfire's day in court.

For these reasons, this Court should deny Valve's motion in its entirety.

---

[1] In the time since this Court decided *G.G. v. Valve*, the Ninth Circuit has clarified that the FAA does not preempt state law prohibitions against waiving representative injunctive relief that is guaranteed to plaintiffs. *G.G. v. Valve Corp.* ("*G.G. I*"), 2019 WL 1354152 (W.D. Wash. Mar. 26, 2019); *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 824 (9th Cir. 2019).

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

2

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

## II.  BACKGROUND

### A.  Plaintiffs Bring Federal Antitrust And Washington State CPA Claims Challenging Valve's Anticompetitive Practices

Defendant Valve operates Steam, an online platform for PC desktop games consisting of (1) an online store (the Steam Store), and (2) a gaming platform. CAC ¶¶ 1-22. Plaintiffs include Wolfire, a game publisher that develops and sells games on the Steam Store (CAC ¶ 24), and individuals who paid for games or other content on the Steam Store. Some of the consumer Plaintiffs are parents whose *children*—not the parents—signed up for and used Steam. *Id.* ¶¶ 27, 30, 303. Others are Steam subscribers who used Steam themselves. *Id.* ¶¶ 25-26, 28-29, 31.

Plaintiffs allege that Valve is a monopolist in two relevant markets—PC Desktop Gaming Platforms and PC Desktop Game Distribution—and has for years anticompetitively used that power to prevent price competition from other online PC desktop game storefronts. *Id.* ¶¶ 59-205. Those restraints, Plaintiffs allege, have maintained the commissions Valve charges game publishers to distribute their PC desktop games on Steam at artificially high levels and led to higher consumer prices for PC desktop games. *Id.* ¶¶ 206-227. Thus, both game publishers and consumers have directly paid Valve supracompetitive prices. *Id.* ¶¶ 266-301.

On the basis of these allegations, Plaintiffs bring federal antitrust claims (*id.* ¶¶ 317-385) and a claim under Washington's CPA, RCW 19.86 (*id.* ¶¶ 386-392). Plaintiffs seek not only the overcharge damages Valve caused, but also a market-wide injunction prohibiting Valve from engaging in the same anticompetitive behavior in the future. *Id.* at p. 93.

Opposition to Motion to Compel Arbitration
Case No. Case No. 2:21-CV-563

3

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

### B.   Relevant Steam Subscriber Agreement Provisions

In its opening brief, Valve includes some of the SSA's relevant arbitration provisions, but not all. Section 11.A is the first such provision Valve cites, which states in full:

> YOU AND VALVE AGREE TO RESOLVE ALL DISPUTES AND CLAIMS BETWEEN US IN ***INDIVIDUAL BINDING ARBITRATION***. THAT INCLUDES, BUT IS NOT LIMITED TO, ANY CLAIMS ARISING OUT OF OR RELATING TO: (i) ANY ASPECT OF THE RELATIONSHIP BETWEEN US; (ii) THIS AGREEMENT; OR (iii) YOUR USE OF STEAM, YOUR ACCOUNT, HARDWARE OR THE CONTENT AND SERVICES. IT APPLIES REGARDLESS OF WHETHER SUCH CLAIMS ARE BASED IN CONTRACT, TORT, STATUTE, FRAUD, UNFAIR COMPETITION, MISREPRESENTATION OR ANY OTHER LEGAL THEORY, AND INCLUDES ALL CLAIMS BROUGHT ON BEHALF OF ANOTHER PARTY.

Boyd Decl. (Dkt. 36), Ex. E, ("SSA") § 11.A (emphasis added). Section 11.D, entitled "Individual Binding Arbitration Only," defines Section 11.A's use of the term "Individual Binding Arbitration." It states, with relevant parts for this opposition emphasized:

> YOU AND VALVE ***AGREE NOT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION***, WHISTLE BLOWER ACTION, OR ***CLASS, COLLECTIVE, OR REPRESENTATIVE ARBITRATION***, EVEN IF AAA'S RULES WOULD OTHERWISE ALLOW ONE. ***THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT OF THAT PARTY'S INDIVIDUAL CLAIM***. You and Valve also agree not to seek to combine any action or arbitration with any other action or arbitration without the consent of all parties to this Agreement and all other actions or arbitrations.
>
> ***This Agreement does not permit class, collective, or representative arbitration.*** A court has exclusive authority to rule on any assertion that it does.

Valve included both of these provisions in its opening brief. What Valve left out, however, is that Section 11.E, entitled "What Happens if Part of Section 11 is Found Illegal or Unenforceable," includes a "poison pill" that requires litigation in court if any ruling would permit, *inter alia*, "representative arbitration":

> If any part of Section 11 . . . is found to be illegal or unenforceable, the rest will remain in effect . . . , ***except that if a finding of partial illegality or unenforceability would allow class, or representative arbitration, all of Section 11 will be unenforceable and the claim or dispute will be resolved in court***.

Valve similarly left out that Section 10 includes a clause stating that the prevailing party of any dispute between the parties "will be entitled to attorneys' fees and expenses (except arbitration

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

4

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

– Section 11.C).” Thus, if a party convinces a court, such as this one, that a dispute is not subject to arbitration, then Valve seeks to impose the risk of attorneys' fees in any litigation, even despite the “American rule” of litigation costs (*i.e.*, each party bears their own fees and costs), and that consumer protection claims like the federal antitrust and Washington state CPA claims asserted here include mandatory attorneys' fee awards only against the defendant if it loses.

### C.      Wolfire's Claims Are Not Subject To Any Arbitration Agreement And Do Not Depend On The Consumer Plaintiffs

Notably, Valve does not argue or adduce any facts indicating that Plaintiff Wolfire, a game publisher, is subject to an arbitration agreement. That is no accidental omission; Wolfire is unaware of any such arbitration agreement, nor any equivalent type of agreement for any other game publisher selling Steam-enabled PC desktop games. Similarly, Valve does not identify any sort of relationship between Wolfire (or any other game publisher) such that they would be bound by any arbitrations with Steam subscribers. Again, Wolfire is unaware of any such relationships.

## III.   ARGUMENT

### A.      Valve's Contractual Provision Barring Injunctive Relief Is Substantively Unconscionable

#### 1.      Legal Standard

Section 2 of the Federal Arbitration Act provides that written arbitration agreements “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2. “The final clause of § 2, its savings clause, permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.” *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)) (internal quotations omitted).

Under Washington law, which the SSA chooses for any dispute (*see* SSA § 10), “[t]he existence of an unconscionable bargain is a question of law for the courts.” *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 302-303 (2004). “Agreements may be either substantively or

Opposition to Motion to Compel Arbitration
Case No. Case No. 2:21-CV-563

5

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

1   procedurally unconscionable. Substantive unconscionability involves those cases where a clause or

2   term in the contract is one-sided or overly harsh. Substantive unconscionability alone is sufficient

3   to support a finding of unconscionability." *McKee v. AT&T Corp.*, 164 Wn.2d 372, 397 (2008)

4   (internal citations omitted).

5         (a)    <u>Federal law prohibits prospective waivers of antitrust remedies</u>

6         Binding precedent is clear that an arbitration agreement cannot thwart the "effective

7   vindication" of federal statutory rights, including remedies a plaintiff may pursue for federal

8   antitrust violations. As the Supreme Court has explained, if an arbitration agreement would operate

9   "as a prospective waiver of a party's right to pursue ***statutory remedies for antitrust violations***, then

10  we would have little hesitation in condemning the agreement as against public policy." *Mitsubishi*

11  *Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (emphasis added). In

12  *Am. Express Co. v. Italian Colors Restaurant*, the Supreme Court then stated more broadly that the

13  FAA does not require enforcement of a provision in an arbitration agreement that "forbid[s] the

14  assertion of certain [federal] statutory rights" or that "eliminates … [the] right to pursue [a] statutory

15  remedy." 570 U.S. 228, 236 (2013).

16        The Clayton Act provides private plaintiffs the ability to seek a ***market-wide*** injunction

17  against further anticompetitive conduct; *i.e.*, an injunction that remedies a defendant's market-wide

18  (as opposed to plaintiff-specific) anticompetitive practices. 15 U.S.C. § 26. It is only by preserving

19  this broad, non-plaintiff-specific injunctive right that arbitration agreements satisfy the effective

20  vindication doctrine. *See*, *e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385,

21  415 (S.D.N.Y. 2003) (arbitration allowed plaintiff to effectively vindicate their antitrust claims

22  because the rules allowed for full injunctive relief).

23        (b)    <u>Under Washington law, an arbitration agreement that prevents one
24  party from invoking statutory remedies is substantively unconscionable</u>

25

26        The Washington Supreme Court has ruled on multiple occasions that a contract waiving

27  statutory remedies—particularly any granted by the CPA—is substantively unconscionable. For

28  example, the *McKee* court held that arbitration provisions whose effect was to limit the statute of

1    limitations and attorneys' fee remedy of the CPA were substantively unconscionable. 164 Wn.2d at

2    399-400. In its earlier *Zuver* opinion, the court similarly found that an arbitration provision

3    preventing only a plaintiff-employee from seeking punitive or exemplary damages was

4    substantively unconscionable, because the provision's *effect* was one-sided and harsh—*i.e.*, it

5    allowed the defendant-employer to seek "significant legal recourse" against the plaintiff-employee

6    for the employer's most likely claims, but not vice versa (including the CPA). 153 Wn.2d at 315-

7    319. This precedent is fully consistent with the Supreme Court's FAA jurisprudence, which explains

8    that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights

9    afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."

10    *Mitsubishi*, 473 U.S. at 627-628; *see also Al-Safin v. Cir. City Stores, Inc.*, 394 F.3d 1254, 1261-

11    1262 (9th Cir. 2005) (applying this precedent in conjunction with Washington state law to invalidate

12    entire arbitration agreement for substantive unconscionability).

13                 **2.**       **The SSA's Prohibitions Against Private Attorney General Actions and**

14                          **Full Injunctive Relief Are Substantively Unconscionable**

15         Under the above law, Section 11.D is substantively unconscionable for two core reasons.

16    *First*, by ostensibly waiving "private attorney general action[s]," Section 11.D acts as a prospective

17    waiver of the specific federal antitrust and Washington CPA claims Plaintiffs bring here, which is

18    disallowed by controlling law. *Second*, by ostensibly limiting arbitral relief to that which is "only in

19    favor of the individual party seeking relief and only to the extent of that party's individual claim,"

20    Section 11.D prohibits consumers from seeking full injunctive relief. This limitation on statutory

21    remedies available under both the Clayton Act and Washington CPA disproportionately benefits

22    Valve in a one-sided and harsh manner (since it could never seek similar relief) and immunizes it in

23    arbitration from a core remedy implemented at the federal and state level to protect both consumers

24    and the public.[2]

25

26

---

27    [2] The unconscionability challenges in *G.G.* focused on procedural unconscionability and different

28    substantive unconscionability arguments. Neither this Court nor the Ninth Circuit addressed any of
     the substantive unconscionability questions raised here.

Opposition to Motion to Compel Arbitration
Case No. Case No. 2:21-CV-563

7

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

(a)    <u>It is unconscionable for Valve to preclude Plaintiffs from bringing their private attorney general antitrust and CPA claims</u>

As previously noted, the SSA chooses Washington law for any disputes, *see* SSA § 10, and Section 11.D waives all "private attorney general action[s]." "Washington follows the 'objective manifestation theory' of contract interpretation, under which the focus is on the reasonable meaning of the contract language to determine the parties' intent." *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712-13 (2014) (citing *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503 (2005)). This means courts "generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Viking Bank*, 183 Wn. App. 706, 712-13; *see also Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wn.2d 475, 487, 209 P.3d 863, 871 (2009), *as corrected* (Sept. 22, 2009) (citing *Corbray v. Stevenson*, 98 Wn.2d 410, 415, 656 P.2d 473 (1982)) ("Words in a contract should be given their ordinary meaning.").

It is therefore necessary to determine the "ordinary, usual, and popular" meaning of the phrase "private attorney general action." That term unquestionably includes Sherman Act claims. *Javelin Corp. v. Uniroyal, Inc.*, 546 F.2d 276, 279-80 (9th Cir. 1976) (a private antitrust plaintiff sues "not only on its own behalf, but as a '***private attorney general***' representing the public interest. Congress established the private remedy to enlist the public as enforcers of the antitrust laws."); *see also Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977) (noting that the Clayton Act "elevat[ed] direct purchasers [*e.g.*, Plaintiffs here] to a preferred position as private attorneys general").

An action asserting a CPA claim is similarly a "private attorney general action." As the Washington Supreme Court has held, "Private actions by private citizens are now an integral part of CPA enforcement. Private citizens act as ***private attorneys general*** in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce." *Scott v. Cingular Wireless*, 160 Wn.2d 843, 854 (2007), *overruled on other grounds as stated in Coneff v. AT&T Corp.*, 673 F.3d 1155 (9th Cir. 2012) (emphasis added).

In holding that it would have "little hesitation" invalidating any contract that prospectively waives federal antitrust claims, the Supreme Court cited a long line of cases exactly to that effect.

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

8

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

*Mitsubishi*, 473 U.S. at 637 n.19 (collecting cases). For its part, the Washington Supreme Court found contract terms limiting only a *portion* of CPA claims substantively unconscionable. *See McKee*, 164 Wn.2d at 399-400; *Zuver*, 153 Wn.2d at 315-319. Applying those holdings, it is unquestionable that, if presented with a *complete* waiver of a CPA claim, the Washington Supreme Court would similarly have little hesitation finding such a waiver unconscionable.

For these reasons, Section 11.D's attempt to waive private attorney general actions is unenforceable and illegal, because the ordinary meaning of that phrase includes claims that both the U.S. and Washington Supreme Courts unequivocally state a contract may not waive.

Valve may argue in reply that the SSA does not waive Plaintiffs' antitrust and CPA claims, as demonstrated by Valve's motion to compel those claims to arbitration. However, the relevant inquiry is **objective and ex ante**—*i.e.*, what is the "ordinary, usual, and popular meaning" of the phrase "private attorney general action." *Viking Bank*, 183 Wn. App. at 712-13 (citing *Hearst*, 154 Wn.2d at 503). Such an objective, *ex ante* analysis plainly indicates that Section 11.D purports to waive antitrust and CPA claims altogether, not simply subject them to arbitration. Valve cannot avoid an unconscionability finding by arguing it will not subjectively interpret the agreement in that way now. *See* Section III.A.2.c *infra* (discussing that Washington does not permit after-the-fact waivers of unconscionable provisions).[3]

        (b)    It is unconscionable for Valve to limit Plaintiff's injunctive remedies in arbitration for their antitrust and CPA claims

        (i)    *Plaintiffs statutorily may seek representative injunctions that remedy public wrongs*

Both the Clayton Act and Washington CPA permit plaintiffs to seek injunctive relief that is representative in nature; *i.e.*, relief meant to benefit the public at large rather than just the plaintiff personally. Courts analyzing each of these statutes and the claims they allow recognize that such

---

[3] To the extent Valve alternatively argues that Section 11.D only waives California Private Attorney General Act ("PAGA") claims, the broader contract does not support such a reading and, in any event, even that interpretation would be unconscionable because it violates California's *Iskanian* and *McGill* rules, which the Ninth Circuit recently applied in the *Sakkab* and *Blair* opinions to invalidate arbitration agreements.

Opposition to Motion to Compel Arbitration
Case No. Case No. 2:21-CV-563

9

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

public-oriented, representative injunctions are a necessary tool to help regulate and remedy unfair business practices.

For example, courts are clear that a Sherman Act remedy must seek to "unfetter ***a market*** from anticompetitive conduct," to "***terminate the illegal monopoly***, deny to the defendant the fruits of its statutory violation, and ***ensure that there remain no practices likely to result in monopolization in the future***." *United States v. Microsoft Corp.*, 253 F.3d 34, 103 (D.C. Cir.), *cert. denied*, 534 U.S. 952 (2001) (quoting and citing *Ford Motor Co. v. United States*, 405 U.S. 562, 577 (1972)) (emphasis added); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) (antitrust class action brought by private plaintiff where injunctive relief component of settlement was valued at $25-87 billion); *Regents of Univ. of California v. Am. Broad. Companies, Inc.*, 747 F.2d 511, 521 (9th Cir. 1984) (granting preliminary injunction in an antitrust case because "the public interest is served by preserving the competitive influence of consumer preference in the college broadcast market"). Washington state law regarding the CPA is similarly clear: "Consumers bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief ***even when the injunction would not directly affect their own private interests***." *Scott*, 160 Wn.2d at 854 (citations omitted) (emphasis added).

Here, the core of Plaintiffs' claims is that Valve engages in market-wide misconduct that causes supracompetitive prices and other anticompetitive effects. CAC ¶¶ 3, 16–17, 24–31, 124–125, 206, 268, 277, 283, 312, 316. This is conduct that does not just affect the individual Plaintiffs in their individual capacity. *Id.* Accordingly, any injunctive remedy will necessarily involve a prohibition against engaging in the same practices with respect to *all* game publishers and Steam consumers; not just the individual claimants.

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE No. 2:21-CV-563

10

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

(ii) *The Ninth Circuit has recently invalidated multiple arbitration agreements, based on state law virtually identical to Washington law*

In its motion, Valve puts substantial emphasis on a prior 2017 decision by this Court, claiming that the "agreement to arbitrate is just as enforceable here as the Steam users' agreement was in *G.G. v. Valve*." *E.g.*, Mot. at 8. Valve glosses over, however, that the Ninth Circuit more recently made clear—under state law nearly identical to Washington law—that Valve's contractual bar on full injunctive relief is unenforceable.[4]

In *Blair*, the Ninth Circuit considered an arbitration provision with a "Requirement of Individual Arbitration" that is substantively identical to Section 11.D of the SSA:

> You and RAC agree that arbitration *shall be conducted on an individual basis*, and that neither you nor RAC may seek, nor may the Arbitrator award, *relief that would affect RAC account holders other than you*. There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, mass, private attorney general, or representative action. ...

*Blair*, 928 F.3d at 823 (emphasis added). Applying California state law that "[w]aiver of the right to seek public injunctive relief under [the statutes underlying plaintiff's claims] would seriously compromise the public purposes the statutes were intended to serve"—which is identical to Washington state law holding that waivers of even *portions* of CPA claims are substantively unconscionable, *see* Section III.A.1, *supra*—the Ninth Circuit concluded that the provision cited above was an impermissible waiver and therefore unenforceable, and that the FAA did not preempt such invalidation even though the relief in question was "*representative*." *Id.* at 824; *see also id.* at 828-829 (noting that public injunctive requests, which are "brought for the benefit of the public," are "representative"); *Sakkab*, 803 F.3d at 434-439 (invalidating waivers of "representative PAGA claims" under similar California law prohibiting such waivers).

---

[4] Valve also mentions that the Ninth Circuit "considered" the SSA in *G.G. II* "as recently as last year," Mot. at 8, but omits that the plaintiffs there did not challenge Valve's illegal prohibition on the pursuit of injunctive relief.

1    Like the arbitration provision at issue in *Blair*, Section 11.D of the SSA states that the

2  "ARBITRATOR MAY AWARD RELIEF ***ONLY IN FAVOR OF THE INDIVIDUAL PARTY***

3  ***SEEKING RELIEF AND ONLY TO THE EXTENT OF THAT PARTY'S INDIVIDUAL***

4  ***CLAIM***." (emphasis added). Such language explicitly attempts to bar injunctive relief of a public,

5  representative nature. *See, e.g.*, *Blair*, 928 F.3d 819; *Cottrell v. AT&T Inc.*, 2020 WL 2747774, at *5

6  (N.D. Cal. May 27, 2020) (finding that arbitration agreement prevented an arbitrator from awarding

7  public injunctive relief where it stated the arbitrator could award "declaratory or injunctive relief

8  only in favor of the individual party seeking relief and only to the extent necessary to provide relief

9  warranted ***by that party's individual claim***") (emphasis added).

10    Indeed, Valve *concedes* this point in its motion. In connection with its request for a stay

11  against Wolfire's claims (discussed further at Section III.C.2 *infra*), Valve tries to argue there might

12  be inconsistent results with respect to the injunctive relief Wolfire and any arbitrating consumer

13  plaintiffs seek because only Wolfire (who is not subject to the SSA) can seek injunctive relief in

14  favor of "the public." *See* Mot. at 14-15 (contrasting publishers' claims, where they can obtain

15  injunctive relief "as to the class and the public," with consumers' claims, which can only seek

16  individual injunctive relief). Valve's concession that it believes the consumer plaintiffs *cannot* seek

17  public injunctive relief ends the inquiry on the proper interpretation of Section 11.D's remedy

18  limitations.

19    But even if that were not the case, the text surrounding that limitation—which must be

20  considered to contextualize the language[5]—states repeatedly that any such relief cannot be

21  "representative"; *i.e.*, cannot represent interests other than the plaintiff's own. Section 11.D thus

22  clearly precludes plaintiffs from seeking representative injunctive relief, such as injunctions aimed

23  at remedying market-wide unfair business practices of the type directly at issue in this lawsuit. *See*

24  CAC ¶¶ 22, 311, 392. Federal and Washington state law fundamentally disallow Valve's approach.

25  *See* Section III.A.1, *supra*. Finally, it is one-sided, because Valve cannot bring either an antitrust or

[5] *See, e.g.*, *Viking Bank*, 183 Wn. App. at 713 ("[W]e view the contract as a whole, interpreting particular language in the context of other contract provisions.") (citing *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wn.2d 654 (2000)).

1  *Consumer* Protection Act claim against its consumers. Accordingly, just like in *Blair*, the SSA's

2  attempt to limit Plaintiffs' ability to seek full injunctive relief is unconscionable and unenforceable

3  under federal and state law.

4  (c)     Valve's likely counterarguments are meritless

5  In reply to the above points, Valve may assert three arguments. First, Valve may argue in

6  reply that the FAA preempts courts from invalidating arbitration agreements on the basis that those

7  agreements deprive plaintiffs of claims or remedies available under substantive law. For example,

8  in *Concepcion*, the Supreme Court noted that the FAA's purpose is to promote bilateral arbitration

9  and, with it, the choice for dispute resolution with less "procedural formality" than traditional

10  litigation. *Concepcion*, 563 U.S. at 349-350. If a state's law prohibits waiving certain arbitral

11  procedures (*e.g.*, class arbitration) that would otherwise mandate inclusion of and/or require formal

12  notice procedures for parties not directly involved in the arbitration (*e.g.*, absent class members),

13  the FAA preempts that rule. *Id.* at 349-352.

14  The Ninth Circuit subsequently observed, however, that "[w]e do not read *Concepcion* to

15  require the enforcement of all waivers of representative claims in arbitration agreements." *Sakkab*,

16  803 F.3d at 436. If a rule against certain types of representative claim waiver is applicable across all

17  contracts and does not mandate procedural formalities antithetical to bilateral arbitration, then the

18  FAA **does not** preempt such a rule. *See id.* (enforcing state-law rule against waiving California

19  Private Attorney General Act claims); *see also Blair*, 928 F.3d at 825-827 (enforcing state-law rule

20  against waiving public injunctive relief requests). Allowing Plaintiffs to pursue antitrust claims in

21  arbitration or granting the injunctive relief guaranteed to Plaintiffs under federal antitrust and

22  Washington State law would not be antithetical to bilateral arbitration. Therefore, under *Blair*, this

23  court is not preempted from declining to enforce Valve's unconscionable contractual language

24  purporting to waive Plaintiffs' antitrust claims and associated injunctive relief.

25  Second, Valve may invoke *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148 (9th Cir. 2021), which

26  found that an arbitration agreement requiring an "individual lawsuit" did not categorically waive a

27  plaintiff's right to seek public injunctive relief. The key to *MoneyLion*, however, was that the

28  arbitration agreement allowed an arbitrator "to award **all remedies available** in an individual

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

13

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

lawsuit . . . , including, ***without limitation***, . . . ***injunctive relief***." *Id.* at 1157. Because proceeding in an individual capacity did not otherwise limit the plaintiff's rights, this broad language left untouched the statutory remedies for their claims, which included public injunctive relief. *Id.* In contrast, Section 11.D allows arbitral relief "***only to the extent of [the plaintiff's] individual claim***." This language and the remainder of Section 11.D make clear that any such relief cannot be representative in any way (*i.e.*, for the benefit of public rather than just the plaintiff). *See Cottrell*, 2020 WL 2747774, at *5. Thus, Section 11.D's waiver, contrary to *MoneyLion*, does ***not*** preserve the broad injunctive relief available to Plaintiffs under the relevant statutes.

Third, Valve may argue that it will choose not to interpret Section 11.D to prohibit full injunctive relief in arbitration. Unconscionability in Washington state, however, is an *ex ante* analysis. Absent rare circumstances not present here, a party may not moot an unconscionability challenge with an after-the-fact waiver of the unconscionable provisions. *Gandee v. LDL Freedom Enter., Inc.*, 176 Wn.2d 598, 608 (2013). To allow otherwise "would encourage rather than discourage one-sided agreements and would lead to increased litigation." *Id.* Indeed, this Court may easily conclude that such a promise would not be in earnest, given the lengths Valve goes to argue the SSA's arbitration provisions are "consumer-friendly." Mot. at 6, 7.

Valve's attempt to strip Plaintiffs of their statutory rights under federal and Washington state law must be denied. Both make clear that plaintiffs pursuing antitrust and/or CPA claims have the right to obtain injunctive relief that benefits not only themselves but also the public broadly. Under binding and controlling precedent—including *Blair*'s application of virtually identical state law on these issues—this Court must protect those statutory rights. Valve's bar on the pursuit of full injunctive relief is substantively unconscionable and unenforceable.

### 3. The SSA's Unconscionability Renders This Court the Only Forum For All of Plaintiffs' Disputes With Valve

As discussed above, Valve's attempt to prohibit consumers from pursuing the private attorney general actions Plaintiffs bring here, as well as the full injunctive relief afforded to Plaintiffs by the Clayton Act and Washington CPA, is substantively unconscionable and unenforceable under controlling U.S. Supreme Court, Ninth Circuit and Washington state precedent. Valve may argue,

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

14

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

however, that this Court can sever those unconscionable attempts to limit consumers' rights and still compel arbitration. This argument fails for two independent reasons: (1) the SSA contains a "poison pill" requiring that Plaintiffs' representative antitrust and CPA claims be resolved in this Court; and (2) in any event, unconscionability permeates the SSA's arbitration provisions, rendering it entirely unenforceable.

(a)      Section 11.E's "poison pill" requires litigation in this Court

Section 11.E states that "if a finding of partial illegality or unenforceability would allow class, collective, or representative arbitration, ***all of Section 11 will be unenforceable and the claim or dispute will be resolved in court***." Courts recognize that a "poison pill" like this renders any severance analysis moot; by contract, it requires this Court to invalidate the entire arbitration agreement and permit the plaintiff to proceed in court. *See, e.g., Cottrell*, 2020 WL 2747774, at *6-*7; *Lotsoff v. Wells Fargo Bank, N.A.*, 2019 WL 4747667, at *2-*3 (S.D. Cal. Sept. 30, 2019); *Roberts v. AT&T Mobility LLC*, 2018 WL 1317346, at *7 (N.D. Cal. Mar. 14, 2018).

The relevant inquiry is therefore whether a finding of partial unenforceability would allow "representative arbitration." As discussed above, federal antitrust and Washington state CPA claims are fundamentally representative in nature. *See* Sections III.A.2.(b)-(c), *supra*. By bringing such claims, therefore, Plaintiffs would engage in representative arbitration.

But one need not look solely to the law for this point; the SSA itself states Plaintiffs' claims would constitute representative claims in arbitration. In Section 11.D, the SSA repeatedly delineates between "representative," "class," and "collective" claims when defining Individual Binding Arbitration. That difference in terms is important for proper contract interpretation. *Cambridge Townhomes*, 166 Wn.2d at 487 (citing *Wagner v. Wagner*, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980)) ("Courts should not adopt a contract interpretation that renders a term ineffective or meaningless."). The SSA provides specific examples of representative actions, including "private attorney general action[s]" and "whistle blower action[s]," each of which is legally representative in nature (and obviously ***not*** a class or collective claim). *See* Section III.A.1.(a), *supra* (regarding private attorney general actions); *Karstetter v. King Cty. Corr. Guild*, 193 Wn.2d 672, 685, 444 P.3d 1185 (2019) ("Washington's whistle-blower provisions are intended to encourage those with knowledge of

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

15

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

institutional wrongs to come forward **in order to safeguard the public**.") (emphasis added). Section 11.D's prohibition of relief beyond "the extent of [a] party's claim" similarly makes clear that Plaintiffs bringing claims seeking injunctive relief like here would engage in representative arbitration. The SSA thus reinforces what the law also makes clear: federal antitrust and Washington CPA claims are representative and therefore bringing them in arbitration would constitute "representative arbitration," especially when Plaintiffs request the statutory injunctive relief available for those claims. Accordingly, Section 11.E's poison pill contractually requires litigating in this Court.

(b)    <u>Substantive unconscionability permeates the SSA's arbitration provisions, rendering the entire arbitration agreement unenforceable</u>

Even if Section 11.E's poison pill did not apply, unconscionability permeates the SSA's arbitration agreement. *See McKee*, 164 Wn.2d at 402 (excising entire dispute resolution section of AT&T consumer contract because "when unconscionable provisions so permeate an agreement, we strike the entire section or contract") (collecting cases); *Gandee*, 176 Wn.2d at 605-608 (same).

Section 11.A requires "ALL DISPUTES BETWEEN US" to proceed "IN INDIVIDUAL BINDING ARBITRATION." Section 11.D's definition of "Individual Binding Arbitration" contains four substantive sentences, three of which include unconscionable provisions (*i.e.*, unconscionable waiver of private attorney general actions, unconscionable waiver of *all* representative actions, and unconscionable waiver of statutory injunctive relief that goes beyond the extent of a party's individual claim). In a nearly identical situation, with unconscionable provisions in three out of an arbitration clause's four substantive sentences, the Washington Supreme Court found that such pervasiveness requires invalidating the entire arbitration agreement. *Gandee*, 176 Wn.2d at 607.

But Section 11 is not the end of the SSA's pervasive substantive unconscionability. An even more insidious provision lurks in Section 10's "loser pays" clause, which seeks to impose fee-shifting in any litigation (as opposed to arbitration) between the parties. The Washington Supreme Court has held that such a provision is substantively unconscionable in the context of CPA claims, because those claims already fee-shift for successful plaintiffs, and a similar requirement for a prevailing *defendant* "effectively chill[s]" the plaintiff's ability to bring the claim. *Gandee*, 176

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

16

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Wn.2d at 605-606.[6]

Section 10, however, is ***worse*** than the clause in *Gandee* because it seeks to punish consumers for successfully challenging the validity of the SSA's arbitration provisions—***even if those provisions are deemed substantively unconscionable***. Only consumers that successfully oppose a motion to compel arbitration (like Valve's motion here) would proceed in court, and therefore be subject to Section 10's loser pays provision. Although Valve might argue in reply that the fee-shifting requirement is mutual, this ignores that Valve is a multi-billion-dollar company and Section 10's obvious intent is to dissuade consumer-initiated challenges to Section 11's onerous arbitration provisions, as well as any consumer-initiated litigation of CPA, federal antitrust, or any other claims. This is inherently one-sided and harsh, and thus substantively unconscionable. *Id.*

For these reasons, unconscionability permeates the SSA's dispute resolution provisions. A consumer cannot avoid unconscionable waivers and, if they have the temerity to successfully challenge those provisions, they are then at risk of having to pay Valve's attorneys for the privilege of proceeding in court. Such permeation warrants excising all of Section 11, as well as Section 10's loser pays provision. *Id.* at 607-608 (holding entire arbitration clause unenforceable) *McKee*, 164 Wn.2d at 402 (same, for entire dispute resolution section).

### B.     The Non-Subscriber Class Members Are Not Subject To Arbitration, Per The Ninth Circuit's Holding in *G.G. v. Valve*

Even if this Court requires other individual plaintiffs to arbitrate their claims, it cannot force parents who did not agree to the SSA (*e.g.*, Plaintiffs Susann Davis and Hope Marchionda) into arbitration. The Ninth Circuit recently rejected similar attempts by Valve to force claims by parents who were not parties to the SSA into arbitration, holding that parents who "are not signatories to the Subscriber Agreement . . . are not bound by the arbitration agreement . . . ." *G.G. II*, 799 F. App'x at 558 (vacating in part *G.G. I.*, 2019 WL 1354152). The Ninth Circuit's holding in this regard is equally applicable here, a point that Valve concedes in a footnote. *See* Mot. at 9 n.2. Thus, because

---

[6] The same logic would apply to federal antitrust claims, which impose statutory fee-shifting for successful plaintiffs.

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

17

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

1   the Ninth Circuit has already found that parents who do not agree to the SSA are not bound to its

2   arbitration provision, this Court cannot force the non-signatory plaintiffs here, Susann Davis and

3   Hope Marchionda, into arbitration.

4          Valve argues that, because Ms. Davis and Ms. Marchionda pleaded that they "purchased PC

5   Desktop Games through the Steam Store for [their] minor child[ren]," Mot. at 10–11 (quoting CAC

6   ¶¶ 27, 30), they somehow agreed to the SSA, Mot. at 11 (citing Boyd Decl. ¶ 6). Valve claims that,

7   in order to purchase a game on the Steam platform, a purchaser must click a box agreeing to the

8   SSA—and thus agrees to arbitrate her claims. Mot. at 5. But that is not what happened here.

9          Both Ms. Davis and Ms. Marchionda provided their credit card information to their children,

10  who then independently entered that information into the Steam Store to purchase PC Desktop

11  Games.[7] Davis Decl. at ¶¶ 5–6, Marchionda Decl. at ¶¶ 5–6. Both mothers subsequently received

12  credit card invoices for these purchases and paid those invoices out of their own funds. Davis Decl.

13  at ¶¶ 7–8, Marchionda Decl. at ¶¶ 7–8. Neither, however, sat down at a computer and "click[ed] the

14  box," as Valve claims (without support). Davis Decl. at ¶ 3, Marchionda Decl. at ¶¶ 3–4.

15         Given these facts, and because neither Ms. Davis nor Ms. Marchionda invoke the SSA for

16  their statutory claims, they are entitled to proceed here. *G.G. II*, 799 F. App'x at 558 ("The parents

17  are not signatories to the Subscriber Agreement, and they are not bound by it . . ." because they are

18  not "seeking to enforce the Subscriber Agreement" and are not "pursu[ing] claims based on

19  provisions of the Subscriber Agreement but rather [are pursuing] claims sounding in tort ***or based***

20  ***on statutory violations***.") (emphasis added); *see also, e.g.*, *B.F. v. Amazon.com Inc.*, -- Fed. App'x -

21  -, 2021 WL 1593003 (9th Cir. April 23, 2021) (non-signatories not bound by a contract's arbitration

22  clause because "a party cannot be required to submit to arbitration any dispute which he has not

23  agreed so to submit," except in limited circumstances not applicable here). This Court should follow

24  the Ninth Circuit's holdings and deny Valve's attempt to compel Ms. Davis and Ms. Marchionda to

25  arbitration.

26  _____

27  [7] Neither Ms. Davis nor Ms. Marchionda has a Steam account. Davis Decl. at ¶ 2, Marchionda
    Decl. at ¶ 2. As Defendant tacitly acknowledges, the only avenue to force them into arbitration is
28  because they purchased PC Desktop Games for their children. Mot. at 10–11.

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

18

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

**C.       Staying Wolfire's Claims Would Be Inappropriate and Inefficient**

  **1.       Legal Standard**

  In general, the party seeking a stay bears the burden of establishing it is appropriate to do so. *See Ohio Envtl. Council v. U.S. Dist. Court*, 565 F.2d 393, 396 (9th Cir. 1977) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). When some claims are subject to arbitration and others are not, there is a "preference for proceeding with the non-arbitrable claims when feasible." *United Commc'ns Hub. Inc. v. Qwest Commc'ns Inc.*, 46 Fed. App'x 412, 414-15 (9th Cir. 2002); *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) ("[C]ourts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation.").

  Under these circumstances, this Court must consider the interest of justice and benefits to the court, the prejudice to the plaintiff of granting the stay, and the prejudice to the defendant that would be caused by not granting the stay. *CMAX v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see also United Commc'ns*, 46 F. App'x at 415. Courts should not stay proceedings simply to manage their own docket. *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). Similarly, courts should not stay proceedings if the stay "would result in undue delay." *Id.* (citing *Landis*, 299 U.S. at 256).

  **2.       A Stay Would Deprive Wolfire and Other Game Publishers of a Forum to Litigate Their Dispute, Even While Suffering Ongoing Harm**

  Wolfire and similarly-situated game publishers—which currently sell PC desktop games subject to Valve's continuing anticompetitive practices—will experience continued harm without recourse if their claims are stayed during any consumer arbitration. These injuries include continuing to pay supracompetitive commissions, being forced to offer their games on a lower-quality Steam platform, and lacking the ability to steer consumers to lower-cost, rival storefronts (thereby disciplining Valve's unfair practices). For this reason alone, Valve's requested stay must be denied. *See Lockyear v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (reversing stay where, *inter alia*, affected citizens would be harmed by the "ongoing illegal concentration of market power that threatens economic harm to electricity consumers"); *see also East West Bank v. Bingham*, 992 F. Supp. 2d 1130, 1135 (W.D. Wash 2014) (declining to stay claims against defendants not subject

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

19

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

to arbitration even if it "would be a waste of judicial resources, would likely lead to a duplication of effort and risk inconsistent decisions"); *Simitar Entm't Inc. v. Silva Entm't Inc.*, 44 F. Supp. 2d 986, 997-98 (D. Minn. 1999) (staying only arbitrable claims, not non-arbitrable ones); *Cargill Ferrous Int'l et al. v. The M/V Anatoli, in rem, et al.*, 935 F. Supp. 833, 837-38 (E.D. La. 1996) (the FAA's "goal of ensuring judicial enforcement of privately made agreements to arbitrate is not advanced by forcing a party that has not agreed to arbitrate to delay litigation of its claims"); *Fallon v. Locke, Liddell & Sapp LLP*, 2007 WL 2904052, at *4 (N.D. Cal. Oct. 2, 2007) (rejecting stay).

In response, Valve argues (at 15) that "Wolfire Games does not allege any ongoing harm." That is unequivocally false. As Wolfire details, Valve is engaged in a long-running, ***continuing*** monopolistic scheme. CAC ¶¶ 2, 317–376. The Complaint further explains in ***specific detail*** the ongoing harm that Wolfire and other publishers suffer from Valve's conduct, such as the aforementioned supracompetitive commissions on every game sale and in-game purchase, lower-quality platform, and inability to discipline Valve through steering customers to other storefronts. *Id.* ¶¶ 6-7, 268, 270-73, 277, 287-88. Wolfire also alleges that Valve's illegal conduct reduces publishers' output, *id.* ¶¶ 206-13, and that, but-for Valve's illegal tying and PMFN, a competitive distribution market would emerge, leading to lower commissions in the Steam Store, which would permit publishers like Wolfire to offer lower retail prices for gamers while still making more money from sales overall (due to both lower commissions and higher overall sales). *Id.* ¶ 283.

### 3.   Staying Wolfire's Claims Will Not Promote Judicial Economy; It Will Simply Delay a Case That Will Unquestionably Proceed Here

As Valve concedes (at 12), Wolfire and other game publishers have not signed arbitration agreements or class action waivers. As a result, their class claims must proceed in this Court eventually. Thus, by staying the publishers' claims, there will be no benefit "measured in terms of the simplifying or complicating of issues, proof, and questions of law." *Babare v. Sigue Corp.*, 2020 WL 8617424, at *1 (W.D. Wash. Sept. 30, 2020).

Valve claims (at 14) that any individual arbitrations it conducts with game purchasers "will consider and decide ***all*** of the underlying questions of liability and damages that Plaintiffs allege are common to the putative class as a whole." But even if that were true (it is not), those findings would

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

20

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

only bind the claimant who brought the specific arbitration at issue, with no preclusive effect on Wolfire or any other game publisher, or any of the claimants in other individual arbitrations. *See* Wright & Miller, 18B *Fed. Prac. & Proc.* §4475.1 ("The most basic rule is that a nonparty is not bound . . . A court should not be as ready to bind a nonparty by an arbitration award as by a judgment.") (citing *In re Kaplan*, 143 F.3d 807, 814 (3d Cir. 1998) (Alito, J.)); *see also G.G. II*, 799 F. App'x at 558 (a district court can confirm an arbitral award only against parties who have agreed to arbitrate) (quoting 9 U.S.C. § 9). It is also unclear why those many individual arbitrations—and not Wolfire's class action—should be the claims to proceed first.

Nor, as Valve contends (at 14), does proceeding with Wolfire's class claims raise a "predominan[ce]" problem, because common questions will still predominate over the remaining publisher class members, even if some consumer class members were forced into arbitration and are therefore removed from the class. Thus, "the questions of law or fact **common to class members**" will be addressed in this case. Fed. R. Civ. P. 23(b)(3).

Valve further claims (at 15) that proceeding with Wolfire's class claims would "create[e] a significant risk of inconsistent results." Not so. As noted, any arbitral findings on consumer claims are only binding on the individual consumer, and therefore cannot lead to inconsistent results—at least, none that create any *res judicata* or collateral estoppel issues for this Court with respect to game publishers. Indeed, to the extent Valve is worried about inconsistent results, that is a problem of Valve's own creation resulting from its own SSA purporting to preclude class or representative actions, and its own motion to compel arbitration. That is not a basis to stay Wolfire's unaffected claims. *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 991 (N.D. Cal. 2016) ("the potential for inconsistent results in this forum is insufficient to overcome" non-arbitrating plaintiffs' right to proceed with their claims).

Moreover, Valve has argued that there may be a "heightened risk" of inconsistent results given the potential for conflicting injunctive relief. Mot. at 14-15. This is hypocritical, however, given that, via the SSA, Valve is seeking to deny the consumer plaintiffs the full representative injunctive relief afforded to them by their statutory claims. *See supra* at Section III.A.2. If the SSA were followed to the letter, it is not clear what injunctive relief individual consumers could obtain,

Opposition to Motion to Compel Arbitration
Case No. Case No. 2:21-CV-563

21

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

but it would not involve significant changes to Valve's business practices, as Valve claims (at 15). In near the same breath, Valve makes clear that, due to the SSA's limitations on representative injunctive relief, only Wolfire could obtain injunctive relief as to "the public"; *i.e.*, relief that would force Valve to cease its anticompetitive and unfair business practices. *Id.* Therefore, any risk that Wolfire's injunctive relief might be inconsistent with the result of an individual arbitration is in fact minimal.

### 4.   Valve Identifies No Cognizable Prejudice From Litigating With Wolfire

Valve articulates no undue prejudice from Wolfire's claims moving forward. Valve's principal argument—*see* Mot. at 15—is that it will bear costs to litigate with Wolfire; but that is not grounds for a stay. *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) (denying stay and noting "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury"); *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (the "expense and annoyance of litigation is part of the social burden of living under government") (citation omitted). Moreover, those are costs that will occur *even if* this Court grants a stay; because the consumer arbitrations could not generate findings or holdings that have any preclusive effect on Wolfire's claims, Wolfire will still be able to litigate its claims unencumbered after the stay ends, and Valve would incur the costs it describes at that point in the future.

Nor will Valve suffer prejudice from continuing in this Court if some consumer claims proceed to arbitration. For its own reasons, Valve chose to not include any arbitration agreement in its publisher contracts. As a result, Valve **must** defend at least game publishers' claims in this Court. That litigation may occur simultaneously with arbitration does not cause Valve any undue prejudice. *See Dependable Highway Express*, 498 F.3d at 1066 ("being required to defend a suit if the stay is vacated does not constitute a clear case of hardship or inequity") (reversing stay).

### 5.   Valve's Various Case Citations Do Not Support a Stay Under These Facts

Finally, none of Valve's cited authorities suggest that a stay is appropriate. Valve relies heavily on cases where the plaintiff signed an arbitration agreement, and the issue for the court was whether to stay *those same plaintiffs'* non-arbitrable claims, because the arbitration or other forum's

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

22

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

1   analysis could substantially impact (if not completely eliminate) the non-arbitrable claims. *See*

2   *Harvey v. Joyce*, 199 F.3d 790, 795-96 (5th Cir. 2000) (staying plaintiffs' claims against non-

3   signatory defendant CTC because "the claims asserted against CTC are based on the same operative

4   facts and are inherently inseparable from the claims against Joyce"); *Sunlight Prod. Techs. v.*

5   *MPOWERD*, 2015 WL 12655479, at *5-*8 (C.D. Cal. Sept. 17, 2015) (staying plaintiffs' claims

6   against defendant when plaintiffs were involved in arbitration against defendant); *T-Mobile USA,*

7   *Inc. v. Montijo*, 2012 WL 6194204, at *6 (W.D. Wash. Dec. 11, 2012) (staying plaintiff's litigation

8   claims in favor of plaintiff's arbitration claims); *Bates v. Morgan Stanley Smith Barney LLC*, 2010

9   WL 3341819, at *6-*7 (E.D. Cal. Aug. 25, 2010) (same); *Morales v. Lexxiom*, 2010 WL 11507515,

10  at *10-*14 (C.D. Cal. Jan. 29, 2010) (same); *Naini v. King Co. Pub. Hosp. Dist. No. 2*, 2020 WL

11  468910 (W.D. Wash. Jan. 29, 2020) (staying plaintiffs' litigation claims in favor of hospital's

12  administrative proceedings). In contrast, Valve concedes here that Wolfire and other game publishers

13  have **never** signed an arbitration agreement.

14      Valve's other core citations involve wholly dissimilar situations, such as where the non-

15  movant did not oppose a stay pending arbitration,[8] or where an upcoming Supreme Court decision

16  could greatly affect several aspects of all asserted claims.[9] In truth, *Ballard v. Corinthian Colleges,*

17  *Inc.*, 2006 WL 2380668 (W.D. Wash. Aug. 16, 2006), and *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d

18  1097 (C.D. Cal. 2002), are Valve's only potentially analogous cases. *Ballard*, 2006 WL 2380668, at

19  *1; *Bischoff*, 180 F. Supp. 2d at 1114-1115. Notably, neither court explained how judicial economy

20  was served via those stays, nor why they were appropriate given the movant did not show how the

21  arbitrations could have preclusive effect on the non-arbitrating plaintiffs.

22

23  ———————

[8] *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1304
24  (N.D. Cal. 2018) ("In the instant case, Plaintiffs do not dispute that the Court should stay all
    proceedings if it orders arbitration as to any Plaintiff.").

25  [9] *In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, 2010 WL 11469932 (C.D.
26  Cal. Nov. 15, 2010) (granting a stay where "the Supreme Court's decision may have a substantial
    impact on this case" and "the delay here is likely to be relatively short"); *Babare*, 2020 WL
27  8617424 (explaining "a stay will promote the orderly course of justice because it will allow the
    Supreme Court to settle a question of law that is central to this litigation").

28

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

23

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

1    Both cases are also over fourteen years old. In subsequent cases, courts have noted that stays
2    of non-arbitrable claims typically are only appropriate where the arbitrable and non-arbitrable
3    claims are "inherently inseparable," such as where the arbitrable and non-arbitrable claims involve
4    claims by the same plaintiff for the same injury against different defendants. *See Congdon*, 226 F.
5    Supp. 3d at 990-91 (collecting cases).[10] Where, like here, the movant is unable to show the claims
6    are inherently inseparable—particularly against plaintiffs without arbitration agreements—then a
7    stay is inappropriate. *Id.* at 991; *East West Bank*, 992 F. Supp. 2d at 1135; *see also Kater v. Churchill*
8    *Downs Inc.*, 2019 WL 3944323, at *2 (W.D. Wash. Aug. 21, 2019) (observing "a stay [pending
9    arbitration] is more appropriate when another defendant did not agree to arbitrate but less
10   appropriate when another plaintiff did not").[11]

11   **IV.    CONCLUSION**

12   For the foregoing reasons, Plaintiffs respectfully request that this Court deny Valve's Motion
13   to Compel Arbitration in its entirety.

14

15

16

17

18

19

20

21

22

---

23   [10] *Congdon* rejects *Ballard*'s reasoning on the grounds that "proceeding with the litigation as to
     the [non-arbitration] Plaintiffs in this case would not result in a waste of judicial resources"
24   because "regardless of the outcome of the arbitration, the claims of the [non-arbitration] Plaintiffs
     will need to be litigated in this court." *Congdon*, 226 F. Supp. 3d at 991. The same is true here.

25   [11] *Boeing v. Agric. Ins. Co.*, 2005 WL 2276770 (W.D. Wash. Sept. 29, 2005), another of Valve's
26   citations, is an example of a case with inherently inseparable claims, because there were no
     "means of determining AIG's and Gulf's potential exposure" as cross-claim plaintiffs and co-
27   defendants "without deciding the core dispute between Federal and Boeing" which was subject to
     arbitration. *Id.* That is not true here. The non-arbitration Plaintiffs' claims can be fully resolved
28   without analysis of the arbitration Plaintiffs' claims.

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563                              24

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

1    DATED: August 30, 2021

2

3                                          By   /s/ Alicia Cobb
                                               Alicia Cobb, WSBA # 48685
4                                              QUINN EMANUEL URQUHART &
                                               SULLIVAN, LLP
5                                              1109 First Avenue, Suite 210
                                               Seattle, WA 98101
6                                              Telephone: (206) 905-7000
                                               Fax: (206) 905-7100
7                                              Email: aliciacobb@quinnemanuel.com

8
                                               Steig D. Olson (*pro hac vice*)
9                                              David D. LeRay (*pro hac vice*)
                                               Shane Seppinni (*pro hac vice*)
10                                             QUINN EMANUEL URQUHART &
                                               SULLIVAN, LLP
11                                             51 Madison Avenue, 22nd Floor
                                               New York, NY 10010
12                                             Telephone: (212) 849-7000
                                               Fax: (212) 849-2100
13                                             Email: steigolson@quinnemanuel.com

14
                                               Adam B. Wolfson (*pro hac vice*)
15                                             QUINN EMANUEL URQUHART & SULLIVAN,
                                               LLP
16                                             865 South Figueroa Street, 10th Floor
                                               Los Angeles, CA 90017-2543
17                                             Telephone: (213) 443-3000
                                               Fax: (213) 443-3100
18                                             Email: adamwolfson@quinnemanuel.com

19
                                               Charles B. Stevens (*pro hac vice*)
20                                             QUINN EMANUEL URQUHART &
                                               SULLIVAN, LLP
21                                             50 California Street, 22nd Floor
                                               San Francisco, CA 94111
22                                             Telephone: (415) 875-6600
                                               Fax: (415) 875-6700
23                                             Email: charliestevens@quinnemanuel.com

24
                                               *Attorneys for Daniel Escobar, William Herbert,*
25                                             *and the class.*

26

27

28

Opposition to Motion to Compel Arbitration
Case No. Case No. 2:21-CV-563                              25

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

David D. Golden (*pro hac vice*)
Wyatt Fore (*pro hac vice forthcoming*)
CONSTANTINE CANNON LLP
1001 Pennsylvania Avenue, NW, Suite 1300N
Washington, DC 20004
Telephone: (202) 204-3500
Fax: (202) 204-3501
Email: dgolden@constantinecannon.com

A. Owen Glist (*pro hac vice*)
Ankur Kapoor (*pro hac vice*)
Jeffrey I. Shinder (*pro hac vice*)
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
Telephone: (212) 350-2700
Fax: (212) 350-2701
Email: akapoor@constantinecannon.com

*Attorneys for Wolfire Games, LLC and the class.*

Thomas N. McCormick (*pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
4675 MacArthur Court
Suite 700
Newport Beach, CA 92660
Telephone: (949) 526-7903
Fax: (949) 526-7901
Email: tnmccormick@vorys.com

Kenneth J. Rubin (*pro hac vice*)
Timothy B. McGranor (*pro hac vice*)
Kara M. Mundy (*pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43216-1008
Telephone: (614) 464-6350
Fax: (614) 719-6350
Email: kjrubin@vorys.com
tbmcgranor@vorys.com
kmmundy@vorys.com

*Attorneys for Sean Colvin, Susann Davis, Daniel Ryan Lally, Hope Marchionda, Everett Stephens, and the class.*

Opposition to Motion to Compel Arbitration
Case No. Case No. 2:21-CV-563

26

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

1

## <u>CERTIFICATE OF SERVICE</u>

2

3   I hereby certify that on August 30, 2021, I caused a true and correct copy of the foregoing

4   to be filed in this Court's CM/ECF system, which sent notification of such filing to counsel of

5   record.

6   DATED August 30, 2021

7

8

9   */s/ Alicia Cobb*
    Alicia Cobb, WSBA #48685

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. CASE NO. 2:21-CV-563

27

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000