1

HON. JOHN C. COUGHENOUR

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

10

11

12

13

WOLFIRE GAMES, LLC, SEAN COLVIN,
SUSANN DAVIS, DANIEL ESCOBAR,
WILLIAM HERBERT, RYAN LALLY,
HOPE MARCHIONDA, EVERETT
STEPHENS, individually and on behalf of all
others similarly situated,

CASE NO. 2:21-CV-00563

14

Plaintiffs,

15

v.

16

VALVE CORPORATION,

17

Defendant.

18

19

20

DARK CATT STUDIOS HOLDINGS, INC.,
and DARK CATT STUDIOS INTERACTIVE
LLC, on behalf of themselves and all others
similarly situated,

CASE NO. 2:21-CV-00872

**WOLFIRE PLAINTIFFS' REPLY IN
SUPPORT OF MOTION TO APPOINT
INTERIM COUNSEL AND OPPOSITION
TO DARK CATT'S CROSS-MOTION
FOR APPOINTMENT OF CO-LEAD
INTERIM COUNSEL FOR PROPOSED
DEVELOPER CLASS**

21

Plaintiffs,

22

v.

23

VALVE CORPORATION,

24

Defendant.

NOTED ON MOTION CALENDAR:
September 17, 2021

25

**ORAL ARGUMENT REQUESTED**

26

27

28

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT
CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL
CASE NOS. 2:21-CV-563; 2:21-CV-00872

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT .................................................................................................... 3

    A.    This Case Is Best Prosecuted on Behalf of All Direct Purchasers .......................... 3

    B.    There Is No Conflict Between Publishers and Gamers ........................................... 7

    C.    Ample Precedent Shows Interim Class Counsel Can Simultaneously
            Represent Different Groups of Direct Purchasers ................................................... 11

    D.    Dark Catt's Counsel Fails to Satisfy Fed. R. Civ. P. 23(g)(1)(A) .......................... 12

III.    CONCLUSION .............................................................................................. 12

Wolfire Pls' Reply IFSO Mot. to Appoint Leadership and Opp. to Dark Catt
Cross-Mot. for Appointment as Co-Lead Counsel
Case Nos. 2:21-cv-563; 2:21-cv-00872

i

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page**

3

## **<u>Cases</u>**

4 *Apple Inc. v. Pepper*,
   139 S. Ct. 1514 (2019) ............................................................................................. 5, 6, 9

5

6 *Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ............................................................................................ 11

7 *In re Credit Default Swaps Antitrust Litig.*,
   No. 1:13-md-02476 (S.D.N.Y. Oct. 28, 2015), ECF No. 464-1 ....................................... 11, 12

8

9 *Cummings v. Connell*,
   316 F.3d 886 (9th Cir. 2003) ............................................................................................ 8

10 *In re Glumetza Antitrust Litig.*,
   336 F.R.D. 468 (N.D. Cal. 2020) ...................................................................................... 7

11

12 *In re Google Dig. Advert. Antitrust Litig.*,
   No. 5:20-cv-3556 (N.D. Cal. Feb. 9, 2021), ECF No. 89 .................................................. 9, 10

13 *In re Google Play Developer Antitrust Litig.*,
   No. 3:20-cv-05792 (N.D. Cal. Oct. 1, 2020), ECF No. 44 ................................................ 9

14

15 *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*,
   2021 WL 1217395 (E.D. Pa. Mar. 26, 2021) .................................................................. 8

16 *Kohen v. Pac. Inv. Mgmt. Co. LLC*,
   571 F.3d 672 (7th Cir. 2009) ........................................................................................... 11

17

18 *Krim v. pcOrder.com, Inc.*,
   210 F.R.D. 581 (W.D. Tex. Oct. 21, 2002) ...................................................................... 10

19 *In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ...................................................................................... 11

20

21 *In re Nat'l Football League Players Concussion Inj. Litig.*,
   821 F.3d 410 (3d Cir. 2016) ............................................................................................. 10

22 *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ............................................................................................. 12

23

24 *In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ........................................................................................ 12

25 *Ohio v. American Express Co.*,
   138 S. Ct. 2274 (2018) .......................................................................................... 2, 4, 5, 8

26

27 *In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ........................................................................................... 7

28

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT
CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL
CASE NOS. 2:21-CV-563; 2:21-CV-00872

ii

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

*In re Oxford Health Plans, Inc.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) ........................................................................................ 11

*PLS.com, LLC v. Nat'l Ass'n of Realtors*,
    2021 WL 369545 at *24 (C.D. Cal. Feb. 3, 2021) ............................................................. 5

*In re Treasury Securities Auction Antitrust Litig.*,
    2017 WL 10991411 (S.D.N.Y. Aug. 23, 2017) ................................................................ 11

*US Airways, Inc. v. Sabre Holdings Corp.*,
    938 F.3d 43 (2d Cir. 2019) ............................................................................................ 5, 7

*Vogt v. State Farm Life Ins. Co.*,
    963 F.3d 753 (8th Cir. 2020) ........................................................................................... 8

**Rules**

Fed. R. Civ. P. 23(g)(1)(A) ................................................................................................... 12

**Other Authorities**

*1 Newberg on Class Actions* (5th ed.) ................................................................................ 11

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT
CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL
CASE NOS. 2:21-CV-563; 2:21-CV-00872

iii

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Plaintiffs Wolfire Games, LLC, Sean Colvin, Susann Davis, Daniel Escobar, William Herbert, Ryan Lally, Hope Marchionda, and Everett Stephens ("Wolfire Plaintiffs"), on behalf of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), Constantine Cannon LLP ("Constantine Cannon"), and Vorys, Sater, Seymour and Pease LLP ("Vorys"), submit this brief (i) in reply to Wolfire Plaintiffs' Motion for Appointment of Interim Co-Lead Counsel, and (ii) in opposition to Dark Catt's Cross Motion for Appointment of Co-Lead Interim Counsel for Proposed Developer Class.[1]

## I.   INTRODUCTION

As the Wolfire Plaintiffs demonstrated in their opening motion, Quinn Emanuel, Constantine Cannon, and Vorys developed this case through their hard work and lengthy investigations. These firms filed the first actions, consolidated them in this Court, and have organized to prosecute this matter efficiently and effectively. Quinn Emanuel, Constantine Cannon, and Vorys collaborated to file the Consolidated Amended Class Action Complaint ("CAC"), on behalf of the Wolfire Plaintiffs, which details Valve's anticompetitive conduct and how it harms both game publishers and consumers. And these firms have already devoted hundreds of attorney hours responding to both Valve's motion to dismiss and its motion to compel arbitration of the consumer plaintiffs' claims.[2] These firms are effectively already acting as interim class counsel, and Wolfire Plaintiffs have moved this Court to appoint them to that role.

Nonetheless, at this late stage, Dark Catt moves to break this action into two separate cases, one for game publishers and one for consumers, and asks that Wilson Sonsini ("Wilson") and Lockridge Grindal ("Lockridge") (together, "W&L") be appointed as interim co-lead counsel for the game publishers (who it calls "developers").[3] Cross Mot. at 1-3. W&L's main argument is that

---

[1] "Mot." refers to Wolfire Plaintiffs' Motion for Appointment of Interim Co-Lead Counsel, July 27, 2021, Dkt. 38. "Cross Mot." refers to Dark Catt Plaintiffs' Motion for Appointment of Co-Lead Interim Counsel for Proposed Developer Class, Aug. 13, 2021, Dkt. 46.

[2] *See* Plaintiffs' Opposition to Valve's Motion to Compel Arbitration, Aug. 30, 2021, Dkt. 51; Plaintiffs' Opposition to Valve's Motion to Dismiss, Aug. 30, 2021, Dkt. 54.

[3] PC Desktop Games are *created* in the first instance by developers, but sold and marketed by publishers. The direct purchasers in this case are the publishers (although some entities are both).

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT
CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL
CASE NOS. 2:21-CV-563; 2:21-CV-00872                                    1

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

game publishers "are better off in their own case" because "[t]o accommodate both Developers and game buyers, the Wolfire Plaintiffs allege a more complex case than necessary to recover for Developers alone." Cross Mot. at 2. Relatedly, they argue that if game publishers and consumers proceed in the same case, counsel will make "suboptimal litigation choices." *Id*. at 2. W&L's effort to drive a wedge into the direct-purchaser class, to break this case into two, and manufacture reasons to appoint them interim co-lead counsel should be rejected.

Quinn Emanuel, Constantine Cannon, and Vorys brought this consolidated case on behalf of a proposed class of *all* direct purchasers from Valve—game publishers *and* consumers—because Valve's conduct harms *all* direct purchasers in the same essential way, at the same time, and for the same reasons. Moreover, proving that Valve's conduct causes anticompetitive effects necessarily involves an analysis of both game publishers and consumers, because this case involves a two-sided platform. Litigating this case on behalf of just one group of direct purchasers in isolation, as W&L propose, is an ill-conceived litigation strategy that disregards the leading Supreme Court authority. In *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018) ("*Amex*"), the Court affirmed the Second Circuit's decision to overturn a judgment of antitrust liability against a two-sided platform (American Express), because the plaintiffs wrongly focused on the experiences of only one set of American Express customers (there, merchants), while disregarding the customers on the other side of the platform (there, consumers).

W&L propose to repeat the very error the plaintiffs made in *Amex*: proving competitive harm by focusing solely on the prices charged to customers on one side of a two-sided platform (game publishers). *Amex* is clear: proving competitive harm by a two-sided platform requires showing *overall* competitive harm, and accounting for the experiences of purchasers on *both* sides of the platform. Quinn Emanuel, Constantine Cannon, and Vorys have heeded and applied that lesson in this case, while W&L propose to ignore it.

Because W&L would not add value to this action at this stage, and because their proposed approach decreases the class's chances of success while adding cost and inefficiencies, their motion should be denied. Instead, the three firms—Quinn Emanuel, Constantine Cannon, and Vorys— that

Wolfire Pls' Reply IFSO Mot. to Appoint Leadership and Opp. to Dark Catt
Cross-Mot. for Appointment as Co-Lead Counsel
Case Nos. 2:21-cv-563; 2;21-cv-00872

2

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

1  developed, originated, and have been effectively prosecuting this case for several months should be

2  appointed as Interim Co-Lead Class Counsel.

3  **II.  ARGUMENT**

4       **A.  This Case Is Best Prosecuted on Behalf of All Direct Purchasers**

5       Quinn Emanuel, Constantine Cannon, and Vorys pled this case on behalf of game publishers

6  and consumers for a simple reason: it is in the best interest of *all* direct purchasers.

7       Valve is a two-sided platform that links two sets of purchasers: "The Steam Gaming Platform

8  connects gamers to gamers and gamers to publishers. As more gamers engage with the Steam

9  Gaming Platform, its value increases for both gamers (direct network effects through the ability of

10  gamers to find others to play games with and to develop a more robust social network) and

11  publishers (indirect network effects through access to more gamers). In turn, more publishers on the

12  Steam Gaming Platform increases its value for gamers (further indirect network effects)." CAC

13  ¶ 112. Valve's excessive commissions come "at the expense of the publishers who create the games

14  ***and*** the gamers who play them." *Id.* ¶ 271 (emphasis added). When a transaction occurs in the Steam

15  Store, Valve's scheme harms *both* sets of Plaintiffs simultaneously. *Id* ¶¶ 210–227, 266-301.

16       Dark Catt itself acknowledges many of these two-sided facts in its own Complaint. *Dark*

17  *Catt Studios Holdings, Inc. et al. v. Valve Corp.,* Case No. 2:21-cv-00872-JCC (W.D. Wash. June

18  28, 2021), ECF No. 1 ("DCC")). For example, Dark Catt alleges that "if not for Valve's restrictive

19  terms requiring Developers to offer their best pricing and availability on Steam compared to another

20  store, Developers could offer to sell their games—and enhancements to their games—at lower prices

21  on competing storefronts." DCC ¶ 11. Dark Catt also alleges publishers could "lower retail price[s]

22  to game buyers" which would "allow Developers to reach a broader consumer base and increase

23  revenues." DCC ¶ 72.

24       Notwithstanding the indisputable two-sided factors at play in this case, W&L—for purposes

25  of their leadership application—explicitly state that they will pursue this *solely as a one-sided case*.

26  Cross Mot. at 4 ("*The Wolfire Complaint relies on* the Congressional Digital Markets Report *and a*

27  *two-sided platform theory of harm. See* Wolfire Compl. ¶¶ 79, 111, 182, 248, 281-82. *The Dark Catt*

28

Wolfire Pls' Reply IFSO Mot. to Appoint Leadership and Opp. to Dark Catt
Cross-Mot. for Appointment as Co-Lead Counsel
Case Nos. 2:21-CV-563; 2:21-CV-00872

3

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

1    *Complaint does not*.") (emphases added). W&L assert publishers will be better off if they pursue

2    one-sided claims in a separate case, because then publishers will not have to concern themselves

3    with the prices consumers pay on the other side of the platform. Cross Mot. at 6. The problem with

4    W&L's outlined approach is that it is not tenable after *Amex*.[4]

5         American Express provides services through a two-sided credit card platform, where it

6    facilitates credit-card transactions between merchants on one side of the platform and consumers on

7    the other. *Amex,* 138 S. Ct. at 2280. In order to prevent merchants from encouraging the use of

8    cheaper credit cards, American Express implemented anti-steering provisions in its contracts with

9    merchants. *Id*. at 2283. The U.S. Department of Justice and several state attorneys general

10   challenged these restraints as anticompetitive because they allegedly prevented competition among

11   credit-card networks. *Id*.

12        The Government won at trial but the verdict was reversed in the Second Circuit. *Id*. The

13   Supreme Court affirmed the Second Circuit, holding that the Government did not prove

14   anticompetitive effects because it did not establish that Amex's anti-steering practices caused an

15   overall *competitive harm* after looking at *both* the consumer *and* merchant side of the platform

16   together. *Id*. at 2287 (explaining that "plaintiffs stake their entire case on proving that Amex's

17   agreements increase merchant fees," but "plaintiffs' argument about merchant fees wrongly focuses

18   on only one side of the two-sided credit-card market"). The Supreme Court held that in order to

19   demonstrate anticompetitive harm by a two-sided transaction platform, it is necessary to establish

20   anticompetitive effects on the "two-sided market … as a whole" and that merely showing effects on

21   one side of the platform is insufficient to carry the plaintiffs' burden. *Id*. at 2287.

22        W&L's proposal to split this case into two different cases, so they can serve as lead counsel

23   for a one-sided case on behalf of publishers alone, is not in the best interests of any class members.

24   By defying the Supreme Court's leading authority in two-sided platform cases, W&L's approach

25

_____

26   [4] Quinn Emanuel, Constantine Cannon, and Vorys have extensive experience litigating two-sided
     platform cases on plaintiffs' behalf, arising from their experience in, *inter alia*, *In re Payment*
27   *Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-md-01720-
     MKB-VMS (E.D.N.Y.). W&L have not pointed to similar experience.
28

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT
CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL
CASE NOS. 2:21-CV-563; 2:21-CV-00872                                      4                          QUINN EMANUEL URQUHART & SULLIVAN
                                                                                                     1109 FIRST AVENUE, SUITE 210
                                                                                                     SEATTLE, WASHINGTON 98101
                                                                                                     TEL: (206) 905-7000

could lead to an outright loss. For example, following *Amex*, the Second Circuit in *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43 (2d Cir. 2019) vacated jury findings of antitrust liability against a two-sided technology platform, Sabre, a global distribution system. The Second Circuit found that the jury verdict was erroneously premised on an analysis of a one-sided market instead of a two-sided platform market. *Id.* at 58; *see also PLS.com, LLC v. Nat'l Ass'n of Realtors*, 516 F. Supp. 3d 1047, 1062 (C.D. Cal. 2021) (granting defendants' motion to dismiss where plaintiff "simply ha[d] not alleged plausible facts to show an injury to consumers on both sides of the market" as required under *Amex*).

These cases demonstrate why publishers are better off pursuing a two-sided case, as laid out in the Wolfire CAC, rather than the one-sided, developer-only case W&L proposes. After *Amex*, ignoring Valve's conduct on one side of the platform, while claiming damages on the other side of the platform, risks dismissal or judgment in Valve's favor. All plaintiffs must prove *overall* competitive harm, which is what the Wolfire CAC is designed to do.

W&L also state that plaintiffs' claims will be "undermined" because counsel for the omnibus class would argue "for, in effect, double recovery"—Cross-Mot. at 8—but they get the concern about double recovery exactly backwards. If the case is litigated on behalf of all direct purchasers at the same time, as in the Wolfire CAC, there is no risk of double recovery: the Wolfire Plaintiffs will put forward a damages model that calculates total damages on both sides while avoiding duplicative damages or inconsistent theories.

On the other hand, if the case is split and litigated separately by different counsel, W&L have already made clear that, despite basic economics and the law, they would try to claim all or nearly all damages flowing from Valve's supracompetitive commissions for publishers. That would create a race to the courthouse, and if the publishers were winning the race to trial, the consumers would surely need to intervene as necessary parties to ensure they were not prejudiced. *See Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1529 (2019) (Gorsuch J., dissenting) (noting that joinder of purchasers on both sides of a two-sided platform may be necessary to prevent duplicative damages

Wolfire Pls' Reply IFSO Mot. to Appoint Leadership and Opp. to Dark Catt
Cross-Mot. for Appointment as Co-Lead Counsel
Case Nos. 2:21-CV-563; 2:21-CV-00872

5

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

recoveries). Thus this case would be right back where it started—with a single litigation brought on behalf of publishers and gamers.

This is not a theoretical risk; rather, it is a result of both "sides" indisputably possessing direct purchaser antitrust standing under *Apple v. Pepper*. Indeed, in *In re Apple iPhone Antitrust Litigation* (which was one of the cases at the heart of *Apple v. Pepper* and is now on remand), Apple recently filed a motion seeking clarity on how the consumer class will try the case if they are not joined with publishers.[5] The publishers in that case claimed the *full amount of commission overcharges as damages*, and did not model any damages to consumers.[6] Apple subsequently argued that it is effectively impossible for the consumers to separately try their case, because (according to Apple), "[s]o long as participants on both sides of the platform seek to recover the same alleged 'overcharges' (commissions), Apple is impermissibly subjected to the possibility of paying twice for the same conduct."[7] Although the Wolfire Plaintiffs disagree with the assumptions underlying Apple's argument, W&L's proposed approach here would virtually ensure Valve makes nearly identical arguments down the road. But these issues are easily addressed (and disposed of) by pursuing a single class action on behalf of *both* publishers and gamers.[8]

---

[5] *See* Reply in Support of Defendant Apple Inc.'s Motion to Compel Plaintiffs to Submit Trial Plan*, In re Apple iPhone Antitrust Litigation*, Case No. 4:11-cv-06714-YGR (N.D. Cal. Aug. 31, 2021), ECF No. 515 ("Apple Reply").

[6] *Id.* at 2 (nothing that "[t]he Developer Plaintiffs' expert opined that the rate is 0%").

[7] *Id.* at 3.

[8] W&L imply that it was "suboptimal" for Wolfire to proceed with game purchasers, because, despite no arbitration agreement between Valve and Wolfire, Valve moved to stay Wolfire's claims pending any consumer arbitrations. Wolfire cannot prevent Valve from making a baseless motion and, for the reasons discussed above, Wolfire's choice to bring a class action alongside game purchasers actually increases efficiencies and effectiveness. Regardless, in its recently-filed motion to dismiss the Dark Catt complaint, Valve says that "[i]f the Court stays Wolfire's claims, Valve will move to stay Dark Catt's as well." Defendant Valve Corporation's Motion to Dismiss Plaintiffs' Class Action Complaint for Damages and Injunctive Relief, at 1, *Dark Catt Studios Holdings, Inc. et al. v. Valve Corp.,* Case No. 2:21-cv-00872-JCC, (W.D. Wash. Aug. 30, 2021), ECF No. 38; *see also id.* at 24 ("The Court should grant the motion and dismiss its claims, or stay them pending the *Wolfire* individual plaintiffs' arbitration.").

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL CASE NOS. 2:21-CV-563; 2:21-CV-00872

6

QUINN EMANUEL URQUHART & SULLIVAN 1109 FIRST AVENUE, SUITE 210 SEATTLE, WASHINGTON 98101 TEL: (206) 905-7000

**B.      There Is No Conflict Between Publishers and Gamers**

W&L also stake their leadership bid on a speculative and unsupported assertion that game publishers and consumers have "an unavoidable conflict of interest" supposedly mandating separate representation. Cross Mot. at 2. Late-coming firms vying for leadership often make such arguments, but courts just as often reject them. Courts are hesitant to "[deny] class certification on the basis of speculative conflicts." *In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 482 (N.D. Cal. 2020). "'Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (internal citation omitted).

The vague issues W&L raise do not reach that high bar. As set forth above, under *Amex*, both publishers and gamers must prove *overall* anticompetitive effects on both side of Valve's platform, creating a *unity* of interests. Both sets of plaintiffs will need to establish (1) Valve has market power in the relevant markets; (2) Valve has engaged in anticompetitive conduct, including but not limited to tying and enforcement of the Valve PMFN; (3) Valve's anticompetitive conduct led to supracompetitive commissions; and (4) the supracompetitive commissions harmed *both* publishers and gamers.

Nor is there any fundamental conflict about damages allocation. To establish damages in this case, both publishers and gamers will need to prove that, in the but-for world, Valve would have charged *lower* commissions in the absence of its anticompetitive conduct—for illustration, 12% rather than 30%. Under *Amex*, plaintiffs will need to present an economic model that reliably analyzes how much publishers would charge gamers absent the overcharge. That is true regardless of who is bringing the case—an argument that publishers would keep the entire overcharge for themselves with no showing of consumer harm risks running afoul of *Amex. See, e.g., US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 48 (2d Cir. 2019).[9]

---

[9] Allocating overcharges in this manner does *not* mean plaintiffs would be unable to "recover fully" as claimed by W&L. *See* Cross Mot. at 7. As a matter of law, neither publishers nor gamers could keep the full 18% under *Amex* and *Apple v. Pepper*, and thus would necessarily need to model allocating some portion of the overcharges to the other "side" of the platform.

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT
CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL
CASE NOS. 2:21-CV-563; 2:21-CV-00872

7

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

W&L's argument boils down to the claim that a result-driven economist could tweak the damage allocation assumptions one way or the other to bolster the damages for one side. But proffering an unreliable, result-driven model would bring litigation risk, and "even if there are slightly divergent theories that maximize damages for certain members of the class, this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability." *Vogt v. State Farm Life Ins. Co*., 963 F.3d 753, 768 (8th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 577 (Apr. 19, 2021) (internal citations omitted). Further, speculative damages conflicts raise no concern about adequacy of representation. *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003).

In fact, W&L's authorities prove this point. In *Halman*, which is W&L's *only authority* for W&L's speculative "maximize their damages" conflict, *see* Cross Mot. at 6, the proposed named plaintiffs initiated *two separate lawsuits* where their fundamental theories of liability were in direct conflict—in one case they argued Teva's conduct *deflated* stock prices and in another case they argued Teva's conduct *inflated* stock prices. *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*, 2021 WL 1217395, at *9 (E.D. Pa. Mar. 26, 2021). That created a situation where those plaintiffs "would be forced to make an argument" in one case "that directly contradicts their argument" in the second case. *Id*. at 22.[10] Here, there is no contradiction—all direct purchasers (publishers and gamers) allege that Valve's commissions are at supracompetitive levels. *See* CAC ¶ 268; DCC ¶ 195. And, under *Amex*, both sets of plaintiffs need to (and will) establish harm on *both* sides of Valve's platform, meaning that damages flowing from inflated commissions necessarily flow to *both* sets of plaintiffs. There is thus a "uniformity of legal theory," *see* Cross Mot. at 6, that supports a single class.

W&L claim that *In re Apple iPhone Antitrust Litig*. raised a "factual conflict" and "differing litigation approaches for the sellers and buyers." Cross Mot. at 8. As noted above, that case actually

---

[10] The *Halman* case is also distinguishable on the basis that the proposed class counsel withheld agreements to include undisclosed co-counsel in prosecuting the case; conduct the court found "troubling." *Halman*, 2021 WL 1217395 at *11. This lack of transparency alone "cause[d] the Court to seriously question" if the proposed counsel "could fairly and adequately represent the class's interests." *Id*. at 13. By contrast, Quinn Emanuel, Constantine Cannon, and Vorys are completely open about the scope of their proposed case leadership slate.

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT
CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL
CASE NOS. 2:21-CV-563; 2:21-CV-00872

8

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

1    shows the dangers of dividing the purchasers on both sides of a platform into different cases. And

2    while consumers' and publishers' experts did, as W&L note, come up with different but-for world

3    commission numbers, Cross Mot. at 8-9, that is a bug, not a feature, of the *iPhone* approach—Apple

4    has sought to leverage differences in their approaches for litigation advantage.[11] *In re Apple iPhone*

5    *Antitrust Litig.* is thus a cautionary tale for any approach that does *not* involve a single, unified class

6    of all direct purchasers.[12] In any event, the *Apple* orders W&L cite appointing interim counsel, Cross

7    Mot. at 8, do not discuss conflicts *at all*.

8        W&L misleadingly argue that "Courts in this Circuit have repeatedly recognized the conflict

9    in similar situations." Cross Mot. at 9. *None* of their cited authorities for this proposition analyze

10   whether a conflict exists between plaintiffs on two sides of a two-sided platform. In some cases, no

11   counsel applied for leadership of a class involving all direct purchasers—the courts did not order

12   that it was necessary to split the class because of a "conflict."[13] And in W&L's sole example where

13   one set of counsel proposed representation of two sets of plaintiffs, but was not appointed to do so,

14   *Google Digital Advertising Antitrust Litig.*, the court did not analyze any potential conflicts and

15   explained it "will invite submissions concerning ongoing leadership of both the *Advertising* and

16   *Publisher* actions following resolution of the pleadings in both cases,"[14] and in an earlier order stated

17   that the court "will consider whether further consolidation" of the publisher and advertiser cases "is

18

---

19 [11] Apple Reply at 2 (arguing that "[t]he Court has before it three overly simplified assumptions regarding the pass-through rate").

20
21 [12] Moreover, the fact that separate counsel represent publishers and consumers there was a quirk of the procedural timing more than a product of speculative conflicts. Consumers had filed their initial class action in 2011, but *Apple v Pepper*, which held both consumers and publishers had
22 antitrust standing, was not decided until May 13, 2019. 139 S. Ct. 1514, 1519 (2019). App publishers brought their own lawsuit mere weeks later. Complaint, Dkt. 1 *Cameron et. al. v.*
23 *Apple*, Case 5:19-cv-03074 (N.D. Cal., June 4, 2019).

24 [13] *See Klein v. Facebook Inc.*, No. 5:20-cv-08570 (N.D. Cal. Mar. 2021), ECF Nos. 55-60 (applications for *either* appointment as consumers' counsel or advertisers' counsel, but no
25 applications for appointment of all direct purchasers); *In re Google Play Developer Antitrust Litig.*, No. 3:20-cv-05792 (N.D. Cal. Oct. 1, 2020), ECF No. 44, at 22 ("[T]he [parties] do not
26 believe the *Carr* consumer case and the *PSB* developer case should be consolidated.").

27 [14] Order Regarding Appointment of Counsel, No. 5:20-cv-3556 (N.D. Cal. Apr. 26, 2021), ECF
28 No. 133.

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT
CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL
CASE NOS. 2:21-CV-563; 2:21-CV-00872          9              QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

1    warranted" after the "pleadings are settled"[15] which has not occurred.

2         W&L also claim that the purported "conflict cannot be solved by assigning interim class

3    counsel to different subclasses, and bringing in new lawyers later on will increase costs and

4    inefficiencies." Cross Mot. at 3. This is puzzling, as Quinn Emanuel, Constantine Cannon, and

5    Vorys have structured the CAC to maintain flexibility and be responsive to the class's needs. If this

6    Court determines at a later date that the class is best divided into subclasses, the CAC already alleges

7    three subclasses along the most natural divisions: Constantine Cannon's individual client is a

8    publisher, while Quinn Emanuel's individual clients are game purchasers and Vorys's individual

9    clients are game purchasers and parents—and it is clear that the three firms could represent these

10   subclasses if need be. *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 429

11   (3d Cir. 2016) (affirming settlement where subclass counsel were appointed from the Plaintiffs'

12   Steering Committee, and explaining objectors "point us to no precedent" requiring new lawyers for

13   subclass representation). Like the objectors in *NFL*, W&L point to no authority stating that subclass

14   representation requires the appointment of new attorneys.[16]

15        W&L also gloss over the obvious point on costs—it would be far more costly and inefficient

16   to have two sets of attorneys pursuing parallel, virtually identical litigations simply because of the

17   speculative possibility that the overall class might need to be divided into subclasses in the future.

18   And W&L do not even dispute that any purported conflict could be addressed if and when it arises.

19   *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009) (should potential conflict

20   become real, "the district court can certify subclasses with separate representation").

21        As noted, courts often reject speculative conflict theories of the type Dark Catt proffers here,

22   ────────────────────

23   [15] Case Mgmt. Order No. 1, No. 5:20-cv-3556 (N.D. Cal. Feb. 9, 2021), ECF No. 89, at ¶ 5.

24   [16] The only W&L case that remotely touches on this issue is *Krim*, Cross Mot. at 10, which stated
     "Conflicts of interest may exist for class counsel if they are involved in multiple lawsuits for the
     named representative or against the same defendants." *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581,

25   589 (W.D. Tex. Oct. 21, 2002) (citing *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 678-79 (N.D.

26   Ohio 1995) (noting that the risk exists for potential class members that counsel will trade off
     certain of their interests to serve the interests of other clients)). Here, however, there is only a

27   single lawsuit, and thus it is impossible for class counsel to discretely trade off interests in one
     lawsuit to bolster a second lawsuit.

28

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT
CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL
CASE NOS. 2:21-CV-563; 2:21-CV-00872

10

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

especially when pre-existing counsel are already deep into motions practice on the complaint. *See In re Treasury Securities Auction Antitrust Litig.* ("*Treasuries*"), 2017 WL 10991411, *2 (S.D.N.Y. Aug. 23, 2017) (noting that appointed counsel "group has already worked cooperatively and efficiently for the benefit of the class for a number of months," and "representation by more than three firms would likely lead to unnecessary duplication of work, hinder efficient decision making, and pose organizational and management challenges."). Because W&L have "not demonstrated that there is an actual conflict between class members that requires independent representation," *Treasuries*, at *6, their leadership application should be denied.

### C.    Ample Precedent Shows Interim Class Counsel Can Simultaneously Represent Different Groups of Direct Purchasers

W&L say they "are not aware of a case allowing interim lead counsel to represent buyers and sellers." Cross Mot. at 3. But W&L's theory that sellers and buyers are inherently in conflict "has been widely discredited" for over twenty years. *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 377–78 (S.D.N.Y. 2000); *see also 1 Newberg on Class Actions* § 3:62 (5th ed.) ("Courts generally reject the argument that an intra-class conflict exists" based on "different class members desiring different methods of calculating damages"); *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975) (rejecting alleged buyer/seller conflict as non-existent or "peripheral" and "substantially outweighed by the class members' common interests"). In fact, many courts have certified classes containing distinct groups of plaintiffs—represented by the same class counsel—where, as here, the groups share "an interest in proving the existence" of the anticompetitive conduct, and "in maximizing the aggregate amount of class-wide damages." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 513 (S.D.N.Y. 1996) (certifying a class of stock buyers and sellers).

As one obvious example, in the *Credit Default Swaps* case, where Quinn Emanuel served as interim co-lead counsel and achieved a historic $1.9 billion recovery for the class—litigating at a level the experienced mediator in that case stated was some of the finest he had ever seen—the proposed class consisted of both buyers and sellers, much like the proposed class here. *See* Order Preliminarily Approving Settlements, *In re Credit Default Swaps Antitrust Litig.*, No. 1:13-md-02476 (S.D.N.Y. Oct. 28, 2015) ("*CDS*"), ECF No. 464-1, at 3 (certifying class of "all persons who

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT
CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL
CASE NOS. 2:21-CV-563; 2:21-CV-00872

11

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

. . . *purchased CDS from or sold CDS to* the Dealer Defendants, a Released Party, or any purported co-conspirator in any Covered Transaction"). *CDS* is not unique. *See, e.g.*, *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 73 (S.D.N.Y. 2009) ("the mere presence of purchasers and sellers in a given class does not provide a basis for denying class certification"); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 176 n.16, 185-86 (3d Cir. 2001), as amended (Oct. 16, 2001) (identifying no conflict in a class consisting "of all persons who placed market orders with Merrill Lynch or PaineWebber or Dean Witter to purchase or sell shares of OTC stock").

### D.    Dark Catt's Counsel Fails to Satisfy Fed. R. Civ. P. 23(g)(1)(A)

Not only have W&L failed to demonstrate a conflict requiring separate representation, they have not otherwise satisfied the factors relevant to the appointment of counsel under Fed. R. Civ. P. 23(g)(1)(A). While Wilson (but not Lockridge) claims to have been retained in the fall of 2020 to investigate some unspecified conduct by Valve "against Dark Catt related to Valve's Steam gaming store"—conduct which even Wilson does not claim related to the antitrust violations alleged here— and that investigation at some unspecified point "broadened into looking into the scope and impact of Valve's conduct on other similarly situated personal computer ('PC') game developers," ECF No. 47, O'Rourke Decl. ¶ 4, W&L did not file their complaint until June 28, 2021—*five months* after the *Colvin* action, *two months* after the *Wolfire* action, and several weeks after the CAC. And in the time since, Dark Catt has done little to move its case along—just this week, Valve filed its motion to dismiss the DCC, to which Dark Catt has yet to respond.

## III.    CONCLUSION

For the reasons set forth above, the Court should grant Wolfire Plaintiffs' Motion and deny Dark Catt's Cross-Motion.

Wolfire Pls' Reply IFSO Mot. to Appoint Leadership and Opp. to Dark Catt
Cross-Mot. for Appointment as Co-Lead Counsel
Case Nos. 2:21-cv-563; 2:21-cv-00872

12

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

1    DATED: September 3, 2021

2                                              By   /s/ Alicia Cobb
                                                  Alicia Cobb, WSBA # 48685
3                                                 QUINN EMANUEL URQUHART &
                                                  SULLIVAN, LLP
4                                                 1109 First Avenue, Suite 210
5                                                 Seattle, WA 98101
                                                  Telephone: (206) 905-7000
6                                                 Fax: (206) 905-7100
                                                  Email: aliciacobb@quinnemanuel.com
7

8                                                 Steig D. Olson (*pro hac vice*)
                                                  David D. LeRay (*pro hac vice*)
9                                                 Shane Seppinni (*pro hac vice*)
                                                  QUINN EMANUEL URQUHART &
10                                                SULLIVAN, LLP
11                                                51 Madison Avenue, 22nd Floor
                                                  New York, NY 10010
12                                                Telephone: (212) 849-7000
                                                  Fax: (212) 849-2100
13                                                Email: steigolson@quinnemanuel.com

14
                                                  Adam B. Wolfson (*pro hac vice*)
15                                                QUINN EMANUEL URQUHART &
                                                  SULLIVAN, LLP
16                                                865 South Figueroa Street, 10th Floor
                                                  Los Angeles, CA 90017-2543
17                                                Telephone: (213) 443-3000
                                                  Fax: (213) 443-3100
18                                                Email: adamwolfson@quinnemanuel.com

19
                                                  Charles B. Stevens (*pro hac vice*)
20                                                QUINN EMANUEL URQUHART &
                                                  SULLIVAN, LLP
21                                                50 California Street, 22nd Floor
                                                  San Francisco, CA 94111
22                                                Telephone: (415) 875-6600
                                                  Fax: (415) 875-6700
23                                                Email: charliestevens@quinnemanuel.com

24
                                                  *Attorneys for Daniel Escobar, William Herbert,*
25                                                *and the class.*

26

27

28

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT
CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL
CASE NOS. 2:21-CV-563; 2:21-CV-00872

13

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

| | | |
|---|---|---|
| 1 | David D. Golden (*pro hac vice*)<br>Wyatt Fore (*pro hac vice forthcoming*) | Thomas N. McCormick (*pro hac vice*)<br>VORYS, SATER, SEYMOUR AND PEASE LLP |
| 2 | CONSTANTINE CANNON LLP<br>1001 Pennsylvania Avenue, NW, Suite 1300N | 4675 MacArthur Court<br>Suite 700 |
| 3 | Washington, DC 20004<br>Telephone: (202) 204-3500 | Newport Beach, CA 92660<br>Telephone: (949) 526-7903 |
| 4 | Fax: (202) 204-3501<br>Email: dgolden@constantinecannon.com | Fax: (949) 383-<br>Email: tnmccormick@vorys.com |
| 5 | | |
| 6 | A. Owen Glist (*pro hac vice*)<br>Ankur Kapoor (*pro hac vice*) | Kenneth J. Rubin (*pro hac vice*) |
| 7 | Jeffrey I. Shinder (*pro hac vice*)<br>CONSTANTINE CANNON LLP | Timothy B. McGranor (*pro hac vice*)<br>Kara M. Mundy (*pro hac vice*) |
| 8 | 335 Madison Avenue, 9th Floor<br>New York, NY 10017 | VORYS, SATER, SEYMOUR AND PEASE LLP<br>52 East Gay Street |
| 9 | Telephone: (212) 350-2700<br>Fax: (212) 350-2701 | Columbus, OH 43216-1008<br>Telephone: (614) 464-6400 |
| 10 | Email: akapoor@constantinecannon.com | Fax: (614) 719-6350 |
| 11 | | Email: kjrubin@vorys.com<br>tbmcgranor@vorys.com |
| 12 | | kmmundy@vorys.com |
| 13 | *Attorneys for Wolfire Games, LLC and the* | *Attorneys for Sean Colvin, Susann Davis, Daniel* |
| 14 | *class.* | *Ryan Lally, Hope Marchionda, Everett Stephens,*<br>*and the class.* |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT<br>CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL<br>CASE NOS. 2:21-CV-563; 2:21-CV-00872

14

QUINN EMANUEL URQUHART & SULLIVAN<br>1109 FIRST AVENUE, SUITE 210<br>SEATTLE, WASHINGTON 98101<br>TEL: (206) 905-7000

1    <u>**CERTIFICATE OF SERVICE**</u>

2        I hereby certify that on September 3, 2021, I caused a true and correct copy of the

3    foregoing to be filed in this Court's CM/ECF system, which sent notification of such filing to

4    counsel of record.

5        DATED September 3, 2021.

6

7

8        */s/ Alicia Cobb*
         Alicia Cobb, WSBA #48685

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOLFIRE PLS' REPLY IFSO MOT. TO APPOINT LEADERSHIP AND OPP. TO DARK CATT
CROSS-MOT. FOR APPOINTMENT AS CO-LEAD COUNSEL
CASE NOS. 2:21-CV-563; 2:21-CV-00872                              15                    QUINN EMANUEL URQUHART & SULLIVAN
                                                                                        1109 FIRST AVENUE, SUITE 210
                                                                                        SEATTLE, WASHINGTON 98101
                                                                                        TEL: (206) 905-7000