The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WOLFIRE GAMES, LLC, William Herbert and Daniel Escobar, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-00563-JCC |
| Plaintiffs, | |
| v. | |
| VALVE CORPORATION, | |
| Defendant. | |
| SEAN COLVIN, EVERETT STEPHENS, RYAN LALLY, SUSANN DAVIS, and HOPE MARCHIONDA, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-00650-JCC |
| Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANT VALVE CORPORATION'S MOTION TO COMPEL ARBITRATION** |
| v. | |
| VALVE CORPORATION, | **NOTE ON MOTION CALENDAR:** **September 17, 2021** |
| Defendant. | |

1    Plaintiffs try to lead the Court down an erroneous path to avoid their agreement to

2    individually arbitrate their claims against Valve—an agreement this Court and the Ninth Circuit

3    recently held was valid and enforceable.

4    Here, the parties' arbitration agreement delegates questions of validity and arbitrability to

5    the arbitrator. *See G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. Apr. 3, 2020). As such,

6    *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) ("*Rent-A-Center*"), defines this Court's

7    task. Under *Rent-A-Center*, when an arbitration agreement includes a delegation clause, all

8    unconscionability challenges to that agreement are delegated to the arbitrator unless the

9    delegation clause itself is challenged as unconscionable. Here, Plaintiffs do not challenge the

10   delegation clause. Their unconscionability challenges are for arbitrators, not this Court.

11   Nor can Plaintiffs invoke an alleged "poison pill" to avoid their arbitration agreement.

12   Instead of a "poison pill," the parties agreed that any illegal or unenforceable part of their

13   arbitration agreement will be severed and "the rest will remain in effect (with an arbitration

14   award issued before any court proceeding begins)." Steam Subscriber Agreement (Dkt. #36-5)

15   ("SSA") § 11.E. Accordingly, Plaintiffs must pursue their individual claims in arbitration to the

16   extent of the arbitrator's authority. If they win an award and are right that the contractual

17   limitations are illegal or unenforceable because the arbitrator cannot order the "the market-

18   remedying injunctive relief they seek," Opposition to Motion to Compel (Dkt. #51) ("Opp.") at

19   8, they are then free to seek a market-wide injunction in court "with an arbitration award issued

20   before any court proceeding begins." SSA § 11.E. The Ninth Circuit invited this approach in

21   *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), and Valve's arbitration agreement

22   provides it.

23   Plaintiffs also attempt to rewrite history by arguing Plaintiffs Davis and Marchionda—

24   both of whom the Complaint pleads "purchased PC Desktop Games through the Steam Store"—

25   were actually *not* purchasers, and therefore do not have to honor the arbitration agreement all

26   purchasers agree to. If they were not purchasers of course they have no claims and should not be

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1  part of this case.  And, even if they didn't "push the final button" to execute the transaction, their

2  participation binds them to the arbitration agreement under agency principles.

3       Finally, Wolfire's arguments against staying its claims until after the arbitrations ignore

4  that all Plaintiffs base all claims on identical allegations, with Plaintiffs asserting they were all

5  harmed by the same alleged conduct, claiming to share identical issues of causation, seeking

6  damages from the same purported overcharge, and seeking the same injunction.  Staying

7  Wolfire's claims will allow the arbitrators to determine whether those claims have merit.  If the

8  individual Plaintiffs win, they, like Wolfire, may seek "injunctive relief … [to] benefit the public

9  as a whole" in this Court.  Consolidated Amended Complaint (Dkt. #34) ("CAC") ¶ 22.  It would

10  be far more efficient for the Court to wait for an arbitration award and consider in one

11  proceeding whether the individual Plaintiffs (if they win at arbitration) and Wolfire are entitled

12  to the same injunction benefitting the public as a whole.

13  **A.      The Agreement Delegates Plaintiffs' Unconscionability Challenges to the Arbitrator.**

14       Plaintiffs claim their arbitration agreement with Valve is unconscionable because (i) by

15  agreeing not to bring a "private attorney general" or "representative" action they forfeited their

16  right to bring antitrust or CPA claims in arbitration, and (ii) by limiting the arbitrator's injunctive

17  power "to the extent of that party's individual claim," they sacrificed their right to an injunction

18  to "benefit the public as a whole."  Opp. at 12–20; CAC ¶ 22.  But the parties delegated

19  unconscionability challenges to the arbitrator by incorporating the AAA Consumer and

20  Commercial Arbitration Rules into SSA § 11.C.  *See G.G.*, 799 F. App'x at 558.  The AAA rules

21  empower the arbitrator to decide "any objections with respect to the existence, scope, or validity

22  of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA

23  Consumer Rule R-14(a); AAA Commercial Rule R-7(a).  Plaintiffs' unconscionability

24  challenges go to validity and arbitrability, both delegated to the arbitrators.

25       This Court could hear Plaintiffs' unconscionability arguments only if they challenged the

26  delegation provision as unconscionable.  They do not.  In *Rent-A-Center*, the agreement

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 2

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

delegated to the arbitrator "interpretation, applicability, enforceability or formation of this Agreement" (561 U.S. at 66), which the Supreme Court held was its own separate, severable "agreement to arbitrate threshold issues concerning the arbitration agreement." *Id.* at 68–70. Accordingly, the only question for the Court was whether the delegation clause was valid. *Id.* at 70. If the delegation clause was valid (or unchallenged), all threshold issues—including generally applicable contract defenses like unconscionability—were for the arbitrator. *Id.* at 72.

In virtually identical circumstances, the Ninth Circuit in *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015), applied *Rent-A-Center* and held that incorporation of the AAA arbitration rules delegated unconscionability challenges to the arbitrator, explaining:

> We conclude that *Rent-A-Center* controls the present case. Here, three agreements—each nested inside the other—are relevant to our analysis: (1) Brennan's Employment Agreement, (2) the Arbitration Clause (section 16), and (3) the Delegation Provision (i.e., incorporation of the AAA rules which delegates enforceability questions to the arbitrator). The last two are separate agreements to arbitrate different issues. Thus, just like in *Rent-A-Center*, multiple severable arbitration agreements exist. The arbitration clause at issue, as in *Rent-A-Center*, is the Delegation Provision because that is the arbitration agreement Opus Bank seeks to enforce…. [S]ince Brennan failed to "make any arguments specific to the delegation provision," and instead argued "that the [Arbitration Clause] *as a whole* is unconscionable under state law," "we need not consider that claim," because it is for the arbitrator to decide in light of the parties' "clear and unmistakable" delegation of that question, as we held above. Accordingly, the district court did not err in dismissing Brennan's claims in favor of arbitration.

*Id.* at 1133 (internal citations omitted). Many district courts in the Ninth Circuit agree, as they must. *See, e.g., Ramirez v. Elec. Arts Inc.*, 2021 WL 843184, at *4 (N.D. Cal. Mar. 5, 2021) ("[T]hrough the incorporation of the AAA rules the parties delegated issues regarding the validity of the Arbitration Provision to the arbitrator…. [W]hether the Arbitration Provision is unenforceable because it improperly limits the right to seek public injunctive relief …. is plainly delegated to an arbitrator, rather than this Court, to decide."); *see also Wilson v. Wells Fargo & Co.*, 2021 WL 1853587, at *4 (S.D. Cal. May 10, 2021) (same); *Moffett v. Recording Radio Film*

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 3

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

*Connection, Inc.*, 2019 WL 6898955, at *7 (C.D. Cal. Oct. 4, 2019) (same, collecting cases).

**B.     If Plaintiffs' Unconscionability Challenges Succeed, the Arbitrators Will Sever Illegal or Unenforceable Provisions and Enforce the Rest.**

If the arbitrators find any part of the parties' arbitration agreement unconscionable, hence illegal or unenforceable, the agreement requires them to enforce the rest and permits Plaintiffs, if they win on the merits, to return to this Court to seek the public injunction they claim they are entitled to.  Because the agreement delegates validity and arbitrability to the arbitrators, the Court should not consider this now, but inasmuch as Plaintiffs misstate how the agreement works, Valve explains here how it will respond to those misstatements before the arbitrators.

> 1.     *The Alleged "Poison Pill" Is Not a Broad Escape Hatch That Lets Plaintiffs Avoid Their Agreement to Arbitrate Claims and Disputes.*

Plaintiffs try to create the misimpression that a "poison pill" defeats the entire arbitration agreement if *any* part of that agreement is found unenforceable.  Opp. at 21.  That's not what the parties agreed.  They agreed that if any part of their arbitration agreement is found to be illegal or unenforceable, that part will be severed, the remainder of the agreement enforced, and any non-arbitrable issues will be resolved in court after arbitrations are complete, stating in SSA § 11.E (emphasis added):

> If any part of Section 11 (Dispute Resolution/Binding Arbitration/Class Action Waiver) is found to be illegal or unenforceable, *the rest will remain in effect* (*with an arbitration award issued before any court proceeding begins*), except that if a finding of partial illegality or unenforceability would allow class, collective, or representative *arbitration*, all of Section 11 will be unenforceable and the claim or dispute will be resolved in court.

Plaintiffs argue that the part of § 11.D authorizing an arbitrator to award relief "only in favor of the individual party seeking relief and only to the extent of that party's individual claim" is unconscionable (and unenforceable) because it rules out "market-remedying injunctive relief" to "benefit the public as a whole."  Opp. at 8; CAC ¶ 22.  But it permits the arbitrators to award them individual relief, so Plaintiffs can ask the arbitrators for damages and an injunction "removing Valve's anticompetitive provisions" as to them if they prevail.  CAC ¶ 22.  Further,

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 4

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

the parties agreed the arbitrator cannot enjoin Valve's treatment of non-parties, § 11.D, and agreed to submit their disputes and claims to arbitration rather than take them to court, § 11.A.

If an arbitrator determines part of the arbitration agreement is unenforceable because, as Plaintiffs contend (but Valve denies), antitrust laws and the CPA confer unwaivable rights to a public injunction to remedy violations of those statutes, SSA § 11.E severs the unenforceable part (no public injunctions) but "the rest will remain in effect (with an arbitration award issued before any court proceeding begins)." This means the parties must first proceed to individual arbitration on the merits. If Plaintiffs win an arbitration award for damages, and perhaps an injunction for themselves, they may then seek injunctive relief to "benefit the public as a whole," CAC ¶ 22, in this Court. Plaintiffs lose no statutory rights or remedies—they simply proceed first in arbitration "with an arbitration award issued before any court proceeding begins." SSA § 11.E.

The *Cottrell* case Plaintiffs cite suggests this approach, noting "AT&T likely could have written an agreement that would sever disputes as to a plaintiff's entitlement to public injunctive relief and reserve those issues for determination by a court." *Cottrell v. AT&T Inc.*, 2020 WL 2747774, at *5, 8 (N.D. Cal. May 27, 2020) (agreement entirely waived public injunctive relief and was unenforceable because "[n]othing in the arbitration agreement suggests that such relief could be awarded by another forum, such as a court"). In contrast, the SSA allows relief "awarded by another forum, such as a court," (*id.*) if necessary after arbitration is finished.

*Blair*, on which Plaintiffs rely heavily, invited the same approach, but those parties did not take it. Instead, the *Blair* severance clause—a "poison pill"—severed the *entire claim for relief* from arbitration if the agreement's limitations on that claim were held unenforceable. 928 F.3d at 831 (interpreting "claim for relief" to mean "cause of action" in clause stating "[i]f there is a final judicial determination that applicable law precludes enforcement of this Paragraph's limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court"). Accordingly, even though the *Blair*

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 5

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1  arbitration agreement's only unenforceable limitation was its ban on "public injunctive relief,"

2  the entire "claim for relief" was severed from arbitration and brought in court.  *Id.*

3      By contrast, the SSA does not declare entire claims or causes of action non-arbitrable if

4  some limitation on them is found unenforceable, but instead severs any unenforceable part and

5  enforces the rest, with non-arbitrable issues to be determined in court after the arbitration is

6  complete.  The Ninth Circuit in *Blair* approved of splitting decision-making between an

7  arbitrator and court in this way.  *Id.* ("Rent-A-Center contends that the severance clause carves

8  out only the potential public injunctive remedy for these causes of action, requiring the arbitrator

9  to adjudicate liability first…. Parties are welcome to agree to split decisionmaking between a

10 court and an arbitrator in this manner…. But they did not do so here.").

11     Plaintiffs' "poison pill" argument is also wrong because SSA § 11.E discards arbitration

12 entirely only when "a finding of partial illegality or unenforceability would allow class,

13 collective, or representative arbitration," making it clear arbitrators may not conduct class-wide

14 arbitrations.  Plaintiffs argue they fit into this narrow exception because "federal antitrust and

15 Washington state CPA claims are fundamentally representative in nature."  Opp. at 21.  They do

16 not.  Arbitrators may award individual damages and injunctive relief on antitrust and CPA

17 claims, as SSA §§ 11.A, .C, & .D permit.  Moreover, courts routinely enforce similar arbitration

18 agreements waiving "representative actions."  *See, e.g.*, this Court's and the Ninth Circuit's

19 rulings in *G.G.*; *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) ("*Italian Colors*")

20 (compelling individual arbitration of antitrust claims under arbitration agreement waived the

21 right to sue in a "representative capacity"; agreement text at *In re Am. Express Merchs. Litig.*,

22 667 F.3d 204, 209 (2d Cir. 2012)); *Harbers v. Eddie Bauer, LLC*, 2019 WL 6130822, at *1, 8–9

23 (W.D. Wash. Nov. 19, 2019) (compelling arbitration of CPA claim seeking injunctive relief

24 under agreement that waived "class-wide arbitration, private attorney-general action, or any

25 other proceeding where someone acts in a representative capacity"); *Amazon.com, Inc. v. Arobo*

26 *Trade, Inc.*, 2017 WL 3424976, at *4 (W.D. Wash. Aug. 9, 2017) (confirming arbitration award

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 6

of injunctive relief on CPA claim where agreement provided arbitration "will be conducted only on an individual basis and not in a class, consolidated or representative action").[1]

2.      *SSA § 11.E Ensures the SSA Is Not Permeated With Unconscionability.*

Plaintiffs also argue the parties' arbitration agreement is unenforceable because "[s]ubstantive unconscionability permeates the SSA's arbitration provisions." Opp. at 22. Wrong again. Plaintiffs challenge only two provisions as unconscionable. Both are readily severed if an arbitrator agrees with Plaintiffs' challenges. That *eliminates* any issue of potential unconscionability while preserving the balance of the parties' arbitration agreement, which is exactly how it should work. *See Zuver v. Airtouch Commcn's, Inc*., 153 Wash. 2d 293, 320, 103 P. 3d 753 (2004) ("Courts are generally loath to upset the terms of an agreement and strive to give effect to the intent of the parties…. Consequently, when parties have agreed to a severability clause in an arbitration agreement, courts often strike the offending unconscionable provisions to preserve the contract's essential term of arbitration."). Nor does *Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wash. 2d 598, 293 P.3d 1197 (2013), require the entire arbitration agreement be discarded. The *Gandee* court declined to sever unenforceable provisions from an arbitration agreement because it "would require essentially a rewriting of the arbitration agreement." *Id.* at 607. The SSA is nothing like the short arbitration clause in *Gandee*, and § 11.E already explains that if unenforceable provisions are severed, the remainder of the clause is enforced.

All that said, these unconscionability arguments raising validity and arbitrability challenges are for the arbitrators, so the Court should not decide them, and instead await the arbitrators' awards.

**C.      Plaintiffs' Effective Vindication Argument Fails.**

Plaintiffs again misconstrue the SSA to argue it is unenforceable under the effective vindication doctrine because it supposedly eliminates statutory rights. Opp. at 12. Surprisingly,

---

[1] *See* Exhibit 1 to the Declaration of Raina V. Wagner, *Amazon.com, Inc. v. Arobo Trade, Inc.*, No. C17-0804-JLR (W.D. Wash. May 24, 2017) (Dkt. #2-1 at 9) (arbitration agreement).

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1    Plaintiffs rely on *Italian Colors*, which compelled individual arbitration of antitrust claims. The

2    agreement the Supreme Court enforced there over an "effective vindication" objection included

3    the *same* "representative" language Plaintiffs claim here is an unenforceable waiver of antitrust

4    and CPA claims. *See In re Am. Express*, 667 F.3d at 209 (reciting clause at issue in *Italian*

5    *Colors*, which waived "right to participate in a representative capacity" and to arbitrate claims

6    "brought in a purported representative capacity on behalf of the general public"). Moreover,

7    under *Italian Colors*, the question is whether a provision in an arbitration agreement entirely

8    "*forbid[s]* the assertion of certain statutory rights" or "eliminates those parties' right to pursue

9    their statutory remedy." 570 U.S. at 236 (emphasis added). The SSA does not forbid any claims

10    or remedy; it merely determines when and where Plaintiffs may seek a "public injunction."

11    **D.**    **Any Doubts Must Be Resolved in Favor of Arbitration.**

12    Even if compelling arbitration were a close question—and it is not—all doubts are to be

13    resolved in favor of arbitration. The FAA "establishes a national policy favoring arbitration

14    when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346,

15    349 (2008). The FAA leaves no room for discretion, *KPMG LLP v. Cocchi*, 565 U.S. 18, 22

16    (2011), and "courts must 'rigorously enforce' arbitration agreements according to their terms."

17    *Italian Colors*, 570 U.S. at 233 (citation omitted). Accordingly, "any doubts concerning the

18    scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand

19    is the construction of the contract language itself or an allegation of waiver, delay, or a like

20    defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,

21    24–25 (1983); *see also Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016); *In re*

22    *Wyze Data Incident Litig.*, 2020 WL 6202724, at *1 (W.D. Wash. Oct. 22, 2020); *G.G. v. Valve*

23    *Corp.*, 2017 WL 1210220, at *2, 4 (W.D. Wash. Apr. 3, 2017).

24    **E.**    **Plaintiffs Davis and Marchionda Are Bound by the Arbitration Agreement.**

25    Despite expressly alleging in the Complaint that they purchased games on Steam for their

26    children (CAC ¶¶ 27, 30), Plaintiffs Davis and Marchionda now claim they are not really

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 8

purchasers because they did not click the final checkbox to complete the transaction.  Opp. at 24. They cannot have it both ways.  Either (1) they bought games on Steam and are subject to the SSA's arbitration agreement, or (2) they did not buy games on Steam and have no standing.

Moreover, even if Davis and Marchionda did not click the final checkbox, they are still bound to arbitrate under agency principles.  *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) ("General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories.").  Under Washington law, an agent may bind a principal to a contract when the agent has actual or apparent authority to act on the principal's behalf.  *King v. Riveland*, 125 Wash. 2d 500, 507, 886 P.2d 160 (1994).

Courts bind individuals to terms their agent agreed to when making online purchases with their authorization as is alleged here.  *E.g.*, *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 269 (E.D.N.Y. 2019) (holding husband was bound to Amazon's arbitration agreement where his wife gave her friend permission to sign her up for an account and then the husband used his wife's account to make online purchases) (applying Washington law), *aff'd*, 815 F. App'x 612 (2d Cir. 2020); *Chung v. StudentCity.com, Inc.*, 2013 WL 504757, at *4 (D. Mass. Feb. 12, 2013) (holding parents were bound by arbitration agreement to which their daughter agreed when daughter made online payments using their debit cards with permission); *Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161, 174–76 (D. Mass. 2007) (holding plaintiff was bound by liability disclaimer because her friend purchased travel reservations as her agent).

In *Chung*, for example, a minor child used her parents' debit cards with their permission to pay for a tour, each time checking a box agreeing to StudentCity's customer agreement with an arbitration clause.  2013 WL 504757, at *2.  The parents were not present at the computer for these transactions, but were nonetheless bound by the arbitration agreement because the minor was acting as their agent.  *Id.* at *4; *see also id.* at *3 n.7 ("The question is whether the principal sought the immediate result, not whether the principal ultimately benefits from the proposed transaction.  For instance, if a parent tells a child to go buy milk at the store, the child buys milk

as the parent's agent even if the parent only wants the milk for the child.  So too here.").

Similarly, Davis and Marchionda authorized their children to purchase games on Steam using

their money.  Dkt. #52 ¶¶ 5–8; Dkt. #53 ¶¶ 5–8.  If the children did so and agreed to the SSA and

its arbitration agreement, they were acting as agents for Davis and Marchionda, who are bound.

**F.      Wolfire's Claims Should Be Stayed Pending Arbitration.**

       *1.      Wolfire's Claims Should Be Stayed Because All Claims Are Inseparable.*

       Wolfire does not dispute that all Plaintiffs claim they were harmed by the same alleged

anticompetitive conduct, seek damages for the same claimed overcharge, and seek the same

injunction.  *See* Dkt. #35 at 13–14.  They say:

> Valve's conduct harms *all* direct purchasers in the same essential
> way, at the same time, and for the same reasons. Moreover, proving
> that Valve's conduct causes anticompetitive effects <u>necessarily</u>
> <u>involves an analysis of both game publishers and consumers</u>,
> because this case involves a two-sided platform. <u>Litigating this case</u>
> <u>on behalf of just one group of direct purchasers in isolation, as W&L</u>
> <u>propose, is an ill-conceived litigation strategy</u> that disregards the
> leading Supreme Court authority….
>
> *Amex* is clear: proving competitive harm by a two-sided platform
> <u>requires showing overall competitive harm, and accounting for the</u>
> <u>experiences of purchasers on *both* sides</u> of the platform.

Dkt. #55 at 6 (italics in original, underlining added); *see also id.* at 9 ("If the case is litigated on

behalf of all direct purchasers at the same time, as in the Wolfire CAC, there is no risk of double

recovery: the Wolfire Plaintiffs will put forward a damages model that calculates total damages

on both sides while avoiding duplicative damages or inconsistent theories.").

       Good reasons support litigating these intertwined issues first in arbitration: Litigating

them in court before the arbitrations conclude would interfere with the arbitrations, defeat the

agreed order of proceedings, and contradict the strong federal policy prioritizing arbitration.  *See*

*Boeing Co. v. Agric. Ins. Co.*, 2005 WL 2276770, at \*5–7 (W.D. Wash. Sept. 29, 2005) (staying

non-arbitrated claims; "the Court's primary concern is to avoid proceeding in a way that renders

the arbitration between Boeing and Federal 'redundant and meaningless; in effect, thwarting the

federal policy in favor of arbitration'") (citation omitted).  Wolfire argues that *Boeing* is

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 10

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

1    inapplicable because it involved "inherently inseparable claims" (Opp. at 30 n.11), but that is

2    exactly how Plaintiffs described all Plaintiffs' claims in the CAC and briefing cited above.

3         Wolfire also does not deny it seeks the same public injunction remedy as the individual

4    Plaintiffs.  Instead, Wolfire argues the SSA prevents any conflicting orders because it entirely

5    bars individuals from seeking public injunctive relief.  (*Id.* at 27–28.)  Not true.  As shown

6    above, if an arbitrator finds the part of the SSA limiting the individual Plaintiffs' ability to seek

7    public injunctive relief unenforceable, those Plaintiffs will arbitrate the merits and individual

8    remedies and, if they prevail, the Court may consider a public injunction "with an arbitration

9    award issued before any court proceeding begins."  SSA § 11.E.  A stay is the only way for all

10   parties' requests for public injunctive relief to be decided at the same time, avoiding any conflict.

11        2.    *Wolfire's Assertions of "Ongoing Harm" Do Not Defeat a Stay.*

12        Wolfire argues that its claims should not be stayed pending arbitration because it is

13   experiencing "ongoing harm."  But Wolfire's alleged damages are economic, so any claimed

14   ongoing harm can be adequately compensated through money damages.  Wolfire never argues

15   otherwise.  "[A] delay in collecting potential damages is not a particularly severe hardship."

16   *Babare v. Sigue Corp.*, 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020).

17        The cases Wolfire cites for its "ongoing harm" argument are readily distinguishable.  *See*

18   *Lockyear v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) (arbitration not involved; case involved

19   stay pending resolution of bankruptcy case); *E. W. Bank v. Bingham*, 992 F. Supp. 2d 1130

20   (W.D. Wash. 2014) (denying stay when non-signatory showed no hardship but stay would

21   prevent plaintiff from identifying fraudulent transfers received by non-signatory); *Simitar Entm't*

22   *Inc. v. Silva Entm't Inc.*, 44 F. Supp. 2d 986 (D. Minn. 1999) (not discussing ongoing harm;

23   denying stay because arbitrable and non-arbitrable claims were based on different facts and legal

24   theories); *Cargill Ferrous Int'l v. The M/V Anatoli*, 935 F. Supp. 833, 837–38 (E.D. La. 1996) (in

25   quote at Opp. at 26:3–6, discussing FAA *mandatory* stay; not discussing ongoing harm as basis

26   to reject *discretionary* stay of non-arbitrated claims); *Fallon v. Locke, Liddell & Sapp LLP*, 2007

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 11

1  WL 2904052 (N.D. Cal. Oct. 2, 2007) (denying stay because arbitrable and non-arbitrable claims

2  were based on different facts and legal theories and case had been pending for three years).

3           3.       *The Balance of Prejudice Strongly Tips in Favor of a Stay.*

4           Finally, Wolfire argues that its claims should go forward now because they will at some

5  point proceed in court, claiming Valve has shown no prejudice.  But even the *East West Bank*

6  case Wolfire cites recognized in denying a stay that "simultaneous prosecution of the … claim in

7  arbitration and here would be a waste of judicial resources, [and] would likely lead to a

8  duplication of effort and risk inconsistent decisions."  992 F. Supp. 2d at 1136.  Valve will

9  experience that same prejudice because all of Plaintiffs' claims are intertwined.

10          These concerns led Judge Burgess to stay litigation by one group of plaintiffs while a

11  second group arbitrated their claims against the same defendant in *Ballard v. Corinthian

12  Colleges, Inc.*, 2006 WL 2380668 (W.D. Wash. Aug. 16, 2006).  Unable to distinguish *Ballard*,

13  Wolfire largely ignores it, arguing Judge Burgess did not sufficiently explain his holding.

14  Actually, he did.  *Id.* at *2.  Wolfire similarly dismisses *Bischoff v. DirecTV, Inc.*, 180 F. Supp.

15  2d 1097 (C.D. Cal. 2002), as having too little analysis.  Opp. at 29.  That is no rebuttal.  Wolfire

16  cannot dispute that *Bischoff* (1) stayed non-arbitrable claims brought by one group of plaintiffs

17  against DirecTV while *different* plaintiffs arbitrated other claims against the same defendant, and

18  (2) held the stay was warranted because going forward in two forums at the same time "may lead

19  to inconsistent findings which will hinder the pursuit of judicial efficiency" when there is

20  "similarity of the issues of law and fact" and "the potential for inconsistent findings absent a

21  stay."  *Id.* at 1114–15.  Valve would be prejudiced for the same reasons, and being forced to

22  engage in massive duplication of work, multiplying costs and creating major business distraction.

23  **G.     Conclusion**

24          For the foregoing reasons, and those set forth in Valve's motion, the Court should: (1)

25  compel the individual Plaintiffs to individually arbitrate all of their claims against Valve, and (2)

26  stay Wolfire's claims and all other proceedings, pending completion of all arbitrations.

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 12

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1

2      DATED this 17th day of September, 2021.

3                                    FOX ROTHSCHILD LLP

4
                                     *s/ Gavin W. Skok*
5                                    _____
                                     Gavin W. Skok, WSBA #29766
6                                    Laura P. Hansen, WSBA #48669
                                     1001 Fourth Avenue, Suite 4500
7                                    Seattle, WA 98154
                                     Telephone:    206.624.3600
8                                    Facsimile:    206.389.1708
                                     E-mail:       gskok@foxrothschild.com
9                                                  lhansen@foxrothschild.com

10

11                                   MONTGOMERY McCRACKEN WALKER &
                                     RHOADS LLP
12

13
                                     *s/  Charles B. Casper*
14                                   _____
                                     Charles B. Casper, *admitted pro hac vice*
15                                   1735 Market Street, 21st Floor
                                     Philadelphia, PA  19103
16                                   Telephone:    215.772.1500
                                     Email:        ccasper@mmwr.com
17
                                     *Attorneys for Defendant*
18

19

20

21

22

23

24

25

26

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 13

## CERTIFICATE OF SERVICE

I certify that I am a secretary at the law firm of Fox Rothschild LLP in Seattle, Washington.  I am a U.S. citizen over the age of eighteen years and not a party to the within cause.  On the date shown below, I caused to be served a true and correct copy of the foregoing on counsel of record for all other parties to this action as indicated below:

| Service List | |
| --- | --- |
| Alicia Cobb<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>1109 First Avenue, Suite 210<br>Seattle, WA  98101<br>Ph. 206-905-7000<br>Fax 206-905-7100<br>Email: aliciacobb@quinnemanuel.com<br><br>A. Owen Glist<br>Ankur Kapoor<br>Jeffrey I. Shinder<br>CONSTANTINE CANNON LLP<br>335 Madison Ave., 9th Floor<br>New York, NY  10017<br>Ph. 212-350-2776<br>Fax 212-350-2701<br>Email: oglist@constantinecannon.com<br>akapoor@constantinecannon.com<br>jshinder@constantinecannon.com<br><br>Adam Wolfson<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, CA  90017<br>Ph. 213-443-3000<br>Email: adamwolfson@quinnemanuel.com<br><br>Charles Stevens<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>50 California St., 22nd Floor<br>San Francisco, CA  94111<br>Ph. 415-875-6600<br>Email: charliestevens@quinnemanuel.com | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 14

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

David Golden
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave., 22nd Floor
Washington, DC  20004
Ph. 202-204-4527
Email: dgolden@constantinecannon.com

David Du LeRay
Steig David Olson
Shane Seppinni
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY  10010
Ph. 212-849-7630
Email: davidleray@quinnemanuel.com
steigolson@quinnemanuel.com
shaneseppinni@quinnemanuel.com

Kenneth J. Rubin
Timothy B. McGranor
Kara M. Mundy
VORYS SATER SEYMOUR & PEASE LLP
52 E. Gay St.
PO Box 1008
Columbus, OH  43215
Ph. 614-464-6400
Email: kjrubin@vorys.com
tbmcgranor@vorys.com
kmmundy@vorys.com

*Attorneys for Plaintiffs*

        I declare under penalty of perjury under the laws of the State of Washington that the

foregoing is true and correct.

        EXECUTED this 17th day of September, 2021, in Seattle, Washington.


                                                    _Courtney Brooks_
                                                    Courtney R. Brooks

REPLY IN SUPPORT OF VALVE'S MOTION TO COMPEL
ARBITRATION (2:21-CV-00563-JCC) - 15

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600