THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WOLFIRE GAMES, LLC, SEAN COLVIN, SUSANN DAVIS, DANIEL ESCOBAR, WILLIAM HERBERT, RYAN LALLY, HOPE MARCHIONDA, EVERETT STEPHENS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VALVE CORPORATION,<br><br>Defendant. | CASE NO.: 2:21-cv-00563-JCC |
| DARK CATT STUDIOS HOLDINGS, INC., and DARK CATT STUDIOS INTERACTIVE LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VALVE CORPORATION,<br><br>Defendant. | CASE NO.: 2:21-cv-00872-JCC<br><br>**DARK CATT PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPOINTMENT OF CO-LEAD INTERIM COUNSEL FOR PROPOSED DEVELOPER CLASS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(g)(3)**<br><br>NOTE ON MOTION CALENDAR: Sept. 17, 2021<br><br>ORAL ARGUMENT REQUESTED |

REPLY ISO MOT. FOR APPOINTMENT OF INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

**TABLE OF CONTENTS**

**Page**

I. A FUNDAMENTAL CONFLICT OF INTEREST COMPELS SEPARATE COUNSEL .................................................................................................................. 1

    A. Wolfire's Two-Sided Platform Argument Does Not Address the Conflict ............ 2

    B. The Case Law in Wolfire's Opposition Illustrates the Conflict .............................. 3

II. THESE BUYERS AND SELLERS SHOULD NOT BE JOINTLY REPRESENTED ................................................................................................................ 4

III. DARK CATT'S COUNSEL WILL EFFICIENTLY PROSECUTE THIS ACTION .................................................................................................................. 5

IV. CONCLUSION ................................................................................................................ 6

REPLY ISO MOT. FOR APPOINTMENT OF INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC

-i-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

The proposed Developer class cannot be represented by the same lawyers as game buyers due to inherent conflicts. One set of counsel cannot adequately serve both groups' interests. Dark Catt illustrated one key conflict, yet Wolfire tellingly ignores it in its Opposition. ECF No. 43.

Wolfire does not explain how its lawyers can develop the discovery and expert record, then—consistent with their duties to Developers—elicit testimony, proffer expert opinions, and tell a jury that Developers would have passed on savings from Valve's lower commissions as lower prices to the lawyers' game buyer clients. This presentation would establish that buyers were harmed by paying higher game prices, but would make the jury (wrongly) think Developers were not—Developers simply elevated their game prices in response to Valve's anticompetitive conduct and were, in effect, reimbursed by the game buyers for any overcharges they paid to Valve.

Wolfire's cases do not answer this conflict or show how one set of counsel can advocate for both groups, instead showing that this scenario is rarely even attempted. Litigation efficiency is no answer; efficiencies do not trump adequate representation. Nor are there real efficiencies. Wolfire will need to rely on more complex legal theories and market definitions, more challenging class certification analyses, and less optimal strategic choices to represent both Developers and gamers than Dark Catt's Developer case. These and other conflicts will add up. Dark Catt's case has already advanced faster than the others; it took two months from complaint filing to Valve's responsive pleading (even agreeing to two extensions) compared to six months for *Colvin* (the first game buyer case) and three months for *Wolfire*. The cases are now at virtually the same stage.

Appointing separate class counsel now will ensure Developers' and buyers' interests are protected and avoid later questions over unitary counsel's divided loyalties. LGN and WSGR are highly qualified and will work effectively with counsel for the gamers to coordinate and prosecute both classes' cases, as the Court should expect and this type of complex litigation demands.

## I. A FUNDAMENTAL CONFLICT OF INTEREST COMPELS SEPARATE COUNSEL

Developers will seek to prove they were damaged by paying inflated commissions to Valve as a result of Valve's monopolistic conduct. At the same time, game buyers will seek to prove *they* were damaged by paying Developers more for games than they would have but for Valve's

REPLY ISO MOT. FOR APPOINTMENT OF INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-cv-00872-JCC

-1-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

conduct, *i.e.*, that in a competitive but-for world, Developers would have passed on lower commissions by lowering game prices to buyers. If presented by the same counsel to one jury, in arguing to increase their buyer clients' recovery, counsel will undercut their Developer clients' recovery. Developers would not want their own counsel wrongly and prejudicially implying lower damages, especially when Valve itself cannot make this argument.[1]

### A.  Wolfire's Two-Sided Platform Argument Does Not Address the Conflict

Labeling this a two-sided market case only papers over Wolfire's problem.[2] Even assuming a two-sided market, as Wolfire argues,[3] that does not require common counsel or solve the conflict. Wolfire relies on *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018), which discussed proof of anticompetitive effects in the relevant market for a rule of reason analysis. It had nothing to do with proper plaintiffs or adequacy of class representation. Nor could it touch on the conflict issue here—it was brought by the United States and 17 states.[4] Likewise, *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43 (2d Cir. 2019), involved a single plaintiff and said nothing about needing to join actors on the other side of the market. *Amex* and *Sabre* do not support Wolfire's argument that Developers and buyers are better off with unitary counsel or in a single class.

Moreover, the cases involved platforms where one side of the market financially *benefited*, so the positive and negative effects of the platforms' conduct had to be netted out to determine anticompetitive effects (and damages). By contrast, Wolfire alleges *harm* to both sides of the market and does not explain why this analysis requires both groups to proceed as one class with the same counsel. Nor do they explain why this case differs from *In re Payment Card Interchange*

---

[1] Valve cannot introduce evidence to reduce Developers' damages by showing that Developers passed on all or part of those commissions to their customers. *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 489 (1968).

[2] Dark Catt refers to all Plaintiffs in the *Wolfire Action* collectively as Wolfire herein.

[3] It is unclear which of the Wolfire Complaint's relevant markets is the two-sided platform. It defines two separate markets that are tied, one of which includes competitors such as Walmart, Target, and GameStop. Wolfire Compl. ¶ 127. Surely they do not contend these three retailers are two-sided platforms. *See Amex*, 138 S. Ct. at 2287. Their third "alternative" transaction platform market more closely resembles *Amex*, but is pled only because "Valve may argue there instead exists a single relevant market." Wolfire Compl. ¶ 132. Notably, Valve challenges Wolfire's—but not Dark Catt's—market definition.

[4] The private analog before the same court involved only merchants. *See In re Am. Exp. Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324 (E.D.N.Y. 2019).

REPLY ISO MOT. FOR APPOINTMENT OF INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC
-2-
WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

*Fee*, which they frequently cite for their counsel's experience with two-sided markets; it involves a class of merchants only. That is, only one side of the market is represented.

Regardless, Wolfire is mistaken in arguing that Dark Catt has undercut its own case by supposedly ignoring the game buyer "side" of the market. Dark Catt alleges that buyers may have been harmed by Valve's practices. Compl. ¶¶ 8, 10, 11, 22, 72, 78, 131-32, 140-41, 195-96, 201, 237. Yet the buyers' harm is linked to Developers' pricing choices. This is not contrary to *Amex*. Rather, it follows the Supreme Court's explanation in *Apple Inc. v. Pepper* that retail prices may not have differed in the but-for world where Apple (or Valve) charged a competitive commission, *i.e.*, "consumers' damages would presumably be zero" because app developers kept the extra revenue. 139 S. Ct. 1514, 1523 (2019). Developers can show their own harm and harm to buyers without undermining their own case when represented by separate, unconflicted counsel.

### B.   The Case Law in Wolfire's Opposition Illustrates the Conflict

*Apple v. Pepper* and the case on remand (cited throughout by Wolfire) support Dark Catt's position. In finding that iPhone app purchasers have antitrust standing as direct purchasers, the Supreme Court explained that Apple could face two suits—one by "downstream iPhone consumers" and one by "upstream app developers"—where "the two suits would rely on *fundamentally different theories of harm*." 139 S. Ct. 1514, 1525 (2019) (emphasis added). So too here with the theories pleaded by Developers ("upstream suppliers") and buyers ("downstream consumers"), with Valve as the "retailer who is both a monopolist and a monopsonist" whose "unlawful conduct affects both the downstream and upstream markets." *Id.* Notably, the Court did not describe a two-sided market. Dark Catt's Complaint accords with this precedent.

Wolfire points to Justice Gorsuch's dissent in *Pepper*—concluding downstream buyers should be considered indirect purchasers—to argue that game buyers may be necessary parties in a suit by developers. Opp'n at 5-6. Even if they were, which Dark Catt disputes, this does not mean they should be represented by the same counsel or proceed in the same class. Quite the opposite: the legal interest requiring joinder likely means their interests are not aligned with the existing parties. As Justice Gorsuch put it: "If, as plaintiffs contend, Apple's 30% commission is a

REPLY ISO MOT. FOR APPOINTMENT OF INTERIM
CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-cv-00872-JCC

-3-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

monopolistic overcharge, then the app developers have a claim against Apple to recover whatever portion of the commission they did not pass on to consumers. . . . So courts will have to divvy up the commissions Apple collected between the developers and the consumers." 139 S. Ct. at 1529 (citation omitted); *see also* Opp'n at 7 n.9 (recognizing that Developers and buyers "need to model allocating some portion of the overcharges to the other 'side' of the platform").[5] The same lawyers cannot represent two different groups wrestling one other to "divvy up" overcharges.

This is not a speculative conflict that can be fixed later by subdividing an omnibus class and assigning separate counsel. As soon as discovery commences, buyers will want their lawyers to begin developing evidence of class-wide antitrust injury through Developers passing on commission savings by lowering game prices. If Developers are in the same class, this class-wide injury theory will come at their expense. The conflict will affect the life of the case: developing evidence of the relevant market (or markets for Wolfire), monopoly power, monopolistic conduct, antitrust injury, and damages. *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 253 (2d Cir. 2011) ("how can the value of any subgroup of claims be properly assessed without independent counsel pressing its most compelling case?"); *id.* at 254 (a shared interest in "maximizing the collective recovery" does not determine adequacy of representation).

## II. THESE BUYERS AND SELLERS SHOULD NOT BE JOINTLY REPRESENTED

The "buyer and seller" cases Wolfire cites are inapt. In the securities class actions, the alleged conflict was between class members who bought or sold securities during the class period and their presumed desire to maximize or minimize price inflation at the times of their trades. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 377 (S.D.N.Y. 2000) (raising the dispute in the context of the class period definition); *Blackie v. Barrack*, 524 F.2d 891, 908 (9th Cir. 1975) (addressing deflationary effect of intervening corrective disclosures during the class

---

[5] Wolfire cites Apple's use of this joinder argument in briefing on a trial plan in *In re Apple iPhone Antitrust Litigation*. Opp'n at 6. Apple also states in its brief that "the amount of the alleged overcharge passed through by developers to consumers is a necessary element of the Consumer Plaintiffs' damages claim." Apple Reply at 1, No. 4:11-cv-6714-YGR (N.D. Cal. Aug. 31, 2021), ECF No. 515. That is, app purchasers' injury depends on app developers' pricing choices, creating a conflict if jointly represented. Nor does Wolfire explain why separate classes with separate counsel is a "quirk" in the iPhone cases. Opp'n at 9 n.12. It is not. *See* Mot. at 3 nn.4 & 5, 8-10 (discussing examples).

REPLY ISO MOT. FOR APPOINTMENT OF INTERIM
CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-cv-00872-JCC

-4-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

period). Because the "chief role" of price inflation is to "determin[e] each plaintiff's damages," differences did not defeat the adequacy requirement. *In re Oxford Health Plans*, 191 F.R.D. at 377.

The Developers-buyers conflict is not simply a question of calculating damages but goes to core case theories. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997) (class representatives must possess "the same interest and suffer the same injury" as the class); *cf. In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 73 (S.D.N.Y. 2009) (class allegations of securities violations are "based on identical legal and remedial theories" and "assert identical harm"). What's more, securities class actions operate under a different regime, including a presumption of reliance to establish class-wide causation. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 243-44 (1988). There is no such presumption here, and as discussed above, the causal connection between buyers' antitrust injury and Valve's conduct depends on Developers' pricing decisions.

The two antitrust cases Wolfire cites arose in the same securities context with damages based on bid/ask spreads. Conspiring market-makers manipulated spreads to increase their fees, and the alleged conflict between buyers and sellers again related solely to damages calculations, not (as here) a core theory of the case. *See In re Credit Default Swaps Antitrust Litig.*, No. 1:13-md-2476, 2016 U.S. Dist. LEXIS 54587, at *15 (S.D.N.Y. Apr. 25, 2016) (describing determination of amount of settlement fund to be paid to individual class member as the bid/ask spread "reduced by half, as each CDS transaction is a buy or a sell transaction that only incurs half of the cost of the spread"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 513 (S.D.N.Y. 1996) (alleged conflict related to calculation of damages from "conspiracy to fix" the "price of Defendants' market-making service … charged both to the buyers and sellers of Class Securities"). The conflict here is not related to a mechanical calculation of individualized damages or a clean split between both sides of the transaction. This case requires a detailed rule of reason analysis and damages modeling that would present conflicting litigation choices for unitary counsel, unlike the price-fixing conspiracies.

### III. DARK CATT'S COUNSEL WILL EFFICIENTLY PROSECUTE THIS ACTION

While Wolfire apparently abandoned its argument that Dark Catt's complaint "mimic[s]"

REPLY ISO MOT. FOR APPOINTMENT OF INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC

-5-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

1  theirs and tries to "piggyback off the efforts of" Wolfire's counsel, Wolfire Mot. at 2, ECF No. 38
2  (Wolfire Action), it now incorrectly asserts Dark Catt seeks to litigate its case "in isolation." Opp'n
3  at 2. To the contrary, Dark Catt agrees Developers and buyers have common interests, supporting
4  coordinated discovery. *See* Mot. at 1. But that does not require one class with one set of counsel.
5  Wolfire simply overstates what "[b]oth set of plaintiffs will need to establish" in including two
6  relevant markets and tying. Opp'n at 7. Cases involving buyers and sellers against an intermediary
7  or buyers at different supply chain levels are commonly pursued in coordinated proceedings,
8  providing efficiencies while ensuring each group can serve its own best interests.[6] The same model
9  applies here. LGN and WSGR will work efficiently with buyers' appointed counsel.

10  Wolfire appears to challenge Dark Catt counsel's ability to satisfy only Rule 23(g)(1)(A)(i).
11  *See* Opp'n at 12. WSGR's investigation of Dark Catt's claims focused on antitrust violations from
12  the start. WSGR later asked LGN to join, adding expertise in the prosecution of antitrust class
13  actions. Dark Catt has pursued its case diligently and is in the same procedural posture as Wolfire,
14  contrary to Wolfire's contention that Dark Catt's motion comes "at this late stage." Opp'n at 1. At
15  the time of their motion, Wolfire's counsel had "negotiated with Defendant regarding a schedule
16  for upcoming briefing, [was] already in the process of responding to Valve's motion to compel
17  arbitration, and ha[d] begun responding to Valve's motion to dismiss." Wolfire Mot. at 1. Dark
18  Catt's counsel has done the first and last of these, and does not need to litigate the arbitration issue.
19  Mot. at 1, 6 n.8. Dark Catt can more efficiently pursue Developers' claims if it does not need to
20  maintain "maximum flexibility," Opp'n at 10, and bend its litigation strategy to simultaneously
21  accommodate the interests of its counsel's buyer clients.

22  **IV. CONCLUSION**

23  Dark Catt respectfully requests that the Court grant its motion to appoint interim counsel.

---

[6] *See, e.g.*, *In re Google Play Consumer Antitrust Litig.*, No. 20-cv-5761 and *In re Google Play Developer Antitrust Litig.*, No. 20-cv-5792 (N.D. Cal.); *In re Apple iPhone Antitrust Litig.*, No. 11-cv-6714 and *Cameron v. Apple, Inc.*, No. 19-cv-3074 (developers) (N.D. Cal.); *In re Google Dig. Advert. Antitrust Litig.*, No. 20-cv-3556 and *In re Google Dig. Publisher Antitrust Litig.*, No. 20-cv-8984 (N.D. Cal.); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (S.D.N.Y.) (separate cases and counsel for direct purchasers, commercial end users, and consumer end users); *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637 (N.D. Ill.) (reversed appointment of single lead counsel and appointed separate counsel for commercial indirect purchasers and consumer indirect purchasers).

| | |
|---|---|
| Dated: September 17, 2021 | s/ Stephanie L. Jensen |
| | Stephanie L. Jensen, WSBA #42042 |
| | **WILSON SONSINI GOODRICH & ROSATI, P.C.** |
| | 701 Fifth Avenue, Suite 5100 |
| | Seattle, WA 98104-7036 |
| | Telephone: (206) 883-2500 |
| | Facsimile: (206) 883-2699 |
| | Email: sjensen@wsgr.com |

Kenneth R. O'Rourke (*pro hac vice*)
Scott A. Sher (*pro hac vice*)
Allison B. Smith (*pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1700 K Street, NW, Suite 500
Washington, DC 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
Email: korourke@wsgr.com
Email: ssher@wsgr.com
Email: allison.smith@wsgr.com

W. Joseph Bruckner (*pro hac vice*)
Joseph C. Bourne (*pro hac vice*)
Leona B. Ajavon (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: wjbruckner@locklaw.com
Email: jcbourne@locklaw.com
Email: lbajavon@locklaw.com

*Attorneys for Plaintiffs Dark Catt Studios Holdings, Inc. and Dark Catt Studios Interactive LLC, and Putative Class*

REPLY ISO MOT. FOR APPOINTMENT OF INTERIM CLASS COUNSEL FOR PROPOSED DEVELOPER CLASS
NO. 2:21-CV-00872-JCC

-7-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500