THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WOLFIRE GAMES, LLC, SEAN COLVIN, SUSAN DAVIS, DANIEL ESCOBAR, WILLIAM HERBERT, RYAN LALLY, HOPE MARCHIONDA, and EVERETT STEPHENS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VALVE CORPORATION,<br><br>Defendant. | CASE NO. C21-0563-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion to compel arbitration (Dkt. No. 35). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons described below.

I.  BACKGROUND

Plaintiffs are PC game consumers ("Consumer Plaintiffs") and a game publisher, Wolfire Games, LLC, who allege that Defendant utilizes anticompetitive practices and its monopoly powers to inflate prices on games sold and distributed through Defendant's Steam Store and Steam Gaming Platform. (*See generally* Dkt. No. 34.) Plaintiffs assert six Sherman Act Section 2

ORDER
C21-0563-JCC
PAGE - 1

claims based on Defendant's alleged actual and attempted monopolization of the PC gaming market, one Sherman Act Section 1 claim based on Defendant's alleged unreasonable restraint of trade, and one Washington Consumer Protection Act ("CPA") claim based on Defendant's alleged use of unfair and deceptive practices. (*Id.* at 89–96.)

Consumers wishing to purchase games through the Steam Store must check a box indicating their agreement to the terms and conditions of Defendant's Steam Subscriber Agreement ("SSA") before purchasing games. (*See* Dkt. No. 35 at 4–5.) The SSA includes a provision requiring arbitration of "any claim[] arising out of . . . any aspect of the relationship between us." (Dkt. No. 36-4 at 12, 65, 78, 92, 106, 120.) As a game publisher rather than a consumer, Wolfire is not a party to the SSA.

Defendant moves to compel arbitration on the Consumer Plaintiffs' claims under the SSA and to stay Wolfire's claims pending resolution of those arbitration proceedings. (*See generally* Dkt. No. 35.) Plaintiffs, in opposing, argue that (a) the SSA's arbitration requirements are substantively unconscionable; (b) some of the Consumer Plaintiffs are not a party to the SSA, so not bound by the arbitration provision; and (c) staying Wolfire's claims is not warranted. (*See generally* Dkt. No. 51.)

## II.    DISCUSSION

### A.    Legal Standard

In a motion to compel arbitration, the Court determines "(1) whether a valid agreement to arbitrate exists and, if so, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomm. Am.*, 845 F.3d 1279, 1283 (9th Cir. 2017) (internal quotation marks and citation omitted). If an agreement exists, the Federal Arbitration Act ("FAA") "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean*

*Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985).

### B. Unconscionability

Section 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). However, Section 2 provides that arbitration agreements may be invalidated by generally applicable contract defenses, including unconscionability. *Id.*

Here, the question is whether Plaintiffs' unconscionability challenge should be determined by the Court or by an arbitrator. According to the SSA, the arbitrator must resolve any "disputes" regarding "this agreement" in conformity with AAA rules (*See* Dkt. No. 36-4 at 12, 65, 78, 92, 106, 120.) AAA rules give an arbitrator "'the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 n.1 (9th Cir. 2013) (citing AAA Commercial Arbitration Rule 7(a)). Therefore, unless Plaintiffs challenge the SSA's delegation provision, specifically, as unconscionable, the Court must enforce the parties' agreement to have an arbitrator decide the broader question of whether the arbitration clause itself is unconscionable. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1132–34 (9th Cir. 2015) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 65 (2010)). Here, Plaintiffs do not meaningfully challenge the delegation provision as unconscionable. (*See generally* Dkt. Nos. 51, 65.) Accordingly, the question of unconscionability should be determined in arbitration.

ORDER
C21-0563-JCC
PAGE - 3

### C. Parties Subject to the SSA

Plaintiffs next assert that two Consumer Plaintiffs, Susann Davis and Hope Marchionda, are not parties to the SSA and not bound by its arbitration provision because they did not purchase games directly through the Steam Store. (Dkt. No. 51 at 23–24.) Instead, according to their briefing, Ms. Davis and Ms. Marchionda's respective children purchased the games using their parents' credit card information. (*Id.*) In support of their position, Plaintiffs rely on another case involving Defendant's SSA—*G.G. v. Valve Corp.*, 799 F. App'x 557, 558–59 (9th Cir. 2020). (*See* Dkt. No. 51 at 23–24.)

In *G.G.*, the Ninth Circuit held that parents in a similar position to Ms. Davis and Ms. Marchionda were not bound by the SSA. *See* 799 F. App'x at 559. But *G.G.* reached this conclusion *based on a theory of equitable estoppel*. *See* Appellant's Reply Brief at 13 *G.G. v. Valve Corp.*, 799 F. App'x 557 (No. 19-35345). That is not the argument presented to the Court here, which is based on agency theory. (*See* Dkt. No. 56 at 9–11.)

According to the complaint here, Ms. Davis and Ms. Marchionda "purchased PC Desktop Games through the Steam Store" for their children. (*See* Dkt. No. 34 at 10–11.) As such, the question is whether they are bound by the SSA under an *agency theory*. *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 272 (E.D.N.Y. 2019); *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 2013 WL 504757, slip op. at 2 (D. Mass. 2013). The Court finds that, under an agency theory, Ms. Davis and Ms. Marchionda effectively appointed their children as their agents when they purchased games on their parents' behalf using the parents' credit card information and their own Steam accounts. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (general description of agency theory). Without this appointment, the parents would not have standing for the claims asserted here.

Accordingly, all of the Consumer Plaintiffs in this action, including those parents who purchased games through their children, are bound by the SSA's arbitration clause. Plaintiffs' motion to compel arbitration of the Consumer Plaintiffs' claims is thus GRANTED.

### D. Claims Not Subject to Arbitration

Defendant asks the Court to stay Wolfire's claims, which are not subject to the SSA's arbitration clause. (Dkt. No. 35 at 13–18.) The decision whether to do so "rests with the sound discretion of the district court." *United Commc'n. Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x. 412, 415 (9th Cir. 2002) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)). Here, the Court concludes that a stay is not warranted. Specifically, a stay would prejudice Wolfire, which alleges ongoing harm from Defendant's allegedly unlawful practices. (*See* Dkt. No. 51 at 26 (citing Dkt. No. 34).) And Defendant fails to identify how it would be meaningfully prejudiced absent a stay. *See Dependable Hwy. Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (litigation costs alone are not sufficient to warrant a stay). Finally, staying Wolfire's claims would not promote judicial economy, as they would eventually need be addressed by this Court—the arbitrator's findings and conclusions on the consumers' claims would not bind the Court in how it addresses Wolfire's claims.

Accordingly, Defendant's motion to stay Wolfire's claims is DENIED.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration (Dkt. No. 35) is GRANTED in part and DENIED in part. Claims brought by Consumer Plaintiffs are STAYED pending arbitration. The remaining claims may proceed. The Clerk is DIRECTED to renote Plaintiffs' motion to dismiss (Dkt. No. 37) to today's date, October 25, 2021, as it is now ripe for the Court's consideration.

DATED this 25th day of October 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE