HON. JOHN C. COUGHENOUR

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

Wolfire Games, LLC, Sean Colvin, Susann Davis, Daniel Escobar, William Herbert, Ryan Lally, Hope Marchionda, Everett Stephens, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

Valve Corporation,

Defendant.

Case No. 2:21-cv-00563-JCC

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

PLAINTIFFS' NOTICE OF SUPP. AUTHORITY
CASE NO. 2:21-CV-563-JCC

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Pursuant to Local Civil Rule 7(n), Plaintiffs Wolfire Games, LLC ("Wolfire"), Sean Colvin, Susan Davis, Daniel Escobar, William Herbert, Ryan Lally, Hope Marchionda, and Everett Stephens ("Plaintiffs") submit for the Court's consideration as supplemental authority the attached decision in *Frame-Wilson v. Amazon.com, Inc.*, Case No. 2:20-cv-00424-RAJ (W.D. Wash.), Dkt. No. 48 (the "*Frame-Wilson* Order"), dated the same evening Plaintiffs filed their opposition to the pending motion to dismiss in this case.[1] In that order, Judge Jones held, at the motion to dismiss stage, that the plaintiffs' allegations that Amazon imposes a platform most-favored nations clause ("PMFN") on its third-party sellers, whereby those third-party sellers are not permitted to offer products for lower prices on competing platforms than they are offered on Amazon, plausibly alleged anticompetitive conduct and the plaintiffs' resulting antitrust injury. *Frame-Wilson* Order, at 18-22; *see also id.* at 21 ("While Amazon asserts that Plaintiffs 'allege only some anecdotal matching of Amazon's pricing in cherry-picked instances,' the Court finds that facts alleged that would constitute an offense, regardless of how numerous, are sufficient to survive a motion to dismiss."). Judge Jones' holding is relevant to Plaintiffs' arguments in their Opposition to Defendant Valve Corporation's ("Valve") Motion to Dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint (Dkt. 75), at pp. 14-16.

[1] While the *Frame-Wilson* Order was filed a few hours before Plaintiffs technically filed their Opposition to Defendant Valve Corporation's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint, due to an ECF outage the *Frame-Wilson* Order was not made available on the docket until after the Plaintiffs' brief was filed.

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

DATED: March 14, 2022

By /s/ *Alicia Cobb*
Alicia Cobb, WSBA # 48685
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000
Fax: (206) 905-7100
Email: aliciacobb@quinnemanuel.com

Steig D. Olson (*pro hac vice*)
David D. LeRay (*pro hac vice*)
Shane Seppinni (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-2100
Email: steigolson@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Fax: (213) 443-3100
Email: adamwolfson@quinnemanuel.com

Charles B. Stevens (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Fax: (415) 875-6700
Email: charliestevens@quinnemanuel.com

*Attorneys for Daniel Escobar, William Herbert, and the class.*

PLAINTIFFS' NOTICE OF SUPP. AUTHORITY
CASE NO. 2:21-CV-563-JCC

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

David D. Golden (*pro hac vice*)
Wyatt Fore (*pro hac vice forthcoming*)
CONSTANTINE CANNON LLP
1001 Pennsylvania Avenue, NW, Suite 1300N
Washington, DC 20004
Telephone: (202) 204-3500
Fax: (202) 204-3501
Email: dgolden@constantinecannon.com

A. Owen Glist (*pro hac vice*)
Ankur Kapoor (*pro hac vice*)
Jeffrey I. Shinder (*pro hac vice*)
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
Telephone: (212) 350-2700
Fax: (212) 350-2701
Email: akapoor@constantinecannon.com

*Attorneys for Wolfire Games, LLC and the class.*

Thomas N. McCormick (*pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
4675 MacArthur Court
Suite 700
Newport Beach, CA 92660
Telephone: (949) 526-7903
Fax: (949) 526-7901
Email: tnmccormick@vorys.com

Kenneth J. Rubin (*pro hac vice*)
Timothy B. McGranor (*pro hac vice*)
Kara M. Mundy (*pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43216-1008
Telephone: (614) 464-6350
Fax: (614) 719-6350
Email: kjrubin@vorys.com
tbmcgranor@vorys.com
kmmundy@vorys.com

*Attorneys for Sean Colvin, Susann Davis, Daniel Ryan Lally, Hope Marchionda, Everett Stephens, and the class.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2022, a true and correct copy of the foregoing was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

DATED March 14, 2022

*/s/ Alicia Cobb*
Alicia Cobb, WSBA #48685

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORAH FRAME-WILSON, CHRISTIAN SABOL, SAMANTHIA RUSSELL, ARTHUR SCHAREIN, LIONEL KEROS, NATHAN CHANEY, CHRIS GULLEY, SHERYL TAYLOR-HOLLY, ANTHONY COURTNEY, DAVE WESTROPE, STACY DUTILL, SARAH ARRINGTON, MARY ELLIOT, HEATHER GEESEY, STEVE MORTILLARO, CHAUNDA LEWIS, ADRIAN HENNEN, GLENDA R. HILL, GAIL MURPHY, PHYLLIS HUSTER, and GERRY KOCHENDORFER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation,

Defendant.

Case No. 2:20-cv-00424-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss. Dkt. # 18. Plaintiffs oppose the motion. Dkt. # 19. Having reviewed all the briefing, including the parties' supplemental authorities, the remaining record, and relevant law, the Court finds that oral argument is unnecessary. For the reasons below, the motion to dismiss is **DENIED in part** and **GRANTED in part**.

## II. BACKGROUND

Defendant Amazon.com, Inc. ("Defendant" or "Amazon") is "the world's largest online retailer." Dkt. # 15 ¶ 2. Sales conducted on its online platform account for almost half of all retail e-commerce in the United States. *Id.* Plaintiffs are consumers from 18 states, including Alabama, Arkansas, Arizona, California, Florida, Illinois, Iowa, Maine, Nevada, New Hampshire, Pennsylvania, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wisconsin, who purchase consumer goods online. *Id.* ¶ 46–67.

Amazon operates as an online retailer, selling its own products directly to its customers, and as an online platform for third-party sellers ("sellers") and their customers. *Id.* Amazon sells many of the same products that sellers sell on Amazon's platform. *Id.* To sell products on the Amazon.com platform, sellers register with Amazon Marketplace and agree to the terms of Amazon Services Business Solutions Agreement ("BSA") and its policies. *Id.* ¶ 4. The BSA contains rules for selling on the Amazon.com platform, and any seller with an Amazon Seller Account must comply with them. *Id.* Sellers pay a $40 registration fee and a commission charge or referral fee of approximately 15% for each product sold on the platform. *Id.* ¶ 74. Sellers also pay a per-item fee or a monthly subscription and a fee for any refunds when a customer returns a seller's product. *Id.* Sellers may also, for an additional fee, employ Fulfillment by Amazon ("FBA") to store, pick, pack, and ship orders, as well as to manage returns and customer service. *Id.*

Until March 2019, the BSA included a "price parity" provision, or "platform most

favored nation" ("PMFN") provision. *Id.* ¶ 5.  The PMFN required sellers to "maintain parity" between the products they listed on the Amazon platform and those on external platforms by ensuring that "the purchase price and every other term of sale . . . is at least as favorable to Amazon Site users as the most favorable terms" on the sellers' other sales channels. *Id.*  Amazon officially withdrew the PMFN provision in March 2019 under threat of investigation by the Federal Trade Commission ("FTC").  *Id.* ¶ 6.

Still, on August 30, 2020, Plaintiffs filed an amended class action complaint against Amazon alleging federal and state antitrust violations.  *Id.*  Plaintiffs allege that Amazon continues to enforce its PMFN provision through its current "fair pricing" provision.  *Id.*  Plaintiffs claim that under this provision, "Amazon regularly monitors the prices of items on [sellers'] marketplaces," and that if it sees "pricing practices" on the Amazon.com platform "that harm[] customer trust, Amazon can remove the Buy Box [*i.e.*, the coveted one-click-to-buy button], remove the offer, suspend the ship option, or, in serious or repeated cases, suspend[] or terminat[e] selling privileges."  *Id.*  The provision states that "[a]ny single product or multiple products packages must have a price that is equal to or lower than the price of the same item being sold by the seller on other sites or virtual marketplaces."  *Id.* ¶ 7.  Plaintiffs allege that sellers receive "price alerts" with a warning from Amazon if the products they sell on Amazon.com have been found offered for a lower price on a different platform.  *Id.*  Plaintiffs allege that both PMFN and "fair pricing" policies have "the effect of getting sellers to raise prices elsewhere, rather than risk lower revenue from Amazon."  *Id.*

Plaintiffs allege that Amazon injures consumers by driving up the price of goods. *Id.* ¶ 12.  The products at issue, or "class products," consist of approximately 600 million consumer products, defined as products that must be sold through an ecommerce channel other than the Amazon.com platform, such as eBay or Walmart.com, and concurrently offered by Amazon's sellers on the Amazon.com platform.  *Id.* ¶¶ 33–34.

Plaintiffs contend that the seller fees on Amazon are substantial and built into the

prices that sellers charge their customers for products on the Amazon platform. *Id.* ¶ 82. On other platforms, Plaintiffs allege, it costs less to sell the same products, but the BSA precludes sellers from selling those goods at lower prices despite the cost structure. *Id.* ¶ 4. For example, Plaintiffs point to Molson Hart, a seller who claims that he would have sold a product sold on Amazon for $150 on his own company website for $40 less, but for Amazon's pricing provision. *Id.* ¶ 12 ("Were it not for Amazon, this item would be $40 cheaper. And this is how Amazon's dominance of the industry hurts consumers."). The pricing restraint, Plaintiffs contend, thus prevents sellers from reducing prices of their products on external platforms with lower fees. *Id.* ¶ 13. For example, eBay, Amazon's nearest competitor, charges a seller about 16% to sell a $30 book, while Amazon charges 23%. *Id.* Similarly, eBay charges a seller 21% to sell a $15 DVD on its platform, while Amazon charges 31%. *Id.* Plaintiffs contend that "[t]hrough its price-fixing agreement with its third-party sellers and its abuse of its monopoly power, Amazon has suppressed competition and caused supracompetitive prices in the ecommerce retail market." *Id.* ¶ 36.

Plaintiffs claim that many of the two million retailers who sell on the Amazon.com platform do so reluctantly. *Id.* ¶ 17. Plaintiffs allege that Amazon's ownership of the "largest retail marketplace platform" gives Amazon the power to restrict sellers from competing on price on external platforms. *Id.* Plaintiffs note that sellers generate 81% to 100 % of their revenue from sales on the Amazon.com platform, which restricts their power and, as one seller stated, they "have nowhere else to go and Amazon knows it." *Id.*

Amazon now moves to dismiss Plaintiffs' complaint with prejudice for lack of antitrust standing and failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. # 18. Amazon denies Plaintiffs' allegations, arguing that its policies are, in fact, pro-competitive and "encourage[e] low prices in its stores." Dkt. # 18 at 8-9.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim. The court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). The complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. DISCUSSION

Amazon moves to dismiss Plaintiffs' claims, alleging various grounds for dismissal: (1) Plaintiffs lack antitrust standing; (2) Plaintiffs fail to allege a Section 1 *per se* claim because such a claim is limited to certain types of conduct between horizontal competitors; (3) Plaintiffs' Section 1 rule of reason and Section 2 claims fail because Plaintiffs fail to properly define relevant antitrust markets, which is required for such claims; (4) Plaintiffs' Section 2 claims fail because they do not allege anticompetitive, exclusionary conduct; (5) Plaintiffs' Section 1 rule of reason and Section 2 claims fail because Plaintiffs fail to allege plausible anticompetitive harm; (6) Plaintiffs' state law claims are inadequately pled; and (7) Plaintiffs' unjust enrichment claim is deficient. Dkt. # 18 at 9-11, 31. The Court addresses each argument in turn.

### A. Antitrust Standing

Amazon claims that Plaintiffs' Sherman Act claims must be dismissed because Plaintiffs lack antitrust standing. *Id.* at 15. Specifically, Amazon asserts that "[o]nly consumers who purchase products directly from a defendant have standing to sue under

Sections 1 and 2 of the Sherman Act." *Id.* (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 732-35 (1977); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 492 (1968)). Amazon claims that Plaintiffs' "theory of injury based on purchases from retailers other than Amazon is too attenuated as a matter of law, and violates the bright-line rule that plaintiffs must be direct purchasers in order to have standing to recover." Dkt. # 18 at 9. It asserts that damages under the federal antitrust laws "do not afford a remedy to those injured only indirectly." Dkt. # 18 at 16. Because Plaintiffs are not alleging harm as direct purchasers of Amazon products, Amazon contends that Plaintiffs violate the direct purchaser rule and allege only "indirect and remote" harms that are insufficient to establish antitrust standing. *Id.*

Plaintiffs disagree. Dkt. # 19 at 15. They claim that they have two bases for direct-purchaser standing. *Id.* First, Plaintiffs contend that they have standing "as direct purchasers from Amazon's co-conspirators." *Id.* Amazon's "co-conspirators" are sellers that participate in Amazon's price restraints whether "involuntarily or under coercion." *Id.* (citing *Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992)). As such, the co-conspirators violate the Sherman Act by "consenting to the restraints and by selling Class Products at supracompetitive prices." *Id.* Second, Plaintiffs claim that they have standing as direct purchasers from "non-conspiring competitors . . . under an umbrella theory." *Id.* at 16 (quoting *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1340 (9th Cir. 1982)). Under this theory, Amazon's contract with its co-conspirators artificially increases the market price for class products and non-conspiring competitors set their prices under the "umbrella" of uncompetitive market conditions created by Amazon and its co-conspirators. Dkt. # 19 at 16. Plaintiffs note that although the Ninth Circuit has not decided whether such purchasers have standing, the Ninth Circuit recognizes that such claims do not involve concerns raised in *Illinois Brick. Id.* The Court begins its analysis with the rule set forth in *Illinois Brick.*

In *Illinois Brick Co. v. Illinois*, the Supreme Court held that treble damages, recoverable under Section 4 of the Clayton Act, could not be recovered by indirect purchasers of concrete blocks who paid a higher price from the direct purchaser who had been the victim of a price-fixing conspiracy. *See* 431 U.S. 720, 726, (1977); 15 U.S.C. § 15(a) ("any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained"). The Court held that "the overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business or property.'" 431 U.S. at 729; *see also Hanover* Shoe, 392 U.S. at 494; *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1156 (9th Cir. 2019). The *Illinois Brick* rule precludes "indirect purchasers in a chain of distribution . . . from suing for damages based on unlawful overcharges passed on to them by intermediates in the distribution chain who purchased directly from the alleged antitrust violator." *State of Ariz. v. Shamrock Foods Co.*, 729 F.2d 1208, 1211–12 (9th Cir. 1984) (citing 431 U.S. at 746); *see also Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 545 (1983) (applying the *Illinois Brick* rule based on "the problems of identifying damages and apportioning them among directly victimized contractors and subcontractors and indirectly affected employees and union entities").

The Supreme Court's policy considerations for the rule in *Illinois Brick* were twofold:

> First, [the Court] found that allowing every person along a chain of distribution to claim damages arising from a single violation of the antitrust laws would create a risk of duplicative recovery against the violator unintended by Congress. The Court reasoned that direct purchasers absorb at least some and often most of the overcharges and are more likely to come forward to collect their damages. Second, the Court sought to avoid increasing the cost and burden of antitrust actions with complicated damage theories necessitating massive evidence to determine how the overcharge was apportioned throughout the distribution chain.

*Shamrock Foods*, 729 F.2d at 1212. The Supreme Court later clarified the applicability of *Illinois Brick.* The Court explained that the "bright-line rule of *Illinois Brick* . . . means that indirect purchasers who are two or more steps removed from the antitrust violator in a distribution chain may not sue." *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (U.S. 2019). It further explained that "[b]y contrast, direct purchasers—that is, those who are 'the immediate buyers from the alleged antitrust violators'—may sue." *Id.*

Here, Plaintiffs allege they are direct purchasers of antitrust conspirators. Dkt. # 19 at 15–16. Plaintiffs contend that online sellers become co-conspirators to Amazon's alleged price-fixing conspiracy by virtue of their agreement with Amazon to sell their products on third party sites at supracompetitive prices. Dkt. # 19 at 15. Plaintiffs allege that they overpaid as a result of the alleged price-fixing conspiracy when they purchased class products from Amazon's co-conspirators on platforms other than Amazon.com. *Id.* The Court agrees that Plaintiffs have established standing on this basis.

The Ninth Circuit held that "[w]hen co-conspirators have jointly committed the antitrust violation, a plaintiff who is the immediate purchaser from any of the conspirators is directly injured by the violation." 933 F.3d at 1157. It confirmed that "a conspiracy to monopolize may exist even where one of the conspirators participates involuntarily or under coercion." *City of Vernon v. S. California Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992). Because there is no chain of distribution or pass-through costs that create a risk of duplicative recovery, *Illinois Brick* does not bar standing. *See* 933 F.3d at 1157. The Court concludes that Plaintiffs have established standing as direct purchasers of alleged antitrust co-conspirators. Based on this, the Court need not address Plaintiffs' standing under an umbrella theory.

**B. Section 1 *Per Se* Claim**

Amazon next moves to dismiss Plaintiffs' Section 1 *per se* claim. Dkt. # 18 at 17. Amazon argues that Plaintiffs cannot plausibly assert a *per se* claim based on horizontal

agreements between Amazon and its third-party sellers because they cannot demonstrate the existence of such horizontal agreements. *Id.* at 18. Amazon contends that the facts alleged do not constitute *per se* illegal price-fixing because the policies at issue do not demonstrate a horizontal agreement between competitors not to compete on the price of competing goods; Amazon's policies regarding prices of third-party sellers are not tied to the prices that Amazon itself charges for its own goods as a seller. *Id.* at 18-19. Instead, Amazon argues that its relationships with third-party sellers constitute vertical arrangements, which "are subject to a rule of reason analysis, not *per se* liability." *Id.* at 19-20.

Under Section 1 of the Sherman Act, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . is declared to be illegal." 15 U.S.C. § 1. The Supreme Court has held that while Section 1 prohibits every agreement "in restraint of trade," the Court "has long recognized that Congress intended to outlaw only unreasonable restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). Under Section 1, a plaintiff must prove that (1) an agreement exists, (2) the agreement imposed an unreasonable restraint of trade through either a *per se* or rule of reason analysis, and (3) the restraint affected interstate commerce. *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 784 (9th Cir. 1996). Only the first two elements are at issue here. Dkt. # 19 at 17.

The rule of reason "is the presumptive or default standard, and it requires the antitrust plaintiff to demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive." *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1133 (9th Cir. 2011) (internal quotations marks and citation omitted). A rule of reason analysis requires a "highly fact-specific inquiry." *United States v. Delta Dental of Rhode Island*, 943 F. Supp. 172, 174 (D.R.I. 1996). A court must weigh "the relevant circumstances of a case to decide whether a restrictive practice constitutes an unreasonable restraint on competition." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465

U.S. 752, 761 (1984). "In its design and function the rule distinguishes between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007).

A *per se* analysis, on the other hand, applies when "the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output." 92 F.3d at 784. "*Per se* liability is reserved for only those agreements that are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). The Supreme Court has held that "a combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal *per se.*" *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 48 (1990) (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940)). As the Supreme Court further explained, "there are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Id.* (internal citation omitted). To justify a *per se* prohibition, a restraint must have "manifestly anticompetitive" effects. *Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 50 (1977).

In analyzing the reasonableness of an agreement under Section 1, the Supreme Court has distinguished between agreements made between competitors (horizontal agreements) and agreements made up and down a supply chain, such as between a retailer and a manufacturer (vertical agreements). *In re Musical Instruments & Equip. Antitrust Litig*., 798 F.3d 1186, 1191 (9th Cir. 2015). Horizontal agreements in which competitors fix prices, divide markets, or refuse to deal are *per se* violations of the Sherman Act. *Id.* "Once the agreement's existence is established, no further inquiry into the practice's actual effect on the market or the parties' intentions is necessary to

establish a § 1 violation." *Id.* Vertical agreements are "analyzed under the rule of reason, whereby courts examine 'the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed,' to determine the effect on competition in the relevant product market." 798 F.3d at 1191–92 (citing *Nat'l Soc. of Pro. Engineers v. United States*, 435 U.S. 679, 692 (1978)).

Plaintiffs contend that the pricing provision at issue is a *per se* violation of Section 1 based on the horizontal agreement between Amazon and third-party sellers on the Amazon.com platform. Plaintiffs allege that Amazon and the sellers are "competitors" because they are "performing the same online retail function and competing for the same online retail customers with respect to the sale of many, if not all, Class Products." Dkt. # 19 at 22. Plaintiffs allege that "competing retailers here [Amazon and its third-party sellers] agree on 'the way in which they will compete with one another' in online sales." *Id.* at 21. Amazon rejects this premise, arguing that the relationship between Amazon.com and third-party sellers "is a vertical arrangement because it involves different levels of the supply chain." Dkt. # 18 at 19. The Court agrees with Amazon.

In their Complaint, Plaintiffs acknowledge that Amazon operates as (1) a retailer, selling directly to customers, and (2) as a "two-sided platform," providing services to third-party sellers and their customers through Amazon's platform. Dkt. # 15 ¶ 2. Plaintiffs are correct that Amazon's third-party sellers are "not Amazon's suppliers, but rather unaffiliated retailers, who sell alongside Amazon on Amazon.com." Dkt. # 19 at 18. But Plaintiffs are not challenging Amazon's conduct as a competitor to its third-party sellers. Indeed, Plaintiffs provide no factual allegations to support how Amazon and its third-party sellers agree on how they compete with one another in online sales, as Plaintiffs assert. Dkt. # 19 at 21. The Court does not find—and Plaintiffs do not allege—that the provision at issue involves an agreement to fix prices of Amazon's products *and* those of third-party sellers.

Instead, Plaintiffs challenge the vertical agreement between third-party sellers and

their *host platform*, Amazon.com. It is this agreement that restricts how third-party sellers set prices of their products on external sites. Indeed, Plaintiffs claim that Amazon "abuses the power of its marketplace platform by restraining its third-party sellers from competing on *any other* website or competing ecommerce channel at a lower price." *Id.* ¶ 1 (emphasis in original). This allegation connotes a vertical relationship, one in which Amazon is not competing with third-party sellers, but rather setting requirements as a condition for platform access. *See Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1077 (S.D. Cal. 2012) (finding that Facebook and its application developers were not horizontal competitors because the application developers "are only permitted to 'compete' with Facebook in the first place because Facebook allows them to do so" after they agree to certain Facebook policies). Even if the Court were to find that the agreements between Amazon and third-party sellers contained a horizontal element, such a "hybrid arrangement" would be analyzed under the rule of reason. *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1481 (9th Cir. 1986) (holding that "under the Sherman Act, rule of reason analysis would be appropriate for the 'hybrid' conspiracy"). The Court therefore concludes that Plaintiff has failed to plausibly allege a *per se* violation based on a horizontal agreement between Amazon and third-party sellers.

Plaintiffs cited authority is distinguishable because, in each case, the court specifically found that the facts alleged supported a horizontal conspiracy resulting from a vertical agreement. In *United States v. Apple*, the court found that defendant Apple, through its vertical agreements with book publishers, "orchestrated a horizontal conspiracy among the Publisher Defendants to raise ebook prices" across all platforms, including Amazon, which charged a low price. 791 F.3d 290, 297 (2d Cir. 2015). Indeed, the court held that "the relevant agreement in restraint of trade" was not Apple's vertical contracts with the publisher defendants, which have may well been assessed under the rule of reason, but "the horizontal agreement that Apple organized among the [p]ublisher [d]efendants to raise ebook prices." *Id.* at 323 (internal quotation marks

omitted).

In *Starr v. Sony BMG Music Ent.*, the court similarly focused on allegations of a horizontal agreement *between* defendants—all of whom had independently entered into most favored nation agreements—as the relevant agreement in restraint of trade. 592 F.3d 314, 324-25 (2d Cir. 2010). In *Meyer v. Kalanick*, 174 F. Supp. 3d 817, 823-25. (S.D.N.Y. 2016), the district court also focused on whether a horizontal agreement was plausibly alleged *between* Uber drivers—not whether their vertical agreement with Uber was sufficient to state a per se violation of the Sherman Act. In both *Starr* and *Meyer*, the courts relied on evidence of a conspiracy between entities who agreed to a company's MFN, not merely evidence of the agreement between entities and the company imposing the MFN.

Unlike the plaintiffs in *Apple*, *Starr*, and *Meyer*, Plaintiffs here have not alleged any facts supporting a horizontal agreement, a "meeting of the minds," or conspiracy between those individuals or entities who agreed to an MFN—the third-party sellers in this matter. *See Twombly*, 550 U.S. at 557 (holding that "[a] statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory"). And as discussed earlier, Plaintiffs have not plausibly alleged a horizontal agreement between Amazon and third-party sellers as "competitors" with respect to the MFN. Absent plausible allegations of a horizontal arrangement—or any legal authority supporting *per se* analysis in the absence of a horizontal agreement or inference thereof—the Court concludes that Plaintiffs' allegations of a *per se* violation fail as conclusory and unsupported.

**C. Section 1 Rule of Reason and Section 2 Claims**

Amazon next asserts that Plaintiffs' Section 1 rule of reason[1] and Section 2 claims

[1] Amazon also argues that a quick-look analysis under the rule of reason is unwarranted

both fail because Plaintiffs do not properly define relevant antitrust markets or allege plausible anticompetitive harm. Dkt. # 18 at 10. Amazon also contends that Plaintiffs' Section 2 claims fail because they do not allege anticompetitive exclusionary conduct. *Id.*

As discussed above, to state a plausible Section 1 claim here, Plaintiffs must establish that (1) an agreement exists, and (2) the agreement imposed an unreasonable restraint of trade through either a per se or rule of reason analysis. *GTE Corp.*, 92 F.3d at 784. Plaintiffs must also plead a relevant market for both Section 1 and Section 2 claims. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018).

To state a claim for monopolization under Section 2, a plaintiff must prove: "(1) [p]ossession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury." *Pac. Exp., Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992). The Supreme Court has characterized "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (internal citation and quotation marks omitted). The possession of monopoly power is not unlawful on its own "unless it is accompanied by an element of anticompetitive *conduct.*" *Id.* (emphasis in original). To state a claim for an attempt to monopolize under Section 2, Plaintiffs must establish the following elements: "(1)

---

here. "While courts typically need not decide which standard to apply at the pleading stage, they must still determine whether the complaint has alleged sufficient facts to state a claim under at least one of these three rules." *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1178 (W.D. Wash. 2021). For the reasons set forth below, the Court finds that Plaintiffs have alleged sufficient factual matter to state a Section 1 claim under the rule of reason and thus need not determine whether a quick-look analysis under the rule of reason is applicable at this time. Indeed, a decision on the applicability of a quick look analysis is more appropriate on a motion for summary judgment. *See In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1122 (N.D. Cal. 2012).

specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury." *Id.* Whether specific conduct is anti-competitive is a question of law. *SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). Amazon contends that Plaintiffs have failed to establish a relevant market, anticompetitive conduct, and antitrust injury.

*1. Relevant Market*

Amazon argues that Plaintiffs fail to allege "a proper relevant market in which to evaluate Amazon's conduct" as required for their Section 1 rule of reason and Section 2 claims. Dkt. # 18 at 21. Under Section 2 of the Sherman Act, "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce . . . [commits a felony]." 15 U.S.C. § 2. To state a valid Section 1 or Section 2 claim, Plaintiffs "must allege that the defendant has market power within a 'relevant market.'" *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008). To do so, Plaintiffs "must allege both that a 'relevant market' exists and that the defendant has power within that market." *Id.* The Ninth Circuit has held that these elements need not be pled with specificity and described consideration of an alleged market in a motion to dismiss accordingly:

> An antitrust complaint [] survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect. And since the validity of the "relevant market" is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial.

*Id.* at 1045; *see also High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993) (holding that "[t]he process of defining the relevant market is a factual inquiry for the jury"); *Chapman v. New York State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008) (holding that "market definition is a deeply fact-intensive inquiry [and] courts [therefore] hesitate to grant motions to dismiss for failure to plead a relevant product

market").

An antitrust claim may be dismissed, however, if its "relevant market" definition is facially unsustainable. 513 F.3d at 1045. To avoid dismissal, the relevant market must be a product market[2] and include the products at issue as well as all economic substitutes for the products. *Id.* It must include "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business." *Id.* (quoting *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989)). "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Id.* (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). The Supreme Court has held that submarkets, "which, in themselves, constitute product markets for antitrust purposes," may exist within the broader product market. 370 U.S. at 325.

Here, Plaintiffs identify the market at issue as the U.S. retail ecommerce market. Dkt. # 15 ¶¶ 139, 192–94, 201. Plaintiffs define the product market as including "all products subject to Amazon's anti-competitive policies." *Id.* ¶ 34. Such products must be offered by Amazon's third-party sellers on Amazon.com and, concurrently, be sold through a retail ecommerce channel other than the Amazon.com platform. *Id.* Alternatively, Plaintiffs identify the following U.S. ecommerce retail submarkets: (1) home improvement tools; (2) men's athletic shoes; (3) skin care; (4) batteries; (5) golf; (6) cleaning supplies; and (7) kitchen and dining products. *Id.* ¶ 150.

The Supreme Court has held that submarkets may be determined by "examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production

---

[2] The term "relevant market" is defined by geography as well as product. *Tanaka v. Univ. of S. California*, 252 F.3d 1059, 1063 (9th Cir. 2001). Because Amazon does not challenge the geographic market, the Court addresses the product market.

facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Id.* These indicia were not intended "as a litmus test, and subsequent decisions have made clear that submarkets can exist where only some of these factors are present." *Bon-Ton Stores, Inc. v. May Dep't Stores Co*., 881 F. Supp. 860, 868 (W.D.N.Y. 1994).

Plaintiffs have provided sufficient "practical indicia" to determine, at minimum, that the alleged submarkets are not necessarily facially unsustainable. Plaintiffs allege that the retail ecommerce market is publicly recognized as a distinct market within the U.S. retail market by government agencies, economists, customers, and retailers. *Id.* ¶ 139. Plaintiffs note that the U.S. Census Bureau and the Bureau of Labor Statistics both track and analyze the ecommerce industry group. *Id.* ¶ 141. The Bureau of Labor Statistics has described differences between ecommerce retailers as compared to brick-and-mortar stores, including lower overhead costs, lower margins, and higher advertising costs. *Id.* Plaintiffs allege that ecommerce retailers attract a younger demographic of customers. *Id.* ¶ 148.

Amazon, for its part, argues that Plaintiff's alleged market "is fatally under- and over-inclusive." *Id.* at 22. It contends that the alleged market is under-inclusive because it does not include retail products available in physical stores and is over-inclusive because it includes "approximately 600 million" products that are not substitutes for each other. *Id.* at 24. The Court is unpersuaded.

The Court finds that Plaintiffs have alleged sufficient facts to support a distinction between the ecommerce retail market and the physical retail market, even though the same products may be available in both. *See F.T.C. v. Whole Foods Mkt., Inc*. 548 F.3d 1028, 1040 (D.C. Cir. 2008) (holding that premium natural and organic supermarkets may constitute a submarket distinct from conventional supermarkets even if some of the products were available in both markets); *Bon-Ton Stores, Inc*., 881 F. Supp. at 869 (holding that "traditional department stores" may constitute a market for antitrust purposes that is distinct from the "general merchandise, apparel and furniture" market,

even though both markets may sell the same type of product). As the court in *Whole Foods* explained, "[t]he fact that a customer might buy a stick of gum at a supermarket or at a convenience store does not mean there is no definable groceries market." *Id.* Finding no "fatal legal defect," the Court cannot conclude, as Amazon argues, that the "relevant market" here is facially unsustainable. *Hicks*, 897 F.3d at 1120. The validity of the relevant market is a factual question reserved for a jury, and the Court makes no such determination here. *Newcal Industries*, 513 F.3d at 1045; *see also American Ad Management*, 92 F.3d at 790 (holding that "[d]efining the relevant market is a factual inquiry ordinarily reserved for the jury").

*2. Anticompetitive Conduct*

Amazon next argues that Plaintiffs do not allege anticompetitive conduct as required for Section 2 claims. Dkt. # 18 at 10. Amazon claims that its conduct at issue is "legitimate and procompetitive—not exclusionary." *Id.* Conduct is "deemed *anticompetitive* under the Sherman Act . . . when it harms both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their quality." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) (emphasis original).

Plaintiffs' here allege that Amazon possesses market power as "it currently controls 70% of all online marketplace sales." Dkt. # 15 ¶ 201. Alternatively, Plaintiffs allege, Amazon is in possession of market power in its identified submarkets: home improvement tools (93%), men's athletic shoes (74%), skin care (91%), batteries (97%), golf (92%), cleaning supplies (88%), and kitchen and dining (94%). *Id.* ¶ 202. Plaintiffs claim that Amazon willfully acquired its monopoly power "by unlawful and improper means," specifically, its former PMFN and current "fair pricing" provision. *Id.* ¶ 203. Plaintiffs contend that these policies, which establish a price floor based on the seller's price listing on Amazon.com, result in supracompetitive prices. *Id.*

Amazon argues that its pricing policies simply "encourag[e] low prices from third party sellers" and resemble other "best-price" policies which have not been found to

violate the Sherman Act. Dkt. # 18 at 26-27. In fact, Amazon claims, "[i]nsisting on a supplier's lowest prices is 'what competition should be all about,' and has no anticompetitive tendency 'as a matter of law.'" *Id.* at 27 (quoting *Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*, 883 F.2d 1101, 1110 (1st Cir. 1989) (internal citation omitted)).

Amazon correctly notes that courts have found that certain most-favored-nation and best-price provisions do not run afoul of the Sherman Act. *See id.* at 27. In *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, the Seventh Circuit noted that MFNs are "standard devices by which buyers try to bargain for low prices." 65 F.3d 1406, 1415 (7th Cir. 1995). The court concluded that the policy at issue was used "to minimize the cost of [physician services], and that is the sort of conduct that the antitrust laws seek to encourage." *Id.*

Similarly, in *Ocean State*, the First Circuit found that the policy at issue "was a bona fide policy to ensure that [the defendant insurer] would not pay more than any competitor paid for the same services." 883 F.2d at 1110. The court agreed with the lower court's conclusion that "such a policy of insisting on a supplier's lowest price—assuming that the price is not 'predatory' or below the supplier's incremental cost—tends to further competition on the merits and, as a matter of law, is not exclusionary." *Id.* The court noted that its conclusion was compelled by its prior holding in *Kartell v. Blue Shield of Massachusetts* that "a health insurer's unilateral decisions about the prices it will pay providers do not violate the Sherman Act—unless the prices are 'predatory' or below incremental cost." 883 F.2d at 1101-11 (citing *Kartell v. Blue Shield of Massachusetts*, 749 F.2d 922 (1st Cir.1984), *cert. denied,* 471 U.S. 1029 (1985)). Finally, in *Kitsap Physicians Service v. Washington Dental Service*, this Court concluded that the defendant's antidiscrimination price policy was not a price control measure, but simply ensured that the defendant "will not be charged more than any other user the same service." 671 F. Supp. 1267, 1269 (W.D. Wash. 1987).

The policies considered in these cases, however, are distinct from the fair pricing policy at issue here. Indeed, Amazon's fair pricing provision does not simply require that sellers sell their products on Amazon.com for a price that is equal to or lower than the price they sell the same products on other platforms. Instead, Amazon's pricing policy requires sellers to add Amazon's fees to the cost of their products when they sell them on all external platforms. The cost of the product is thus based on the price of the product itself—as set by the seller—*plus* the cost of Amazon-set fees, which are built into the product cost on the Amazon.com platform. Such a pricing provision could—and as Plaintiffs allege, does in fact—raise the cost of products on external platforms that charge lower fees than Amazon. Amazon thus suppresses competition from its sellers on external platforms, "where they would otherwise competitively price their goods at a lower price." Dkt. # 15 ¶ 3. Consumers of such products are therefore subject to higher prices of products on external platforms as a result of Amazon's pricing policy.

Here, Plaintiffs state facts, which, if taken as true, are sufficient to demonstrate that the conduct at issue has resulted in and continues to result in the suppression of competition and increase of prices on external platforms. The Court therefore determines that they sufficiently allege the requisite anticompetitive conduct for Section 2 claims under the Sherman Act. Amazon's argument that its pricing provision has procompetitive justifications may be used to rebut Plaintiffs' claims once a *prima facie* case has been established, but the Court need not consider such rebuttals on a motion to dismiss. *See In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1033 (N.D. Cal. 2008) (holding that while "[a] procompetitive benefit may rebut a *prima facie* case . . . to survive dismissal Plaintiffs are required only to establish a *prima facie* case").

*3. Antitrust Injury*

Amazon further argues that Plaintiffs' Section 1 rule of reason and Section 2 claims fail because Plaintiffs do not plausibly allege that the policies at issue harm "the process of competition [or] consumer welfare." Dkt. # 18 at 28 (quoting *Sambreel*, 906

F. Supp. 2d at 1082). Amazon claims that Plaintiffs' complaint "lacks any specific allegations demonstrating that Amazon's policies have reduced competition among retailers," or that retailers have exited or reduced their output as a result of Amazon's policies." *Id.* at 29. Plaintiffs respond that their allegations of higher market prices and restrained competition do, in fact, demonstrate the requisite anticompetitive harm. Dkt. # 19 at 13.

The antitrust laws are intended "to preserve competition for the benefit of consumers." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1055 (9th Cir. 1999). "A plaintiff may only pursue an antitrust action if it can show 'antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Id.* (quoting *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)).

Here, Plaintiffs claim that they and class members—consumers of the class products—"have been injured and will continue to be injured in their businesses and property by paying more for class products than they would have paid or would pay in the future in the absence of" Amazon's pricing policies. Dkt. # 15 ¶ 205. Plaintiffs describe the nature of the injury to consumers in the form of supracompetitive prices for products on platforms external to Amazon.com and reduced price competition, resulting directly from Amazon's allegedly unlawful price-fixing conduct. *Id.* ¶¶ 11–18, 168–69. Plaintiffs provide factual support to support their claim of injury in the form of the higher prices paid by class members and sellers' inability to charge competitive prices. *See id.* ¶¶ 11–18, 46–66. While Amazon asserts that Plaintiffs "allege only some anecdotal matching of Amazon's prices in cherry-picked instances," the Court finds that facts alleged that would constitute an offense, regardless of how numerous, are sufficient to survive a motion to dismiss. *See SmileCare*, 88 F.3d at 783 (holding that "[d]ismissal for failure to state a claim is appropriate where the complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language

regarding the elimination of competition and improper purpose") (internal citation and quotations omitted). The Court concludes that Plaintiffs have adequately pled antitrust injury. For these reasons, the Court concludes that Plaintiffs have plausibly stated claims under Section 1 and Section 2 of the Sherman Act. Amazon's motion to dismiss these federal claims is **DENIED**.

**D. State Law Antitrust and Consumer Protections Claims**

In addition to its federal antitrust claims, Plaintiffs assert a number of state law claims, specifically, violations of state antitrust and restraint of trade laws and consumer protection statutes in 38 jurisdictions. Dkt. # 15 ¶¶ 217–225. Amazon argues that Plaintiffs' state law claims also fail for several reasons. First, Amazon asserts that Plaintiffs do not state a *per se* claim based on a vertical price-fixing agreement under Maryland and California law. Dkt. # 18 at 30. Amazon claims that California and Maryland law only prohibit minimum resale price agreements, and Plaintiffs have not alleged such relationships to establish a per se claim. *Id.* The Court is unpersuaded.

Under the Maryland Antitrust Act, an individual may not "[b]y contract, combination, or conspiracy with one or more other persons, unreasonably restrain trade or commerce." Md. Code Ann., Com. Law § 11-204(a). An "unreasonable restraint of trade" includes "a contract, combination, or conspiracy that establishes a minimum price below which a retailer, wholesaler, or distributor may not sell a commodity or service." *Id.* § 11–204(b). "Price-fixing is thus a *per se* violation of the Maryland Antitrust Act." *The Yellow Cab Co. v. Uber Techs., Inc.*, No. RDB–14–2764, 2015 WL 4987653, at *4 (D. Md. Aug. 19, 2015). In *Yellow Cab*, the court concluded that the alleged price-fixing agreement between Uber and its drivers, which did not constitute a minimum resale price agreement, could plausibly allege a per se claim under Maryland law. *Id.* at *5.

Similarly, under California law, "the rules apply whether the price-fixing scheme is horizontal or vertical; that is, whether the price is fixed among competitors . . . or businesses at different economic levels." *Mailand v. Burckle*, 572 P.2d 1142, 1147 (Cal.

1978) (internal citations omitted). In *Mailand*, the Supreme Court of California concluded that a franchise agreement between entities at different levels constituted price-fixing, a *per se* violation of California law. *Id.* Thus, the Court finds Amazon's argument that Maryland and California *per se* violations are limited to minimum resale price agreements unavailing.

Amazon next argues that Plaintiffs' claims under the laws of states in which Plaintiffs do not reside should be dismissed. Plaintiffs assert antitrust and consumer protection claims under the laws of 38 states in total, *see* Dkt. # 15 ¶ 224, but only provide factual allegations for plaintiffs who reside in 18 states. *Id.* ¶ 46-66. Amazon argues that the Court should dismiss Plaintiffs' claims under the laws of 20 states for which they lack a plaintiff. Dkt. # 18 at 30. The Court agrees. "Where . . . a representative plaintiff is lacking for a particular state, all claims based on *that* state's laws are subject to dismissal." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) (emphasis in original).

Contrary to Plaintiffs' contention, *Melendres v. Arpaio* does not compel a different outcome. 784 F.3d 1254, 1262 (9th Cir. 2015). In *Melendres*, the Ninth Circuit adopted the "class certification approach" which "holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Id.* Here, Plaintiffs have not established standing for claims under laws of states where they do not reside. The Court thus dismisses Plaintiffs' claims under the laws of Alaska, Hawaii, Idaho, Kansas, Kentucky, Louisiana, Maryland, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Mexico, North Carolina, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, and West Virginia.

With respect to the remaining claims brought under laws in the states where Plaintiffs do reside, the Court also finds Plaintiffs' pleading deficient. "A cursory listing of the other states' statutes is insufficient to satisfy *Twombly* and *Iqbal*'s pleading

requirements." *Adams v. Target Corp.*, No. 2:13-cv-05944-GHK-PJW, 2014 WL 12558290, at *6 (C.D. Cal. Mar. 3, 2014). Plaintiffs do not sufficiently allege facts establishing the elements of each state claim. The Court therefore **DISMISSES** these state claims[3] and **GRANTS** Plaintiffs' request for leave to amend. Dkt. # 19 at 33.

**E. Unjust Enrichment Claims**

Finally, Amazon argues that Plaintiffs' unjust enrichment claims fail for three reasons: (1) similar to their state law antitrust and consumer protection claims, Plaintiffs do not plead facts establishing the elements of the claims under the laws of 41 jurisdictions; (2) Plaintiffs' fail to allege that they conferred any benefit on Amazon, either directly or indirectly; and (3) Plaintiffs lack standing to bring claims under the laws of any state in which they do not reside. Dkt. # 18 at 31. Plaintiffs respond that because the elements of unjust enrichment are essentially the same in every jurisdiction, they need not repeat them for each jurisdiction. Dkt. # 19 at 33. Plaintiffs next argue that their unjust enrichment claims "do not require that the plaintiff confer a direct benefit on the defendant and therefore would permit claims of overcharges caused by Amazon but paid to another." *Id.* at 33. Finally, Plaintiffs assert the same standing argument to support claims under laws of states in which they made purchases. *Id.* at 34.

While state laws of unjust enrichment vary, "[a]lmost all states at minimum require plaintiffs to allege that they conferred a benefit or enrichment upon defendant and that it would be inequitable or unjust for defendant to accept and retain the benefit." *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 541 (E.D. Pa. 2010); *see also Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc,* No. 15 CIV. 6549 (CM), 2018 WL 7197233, at *55 (S.D.N.Y. Dec. 26, 2018) (holding that "[f]ederal district courts generally recognize that the elements of unjust enrichment are similar in every state")

[3] While the Court rejected Amazon's attempt to dismiss Plaintiffs' state claims of *per se* violations under Maryland and California law based on its argument concerning minimum resale price agreements, the Court dismisses all state claims for failure to sufficiently allege facts to establish the elements of each state claim.

(internal quotations and citation omitted). The Court concludes that Plaintiffs need not repeat the factual allegations for each of the 41 jurisdictions in which they allege state claims of unjust enrichment.

Nonetheless, the Court concludes that Plaintiffs fail to sufficiently allege unjust enrichment because they do not allege that they conferred a benefit or enrichment upon Amazon. The elements of an unjust enrichment claim include: "a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). In the complaint, the alleged benefit conferred to Amazon is "reducing price competition and causing consumers to pay higher online prices." Dkt. # 15 ¶ 228. The nebulous nature of the so-called benefit notwithstanding, Plaintiffs do not allege that they conferred "reduced price competition" to Amazon nor were they the ones to "cause" consumers to pay higher prices—either directly or indirectly. Because Plaintiffs allege no facts consistent with the claim that they conferred a benefit to Amazon, Plaintiffs' unjust enrichment claims are therefore **DISMISSED**.

## V. CONCLUSION

For the reasons stated above, Amazon's Motion to Dismiss, Dkt. # 18 is **DENIED in part** and **GRANTED in part.** The Court **GRANTS** Amazon's motion to dismiss Plaintiffs' Section 1 claim under a per se analysis. The Court **DENIES** Amazon's motion to dismiss Plaintiffs' Section 1 claim under a rule of reason and Section 2 claims. The Court **GRANTS** dismissal of Plaintiffs' state antitrust and restraint of trade laws, consumer protections statutes, and unjust enrichments claims. Because Plaintiffs' complaint may be cured "by the allegation of other facts," the Court grants leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Plaintiffs may file an amended

complaint addressing the deficiencies identified herein within thirty (30) days of the entry of this Order.

DATED this 11th day of March, 2022.

The Honorable Richard A. Jones
United States District Judge