The Honorable John C. Coughenour

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| Wolfire Games, LLC, Sean Colvin, Susann Davis, Daniel Escobar, William Herbert, Ryan Lally, Hope Marchionda, Everett Stephens, individually and on behalf of all others similarly situated,<br><br>                                  Plaintiffs,<br><br>     v.<br><br>Valve Corporation,<br><br>                                  Defendant. | Case No. 2:21-cv-00563-JCC<br><br>**REPLY IN SUPPORT OF DEFENDANT VALVE CORPORATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR: APRIL 8, 2022** |

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC)

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT ................................................................................................................. 2

       A.     Wolfire Has Not Pled Facially Sustainable Separate Product Markets for
              Games and Gaming Platforms. .................................................................... 2

       B.     Wolfire's Supracompetitive Pricing Allegations Remain Implausible
              Under *Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013). ................... 5

       C.     Wolfire Has Again Failed to Allege Nonprice Harms. ............................... 8

       D.     Wolfire Has Again Failed to Allege Valve's Steam Key Guidelines
              Violate Antitrust Law. ............................................................................... 10

       E.     Wolfire Has Again Failed to Plausibly Allege the Existence of a PMFN. .......... 11

III.   CONCLUSION ............................................................................................................ 12

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - i

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
    472 U.S. 585 (1985)..................................................................................................10

5

6

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
    836 F.3d 1171 (9th Cir. 2016) ................................................................................10

7

*AngioDynamics, Inc. v. C.R. Bard, Inc.*,
    2018 WL 3730165 (N.D.N.Y. Aug. 6, 2018) ..........................................................3

8

9

*CollegeNet, Inc. v. Common Application, Inc.*,
    355 F. Supp. 3d 926 (D. Or. 2018) .........................................................................3

10

11

*Dark Catt Studios Holdings, Inc. v. Valve Corp.*,
    No. C21-0872-JCC (W.D. Wash. Nov. 19, 2021) .................................................10

12

*Epic Games, Inc. v. Apple Inc.*,
    493 F. Supp. 3d 817 (N.D. Cal. 2020) ....................................................................4

13

14

*Frame-Wilson v. Amazon.com, Inc.*,
    No. 2:20-cv-00424-RAJ (W.D. Wash. Mar. 11, 2022)..........................................12

15

16

*Image Tech. Servs. v. Eastman Kodak Co.*,
    903 F.2d 612 (9th Cir. 1990) ...................................................................................4

17

*Jefferson Parish Hospital District No. 2 v. Hyde*,
    466 U.S. 2 (1984)...............................................................................................2, 3, 5

18

19

*Klein v. Facebook, Inc.*,
    2022 WL 141561 (N.D. Cal. Jan. 14, 2022) .......................................................3, 4

20

21

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
    551 U.S. 877 (2007)..................................................................................................9

22

*In re Musical Instruments and Equipment Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) .................................................................................9

23

24

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*,
    532 F.3d 963 (9th Cir. 2008) ...............................................................................4, 5

25

26

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ......................................................................... *passim*

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - ii

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1

*Somers v. Apple, Inc.,*
   No. 5:07-cv-06507-JW (N.D. Cal. Jan. 25, 2011) ...................................................................8

2

3

*Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.,*
   2021 WL 5474898 (N.D. Cal. Nov. 23, 2021) ...........................................................2, 3, 4, 5

4

*Teradata Corp. v. SAP SE,*
   2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) .........................................................................3

5

6

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.,*
   875 F.2d 1369 (9th Cir. 1989) .................................................................................................7

7

8

*United States v. Microsoft Corp. (Microsoft II),*
   147 F.3d 935 (D.C. Cir. 1998) .................................................................................................4

9

10

*United States v. Microsoft Corp. (Microsoft III),*
   253 F.3d 34 (D.C. Cir. 2001) (*en banc*)...................................................................................4

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1

## I.   **INTRODUCTION**

2     In its Motion (Dkt. 74, "Mot."), Valve identified the new allegations and few new facts in

3 the Second Amended Complaint ("SAC") and showed why they add nothing to change the

4 Court's Order (Dkt. 67) dismissing Wolfire's prior complaint. In its Opposition (Dkt. 76,

5 "Opp."), Wolfire avoids this approach as though it were radioactive, arguing mostly the same

6 facts as before. Many of its arguments would be more at home in a motion for reconsideration.

7     The Court first held that Wolfire's tying claims were insufficiently pled because they

8 relied on an implausible definition of the relevant market. Order at 4–5. Wolfire offers no new

9 factual allegations in the SAC to disturb the Court's conclusion that Steam is "a single product

10 within the integrated game platform and transaction market." Order at 5.

11     Rejecting Wolfire's contention that Valve's 30% commission is supracompetitive, the

12 Court then found that "Plaintiff's allegations are not meaningfully different from *Somers v.*

13 *Apple*." Order at 6. Rather than adding new facts of any consequence, Wolfire tries to persuade

14 the Court that the only parts of *Somers* that matter are the few facts that differ. Wolfire asserts

15 that "Valve," and thus the Court, "fundamentally misapplies *Somers*." Opp. at 17. But the Court

16 did not misapply *Somers*, and its prior ruling should stand.

17     The Court also concluded that Wolfire failed to allege nonprice antitrust injuries in output

18 or quality. Order at 7. Wolfire offers no new factual allegations to upset the Court's ruling on

19 this point. The SAC paragraphs Wolfire cites in its Opposition recapitulate allegations from the

20 Consolidated Amended Complaint ("CAC"), and most have nothing to do with output or quality.

21     Wolfire has conceded that Valve has no duty to deal when it comes to Steam Keys,

22 dooming its allegation that Valve's application of its Steam Key guidelines to Steam-enabled-

23 games violates antitrust law. Opp. at 13.

24     In an attempt to render plausible its allegation that Valve surreptitiously applies its Steam

25 Key guidelines beyond the use of free Steam Keys as an anticompetitive PMFN, Wolfire

26 provides two new anecdotes, neither of which is sufficient to allege market-wide communication,

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

injury, or actual enforcement of the alleged PMFN. Under Valve's written policy, the Steam Keys guidelines apply only to Steam-enabled games. Wolfire has not plausibly alleged that a shadow policy subjecting non-Steam-enabled games to Steam Key guidelines exists, was ever communicated market-wide, had market-wide impact, or was ever enforced against anyone.

This should be the end of the road for Wolfire. It has twice failed to allege a violation of the antitrust laws. Having made it abundantly clear that it simply cannot come up with the facts it needs to allege plausible claims, Wolfire should be denied leave to try again.

## II.   ARGUMENT

### A.   Wolfire Has Not Pled Facially Sustainable Separate Product Markets for Games and Gaming Platforms.

The Court highlighted four alleged facts that doomed Wolfire's attempt to divide Steam into two separate products in two separate markets: (i) games developed for a particular platform cannot be played on another, (ii) with limited exceptions, game platforms generally do not charge for their use, (iii) instead they generate revenue to support the platform through the sale of platform-compatible games and in-app purchases, and (iv) Steam-enabled games can be purchased elsewhere only through a Steam Key, which Valve provides developers at no charge, that allows the game to be played on Steam. Order at 5. Wolfire's "substantial new allegations" (most of which already appeared in the CAC) undercut none of the facts the Court found dispositive. *See* Mot. at 7–10.

Wolfire's own cases show why its separate-products allegations fail the "consumer demand" test of *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2 (1984). Opp. at 10. In *Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*, 2021 WL 5474898 (N.D. Cal. Nov. 23, 2021), a surgical robot, commanding 99% of the market, used instruments "'essentially identical' to their analogue counterparts—scalpels, clamps, forceps, scissors, etc."—attached to the robotic arm for surgery. *Id.* at *1. *The manufacturer sold both the robots and replacement instruments separately to users*, but thwarted independent shops from repairing or replacing the

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 2

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

instruments when they dulled or broke. *Id.* at *2. Here, by contrast, games and platforms on which to play them are not separate products that Valve, Epic, and other platform operators sell separately to users. Indeed, they sell only games with the platform provided free to the user.

Three other decisions Wolfire cites in its *Jefferson Parish* argument also illustrate consumer demand for separate products and do not help Wolfire here, where the Court found the market for games and platforms, as alleged, does not reveal separate demand. Order at 5. In *CollegeNet, Inc. v. Common Application, Inc.*, 355 F. Supp. 3d 926, 954–55 (D. Or. 2018), firms sold two kinds of services separately to colleges wishing to automate their application processes: (i) data services allowing students to complete one common application but send their data to all colleges to which they applied and (ii) processing or evaluation services to help colleges evaluate applicants. Competing vendors sold one or both and colleges bought one or both. *Id.* at 954. Similarly, in *Teradata Corp. v. SAP SE*, 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018), companies sold two different kinds of large-business software: (i) one that manages data and conducts transactions and day-to-day operations, and (ii) another that stores and analyzes vast amounts of business data. Most very large companies used both, but usually bought them separately from different providers. *Id.* at *1, 12. In *AngioDynamics, Inc. v. C.R. Bard, Inc.*, 2018 WL 3730165 (N.D.N.Y. Aug. 6, 2018), competing companies made catheters and catheter tip location systems to allow physicians to see the catheter's location during procedures. *Id.* at *2. All tip manufacturers but one sold catheters and tips separately, and even the one that sold them together secured FDA approval to sell them separately. *Id.* at *3. In short, the products in *CollegeNet*, *Teradata*, and *AngioDynamics* were usually sold separately in separate markets. Not so here.

Wolfire also cites *Klein v. Facebook, Inc.*, 2022 WL 141561, at *14 (N.D. Cal. Jan. 14, 2022). Opp. at 10. There, the court had to decide whether social media services that allow users to post and exchange content, like Facebook and Twitter, were in the same market as (i) online services that show movies, like Hulu, or (ii) search engines, like Google, Yahoo, and Bing. Judge

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 3

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

Koh found they were in separate markets because they operate differently, are used for different purposes, appeal to different audiences, have distinct core functionalities, and are priced differently. *Klein* at \*12–14. For instance, entertainment services like Hulu limit users to viewing media provided by the services and do not allow users to communicate with each other. *Id.* at \*13. And they charge users differently: entertainment services usually charge users per-use, monthly, or annual fees, while social media services like Facebook "subject the users to ads … or require the users to give up some form of limited data." *Id.* at \*12. *Klein* shows separate demand because different kinds of products, priced differently, are sold separately to different audiences. It provides no support for dividing Steam—where the same audience purchases games that can be used only on the Steam platform—into separate products in separate markets.

Wolfire argues the general principle that "distinct markets can exist even for jointly consumed products," Opp. at 10, and cites *Image Tech. Servs. v. Eastman Kodak Co.*, 903 F.2d 612, 615–16 (9th Cir. 1990) ("That products must be used together does not eliminate the possibility that they form distinct markets."), and *United States v. Microsoft Corp. (Microsoft III)*, 253 F.3d 34, 60 (D.C. Cir. 2001) (*en banc*). But this Court did not rule out separate demand just because Steam-enabled games and Steam are jointly consumed. In *Kodak*, like *Surgical Instrument*, machines and service, while used together, were sold separately to meet demand for independent service. And the D.C. Circuit previously found Microsoft's operating system and browser to be separate products. *United States v. Microsoft Corp. (Microsoft II)*, 147 F.3d 935, 952 (D.C. Cir. 1998). *Microsoft III*, after trial, vacated and remanded a tying judgment, acknowledging "merit [in] Microsoft's broader argument that *Jefferson Parish's* consumer demand test would 'chill innovation to the detriment of consumers'" in technology cases. 253 F.3d at 89. In another technology case, the court began its analysis with the "essential ingredient" test. *Epic Games, Inc. v. Apple Inc.*, 493 F. Supp. 3d 817, 842 & n.27 (N.D. Cal. 2020).

Finally, Wolfire accuses Valve of "invit[ing] the Court to commit reversible error" by applying the "essential ingredient" test in *Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*,

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 4

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

532 F.3d 963, 974 (9th Cir. 2008). That is nonsense because the Court held, and Valve agrees, that "under either *Jefferson Parish*'s consumer demand standard or *Rick-Mik*'s essential ingredient standard, the CAC's [now SAC's] allegations suggest that the Steam Platform and Steam Store are a single product within the integrated game platform and transaction market." Order at 5. Wolfire tries to cabin the "essential ingredient" test to franchises, incorrectly claiming, Opp. at 12, that *Surgical Instrument*, 2021 WL 5474898, at *4, "not[ed] *Rick-Mik's* logic is limited to franchise-related antitrust disputes." Not so. In fact, Judge Chhabria found "the various franchise cases cited by Intuitive Surgical are not analogous to the facts here," *id.*, not because *Rick-Mik* and cases following it apply only to franchises but because buying robots and instruments in separate transactions was not analogous to buying a franchise, where a single purchase of, say, a Domino's or Pizza Hut includes multiple components and buyers can choose which franchise to buy. *Id.* In *Rick-Mik*, one component (credit card processing services), an essential ingredient of the franchise's success, could not be called a separate product. Here, a game buyer, as in *Rick-Mik*, buys in a single purchase a game enabled for Steam or Epic that can be played only on that platform at no additional charge. SAC ¶¶ 2, 9, 258–60, 264–66, 272, 277–83, CAC ¶¶ 2, 6, 236–38, 242–44, 249, 254–60. No one can doubt Valve's revenue from selling games is an "essential ingredient" of its successful business model that makes Steam free to gamers. Steam is one integrated product under either the *Jefferson Parish* or *Rick-Mik* standard.

Still hedging its bets, Wolfire reminds the Court again that it alleged an alternative integrated single market for PC Desktop Game Transaction Platforms. Opp. at 9. But the SAC offers no new allegations to alter the Court's decision that Steam is "a single product within the integrated game platform and transaction market." Order at 5.

### B. Wolfire's Supracompetitive Pricing Allegations Remain Implausible Under *Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013).

"Plaintiff's allegations are not meaningfully different from *Somers v. Apple*, where the Ninth Circuit found implausible the allegation that Apple's 99 cent music download fee was

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 5

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1   supracompetitive." Order at 6. Wolfire now asserts that "Valve fundamentally misapplies

2   *Somers*," Opp. at 17, but Wolfire's distinctions—Amazon's emergence as a "successful"

3   competitor as a result of which Apple lost its monopoly and discontinued the challenged Fairplay

4   encryption software, and Valve's competition against brick-and-mortar stores with allegedly

5   higher costs—do not disturb the Court's prior ruling because neither alters the dispositive fact

6   that Valve, like Apple, maintained its price from the beginning in the face of competition.

7        First, Wolfire's argument that in *Somers*, "Amazon emerged as a successful competitor

8   by 2008, and that Apple lost its monopoly power and lost its ability to charge supracompetitive

9   prices" does not help because Apple's price, like Valve's commission, "remained the same (99

10  cents) … *before* it obtained monopoly in the audio download market, and *after* it allegedly

11  acquired monopoly in that market in 2004." *Somers*, 729 F.3d at 964. Valve's 30% "began not

12  long after 2001, when the PC desktop game 'digital distribution' market was in a 'fledgling

13  stage,' yet Defendant did not become 'dominant' in the market until 2013." Order at 6 (quoting

14  allegations in CAC ¶¶ 46, 97 that also appear in SAC ¶¶ 51, 111). Amazon began competing

15  against Apple by selling digital music in 2008, but Valve faced "vibrant competition" from the

16  beginning including from "Amazon, GameStop, Microsoft, EA, IGN, GOG, Direct2Drive,

17  Stardock, and others" that "rushed to fill [the] void" in digital game distribution in the early

18  2000s, SAC ¶ 51, CAC ¶ 46. That competition has continued for nearly 20 years. SAC ¶¶ 247–

19  89. "There, as here, the price remained the same throughout, even during periods of intense

20  competition in the marketplace." Order at 6.

21       Valve allegedly set its 30% commission amidst this "vibrant competition between these

22  digital distributors" in the early 2000s. SAC ¶ 51, CAC ¶ 46. Wolfire thus admits the

23  commission was a competitive rate when set. Valve maintained that commission until allegedly

24  becoming "dominant" in 2013, SAC ¶ 111, CAC ¶ 97, and beyond. Wolfire added an allegation

25  that "those rival distributors were unable to materially gain a foothold in the market and quickly

26  folded," SAC ¶ 111, to its previous statement that one, "Stardock[,] was eventually purchased by

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 6

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

1  GameStop in 2011," SAC ¶ 111, CAC ¶ 97. So to escape its allegation that Valve's success came

2  in a field of more than eight digital competitors, including Amazon, Microsoft, and GameStop,

3  Wolfire claims Valve's "forcing consumers of its then-coveted games (most prominently, Half-

4  Life 2) to install and use" Steam was "the means by which Valve quickly obtained and then

5  anticompetitively maintained market power." SAC ¶ 51. But Wolfire told its Half-Life 2 story

6  before the Court dismissed its original complaint, CAC ¶¶ 51–53, and Wolfire still alleges

7  nothing anticompetitive in Valve's decision to release only a Steam-enabled version of Half-

8  Life 2 in 2004. As Valve noted before the Court dismissed the CAC, the publishers of any of the

9  dozen games "comparable" to Half-Life 2's predecessor could have done the same by

10 themselves or with Amazon, Microsoft, GameStop, or any of the other digital distributors. Reply

11 on Mot. to Dismiss CAC, Dkt. 57 at 1–2 (citing CAC ¶ 48, now SAC ¶ 53).

12     Wolfire misstates the law in arguing that only "successful" competitors count. The "field

13 of competition" includes actual and potential competitors. *Thurman Indus., Inc. v. Pay 'N Pak

14 Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989). Thus, Amazon's "successful" competition

15 ending Apple's monopoly does not make *Somers* inapplicable. The Ninth Circuit stated that

16 Apple's price remained the same "*before* it obtained monopoly in the audio download market,

17 and *after* it allegedly acquired monopoly in that market in 2004." *Somers*, 729 F.3d at 964. The

18 court then observed, "[m]oreover," the price remained unchanged "even after Apple's alleged

19 monopoly ended in the beginning of 2008—when Amazon began selling DRM-free music." *Id*.

20 But that observation is not a requirement for applying *Somers*. Apple, like Valve, set its price

21 before it allegedly had a monopoly and maintained it for years, despite competition. What

22 matters is not whether competitors succeeded in ending a monopoly, but whether the allegedly

23 supracompetitive fee was charged "irrespective of the absence or presence of a competitor." *Id.*

24 ("The fact that Apple continuously charged the same price for its music irrespective of the

25 absence or presence of a competitor renders implausible Somers' conclusory assertion that

26 Apple's software updates affected music prices."). So too here.

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

1           Second, Wolfire argues that because Valve set its 30% commission when most

2  consumers bought games at brick-and-mortar stores, "*Somers*' logic does not apply" "after the

3  shift to digital distribution." Opp. at 19. But that is no different from *Somers* where Apple set its

4  99-cent price when most consumers were buying music on CDs from retail stores. *See* Corrected

5  Second Amended Complaint ¶¶ 17, 22, *Somers v. Apple, Inc.*, No. 5:07-cv-06507-JW (N.D. Cal.

6  Jan. 25, 2011), Dkt. 115*; Somers*, 729 F.3d at 956 n.1 ("The facts are drawn from the allegations

7  in the operative Corrected Second Amended Complaint."). And Wolfire's assertion that "gamers

8  purchased most PC Desktop Games at brick-and-mortar locations" is not new. Opp. at 18 (citing

9  SAC ¶ 46 without revealing that paragraph is a copy of CAC ¶ 43). *See* Order at 6 (CAC

10  "describes Defendant's cost structure and the (lower) fees charged by some of its competitors").

11           Wolfire's new allegations add some detail about what costs brick-and-mortar stores incur,

12  but no facts to change the Court's decision. Opp. at 18–22. Valve competed from the outset

13  against all game distributors—brick-and-mortar and digital distributors like Amazon, Microsoft,

14  and GameStop, SAC ¶ 51 ("there was vibrant competition between these digital distributors")

15  (also in CAC ¶ 46). These digital distributors shared Valve's allegedly lower digital distribution

16  costs. SAC ¶ 48 ("Digital distributors … have substantially lower costs"). Yet, like Apple, Valve

17  maintained its original commission in the face of competition from the old and new world.

18  Valve does not ask the Court "to rewrite the SAC into something it is not" to find Wolfire's

19  supracompetitive commission allegations implausible. Opp. at 20. The facts Wolfire pled make

20  its supracompetitive commission allegations no more plausible than those in *Somers*.

21      **C.**     **Wolfire Has Again Failed to Allege Nonprice Harms.**

22           Wolfire misconstrues the Court's ruling on nonprice harms and fails to resuscitate its

23  previously dismissed claims of injury from reduced output and quality. Opp. at 23–24. Wolfire

24  refers the Court to SAC ¶¶ 10, 25, 166–67, 326–32, but fails to mention all appeared in CAC ¶¶

25  7, 22, 149–50, 300–06. Because Wolfire relies on allegations copied from the CAC, the Court's

26  prior ruling that Wolfire alleged no claim for reduced output or quality should stand.

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 8

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1    A review of those allegations confirms Wolfire's claimed antitrust injury is not well pled.

2    Paragraph 25 asserts that a lower commission rate would free up developer "resources for

3    innovation and creation," which is just another way of arguing supracompetitive commission.

4    Wolfire then offers the bare, conclusory assertion that "[c]ompetition, output, and innovation are

5    suppressed." SAC ¶ 25. And paragraphs 166 and 167 say Valve's Steam Keys are insecure. This

6    is not the type of injury the antitrust laws are intended to prevent, and it is not an injury that

7    flows from that which allegedly makes the challenged conduct unlawful. The Court cannot

8    plausibly infer that Valve's alleged conduct caused antitrust injury from these alleged facts.[1]

9    According to Wolfire, Valve uses a PMFN to compel developers to charge inflated prices

10   for games, diminishing overall game output. SAC ¶ 246, CAC ¶ 227. To support this charge,

11   Wolfire again alleges that developers often sell their games for similar prices across different

12   platforms. SAC ¶¶ 226–31, CAC ¶¶ 207–212. Crediting this factual allegation for purposes of

13   this motion, the Court need not accept Wolfire's unsupported theory as to *why* developers

14   sometimes sell their games for similar prices across platforms. *See, e.g., In re Musical*

15   *Instruments and Equipment Antitrust Litig.*, 798 F.3d 1186, 1193, 1195 (9th Cir. 2015) (mere

16   fact that manufacturers sold their guitars at same price did not state a claim for price-fixing

17   conspiracy). As *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 898 (2007)

18   recognized, notwithstanding Wolfire's cramped reading, Opp. at 24, uniform pricing, even if

19   explicitly required in a vertical relationship, may not be anticompetitive.

20   Pointing to its own experience, Wolfire alleges a single specific instance of Valve's

21   conduct leading to an alleged reduction in the output of games. SAC ¶¶ 27,[2] 310. But the output

22   reduction Wolfire claims is merely a knock-on effect of Valve's allegedly supracompetitive

23   commission. The Court already found that Valve's 30% commission was not plausibly alleged to

---

[1] SAC ¶¶ 10 and 326–32 have nothing to do with product output or quality; 10 discusses
Wolfire's tying claim, 326–327 discuss price, and 328–32 speak to class certification.

[2] SAC ¶ 27 is identical to CAC ¶ 24, but for the tacked-on, conclusory assertion that Wolfire was
"subject to reduced output and quality in the distribution of its games through the Steam Store."

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 9

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

be supracompetitive. Order at 6–7. Wolfire's allegations of reduced output must fall with its supracompetitive commission claim. Even if Wolfire's individual reduced-output allegations were to stand, they fall far short of alleging market-wide antitrust injury. *See* Mot. at 20–22.

As for reduced quality, Wolfire refers the Court to its stale allegations that Valve's Steam Keys are "low quality and insecure" because they are not invulnerable to hackers and fraudsters. SAC ¶¶ 166–67, CAC ¶ 149–50. As the Court found, these are not the types of harm that flow from that which allegedly makes the conduct unlawful. *See* Order at 7. Nor are they the type of harm the antitrust laws are intended to prevent. *Id.* Far from plausibly alleging that unlawful antitrust conduct has caused quality to suffer, all Wolfire has alleged is that market participants overwhelmingly prefer Steam to other platforms. SAC ¶ 122, CAC ¶ 108.

The Court need not accept any "alternative narrative," Opp. at 24, to reject Wolfire's output and quality claims. Rather, Wolfire must plead *facts* alleging antitrust injury.

### D.    Wolfire Has Again Failed to Allege Valve's Steam Key Guidelines Violate Antitrust Law.

Wolfire claims it is of no "legal or practical import" that it has conceded Valve's right not to distribute Steam Keys at all. Opp. at 13. This concession is, on the contrary, highly significant because when Valve can choose whether it will deal it can also choose the terms on which it will deal. *See Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016). "So long as it has a valid business reason for the terms it attaches to Steam Keys, those terms cannot, as a matter of law, represent unlawful antitrade conduct." *Dark Catt Studios Holdings, Inc. v. Valve Corp.*, No. C21-0872-JCC, Dkt. 56 at 4 (W.D. Wash. Nov. 19, 2021) (citing *Aerotec and Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985)). Wolfire admits as much by citing *Lorain Journal Co. v. United States*, 342 U.S. 143, 152 (1951), Opp. at 14, a case the Supreme Court built on in affirming Aspen Skiing's liability under Section 2 because it had "no valid business reasons" for its conduct. *Aspen Skiing*, 472 U.S. at 605. As with Dark Catt's, nothing in Wolfire's "complaint suggests that Defendant's Steam Key terms are irrational." *Dark*

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 10

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1  *Catt*, Dkt. 56 at 4. With this concession, Wolfire's Steam Key argument unravels completely,

2  leaving only its assertion of a shadow policy reaching non-Steam-enabled games.

3        **E.**      **Wolfire Has Again Failed to Plausibly Allege the Existence of a PMFN.**

4        Wolfire alleges that Valve maintains a written policy requiring one standard of conduct

5  while simultaneously maintaining a shadow policy requiring another. Opp. at 2, 14, 16; SAC ¶

6  212, CAC ¶ 195. No one has ever seen this shadow policy. *Id.* The written policy governing free

7  Steam Keys is posted for all developers to read, but the alleged shadow policy that sweeps in

8  non-Steam-enabled games is not. *Id.* Yet the shadow policy nevertheless strikes "fear of

9  retaliation" into the hearts of developers. SAC ¶ 289.

10        Of the "vast number of game developers selling through the Steam Store," SAC ¶ 240,

11  Wolfire identifies just four who have ever purportedly heard anything from Valve about the

12  shadow policy. *See id.* ¶¶ 212, 218, 221, 222. Wolfire identifies just one developer by name—

13  itself. *Id.* ¶ 221. The others are anonymous. Wolfire alleges nothing about any enforcement

14  against any developer, ever. Wolfire alleges nothing about the kind of market-wide

15  communication and enforcement that would be required to make the antitrust injury alleged—

16  propping up a supracompetitive commission for nearly 20 years—plausible.

17        Rather than allege facts, Wolfire asks the Court to surmise the shadow policy's market-

18  wide dissemination and enforcement. One would think Valve would find it rather inefficient to

19  disseminate such an important policy by privately communicating it to tens of thousands of

20  developers rather than, say, writing it down and posting it, as it does its other policies. *See* SAC ¶

21  182. But of course, Wolfire has not alleged that the shadow policy has been communicated

22  directly to more than four developers. SAC ¶¶ 212 (same as CAC ¶ 195), 218 (same as CAC ¶

23  201), 221, 222. Only a single Valve employee is named. SAC ¶¶ 218, 221. Wolfire is the only

24  developer alleged to have modified its behavior as a result of any statement Valve made, and

25  Wolfire alleged only vaguely that it "has not offered its games for a lower price." SAC ¶ 221.

26  Wolfire has not alleged that it took any action at Valve's insistence. While it claims Valve "has

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 11

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1  cracked down" on developers "that offer a better deal on competitive storefronts by excluding (or

2  threatening to exclude) them from … Steam," SAC ¶ 213, CAC ¶ 196, Wolfire has not identified

3  a single instance of Valve "cracking down" on a developer by excluding it from Steam or

4  penalizing a developer in any way for failing to abide by the alleged shadow policy.

5        In short, Wolfire's claims regarding this alleged policy are thoroughly fanciful. While

6  Wolfire has supplemented its pleading with a couple of threadbare, conclusory allegations, SAC

7  ¶¶ 221, 222, these anecdotes do not show enforcement or any market-wide injury, and therefore

8  make its claims only infinitesimally more plausible. They are nowhere near enough.

9        To bolster its assertion that four anecdotes suffice to allege antitrust injury at this stage,

10  Wolfire submitted *Frame-Wilson v. Amazon.com, Inc.*, No. 2:20-cv-00424-RAJ, slip op., Dkt. 48

11  (W.D. Wash. Mar. 11, 2022). *See Wolfire* Dkt. 77. But that case differs in two crucial respects.

12  First, Amazon has a written, published price parity policy. *See Frame-Wilson*, Mot. to Dismiss at

13  6, Dkt. 18 ("Amazon maintains a 'fair pricing' policy, published on its website," stating that it

14  "may … terminate selling privileges in its store … [if a seller sets] a price on a product or service

15  that is *significantly higher* than recent prices offered … off Amazon.'"). The *Frame-Wilson*

16  plaintiffs needed only a few "cherry-picked" anecdotes, slip op. at 21, because Amazon's

17  written, published policy is a hugely significant piece of evidence Wolfire does not have. If

18  Valve maintained a published policy like Amazon's, perhaps Wolfire could skate by with a few

19  anecdotes. But Wolfire asks its anecdotes to do all the work. Second, all 21 of *Frame-Wilson*'s

20  plaintiffs alleged specific facts—dates, dollar amounts, and products—to support their antitrust

21  injury claims, Am. Compl. ¶¶ 46–66, Dkt. 15, and alleged a specific merchant would have sold a

22  $150 toy for $40 less but for Amazon's policy, *id.* ¶ 12, slip op. at 4. Wolfire alleged nothing of

23  the kind. To survive Valve's motion to dismiss, Wolfire needs allegations that the shadow policy

24  was communicated market-wide and enforced—allegations found nowhere in the SAC.

25  **III.   CONCLUSION**

26        For these reasons, Valve respectfully requests that the SAC be dismissed with prejudice.

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 12

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

DATED this 8th day of April, 2022.

FOX ROTHSCHILD LLP


*s/ Gavin W. Skok*
Gavin W. Skok, WSBA #29766
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
Telephone:    206.624.3600
Facsimile:    206.389.1708
E-mail:      gskok@foxrothschild.com

*s/ Kristen W. Broz*
Kristen W. Broz, *admitted pro hac vice*
2020 K Street, N.W., Suite 500
Washington, DC 20006
Telephone:    202.461.3100
Facsimile:    202.461.3102
E-mail:      kbroz@foxrothschild.com


MONTGOMERY McCRACKEN WALKER &
RHOADS LLP


*s/ Charles B. Casper*
Charles B. Casper, *admitted pro hac vice*
1735 Market Street, 21st Floor
Philadelphia, PA 19103
Telephone:    215.772.1500
Facsimile:    215.772.7620
Email:       ccasper@mmwr.com

*Attorneys for Defendant*

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 13

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

## CERTIFICATE OF SERVICE

I certify that I am a secretary at the law firm of Fox Rothschild LLP in Seattle, Washington. I am a U.S. citizen over the age of eighteen years and not a party to the within cause. On the date shown below, I caused to be served a true and correct copy of the foregoing on counsel of record for all other parties to this action as indicated below:

### Service List

| | |
|---|---|
| Alicia Cobb | ☐ Via US Mail |
| QUINN EMANUEL URQUHART & SULLIVAN LLP | ☐ Via Messenger |
| 1109 First Avenue, Suite 210 | ☒ Via CM/ECF / Email |
| Seattle, WA  98101 | ☐ Via over-night delivery |
| Ph. 206-905-7000 | |
| Fax 206-905-7100 | |
| Email: aliciacobb@quinnemanuel.com | |

A. Owen Glist
Ankur Kapoor
Jeffrey I. Shinder
CONSTANTINE CANNON LLP
335 Madison Ave., 9th Floor
New York, NY  10017
Ph. 212-350-2776
Fax 212-350-2701
Email: oglist@constantinecannon.com
akapoor@constantinecannon.com
jshinder@constantinecannon.com

Adam Wolfson
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017
Ph. 213-443-3000
Email: adamwolfson@quinnemanuel.com

Charles Stevens
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California St., 22nd Floor
San Francisco, CA  94111
Ph. 415-875-6600
Email: charliestevens@quinnemanuel.com

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION
COMPLAINT - (2:21-CV-00563-JCC) - 14

David Golden
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave., 22nd Floor
Washington, DC  20004
Ph. 202-204-4527
Email: dgolden@constantinecannon.com

David Du LeRay
Steig David Olson
Shane Seppinni
QUINN EMANUEL URQUHART & SULLIVAN
51 Madison Ave., 22nd Floor
New York, NY  10010
Ph. 212-849-7630
Email: davidleray@quinnemanuel.com
steigolson@quinnemanuel.com
shaneseppinni@quinnemanuel.com

Kenneth J. Rubin
Timothy B. McGranor
Kara M. Mundy
VORYS SATER SEYMOUR & PEASE
52 E. Gay St.
PO Box 1008
Columbus, OH  43215
Ph. 614-464-6400
Email: kjrubin@vorys.com
tbmcgranor@vorys.com
kmmundy@vorys.com

*Attorneys for Plaintiffs*

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

EXECUTED this 8th day of April, 2022, in Seattle, Washington.

Courtney R. Brooks

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS SECOND AMENDED CLASS
ACTION COMPLAINT - (2:21-CV-00563-JCC) - 15

FOX ROTHSCHILD LLP
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600