Hon. John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| In re VALVE ANTITRUST LITIGATION | Lead Case No. 2:21-cv-00563-JCC<br><br>**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER** |
|---|---|

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A. General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

AGREEMENT REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND
[PROPOSED] ORDER Case No. 2:21-cv-00563-JCC

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

**B. ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. Custodians. The 10 custodians from Defendant, and 5 custodians from each of Wolfire and Dark Catt, most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2. Non-custodial Data Sources. A list of non-custodial data sources (e.g., shared drives, servers, databases), if any, likely to contain discoverable ESI.

3. Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (e.g., social media sites, third-party email providers, mobile device providers, cloud storage, instant message, and chat service providers), including but not limited to Slack, Microsoft Teams, WeChat, Signal, WhatsApp, Telegram and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source. A party that issues a third-party subpoena shall include a copy of this Order and the Protective Order with the subpoena and state that the parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein. The issuing party shall timely notify other parties when it receives third-party productions, and shall provide copies of such productions in the format in which they were received from the third party within 5 business days.

4. Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). Section (D)(3) below sets forth data sources and ESI which are not required to be preserved by the parties. Those data sources and ESI do not need to be included on this list.

5. Foreign data privacy laws. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet

AGREEMENT REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND
[PROPOSED] ORDER Case No. 2:21-cv-00563-JCC

2

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

**C. ESI Discovery Procedures**

    1.    On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

    2.    Custodians. After the parties disclose proposed custodians under Section B.1, the parties shall engage in a good faith process to negotiate over the list of custodians to be used by each party. These negotiations will result in lists of custodians ranging up to 20 for Valve and 10 from each of Wolfire and Dark Catt.  Nothing in this agreement shall preclude any party from seeking to add additional custodians, beyond the limits provided for in this Section C.2, should good cause arise during discovery.

    3.    Search methodology. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), validation, and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

        a.    Prior to running searches:

            i.    The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query, and aggregated across all queries.

            ii.    The producing party's disclosure shall represent a good faith effort to reach a reasonably fulsome set of materials consistent with the producing party's responses and objections to the requesting party's requests for document production.  After that disclosure, the parties shall engage in a meet and confer process until the parties reach agreement on the proposed

1  search protocol, including possible limits on the number of search terms, or impasse such that
2  court intervention is required.

3        iii.    The following provisions apply to search terms/queries of the
4  requesting party. Focused terms and queries should be employed; unreasonably broad terms or
5  queries without appropriate connectors to narrow the results should be avoided. A conjunctive
6  combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and
7  shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*,
8  "computer" or "system") broadens the search, and thus each word or phrase shall count as a
9  separate search term unless they are variants of the same word. The producing party may identify
10 each search term or query returning overbroad results demonstrating the overbroad results and a
11 counter proposal correcting the overbroad search or query.

12     b.    After production:  The Parties agree to meet and confer at an appropriate
13 time regarding the validation procedures for when a producing party reasonably believes that it
14 has produced or identified for production substantially all responsive, non-privileged
15 documents.  Nothing in this order shall inhibit a party from seeking additional documents should
16 good cause arise during discovery.

17     c.    Upon reasonable request, a party shall disclose information relating to
18 network design, the types of databases, database dictionaries, the access control list and security
19 access logs and rights of individuals to access the system and specific files and applications, the
20 ESI document retention policy, organizational chart for information systems personnel, or the
21 backup and systems recovery routines, including, but not limited to, tape rotation and
22 destruction/overwrite policy.

23     4.    Format.

24     a.    Unless otherwise agreed to by the parties, files that are not easily converted
25 to image format, such as spreadsheet, database, and drawing files, will be produced in native
26 format.  Any document produced in native format shall be produced with a Bates-numbered TIFF
27 image slip-sheet stating the document has been produced in native format, and noting the
28 document's confidentiality designation.  The accompanying text files must be created with

AGREEMENT REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND
[PROPOSED] ORDER CASE NO. 2:21-cv-00563-JCC

4

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

1  extracted text or, if not available, with OCR of the native document.  The text file must not be the
2  OCRed version of the TIFF image slip-sheet.  The parties hereby reserve their rights to seek other
3  particular electronic documents in their native format for good cause shown.

4        b.      The parties will meet and confer to discuss the format of production for any
5  instant messages or chat messages.

6        c.      Each document image or native file produced shall be named with a unique
7  number (Bates Number). File names should not be more than twenty characters long or contain
8  spaces.

9        d.      If a document is more than one page, the unitization of the document and
10 any attachments and/or affixed notes shall be maintained as they existed in the original document.

11       e.      Except as otherwise set forth in this Order, the parties shall produce their
12 information in the following format: black-and-white, single-page Group IV TIFF images of at
13 least 300 dpi resolution and associated multi-page text files and an extracted text path in the DAT
14 file, along with Concordance delimited load files or other software load files containing all
15 information required by the litigation support system used by the receiving party.  Original
16 document orientation should be maintained to the extent reasonably practicable and
17 technologically possible for a producing party's vendor (i.e., portrait to portrait and landscape to
18 landscape). The imaged data shall retain all attributes of the native or hard-copy file, such as
19 document breaks, to the extent reasonably practicable.  Hidden content, tracked changes or edits,
20 comments, notes, and other similar information within the native file shall also be imaged so that
21 such content is viewable on the produced image file.  Particular documents may be produced or
22 requested to be produced as TIFF images of more than 300 dpi for legibility reasons.  Upon
23 reasonable request by the receiving party, the producing party shall produce in color as soon as is
24 reasonably possible any charts, graphs, or document where color is necessary to understand the
25 document.

26       f.      The full text of each electronic document shall be extracted ("Extracted
27 Text") and produced in a single document level text file, not one text file per page. The Extracted
28 Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a

AGREEMENT REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND
[PROPOSED] ORDER CASE NO. 2:21-cv-00563-JCC

5

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

foreign language) and shall be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

4. Email Threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy.

5. Password-Protected, Encrypted, or Proprietary-Software Files. With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing party will take reasonable steps based on industry standards to ensure that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain encrypted or password-protected for a particular custodian after such reasonable efforts have been made, the producing party shall provide prompt written notice to the requesting party. ESI that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting party, and the parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

5. De-duplication. The parties may de-duplicate their ESI production across custodial and non-custodial data sources, after disclosure to the requesting party, only at the document family level so that attachments are not de-duplicated against identical stand-alone versions of such documents and vice versa. Attachments to e-mails or other documents shall not be disassociated from the parent e-mail or document even if they are exact duplicates of another document production. Each family member shall be hashed separately for purposes of populating the MD5/SHA-1 field.

 a. To accommodate rolling productions, the producing party will provide the receiving party with an overlay file for each rolling production that includes the metadata field "Dedupe Custodians" and which will be updated with the duplicate custodians' names.

AGREEMENT REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND
[PROPOSED] ORDER CASE NO. 2:21-cv-00563-JCC

6

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

6. Metadata fields. The following metadata fields set forth in Table 1 should be provided if they exist:

| Field Name | Description |
| --- | --- |
| BegBates | The unique document number associated with the first page of a document |
| EndBates | The unique document number associated with the last page of a document |
| ParentBates | The unique beginning document number of the parent document |
| BegAttach | Bates number of first family member (parent) |
| EndAttach | Bates number of last family member |
| AttachBates | Bates number listing of all attachments in the family separated by a comma |
| PageCount | Page count for a document. |
| Custodian | The custodian of a document (if applicable). |
| From | Full email address of Sender |
| To | Full email address of Recipient(s) separated by semicolon |
| CC | Full email address of Carbon copy recipient(s) separated by semi colon |
| BCC | Full email address of Blind carbon copy recipient(s) separated by semi colon |
| Subject | Email subject. |
| Importance | Importance assigned by the sender of the email |
| MessageHeader | Displayed Header of an email |
| MessageID | Internal message ID of email |
| References (aka ReferenceChain) | Microsoft field containing the Message IDs of related emails. |
| SentDateTime | The date and time a document was sent (UTC). |
| ReceivedDateTime | The date and time a document was received (UTC). |
| MeetingStartDateTime | Meeting start date/time in UTC |
| MeetingEndDateTime | Meeting end date/time in UTC |
| Folder | Original File Path |
| Author | The display name of the author of a document |
| LastAuthor | Name of person who last edited and saved the file |
| FileName | The file name of a document. |
| Ext | The file extension of a document. |
| FileSize | The file size of a document (including embedded attachments). |
| DocTitle | Email Subject or Efile Title |
| CreatedDateTime | The date and time a document was created (UTC). |
| LastModifiedDateTime | The date and time the document was last modified (UTC). |
| Hash | The MD5 Hash value for the email including attachments. |
| NativeLinkPath | The full path to a native copy of a document (if applicable). |
| TextLinkPath | The full path to the text file of the document. |
| FileDescription | The type of document the file was identified as |
| DedupeCustodians | Listing of all custodians with duplicate file - based on specific dedupe set |

AGREEMENT REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND
[PROPOSED] ORDER Case No. 2:21-cv-00563-JCC

7

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

| ConfidentialityDesignation | The protective order designation (if any) assigned to the document |
|---|---|
| Redacted | To identify documents being produced with redactions |

      a.      To the extent reasonably practicable, ESI items shall be processed using UTC time.

      b.      To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

      7.      Hard-Copy Documents. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized). The parties will make their best efforts to have their vendors unitize documents correctly and will commit to addressing situations where there are improperly unitized documents. Parent-child relationships that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable. The child document(s) should be consecutively produced immediately after the parent document. The production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D. Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the

AGREEMENT REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND
[PROPOSED] ORDER CASE NO. 2:21-cv-00563-JCC

8

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a. Deleted, slack, fragmented, or other data only accessible by forensics.

    b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

    e. Back-up data that are duplicative of data that are more accessible elsewhere.

    f. Server, system or network logs.

    g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

    h. Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E. Privilege**

1. A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 30 days after substantial completion of the producing party's production, unless another deadline is agreed to by the parties.

2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

3. With respect to privileged communications or work-product information generated after the filing of the complaint in *Sean Colvin, et al. v. Valve Corporation, et al.*, 2:2021-cv-00801 (C.D. Cal.), parties are not required to include any such information in privilege logs.

4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

6. If the producing party claims in writing that privileged materials were inadvertently disclosed, the receiving party, without protest, shall within five business days of such notice return to counsel for the producing party any and all copies of the inadvertently produced Privileged

1  Material, or in the alternative, within five business days of said notice, the receiving party, without
2  protest, shall destroy the inadvertently produced privileged material and certify such destruction to
3  the producing party. Also within five business days, the producing party shall serve a privilege log
4  identifying such inadvertently produced privilege material, including, to the extent known,
5  identification of the date of the document, author of the document, the sender of the document, the
6  recipient of the document, a description of the contents of the document, and the basis for the
7  privilege claim.

8       7.     After the receipt of the privilege log, if the receiving party wishes to contest that
9  any document or thing alleged to constitute privileged material is protected by the attorney-client
10 privilege, work product immunity, or any other applicable privilege, the receiving party shall
11 within five business days so notify the producing party in writing of the identification of the
12 documents for which it questions the claim of privilege, and the reasons for its assertion that the
13 documents are not privileged. The producing party must preserve the returned document or thing
14 until the dispute is resolved.

15      8.     Within five business days of the receiving party's notice of intent to challenge the
16 privilege or protection, the parties will meet and confer in good faith as to the claims of privilege.
17 If agreement cannot be reached after five business days, any party may thereafter move the Court
18 for an Order compelling production of any inadvertently produced or disclosed privileged
19 material. Any such motion may argue that the documents are not privileged, but otherwise shall
20 not assert the fact of the inadvertent production as grounds for production.  The party challenging
21 the assertion of privilege or production may, however, use the contents of the document in support
22 of its challenge.

AGREEMENT REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND
[PROPOSED] ORDER CASE NO. 2:21-cv-00563-JCC

11

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

DATED September 30, 2022

| /s/ Alicia Cobb | /s/ Stephanie L. Jensen |
|---|---|
| Alicia Cobb, WSBA #48685<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>1109 First Avenue, Suite 210<br>Seattle, Washington 98101<br>Phone (206) 905-7000<br>Fax (206) 905-7100<br>aliciacobb@quinnemanuel.com | Stephanie L. Jensen, WSBA #42042<br>WILSON SONSINI GOODRICH &<br>ROSATI P.C.<br>701 Fifth Avenue, Suite 5100<br>Seattle, WA 98104-7036<br>Phone (206) 883-2500<br>Fax (206) 883-2699<br>sjensen@wsgr.com |
| Steig D. Olson (*pro hac vice*)<br>David LeRay (*pro hac vice*)<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Avenue<br>New York, New York 10010<br>Phone (212) 849-7231<br>Fax (212) 849-7100<br>steigolson@quinnemanuel.com | Kenneth R. O'Rourke (*pro hac vice*)<br>Scott A. Sher (*pro hac vice*)<br>Allison B. Smith (*pro hac vice*)<br>WILSON SONSINI GOODRICH &<br>ROSATI, P.C.<br>1700 K Street, NW, Suite 500<br>Washington, DC 20006<br>Phone (202) 973-8800<br>Fax (202) 973-8899<br>korourke@wsgr.com<br>ssher@wsgr.com<br>allison.smith@wsgr.com |
| Adam Wolfson (*pro hac vice*)<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017<br>Phone (213) 443-3285<br>Fax (213) 443-3100<br>adamwolfson@quinnemanuel.com | W. Joseph Bruckner (*pro hac vice*)<br>Joseph C. Bourne (*pro hac vice*)<br>LOCKRIDGE GRINDAL NAUEN P.L.L.P.<br>100 Washington Avenue S, Suite 2200<br>Minneapolis, MN 55401<br>Phone: (612) 339-6900<br>Fax: (612) 339-0981<br>wjbruckner@locklaw.com<br>jcbourne@locklaw.com |
| Charles Stevens (*pro hac vice*)<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>50 California St., 22nd Floor<br>San Francisco, CA 94111<br>Phone (415) 875-6600<br>Fax (415) 875-6700<br>charliestevens@quinnemanuel.com | *Proposed Interim Co-Lead Counsel* |

*Proposed Interim Co-Lead Counsel*

David Golden (*pro hac vice*)
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave., 22nd Floor
Washington, D.C. 20004
Phone (202) 204-4527
Fax (202) 204-3501
dgolden@constantinecannon.com

AGREEMENT REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND
[PROPOSED] ORDER Case No. 2:21-cv-00563-JCC

12

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

| | |
|---|---|
| A. Owen Glist (*pro hac vice*)<br>Ankur Kapoor (*pro hac vice*)<br>Jeffrey I. Shinder (*pro hac vice*)<br>CONSTANTINE CANNON LLP<br>335 Madison Avenue, 9th Floor<br>New York, NY 10017<br>Phone (212) 350-2700<br>Fax (212) 350-2701<br>oglist@constantinecannon.com<br><br>*Proposed Interim Co-Lead Counsel* | /s/ Gavin W. Skok<br>Gavin W. Skok, WSBA #29766<br>FOX ROTHSCHILD LLP<br>1001 Fourth Avenue, Suite 4500<br>Seattle, WA 98154<br>Telephone: (206) 624-3600<br>Fax: (206) 389-1708<br>gskok@foxrothschild.com<br><br>Charles B. Casper (*pro hac vice*)<br>MONTGOMERY McCRACKEN WALKER & RHOADS LLP<br>1735 Market Street, 21st Floor<br>Philadelphia, PA 19103<br>Phone (215) 772-1500<br>ccasper@mmwr.com<br><br>*Attorneys for Defendant Valve Corporation* |

Kenneth J. Rubin (*pro hac vice*)
Timothy B. McGranor (*pro hac vice*)
Kara M. Mundy (*pro hac vice*)
VORYS, SATER, SEYMOUR AND
 PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
Phone (614) 464-6400
Fax (614) 719-4796
kjrubin@vorys.com
tbmcgranor@vorys.com
kmmundy@vorys.com

Thomas N. McCormick (*pro hac vice*)
VORYS, SATER, SEYMOUR AND
 PEASE LLP
4675 MacArthur Court, Suite 700
Newport Beach, California 92660
Phone (949) 526-7903 | Fax (949) 383-2384
tnmccormick@vorys.com

*Proposed Interim Executive Committee Member*

1  IT IS SO ORDERED.

2  DATED this _____ day of _____, 2022.

3

4                                                 Hon. John C. Coughenour
                                               United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28