THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | Case No. 2:21-cv-00563-JCC |
| | **LCR 37 SUBMISSION REGARDING PLAINTIFFS' MOTION TO COMPEL REQUEST FOR PRODUCTION NO. 79: VALVE CORP'S 2012-22 TAX RETURNS** |
| | **NOTE ON MOTION CALENDAR: OCTOBER 30, 2023** |
| | **REDACTED VERSION** |

JOINT LCR 37 SUBMISSION
CASE NO. 2:21-CV-00563-JCC

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

1   Under Local Civil Rule 37(a)(2)(I), the parties respectfully submit this Joint Submission

2   related to Plaintiffs' Motion to Compel Production in Response to Request for Production of

3   Defendant Valve Corporation's ("Valve's") federal income tax records from 2012 to the

4   present.

## I.    INTRODUCTORY STATEMENTS

### A.    Plaintiffs' Introductory Statement

7   Plaintiffs' Request for Production 79 ("RFP 79") seeks Valve's federal income tax

8   returns from 2012 to the present to determine Valve's profit margins during that time.

9   Sustained high profit margins are one indicator of market power, which is a core element of

10  Plaintiffs' monopolization claims here.  Circumstantial evidence of Valve's high profits

11  abounds:  Valve's own employees have called the company a ██████████ Jensen Decl. Ex.

12  4 at 9, and Valve's new employee handbook admits that the company makes per employee

13  more than Google, Facebook, or Microsoft, *id.* Ex. 15 at 27. Indeed, one recruit described

14  Valve as a ████████████████ a statement neither Valve interviewer questioned.  *Id.*

15  Ex. 6 at '730.  This is unsurprising:  unlike other video game distributors, Valve charges PC

16  video game publishers ████████████████████████████████████

17  ██████████████████████████████████████████ *Id.* Ex.

18  16 at 4.

19  Yet Valve has stonewalled production of its profit and loss (P&L) statements, claiming

20  not to have them.  Valve has repeatedly told Plaintiffs that "it does not have existing responsive

21  documents to produce" in response to Plaintiffs' other RFPs seeking Valve's "gross and net

22  revenues, profits or losses … , costs of goods sold, marginal costs," and other "general[] and

23  administrative costs" because it "does not prepare or compile [those] in the ordinary course of

24  business."  *Id.* Ex. 1, 7, 9 & 17.  Rather, what Valve admits are the few formal

25  contemporaneous financial records it keeps that would reveal information about its profit

26  margins are its tax returns.

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

1    Indeed, Valve's chief operating officer agreed that ████████████████████

2    ████████████████████████████████████████████████████

3    ██████    *Id.* Ex. 14 at 87:9-12.  Instead, ████████████████████████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ██████    *Id.* Ex. 14 at 59:24-60:5.  These tax returns will show what none of the other

7    financial data that Valve has produced does—core information about Valve's profit margins.

8    They are thus relevant, and Plaintiffs ask this Court to order their production.

9    Valve cannot avoid production by pointing to the post-hoc P&Ls that it recently paid an

10   accountant to create for this litigation.  *Id.* Ex. 3.  To begin, Plaintiffs are entitled to all

11   responsive contemporaneous business documents as long as their production is proportional.

12   Valve's protestations that Plaintiffs do not trust its "made-for-this-litigation" financials ring

13   hollow.  Trust sits comfortably with verification.  Moreover, ████████████████████

14   ████████████████████████████████.  And Valve admitted that certain data

15   related to costs was not available and that when data was unavailable ████████████████

16   ████████████████████████

17   Unwinding the accountant's work product to get back to an understanding of Valve's

18   actual, historical profits and losses over the past decade is a far inferior approach than simply

19   starting with its tax returns.  Moreover, Plaintiffs have refused to identify simple background

20   information such as which accounting firm produced the post-hoc P&Ls.  Even assuming good

21   faith and solid underlying information, the post-hoc P&Ls are by their nature not going to be as

22   reliable or unvarnished as Valve's contemporaneously prepared tax returns – the only real-

23   world P&L documents prepared year-after-year in the ordinary course of business.  And here

24   those assumptions are not givens.

25

26

27

28

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

A protective order is already in place to keep the tax returns and already produced post-hoc financial work product confidential and limit their disclosure. The tax returns can be easily copied and produced. Valve should be required to do so.

**B.    Defendant's Introductory Statement**

Valve already gave Plaintiffs the information they claim to need from Valve's tax returns. First, Valve produced detailed profit and loss statements covering 2003 to 2021 that were prepared in response to Plaintiffs' discovery requests using data from Valve's accounting system and other records that was collected and stored in the ordinary course of business. In addition to detailed revenue and cost information, these P&Ls show for each year gross margins, operating margins, and after-tax net profit—the exact information Plaintiffs seek through this Motion. Plaintiffs allege that the revenue share Valve charges third-party game publishers to sell games on *Steam*—not Valve's own game and hardware sales or profits—are supracompetitive. Compl., Dkt. # 127 ¶¶ 275-276. Valve created these P&Ls so that they *show* Steam margins, which Valve's tax returns ██████████████████████████████████████████

Second, Valve produced *daily* transaction data showing sales of every game package, all downloadable content, and all in-game transactions sold on Steam, in countries around the world and in every currency, for roughly 20 years, constituting hundreds of gigabytes of data. Third, Valve produced data showing all revenue share payments made to third parties selling their games on Steam for that same period. Fourth, Plaintiffs took individual and 30(b)(6) depositions about this same financial information, including a 30(b)(6) topic specifically about Valve's P&L production.

Valve's tax returns are also irrelevant. Valve did not put its taxes at issue and Plaintiffs fail to explain how the tax returns would provide the information Plaintiffs claim they need. The tax returns ████████████████ Plaintiffs' allegations are focused on only one activity—Steam—██████████████████████████████—but is separately reported in the P&Ls Valve produced.

Plaintiffs argue that they need Valve's tax returns because (1) Valve ███████████████ and (2) the detailed P&Ls Valve produced were created for purposes of responding to discovery from data kept on Valve's accounting system, instead of being created previously in the ordinary course. Neither of these arguments carries Plaintiffs' burden of establishing a "compelling need" for tax returns. *See, e.g., Brown v. Dunbar*, No. C07-82Z, 2007 WL 9775569, at *5 n.5 (W.D. Wash. Dec. 12, 2007). First, that Valve (like many private companies) ████████████ ██████████████████████████████████████████ is no justification for discovery of its tax returns or evidence that its financial data production is inaccurate or questionable, and Plaintiffs offer no authority to support that position. To the extent Plaintiffs believe ████████████, Valve produced extensive revenue and cost detail such that Plaintiffs could make their own calculations ████████████.

Second, that the P&Ls themselves were not prepared in the ordinary course of Valve's business is irrelevant because they were prepared using underlying data from Valve's accounting system that *was* created and maintained in the ordinary course. Declaration of Scott Lynch ("Lynch Decl.") ¶¶ 4–5. Plaintiffs have not made any showing that the data used in the P&Ls is incorrect or otherwise subject to challenge simply because it was kept in a database instead of in a previously prepared P&L format. It was also entirely proper for Valve to hire an outside accounting consultant to prepare the P&Ls from Valve's data, as is routinely done in litigation.

Moreover, Plaintiffs had a complete opportunity to ask Scott Lynch—Valve's Chief Operating Officer and a CPA himself—about Valve's finances during his two days of individual and FRCP 30(b)(6) depositions. One of Plaintiffs' 30(b)(6) deposition topics was specifically about the P&Ls Valve produced and the information they contained (Topic 3), while another topic was about Valve's finances generally (Topic 2). Declaration of Gavin Skok ("Skok Decl."), Ex. D at 3. Plaintiffs have also requested the deposition of another Valve employee who deals with Valve's finances (Jane Lo). Skok Decl. ¶ 9. Plaintiffs could have asked Mr. Lynch anything

JOINT LCR 37 SUBMISSION
CASE NO. 2:21-CV-00563-JCC
-4-
WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

about Valve's finances.  Plaintiffs present no evidence that the P&Ls are inaccurate or that Valve's extensive financial data production is incomplete.

Plaintiffs instead assert they are entitled to "verification" beyond the sworn 30(b)(6) and individual deposition testimony and the documents already produced.  Plaintiffs' skepticism does not establish relevance of Valve's tax returns or a "compelling need" for their discovery.

Plaintiffs' demand for tax returns should be denied.

## II.      DISPUTED DISCOVERY REQUEST

### A.      PLAINTIFFS' REQUEST FOR PRODUCTION NO. 79[1]:

"Your federal income tax returns from 2012 to the present including all forms, schedules, exhibits, and statements."

### B.      DEFENDANT'S RESPONSE AND OBJECTION TO REQUEST FOR PRODUCTION NO. 79[2]:

"In addition to its General Objections, Valve objects to this Request as unduly burdensome, overbroad in scope and subject matter, seeking information not relevant to any issue in this litigation, and not proportional to the needs of this case. Valve's U.S. federal income tax returns relate to other lines of business (e.g., games, hardware, etc.) and are not limited to Steam. Moreover, Valve has not put its tax returns at issue and its tax returns are not relevant to any issue put in dispute by the Consolidated Second Amended Class Action Complaint. Additionally, there is no compelling need for Valve's U.S. federal tax returns and their production would be cumulative and duplicative because Valve has already produced extensive detailed financial information on the issues in dispute. Among other things, Valve produced:

---

[1] Plaintiffs' Third Set of Requests for Production, which include RFP No. 79, is attached as Exhibit 1 to the Declaration of Stephanie Jensen ("Jensen Decl. Ex. 1").

[2] Defendants' Responses and Objections to Plaintiffs' Third Set of Requests for Production is attached as Exhibit 2 to the Jensen Declaration.

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

- Daily transactional data from 2003 through 2022 of all game sales on Steam, for each individual saleable unit and in each local currency and market in which sales occurred;

- Daily data showing all in-game transactions in games on Steam from their inception through 2022;

- Pricing data showing every price and discount for every saleable unit of every game sold on Steam, in each local currency and market in which these sales occurred; and

- Data showing all revenue share payments to Steam Partners for game sales on Steam, from inception through 2022.

Furthermore, the parties are currently negotiating production of additional financial information related to Steam costs and revenues. Valve's federal tax returns would be cumulative in light of Valve's extensive prior disclosure, as well as irrelevant and unnecessary because the information they contain is at a higher level of aggregation than data produced and includes other lines of business that are not at issue. The Ninth Circuit has long recognized a public policy against unnecessary disclosure of tax returns in discovery. *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); see also *Kappesser v. Northwest Treatment Servs. Inc.*, No. C21-5590-TLF, 2022 WL 4483124, *1 (W.D. Wash. Sept. 27, 2022) (recognizing public policy, denying motion to compel production of tax returns). Valve further objects to the temporal scope of this request as unreasonably broad, unduly burdensome, and inequitable insofar as it exceeds the time period that Plaintiffs imposed on their own responses to Valve's Requests for Production, including in Plaintiffs' General Objection 16 to Valve's Second Requests for Production, which states that Plaintiffs will only produce documents covering January 1, 2016 to the present.

Based on its objections, Valve is not searching for or producing documents in response to this Request." Jensen Decl. Ex. 2.

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

### III.    ARGUMENT

#### A.    Plaintiffs' Argument

The Federal Rules of Civil Procedure contain "liberal discovery principles." *Int'l News, Inc. v. 10 Deep Clothing, Inc.*, 2020 WL 1890611, at *1 (W.D. Wash. Apr. 16, 2020) (quoting *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975)). Parties may "obtain discovery on any matter 'relevant to any party's claim or defense.'" *Shaw v. Bank of Am. Corp.*, 946 F.3d 533, 541 (9th Cir. 2019) (quoting Fed. R. Civ. P. 26(b)(1)). "[D]efendants thus carry a 'heavy burden of showing' why a request for discovery should be denied." *Int'l News*, 2020 WL 1890611, at *1 (quoting *Blankenship*, 519 F.2d at 429). That includes a request for federal tax returns. *Sec. & Exch. Comm'n  v. Premier Holding Corp.*, 2021 WL 6104308, at *4 (C.D. Cal. Sept. 7, 2021) ("The Ninth Circuit has 'explicitly rejected a federal privilege for tax returns.'") (citation omitted).

Tax returns should be produced when they are relevant to the claims and when a compelling need exists for the information. *Int'l News*, 2020 WL 1890611, at *2. "The party seeking production has the burden of showing relevancy, and once that burden is met, the burden shifts to the party opposing production to show that other sources exist from which the information is readily obtainable." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (citations omitted); *see also Sneller v. City of Bainbridge Island*, 2008 WL 4534364, at *2 (W.D. Wash. Oct. 7, 2008). Here, the tax returns are relevant because they speak to sustained profits and thus market power. Valve has repeatedly stated that it cannot produce contemporaneous, verifiable profit margin information.  Its tax returns appear to be the only such existing documents.

#### 1.    The information in Valve's federal tax returns is relevant because it bears on Valve's profit margin—an indicator of market power.

"[R]elevance 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Paananen v. Cellco P'ship*, 2009 WL 2057048, at *1 (W.D. Wash. July 15, 2009)

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

(citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). This definition is "intentionally broad," *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992), meaning that "district courts possess broad discretion 'in determining relevancy for discovery purposes,'" *Int'l News*, 2020 WL 1890611, at *1 (quoting *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

Market power is a necessary element of Sherman Act monopolization claims. *United States v. Grinnell Corp.*, 384 U.S. 563, 570 (1966). "[W]hen direct evidence is available that a party profitably charges supracompetitive prices, the existence of market power can be established from that fact alone." *In re Aggrenox Antitrust Litig.*, 94 F.Supp.3d 224, 246 (D. Conn. 2015) (citing *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 97-98 (2d Cir. 1998)). "'The existence of market power is a significant finding that casts an anticompetitive shadow over a party's practices in a rule-of-reason case.'" *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 983 (9th Cir. 2023) (citation omitted). It is thus relevant to an antitrust claim if a defendant "routinely charge[s] higher prices than other [similar businesses] while reaping high profits." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1476 (9th Cir. 1997). In other words, profit margins are relevant to claims of market power.

Several cases illustrate this principle. For example, in *Simon and Simon, PC v. Align Technology, Inc.*, the court agreed "that the ability to earn higher profit margins than competitors over a sustained period of time may be evidence of market power." 2023 WL 205197, at *2 (N.D. Cal. Jan. 17, 2023). It explained that transactional data and revenue figures alone were not enough because they would "not reveal" information "on the relevant subject of profit margins." *Id.* A plaintiff needed information about the defendant's *costs* to "derive [the defendant's] profit margins," which were "relevant to the existence of market power." *Id.* Likewise, in *In re Apple iPhone Antitrust Litigation*, the court explained that "evidence of high switching costs" and "profit margin" were "evidence of [the defendant's] power in the market." 2022 WL 1284104, at *11 (N.D. Cal. Mar. 29, 2022).

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

1        Another court held that the profit margin data is "relevant to th[e] effort" of establishing

2  market power and would be a "key component of [plaintiff's] monopolization claim," explicitly

3  "reject[ing] NPC's argument" that "profit margin data" was not relevant. *In re Ranbaxy*

4  *Generic Drug Application Antitrust Litigation*, 2020 WL 5370577, at *3-4 (D. Mass. Sept. 8,

5  2020). Yet another district court explained that evidence of "excessive profits" was "significant

6  evidence" about the "exercise[ of] monopoly power." *US Airways, Inc. v. Sabre Holdings*

7  *Corp.*, 2022 WL 874945, at *9 (S.D.N.Y. Mar. 24, 2022).

8        In this case, evidence suggests that Valve is highly profitable.  *See* Jensen Decl. Ex. 4

9  (2022 email noting that ███████████████████████████████████████████████

10  ███████████); Ex. 15 (Valve New Employee Handbook stating in 2012 that Valve's

11  "profitability per employee is higher than that of Google or Amazon or Microsoft").  Even

12  Valve's made-for-litigation financials ████████████████████████████████

13  ██████ Ex. 16 VALVE_ANT_2755012 (███████████████████████████████████

14  ███████████).  But real-world contemporaneous and reliable financial records are the

15  standard, and Valve should be required to produce this readily available information to

16  Plaintiffs.

17        Additionally, here the federal tax returns are relevant to verify the P&L data that Valve

18  has crafted and produced for this litigation. Because "taxes are an opportunity for the taxpayer

19  to honestly and truthfully reflect their financial situation," *Int'l News,* 2020 WL 1890611, at

20  *3, "tax return[s] can verify the information provided by the" defendant, *F.D.I.C. v. LeGrand*,

21  43 F.3d 163, 172 (5th Cir. 1995); *see also Besco v. City of Longview*, 2016 WL 1077266, at *2-

22  3 (W.D. Wash. Mar. 18, 2016). Thus, a "[d]efendant's tax returns are relevant to [a]

23  [p]laintiff's claims" even if "that Plaintiff can glean the information sought from the tax returns

24  from other documents in the record." *Int'l News,* 2020 WL 1890611, at *3.

25        Courts also routinely reject Valve's argument that Plaintiffs must demonstrate specific

26  infirmities in its P&L production before it will produce tax returns. Jensen Decl. Ex. 5 at 6. For

JOINT LCR 37 SUBMISSION              -9-                **WILSON SONSINI GOODRICH & ROSATI**
CASE NO. 2:21-CV-00563-JCC                     701 Fifth Avenue, Suite 5100
                                     Seattle, WA  98104-7036
                                     Tel: (206) 883-2500

example, in *Besco*, the defendant sought tax returns because they were "the most reliable source to confirm Plaintiff's representations." 2016 WL 1077266, at *3. The court refused to "consider the merits" of the defendant's claim that the produced documents were "dubious" and instead explained that it was enough that "Defendant ha[d] shown that there [wa]s *some dispute* as to the completeness of Plaintiff's wage information." *Id.* (emphasis added). It held that because it was "*not clear* that the documents the Plaintiff provided to the Defendant contain[ed] all relevant income information," the tax returns were relevant and had to be produced. *Id.* (emphasis added).

Valve has insisted time and again that it does not prepare or compile documents about its costs and profit margins. *Id.* Exs. 7, 8, and 11. Certainly, it is "*not clear*" that Valve's post-hoc compilation of data "contains all relevant income information" and "there *may be* additional relevant information contained within [Valve's] tax returns." *Besco*, 2016 WL 1077266, at *3 (emphasis added). Valve's tax returns will provide data about both its revenues and costs and allow Plaintiffs to understand the facts tending to prove (if not outright establishing) overall profitability during the relevant time, which in turn speaks to Valve's market power during that time. The tax returns thus "bear[] on, or … reasonably could lead to other matter that could bear on, an[] issue that is or may be in the case.'" *Paananen*, 2009 WL 2057048, at *1.  For relevance, that is enough.

### 2. Plaintiffs have a compelling need for Valve's federal tax returns because there is no less intrusive means of obtaining reliable profits, losses, and margins over the relevant time period.

Although there is a "public policy against *unnecessary public disclosure*" of tax returns, *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (emphasis added), tax returns are not sacrosanct. Courts can and do order that they be produced when there is a compelling need. *E.g.*, *Sneller*, 2008 WL 4534364, at *1-2; *Int'l News*, 2020 WL 1890611, at *2-3. A compelling need exists when "the information contained within the … tax returns is not otherwise readily attainable by" the moving party. *Sneller*, 2008 WL 4534364, at

*2; *Besco*, at *3 (granting the motion to compel because "to the extent that federal tax returns *may* contain relevant information not revealed by already obtainable documents, Defendant has shown a compelling need for that information" (emphasis added)).

Here, the information about Valve's profit margins contained in the tax returns is not otherwise readily available according to Valve itself. ███████████████████████████ ██████████████████████████████████. Jensen Decl. Ex. 15 at 87:9-12. Because—apart from documents Valve created for this litigation—Valve "ha[s] articulated no other source in which the [relevant] financial information may be contained, and ha[s] not offered to provide [Plaintiffs] with any such source," Plaintiffs have established a compelling need for the tax returns, and the motion to compel the tax returns should be granted. *Sneller*, 2008 WL 4534364, at *2; *see also Garber*, 234 F.R.D. at 191 (holding that because the defendant "ha[d] not shown, or even attempted to show, the information sought is available from other sources," the defendant's "tax returns and related documents [we]re discoverable").

To begin, Valve agrees that it has not produced—and asserts it does not have— comprehensive, contemporaneous financials and income statements. Though Valve sometimes produces such documents when forced (2:17-cv-01182, Jane Lo Decl. at ¶¶ 2-4, 7; and 3:23-cv-02880, Christopher Schenck Decl. at ¶ 4), it has repeatedly avowed that the profitability information that ██████████████████████████████████████ ██████████████ (Jensen Decl. Ex. 8) because ███████████████████████ █████████████████████████████████████████ ████████████ (*id.* Ex. 7). In fact, Valve has explicitly told Plaintiffs that ████████ ██████████████████████████████ (*id.* Ex. 9) that would show contemporaneous financials and income statements because "Valve does not create, compile, or keep in immediately accessible format [that information] in the ordinary course of business." *Id.* Ex. 11.

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

1      The testimony given to date at deposition confirms Plaintiffs' need to seek

2 contemporaneous information from another source. When asked about the head of the finance

3 group, which handles ███████████████████████████████" a longtime

4 Valve employee answered: "███████████████████████████

5 ███████████" *Id.* Ex. 13 at 33:19-34:4. When asked "███████████████

6 ████████████████████████████████████" *Id.* at35:8-11;

7 *see also id.* Ex. 12 at 15 ("In the ordinary course of business, Valve employees do not have set

8 roles."). She stated that in the 11-and-a-half years she had worked in the Steam business

9 development group, she did not think that she had ever "███████████████████

10 ████████████████" and that she did not even know who to ask if she "████████

11 ████████████████" *Id.* Ex. 13 at 36:24-37:9.

12      Valve's chief operating officer agreed at his deposition that ████████████

13 ████████████████████████████████████████████████

14 ████████" *Id.* Ex. 14 at 87:9-12. He even reaffirmed that fact when he answered the question:

15 "████████████████████████████████████████████████

16 ████████████████████." *Id.* Ex. 14 at 87:13-15; *see also id.* at 59:24-60:5

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████

19 ██████████████████████████████████████████

20 ██████████████████████████████

21      Indeed, Valve's tax returns are next best alternative financial documents in this

22 situation. They are contemporaneous, prepared annually by knowledgeable people, signed by a

23 Valve official, and submitted under penalty of perjury.  "Given [Valve's] minimization of its

24 own records," its "tax returns are the most viable evidence that allow Plaintiff[s] to support

25 [this element of their] claims. Thus, Plaintiff[s] ha[ve] clearly identified a compelling need for

26 the returns since the set of facts that Plaintiff[s] hope[] to prove from the information contained

27

28

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

1   therein cannot be derived from another source." *Int'l News*, 2020 WL 1890611, at *3 (citing

2   *Premium Serv. Corp.*, 511 F.2d at 229; *Alaskan Anvil, LLC v. Majestik Fisheries*, 2014 WL

3   12674380, at *2 (W.D. Wash. Aug. 1, 2014)).

4        Valve's argument that there is no need to disclose its tax records because it has

5   produced other financial documents is unavailing. Valve has produced pricing, transactional

6   sales data, and revenues. Jensen Decl. Ex. 2 at 8. But that data does not contain cost

7   information and thus is insufficient to determine or assess Valve's profits. *See Ohio v. Am.*

8   *Express Co.*, 138 S.Ct. 2274, 2288 (2018) (holding that the "Court will 'not infer competitive

9   injury from price and output data'" alone) (citation omitted). Indeed, courts must know both

10  revenue *and* costs to assess a company's market power and potentially anticompetitive tactics.

11  2 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 503 (5th ed. 2022).

12       Nor are the post-hoc P&Ls that Valve has created sufficient—Plaintiffs have a right to

13  trustworthy corroborating information. That is especially true because Valve hired an

14  accountant to create the post-hoc P&L statement for this case, Jensen Decl. Ex. 3, yet even then

15  ████████████████████████. *Id.* Ex. 14 at 86:15-17 (████████████████████████

16  ████████████████████████████████████████

17  ████████████████████.

18       Additionally, Valve admits that it "████████████████████████

19  ████████████████" that certain data related to costs was not available, and that for the

20  post-hoc statement, when data was unavailable, Valve ████████████████████████"

21  *Id.* Ex. 12 at 6, 13, 15, 17-18. Even assuming the best of faith, Plaintiffs "ha[ve] a legitimate

22  basis for concern given [Valve's] lack of clear recollection" and the paucity of

23  contemporaneous financial documents on which to base its post-hoc P&Ls. *Aliotti v. Vessel*

24  *SENORA*, 217 F.R.D. 496, 498 (N.D. Cal. 2003). Plaintiffs have demonstrated a compelling

25  need for the tax returns because Valve has "failed to present any … other sources by which"

26

27

28
    WILSON SONSINI GOODRICH & ROSATI
    701 Fifth Avenue, Suite 5100
    Seattle, WA  98104-7036
    Tel: (206) 883-2500

1   Plaintiffs "could have verified the truth of the information" Valve has already produced.

2   *LeGrand*, 43 F.3d at 172.

3         Unlike the cases where courts have denied motions to compel tax records, here

4   plaintiffs have "exhausted" all "less intrusive means" to obtain the necessary information. *See*

5   *Aliotti*, 217 F.R.D. at 498. For the financial documents that Valve has produced, Plaintiffs have

6   already sought to clarify the "untruthful or incomplete" nature of those documents through

7   "focused interrogatories" and follow-up depositions but so far to no avail. *Id.*; *see also Brown*

8   *v. Dunbar*, 2007 WL 9775569, at \*5-6 (W.D. Wash. Dec. 12, 2007); *see also* Jensen Decl. Ex.

9   12 at 4. For example, when asked why it ████████████████████████████████████████

10   Valve responded: ████████████████████████████████████████████████████ Jensen

11   Decl. Ex. 12 at 5. Because "the *information* … contained in [the tax returns] is not otherwise

12   available" and "[P]laintiffs have exhausted less intrusive means for obtaining" that information,

13   "[P]laintiffs have … shown a compelling need for the information contained in those

14   documents." *Richter v. CC-Palo Alto, Inc.*, 2018 WL 3614964, at \*2 (N.D. Cal. July 30, 2018)

15   (citing *Aliotti*, 217 F.R.D. at 496-98); *see Aliotti*, 217 F.R.D. at 498 (explaining that it would

16   consider requiring disclosure of the tax returns if the "alternative less intrusive means" were

17   insufficient).

18         Even though Plaintiffs are not required to show that the made-for-litigation disclosures

19   are suspect before independently trustworthy documents become discoverable, here there are

20   reasons to question veracity; at the very least, there is "*some dispute* as to the completeness" of

21   the information, and it is "*not clear*" that the P&Ls "contain all relevant [profit margin]

22   information." *Besco*, 2016 WL 1077266, at \*3. That is enough to establish Plaintiffs'

23   compelling need for the tax returns. *Id.*; *see also Tollefsen v. Phillips*, 16 F.R.D. 348, 348 (D.

24   Mass. 1954) (holding "hazy recollection as to his past earnings" was sufficient).

25

26

27

28

Joint LCR 37 Submission
Case No. 2:21-cv-00563-JCC

-14-

**Wilson Sonsini Goodrich & Rosati**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

3.     **The request for tax returns is proportional to the needs of the case.**

Discovery must also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "[G]eneral or boilerplate objections such as 'overly burdensome [or overbroad]' are improper." *Garber*, 234 F.R.D. at 188. Here, Valve argues that a request for its federal income tax returns—which are not limited to Steam—is overly broad because non-Steam product lines are not at issue in this case. *See* Jensen Decl. Ex. 5 at 5. But "tax returns and financial records" that "contain information unrelated to the present litigation" are still discoverable as long as some of the information is "relevant to the claims and defenses in th[e] case" and "not readily attainable." *Luken v. Christensen Grp. Inc.*, 2018 WL 1457244, at *7-8 (W.D. Wash. Mar. 23, 2018). Steam is by far Valve's largest business line. Jensen Decl. Ex. 14 at 98:16-24 (admitting that revenue from Valve's non-Steam lines was ███████████████████████ ████). There is no reason to deny production of the returns just because they may also include other, lesser business lines. In any event, Valve has already produced data and documents (in its post-hoc financials themselves) that pertain to products and services other than Steam. *E.g.*, Jensen Decl. Ex. 3 (margin and profit information for 2003-2021).

Valve's "boilerplate objection[]" that the request is "unduly burdensome" is also without merit. *Garber*, 234 F.R.D. at 188; Jensen Decl. Ex. 2 at 4. There is no evidence of any real burden to Valve to produce these tax returns. Valve already filed the returns and any accompanying schedules and exhibits with the government. It has never claimed that it to no longer possesses or is unable to locate them. And even if it did, any burden would still be negligible—Valve could obtain a copy "from the government upon payment of a nominal fee." *Tollefsen*, 16 F.R.D. at 348; *see also Besco*, 2016 WL 1077266, at *4 (granting request for federal tax returns and ordering party to "secur[e] copies from the IRS if necessary"). In short, the request for Valve's tax returns is proportional to the needs of the case given "the amount of money Plaintiff[s] seek[] to recover, [Plaintiffs'] inability to access the relevant information, and the limited expense to [Valve] involved." *Besco*, 2016 WL 1077266, at *3.

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

Finally, Valve's confidentiality concerns are answered by the Protective Order, which would allow Valve to prevent disclosure to the public, and potentially limit disclosure to the Court, outside counsel, and experts.[3] Courts have consistently held that such protective orders are sufficient "to avoid public disclosure of sensitive business or personal information." *Alaskan Anvil,* 2014 WL 12674380, at *2.[4]

**B.      Defendant's Response**

Valve already produced the very information about Steam—annual gross margins, operating margins, and after-tax net profit—that Plaintiffs claim to need.  Valve █████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████. Lynch Decl. ¶ 4–5.  When Plaintiffs requested it in discovery, Valve ██████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████. *Id.* ¶¶ 5–6.

Plaintiffs then had a full opportunity to explore the P&Ls and the information they contain through individual and 30(b)(6) depositions, including a 30(b)(6) topic specific to the P&Ls (Topic 3) and another regarding Valve's finances generally (Topic 2).  Skok Decl., Ex. D at 3.  Prior to Valve's 30(b)(6) deposition about its P&Ls, Valve's counsel provided a detailed 19-page letter to Plaintiffs' counsel responding to questions Plaintiffs asked about the data on Valve's P&Ls.  Jensen Decl., Ex. 12.  As described below, Valve also produced hundreds of gigabytes of transactional and revenue share data to Plaintiffs.  Skok Decl. ¶ 6.

---

[3] Dkt. 95, Protective Order filed August 16, 2022 at (2)(a)(i).

[4] *See also Garber*, 234 F.R.D. at 191 ("[P]laintiff's need for defendant Garber's financial documents outweighs defendant Garber's claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by a 'carefully drafted' protective order."); *Simon & Simon*, 2023 WL 205197, at *2 ("The Court again believes that the protective order is sufficient to protect Envista's confidentiality concerns over its profit margins.").

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

Plaintiffs do not dispute that Valve's P&L production includes the Steam margin and profit information they claim to need. Instead, their argument comes down to this: Because Valve did not create the P&Ls containing its detailed financial information production in the ordinary course, Plaintiffs are entitled to discovery of 10 years' worth of Valve's tax returns for "verification," despite: (1) the P&Ls were created from data collected and kept in the ordinary course; (2) Plaintiffs offer no evidence that Valve's P&L production is inaccurate or untrustworthy; (3) Plaintiffs had a full opportunity to explore the P&Ls and the information they contain through individual and 30(b)(6) depositions, a detailed letter exchange, and other discovery (including another upcoming deposition of a Valve employee who works on Valve's finances); and (4) Plaintiffs make no showing that the tax returns—which are ███████ ████████████████████████████████—would provide the information Plaintiffs claim to need. Plaintiffs' argument falls far short.

The Ninth Circuit requires a party seeking discovery of tax returns to meet a heightened standard. *See, e.g., Alaskan Anvil, LLC v. Majestik Fisheries*, No. 13-CV-05702, 2014 WL 12674380, at *1 (W.D. Wash. Aug. 1, 2014). To obtain tax returns, the requesting party must show that (1) the tax returns are relevant, and (2) "there is a compelling need for the tax returns because the information they contain is not readily obtainable elsewhere." *Id. citing Trustees of the Nw. Laborers-Employers Health & Sec. Trust v. Malone*, 2010 WL 4697699, at *1 (W.D. Wash. Nov. 10, 2010) (denying motion to compel production of tax returns where plaintiff failed to establish relevance or compelling need and other financial documents were sufficient); *Aliotti v. Vessel SENORA*, 217 F.R.D. 496, 498 (N.D. Cal. 2003) (denying motion to compel because the party seeking tax returns must exhaust less intrusive means to obtain information sought).

JOINT LCR 37 SUBMISSION
CASE NO. 2:21-cv-00563-JCC

-17-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

1

### 1. Valve Already Provided the Information Plaintiffs Claim They Need

Plaintiffs argue they need information about the revenues and costs on Steam to determine Steam's profit margin.  The P&Ls Valve produced show this for Steam in three ways: gross margins, operating margins, and after-tax net profit.  Plaintiffs' assertion that "Valve agrees it has not produced" comprehensive financials is entirely false.

Valve produced these P&Ls from data that it compiled and maintained in the ordinary course of business in its accounting system, its source code management program, and employee records. Lynch Decl. ¶¶ 5–6.  The P&Ls show for each year 2003–2021:

- ████████████████████████████;
- ██████████████████████████████████;
- ██████████████████████████████████;
- ███████████████████████████;
- ████████████;
- ████████████████████████████████;
- ██████████████;
- ██████████████████;
- ██████████.

Skok Decl. ¶ 4 & Ex. B.  In addition, even though Steam is the only one of Valve's activities at issue, at Plaintiffs' request Valve also included on its P&Ls all of the detail above for (1) Valve's own video games and Valve hardware, and (2) administrative costs.  *Id.* ¶ 5.  Valve also produced additional supporting data for certain cost and expense items listed on these P&Ls (████████████ ██████████████████████).  *Id.*  An exemplar of Valve's P&L production is submitted herewith.  See Skok Decl., Ex. B (sample P&L form showing categories of information produced but omitting specific financial detail to preserve confidentiality).

Second, Valve provided detailed information about Steam's revenues through a voluminous production of daily transactional data (hundreds of gigabytes) over a nearly 20-year

JOINT LCR 37 SUBMISSION
CASE NO. 2:21-CV-00563-JCC

-18-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

1   period.  Skok Decl. ¶ 6.  Those records show sales of every game and downloadable content

2   package sold on Steam, as well as all in-game transactions, in every market and available

3   currency around the world.  This is comprehensive evidence of revenues.  ██████████████

4   ████████████████████████████████████████████████████

5          Third, Valve produced detailed information about large components of Steam's costs by

6   producing data showing all revenue share payments to Partners for all sales on Steam for the

7   same period, and its bandwidth usage costs to make Steam accessible all over the world.  Skok

8   Decl. ¶ 6.  ██████████████████████████████████████

9          Finally, to the extent Plaintiffs claim they need to "verify" the information in Valve's

10  P&Ls, they had a full and fair opportunity to do exactly that through other discovery, including

11  other document requests, interrogatories, and individual and 30(b)(6) depositions.  Plaintiffs'

12  request for tax returns, without showing that other less intrusive financial discovery is

13  insufficient, is contrary to well-established public policy against unnecessary discovery of tax

14  returns. *See Alaskan Anvil, LLC v. Majestik Fisheries*, No. 13-CV-05702, 2014 WL 12674380,

15  at *1 (W.D. Wash. Aug. 1, 2014) (citations omitted).

16         Courts in the Western District of Washington and Ninth Circuit routinely deny motions to

17  compel tax returns where, as here, the producing party already provided sufficient information

18  from a less intrusive source. *See, e.g., Brown v. Dunbar*, No. C07-82Z, 2007 WL 9775569, at *6

19  (W.D. Wash. Dec. 12, 2007) (finding no compelling need for tax returns where the plaintiffs had

20  already produced other less intrusive financial information and the defendants failed to

21  demonstrate that information was insufficient); *Kappesser v. Nw. Treatment Servs. Inc.*, No. C21-

22  5590 TLF, 2022 WL 4483124 (W.D. Wash. Sept. 27, 2022) (finding no compelling need for tax

23  returns where other documents already provided in discovery contained the information sought).

24         Plaintiffs rely on *Besco v. City of Longview,* No. 3:15-CV-05493-RJB, 2016 WL 1077266,

25  at *3 (W.D. Wash. Mar. 18, 2016), but that case does not support production.  In *Besco*, the Court

26  compelled production of the plaintiff's tax returns when (1) the plaintiff put their lost earnings in

27

28

controversy, (2) the defendant showed a genuine dispute about the completeness of the plaintiff's wage information, and (3) the defendant did not otherwise have access to the wage information that may be contained in the tax returns. *Id.* No such circumstances exist here. Valve has not put its tax returns or lost earnings at issue, and Plaintiffs' assertion they must "verify" Valve's P&Ls is not evidence that the P&Ls are inaccurate or incomplete. On the contrary, Valve provided Plaintiffs with ample data to determine the exact revenues, costs and margins they argue are necessary to litigate this case—detail that is not contained on Valve's tax returns.

### 2. Plaintiffs Fail to Demonstrate that Valve's Tax Returns Are Relevant

Courts routinely deny motions to compel tax returns where, as here, the party from whom discovery is sought did not put its tax returns at issue. *See, e.g.*, *Kappesser v. Nw. Treatment Servs. Inc.*, No. C21-5590 TLF, 2022 WL 4483124 (W.D. Wash. Sept. 27, 2022) (finding tax returns irrelevant to wrongful discharge and other employment-related claims where plaintiff was not seeking lost wages and did not put lost earnings in controversy); *Kayner v. City of Seattle*, No. C04-2567-MAT, 2006 WL 482072 (W.D. Wash. Feb. 27, 2006) (denying motion to compel tax returns where the plaintiff did not put income loss at issue in the case).

Valve did not put its tax returns at issue and Plaintiffs do not show the tax returns would provide the information they claim to need. Plaintiffs' allegations are about Steam, which is one of Valve's three primary activities. Their allegations are not about Valve's games (another activity) or hardware (a third activity). Valve's tax returns ███████████████████████
█████████████████████████████████████████████████. Lynch Decl. ¶ 7. ███████
█████████████████████████████████████████████████████████████████████████
███████ *Id.*

Plaintiffs do not explain (nor is there any record evidence to show) how they could take overall taxable income and expense information for all of Valve's business and somehow use that to draw conclusions about Steam specifically or calculate Steam margin and profit information. Plaintiffs try to bury that flaw in their argument by incorrectly asserting that Valve's

other activities ██████████ relying on a misleading citation to Mr. Lynch's testimony that underscores the baselessness of their position.  Plaintiffs claim Mr. Lynch admitted that "revenue from Valve's non-Steam lines was ███████████████████████" *See supra*.  Not so.  The testimony Plaintiffs cite is about ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████  *See* 30(b)(6) Dep. of Scott Lynch ("Lynch Dep.") at 96:18-99:3, Skok Decl., Ex A. ████████████████████████████████████████████████████ ████████████████████████████████████████  *See* Lynch Decl. ¶ 7.  The tax returns would be useless to Plaintiffs if produced.

Plaintiffs also misleadingly argue that Valve's tax returns are in effect P&Ls, resting their argument on additional misquotations of Mr. Lynch's deposition testimony.  Mr. Lynch did not testify ████████████████████████████████████, as Plaintiffs suggest. Instead, he explained █████████████████████████████.  *See, e.g.,* Lynch Dep. at 86:15-87:2, Skok Decl., Ex. A.  Mr. Lynch testified ████████████ ████████████████████████████████████████.  *Id.* at 87:11-12.  *See also* Lynch Decl. ¶ 7 (████████████████████████████████████ ████████████████████████████████████████████████.

Plaintiffs' reliance on *Sneller v. City of Bainbridge Island*, No. 07-05338 RBL, 2008 WL 4534364, at *2 (W.D. Wash. Oct. 7, 2008) is misplaced.  In *Sneller*, the court allowed discovery of tax returns where the information they contained was not otherwise readily attainable by the defendants and the returns tended to prove or disprove the plaintiffs' allegations of consequential damages.  *Id. Sneller,* like *Besco*, is readily distinguishable because the party from whom discovery was sought put their personal financial information squarely at issue.  Further, any ██████████ information in Valve's tax returns that is even arguably relevant has already been

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

1  provided to Plaintiffs in greater detail through the production of P&Ls and other transactional

2  data – no such less intrusive discovery was provided in *Sneller*.

### 3. Plaintiffs Do Not Establish a Compelling Need for Tax Returns

4  Plaintiffs ignore controlling precent by trying to shift the burden to Valve to show there is

5  no compelling need for production.  It is well-settled in this District that the burden to show

6  compelling need for Valve's tax returns falls on the Plaintiffs, not Valve.  *See, e.g., Brown v.*

7  *Dunbar*, No. C07-82Z, 2007 WL 9775569, at *5 n.5 (W.D. Wash. Dec. 12, 2007).

8  Plaintiffs argue first they show a compelling need because Valve's P&Ls were created

9  during litigation instead of during the ordinary course of business.  The time the data was put

10  into a P&L form is irrelevant.  Mr. Lynch testified that the P&Ls Valve produced ███████

11  ██████████████████████████████████████████████████████████████████

12  ██████████████████████████████  Lynch Dep. 86:13-91:6, Skok Decl., Ex. A; *see also* Lynch

13  Decl.  ¶¶  4–6  (██████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████████████

15  ███████████████████████).  Plaintiffs provide no authority holding that the fact the underlying

16  data was not previously put into this format establishes a compelling need.  They also make no

17  showing the P&Ls contain any inaccuracies, despite having ample opportunity through other

18  discovery to test their completeness.

19  Second, that Valve ███████████████████████[5] does not establish a compelling need

20  for production of its tax returns.  Plaintiffs simply assert this, without any supporting case law

21  (and Valve has not located case law with any such requirement).  This assertion disguises the

22  flaw in Plaintiffs' argument: Whether or not Valve ████████, Plaintiffs have not shown any

23  reason its detailed financial production is inaccurate.  Moreover, many private companies ████

---

[5] In response to questions during his deposition about whether Valve ████████████ Mr.
Lynch testified that ████████████████████████████████████████ Lynch Dep. at 60:19-
62:2, Skok Decl. Ex. A.  Mr. Lynch also explained that ████████████████████████
████████████████████████████ *Id.* at 90:24-92:15.

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

1   ███████████; that does not warrant production of their tax returns in every lawsuit against them.

2   ██████████████████████, Plaintiffs make no showing that Valve's tax returns ██████████████

3   either, but rather the tax laws.  Valve already provided Plaintiffs with sufficient revenue and cost

4   detail to make their own calculations █████████████████, should they so choose.

5       Finally, Plaintiffs do not establish a compelling need merely because the data from Valve's

6   accounting system was put into this P&L form during litigation by an outside accountant

7   consultant.  Such work is routine during litigation.  Further, Valve produced Mr. Lynch—a CPA

8   himself and Valve's Chief Operating Officer—for two full days of individual and FRCP 30(b)(6)

9   depositions, including on a 30(b)(6) topic (Topic 3) specific to Valve's P&L production and the

10  "costs, profits and other financial data…including the methodology, sources, and processes

11  involved in the preparation of that information." *See* Skok Decl., Ex D at 3.  Mr. Lynch also

12  testified on another 30(b)(6) topic (Topic 2) about Valve's financial data and practices generally,

13  including types of revenue and costs, allocations, and the incremental costs on Steam.  *Id.*

14  Plaintiffs had a full and fair opportunity to question Valve and Mr. Lynch about Valve's finances

15  generally and its P&Ls specifically, and did so.  Despite that, Plaintiffs present no evidence that

16  the involvement of a consulting accounting expert led to any inaccuracies in the P&Ls.

17      The financial information Valve already produced is the type of "less intrusive" discovery

18  that courts in this district routinely find sufficient in denying motions to compel tax returns. *See,*

19  *e.g., Brown v. Dunbar*, No. C07-82Z, 2007 WL 9775569, at *6 (W.D. Wash. Dec. 12, 2007);

20  *Kappesser v. Nw. Treatment Servs. Inc.*, No. C21-5590 TLF, 2022 WL 4483124 (W.D. Wash.

21  Sept. 27, 2022).  This Court should do the same.

22      Finally, Plaintiffs' argument that production of Valve's tax returns is "proportional to the

23  needs of the case" ignores the governing "compelling need" standard, which Plaintiffs fail to

24  satisfy.  To the extent the Court considers proportionally, Plaintiffs' demand for tax returns must

25  be considered in the context of Plaintiffs' extensive and overly burdensome discovery demands

26  throughout this litigation.  Plaintiffs served 97 document requests on Valve, demanded searches

27

28

1   from 23 document custodians using hundreds of search terms, took or set individual depositions

2   of 20 current and former Valve employees, and sought Valve's 30(b)(6) deposition testimony on

3   18 topics. Skok Decl. ¶ 9.  Valve has, among other things, reviewed millions of documents that

4   hit on Plaintiffs' overly broad search terms, produced more than 5 million pages of documents

5   in the short span of nine months, produced hundreds of gigabytes of transactional and financial

6   data covering a roughly 20-year period, and sat for numerous depositions (with more to come).

7   *Id.* ¶ 10.  Plaintiffs' demand for tax returns—which will not provide necessary or helpful

8   additional detail—is a bridge too far.  Proportionality favors denying Plaintiffs' motion.

9                    **4.     Conclusion**

10      Plaintiffs already received what they claim to need through Valve's existing financial

11  production, including its extensive transactional data, revenue share data, P&Ls, backup data

12  files, as well as Valve's individual and Rule 30(b)(6) deposition testimony. Valve's tax returns

13  are not relevant because Valve has not put its tax returns at issue and the returns do not contain

14  the financial information for Steam that Plaintiffs say they need.  Plaintiffs also have not carried

15  their burden of establishing a compelling need for their production in light of Valve's thorough

16  financial production to date and the absence of any evidence such information was inaccurate.

17  Finally, Plaintiffs have failed to demonstrate how any of the information already provided would

18  be clarified or contradicted by Valve's tax returns.  The Court should deny Plaintiffs' motion to

19  compel Valve's tax returns.

20          **C.     Plaintiffs' Reply**

21      Plaintiffs exhausted all less intrusive means. Plaintiffs requested ordinary-course

22  financials; Valve (██████████████████) claims not to have any. Valve produced sales

23  revenues and revenue-sharing data, but fails to identify any documents showing profits, costs,

24  cost-allocations, etc.—other than its made-for-litigation P&Ls. ████████████████████

25  ███████████████████████████████████ Jensen Decl. Ex. 14 at 87:9-12;

26  88:21-89:5.  He ████████████████████████████████

27

28

1   ████████. He also ████████████████████████████████████████████████████████

2   █████████████████████████████████████████████" *id.* at 93:4-99:3, showing that the tax

3   returns are relevant even if ████████.

4         Nor must Plaintiffs establish the post-hoc P&Ls are erroneous to receive contemporaneous,

5   ordinary-course documents, *Besco*, 2016 WL 1077266, at *3, the standard in litigation. Valve's

6   unvalidated assurances about data Plaintiffs have not seen are insufficient.   Valve "failed to

7   present any evidence…establishing other sources by which [Plaintiffs] could have…verified the

8   truth of the information [Valve] had given" them and thus "failed to carry [its] burden." *LeGrand*,

9   43 F.3d at 172.

10

11  */s/ Alicia Cobb*                                      */s/ Stephanie L. Jensen*

12  Alicia Cobb, WSBA #48685                  Stephanie L. Jensen, WSBA #42042
    QUINN EMANUEL URQUHART &           Tyre L. Tindall, WSBA #56357
13  SULLIVAN, LLP                                   WILSON SONSINI GOODRICH &
    1109 First Avenue, Suite 210                 ROSATI P.C.
14  Seattle, Washington 98101                   701 Fifth Avenue, Suite 5100
    Phone (206) 905-7000                         Seattle, WA 98104-7036
15  Fax (206) 905-7100                             Phone (206) 883-2500
    aliciacobb@quinnemanuel.com            Fax (866) 974-7329
16                                                        sjensen@wsgr.com
    Steig D. Olson (*pro hac vice*)               ttindall@wsgr.com
17  David LeRay (*pro hac vice*)
    QUINN EMANUEL URQUHART &           Kenneth R. O'Rourke (*pro hac vice*)
18  SULLIVAN, LLP                                   Allison B. Smith (*pro hac vice*)
    51 Madison Avenue                             WILSON SONSINI GOODRICH &
19  New York, New York 10010                  ROSATI, P.C.
    Phone (212) 849-7231                          1700 K Street, NW, Suite 500
20  Fax (212) 849-7100                             Washington, DC 20006
    steigolson@quinnemanuel.com           Phone (202) 973-8800
21                                                        Fax (866) 974-7329
    Adam Wolfson (*pro hac vice*)               korourke@wsgr.com
22  QUINN EMANUEL URQUHART &           ssher@wsgr.com
    SULLIVAN, LLP                                   allison.smith@wsgr.com
23  865 S. Figueroa St., 10th Floor
    Los Angeles, California 90017               W. Joseph Bruckner (*pro hac vice*)
24  Phone (213) 443-3285| Fax (213) 443-3100   Joseph C. Bourne (*pro hac vice*)
    adamwolfson@quinnemanuel.com        LOCKRIDGE GRINDAL NAUEN P.L.L.P.
25  Charles Stevens (*pro hac vice*)            100 Washington Avenue S, Suite 2200
    QUINN EMANUEL URQUHART &           Minneapolis, MN 55401
26  SULLIVAN, LLP                                   Phone: (612) 339-6900
    50 California St., 22nd Floor                  Fax: (612) 339-0981
27  San Francisco, CA 94111                      wjbruckner@locklaw.com

28

Phone (415) 875-6600
Fax (415) 875-6700
charliestevens@quinnemanuel.com

David Golden (*pro hac vice*)
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave., 22nd Floor
Washington, D.C. 20004
Phone (202) 204-4527
Fax (202) 204-3501
dgolden@constantinecannon.com

A. Owen Glist (*pro hac vice*)
Ankur Kapoor (*pro hac vice*)
Jeffrey I. Shinder (*pro hac vice*)
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
Phone (212) 350-2700
Fax (212) 350-2701
oglist@constantinecannon.com

*Interim Co-Lead Counsel*

Kenneth J. Rubin (*pro hac vice*)
Timothy B. McGranor (*pro hac vice*)
Kara M. Mundy (*pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
Phone (614) 464-6400
Fax (614) 719-4796
kjrubin@vorys.com
tbmcgranor@vorys.com
kmmundy@vorys.com

Thomas N. McCormick (*pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
4675 MacArthur Court, Suite 700
Newport Beach, California 92660
Phone (949) 526-7903 | Fax (949) 383-2384
tnmccormick@vorys.com

*Interim Executive Committee Member*

jcbourne@locklaw.com

*Interim Co-Lead Counsel*

FOX ROTHSCHILD LLP

s/ Gavin W. Skok
Gavin W. Skok, WSBA #29766
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
Telephone (206) 624-3600
Fax (206) 389-1708
Email:  gskok@foxrothschild.com

Kristen Ward Broz
FOX ROTHSCHILD LLP
2020 K. St. NW, Ste. 500
Washington, DC  20006
Telephone (202) 794-1220
Fax (202) 461-3102
Email:  kbroz@foxrothschild.com

Nathan M. Buchter
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA  19103
Telephone: (215) 299-3010
Email:  nbuchter@foxrothschild.com

MONTGOMERY McCRACKEN WALKER
& RHOADS LLP

s/ Charles B. Casper
Charles B. Casper (*admitted pro hac vice*)
Peter Breslauer (*admitted pro hac vice*)
Robert E. Day (*admitted pro hac vice*)
Jessica Rizzo (*admitted pro hac vice*)
1735 Market Street, 21st Floor
Philadelphia, PA  19103
Telephone:   215.772.1500
Facsimile:   215.772.7620

Email: ccasper@mmwr.com
jrizzo@mmwr.com
pbreslauer@mmwr.com
rday@mmwr.com

*Attorneys for Defendant*

JOINT LCR 37 SUBMISSION                    -27-
CASE NO. 2:21-CV-00563-JCC

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION**

I certify that the full response by the responding party has been included in this submission and that prior to making this submission the parties conferred to attempt to resolve this dispute in accordance with LCR 37.

Specifically, the parties engaged in numerous rounds of written correspondence regarding the above topic (including on July 10, 2023; August 18, 2023; September 7, 2023; and September 15, 2023) and engaged in an in-person meeting (attended by Kenneth R. O'Rourke and Gavin Skok) on October 11, 2023.

I certify that each party contributed no more than 4,200 words to this Joint Submission, in compliance with the Local Civil Rules.

Dated this 30th day of October 2023.

*/s/ Stephanie L. Jensen*
Stephanie L. Jensen

-28-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500