# EXHIBIT A

THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | No. 2:21-cv-00563-JCC |
| | **DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE CORPORATION'S MOTION TO SEAL OPPOSITION TO CLASS CERTIFICATION, DAUBERT MOTION, SCHWARTZ REPORT, AND SUPPORTING DOCUMENTS** |

I, Scott Lynch, declare and state as follows in support of Valve Corporation's Motion to

Seal, which seeks to seal certain documents and information contained in Valve's Corrected

Opposition to Plaintiffs' Motion for Class Certification (Dkt. 242) ("Opp. Motion"), Valve's

Motion to Exclude Testimony of Steven Schwartz, Ph.D. ("*Daubert* Motion") (Dkt. 232),

Plaintiffs' Expert Report of Dr. Steven Schwartz, Ph.D. ("Schwartz Report") (Dkt. 182-1), the

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Declaration of Blake Marks-Dias in support of the Oppos. and *Daubert* Motion ("Marks-Dias Decl.") (Dkt. 233) and certain exhibits thereto, and the Declaration of Erik Johnson (Dkt. 231) and an exhibit thereto.

1.      I've been the Chief Operating Officer of Valve since January 2000, and also serve as a Director on Valve Corporation's Board of Directors. I am over the age of 18, competent to testify and have personal knowledge of the facts stated below.

2.      More information about my background and experience is in my prior declaration—the Declaration of Scott Lynch in Support of Valve Corporation's Motion to Seal (First Lynch Decl.) ("First Lynch Decl.")—at Paragraphs 2–4.

3.      My prior declaration was filed under seal because it contained a large amount of confidential information that could be damaging to Valve and others if revealed. This declaration is being filed publicly, so I refer below to my prior declaration when needed to show the potential harm to Valve and third parties that could arise from disclosure of the information Valve seeks to seal.

4.      As explained in my prior declaration, Valve is very transparent with certain data related to Steam and makes that information publicly available. *See* First Lynch Decl. ¶¶ 8–18. However, Valve also has a large amount of sensitive, proprietary and confidential information about its business and about third parties that it zealously protects, does not publicly disclose, and that is not publicly known. Such information is discussed throughout my prior declaration; Paragraphs 24 and 46 contain high-level lists of the types of such information, and Paragraphs 49–54, 60–70, 73–102, and 105–120 provide extensive detail about specific types of documents

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 2

and data.

5. The information Valve seeks to seal in its current Motion to Seal falls into these general categories: (1) Valve financial information and accounting practices; (2) third-party financial information; (3) third-party proprietary business information, including information that implicates or reveals third parties' business, pricing or marketing strategies or third parties' use of Steam Keys; (4) Steam Distribution Agreements ("SDAs") between Valve and Steam Partners[1] and communications about them; (5) revenue sharing between Valve and Steam Partners and revenue share rates, as well as information about Valve's changes to revenue share rates; (6) Valve confidential internal strategy, analysis and information, including information regarding matters not alleged to be anti-competitive, the data Valve collects and how Valve keeps it, and analysis of competitors and competition; (7) personally identifiable information ("PII"); (8) data purchased from third-party data vendors solely for use in this litigation; and (9) calculations of alleged market share and market size. I understand the information Valve seeks to seal is referred to in its Motion to Seal as the "Sealed Documents" so I will use that term in this Declaration to refer to the same material.[2]

6. Valve takes immense care to shield Valve's and third parties' confidential information from public disclosure, including the information in the Sealed Documents. The

---

[1] I use the phrase "Steam Partner" herein as shorthand to refer to an entity that has entered into a Steam Distribution Agreement to distribute games on Steam. Steam Partners are typically video game publishers or developers.

[2] I also use the term "references" when discussing individual confidential passages or information within the Sealed Documents.

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

extensive steps Valve takes to protect this confidential information are described in detail in my prior declaration. *See* First Lynch Decl. ¶¶ 20–28, 33 (Valve's business and financial information), ¶¶ 29–32 (information about or from third parties).

7.      Public disclosure of the information in the Sealed Documents would result in significant competitive and economic harm to Valve and third parties, including Steam Partners and Steam users, as described in my prior declaration. Among other things:

- The competitive harm from release of Valve's financial information is established in Paragraphs 34–37 of my prior declaration;

- Paragraphs 38-43 show the competitive harm to Valve and third parties from release of third parties' financial information;

- My prior declaration explains how public information about Steam could be combined with confidential Valve or third-party information in the Sealed Documents to reverse engineer additional confidential Valve or Steam Partner information, including current financials (*id.* ¶¶ 35–36);

- The competitive harm to Valve and Steam Partners from release of SDAs and communications about them is established in Paragraphs 57–58 of my prior declaration;

- Valve and Steam Partners would both suffer competitive harm from the release of documents disclosing third-party proprietary business information like that in the Sealed Documents, as shown in Paragraph 71 of my prior declaration and in specific examples in Paragraphs 73–102;

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 4

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- Paragraph 103 discusses the competitive harm generally to Valve and Steam Partners from disclosure of internal Valve documents regarding business strategy and Steam-related issues, while Paragraphs 105–120 provide specific examples of harm from release of various types of internal Valve information;

- Harm to Valve employees, third parties, and Steam users from disclosure of PII like that in the Sealed Documents is also shown in my prior declaration. *Id.* ¶ 121.

8.      In addition to the information from my prior declaration, below I demonstrate how the release of the Sealed Documents would cause competitive and economic harm to Valve, Steam Partners or others.

**Valve Financial Information**

9.      I understand that Valve seeks to seal portions of documents that contain a high volume of detailed, highly confidential information regarding Steam sales, transactions, revenues, and revenue share, as well as internal Valve accounting, financial, cost and profit information that is not publicly known or disclosed by Valve in the ordinary course of business. For example, Attachment D-1 to the Schwartz Report is titled "Steam P&Ls 2003-2021" and contains extensive highly confidential financial information in financial statement form covering nearly 20 years. Other portions of the Schwartz Report and other Sealed Documents disclose Valve financial information in charts (e.g., Steam revenues over time) or narrative form. These disclosures are extensive, widespread, and would be extremely damaging to Valve's competitive position if made public.

10.     Valve is a privately held company with no outside shareholders or lenders. It is

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 5

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

not subject to SEC or other public regulatory requirements that would require Valve to publicly disclose its financial data. As described in paragraphs 19–28 of my prior declaration, Valve takes substantial efforts to protect and keep its financial information confidential. Valve derives significant value from the confidentiality of its financial information. In particular, disclosure of Valve past or present financial information at any level could harm Valve (and potentially third parties that Valve does business with) in various ways, including competitively. I described those competitive harms in paragraphs 34–37 of my prior declaration. Essentially, disclosure of the extensive financial data in the Sealed Documents would lay bare Valve's finances for all competitors to see and use against Valve to gain an unfair competitive advantage in all aspects of business, including setting prices, negotiating contracts, competing for customers, and making strategic investments.

11.     I understand the Court previously found compelling reasons to seal identical or similar Valve financial information in the Class Cert. Sealing Order. *See* Dkts. 236 & 246; *see also, e.g.,* Dkt. 237[3] at 12 (sealing Steam cost and profit information); Dkt. 237-1 at 11 (sealing Steam revenues), 18-19 (sealing historical Valve margin information), 66 (sealing revenue share projections), 69-70 (sealing historical and current Valve revenue information), 90 (sealing current revenue and historical Steam profit information), 115 (sealing Steam revenue information). The same reasons warrant sealing of Valve financial information in the Sealed Documents.

---

[3] All page references for Dkt. 237 and Dkt. 237-1 are to the ECF page number.

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 6

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

12.     I understand that, consistent with the Court's guidance in the Class Cert. Sealing Order, where possible Valve seeks sealing and redaction of only the numbers and percentages necessary to preserve confidentiality of this information.

13.     Accordingly, Valve seeks to seal the documents and references that contain such information, attached to my declaration as Appendix A1.

14.     In addition, Valve seeks to seal a subset of its financial information that would disclose Valve's accounting and financial record-keeping practices. Valve is a privately held company and does not prepare financial reporting on a regular cadence in the ordinary course of business. Rather, Valve prepares financial reporting from time to time on an ad hoc basis for a specific purpose. Portions of the Sealed Documents, particularly the Schwartz Report, go into great detail in discussing Valve's accounting practices and financial record-keeping, in a way that would reveal substantial inside information to Valve's competitors and the public about how Valve runs its business and its financial condition. Such disclosures would cause the competitive harms shown above from release of financial information, as well as additional competitive harm by disclosing other aspects of Valve's financial strategy and accounting, e.g., particular financial metrics Valve chooses to track or the manner in which it tracks them would give competitors valuable insight into areas of strategic focus for Valve. In addition, disclosure of Valve's accounting and financial record-keeping practices would also substantially increase the risk of a cyber-attack against Valve's systems or facilitate other malicious activity, such as phishing or social engineering.

15.     The same reasons that the Court previously found to seal Valve's financial information apply equally here to disclosures of Valve's accounting and financial record-keeping

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 7

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

practices in the Sealed Documents. The references Valve seeks to seal in this category are attached as Appendix A2 to my declaration.

**Third-Party Financial Information**

16.     I understand that Valve seeks to seal portions of documents that contain confidential and proprietary third-party financial information. This includes (i) information regarding third parties who distribute their games on Steam, including sales information and revenue share payments; and (ii) information produced by third parties in response to discovery regarding their finances, sales, operations, and internal strategy.

17.     Valve has various types of financial information related to Steam Partners, including information related to Steam Partners' sales and revenue share. *See also* First Lynch Decl. ¶¶ 24, 29. As described in my prior declaration and above, Valve takes numerous steps to safeguard this information. *See, e.g., id.* at ¶¶ 21–29.

18.     Paragraphs 38-43 of my prior declaration establish the competitive harm to Valve and third parties from release of third parties' financial information, which among other things would injure business relationships between Valve and Steam Partners and negatively impact Steam Partners whose confidential information was revealed by giving an unfair competitive advantage to their competitors.

19.     I understand that the Court previously found compelling reasons to seal similar information. *See* Dkt. 236 at 3 (finding compelling reasons to seal information that "implicate[s] a third party's business practices"); Dkt. 237 at 22 (sealing information about third party's Steam revenues); Dkt. 223 (sealing information produced by third parties Microsoft and Epic); Dkt. 258

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 8

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1
2
3

(sealing third party's revenues, pricing, and financial trends); Dkt. 259 (sealing information produced by third party Best Buy). The same reasons warrant sealing of third-party financial information in the Sealed Documents.

4
5
6
7
8

20.     I understand that, consistent with the Court's prior guidance, where possible Valve seeks sealing and redaction of only specific numbers and percentages and third-party identifying information (e.g., company and game names) necessary to anonymize such information. The references in this category are attached to my declaration as Appendix B.

9

**Third-Party Proprietary Business Information**

10
11
12
13
14
15
16
17

21.     I understand that Valve seeks to seal portions of documents that contain third-party proprietary business information, including information that implicates or reveals third parties' business, pricing or marketing strategies, as well as third parties' use of Steam Keys to distribute and sell their games outside Steam. I understand the Court previously found compelling reasons to seal information that "implicate[s] a third party's business practices" (Dkt. 236 at 3), which references in the Sealed Documents to third-party proprietary business information certainly do.

18
19
20
21
22
23
24

22.     Public disclosure of this information would cause economic and competitive harm to Valve's Partners and Valve in multiple ways, including by providing competitors of the impacted Steam Partners with unfair insights into their business operations and strategies, which also undermines Valve's existing business relationship with the impacted Steam Partners. Disclosure of any particular Steam Partner's Steam Key activation information would not only disclose that Steam Partner's business strategy, it would also potentially allow

25

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 9

calculation of revenue share rates and Valve's payments to third parties when combined with other publicly available information. Many of the same harms to Valve and Steam Partners described in my prior sealed declaration at paragraphs 38–43, 71, and 73–102 (specific examples) would also occur from release of third-party proprietary business information of the sort in the Sealed Documents.

23.     I understand the Court previously protected the confidentiality of similar third-party information by sealing and redacting certain identifying information (primarily names of third parties and names of games) to anonymize information that would otherwise disclose confidential third-party business practices. Consistent with that approach, I understand that Valve proposes where possible to seal and redact only identifying information necessary to anonymize the third party and protect its confidentiality.

24.     The references Valve seeks to seal in this category regarding third-party business, pricing & marketing strategy attached to my declaration at Appendix C1, while the third-party business information specifically referencing Steam Keys is attached at Appendix C2.

**Steam Partner Contracts and Related Communications**

25.     I understand that Valve seeks to seal certain SDAs with Steam Partners and communications about them. The SDAs that Valve seeks to seal here disclose specific business terms of Valve's relationship with third parties, including financial terms and other terms for distribution of the third parties' apps on Steam like those described in my prior declaration. *See* First Lynch Decl. ¶ 55. In addition, the SDAs in the Sealed Documents include confidentiality

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 10

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

provisions that require the parties to keep the SDAs and their terms confidential, as well as business information exchanged between them regarding distribution on Steam. *See also* First Lynch Decl. ¶¶ 30-31.

26.     Releasing the SDAs and communications about them in the Sealed Documents could cause significant competitive harm to both parties. For example, Steam Partners would be harmed from disclosure of the business terms they agreed to for distribution of their apps, giving their competitors unfair insight into its business operations and strategies and weakening their ability to negotiate future contracts with others who would know the terms on which the Steam Partner agreed to do business with Valve. Release could also compromise Valve's ability to negotiate future contracts and disrupt its relationships with Steam Partners who relied on the confidentiality of the terms on which they agreed to do business with Valve. These and other harms from release are described more fully in my prior declaration. *See* First Lynch Decl. ¶¶ 57–58.

27.     The Court previously found compelling reasons to seal SDAs and communications about them. *See* Dkt. 236 at 3; Dkt. 237 at 11 n. 4 & 31 (sealing third party SDA terms) and 14 (sealing negotiations with third-party regarding SDA term); Dkt. 237-1 at 58 (sealing SDA financial terms). The same reasons warrant sealing of SDAs and communications about them in the Sealed Documents.

28.     Where the Sealed Documents include SDAs and negotiations or communications about SDA terms, I understand that Valve seeks sealing of third-party identifying information and portions disclosing the substance of business terms, similar to the

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 11

1

2

Court's prior redactions. The references that fall into this category are attached to my declaration as Appendix D.

3

**Steam Revenue Share Information**

4

5

6

7

8

9

10

11

12

13

14

15

16

29.    I understand that Valve seeks to seal portions of documents that contain confidential information regarding revenue share rates and splits between Valve and Steam Partners, including Plaintiffs' expert's calculations of Steam Partners' current and but-for effective revenue share rates (which Plaintiffs' expert incorrectly calls "commissions") and other revenue share rate and payment information derived from Valve's confidential financial data and Steam Partners' confidential financial data. I understand that the Court previously found compelling reasons to seal the same calculations by Plaintiffs' expert of effective revenue share rates. *See* Dkt. # 236 at 3; Dkt. # 237-1 at 32; Dkt. # 246 at 1. In addition, Plaintiffs' expert's calculations of current and but-for effective revenue share rates are based on Valve's highly confidential financial information, which I understand the Court also already found compelling reasons to seal. *See, e.g.*, Dkt. # 237-1 at 11, 18, 69.

17

18

19

20

21

22

23

24

30.    Revenue share rates and other revenue share information in the Sealed Documents should be sealed because disclosure would cause significant competitive harm to Valve. For example, revenue share rates and payments could be used to quickly calculate Steam Partners' total sales (which is highly confidential third-party information, as described above) or total Steam sales. Revenue share rates, payments, or similar information could be combined with publicly available information to similarly calculate total sales for Valve or third parties, revealing highly confidential information. In addition, differences between Plaintiffs' expert's

25

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 12

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

calculations of "effective commission" and contractual revenue share rates in Steam Partners' SDAs will create confusion and raise questions by Steam Partners about revenue share, likely damaging Valve's relationships with Steam Partners. These impacts are similar to those I describe in my prior declaration at paragraphs 60–70 from release of SDA terms. I also give examples in my prior declaration of other types of harm from release of revenue share information that apply equally here. *See, e.g.,* First Lynch Decl. ¶ 50 (harm to ability to negotiate future contracts), ¶ 51 (example of harm from disclosure of particular revenue share rate).

31.     I understand that, consistent with the Court's prior guidance, where possible Valve seeks sealing and redaction of only specific numbers and percentages necessary to preserve confidentiality of this information. The references Valve seeks to seal in this category are attached to my declaration as Appendix E1.

32.     I understand that Valve also seeks to seal information relating to Steam revenue share changes and Valve's reasoning behind said changes. Like the other revenue share information discussed above, information about changes to Valve's revenue share and its consideration of those changes is kept strictly confidential within the company and would cause competitive harm to Valve if released. Disclosure would cause the harms described above from disclosure of other revenue share information, as well as the types of harm described in my prior declaration that are specific to disclosure of information about potential revenue share changes. *See* First Lynch Decl. ¶ 54 (establishing harm from disclosure of information regarding 2018 revenue share tier changes), ¶ 96 (establishing harm from disclosure of partner

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 13

revenue share discussions), ¶ 116 (establishing harm from disclosure of communications detailing consideration of revenue share change).

33.     I understand that the Court also previously found compelling reasons to seal similar information regarding revenue share as described in Paragraph 30 above. Similar reasons exist to seal information regarding changes to Valve's revenue share in the Sealed Documents.

34.     The references that Valve seeks to seal in this category are attached to my declaration as Appendix E2.

**Valve Confidential Internal Strategy, Analysis, and Information**

35.     I understand that Valve seeks to seal portions of documents that contain Valve's confidential internal strategy, analysis, and information, including (i) matters not alleged to be anti-competitive, (ii) analysis of competition and competitors, and (iii) information disclosing the type of data Valve collects and how Valve keeps it.

36.     Disclosure of the information Valve seeks to seal would give Valve's competitors unfair insight into its business models, current and future decision-making and reasoning, policies, pricing, marketing, and other strategies; reveal how Valve negotiates and structures its business relationships, which would impair Valve's ability to negotiate future contracts; eliminate Valve's significant economic and employee time investment in developing its business models and strategies; and even provide bad actors information that could be used to mount attacks against Valve's network, its business operations, or employees. *See also* First Lynch Decl. ¶ 103 (describing harms from disclosure of internal Valve strategy and analysis).

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 14

I provided additional details about the harms caused from specific types of internal discussions and analysis in my prior sealed declaration and refer the Court to those prior statements because repeating them here would reveal highly confidential information. *See* First Lynch Decl. ¶¶ 105–120 (detailing competitive harm caused from disclosure of specific types of internal Valve strategy and analysis information, such as Steam Key requests (105), Steam Partner relationship management (107, 108, 115), competitors and competition (110, 118, 119), communications strategy with Steam Partners and users (113, 117)).

37.     In addition, disclosure of the type of data Valve collects and how Valve keeps it would put Valve at competitive risk and risk of attack from bad actors. Valve publicly discloses user-specific data it collects, which any Steam user can access through their Steam account at https://help.steampowered.com/en/accountdata. However, Valve collects additional business, financial, and operational data that it tightly protects and does not publicly disclose. The Sealed Documents disclose specific details about multiple types of business and financial data Valve collects and how such data is stored and used. Disclosure of this information would provide competitors a significant and unfair insight that would allow them to unfairly compete with Valve, e.g., by giving insight into Valve's areas of strategic emphasis or interest. Disclosure would also enable bad actors to develop targeted cyber-attacks against Valve's systems and databases, as well as phishing or social engineering attacks.

38.     I understand the Court previously found compelling reasons to seal confidential information related to "Defendant's alleged competitive (i.e., permissible) business practices" (Dkt. 236 at 3), and also found compelling reasons to seal other types of Valve internal analysis

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 15

similar to that Valve seeks to seal in the Sealed documents. *See, e.g.,* Dkt. 237 at 29 (sealing internal discussion of Steam changes); Dkt. 237-1 at 63 (sealing internal reasoning regarding use of Steam Keys), 108-09 (sealing internal Valve discussion regarding other game stores).

39.     Similar reasons exist to seal information in the Sealed Documents that would disclose Valve's highly confidential internal strategy, analysis and information in the three categories above. I understand that, to the greatest extent possible, Valve has attempted to narrow its sealing requests to only that information necessary to prevent disclosure of confidential and damaging internal information.

40.     The specific references Valve seeks to seal in the Sealed Documents to internal strategy, analysis and information about matters not challenged as anti-competitive are attached to my declaration as Appendix F1.

41.     The specific references Valve seeks to seal in the Sealed Documents to internal business strategy, analysis and information about competition and competitors are attached to my declaration as Appendix F2.

42.     The specific references Valve seeks to seal in the Sealed Documents to internal business strategy, analysis and information about the data Valve collects and how Valve keeps it are attached to my declaration as Appendix F3.

**<u>Personally Identifiable Information</u>**

43.     I understand that certain of the Exhibits contain PII such as names, phone numbers, email addresses, and mailing addresses, of Valve employees, third parties, and Steam users. I also understand that the Court also previously found compelling reasons to seal such

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 16

information, and that Valve is asking the Court to seal PII in these Exhibits as well.

44.      Risks created by disclosure of Valve employee's PII are discussed in Paragraph 121 of my prior declaration. Similar risks apply to third parties and Steam users whose PII is exposed in public court filings. In addition, Valve seeks to redact the names of vendors Valve uses to provide customer support to Steam users, for the reasons set forth in my prior declaration at paragraph 49, which discusses those same vendors.

45.      Keeping the PII of Valve employees, third parties, and Steam users under seal preserves their privacy and protects them from other potential harm, such as harassment, phishing, and other attacks. Disclosure of such information is unnecessary to understand the substance of these filings but would invade personal privacy and potentially subject individuals to harassment or unwanted public attention.

46.      The references to PII that Valve seeks to seal in the Sealed Documents are attached to my declaration as Appendix G1.

47.      In addition, I understand the Sealed Materials include public discussion posts on a Steam Group that have since been deleted by the user who authored the post. I understand that Valve does not seek to seal user posts that are still publicly available, but seeks to seal the posts that were deleted to respect the user's wishes that their posts be removed from public viewing. Those references that Valve seeks to seal in the Sealed Documents are attached to my declaration as Appendix G2.

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 17

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

**Data Purchased from Third Party Data Vendors Solely for Use in this Litigation**

2

48.      I understand that Valve seeks to seal portions of documents that contain

3

proprietary market and industry information purchased by Valve solely for use in litigation.

4

Valve purchased this information from non-parties Newzoo and Circana. Newzoo and Circana

5

are data vendors whose business is collecting, compiling, and selling their proprietary

6

information. I understand that Newzoo and Circana invest considerable resources in gathering

7

data from sources including company revenues, primary consumer research, and transaction

8

data. I also understand that Newzoo and Circana invest considerable resources in analyzing this

9

data, creating products based on it, and marketing these products, deriving economic value from

10

selling their proprietary information. Public disclosure of this data would hurt its economic

11

value to Newzoo and Circana (because it would now be freely available), thereby causing them

12

economic injury and competitive harm. This Court has already ruled that information that

13

"implicate[s] a third party's business practices" meets the compelling reasons standard for

14

sealing. *See* Dkt. # 236 at 3. Potential public release of Newzoo's and Circana's paid proprietary

15

information at no cost certainly implicates their business practices.

16

49.      Disclosure of this proprietary data could, furthermore, harm Valve's ongoing

17

business relationships with Newzoo and Circana. Newzoo and Circana agreed to make this data

18

available to Valve for use in this litigation under contract on the condition that Valve oppose

19

any motion to unseal it. Valve is contractually obligated to ask the Court to maintain the

20

confidentiality of this data. At the Court's request, Valve will provide additional detail

21

regarding its contracts with Newzoo and Circana or file the contracts themselves under seal.

22

23

24

25

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 18

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

50.     I understand that, consistent with the Class Cert. Sealing Order, Valve focuses its sealing and redaction requests regarding this category of information to only the confidential information provided by the non-party data vendors. The references that fall into this category are attached to my declaration as Appendix H.

### Calculations of Alleged Market Share and Size

51.     I understand that Valve seeks to seal portions of documents that contain information relating to the size of the alleged market and various industry participants' share of that alleged market. I understand the Court previously sealed such information. *See, e.g.*, Dkt. 237 at 11:21; 21:25-26; 27:21-22. The market share and size references in the Sealed Documents contain the same type of information and should be sealed for the same reason.

52.     There would be significant competitive harm to Valve if information regarding alleged market size and share was publicly disclosed. Although none of the market share and size information in the Sealed Documents was calculated or created by Valve, its disclosure would readily allow reverse-engineering of highly confidential Valve sales and financial information, either solely from a combination of market size and percentage share data or when market share or size data points are viewed in conjunction with publicly available information. Moreover, because most or all of the market share and size information in the Sealed Documents is based on information from the third-party vendors discussed above (Newzoo, Circana), its disclosure would cause similar harm to those vendors as from direct release of their information.

53.     I understand that limited redactions consistent with the Court's prior guidance

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 19

are proposed to address these concerns, which where possible redact only the dollar figures or percentages necessary to keep this type of information confidential. The references that fall into this category are attached to my declaration as Appendix I.

54.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 27th day of June, 2024 at _Bellevue, WA_.

Scott Lynch

DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S
MOTION TO SEAL - CASE NO. 2:21-cv-00563-JCC – 20

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# APPENDICES TO THE DECLARATION OF SCOTT LYNCH IN SUPPORT OF VALVE'S MOTION TO SEAL

# Appendix A1
## Requested Sealing/Redactions of Valve Financial Information

**Ex. 14 to BMD decl. (Dkt. 233-14)**
> 103:9
> 104:7, 8, 9-10, 17

**Daubert motion (Dkt. 232)**
> 6:1
> p. 14 n. 4

**Corrected Opp. To Class Cert. (Dkt. 242)**
> 9:1
> 10:6
> 14:21
> 20:10

**Chiou Report (Dkt. 233-1)**
> ¶ 52b
> p. 37 n. 138
> ¶ 71
> ¶ 115
> p. 90 n. 337
> ¶ 259
> ¶ 260
> p. 126 n. 462
> p. 127 Exhibit 16
> p. 128 Exhibit 17
> ¶ 263
> ¶ 264
> ¶ 266
> ¶ 268
> ¶ 288
> p. 139 n. 498
> p. 147 n. 530
> p. 154 n. 557
> ¶ 364a
> ¶ 378
> p. 176 n. 638
> ¶ 379
> ¶ 411

**Langer Report (Dkt. 233-2)**
> p. 36 n. 82
> p. 38 n. 92
> p. 47 Exhibit 1 and caption
> p. 60 n. 149
> p. 84 Exhibit 5
> p. 88 n. 229
> p. 91 n. 238
> p. 150 Exhibit 8 and caption
> p. 151 Exhibit 9 and caption
> p. 152 Exhibit 10
> p. 153 Exhibit 11
> p. 154 Exhibit 12
> p. 155 Exhibit 13

**Schwartz Report (Dkt. 182-1)**
> ¶ 21
> p. 11 n. 37
> ¶ 35
> ¶ 74
> ¶ 135
> ¶ 137
> ¶ 138
> p. 86–87 n. 392
> ¶ 145
> ¶ 146
> p. 90, Figure 2
> ¶ 147
> ¶ 148
> p. 91 n. 404
> p. 91 n. 405
> ¶ 210
> p. 129 n. 584
> ¶ 273
> p. 160 Table 3
> p. 161 Figure 5
> p. 176 n. 757
> ¶ 325
> ¶ 353
> ¶ 355
> p. 199 n. 836
> ¶ 361
> p. 201 n. 843

**Schwartz Report (Dkt. 182-1) (cont.)**

¶ 368

p. 205 Figure 6

¶ 376

p. 206 n. 855

p. 206 n. 858

¶ 388

p. 210 Figure 7

¶ 400

p. 215 n. 889

¶ 402

p. 216 n. 891

¶ 406

¶ 407

¶ 408

p. 217 n. 898

¶ 409

p. 219, Figure 9

p. A10, Table A.1

p. A11, Table A.2

p. A11, Table A.3

p. A11, Table A.4

p. A16–17 ¶ A51

p. A16 n. 13

p. A17 ¶ A53

p. A17 n. 15

Attachment D-1

Attachment D-2

Attachment D-3

Attachment D-4

Attachment D-5

Attachment D-6

Attachment D-7

Attachment D-8

Attachment E-1

Attachment G-1

Attachment G-2

Attachment G-4

Attachment G-5

Attachment G-6

Attachment G-7

## Appendix A2
## Requested Sealing/Redactions of Valve Financial Information (accounting and financial record-keeping practices)

**<u>Schwartz Report (Dkt. 182-1)</u>**

 ¶ 139
 p. 86 n. 392
 ¶ 141
 p. 87 n. 393
 ¶ 142
 ¶ 143
 p. 88 n. 396
 p. 88 n. 397
 ¶ 144
 ¶ 145
 p. 89 n. 398
 p. 89 n. 400
 ¶ 146
 p. 198 n. 831
 p. 198 n. 832
 Attachment D-1
 Attachment D-2
 Attachment D-3
 Attachment D-4
 Attachment D-5
 Attachment X-6

# Appendix B
## Requested Sealing/Redactions of Third-Party Financial Information

**Ex. 11 to BMD decl. (Dkt. 233-11) (sealed in its entirety)**

**Ex. 14 to BMD decl. (Dkt. 233-14)**
103:9
104:25
105:2, 6
107:21
108:16, 17

**Chiou Report (Dkt. 233-1)**
p. 56 n. 227
p. 77 n. 315
¶ 164
¶ 165
p. 84 Exhibit 5
p. 90 n. 339
¶ 248

**Langer Report (Dkt. 233-2)**
¶ 98
p. 46 n. 113
p. 55 n. 138
p. 57 n. 144
¶ 142
¶ 150
p. 79 Exhibit 4
¶ 161
p. 82 n. 217
p. 82 n. 218
p. 82 n. 219
p. 91 n. 238

**Schwartz Report (Dkt. 182-1)**
¶ 40
p. 37 n. 183
p. 41 n. 204
¶ 248
¶ 272
p. 160 Table 3
¶ 277
¶ 310
p. 177 n. 760
p. 205 Figure 6
¶ 376
p. 206 n. 855
¶ 388
p. 210 Figure 7
¶ 394
p. 212 n. 880
p. 213 Figure 8
¶ 396
¶ 397
¶ 399
p. 214 n. 885
¶ 406
¶ 407
¶ 410
p. 219, Figure 9
p. A10, Table A.1
p. A11, Table A.3
p. A11, Table A.4
Attachment G-1
Attachment G-2
Attachment G-3
Attachment G-4
Attachment G-5
Attachment G-6

## Appendix C1
## Requested Sealing/Redactions of Third-Party Proprietary Business Information (third-party business, pricing & marketing strategy)

**BMD decl. (Dkt. 233)**
¶ 13
¶ 15
¶ 17

**Ex. 5 to BMD decl. (Dkt. 233-5) (sealed in its entirety)**

**Ex. 6 to BMD decl. (Dkt. 233-6)**
173:24-174:25

**Ex. 11 to BMD decl. (Dkt. 233-11) (sealed in its entirety)**

**Ex. 13 to BMD decl. (Dkt. 233-13)**
PDF pp. 2-3

**Ex. 14 to BMD decl. (Dkt. 233-14)**
200:22

**Ex. 31 to BMD decl. (Dkt. 233-31)**
188:22-189:14

**Daubert motion (Dkt. 232)**
8:13, 14-15
9:23-24
10:1, 2, 4

**Corrected Opp. To Class Cert. (Dkt. 242)**
12:16, 17, 18, 19, 20, 21, 22
15:21
16:24
17:1, 2
17:12, 15
18:1, 4, 5
23:4, 5, 6, 8, 9, 10
27:7, 8
31:7, 10, 21, 22
34: 13, 14

**Johnson Decl. (Dkt. 231)**
3:9-17 (¶ 7)
3:19-22 (¶ 8)
5:24
6:5, 6

**Ex. 1 to Johnson Decl. (Dkt. 231-1) (sealed in its entirety)**

**Chiou Report (Dkt. 233-1)**
p. 18 n. 39
p. 19 n. 40
p. 19  n. 41
¶ 32
p. 21 n. 53
¶ 54
p. 29 n. 96
p. 32 n. 114
p. 55 n. 220
p. 61 n. 248
¶ 123
p. 68 n. 284
p. 90 n. 339
p. 106 n. 385
p. 113 n. 414
p. 113 n. 415
p. 113 n. 416
¶ 226
¶ 227
p. 114 n. 417
p. 115 n. 424
p. 116 n. 427
p. 116 n. 428
p. 117 n. 431
p. 118 Exhibit 15
¶ 267
p. 137 n. 492
p. 139 n. 496
p. 146 n. 525
¶ 304
p. 147 n. 526
p. 147 n. 527

**<u>Chiou Report (Dkt. 233-1) (cont.)</u>**

    p. 147 n. 528
    ¶ 311
    p. 149 n. 537
    p. 149 n. 538
    ¶ 335
    p. 150 n. 543
    ¶ 314
    p. 151 n. 546
    p. 151 n. 547
    p. 153 n. 553
    ¶ 326
    p. 155 n. 564
    p. 156 n. 565
    p. 156 n. 566
    ¶ 335
    p. 159 n. 572
    p. 159 n. 573
    p. 159 n. 574
    p. 159 n. 575
    p. 163 n. 591
    ¶ 378
    ¶ 388
    ¶ 391
    Appendix C (pp. 4 and 5)

**<u>Langer Report (Dkt. 233-2)</u>**

    p. 44 n. 108
    p. 57 n. 143
    p. 66 n. 175
    p. 73 n. 199
    p. 74 Exhibit 3 Caption
    p. 80 n. 213
    p. 82 n. 220
    p. 120 n. 331

**<u>Schwartz Report (Dkt. 182-1)</u>**

    p. 25 n. 135
    p. 38 n. 188
    p. 42 n. 204
    p. 44 n. 211
    ¶ 74
    p. 47 n. 221
    ¶ 84
    p. 53 n. 243
    p. 53–54 n. 245

**<u>Schwartz Report (Dkt. 182-1) (cont.)</u>**

    ¶ 85
    p. 54 n. 246
    p. 54 n. 248
    ¶ 89
    ¶ 91
    p. 56 n. 252
    p. 56 n. 253
    p. 57 n. 257
    ¶ 96
    p. 62 n. 278
    ¶ 105
    p. 68 n. 301
    p. 68 n. 302
    p. 69 n. 306
    ¶ 131.b
    ¶ 131.e
    p. 81 n. 376
    ¶ 161
    p. 99 n. 445
    ¶ 163
    ¶ 164
    p. 100 n. 446
    p. 100 n. 447
    ¶ 165
    p. 101 n. 455
    p. 101 n. 456
    p. 101 n. 457
    ¶ 167
    p. 102 n. 462
    p. 104 n. 464
    ¶ 175
    ¶ 176
    p. 105 n. 467
    p. 105 n. 468
    p. 105 n. 469
    p. 105 n. 470
    p. 105 n. 471
    p. 105 n. 472
    ¶ 177
    ¶ 178
    ¶ 179
    p. 106 n. 473
    p. 106 n. 474
    p. 106 n. 475
    p. 106 n. 476

**_Schwartz Report (Dkt. 182-1) (cont.)_**

p. 106 n. 477
¶ 180
p. 107 n. 478
p. 107 n. 479
p. 107 n. 480
p. 107 n. 481
p. 107 n. 482
p. 107 n. 483
¶ 181
¶ 182
p. 108 n. 484
p. 108 n. 485
p. 108 n. 486
p. 108 n. 487
p. 108 n. 488
p. 108 n. 489
¶ 183
p. 109 n. 490
p. 109 n. 491
p. 109 n. 492
p. 110 Figure 3
¶ 184
p. 110 n. 496
p. 110 n. 497
p. 111 n. 498
¶ 188
p. 112 n. 507
¶ 189

**_Schwartz Report (Dkt. 182-1) (cont.)_**

p. 113 n. 510
¶ 193
p. 116 n. 521
p. 116 n. 522
p. 116 n. 524
¶ 195
p. 117 n. 525
p. 117 n. 526
p. 117 n. 527
¶ 196.a
¶ 196.c
p. 118 n. 528
p. 118 n. 529
p. 118 n. 530
p. 118 n. 531
p. 119 n. 534
p. 119 n. 535
¶ 215
p. 131 n. 599
p. 131 n. 600
p. 132 n. 601
p. 134 n. 615
p. 142 n. 641
¶ 321
¶ 330
p. 189 n. 796
p. 189 n. 797
p. 189 n. 798
p. 194 n. 814

Appendix C1

**Appendix C2**
**Requested Sealing/Redactions of Third-Party Proprietary Business Information (third-party Steam Keys)**

**Corrected Opp. To Class Cert. (Dkt. 242)**
    10:6
    14:21
    18:1, 5
    20:10
    28:3

**Chiou Report (Dkt. 233-1)**
    p. 81 n. 322
    p. 90 n. 339
    ¶ 188
    ¶ 196
    ¶ 313
    p. 150 n. 541
    p. 150 n. 542
    p. 150 n. 544
    p. 150 n. 545
    p. 154 n. 559

**Langer Report (Dkt. 233-2)**
    ¶ 98
    ¶ 150

**Schwartz Report (Dkt. 182-1)**
    p. 28 n. 154
    p. 51 n. 232
    ¶ 158
    p. 98 n. 441

**Johnson Decl. (Dkt. 231)**
    5:24
    6:5, 6

## Appendix D
## Requested Sealing/Redactions of Steam Partner Contracts and Related Communications

**Ex. 27 to BMD decl. (Dkt. 233- 27) (sealed in its entirety)**

**BMD decl. (Dkt. 233)**
¶ 29

**Johnson Decl. (Dkt. 231)**
3:9-17 (¶ 7)
3:19-22 (¶ 8)

**Ex. 1 to Johnson Decl. (Dkt. 231-1) (sealed in its entirety)**

**Chiou Report (Dkt. 233-1)**
¶ 62
¶ 91
p. 56 n. 224
p. 56 n. 225
p. 171 n. 622
p. 171 n. 623
Appendix C (page 4 and 5)

**Schwartz Report (Dkt. 182-1)**
p. iiii, item 7.5.1
p. vi, Section C references
p. 26 n. 142
p. 26 n. 143
p. 27 n. 145
p. 37 n. 184
¶ 105
p. 69 n. 305
p. 96 n. 429
p. 96 n. 430
p. 97 n. 432
p. 115 n. 519
p. 146 n. 654
p. 179, Section 7.5.1 title
¶ 315
¶ 316
p. 180 n. 768
p. 180 n. 769
p. 180 n. 770
¶ 317
p. 181 n. 771
p. 181–182 n. 772
¶ 318
¶ 319
p. 182 n. 773
p. 182 n. 774
Attachment G-5

# Appendix E1
## Requested Sealing/Redactions of Steam Revenue Share Information

**Ex. 4 to BMD decl. (Dkt. 233-4)**
    35:1, 4, 5

**Ex. 14 to BMD decl. (Dkt. 233-14)**
    104:4, 14
    107:18
    108:13
    187:7, 9

**Ex. 15 to BMD decl. (Dkt. 233-15)**
    PDF p. 2

**Daubert motion (Dkt. 232)**
    2:23
    12:15
    p. 14 n. 4

**Corrected Opp. To Class Cert. (Dkt. 242)**
    7:18, 20, 21
    9:2
    18:10-11
    29:5, 14

**Chiou Report (Dkt. 233-1)**
    ¶ 155
    p. 81 n. 323
    ¶ 159
    p. 82 n. 325
    ¶ 164
    p. 84 Exhibit 5
    ¶ 184
    p. 93 n. 348
    p. 95 n. 352
    p. 183 Exhibit 25
    p. 191 n. 675
    p. 241 n. 794
    p. 245 n. 813

**Langer Report (Dkt. 233-2)**

p. 36 n. 80
p. 36 n. 82
p. 37 n. 88
p. 39 n. 94
p. 43 n. 104
p. 45 n. 109
p. 49 n. 119
p. 49 n. 120
p. 72 n. 197
p. 74 Exhibit 3

**Schwartz Report (Dkt. 182-1)**
p. 88 n. 397
¶ 143
p. 146 n. 653
¶ 273
¶ 308
p. 176 n. 757
¶ 352
p. 199 n. 836
¶ 361
p. 201 n. 843
¶ 376
p. 205 n. 854
p. 206 n. 855
p. 214 n. 885
¶ 401
p. 215 n. 889
p. 215 n. 890
¶ 402
p. 216 n. 891
p. A10, Table A.1
p. A11, Table A.2
p. A16 ¶ A51
p. A16 n. 13
p. A17 ¶ A53
p. A17 n. 15
Attachment G-5
Attachment G-6

**Appendix E2**
**Requested Sealing/Redactions of Steam Revenue Share Information**
**(Changes and Valve's Reasoning for Changes)**

**Ex. 4 to BMD decl. (Dkt. 233-4)**
      97:2, 3, 5, 7


**Ex. 17 to BMD decl. (Dkt. 233-17) (sealed in its entirety)**


**Ex. 18 to BMD decl. (Dkt. 233-18)**
      112:25
      113:15, 17, 20, 23, 24, 25
      114:2, 3, 12, 14, 20, 21, 22, 23, 25
      115:2, 3, 5, 7, 10, 21


**Schwartz Report (Dkt. 182-1)**
      p. 26 n. 143
      p. 27 n. 144
      ¶ 199
      ¶ 200
      ¶ 201
      p. 122 n. 542
      p. 122 n. 543
      p. 122 n. 544
      p. 122 n. 545
      p. 122 n. 546
      ¶ 201
      p. 123 n. 549
      p. 123 n. 550
      ¶ 215
      ¶ 306
      p. 175 n. 748
      Attachment C-1

## Appendix F1
## Requested Sealing/Redactions of Valve Confidential Internal Strategy, Analysis, and Information (matters not challenged as anti-competitive)

**Ex. 4 to BMD decl. (Dkt. 233-4)**
    98:17-25

**Ex. 15 to BMD decl. (Dkt. 233-15)**
    PDF p. 3

**Schwartz Report (Dkt. 182-1)**
    ¶ 35
    ¶ 40
    p. 91 n. 405
    p. 121 n. 541
    ¶ 225
    p. 138 n. 628
    ¶ 234
    ¶ 237
    ¶ 238
    ¶ 239
    Attachment D-8
    Attachment X-6

**Chiou Report (Dkt. 233-1)**
    p. 55 n. 220
    p. 76 n. 312
    ¶ 209
    p. 107 n. 387
    p. 109 n. 400
    ¶ 244
    ¶ 245
    ¶ 252
    ¶ 253
    p. 124 n. 461
    ¶ 291
    p. 173 n. 632
    ¶ 370
    ¶ 382
    ¶ 385
    p. 179 Exhibit 23
    ¶ 388
    p. 181 Exhibit 24

**Langer Report (Dkt. 233-2)**
    p. 49 n. 117
    ¶ 212
    p. 124 n. 350

**Schwartz Report (Dkt. 182-1)**
    ¶ 94
    p. 68 n. 301
    ¶ 163
    p. 102 n. 462
    ¶ 215
    ¶ 331

**Appendix F2**
**Requested Sealing/Redactions of Valve Confidential Internal Strategy, Analysis, and Information (analysis of competition and competitors)**

<u>**Schwartz Report (Dkt. 182-1)**</u>
p. 37–38 n. 184
¶ 60
p. 52 n. 238
¶ 89
¶ 91
p. 56 n. 252
p. 56 n. 253
p. 57 n. 257
¶ 94
p.60 n. 272
¶ 115
p. 74 n. 334
p. 74 n. 335
¶ 133
¶ 134
p. 127 n. 572
p. 129 n. 588
p. 172–173 n. 734
p. 173 n. 735
p. 173 n. 739

**Appendix F3**
**Requested Sealing/Redactions of Valve Confidential Internal Strategy,
Analysis, and Information (disclosing the type of data Valve collects and how
Valve keeps it)**

**Chiou Report (Dkt. 233-1)**

    p. 36 n. 129
    p. 97 Exhibit 10
    ¶ 195
    p. 98 Exhibit 11
    ¶ 197
    p. 164 n. 594
    p. 164 n. 595
    p. 164 n. 596
    p. 164 n. 597
    ¶ 370
    ¶ 377
    p. 176 Exhibit 22
    p. 174 n. 635
    p. 177 n. 642
    ¶ 450
    ¶ 451
    p. 240 n. 788
    p. 240 n. 790
    p. 240 n. 791
    p. 240 n. 792
    ¶ 456
    ¶ 457
    ¶ 458
    ¶ 459
    p. 241 n. 797
    p. 242 n. 798
    p. 242 n. 800
    ¶ 463
    ¶ 464 a.ii
    p. 243 n. 805
    ¶ 469
    ¶ 470

**Chiou Report (Dkt. 233-1) (cont.)**

    p. 245 n. 808
    p. 245 n. 809
    p. 245 n. 812
    ¶ 472
    ¶ 473
    p. 246 n. 814
    p. 246 n. 815
    p. 246 n. 816
    p. 246 n. 817
    p. 247 n. 818
    ¶ 477

**Schwartz Report (Dkt. 182-1)**

    ¶ 390
    ¶ 391
    p. 211 n. 876
    p. 211 n. 877
    p. 217 n. 898
    p. A20
    p. A21 ¶ A67
    p. A21 ¶ A69
    p. A21 ¶ A70
    p. A21 n. 20
    p. A21 n. 21
    p. A22 ¶ A71
    p. A22–A23 ¶ A72
    p. A23 ¶ A73
    p. A23 ¶ A74
    Attachment G-1
    Attachment G-3
    Attachment G-4
    Attachment G-5
    Attachment G-6

**Appendix G1**
**Requested Sealing/Redactions of Personally Identifiable Information**

**Ex. 4 to BMD decl. (Dkt. 233-4)**
    243:10, 14, 20, 24
    244:8, 13

**Ex. 12 to BMD decl. (Dkt. 233-12)**
    PDF p. 2

**Ex. 13 to BMD decl. (Dkt. 233-13)**
    PDF p. 2
    PDF p. 3
    PDF p. 4
    PDF p. 5
    PDF p. 6

**Ex. 15 to BMD decl. (Dkt. 233-15)**
    PDF p. 2
    PDF p. 3

**Ex. 16 to BMD decl. (Dkt. 233-16)**
    PDF p. 2
    PDF p. 3
    PDF p. 4

**Ex. 19 to BMD decl. (Dkt. 233-19)**
    4:17-22
    5:12-14

**Ex. 26 to BMD decl. (Dkt. 233-26)**
    PDF p. 2
    PDF p. 3

**BMD decl. (Dkt. 233)**
    ¶ 7
    ¶ 10
    ¶ 12
    ¶ 25
    ¶ 26

**Appendix G2**
**Requested Sealing/Redactions of Personally Identifiable Information**
**(Deleted User Posts)**

**<u>Ex. 9 to BMD decl. (Dkt. 233-9)</u>**
     PDF p. 6
     PDF p. 7
     PDF p. 11-12
     PDF p. 16
     PDF p. 19
     PDF p. 23-24
     PDF p. 29
     PDF p. 38

**<u>Ex. 25 to BMD decl. (Dkt. 233-25)</u>**
     PDF p. 2
     PDF p. 3

## Appendix H
## Requested Sealing/Redactions of Data Purchased from Third Party Data Vendors Solely for Use in this Litigation

**Chiou Report (Dkt. 233-1)**

p. 5, Exhibit List at 1
p. 17 n. 30
p. 18 n. 38
p. 23 n. 58
p. 37 n. 138
¶ 70
p. 40 n. 151
p. 41 Exhibit 1
¶ 71
¶72
p. 45 n. 170
¶ 74
p. 46 n. 177
p. 46 n. 178
p. 58 n. 233
¶ 103
p. 61 n. 247
¶ 112
¶ 114
p. 65 Exhibit 2
p. 65 n. 267
¶ 138
¶ 139
p. 73 n. 300
p. 74 Exhibit 4
¶ 262
p. 128 Exhibit 17
¶ 269
p. 131 Exhibit 18
p. 232 Heading
p. 234 Heading
¶ 433
¶ 434
¶ 436
p. 232 n. 752
p. 233 n. 757
p. 233 n. 758

**Chiou Report (Dkt. 233-1) (cont.)**

¶ 438
¶ 439
p. 234 n. 760
p. 234 n. 761
p. 234 n. 762
¶ 440
¶ 441
p. 234 n. 763
p. 234 n. 764
p. 234 n. 765
p. 234 n. 766
p. 234 n. 767
p. 234 n. 768
Page 236 heading
¶ 442
¶ 443
¶ 434
p. 236 n. 769
p. 236 n. 771
p. 236 n. 772
p. 236 n. 773
p. 236 n. 774
¶ 444
¶ 445
¶ 446
p. 237 n. 775
p. 237 n. 776
p. 237 n. 777
p. 237 n. 778
p. 238 n. 779
Appendix C 1-5, 32

**Langer Report (Dkt. 233-2)**

p. 20 n. 21
Page 138 under "Industry Reports"

**Schwartz Report (Dkt. 182-1)**

¶ 103

# Appendix I
## Requested Sealing/Redactions of Calculations of
## Alleged Market Share and Size

**Ex. 14 to BMD decl. (Dkt. 233-14)**
93:17
94:4, 9
99:22, 23
100:5, 19, 20, 21, 24, 25
101:2-3, 8, 11, 12, 16, 17, 25
102:2, 3, 6, 7, 13
106:23
108:6, 9, 10
109:8, 9, 10, 15, 16

**Daubert motion (Dkt. 232)**
10:15
11:19, 21, 23
12:8

**Corrected Opp. To Class Cert. (Dkt. 242)**
7:10

**Chiou Report (Dkt. 233-1)**
p. 9 n. 13
¶ 18a
¶ 82
p. 52 n. 210
¶ 83b
¶ 134
p. 72 n. 296
¶ 139
¶ 141

**Langer Report (Dkt. 233-2)**
¶ 48
p. 36 n. 82
¶ 79
p. 39 n. 94
p. 43 n. 105
p. 45 n. 110
¶ 103
p. 50 n. 121
p. 59 n. 148
¶ 121
p. 60 n. 149
¶ 133
p. 69 n. 187
p. 99 n. 261
p. 99 n. 263
¶ 184
p. 107 n. 288
p. 114 n. 314

**Schwartz Report (Dkt. 182-1)**
¶ 130
p. 81 n. 376
¶ 132
¶ 273
¶ 275
¶ 361
p. 201 n. 843
¶ 376
p. 206 n. 855
p. A16 ¶ A51
p. A17 ¶ A53
p. A17 n. 15
Attachment E-1
Attachment G-3