# EXHIBIT 24

# REDACTED

```
 1            UNITED STATES DISTRICT COURT
      FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE
 2

 3    IN RE VALVE ANTITRUST          ) Case No.

 4    LITIGATION                     ) 2:21-cv-00563-JCC

 5                                   )

 6

 7          VIDEO-RECORDED 30(B)(6) DEPOSITION

 8                UPON ORAL EXAMINATION OF

 9                  MICROSOFT CORPORATION

10                    AARON GREENBERG

11                       VIA ZOOM

12       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

13

14                       9:05 A.M.

15                   JANUARY 30, 2024

16       WITNESS LOCATED IN:  SEATTLE, WASHINGTON

17

18

19

20

21

22

23

24    REPORTED BY:  BETSY E. DECATER, RPR, CCR 3109

25
```

```
 1                    A P P E A R A N C E S

 2

 3
      FOR THE PLAINTIFFS:
 4        ANKUR KAPOOR
          NOAH BRECKER-REDD
 5        Constantine Cannon, LLP
          335 Madison Avenue
 6        9th Floor
          New York, New York 10017
 7        (212) 350-2748
          akapoor@constantinecannon.com
 8        nbrecker-redd@constantinecannon.com

 9

10    FOR THE DEFENDANTS:
          BLAKE MARKS-DIAS
11        Corr Cronin, LLP
          1015 2nd Avenue
12        Floor 10
          Seattle, Washington 98104
13        (206) 625-8600
          bmarksdias@corrcronin.com

14

15

16     FOR MICROSOFT CORPORATION/WITNESS:
          DAVID P. CHIAPPETTA
17        Perkins Coie
          505 Howard Street
18        Suite 1000
          San Francisco, California 94105
19        (415) 344-7056
          dchiappetta@perkinscoie.com

20

21    ALSO PRESENT:    EDWARD BURKE, Videographer
                      PEGGY OLDENBURG - CONCIERGE
22

23

24

25
```

```
 1                        I N D E X

 2

 3     EXAMINATION BY:                          PAGE(S)

 4        MR. KAPOOR                            5, 41
          MR. MARKS-DIAS                        32, 44
 5

 6

 7

 8     EXHIBITS FOR IDENTIFICATION                 PAGE

 9
       Exhibit 435 Subpoena to Testify              9
10
       Exhibit 436 E-Mail Chain
11             (MSFT VALVE 1-15)                   13

12     Exhibit 437 E-Mail Chain
               (MSFT VALVE 555-557)                33
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    Q.  "But the Steam publishing agreement historically
2    has required product and price parity."  Did Mr.
3    Sheffer -- I'm sorry, did Mr. Schwab tell you what he
4    meant by that statement?
5    A.  Yes.  I asked Mr. Schwab about this statement,
6    and he said that the way that he wrote this was not
7    accurate and that he was speaking specifically to
8    product parity but not price parity and he was mistaken,
9    that the policy was Steam does not require price parity.
10   Q.  Did Mr. Schwab tell you that -- that Valve
11   requires price parity as well but it's not in the Steam
12   distribution agreement, the publishing agreement?
13   A.  No, he did not.
14   Q.  Then he continues, "When I looked at pre Age:DE a
15   few years ago," what -- what is -- I'm sorry.  He says,
16   "When I looked at it pre Age:DE a few years ago," what
17   is Age:DE?
18   A.  That's Age of Empire so Definitive Edition.  So I
19   believe he's referring to the time before we launched
20   that game.
21   Q.  He says, "Before launching that game, I found
22   that we could sell at any price we wanted before Steam
23   release, but once we released on Steam we needed to give
24   Steam price parity to our other digital channels."
25        When you talked to him to prepare for this

1 deposition, what, if anything, did he say about that
2 statement?
3    A. He told me that this was something that he wrote
4 in 2019 trying to recall from memory something from 2015
5 and that he got it wrong. He said that it actually
6 wasn't in the agreement, implied or unimplied, counter
7 to what's in this e-mail.
8    Q. Did he recall whether or not the -- the price of
9 Age of Empire's Definitive Edition had in fact been the
10 same on the Microsoft Store as it was on Steam?
11    A. We didn't talk about the pricing for that
12 specific product.
13    Q. What else do you recall about your discussion
14 with Mr. Schwab concerning price parity between Steam
15 and the Microsoft Store?
16    A. Just it was consistent with other people that I
17 spoke to that while there's an expectation for product
18 parity our agreement and other conversations we've had
19 with Valve has never implied any requirements around
20 price parity.
21    Q. You can put the document aside. Thank you.
22         MR. KAPOOR: Noah, if you could put up, I
23 guess it's Tab 4, please, which for the record is
24 another e-mail chain, bears the Bates stamp
25 MSFT VALVE 000000555 through 557.

1   can -- that people can share comments and notes about
2   particular games.  If we have events or new content
3   coming for an existing franchise, there's ways to do
4   that.  And then prior to a game releasing, people can
5   like follow or wish-list a game in advance of it coming
6   out, which is helpful for us to know what the interest
7   is of a game before it releases.
8   ████████████████████████████████████████
9   ████████████████████████████████████████
10  ████████████████████
11      ████████████████  ████████  ██████
12          ████████  ████
13   █  ████████████████  ██████████████
14   ████  ██████████████████████
15   █  ████████████████████
16   █  ██
17      ████████████  ████████
18   █  ██  ██████████████████████████████
19  ████████████████████████████████████████
20  ██████████████████████████████
21      Q.  (BY MR. MARKS-DIAS)  Epic, as I understand, has
22  exclusivity requirements?
23              MR. CHIAPPETTA:  Objection; lack of
24  foundation.
25      Q.  (BY MR. MARKS-DIAS)  If you know.

```
 1   to Steam -- to Valve under its current Steam
 2   Distribution Agreement?
 3           MR. CHIAPPETTA:  Objection; vague.  Counsel,
 4   you're talking about first-party perspective?
 5           MR. KAPOOR:  Yes.
 6      A.   I don't work on the commission rates or our
 7   master list with Steam, but my understanding is that
 8   it's 30 percent.
 9           MR. KAPOOR:  Those are all the questions I
10   think I have.
11                    FURTHER EXAMINATION
12   BY MR. MARKS-DIAS:
13      Q.   Mr. Greenberg, when you were talking about
14   pricing games consistently across all platforms and you
15   said one -- one of the reasons or the main reason you do
16   that is that's because that's what customers want; is
17   that right?
18      A.   That's correct.
19      Q.   Are you familiar with the concept of buyer
20   regret, where a customer buys a game in one place and
21   they see that it was a lot cheaper somewhere else,
22   they're upset about that?
23      A.   Absolutely, yes.
24      Q.   And is that kind of what you're driving at in
25   terms of what customers want with games generally priced
```

1  consistently across platforms?
2           MR. KAPOOR:  Objection to form; foundation.
3      A.  Yeah.  We're very intentional about trying to
4  have the right price for the product and to meet
5  customers' expectations and ultimately then we want our
6  pricing to be consistent and give customers choice
7  whether they buy the game, subscribe to Game Pass, buy
8  it on console, buy it on PC, buy it at our store, buy it
9  on Steam or somewhere else.  We try to give customers
10 choice.  But when they do buy a game from us, we want
11 that price to always be consistent.  Because if we
12 don't, we'll have quite a bit of backlash.  And gamers
13 are quite vocal on social media and what have you.  So,
14 you know, it just would not be smart for us because we
15 think about customer sentiment in our business.
16     Q.  Okay.  Thank you.
17          MR. KAPOOR:  Nothing further.
18          MR. CHIAPPETTA:  Before we go off the
19 record -- are we still on?
20          VIDEOGRAPHER:  Yes.
21          MR. CHIAPPETTA:  I just want to designate
22 the transcript of the deposition in its entirety
23 including all exhibits as highly confidential outside
24 counsel only under the protective order in this case.
25 I'm sorry, attorneys' eyes only under the protective