# Plaintiffs' Opposition to Defendant Valve Corporation's Motion to Exclude the Testimony of Steven Schwartz, PhD

# (Dkt. No. 317)

# REDACTED

1

2
THE HONORABLE JOHN C. COUGHENOUR

3

4

5

6

7

8

9
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12
IN RE VALVE ANTITRUST LITIGATION

Case No. 2:21-cv-00563-JCC

13
**PLAINTIFFS' OPPOSITION TO
DEFENDANT VALVE
CORPORATION'S MOTION TO
EXCLUDE TESTIMONY OF STEVEN
SCHWARTZ, PH.D.**

14

15

16
**ORAL ARGUMENT REQUESTED**

17
**NOTE ON MOTION CALENDAR:
AUGUST 12, 2024**

18

19
**FILED UNDER SEAL**

20

21

22

23

24

25

26

27

Plfs' Resp. to Valve Mot. to Excl. Schwartz
Case No. 2:21-cv-00563-JCC

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD ......................................................................................... 2

ARGUMENT ...................................................................................................... 3

    A.    Schwartz Applies the Economics of Two-Sided Platforms ................... 3

    B.    Schwartz's PMFN Opinion Is Reliable ................................................. 4

    C.    Schwartz's Damages-Related Opinions Are Reliable ........................... 8

        1.    Schwartz's But-For Market Share Opinions Are Reliable ........ 9

        2.    Schwartz's Opinion On Valve's Supracompetitive Revenue Share Is Reliable ......................................................................... 11

        3.    Schwartz's "Pass-Through" Opinions Are Reliable .............. 12

CONCLUSION ................................................................................................. 13

PLFS' RESP. TO VALVE MOT. TO EXCL. SCHWARTZ
CASE NO. 2:21-CV-00563-JCC

i

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### <u>Cases</u>

4

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,

5

   966 F.2d 443 (9th Cir. 1992)............................................................8

6

*Bigelow v. RKO Radio Pictures*,

   327 U.S. 251 (1946)..............................................................................9

7

*Bosley v. DePuy Synthes Sales Inc.*,

8

   2023 WL 6038010 (W.D. Wash. Sept. 15, 2023)............................4

9

*Cabrera v. Cordis Corp.*,

10

   134 F.3d 1418 (9th Cir. 1998)........................................................10

11

*City of Philadelphia v. Bank of Am. Corp.*,

   2023 WL 6160534 (S.D.N.Y. Sept. 21, 2023)...............................7

12

*City of Pomona v. SQM N. Am. Corp.*,

13

   750 F.3d 1036 (9th Cir. 2014)..........................................................2

14

*Clausen v. M/V NEW CARISSA*,

15

   339 F.3d 1049 (9th Cir. 2003)..........................................................8

16

*Comcast Corp. v. Behrend*,

   569 U.S. 27 (2013)..............................................................................8

17

*Daubert v. Merrell Dow Pharm., Inc.*,

18

   509 U.S. 579 (1993)................................................................. passim

19

*Diviero v. Uniroyal Goodrich Tire Co.*,

20

   114 F.3d 851 (9th Cir. 1997)............................................................8

21

*Elosu v. Middlefork Ranch Inc.*,

   26 F.4th 1017 (9th Cir. 2022)..........................................................2

22

*Epic Games, Inc. v. Apple, Inc.*,

23

   67 F.4th 946 (9th Cir. 2023)......................................................11-12

24

*Fleischman v. Albany Med. Ctr.*,

   728 F. Supp. 2d 130 (N.D.N.Y. 2010)........................................10

25

*In re Apple iPod iTunes Antitrust Litig.*,

26

   2014 WL 4809288 (N.D. Cal. Sept. 26, 2014).....................2, 9, 10

27

PLFS' RESP. TO VALVE MOT. TO EXCL. SCHWARTZ
CASE NO. 2:21-cv-00563-JCC

ii

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

*In re Broiler Chicken Grower Antitrust Litig. (No. II)*,
2024 WL 2117359 (E.D. Okla. May 8, 2024)........................................................ 12

*In re Cathode Ray Tube Antitrust Litig.*,
2023 WL 5963475 (N.D. Cal. Sept. 12, 2023)........................................................ 6

*In re Coll. Athlete NIL Litig.*,
2023 WL 8372788 (N.D. Cal. Nov. 3, 2023)........................................................ 8

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
581 F. Supp. 3d 1029 (N.D. Ill. 2022)........................................................ 10

*In re High-Tech Emp. Antitrust Litig.*,
2014 WL 1351040 (N.D. Cal. Apr. 4, 2014)........................................................ 2, 7

*In re Lamictal Direct Purchaser Antitrust Litig.*,
957 F.3d 184 (3d Cir. 2020)........................................................ 13

*In re Live Concert Antitrust Litig.*,
247 F.R.D. 98 (C.D. Cal. 2007)........................................................ 9

*In re MyFord Touch Consumer Litig.*,
291 F. Supp. 3d 936 (N.D. Cal. 2018)........................................................ 8

*In re NCAA I-A Walk-On Football Players Litig.*,
2006 WL 1207915 (W.D. Wash. May 3, 2006)........................................................ 4, 9

*In re Takata Airbag Prod. Liab. Litig.*,
2022 WL 4594123 (S.D. Fla. July 19, 2022)........................................................ 12

*Innovative Sols. Int'l, Inc. v. Houlihan Trading Co.*,
2023 WL 8019459 (W.D. Wash. Nov. 20, 2023)........................................................ 7

*Jack v. Borg-Warner Morse TEC LLC*,
2018 WL 3819027 (W.D. Wash. Aug. 10, 2018)........................................................ 2

*Ohio v. American Express Corporation ("Amex")*,
585 U.S. 529 (2018)........................................................ 1, 3

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022)........................................................ 2, 9, 13

*PLS.Com, LLC v. Nat'l Assoc. of Realtors*,
32 F.4th 824 (9th Cir. 2022)........................................................ 4

*Siqueiros v. General Motors LLC*,
2022 WL 74182 (N.D. Cal. Jan. 7, 2022)........................................................ 5

PLFS' RESP. TO VALVE MOT. TO EXCL. SCHWARTZ
CASE NO. 2:21-CV-00563-JCC

iii

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

*Spearman Corp. Marysville Div. v. Boeing Co.*,
   2022 WL 6751797 (W.D. Wash. Oct. 11, 2022)....................................................................7

*Stilwell v. Smith & Nephew, Inc.*,
   482 F.3d 1187 (9th Cir. 2007).............................................................................................7

*Sumotext Corp. v. Zoove, Inc.*,
   2020 WL 533006 (N.D. Cal. Feb. 3, 2020).........................................................................7

*United States v. Finley*,
   301 F.3d 1000 (9th Cir. 2002).............................................................................................8

*US Airways, Inc. v. Sabre Holdings Corp.*,
   938 F.3d 43 (2d Cir. 2019)................................................................................................11

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999).............................................................................................8

**Rules**

Fed. R. Evid. 702........................................................................................................2, 4, 6, 7, 8

PLFS' RESP. TO VALVE MOT. TO EXCL. SCHWARTZ
CASE NO. 2:21-CV-00563-JCC

iv

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

**INTRODUCTION**

Valve dominates the PC game distribution market, extracting a 30% commission from most games sold on its Steam platform, making Valve one of the most profitable companies in the world. Economics predicts that in a competitive market rivals would enter such a profitable market and break Valve's monopoly by undercutting Valve's commissions. That hasn't happened. Valve has maintained its dominance through its Platform Most Favored Nations ("PMFN") Policy, which prevents game publishers from offering lower prices or superior content on other platforms. As a result, Valve blocks competing platforms from utilizing their most potent competitive weapons— lower prices and differentiated game content—allowing Valve to maintain supracompetitive commissions. Valve's conduct harms all game publishers in the class, who must pay inflated commissions to Valve, and consumers, who pay higher game prices.

To demonstrate the economics to the jury and prove class-wide impact and damages, Plaintiffs will offer (among other evidence) the testimony of Dr. Steven Schwartz. *See* Ex. 91 (Mar. 21, 2024 Corrected Version of the Feb. 8, 2024 Schwartz Rpt.) (hereinafter "Schwartz Rpt.").[1] Valve does not challenge Dr. Schwartz's qualifications. *See* Dkt. 232 ("Mot."). Nor could it. Schwartz Rpt., A-1. Instead, Valve challenges limited aspects of his analysis. Those challenges should be rejected because Schwartz offers relevant, reliable testimony that easily satisfies the *Daubert* standard.

First, Valve accuses Schwartz of treating Steam as a one-sided platform, contrary to principles set forth in *Ohio v. American Express Corporation*, 585 U.S. 529 (2018) ("*Amex*"). But Schwartz expressly defined Steam as a two-sided platform and analyzed it as such.

Second, Valve claims that Schwartz lacks an adequate foundation to opine that Valve's PMFN Policy causes anticompetitive effects. But Valve's argument ignores a mountain of evidence supporting Schwartz's analysis of this policy.

---

[1]  "Ex. __" refers to the exhibits attached to the July 12, 2024 Declaration of Alicia Cobb in Further Support of Plaintiffs' Motion for Class Certification. Exhibits to the February 8, 2024 Cobb Declaration and May 17, 2024 Marks-Dias Declaration are identified by their docket numbers.

PLFS' RESP. TO VALVE MOT. TO EXCL. SCHWARTZ
CASE NO. 2:21-CV-00563-JCC

1

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Third, Valve raises three objections to Schwartz's damages modeling, related to but-for market share, supracompetitive pricing, and damages allocation. But Schwartz's approach easily satisfies Plaintiffs' burden at this stage to offer a just and reasonable method of calculating aggregate class-wide damages.

Valve's criticisms represent a mere disagreement among experts, but "it is not the court's role to 'determine which of several competing scientific theories has the best provenance.'" *Jack v. Borg-Warner Morse TEC LLC*, 2018 WL 3819027, at *14 (W.D. Wash. Aug. 10, 2018); *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022) ("Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage.").[2]

The Court should admit Schwartz's testimony.

## **LEGAL STANDARD**

To satisfy *Daubert*, expert testimony must be relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Generally, challenges to the data, documents, or topics analyzed by an expert go to weight, not admissibility. *In re Apple iPod iTunes Antitrust Litig.*, 2014 WL 4809288, at *5 (N.D. Cal. Sept. 26, 2014).

"Where two credible experts disagree, it is the job of the fact finder, not the trial court, to determine which source is more credible and reliable." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). Even if Valve's critiques could persuade a jury, that warrants neither exclusion, *In re High-Tech Emp. Antitrust Litig.*, 2014 WL 1351040, at *14 (N.D. Cal. Apr. 4, 2014), nor denial of class certification, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 676 (9th Cir. 2022).

---

[2]  Unless otherwise stated, internal citations and quotation marks are omitted.

PLFS' RESP. TO VALVE MOT. TO EXCL. SCHWARTZ
CASE NO. 2:21-CV-00563-JCC

2

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

## ARGUMENT

**A.    Schwartz Applies the Economics of Two-Sided Platforms**

Valve claims that Schwartz engaged in a "one-sided approach" to his analysis.  Mot. 5-6.  He did not.  Schwartz deploys principles of two-sided platform economics throughout his report.

Schwartz opines that "Steam is a two-sided platform[.]" Schwartz Rpt. ¶57.  In his class-wide impact opinions, Schwartz bases his Platform Competition Model on seminal research by Andre Boik and Kenneth Corts on two-sided platforms.  *Id*. ¶246.  In his yardstick analysis, Schwartz considers two-sided digital platforms, such as eBay and Amazon.  *Id*. ¶288 & Table 4.  His empirical approach considers Valve's response to the entry of the Epic Games Store, a two-sided platform, and explicitly discusses the impact of network effects.  *Id*. ¶¶302-313.  As to damages, Schwartz relies on the seminal paper by Jean-Charles Rochet and Jean Tirole titled "Platform Competition in Two-Sided Markets."  *Id*. ¶¶334-337.  This article is the basis of the Supreme Court's opinion in *Amex*.  *See* 585 U.S. at 535-537.

Ignoring all of that, Valve focuses on a single aspect of Schwartz's damages approach: his opinion that Valve would continue to use an agency pricing model in the but-for world, as it does in the real world.  Mot. 6 (citing Schwartz Rpt. ¶¶335-338, 344).[3]  Agency pricing means that Steam is "pricing to one side of the market as a share of retail price," which "allows publishers to set prices for their products[.]" Schwartz Rpt. ¶340.  That is how Valve currently operates Steam; there is no reason to expect radical changes to Valve's business model in the but-for world.  *Id*.

Valve claims Schwartz's rationale for using agency pricing is "*ipse dixit*."  Mot. 6.  But his opinions are supported by Valve's actual pricing practices and detailed economic analysis with citations to the relevant economic literature.  Schwartz Rpt. ¶¶338-340.  While Valve's expert may disagree that the economic principles underlying agency pricing apply, Dkt. 233-2 ("Langer Rpt.")

---

[3]    Valve also cites to select other paragraphs in Schwartz's Report.  Mot. 5.  Most likewise implicate or refer to Schwartz's use of an agency pricing assumption.  Schwartz Rpt. ¶246 ("one-sided, per-transaction fee"); ¶¶332-34 (Steam's "pricing structure . . ."); ¶¶339-40 ("Steam has opted for an agency model").  Valve also cites ¶379, where Schwartz discusses how he allocates damages between the two sides of the platform (clearly not a "one-sided" analysis).

1    ¶¶123-34, such disagreement is a classic "battle of the experts" that does not warrant exclusion

2    under *Daubert. In re NCAA I-A Walk-On Football Players Litig.*, 2006 WL 1207915, at *11 (W.D.

3    Wash. May 3, 2006) ("[T]his Court will not engage in a battle of the experts").

4    Valve also claims that Schwartz's approach does not account for network effects. Mot. 5-6.

5    Valve is wrong again. Network effects occur when the value of a platform increases because the

6    number of users increases. Schwartz Rpt. ¶¶ 30, 374. Network effects thus drive demand for

7    platforms. Ex. 85 (Schwartz Reply Report dated July 12, 2024, hereinafter "Schwartz Reply")

8    ¶¶146-52. Because Schwartz's Platform Competition Model accounts for platform demand, it

9    necessarily accounts for network effects. *Id.*

10   Schwartz's damages approach likewise accounts for network effects, *i.e.*, demand for

11   Steam, in the form of Steam's higher but-for market share. Schwartz Rpt. ¶375. Schwartz models

12   Valve as the market leader in the but-for world, with *roughly* ████ the but-for market share of

13   Valve's most successful rival. *Id.*

14   While Valve may be concerned that its "profits would plunge" in the but-for world, Mot. 6,

15   that is what *should* happen when a monopolist faces effective competition; suggesting otherwise

16   is no less than "a frontal assault on the basic policy of the Sherman Act." *PLS.Com, LLC v. Nat'l*

17   *Assoc. of Realtors*, 32 F.4th 824, 836 (9th Cir. 2022). And even if Valve's profits decreased in the

18   but-for world, Schwartz explains that Valve would be incentivized to add even more "features and

19   membership benefits," (Mot. 5) due to enhanced competition. Schwartz Reply ¶¶214-17. Valve's

20   economists do not show otherwise. Ex. 88 (Langer Tr.) at 114.

21   **B.    Schwartz's PMFN Opinion Is Reliable**

22   Valve claims Schwartz's opinion that Valve has a PMFN Policy is "unreliable and

23   inadmissible." Mot. 10. Valve mounts two related challenges, under Rule 702(b) and a

24   combination of Rules 702(a) and (c).

25   *First*, Valve claims Schwartz's PMFN opinion is not "based on sufficient facts or data"

26   under Rule 702(b). Mot. 7. Rule 702, however, "is not intended to authorize a trial court to

27   exclude an expert's testimony on the ground that the court believes one version of the facts and

not the other." *Bosley v. DePuy Synthes Sales Inc.*, 2023 WL 6038010, at *4 (W.D. Wash. Sept. 15, 2023); *see also Siqueiros v. General Motors LLC*, 2022 WL 74182, at *5 (N.D. Cal. Jan. 7, 2022) (exclusion requires that the "factual assumptions are indisputably wrong"). Valve invites this Court to do just that.

Across 26 pages, Schwartz explains what a PMFN is, Schwartz Rpt. ¶¶150-153, reviews documents and testimony from Valve and third parties reflecting that Valve's policies are consistent with a PMFN, *id.* ¶¶154-167, and describes how Valve enforces its PMFN Policy, *id.* ¶¶173-192. Valve claims some publishers were not aware of such a policy. Mot. 8. But whether *all* publishers had knowledge of Valve's PMFN Policy is irrelevant. Schwartz has explained that there is market-wide impact because Valve made *enough* publishers aware of the Policy, and even selective enforcement of the Policy suppresses competition from other platforms, allowing Valve to maintain inflated commissions. All class members paid inflated commissions as a result. Schwartz Reply ¶¶18-21; Class Cert. Reply at 4-7.

Even so, Valve's counternarrative withers under scrutiny. For example, Valve cites Microsoft's 30(b)(6) deposition testimony for its assertion that some publishers "never heard of Valve imposing any restriction on game prices on others stores…" Mot. 8. But that deponent was repeating hearsay from another Microsoft employee, Sean Sheffer, whose contemporaneous documents say the opposite. On October 6, 2020, Microsoft employee William Chen asked Sheffer: "Quick question for you, does Steam require price parity?" Dkt. 182-27. Sheffer "works directly with Valve and [Microsoft's] studio teams on releasing [Microsoft's] games on Steam," Ex. 90 (Microsoft 30(b)(6) Dep. Tr.) at 11, and thus would be expected to know Valve's actual policies. Sheffer's response speaks for itself:

PLFS' RESP. TO VALVE MOT. TO EXCL. SCHWARTZ
CASE NO. 2:21-cv-00563-JCC

5

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

> **From:** Sean Sheffer <sheffers@microsoft.com>
> **Sent:** Tuesday, October 6, 2020 1:58 PM
> **To:** Matt Piscitello <mattpis@microsoft.com>; William Chen <williamc@microsoft.com>
> **Cc:** Chris Bishop (XBOX) <Chris.Bishop@microsoft.com>
> **Subject:** RE: Steam price parity requirement?
>
> Hi All,
>
> Yes – they absolutely do. ████████████████████████████████████████
> ██████████████████████████████████████████████████████████████
> ████████████████████████
>
> Its not formally listed in documentation in Steamworks, but always addressed in-person ███████████
> ████████████████████████████████

Dkt. 182-27 (highlights added). A jury could readily credit Microsoft's contemporaneous internal correspondence, written by the individual responsible for liaising with Valve, over corporate deposition testimony provided years later by someone else.

Valve also points to a quantitative study done by Valve's economic expert, Dr. Chiou, purporting to find that 31% of games were not in perfect pricing parity, implying Valve must, therefore, not have a PMFN Policy. Mot. 9. Chiou's study is deeply flawed for several reasons, among them that she studies only 20% of products on Steam. Schwartz Reply ¶¶22-54. Nonetheless, even accepting it as valid, Valve errs when it argues Chiou's analysis undermines Schwartz's PMFN Policy analysis. *Id.* As Schwartz explains, a rational monopolist enforcing a PMFN Policy would not expect to achieve 100% compliance. *Id.* ¶¶18-21. What matters is if *enough* comply, which Valve admits they do. Mot. 9 ("many publishers sell games for the same price off Steam"). The fact that Chiou finds some non-parity in the market is not surprising, nor does it undermine Schwartz's opinions. Schwartz Reply ¶¶18-21. Chiou may disagree with Schwartz, but the jury should decide whose opinions to credit. *In re Cathode Ray Tube Antitrust Litig.*, 2023 WL 5963475, at *2 (N.D. Cal. Sept. 12, 2023) ("The parties are entitled to present their competing models to the factfinder, who can decide which expert testimony, or portions thereof, to credit.").

Overall, Valve's 702(b) argument boils down to "disagreement about the underlying set of facts for which exclusion is precluded"—*e.g.*, whether Valve has a PMFN Policy or not—and

therefore should be rejected. *Innovative Sols. Int'l, Inc. v. Houlihan Trading Co.*, 2023 WL 8019459, at *2 (W.D. Wash. Nov. 20, 2023) (J. Coughenour).

*Second*, Valve claims that the reasonable inferences Schwartz draws from the available evidentiary record in furtherance of his economic analyses are not the "product of reliable principles and methods" under Rule 702(c) and that Schwartz lacks "specialized knowledge" under Rule 702(a). *See* Mot. 7-9.

Valve again misses the mark. Schwartz's qualitative assessment of the record to draw economic conclusions is well-accepted and proper. *See, e.g., Sumotext Corp. v. Zoove, Inc.*, 2020 WL 533006, at *11 (N.D. Cal. Feb. 3, 2020) ("That [the expert's] opinions have a foundation in qualitative data…is enough to establish their admissibility"); *High-Tech*, 2014 WL 1351040, at *5, 24 (admitting testimony from economist who "relied on documentary evidence"); *City of Philadelphia v. Bank of Am. Corp.*, 2023 WL 6160534, at *8 (S.D.N.Y. Sept. 21, 2023) (rejecting defendants' argument on grounds that it was "merely a disagreement with [the economist's] interpretation of the record").

Indeed, Valve's own experts draw economic inferences from the record. Specifically, Chiou argues that publishers voluntarily maintain price parity for "business reasons," and not due to the PMFN. Mot. 9-10. But while Chiou's report cites only a few snippets of deposition testimony in a single paragraph for her alternative theory, Dkt. 233-1, ¶335, Schwartz offers 45 pages of economic analysis discussing why pricing parity occurs in this market, Schwartz Rpt. ¶¶241-331. Regardless of the merits, these competing economic inferences highlight that Valve's disagreement is not with Schwartz's methodology or foundation, but rather with his conclusion. That is no reason to exclude his testimony. *Spearman Corp. Marysville Div. v. Boeing Co.*, 2022 WL 6751797, at *2 (W.D. Wash. Oct. 11, 2022) ("The test for reliability 'is not the correctness of the expert's conclusions but the soundness of his methodology.'") (quoting *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007)).

Moreover, because Schwartz's opinions are the product of reliable economic methods, they are helpful to the jury under Rule 702(a) as providing "information beyond the common

PLFS' RESP. TO VALVE MOT. TO EXCL. SCHWARTZ
CASE NO. 2:21-CV-00563-JCC

7

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

knowledge of the trier of fact." *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002). Valve ignores that Schwartz is *required* to support his opinions with "facts and data" from the record and elsewhere, Fed. R. Evid. 702(b), and Rule 702 is "broad enough to allow an expert to rely [even] on hypothetical facts that are supported by the evidence." Fed. R. Evid. 702, Adv. Comm. Notes (2000). Accordingly, "[w]hen facts are in dispute, experts sometimes reach different conclusions" and a trial court is not "authorize[d]…to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." *Id.* Valve asks the Court to ignore this explicit guidance, rather than recognize "[i]t traditionally falls upon cross-examination to negate the facts or factual assumptions underlying an expert's opinion." *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018).

Valve's cases (Mot. 8-9) do not undermine these points. *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049 (9th Cir. 2003) merely confirms that experts must have *some* factual basis for their opinion; it also confirms that basis need not be *perfect*. *Id.* at 1059 ("[P]recise information…is not always available, or necessary…and need not invariably provide the basis for an expert's opinion on causation.") (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 264 (4th Cir. 1999)). *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851 (9th Cir. 1997), is wholly inapplicable; the expert there lacked foundational knowledge relating to his subject matter. *Id.* at 853. That is not the case with Schwartz. *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443 (9th Cir. 1992) is also inapplicable. There, the expert opined squarely on an ultimate legal conclusion— reliance in a promissory estoppel case—which is an improper opinion for an expert to offer. *Id.* at 447. Here, Schwartz opines on the economic import of the evidence—a proper opinion for an economist to offer.

**C.    Schwartz's Damages-Related Opinions Are Reliable**

Valve's attacks on Schwartz's damages analysis (Mot. §§ C-E) also fail. Antitrust damages "[c]alculations need not be exact." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013); *see also In re Coll. Athlete NIL Litig.*, 2023 WL 8372788, at *4 (N.D. Cal. Nov. 3, 2023) (stating that "damages calculations in antitrust cases are subject to a different, relaxed standard"). Instead,

8

proof of antitrust damages is sufficient "if the evidence show [sic] the extent of the damages as a matter of just and reasonable inference." *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 145 (C.D. Cal. 2007). Schwartz's damages methodology easily meets this burden. *See, e.g., Apple iPod iTunes*, 2014 WL 4809288, at *3-7 (rejecting *Daubert* challenge to antitrust damages analysis).

Valve attempts to circumvent this standard by blurring the distinction between antitrust impact and damages. *See* Mot. 14-15. But these are distinct inquiries. *In re NCAA I-A Walk-On Football Players Litig.*, 2006 WL 1207915, at *9-10 ("fact of damage" is a "separate inquir[y]" from the "amount of damages"); *see also Olean*, 31 F.4th at 665-66 (noting Sherman Act requires *both* "antitrust injury" and "[d]amages"). Schwartz has *separate* analyses in support of his class-wide impact opinions: (1) the Platform Competition Model, (2) the Yardstick Analysis, and (3) the Empirical Approach. Schwartz Rpt. ¶¶241-331. None of Valve's three critiques relate to those analyses; they instead go to Schwartz's damages approach, where Plaintiffs' burden is lightened.

### 1. Schwartz's But-For Market Share Opinions Are Reliable

Valve first argues that Schwartz's but-for market share for Valve—a variable in his damages model—is speculative and *ipse dixit*. Mot. 10-12. Not so.

Valve faults Schwartz for not estimating Valve's but-for market share with precision. But the data required for a more precise approach is not available *because of Valve's conduct*. Schwartz Rpt. ¶302. "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946). Valve cannot deprive the world of the "clean" data needed to estimate a more precise but-for world and then complain there is not enough data.

Even so, Valve's arguments wither under scrutiny. First, Schwartz's market share analysis is not "apples and oranges." Mot. 11. Schwartz approximates but-for world market shares based on real-world data of first-party sales among those entities that attempted platform entry. Schwartz Rpt. ¶¶370-76. As Schwartz observes, "[s]uccessful games can drive platform adoption and ultimately platform success." *Id.* ¶371. Indeed, that is how Valve itself launched Steam in the

2000s.  Valve's damages economist agreed when she testified, "[l]arge games can be valuable to platforms by bringing customers.  That's well established in not just the video game industry but lots of platform industr[ies] in the economics literature."  Ex. 88 (Langer Tr.) at 221.  This is a more than sufficient basis to use first-party market share as a proxy for third-party distribution market share.  *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029, 1055 (N.D. Ill. 2022) (rejecting *Daubert* challenge where expert provided "at least some factual basis for their views of the appropriate 'but for' world").

Valve's citation (Mot. 11) to *Cabrera v. Cordis Corp.*, 134 F.3d 1418 (9th Cir. 1998), is inapposite.  There, the expert offered "no explanation" of how he reached his conclusion.  *Id.* at 1422.  The same cannot be said of Schwartz.  Schwartz Rpt. ¶¶370-376.

Second, Valve criticizes Schwartz's calculation of Valve's but-for market share for being static over time.  Mot. 11.  But as Schwartz explains, absent the PMFN Policy, the market would have reached its approximate equilibrium state by the beginning of the damages period.  Schwartz Rpt. ¶334.  In any case, but-for estimates need not be this precise.  *See, e.g.*, *Apple iPod iTunes*, 2014 WL 4809288, at *6 (rejecting *Daubert* challenge to damages model attacking a "single, unchanging overcharge amount"); *Fleischman v. Albany Med. Ctr.*, 728 F. Supp. 2d 130, 147-48 (N.D.N.Y. 2010) (rejecting *Daubert* challenge claiming expert failed to allow billing rates to "vary by experience").

*Third*, Valve argues that Schwartz's model is unreliable because it is agnostic as to what any specific non-Valve distributor's market share would be in the but-for world.  Mot. 11-12. Valve offers no explanation for *why* that makes Schwartz's opinion unreliable; variance among non-Valve distributors is mathematically irrelevant to Schwartz's analysis, Ex. 87 (Schwartz Tr.) at 100-101.

*Fourth*, Valve argues that Schwartz's report "belie[s]" his own analysis because other factors contributed to Steam's success.  Mot. 12.  Not so.  As mentioned, Schwartz calculates Valve's market share as the highest among all competitors in the but-for world, with roughly ███ the market share of the next competitor.  Schwartz Rpt. ¶¶375-76.  This estimate

PLFS' RESP. TO VALVE MOT. TO EXCL. SCHWARTZ
CASE NO. 2:21-cv-00563-JCC

10

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

1   accommodates Valve's network effects, social features, discovery tools, and other features that

2   could differentiate Steam in the but-for world.  *Id.*

3        In short, Schwartz's but-for market share analysis is the product of well-applied

4   methodologies and uses the only reliable data available.

5       **2.**     **Schwartz's Opinion On Valve's Supracompetitive Revenue Share Is Reliable**

6        Valve cannot dispute that it makes over ███████ in profit per year and is among the most

7   profitable enterprises in the world on a per-employee basis. Schwartz Rpt. ¶¶143-49.  Those facts

8   practically establish supracompetitive pricing on their own.  *US Airways, Inc. v. Sabre Holdings*

9   *Corp.*, 938 F.3d 43, 61 (2d Cir. 2019) (holding testimony that Defendant's profits were "very,

10  very, very high" was evidence of supracompetitive pricing).  Indeed, Valve's gross profit margin

11  was ██████ between 2017 and 2021, Schwartz Rpt. ¶145, an economic fact which Valve attempts

12  to hide through accounting tricks, Ex. 87 (Schwartz Tr.) at 282-283.

13       Nonetheless, Valve invents a concept called "effective revenue share," arguing Schwartz's

14  testimony should be excluded because he did not average the commissions a class member paid to

15  Valve on its Steam Store transactions with what Valve assumes to be $0 commissions on the class

16  member's Steam Key transactions (which take place on other platforms, and for which, contrary

17  to Valve's assumption, class members pay commissions).  Mot. 12-13.  Valve's arguments in

18  support of its made-for-litigation "effective revenue share" are duplicated in Valve's class

19  certification opposition. Mot. 13 (citing Class Cert. Opp. at 28-29). As detailed in Plaintiffs' class

20  certification reply brief, Valve's "effective revenue share" concept fails both factually and legally.

21  Class Cert. Reply, §III.D.  In short, on the facts, Valve's "effective revenue share" does not reflect

22  any real-world payments and leads to absurd results (like publishers being worse off with lower

23  prices in the market).  And on the law, Valve's approach constitutes legally infirm netting—

24  especially as to the legal element of impact where a single overpayment suffices.  *Id.*

25       Valve also misses the mark in claiming Schwartz "focuses on Steam's headline revenue

26  share rate[.]" Mot. 12.  In fact, Schwartz analyzes Valve's effective commission of ██████, which

27  Valve admits.  *Id.* (citing Schwartz Rpt. ¶¶352, 377).  *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th

PLFS' RESP. TO VALVE MOT. TO EXCL. SCHWARTZ          **11**         QUINN EMANUEL URQUHART & SULLIVAN
CASE NO. 2:21-CV-00563-JCC                        1109 FIRST AVENUE, SUITE 210
                                                    SEATTLE, WASHINGTON 98101
                                                         TEL: (206) 905-7000

946 (9th Cir. 2023) used the term "effective revenue share" in an entirely different context, and provides no support for Valve's argument. Class Cert. Reply, §III.D.

### 3.    Schwartz's "Pass-Through" Opinions Are Reliable

Valve first claims Schwartz's pass-through analysis is "essential for proving impact and damages class-wide." Mot. 3. As detailed in Plaintiffs' class certification reply, antitrust impact and damages are separate inquiries, and as to impact, *no analysis of pass-through is required*. Class Cert. Reply, §III.G. That is because even when publishers pass-through *some* of the overcharge to consumers, they still pay the remainder. Schwartz Reply ¶¶230-58. Wolfire is no different. It testified clearly that it was injured by Valve's conduct. Nor did Wolfire claim it would always pass on 100% of savings; it merely stated it wanted to conduct "pricing experiments," to see which platforms consumers actually value, and for what reason. Dkt. 233-20 at 265-266. Yet even in the extreme scenario of passing through 100% of the overcharge, which is unlikely, the publisher is *still* injured due to making fewer sales. Schwartz Reply ¶¶230-58.

Turning to damages, Valve claims that Schwartz's pass-through analysis is unreliable. Mot. 13-15. But Schwartz's analysis deploys the well-accepted economic tool of natural experiments. *See, e.g.*, *In re Broiler Chicken Grower Antitrust Litig. (No. II)*, 2024 WL 2117359, at *18, 20 (E.D. Okla. May 8, 2024) (rejecting *Daubert* challenge to economist analyzing a "natural experiment" to demonstrate class-wide impact); *In re Takata Airbag Prod. Liab. Litig.*, 2022 WL 4594123, at *6 (S.D. Fla. July 19, 2022) (rejecting *Daubert* challenge to economist's "natural experiment" approach). Valve's own expert agreed that natural experiments can be used "to recover the impact of a change on outcomes in a market." Ex. 88 (Langer Tr.) at 190-191.

Here, Schwartz's natural experiment involved analyzing "[the] introduction of [Steam's] tiered commission system in late 2018." Schwartz Rpt. ¶392. Schwartz analyzes how publishers behave when faced with lowered commissions. Although tainted by Valve's conduct, the empirical analysis is probative of how publishers would behave in the but-for world if Valve were forced to compete. Schwartz Reply ¶¶233-51.

Valve also claims that Schwartz impermissibly averages. Mot. 14-15. On the economics, averaging is a well-accepted, reliable approach in these circumstances as a way to weed out the "noise" inherent in the data. *Id.* ¶¶235-43. And on the law, the Ninth Circuit has rejected Valve's proposed "no averaging" rule outright. *Olean*, 31 F.4th at 677 ("To the extent that the Tuna Suppliers argue that pooled regression models involve improper 'averaging assumptions'...we disagree"). And even Valve's cases would apply such a rule only when analyzing class-wide *impact*, not *damages*. *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 194-95 (3d Cir. 2020).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Valve's Motion.

PLFS' RESP. TO VALVE MOT. TO EXCL. SCHWARTZ
CASE NO. 2:21-CV-00563-JCC

13

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

DATED:       July 12, 2024                         Respectfully submitted,

*/s/ Alicia Cobb*                                   */s/ Stephanie L. Jensen*

Alicia Cobb, WSBA #48685                            Stephanie L. Jensen, WSBA #42042
QUINN EMANUEL URQUHART &                            Tyre L. Tindall, WSBA #56357
SULLIVAN, LLP                                       WILSON SONSINI GOODRICH &
1109 First Avenue, Suite 210                        ROSATI P.C.
Seattle, Washington 98101                           701 Fifth Avenue, Suite 5100
Phone (206) 905-7000                                Seattle, WA 98104-7036
Fax (206) 905-7100                                  Phone (206) 883-2500
aliciacobb@quinnemanuel.com                         Fax (866) 974-7329
                                                    sjensen@wsgr.com
                                                    ttindall@wsgr.com
Steig D. Olson (*pro hac vice*)
David LeRay (*pro hac vice*)
Nic V. Siebert (*pro hac vice*)                     Kenneth R. O'Rourke (*pro hac vice*)
Andrew Faisman (*pro hac vice*)                     Jordanne M. Steiner (*pro hac vice*)
QUINN EMANUEL URQUHART &                            WILSON SONSINI GOODRICH &
SULLIVAN, LLP                                       ROSATI, P.C.
51 Madison Avenue                                   1700 K Street, NW, Suite 500
New York, New York 10010                            Washington, DC 20006
Phone (212) 849-7231                                Phone (202) 973-8800
Fax (212) 849-7100                                  Fax (866) 974-7329
steigolson@quinnemanuel.com                         korourke@wsgr.com
davidleray@quinnemanuel.com                         jordanne.miller@wsgr.com
nicolassiebert@quinnemanuel.com
andrewfaisman@quinnemanuel.com                      W. Joseph Bruckner (*pro hac vice*)
                                                    Joseph C. Bourne (*pro hac vice*)
Adam Wolfson (*pro hac vice*)                       Laura M. Matson (*pro hac vice*)
QUINN EMANUEL URQUHART &                            LOCKRIDGE GRINDAL NAUEN P.L.L.P.
SULLIVAN, LLP                                       100 Washington Avenue S, Suite 2200
865 S. Figueroa St., 10th Floor                     Minneapolis, MN 55401
Los Angeles, California 90017                        Phone (612) 339-6900
Phone (213) 443-3285| Fax (213) 443-3100            Fax (612) 339-0981
adamwolfson@quinnemanuel.com                        wjbruckner@locklaw.com
                                                    jcbourne@locklaw.com
Ankur Kapoor (*pro hac vice*)                       lmmatson@locklaw.com
Noah Brecker-Redd *(pro hac vice)*
CONSTANTINE CANNON LLP                              Kyle Pozan (*pro hac vice*)
6 East 43rd St., 26th Floor                         LOCKRIDGE GRINDAL NAUEN P.L.L.P.
New York, NY 10017                                  1165 N. Clark Street, Suite 700
Phone (212) 350-2700                                Chicago, IL 60610
Fax (212) 350-2701                                  Phone (612) 339-6900
akapoor@constantinecannon.com                       Fax (612) 339-0981
nbrecker-redd@constantinecannon.com                 kjpozan@locklaw.com

J. Wyatt Fore (*pro hac vice*)                      *Interim Co-Lead Counsel*
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave., NW, Suite 1300N
Washington, D.C. 20004
Phone (202) 204-4527
Fax (202) 204-3501
wfore@constantinecannon.com

*Interim Co-Lead Counsel*

Kenneth J. Rubin (*pro hac vice*)
Timothy B. McGranor (*pro hac vice*)
Kara M. Mundy (*pro hac vice*)
Douglas R. Matthews (*pro hac vice*)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 43215
Phone (614) 464-6400
Fax (614) 719-4796
kjrubin@vorys.com
tbmcgranor@vorys.com
kmmundy@vorys.com
drmatthews@vorys.com

Thomas N. McCormick (*pro hac vice*)
Vorys, Sater, Seymour and Pease LLP
4675 MacArthur Court, Suite 700
Newport Beach, California 92660
Phone (949) 526-7903 | Fax (949) 383-2384
tnmccormick@vorys.com

*Executive Committee Member*

PLFS' RESP. TO VALVE MOT. TO EXCL. SCHWARTZ
CASE NO. 2:21-CV-00563-JCC

15

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

1

## **LCR 7 CERTIFICATION**

2       I certify that this memorandum contains 4,191 words, in compliance with the 4,200 word

3   limit set forth in Local Civil Rule 7(e)(2).

4

5   DATED: July 12, 2024

6

7                                           */s/ Alicia Cobb*

8                                           Alicia Cobb, WSBA #48685

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on July 12, 2024, I caused a true and correct copy of the foregoing to

3    be served on counsel for Valve via email and preliminarily filed under seal in this Court's CM/ECF

4    system.

5

6          DATED:  July 12, 2024

7                                                              */s/ Alicia Cobb*
                                                              Alicia Cobb, WSBA #48685

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000