# Valve's Reply in Support of its Motion to Exclude Testimony of Steven Schwartz, Ph.D.

# (Dkt. No. 337)

# REDACTED

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | No. 2:21-cv-00563-JCC<br><br>**VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF STEVEN SCHWARTZ, PH.D.**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**FILED UNDER SEAL** |

An expert's methodology that ignores inconvenient facts and economic reality is unreliable. *In re Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *4 (N.D. Cal. Mar. 29, 2022). In his mission to provide arguments Plaintiffs can portray as common proof under Rule 23, Schwartz ignores facts that don't fit his approach as irrelevant "noise." But this lawsuit is about whether a two-sided platform's revenue share rate on the publisher side is artificially inflated and whether publishers are deterred from pricing their games lower on competing platforms. It makes no sense to analyze Steam as one-sided, which Schwartz does, contrary to

VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF STEVEN SCHWARTZ, PH.D.
CASE NO. 2:21-cv-00563-JCC – 1

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

economic reality, or to ignore (as he also does) the Steam Keys that Valve gives publishers to sell the Steam version of their games on other platforms without paying Valve anything. And it is disqualifying for an expert to express opinions about game pricing without conducting any pricing study to see if what he asserts matches reality (it does not).

The Court's gatekeeping function requires excluding "unreliable nonsense opinions" like these. *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Schwartz's opinions cannot satisfy Rule 23 because FRE 702 bars them.

### A. Steam Keys Are An Inconvenient Fact Schwartz Ignores

Plaintiffs claim Valve uses Steam Keys to enforce a PMFN. It is nonsense to ignore Steam Keys in determining whether that alleged PMFN harmed publishers simply because those sales of the Steam versions of games aren't "transaction[s] that occurred on Steam." Ex. 14 (Schwartz Dep.) 187:17-22.

Steam Keys are a free benefit Valve provides to the seller side of its platform that allow publishers to sell the Steam versions of their games elsewhere and pay nothing to Valve. Each Steam Key sale is functionally identical to a sale on Steam. It results in a game the customer can play on Steam, with Valve providing the necessary infrastructure. And the publisher gets revenue. Taking the revenue from Steam Keys sales into account is not "legally infirm netting," Opp. 11; it is assessing the alleged anticompetitive conduct's economic impact.

The inconvenient fact Schwartz ignores to reach his desired conclusion is that Valve provides a way for publishers to get revenue from sales of Steam versions of their games outside of Steam. Determining a publisher's Steam Key revenue—and thus the impact of those sales on the publisher's effective revenue share—requires individualized inquiry.[1]

---

[1] Valve did not invent "effective revenue share." Opp. 11. Schwartz discusses "effective commission rate." Schwartz ¶¶308, 352, 361, 377, 401. He just ignores Steam Keys in calculating it.

VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO EXCLUDE TESTIMONY OF STEVEN
SCHWARTZ, PH.D.
CASE NO. 2:21-cv-00563-JCC – 2

Corr Cronin LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Take Wolfire. When the class period started, Wolfire had already been given ▓▓ Steam Keys, for free; that number rose to over ▓▓ by the end of the class period. Ex. 34 (Langer Reply) ¶4, Exhibit 1.[2] During the class period, Wolfire sold ▓▓ units on Steam— but distributed (outside of Steam) ▓▓ Steam Keys that were then redeemed on Steam for Steam versions of its games. Ex. 1 (Chiou) ¶188. That means ▓▓ customers got to play Wolfire's games on Steam, and Wolfire got revenue from every sale.[3] *Id.* But Wolfire paid revenue share to Valve for ▓▓ of those customers' games. And, because Wolfire was issued ▓▓ Steam Keys during the class period, it could have sold many more Steam Keys that have not yet been redeemed. *Id.*

Schwartz ignores **all** revenues from Steam Key sales in evaluating the impact of the alleged anticompetitive conduct. Doing so defies common sense. Plaintiffs attempt to justify this by arguing that "other platforms" charge a "commission" on Steam Key sales. Opp. 11. But Wolfire's 30(b)(6) witness testified that it paid little or no commission on some sales through Humble Bundle. Ex. 35 (Wolfire Dep.) 101:13-23. What—if anything—publishers paid to other platforms cannot be established without individual inquiry.

Determining the additional revenue publishers received from Steam Keys is critical to assessing the impact of the alleged anticompetitive conduct but cannot be done on a class-wide basis. Schwartz doesn't even have the data to make that determination for Wolfire, much less every purported class member. Ex. 1 (Chiou) ¶¶148-182. And he can't fix that problem with assumptions. *Id.* So, instead, he pretends Steam Key sales have no impact at all, because they

---

[2] "Ex. __" citations are to the Declaration of Blake Marks-Dias [Dkt. 233] or to the Marks-Dias Declaration filed with this brief.

[3] Wolfire does not have records of its Steam Key sales. Ex. 20 (Wolfire Dep.) 182:23-183:2; 184:10-185:3.

VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO EXCLUDE TESTIMONY OF STEVEN
SCHWARTZ, PH.D.
CASE NO. 2:21-cv-00563-JCC – 3

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

are inconvenient for the conclusion he wants to reach. That's not reliable expert testimony. *Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *4.

### B. Schwartz's Uniform Pass-Through Opinion Also Ignores Inconvenient Facts

Plaintiffs argue: "no analysis of pass-through is required" to assess antitrust impact (*i.e.*, whether publishers were harmed). Opp. 12. But that argument fails under circumstances **Schwartz himself** identified—pass-through rates of 100% or more (Schwartz ¶379)—and which **Schwartz's own calculations** showed for ▮ of the 124 games he examined. His calculations of no impact for ▮ games reveal—like the 18 invoices showing no injury in *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023)—"that an inquiry into the circumstances and motivations behind" each publisher's pricing decisions is necessary.[4]

The fact his own calculations show uninjured class members is inconvenient, so Schwartz retreats from those calculations and says that some of the ▮ games actually lowered their prices *before* qualifying for lower revenue share in 2018. Schwartz Reply ¶240, Attachment E-5. But that only compounds the unreliability of his median-of-124-averages methodology. It reveals that, upon individual inquiry, some of his 100%-pass-through games actually did not respond at all to the lower revenue share—the opposite of what he calculated. This underscores that Schwartz's approach does not rule out the enormous variation in pass-through; he simply calls it "noise" and ignores it. Ex. 34 (Langer Reply) ¶¶30-36.

Schwartz's new "focal point pricing" comparison, Schwartz Reply ¶¶246-251, proves nothing but the prevalence of focal point pricing. It does not show that Schwartz chose a

---

[4] Schwartz's attempt to blame "Valve's anticompetitive behavior" for his inability to properly address pass-through, by claiming that Valve's 2018 revenue share change is the "only" cost change he could use to estimate pass-through, Schwartz Reply ¶233, is absurd. His Opening Report (¶¶82-84, 208) relates numerous instances of publishers selling their games at various revenue shares.

VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO EXCLUDE TESTIMONY OF STEVEN
SCHWARTZ, PH.D.
CASE NO. 2:21-cv-00563-JCC – 4

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

representative sample. Ex. 34 (Langer Reply) ¶38. Schwartz admitted his sample "is surely not representative" and "is explicitly not a random sample." Ex. 14 (Schwartz Dep.) 227:4-12.

Schwartz's pass-through analysis is unreliable because it masks uninjured class members. *See In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 194 (3d Cir. 2020).

### C. Schwartz Impermissibly Analyzes Steam as a One-Sided Platform

In his Opening Report (¶¶332, 335-340, 344), Schwartz was unequivocal that Valve's "pricing structure" allowed him to treat Steam as a one-sided platform. Now, in response to Valve's *Daubert* motion, and Supreme Court precedent requiring that two-sided transaction platforms be analyzed to include both sides, *Ohio v. American Express Co.*, 585 U.S. 529 (2018) ("*Amex*"), he backtracks and claims he analyzed Steam as two-sided all along. Opp. 1, 3-4; Schwartz Reply ¶¶146-152. Not so.

Schwartz's sole focus on the revenue share Valve charges publishers in both his impact and damages opinions improperly treats Steam as one-sided. Schwartz insists he can do so because "Steam does not charge consumers." *Id.* ¶201. But Steam *does* charge a "Steam Transaction Fee" to customers who make virtual item transactions on the Steam Community Market. Ex. 1 (Chiou) ¶228; Ex. 34 (Langer Reply) ¶7. That fee "is used to … cover the cost of development of this and future Steam economy features." https://help.steam-powered.com/en/faqs/view/61F0-72B7-9A18-C70B#steamfee. *Id.* ¶17 n.36. Schwartz ignores that Steam imposes charges on both sides of the platform because that fact is inconvenient to his desired result.

Valve is not simply arguing about "an agency pricing model." Opp. 3. It is what Schwartz does not do—consider charges and benefits on both sides of the platform—that

VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO EXCLUDE TESTIMONY OF STEVEN
SCHWARTZ, PH.D.
CASE NO. 2:21-cv-00563-JCC – 5

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

reinforces that he improperly treats Steam as one-sided. Ex. 34 (Langer Reply) ¶¶15-24.[5] As in *Amex*, Schwartz "wrongly focuses on only one side" of the two-sided platform. 585 U.S. at 547.

### D. Schwartz's Apples-to-Oranges Market Share Methodology Has No Economic Basis

Schwartz uses relative shares of eight publishers' *own games* on Steam in 2008-2012 to predict market-wide shares for those publishers selling *any games* on their own platforms, a decade later. This is "apples and oranges" twice over: the product mixes are radically different and the periods are far apart. Schwartz provides no reason that relative sales for a multi-publisher mix of games on any publisher's platform after 2017 would be the same as for that publishers' own games a decade earlier on Steam. Ex. 2 (Langer) ¶121.

Schwartz responds, "Successful games can drive platform adoption and ultimately platform success" and Steam began by selling Valve's games. Opp. 9. So what? Neither cures Schwartz's failure to account for differences between the product mixes, and the large temporal gap between the 2008-2012 and 2017-2022 periods. *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (expert testimony should be excluded if speculative or if it essentially compares "apples and oranges"); Ex. 34 (Langer Reply) ¶27 (network effects are important to platforms but not necessarily important to a publisher's portfolio of games).

Nor is there any basis to assert that the market shares of Schwartz's other platforms "are mathematically irrelevant," and that what matters is Steam's allegedly static ▮. Opp. 10.

---

[5] Another example: Schwartz says his Boik and Corts equations show negative seller economic profits. Schwartz ¶273, Appendix A.1, ¶¶A16-A17. He then asserts that to avoid publishers leaving Steam because of negative profits, "Steam *would lower their fees*[.]" *Id.* ¶¶A18-A19 (emphasis added). But as a two-sided platform, Steam has options other than lowering its fees to publishers. It could increase membership benefits on the consumer side, to keep publishers on the platform because that is where the gamers are. *See* Ex. 34 (Langer Reply) ¶24.

VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO EXCLUDE TESTIMONY OF STEVEN
SCHWARTZ, PH.D.
CASE NO. 2:21-cv-00563-JCC – 6

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Schwartz assumes that, in the but-for world, Steam has an ever-constant ▮ share and all other platforms always aggregate to ▮, without saying why these magic numbers would stay put for a decade. Ex. 2 (Langer) ¶121. Indeed, in Schwartz's but-for world, without the alleged anti-competitive restraints, there is no basis to assume that Steam's market share would be stagnant. Ex. 34 (Langer Reply) ¶28. Even in the five years of sales-on-Steam that Schwartz uses to manufacture Valve's static ▮ market share, Valve's share fluctuated wildly, ranging from ▮ to ▮. *Id.* If the shares of other platforms can fluctuate in the but-for world, so can Steam's. Schwartz's assumption otherwise is unreliable. *Id.* ¶¶28-29.

### E. Too Great an Analytical Gap Lies Between Schwartz's Evidence of a PMFN and Any Demonstrable Anticompetitive Effect

Schwartz asserts that the alleged PMFN deters publishers from discounting games on other platforms—but he conducted no pricing study to see if there are discounts elsewhere or if publishers even want to charge different prices on different platforms.

Valve's motion does not ask the Court to accept a "counternarrative" about *whether* Valve has a pricing PMFN. Opp. 5. Rather, Valve seeks exclusion because the analytical gap is too big between (a) what Schwartz says shows a selectively enforced PMFN (some emails plus Schwartz's impermissible interpretation of the Steam Keys request form) and (b) the alleged class-wide effects of deterring publishers from discounting elsewhere that supposedly enabled an inflated revenue share. Schwartz asserts that these effects can be shown with common evidence. But the alleged class-wide *impact* and *causation* parts of Schwartz's opinion are supported by no empirical data and cannot be shown with common proof.

Schwartz admits he conducted no study of game prices. Ex. 36 (Schwartz Dep.) 35:19–36:16. He admits he did not study how gamers and publishers value different platforms' features. *Id.* 181:4-185:10. And he admits not studying whether publishers have different

VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO EXCLUDE TESTIMONY OF STEVEN
SCHWARTZ, PH.D.
CASE NO. 2:21-cv-00563-JCC – 7

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

strategies that might lead them to prefer one platform over another or how consumer preferences affect pricing strategies. *Id.* 36:9-16, 254:4-256:19. His Reply Report (¶¶22-54) critiques Professor Chiou's study of game prices, which shows a significant percentage of games, in fact, priced lower on other platforms. But Schwartz did **no pricing study at all** to support his assertion that the claimed PMFN actually has class-wide impact, or that any potential class-wide impact is causally connected to Valve's allegedly supracompetitive revenue share. This is particularly damning in view of the inconvenient fact of varying publisher pricing strategies that Schwartz ignores. Ex. 1 (Chiou) ¶¶177-182, 299-307, 333-336.

I certify that this memorandum contains 2,092 words, in compliance with the Local Civil Rules.

DATED this 12th day of August, 2024.

s/ Blake Marks-Dias
Blake Marks-Dias, WSBA No. 28169
Eric A. Lindberg, WSBA No. 43593
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, WA 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com
elindberg@corrcronin.com

Kristen Ward Broz (*pro hac vice*)
FOX ROTHSCHILD LLP
2020 K. St. NW, Ste. 500
Washington, DC 20006
Telephone (202) 794-1220
Fax (202) 461-3102
kbroz@foxrothschild.com

Nathan M Buchter (*pro hac vice*)
FOX ROTHSCHILD LLP
2000 Market Street STE 20TH FL
Philadelphia, PA 19103
Telephone (215) 299-3010
nbuchter@foxrothschild.com

VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO EXCLUDE TESTIMONY OF STEVEN
SCHWARTZ, PH.D.
CASE NO. 2:21-cv-00563-JCC – 8

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Charles B. Casper *(pro hac vice)*
Peter Breslauer *(pro hac vice)*
Robert E. Day *(pro hac vice)*
Jessica Rizzo *(pro hac vice)*
MONTGOMERY McCRACKEN WALKER
& RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, PA 19103
Telephone (215) 772-1500
ccasper@mmwr.com
pbreslauer@mmwr.com
rday@mmwr.com
jrizzo@mmwr.com

*Attorneys for Defendant Valve Corporation*

VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO EXCLUDE TESTIMONY OF STEVEN
SCHWARTZ, PH.D.
CASE NO. 2:21-cv-00563-JCC – 9

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900