# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | Case No. 2:21-cv-00563-JNW<br><br>***ELLIOTT* PLAINTIFFS' OPPOSITION TO MOTION TO CONSOLIDATE AND APPOINT VORYS, SATER, SEYMORE AND PEASE LLP INTERIM LEAD COUNSEL**<br><br>**NOTE ON MOTION CALENDAR**:<br>October 25, 2024 |

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL -
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2



# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..................................................................................1

II. BACKGROUND ........................................................................................................2

    A. Vorys' co-counsel in *Wolfire* acknowledge that game publishers and consumers require separate counsel. ...............................................2

    B. Facing challenges to its dual-representation, Vorys made a strategic choice to drop consumers once arbitration was compelled. ......................4

    C. After Bucher Law defeated Valve's arbitration clause, Vorys now seeks to revive its consumer claims. ...............................................5

III. ARGUMENT ..............................................................................................................6

    A. Consolidation is unwarranted because there are no consumer claims in *Wolfire* to which the *Elliott* action could be consolidated. ......................6

    B. Vorys should not be appointed interim class counsel for the Consumer Class. ...............................................................................6

        1. Vorys' representation of game publishers creates a stark conflict of interest, as Vorys' co-counsel have acknowledged. .........................................................................7

        2. All other applicable 23(g) factors support appointing *Elliott* counsel to lead the consumer case. ............................................9

IV. CONCLUSION ........................................................................................................12

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - i
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Pepper*,
  587 U.S. 273 (2019) ...........................................................................................................3, 8

*Giuliano v. Sandisk Corp.*,
  2015 WL 10890654 (N.D. Cal. May 14, 2015) ......................................................................7

*In re Google Play Store Antitrust Litig.*,
  2022 WL 17252587 (N.D. Cal. Nov. 28, 2022) ......................................................................3

*In re Google Play Store Antitrust Litig.*,
  2024 WL 4438249 (N.D. Cal. Oct. 7, 2024) .........................................................................10

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ..................................................................................................7

*Kayes v. Pac. Lumber Co.*,
  51 F.3d 1449 (9th Cir. 1995) ..................................................................................................7

*Lowery v. Spotify USA Inc.*,
  2016 WL 6818756 (C.D. Cal. May 23, 2016) ......................................................................11

*Napoleon v. Amazon.com, Inc.*,
  2024 WL 3652873 (W.D. Wash. Aug. 5, 2024) ...................................................................11

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018) ................................................................................................................8

*Oliver v. Am. Express Co.*,
  2024 WL 100848 (E.D.N.Y. Jan. 9, 2024) ..............................................................................3

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ................................................................................................................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016) ...................................................................................................8

*Rhodes v. Robinson*,
  621 F.3d 1002 (9th Cir. 2010) ................................................................................................6

*Smith v. Levine Leichtman Cap. Partners, Inc.*,
  2011 WL 13153123 (N.D. Cal. Mar. 9, 2011) .......................................................................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010) ............................................................................................7

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - ii
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

*Unified Sewerage Agency v. Jelco Inc.*,
    646 F.2d 1339 (9th Cir. 1981) .................................................................................9

**Other Authorities**

Ann. Manual Complex Litig. § 30.3 (4th ed.) ...................................................................7

Fed. R. Civ. P. 23(g)(1)(A) .............................................................................................9, 11

LCR 42.................................................................................................................................6

Washington Rule Prof. Conduct 1.7 ....................................................................................9

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - iii
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Plaintiffs John Elliott, Ricardo Camargo, Javier Rovira, and Bradley Smith (together *Elliott* Plaintiffs) and their counsel Hagens Berman Sobol Shapiro LLP and Bucher Law PLLC (*Elliott* Counsel) submit this opposition to Vorys' Motion to Consolidate and Appoint Vorys Sater, Seymore, and Pease LLP as Interim Lead Class Counsel for Consumers.

## I.  PRELIMINARY STATEMENT

The *Elliott* Plaintiffs and their counsel successfully challenged Valve's arbitration provision, obtaining a series of arbitrator rulings deeming it unenforceable. Valve has admitted that these extraordinary efforts by *Elliott* Counsel prompted Valve to drop the arbitration provision from its consumer-facing agreements, *see* Dkt. No. 362, clearing the way for consumers to challenge Valve's anticompetitive conduct in federal court through the class-action vehicle.

Having defeated Valve's arbitration clause, the *Elliott* Plaintiffs brought suit against Valve in this Court on August 8, 2024.  Drawing on their experience litigating comparable claims against other tech giants, *Elliott* Counsel's pleading includes additional monopolization and tying claims not previously asserted against Valve (by anyone), as well as more developed factual allegations highlighting the unique anticompetitive harms suffered by consumers.  *See Elliott*, 24-cv-1218 (W.D. Wash.) (hereafter "*Elliott*"), Dkt. No. 1; *see also infra* at Section III.B.2.  *Elliott* Counsel have moved to be appointed interim class counsel for the consumer class.  *See Elliott*, Dkt. No. 25.

When moving for leadership, *Elliott* Counsel did not request consolidation of the *Elliott* action with the related *Wolfire* action.  The reason is simple: After arbitration of the consumer claims was compelled in *Wolfire*, Vorys and the rest of the *Wolfire* leadership elected to drop all consumer claims from their operative pleadings.  *See infra* at Section II.B.  They have now amended the *Wolfire* complaint twice—first in 2022 and then again in 2023—without asserting any claims on behalf of consumers.  *See* Dkt. Nos. 99 & 127.  They are litigating on behalf of game publishers only.

Without overlapping consumer cases, there is nothing to consolidate at this juncture.  *See infra* at Section III.A.  Even if the cases were consolidated, the *Elliott* Plaintiffs respectfully

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - 1
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  submit that Vorys has an incurable conflict of interest that precludes its appointment as class
2  counsel for consumers.  In antitrust litigation, separate counsel is generally appointed for
3  different market participants to safeguard against the mere risk that interests diverge.  *See infra* at
4  Section III.B.1.  Here, the divergence between publishers (the class Vorys already represents)
5  and consumers (the class Vorys wants to simultaneously represent) is obvious and unavoidable
6  because publishers' theory of the case requires allocating one pool of overcharges between
7  publishers and consumers.  The Court need not take the *Elliott* Plaintiffs' word for it.  Vorys'
8  own co-counsel in *Wolfire* previously opposed Vorys' attempt to represent both publishers and
9  consumers, because doing so would involve an unavoidable conflict of interest.  Vorys' co-
10 counsel—none of whom join Vorys' motion—were right.  And the conflict has only grown more
11 intractable because Vorys has now sponsored a damages model that gives publishers an
12 overwhelming share of the overcharge (75-80%).
13        While Vorys' conflict should be dispositive, the remaining 23(g) factors also tip against
14 Vorys and favor *Elliott* Counsel's appointment.  Vorys' work on the case has largely been on
15 behalf of *publishers*.  *Elliott* Counsel, by contrast, has devoted more than 4,000 hours to pursuing
16 consumer claims in arbitration and, in doing so, defeated the arbitration provision.  *Elliott*
17 Counsel also have a far more developed track record pursuing successful antitrust litigation in
18 the technology space and generally.  Seeking to represent consumers only, *Elliott* Counsel do not
19 labor under any conflict and will bring the full weight of their experience and resources to
20 maximize recovery for the consumer class.

21                                    **II.    BACKGROUND**

22 **A.    Vorys' co-counsel in *Wolfire* acknowledge that game publishers and consumers require separate counsel.**

23        This litigation involves two groups of direct purchasers fighting over a pool of damages
24 that must, under the theories presented, be allocated between them.  The game publishers (also
25 called "developers") contend that Valve's anticompetitive conduct allows Valve to charge them
26 supracompetitive commissions on the sale of PC games through Valve's online store.  *See* Dkt.
27 No. 127 at ¶¶ 4, 154-163.  But Vorys acknowledges that some portion of those supracompetitive
28

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - 2
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2


1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  commissions are passed along to consumers in the form of higher game prices. *See* Dkt. No. 373
2  at 11-12 & n.3. In short, for every dollar Valve's commissions are inflated, some portion of that
3  dollar is paid by publishers, and some portion is paid by consumers.

4  This overcharge allocation problem is not conjectural. It is precisely the theory of
5  damages that Vorys has already presented in the *Wolfire* action. *See* Dkt. No. 203 at 29. In
6  moving for class certification, Vorys and their economic expert calculate publisher damages as
7  the amount of the "overcharge by Valve" that was *not* "pass[ed]-through" to consumers. *See*
8  Dkt. No. 343 at ¶ 402 (Schwartz Report). Under this methodology, damages must be allocated
9  between the publishers and consumers based on the rate of "pass-through." *Id.*[1] Unsurprisingly,
10 Vorys and the publishers they represent have estimated a low rate of pass-through (just 20-25%),
11 meaning publishers get the lion's share (75-80%) of damages. *See id.* But if the rate of pass-
12 through were higher, as empirical modelling in most industries shows,[2] consumers would get a
13 substantially larger share of damages.

14 Vorys' publisher-side favoritism is evident from their own expert's report. By using a
15 "median" rate of pass-through, Vorys sponsored a damages model that, according to Valve's
16 competing expert, excludes from consideration "[t]he 23 percent of games with 100 percent or
17 more pass-through." Dkt. No. 345 at ¶ 114. Had Vorys' expert used the mode, rather than the
18 median, the pass-through rate would have been approximately 60%, basically tripling the
19 overcharge allocated to consumers. *See id.* (chart showing mode in 60% range).

20 Members of the *Wolfire* leadership group—specifically Lockridge Grindel Nauen PLLP
21 ("LGN") and Wilson Sonsini Goodrich & Rosati PC ("WSGR")—have pointedly acknowledged
22 Vorys' conflict. Contesting Vorys' prior efforts to represent both publishers and consumers,

---

[1] While the *Wolfire* Plaintiffs have adopted the language of "pass-through" to discuss damages allocation, that terminology is normally associated with indirect purchaser litigation, which this is not. Consumers are direct purchasers from Valve and, as such, they are "entitled to the *full amount* of the unlawful overcharge that they paid to [Valve]." *Apple Inc. v. Pepper*, 587 U.S. 273, 287 (2019); *see also In re Google Play Store Antitrust Litig.*, 2022 WL 17252587, at *10 (N.D. Cal. Nov. 28, 2022).

[2] *See, e.g.*, *Oliver v. Am. Express Co.*, 2024 WL 100848, at *23 (E.D.N.Y. Jan. 9, 2024) (discussing empirical studies showing 90% to be the midpoint of "pass-through rates of industry-wide costs changes in various industries").

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - 3
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2



LGN and WSGR observed that such dual representation presented a "fundamental conflict" because publishers and consumers have competing incentives. *See* Dkt. No. 46 at 6. Specifically, consumers will "seek to show that a large amount of the overcharges Developers paid to Valve would have flowed to them," whereas developers (or publishers) will contend the opposite. *See id.* at 11. As LGN and WSGR noted, this "divergence in best interests carries through nearly every stage of the litigation—discovery, class certification, experts, and trial—and precludes the same lead counsel from representing both groups." *Id.* at 12; *see also* Dkt. No. 58.

**B.     Facing challenges to its dual-representation, Vorys made a strategic choice to drop consumers once arbitration was compelled.**

Judge Coughenour deferred ruling on leadership when Vorys' conflict was initially raised, but he noted the potential problem. *See* Dkt. No. 63 at 4 ("The closer issue, though, is whether counsel could adequately and fairly represent the interests of those publishers, if also representing game purchasers (or vice versa)."). Proceeding incrementally, Judge Coughenour elected to first resolve Valve's pending threshold motions, including a motion to compel arbitration of the consumer claims before taking up leadership issues. *See id.* He subsequently granted the motion to compel arbitration and, after further briefing, he substantially denied Valve's motion to dismiss publishers' claims. *See* Dkt. Nos. 66, 80.

It was at this point, with consumers compelled to arbitration, that Vorys made a strategic decision to drop consumer claims. Specifically, Vorys stipulated to consolidate the *Wolfire* action with LGN and WSGR's case and, as part of that arrangement, Vorys and the expanded leadership group expressly agreed to bring "a single consolidated complaint in the consolidated action *on behalf of game publishers*." Dkt. No. 88 at 2 (emphasis added). In short, Vorys brought LGN and WSGR into the leadership fold and simultaneously dropped the consumer claims giving rise to the conflict LGN and WSGR had identified. Thereafter, Vorys moved (along with its co-counsel) to be appointed interim class counsel *for publishers* only, with Vorys to serve on the executive committee, and Quinn Emanuel, Constantine Cannon, LGN, and WSGR to serve as co-leads. *See* Dkt. No. 91. That motion was granted. *See* Dkt. No. 92.

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - 4
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2



As promised, Vorys proceeded to drop all consumer claims from its complaint, first by amendment in August 2022 (Dkt. No. 99), and then with a further amendment in March 2023 (Dkt. No. 127). For more than two years now, Vorys has been representing publishers only in *Wolfire*. As a member of the executive committee, Vorys admittedly is not sitting on the sidelines. It has signed virtually all (if not all) pleadings in *Wolfire*, including the publishers' pending motion for class certification.[3] Vorys took depositions on behalf of publishers and supposedly worked "extensively" in a "leadership role" developing the case and participating in expert work. *See* Dkt. No. 374 at ¶ 22. Vorys contends that its lawyers have spent "almost 6,000 hours to date litigating against Valve," identifying mainly tasks that arose after it had dropped its consumer claims. *See* Dkt. No. 373 at 5.

**C.     After Bucher Law defeated Valve's arbitration clause, Vorys now seeks to revive its consumer claims.**

The Bucher Law firm, representing the *Elliott* Plaintiffs, made a different strategic decision than Vorys. Bucher Law did not abandon consumers after arbitration was compelled, but instead pursued an aggressive mass-arbitration strategy. *See Elliott*, Dkt. No. 27 at ¶¶ 3-7. The strategy was successful, and it is the reason why consumer claims against Valve can now proceed in federal court.

In particular, Bucher Law obtained a series of arbitrator decisions (four in total) holding Valve's arbitration provision unenforceable. *See id.* at ¶ 9; *id.*, Dkt. No. 25 at 2. As Valve has admitted, these are the "first and only" arbitrator decisions upholding a challenge to Valve's arbitration provision. *See* Dkt. No. 362 at 2. After these rulings issued, Valve announced that "[in] light of the arbitrator rulings" secured by "Bucher Law PLLC" it would "remove the arbitration agreement and class action waiver" from its consumer agreements. *See id.* at 3.

Vorys does not contend that it has achieved any results on behalf of consumers in arbitration. Having watched the *Elliott* Plaintiffs defeat Valve's arbitration provision and bring a consumer class action in this Court, Vorys now opportunistically seeks to seize leadership over

---

[3] Publisher submissions Vorys signed include Dkt. Nos. 93, 94, 97, 100, 102, 109, 121, 123, 125, 129, 131, 134, 138, 143, 152, 153, 158, 171, 175, 177, 184, 203, 210, 215, 220, 227, 234, 245, 293, 307, 340, 341, 356.

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - 5
CASE NO. 2:21-cv-00563-JNW
011258-11/2846751 V2

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

the consumer class. Vorys asks for this appointment despite lacking, at this juncture, a case in which consumer claims are even asserted.

### III. ARGUMENT

**A.  Consolidation is unwarranted because there are no consumer claims in *Wolfire* to which the *Elliott* action could be consolidated.**

The *Elliott* Plaintiffs agree that judicial economy may be served by consolidating overlapping consumer class actions relating to the same alleged anticompetitive conduct by Valve. But, having dropped all consumer claims more than two years ago, Vorys does not have a consumer case to which the *Elliott* action could be consolidated. In short, Vorys' sole predicate for case consolidation—supposedly parallel class "claims asserted on behalf of consumer plaintiffs" (Dkt. No. 373 at 7)—is absent, leaving nothing to consolidate.[4]

It is also no sure thing that Vorys will be permitted to revive consumer claims in *Wolfire*, if that is indeed its plan. "As a general rule, when a plaintiff files an amended complaint, '[t]he amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (alteration in original).[5] To the extent Vorys obtains consent from Valve to amend its *Wolfire* complaint to revive consumer claims, Vorys would still need authorization from co-counsel who have already expressed strenuous objection to the joint representation of publishers and consumers.

If Vorys clears those hurdles and gets a consumer case on file, then, and only then, could the issue of consolidation (between *Elliott* and *Wolfire*) be ripe.

**B.  Vorys should not be appointed interim class counsel for the Consumer Class.**

Whether or not the *Elliott* action is consolidated with *Wolfire*, the *Elliott* Plaintiffs respectfully submit that Vorys should not be appointed interim consumer counsel.

---

[4] Vorys' motion to consolidate is also procedurally defective because Vorys did not meet and confer with *Elliott* Counsel before filing it, as required. *See* LCR 42.

[5] Vorys cannot contend that the arbitration stay required the omission of consumer claims. A stayed claim must be preserved like any other, and tellingly, Vorys' initial amendment to its complaint *included* the stayed consumer claims. *See* Dkt. No. 68.

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - 6
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

### 1. Vorys' representation of game publishers creates a stark conflict of interest, as Vorys' co-counsel have acknowledged.

"The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995). Courts should thus provide for "separate representation" whenever necessary "to eliminate conflicting interests of counsel." *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856–57 (1999). "The judge should identify, early in the litigation, possible conflicts of interest that may lead to disqualification of attorneys." Ann. Manual Complex Lit. § 30.3 (4th ed.). Prophylactic scrutiny of conflicts is essential because "where there is reason to doubt the loyalty of counsel or the adequacy of counsel's representation, serious questions arise concerning the preclusive effect of any resulting judgment." *Smith v. Levine Leichtman Cap. Partners, Inc.*, 2011 WL 13153123, at *6 (N.D. Cal. Mar. 9, 2011) (citation omitted).

It is well-established that a "conflict between class members regarding the most favorable measure of damages can create a potential conflict of interest between members of the class." *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000); 1 Newberg and Rubenstein on Class Actions § 3:75 (6th ed.) (observing that class counsel cannot represent two groups when "recovery of one set will cut directly into those of another"). That is the type of conflict we have here. Under Vorys' theory of damages, an overcharge needs to be allocated between publishers and consumers based on an estimated rate of "pass through." *See supra* at Section II.A. A high rate of pass-through means most damages flow to consumers. A low rate means most damages flow to publishers. Pass-through rates are frequently disputed in antitrust litigation.[6] An attorney cannot sit on both sides of this issue and adequately represent both sides, as Vorys' co-counsel has urged. *See, e.g.*, Dkt. No. 46. at 10 ("Separate counsel is required.").

Vorys also cites no precedent for the dual representation it is proposing. This case involves two classes of direct purchasers (consumers and publishers) litigating against a common

---

[6] *See, e.g.*, *Giuliano v. Sandisk Corp.*, 2015 WL 10890654, at *9 (N.D. Cal. May 14, 2015) (addressing expert dispute on pass-through rate); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 601-06 (N.D. Cal. 2010) (same).

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - 7
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2


1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

platform defendant (Valve). The ability of two direct purchaser classes to simultaneously litigate in this fashion was recognized in *Apple v. Pepper*, 587 U.S. 273 (2019). Not once since *Apple v. Pepper* (or before) has the same law firm represented both classes of direct purchasers in a single case. In every such case—*Apple v. Pepper* included—separate counsel were appointed.[7] *Elliott* Counsel are aware of only one instance when counsel even sought a similar dual representation, and the application was denied.[8] Even in circumstances involving less stark conflicts and no conflicting damages claims—for example, direct and indirect purchaser litigation—it is standard practice for courts to appoint separate counsel for different market participants.[9]

Vorys essentially asks the Court to disregard the conflict with assurance that it will play damages down the middle. *See* Dkt. No. 373 at 12 (claiming that the Vorys' damages model "calculates total damages on both sides while avoiding duplicative damages and inconsistent theories"). But "[d]ivided loyalties are rarely divided down the middle." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233 (2d Cir. 2016). More fundamentally, courts appoint separate counsel in these circumstances precisely to ensure that all parties are zealously represented, not compromised in the manner Vorys proposes.

Vorys invokes *Ohio v. Amex* for the uncontroversial proposition that, in cases involving a two-sided platform, plaintiffs must show anticompetitive effects considering both sides of the platform, i.e., harm to the market "as a whole." *Ohio v. Am. Express Co.*, 585 U.S. 529, 546-47

---

[7] *See In re Apple iPhone Antitrust Litig.*, No. 11-cv-6714 (N.D. Cal. Apr. 9, 2012) (remand from *Apple v. Pepper* appointing separate counsel for consumers); *Cameron v. Apple, Inc.*, No. 3:19-cv-3074 (N.D. Cal. Oct. 10, 2019) (appointing Hagens Berman as separate lead counsel for app developers in related action); *In re Google Play Consumer Antitrust Litig.*, No. 3:20-cv-5761, Dkt. 128 (N.D. Cal. Dec. 16, 2020) (appointing separate lead firms for consumers); *In re Google Play Developer Antitrust Litig.*, No. 3:20-cv-5792, Dkt. 79 (N.D. Cal. Dec. 11, 2020) (appointing separate firms, including Hagens Berman as counsel for developers in related action).

[8] *In re Google Digital Advert. Antitrust Litig.*, No. 5:20-cv-3556-BLF, (N.D. Cal. Apr. 26, 2021), Dkt. No. 102 (request to serve as lead counsel representing both advertiser and publisher plaintiffs challenging Google monopolization conduct); *id.*, Dkt. No. 133 (order rejecting dual representation).

[9] *See, e.g.*, *In re Auto. Wire Harness Sys. Antitrust Litig.*, No. 2:12-md-2311, Dkt. 60, 64, 65 (E.D. Mich. Mar. 2012) (separate counsel different market participants); *In re Aluminum Warehousing Antitrust Litig.*, No. 1:13-md-2481, Dkt. 216 (S.D.N.Y. Mar. 6, 2014) (same); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-md-2508, Dkt. 67 (E.D. Tenn. May 20, 2014) (same); *In re Vehicle Carriers Servs. Antitrust Litig.*, No. 13-cv-3306, Dkt. 106 (D.N.J. Mar. 3, 2014) (same); *In re Chocolate Confectionary Antitrust Litig.*, No. 1:08-md-1935, Dkt. 387 (M.D. Pa. Sept. 14, 2008) (same).

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - 8
CASE NO. 2:21-cv-00563-JNW
011258-11/2846751 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  (2018).  But of course publishers and consumers have a shared interest in establishing

2  anticompetitive effects generally.  The inescapable conflict arises because whatever the size of

3  the damages pie, Vorys' model requires that it be allocated between the publisher and consumer

4  classes.  *Amex* nowhere suggests that the same counsel can represent groups competing for a

5  finite pool of damages.  *Amex* does not address conflicts issues at all.

6       Last, Vorys appears to contend that there is no conflict because it serves on the

7  "executive committee" for the *Wolfire* publishers, rather than as a "co-lead."  Dkt. No. 373 at 12.

8  Vorys identifies no authority suggesting that different conflicts rules apply to members of an

9  "executive committee," and the *Elliott* Plaintiffs are aware of none.  The question is whether

10  Vorys represents publishers or not.  If it does, Vorys owes those publishers its "undivided

11  loyalty."  *Unified Sewerage Agency v. Jelco Inc.*, 646 F.2d 1339, 1345 (9th Cir. 1981).  And

12  there is no dispute that Vorys represents publishers here.  Vorys was court-appointed to represent

13  them, claims to be actively representing them, and has not withdrawn (which would require

14  Court approval under LCR 83.2(b)).[10]

15      **2.   All other applicable 23(g) factors support appointing *Elliott* counsel to lead the consumer case.**

16

17       Although Vorys' conflict is disqualifying, the other applicable 23(g) factors likewise do

18  not favor Vorys' leadership application.

19       *First*, with respect to the work performed on the "claims in the action" (*see* Fed. R. Civ.

20  P. 23(g)(1)(A)(i)), Vorys focuses on its efforts in the *Wolfire* litigation.  *See* Dkt. No. 373 at 4-5.

21  But this is all (or at least nearly all) work Vorys performed on behalf of *publishers* whose

22  incentives depart irreconcilably from consumers.  *See id.*  For example, Vorys touts its work on

23  "affirmative expert" reports in *Wolfire*, but as noted above, those reports advance a damages

24  methodology that gives *publishers* the overwhelming share of damages at the expense of

---

[10] Withdrawal also would not cure the conflict because Vorys is on record supporting a damages model that privileges publishers over consumers.  *See* Washington Rule Prof. Conduct 1.7 (lawyer may not represent a client if there is "a significant risk that the representation will be materially limited," including by responsibilities to "a former client").

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - 9
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1  consumers.  Work on that damages methodology undermines, rather than supports, Vorys' bona
2  fides to adequately represent the consumer class.

3  By contrast, *Elliott* Counsel have devoted more than 4,000 hours exclusively to advance
4  *consumer* arbitrations, *see Elliott*, Dkt. No. 27 at ¶ 5, which have defeated Valve's arbitration
5  clause and made consumer class litigation possible.  Vorys does not mention these efforts, and
6  instead attempts to discount the *Elliott* action as a "copycat."  That is not a fair characterization.
7  The principal legal theory on which Bucher Law defeated Valve's arbitration clause—lack of
8  effective notice—was never asserted by Vorys on behalf of consumers in any forum. Without
9  that legal ingenuity, there would be no consumer class at all. Further, the *Elliott* Complaint
10 includes an additional antitrust market and reworked factual allegations, *see id.*, Dkt. No. 1 ¶¶
11 61-68 (discussing "PC In-Game Payment Processing Market"), additional monopolization
12 claims, *id.* ¶¶ 203-223 (monopolization and attempted monopolization of "PC In-Game Payment
13 Processing Market"), and an additional tying claim, *id.* ¶¶ 104-107, 233-245 (unlawful tying of
14 distribution to payment processing).  These are not trivial additions, as a game developer recently
15 prevailed at trial on similar monopolization and tying claims asserted against Google.  *See In re*
16 *Google Play Store Antitrust Litig.*, 2024 WL 4438249, at *9 (N.D. Cal. Oct. 7, 2024) (granting
17 permanent injunction).  The *Elliott* Complaint also includes an entire section addressing how
18 Valve's conduct, including in coordination with publishers, imposes unique harms on *consumers*.
19 *See Elliott*, Dkt. 1 at ¶¶ 140-166.[11]

20 To the extent Vorys' work was on behalf of the consumer class rather than the
21 developers, Vorys has not served the consumers well. Vorys failed to defeat Valve's motion to
22 compel arbitration three years ago, derailing the consumer class. Then, in the years to follow,
23 Vorys made no efforts to defeat the arbitration clause in arbitration. It was *Elliott* Counsel that

---

[11] Without engaging the substance of the *Elliott* Complaint, Vorys relies on a slide deck Mr. Bucher prepared (with other lawyers) more than two years ago, and takes great liberties with it. The presentation observed that mass arbitrations can involve either an "active" or "passive" approach, and specifically highlighted Valve as a defendant warranting an active strategy, which is precisely what *Elliott* Counsel have pursued.  *See* Dkt. No. 374-6, Exhibit A at Slides 6-7.

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - 10
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2


1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1  rescued a consumer class from the jaws of Vorys' defeat. Measured by triumphs rather than

2  timesheets, Vorys' prior work cuts *against* a potential appointment on behalf of consumers.

3      *Second*, with respect to experience (Fed. R. Civ. P. 23(g)(1)(A)(ii), (iii)), *Elliott* Counsel

4  have the clear upper hand. *Elliott* Counsel are leading "big tech" antitrust lawyers that

5  successfully litigated two closely analogous cases involving Apple's and Google's respective

6  monopolization of software distribution markets, among other high-profile antitrust actions. *See*

7  *Elliott*, Dkt. No. 26 at ¶ 2; *see also id.*, Dkt. No. 26-1 at 3-5. The firm's work on the Apple

8  matter was honored with the American Antitrust Institute's "Outstanding Litigation

9  Achievement" recognition, an award *Elliott* Counsel has received on multiple occasions,

10 including again this year. *See id.*, Dkt. No. 26-1 at 40.[12] *Elliott* Counsel's experience with

11 platform most-favored nations clauses or PMFNs—the specific type of restraint Valve

12 imposes—is likewise unparalleled. *See id.*, Dkt. No. 26 at ¶ 4; *id.*, Dkt. No. 25 at 7-11

13 (discussing experience). *Elliott* Counsel have secured billions in settlements for class plaintiffs

14 in antitrust litigation. *See id.*, Dkt. No. 26-1 at 3-5.

15     Vorys does not have a comparable track record. The materials Vorys has submitted

16 indicate that Vorys has been involved in some opt-out antitrust litigation and defense-side

17 representations. *See* Dkt. No. 374 at ¶¶ 8-11. But Vorys has not identified any significant

18 experience representing classes in complex antitrust litigation, nor any recoveries on their behalf.

19 That Vorys is even seeking to jointly represent both consumers and publishers in this action—

20 contrary to established practice and the obvious conflict its co-counsel have identified—reflects a

21 level of inexperience. *Elliott* Counsel offer the steadier hand and a superior track record

22 representing class plaintiffs in complex antitrust litigation to achieve real results. *See, e.g.*,

23 *Napoleon v. Amazon.com, Inc.*, 2024 WL 3652873, at *3 (W.D. Wash. Aug. 5, 2024) (appointing

24 counsel with experience advantage); *Lowery v. Spotify USA Inc.*, 2016 WL 6818756, at *4 (C.D.

25 Cal. May 23, 2016) (appointing counsel with the most "plaintiffs-side experience").

---

[12] *See AAI Announces 2024 Antitrust Enforcement Award Honorees*, available at: https://www.antitrustinstitute.org/aai-announces-2024-antitrust-enforcement-award-honorees/.

OPP'N TO MOT. TO CONSOL. & APPOINT INTERIM LEAD COUNSEL - 11
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

## IV. CONCLUSION

For the foregoing reasons, Vorys' motion to consolidate and serve as interim consumer class counsel (Dkt. No. 373) should be denied.

DATED: October 21, 2024

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

/s/ *Steve W. Berman*
Steve W. Berman (WSBA No. 12536)

/s/ *Xiaoyi Fan*
Xiaoyi Fan (WSBA No. 56703)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-mail:     steve@hbsslaw.com
E-mail:   kellyf@hbsslaw.com


Ben M. Harrington (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3034
Facsimile: (510) 725-3001 fax
E-mail:       benh@hbsslaw.com


William Ward Bucher IV  (*pro hac vice* pending)
BUCHER LAW PLLC
350 Northern Blvd, Ste. 324 -1519
Albany, NY 12204-1000
Telephone: (202) 997-3029
Email: will@bucherlawfirm.com

*Attorneys for Plaintiffs*

OPP'N TO MOT. TO CONSOL. & APPOINT INTERIM LEAD COUNSEL - 12
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2



**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

I hereby certify that this memorandum contains 4,200 words, excluding the caption, table of contents, table of authorities, signature blocks, and certificate of service, in compliance with the Local Civil Rules.

DATED this 21st day of October, 2024.

*/s/ Steve W. Berman*
Steve W. Berman

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - 13
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2024, a true and correct copy of the foregoing was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

*/s/ Steve W. Berman*
Steve W. Berman

OPP'N TO MOT. TO CONSOL. & APPOINT
INTERIM LEAD COUNSEL - 14
CASE NO. 2:21-CV-00563-JNW
011258-11/2846751 V2



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX