THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | Case No. 2:21-cv-00563-JNW <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF STEVEN SCHWARTZ, PH.D., AUTHORIZED BY DKT. NO. 351** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> **NOTE ON MOTION CALENDAR: SEPTEMBER 9, 2024** |

SUPP. RESP. TO DEF.'S MOT. TO EXCL. SCHWARTZ TESTIMONY
CASE NO. 2:21-CV-00563-JNW

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

## I. BACKGROUND

Plaintiffs contend that Valve has maintained its dominance in the PC game distribution market through its Platform Most Favored Nations ("PMFN") Policy. The PMFN prevents PC game publishers from offering to sell their games for lower prices or with superior content on rival game distribution platforms than they offer on Steam. The PMFN thereby blocks other game platforms from employing what would otherwise be their most potent competitive weapons to gain and hold market share from Steam: lower prices for and enhanced versions of games. By ensuring publishers cannot differentiate their games with better prices or content on PC game distribution platforms, Valve's PFMN allows Valve to charge supracompetitive commissions to publishers, which harms all publishers every time they pay the inflated commissions to Valve. Consumers are also harmed, as publishers partially pass-on those inflated commissions to consumers in the form of higher game prices, and are prevented from providing differentiated content to consumers on other platforms. In a competitive PC game distribution market, Valve would be forced to compete by lowering its supracompetitive commissions.

To demonstrate these economics to the jury and to prove class-wide impact and damages, Plaintiffs will offer, among other evidence, the testimony of Dr. Steven Schwartz. Valve seeks to exclude Schwartz's analysis and, as part of those efforts, filed a Reply In Support of Its Motion to Exclude (hereinafter the "Reply") (Dkt. 337), along with an accompanying "reply" expert report (Dkt. 338-1). On August 30, 2024, the Court permitted Plaintiffs to file a supplemental brief to respond to two of Valve's arguments offered on reply: (1) that Schwartz's opinion is purportedly flawed because he "pretends Steam Key sales have no impact at all," and fails to consider Wolfire's large number of Steam Key transactions relative to the number of its Steam Store transactions; and (2) that Schwartz's opinion is purportedly flawed because he "improperly treats Steam as [a] one-sided [platform]" by not "consider[ing] charges and benefits on both sides of the platform," and specifically by supposedly not accounting for fees consumers pay for "Community Market" transactions. (*See* Dkt. 351 at 2 & n.1; Dkt. 341 at 2). The Court's Order also permitted Plaintiffs

SUPP. RESP. TO DEF.'S MOT. TO EXCL.
SCHWARTZ TESTIMONY
CASE NO. 2:21-CV-00563-JNW

1

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

to submit a surreply expert report. (Dkt. 351 at 2).

Valve is wrong on both counts. The Court should deny Valve's motion.

## II. <u>ARGUMENT</u>

### A. Schwartz's Opinion Properly Considers the Likely Role of Steam Keys in the But-For World (Valve's Reply 3:1-4:2)

Valve argued in its opening *Daubert* brief that it is necessary to compute an "effective revenue share" that accounts for a class member's "Steam Key" transactions. *See* Dkt. 232, Mot. 12-13. In opposition, Plaintiffs explained that Valve's "effective revenue share" involves legally infirm netting and generates nonsensical results, such as a class member being worse off in a world where the prices come down on *all* platforms across the market. Dkt. 317, ("Opp."), 11-12.

On reply, Valve argues that Schwartz's opinion is flawed because (1) he "pretends Steam Key sales have no impact at all," and (2) "what – if anything – publishers paid *to other platforms* cannot be established without individual inquiry." Reply 3 (emphasis added). Specifically, Valve points out that Wolfire used "over 3,000,000" Steam Keys while Wolfire "sold 174,963 units on Steam." *Id*. Valve's unstated but nonsensical implication is that heavy users of Steam Keys, such as Wolfire, would somehow be worse off in a world without the PMFN, and with additional platform competition. Not so. Valve's argument implicitly assumes that Steam Keys may vanish in the but-for world (as that is the only way a Steam Key user like Wolfire might somehow be worse off). But there is no basis in the record for that assumption. *See* Sur-Reply Report of Steven Schwartz, Ph.D., September 9, 2024 ("Schwartz Sur-Reply Rpt."), ¶ 17, fn. 20. To the contrary, if Valve faced genuine competition for the first time, Valve would need to ***add***, rather than ***remove***, features from its platform. *Id.* ¶¶ 16-17. Therefore, not only would Wolfire still be able to utilize Steam Keys in the but-for world for off-Steam transactions, but also Wolfire's Steam Store transactions would occur at lower prices relative to the real world. *Id.* ¶ 17. Wolfire would be better

SUPP. RESP. TO DEF.'S MOT. TO EXCL. SCHWARTZ TESTIMONY
CASE NO. 2:21-CV-00563-JNW

2

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

off in a world with additional platform competition. In the absence of that competition, therefore, Wolfire was harmed by Valve's illegal conduct. *Id.*

Valve again misses the mark when it asserts, based on its analysis of Wolfire's use of Steam Keys, that "what—if anything—publishers *paid to other platforms* cannot be established without individual inquiry." Reply 3 (emphasis added). What Wolfire paid *to other platforms* for those transactions accomplished with Steam Keys is not relevant to the class certification inquiry, and certainly provides no basis for a *Daubert* motion here. Instead, the relevant question is whether Plaintiffs can use common evidence to show that Wolfire and other class members paid supracompetitive commissions *to Valve on Steam transactions*. What Wolfire (or other class members) paid to *other* platforms for *sales that occurred on other platforms* would be relevant only if it were appropriate to use Wolfire's supposed benefits from those off-Steam transactions to off-set or net against the *harm* that Valve causes on Steam transactions where publishers pay commissions to Valve. But such netting is not factually supportable, would be legally infirm, provides no basis to deny class certification, Class Cert. Reply, Dkt. 315 at 8-11, and is no basis to exclude expert testimony.

**B.    Schwartz Did Not Treat Steam as One-Sided (Valve Reply 5:13-6:3)**

Valve argued in its opening brief that Schwartz "impermissibly analyzes Steam as a One-Sided Platform." Mot. 3-6. In opposition, Plaintiffs explained that Schwartz expressly opines that "Steam is a two-sided platform," Dkt. 182-1, Schwartz Rpt. ¶ 57, Dkt. 316-1, ("Schwartz Reply Rpt."), ¶ 56, and that each of Schwartz's class-wide impact and damages opinions treats Steam as such. Opp. 3-4. As Plaintiffs further explained, Valve's arguments "focuse[d] on a single aspect of Schwartz's damages approach: his opinion that Valve would continue to use an agency pricing model in the but-for world, as it does in the real world." *Id*. at 3.

In Reply, Valve again attacks Schwartz's use of an agency pricing model. Specifically, one of the reasons agency pricing is appropriate here, despite the two-sided nature of Steam, is because Valve has a "lack of transaction costs," which are defined as a "broad range of frictions that make it costly for one side of the market to pass through a redistribution of charges to the other side."

SUPP. RESP. TO DEF.'S MOT. TO EXCL.
SCHWARTZ TESTIMONY
CASE NO. 2:21-CV-00563-JNW

3

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Schwartz Reply Rpt. ¶ 203. On Reply, Valve now argues that this condition is violated because Steam "imposes charges on both sides of the platform" because customers must pay fees on "Steam Community Market" transactions. Reply 5. But the fees charged on Steam Community Market transactions are not plausibly "transaction costs" in the sense that would be relevant here.

Steam Community Market transactions **are not** Steam Store transactions, and do not involve publishers paying a commission to Valve. Schwartz Sur-Reply Rpt. ¶ 28. Moreover, there is no evidence that Community Market transactions affect the economics of Steam Store transactions or Valve's commissions charged to publishers in any way. *Id*. ¶ 29. Rather, Steam Community Market transactions *occur between two consumers*, and involve the sale of in-game merchandise (for example, a certain sword) or other similar ancillary transactions. These are not transactions between publishers and consumers, nor are they transactions on which publishers pay a commission to Valve. Nor has there been any suggestions that, in a but-for world without the PMFN, Community Market transactions would be eliminated, or that the fee structure for Community Market transactions would change in any way. *Id*. ¶ 29, fn. 50. The Steam Community Market and Valve's fees on consumer-to-consumer transactions, therefore, do not undermine or alter Schwartz's opinion that an agency-pricing model is appropriate here, nor do they undermine or alter the remainder of Schwartz's two-sided analysis. *Id*.

In any event, this disagreement is fundamentally one regarding the economic principles underpinning Schwartz's opinion. That is a classic "battle of the experts" that should be decided by a fact-finder and not as part of a *Daubert* motion. *See In re NCAA 1-A Walk-On Football Players Litig.*, 2006 WL 1207915, at *11 (W.D. Wash. May 3, 2006) ("[T]his Court will not engage in a battle of the experts"). This Court should, therefore, reject Valve's *Daubert* motion.

### III.    CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Valve's Motion to Exclude Testimony of Steven Schwartz, Ph.D.

Supp. Resp. to Def.'s Mot. to Excl. Schwartz Testimony
Case No. 2:21-cv-00563-JNW

4

Quinn Emanuel Urquhart & Sullivan
1109 First Avenue, Suite 210
Seattle, Washington 98101
Tel: (206) 905-7000

| | |
|---|---|
| DATED: September 9, 2024 | Respectfully submitted, |
| /s/ Alicia Cobb | /s/ Stephanie L. Jensen |
| Alicia Cobb, WSBA #48685<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>1109 First Avenue, Suite 210<br>Seattle, Washington 98101<br>Phone (206) 905-7000<br>Fax (206) 905-7100<br>aliciacobb@quinnemanuel.com | Stephanie L. Jensen, WSBA #42042<br>Tyre L. Tindall, WSBA #56357<br>WILSON SONSINI GOODRICH & ROSATI P.C.<br>701 Fifth Avenue, Suite 5100<br>Seattle, WA 98104-7036<br>Phone (206) 883-2500<br>Fax (866) 974-7329<br>sjensen@wsgr.com<br>ttindall@wsgr.com |
| Steig D. Olson (*pro hac vice*)<br>David LeRay (*pro hac vice*)<br>Nic V. Siebert (*pro hac vice*)<br>Andrew Faisman (*pro hac vice*)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>51 Madison Avenue<br>New York, New York 10010<br>Phone (212) 849-7231<br>Fax (212) 849-7100<br>steigolson@quinnemanuel.com<br>davidleray@quinnemanuel.com<br>nicolassiebert@quinnemanuel.com<br>andrewfaisman@quinnemanuel.com | Kenneth R. O'Rourke (*pro hac vice*)<br>Jordanne M. Steiner (*pro hac vice*)<br>WILSON SONSINI GOODRICH & ROSATI, P.C.<br>1700 K Street, NW, Suite 500<br>Washington, DC 20006<br>Phone (202) 973-8800<br>Fax (866) 974-7329<br>korourke@wsgr.com<br>jordanne.miller@wsgr.com |
| Adam Wolfson (*pro hac vice*)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017<br>Phone (213) 443-3285\| Fax (213) 443-3100<br>adamwolfson@quinnemanuel.com | W. Joseph Bruckner (*pro hac vice*)<br>Joseph C. Bourne (*pro hac vice*)<br>Laura M. Matson (*pro hac vice*)<br>LOCKRIDGE GRINDAL NAUEN P.L.L.P.<br>100 Washington Avenue S, Suite 2200<br>Minneapolis, MN 55401<br>Phone (612) 339-6900<br>Fax (612) 339-0981<br>wjbruckner@locklaw.com<br>jcbourne@locklaw.com<br>lmmatson@locklaw.com |
| Ankur Kapoor (*pro hac vice*)<br>Noah Brecker-Redd *(pro hac vice)*<br>CONSTANTINE CANNON LLP<br>6 East 43rd St., 26th Floor<br>New York, NY 10017<br>Phone (212) 350-2700<br>Fax (212) 350-2701<br>akapoor@constantinecannon.com<br>nbrecker-redd@constantinecannon.com | Kyle Pozan (*pro hac vice*)<br>LOCKRIDGE GRINDAL NAUEN P.L.L.P.<br>1165 N. Clark Street, Suite 700<br>Chicago, IL 60610<br>Phone (612) 339-6900<br>Fax (612) 339-0981<br>kjpozan@locklaw.com |
| J. Wyatt Fore (*pro hac vice*)<br>CONSTANTINE CANNON LLP<br>1001 Pennsylvania Ave., NW, Suite 1300N<br>Washington, D.C. 20004<br>Phone (202) 204-4527<br>Fax (202) 204-3501<br>wfore@constantinecannon.com | *Interim Co-Lead Counsel* |

*Interim Co-Lead Counsel*

Kenneth J. Rubin (*pro hac vice*)
Timothy B. McGranor (*pro hac vice*)
Kara M. Mundy (*pro hac vice*)
Douglas R. Matthews (*pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
Phone (614) 464-6400
Fax (614) 719-4796
kjrubin@vorys.com
tbmcgranor@vorys.com
kmmundy@vorys.com
drmatthews@vorys.com

Thomas N. McCormick (*pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
4675 MacArthur Court, Suite 700
Newport Beach, California 92660
Phone (949) 526-7903 | Fax (949) 383-2384
tnmccormick@vorys.com

*Executive Committee Member*

SUPP. RESP. TO DEF.'S MOT. TO EXCL. SCHWARTZ TESTIMONY
CASE NO. 2:21-CV-00563-JNW

6

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

**LCR 7 CERTIFICATION**

I certify that this memorandum contains no more than four pages of argument, in compliance with the page-count limit set forth in the Court's Order dated August 30, 2024 (Dkt. No. 351).

DATED: September 9, 2024

                               */s/ Alicia Cobb*
                               Alicia Cobb, WSBA #48685

SUPP. RESP. TO DEF.'S MOT. TO EXCL. SCHWARTZ TESTIMONY
CASE NO. 2:21-CV-00563-JNW

7

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2024, I caused a true and correct copy of the foregoing to be served on counsel for Valve via email and preliminarily filed under seal in this Court's CM/ECF system.

DATED: September 9, 2024

                                         */s/ Alicia Cobb*
                                         Alicia Cobb, WSBA #48685

SUPP. RESP. TO DEF.'S MOT. TO EXCL. SCHWARTZ TESTIMONY
CASE NO. 2:21-CV-00563-JNW

8

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000