THE HONORABLE JAMAL N. WHITEHEAD

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | No. 2:21-cv-00563-JNW |
| This Filing Relates to:<br><br>ALL ACTIONS | ***HEPLER* PLAINTIFFS' RESPONSE IN OPPOSITION TO *COLVIN* PLAINTIFFS' AMENDED MOTION TO APPOINT VORYS, SATER, SEYMOUR AND PEASE LLP AS INTERIM LEAD CLASS COUNSEL**<br><br>**NOTE ON MOTION CALENDAR:**<br><br>January 17, 2025 |

*Hepler* Plaintiffs' Response in Opposition to *Colvin* Plaintiffs' Amended Leadership Motion

Page i

Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600

1    Pursuant to the Court's Order of December 6, 2024 (ECF No. 394), Plaintiffs Connor Hepler

2    and Aaron Lancaster (the "*Hepler* Plaintiffs") submit the following response in opposition to the

3    *Colvin* Plaintiffs' Amended Motion to Appoint Vorys, Sater, Seymour and Pease LLP as Interim

4    Lead Class Counsel (ECF No. 409).

5    **I.      INTRODUCTION**

6    Four years ago, a group of law firms including Vorys, Sater, Seymour and Pease LLP

7    ("Vorys") sought to represent a putative class of both game publishers who sold PC games on the

8    Steam Store and consumers who purchased PC games on the Steam Store. *See* Mot. to Appoint

9    Counsel, *In re Valve Antitrust Litig.* ("*Wolfire*"),[1] No. 2:21-cv-00563-JNW (W.D. Wash. July 27,

10   2021), ECF No. 38. In October 2021, the Court stayed all consumer claims and compelled them to

11   arbitration based on Defendant Valve Corporation's ("Valve's") consumer terms of use, allowing

12   only the publisher claims to proceed. Order on Mot. to Compel Arb., *Wolfire* (Oct. 25, 2021), ECF

13   No. 66. After losing this motion to compel arbitration, Vorys then abandoned their consumer clients

14   and, for more than three ensuing years, pursued the interests of their publisher clients alone, up to

15   and through class certification. *See* Mot. to Appoint Counsel at 1 n.1, *Wolfire* (July 22, 2022), ECF

16   No. 91 ("The proposed leadership structure here applies only to the game publisher plaintiffs.").

17   Meanwhile, a group of approximately 50,000 individual plaintiffs represented by Bucher

18   Law took up Vorys's mantle and pursued consumer claims in arbitration. *See Elliott* Pls.' Am. Mot.

19   to Appoint at 3, *In re Valve Antitrust Litig.*, No. 2:21-cv-00563-JNW (W.D. Wash. Dec. 20, 2024),

20   ECF No. 412. In early October 2024, Bucher obtained binding rulings in four individual arbitrations

21   that the arbitration clause in Steam's consumer agreements was unenforceable. Valve responded to

22   these decisions by removing the clause from its terms of use. *Id.* at 2-3. These victories then freed

23   consumer plaintiffs, after years in limbo, to move forward as a class in this Court. *Id.*[2]

24   _____

25   [1] Though related cases have been consolidated into this litigation and recaptioned, to avoid
     confusion we use *Wolfire* to discuss the pre-consolidation procedural history of this case.

26   [2] The *Hepler* Plaintiffs filed such a consumer case, and have moved to appoint Cohen Milstein

---

*Hepler* Plaintiffs' Response in
Opposition to *Colvin* Plaintiffs'
Amended Leadership Motion

Page 1

Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600

1    Now that another firm has successfully defeated the consumer arbitration provision that

2    Vorys could not—and despite Vorys long ago forgoing their representation of consumers to pursue a

3    publisher action—Vorys again seek appointment as Interim Class Counsel for the consumer class.

4    *See Colvin* Pls.' Am. Mot. to Appoint at 3 ("Vorys Mot."), *In re Valve Antitrust Litig.* (W.D. Wash.

5    Dec. 20, 2024), ECF No. 409.  The *Hepler* Plaintiffs respectfully submit that Vorys should not and

6    cannot act as Interim Lead Counsel on behalf of any class of consumers in litigation related to this

7    matter.

8    First, Vorys's work on behalf of a putative class of *only* publishers prevents them from

9    further representing consumers in this matter. As interim executive committee counsel for a class

10   comprised of *publishers only*, Vorys undertook discovery and sought class certification on behalf of

11   a class with adverse interests to Steam consumers. In this capacity, Vorys had strong financial

12   incentives both as counsel and on behalf of the publisher class to maximize the share of the alleged

13   overcharge attributed to publishers, *at consumers' expense*. Not only did Vorys seek to establish

14   maximal total damages attributable to Valve's monopolistic conduct, but *also* to ensure that

15   publishers secured the lion's share of those damages. Having pursued those incentives, Vorys may

16   not now represent consumers, who have the opposite financial incentive.

17   Even assuming Vorys's co-counsel are wrong and publishers and consumers *could have*

18   litigated as a single class from the beginning,[3] once publishers proceeded to discovery and class

19

20   Sellers & Toll as Interim Lead or Co-Lead Class Counsel for the putative consumer class. *See Hepler* Pls.' Mot. to Appoint, *In re Valve Antitrust Litig.* (W.D. Wash. Dec. 20, 2024), ECF No. 407.

21   Plaintiffs John Elliott, Ricardo Camargo, Javier Rovira, and Bradley Smith ("*Elliott* Plaintiffs") also filed a consumer case and moved to appoint Hagens Berman and Bucher Law Co-Lead Counsel. *See*

22   *Elliott* Pls.' Am. Mot. to Appoint, *In re Valve Antitrust Litig.* (W.D. Wash. Dec. 20, 2024), ECF No. 412.

23   [3] Wilson Sonsini, now interim co-lead counsel for the publisher class, intervened in *Wolfire*

24   when Vorys sought to represent both publishers and consumers, arguing that uniting publishers and consumers in a single class was impermissible from the outset. *See Dark Catt* Pls.' Resp. to Mot. to

25   Appoint, *Wolfire* (Aug. 13, 2021), ECF No. 46. After Vorys's consumer claims were sent to arbitration, Vorys and Wilson Sonsini teamed up to represent the *Wolfire* publisher class. *See* Mot. to

26   Appoint at 1 n.1, *Wolfire* (July 22, 2022), ECF No. 91.

*Hepler* Plaintiffs' Response in
Opposition to *Colvin* Plaintiffs'
Amended Leadership Motion

Page 2

Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600

1  certification separately, they crystallized precisely the conflict of interest Vorys now dismiss as

2  "speculative." Even if it were permissible for publishers and consumers to pursue their claims

3  *together*, because class representatives and counsel's obligation to the class *as a whole* could have

4  protected against favoritism, once the case has materially proceeded as a *one-sided* class, there is no

5  such protection. Indeed, Vorys were *ethically obligated* to pursue the interests of their publisher

6  clients *to the detriment of the consumer class it now seeks to represent*.

7         Basic ethics dictates that Vorys may not now, on consumers' behalf, take positions that

8  would *undermine* positions taken as publishers' counsel on behalf of their publisher clients, and this

9  constraint is incompatible with adequate representation. Consumers' counsel must have the

10  *flexibility* to pursue consumers' interests in opposition to publishers, even if consumers and

11  publishers generally share goals of establishing liability and maximizing total damages. The need for

12  this flexibility is not speculative, because the publishers have *already* proposed an allocation of

13  damages without any representation of consumers' interests; even if consumers ultimately agree with

14  the allocation of damages set forth by publishers' experts, that decision must be made by counsel

15  who are not shackled to publishers' interests. Vorys's representation of adverse interests pollutes the

16  adequacy of any Vorys representation of consumers and, notably, the procedural fairness of any

17  settlement reached on consumers' behalf. In other words, if Vorys are appointed interim class

18  counsel for consumers, the Court will likely be *unable* to approve any settlement, because Federal

19  Rule of Civil Procedure 23(e)(2) specifically requires attention to the "procedural concerns" posed

20  by counsel's conflicting financial incentives. Fed. R. Civ. P. 23 advisory committee's note to 2018

21  amendment.

22         Second, Vorys have already demonstrated their willingness to subordinate consumer interests

23  to those of publishers. After their consumer clients' case was stayed, Vorys abandoned these clients

24  and signed up to represent a putative class of *only* publishers, despite publishers' incentive to tilt the

25  allocation of overcharges away from consumers. They are not reliable champions of consumers'

26  interests, unlike the *Hepler* and *Elliott* Plaintiffs' counsel.

*Hepler* Plaintiffs' Response in
Opposition to *Colvin* Plaintiffs'
Amended Leadership Motion

Page 3

Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600

1    Third, even putting these irreconcilable conflicts aside, Vorys lack the experience and

2    qualifications required to lead a consumer class in a multi-billion-dollar antitrust class action against

3    a $40-billion-industry monopolist. Federal Rule of Civil Procedure 23(g)(1)(A)(ii) requires the Court

4    to consider "counsel's experience in handling class actions, other complex litigation, and the types of

5    claims asserted in the action." Vorys appear not to have a single attorney on their case team—or

6    even at their firm—with *any* experience representing plaintiffs in *any* other antitrust class action.

7    This contrasts markedly with the *Hepler* Plaintiffs' and *Elliott* Plaintiffs' counsel, each of which

8    employ dozens of full-time plaintiffs'-side antitrust class action litigators, and which have extensive

9    experience and successes in analytically similar Sherman Act Section 2 antitrust litigation. *See*

10   *Hepler* Pls.' Mot. to Appoint at 7-11. This is the type of representation consumers deserve and that

11   Rule 23 requires.

12

13   **II.    ARGUMENT**

14       **A.    Vorys May Not Represent Any Class of Consumer Plaintiffs in Any Related**
             **Matter.**
15

16           **1.    Vorys's Extensive Work for the Publisher Class Prevents Them from**
                  **Adequately Representing the Consumer Class.**

17   Vorys claim there is no intrinsic conflict between consumers' and publishers' interests.

18   Vorys Mot. at 9-12. That is unclear, as Vorys's own co-counsel argued previously. *Dark Catt* Pls.'

19   Resp. to Mot. to Appoint Counsel at 5-10, *Wolfire*, ECF No. 46. But even assuming that Vorys *could*

20   *have* represented both consumers and publishers in a single class when the cases were originally

21   consolidated, they cannot do so *now*, having represented *only* publishers through discovery and their

22   motion for class certification, where consumer and publisher interests diverge. Vorys have already

23   committed to positions under a duty of undivided loyalty to the publishers; they may not now divide

24   their loyalties and undermine those positions on behalf of consumers. *See, e.g.*, *Ortiz v. Fibreboard*

25   *Corp.*, 527 U.S. 815, 856 (1999); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009)

26   ("The responsibility of class counsel to absent class members whose control over their attorneys is

---

*Hepler* Plaintiffs' Response in
Opposition to *Colvin* Plaintiffs'
Amended Leadership Motion

Page 4

Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600

1  limited does not permit even the appearance of divided loyalties of counsel." (quotation omitted)).

2  Vorys maintain that consumers and publishers share a "unity of interests" in proving

3  anticompetitive effects on both sides of the platform, and that there is no conflict between consumers

4  and publishers as to allocation of damages because the "expert for the putative developer class

5  analyzed damages to both sides of the Steam platform . . . and developed a damages model for

6  Valve's platform based on an informed, rational, economic analysis." Vorys Mot. at 10-11. They

7  argue that conflicts over damages are "speculative," rather than present and fundamental. *Id.* at 11.

8  Not so. Even where both sides of a two-sided market might permissibly litigate together as a class,

9  once either side has proceeded *separately* to a point where the sides' interests materially diverge,

10  their unity of interests is fundamentally fractured.

11  Courts have found allocation conflicts to be speculative where two or more segments of a

12  putative class seek to litigate *together* with common counsel, who seek to represent the putative class

13  *as a whole*. *See, e.g.*, *Pfaff v. Washington*, 2007 WL 4225059, at *6 (W.D. Wash. Nov. 27, 2007);

14  *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003). While counsel represent a unified putative

15  class, even class members with opposing allocation interests often have unified interests in

16  establishing liability, winning class certification, and maximizing overall damages; and interim class

17  counsel is *legally and ethically* obligated to pursue those goals without favoritism to any segment of

18  the putative class. *See, e.g.*, *Rodriguez*, 563 F.3d at 968 ("[C]lass counsel's fiduciary duty is to the

19  class as a whole and it includes reporting potential conflict issues."). Moreover, counsel's *financial*

20  *incentives* are structured without favoritism—counsel's fees are typically determined as a percentage

21  of *common funds* achieved, without reference to how funds are divided among the class. *See Carlin*

22  *v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1018 (E.D. Cal. 2019) (citing *Boeing Co. v. Van*

23  *Gemert*, 444 U.S. 472, 478 (1980)). Thus, even if two segments of the putative class have opposing

24  interests in, for example, allocation of overcharge, *counsel* are motivated to pursue only the sides'

25  *unified* goals of maximizing damages and chances of winning. Their incentive is to choose the most

26  defensible allocation, not one that steers damages to one portion of the class or another.

---

*Hepler* Plaintiffs' Response in
Opposition to *Colvin* Plaintiffs'
Amended Leadership Motion

Page 5

Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600

When counsel represent a putative class comprised of only *one side* of opposing allocation interests, however, their incentives are skewed toward their clients at the expense of the other side. Counsel's obligation to represent the class *as a whole* adheres only to the proposed class members, and their financial incentive is to maximize recovery *for the side they represent*, even at the expense of parties they *don't* represent.[4] Thus, when representing a putative class of publishers, Vorys are legally obligated and financially incentivized to pursue an allocation of damages that maximally favors publishers. Indeed, Vorys might even be incentivized to trade off the goal of maximizing the potential overcharge (an interest publishers and consumers share) against establishing a more favorable allocation for publishers. These trade-offs are not at all hypothetical: Vorys have *already* helped prepare class certification briefing in *Wolfire* asserting that their publisher clients bore at least 75 percent of Valve's overcharge—a figure that Vorys, consistent with their fiduciary duty, reached with only *publishers*' best interests in mind. Expert Report of Steven Schwartz ¶ 402, *Wolfire* (Aug. 20, 2024), ECF No. 343. But if Vorys were now appointed counsel for consumers, they would be unable to argue that consumers were entitled to any more than 25 percent—regardless of the defensibility of a higher figure—thanks to decisions they made without ever considering consumers' best interests.

Litigation is *full* of strategic decisions, and courts lack the omniscience that would be required to say to what extent Vorys's decisions to date *substantively* favor publishers at the expense of consumers. Obviously, Vorys's one-sided incentive strongly implicates their work with experts in

---

[4] Vorys may counter that they have never stopped representing their individual consumer clients, and that their simultaneous representation of consumers and publishers has safeguarded against a publisher-friendly allocation of damages. If so, they have failed in their duty of loyalty to the putative publisher class by failing to pursue the class's interests; because Vorys represents *two sets* of clients—a class of publishers and individual consumers—rather than *a single class* to whom they owes a duty of loyalty *as a whole*, their duties of loyalty are impermissibly divided against one another. Moreover, unlike in other unitary-representation cases, here Vorys's *financial* incentive was to strongly prefer the live and potentially lucrative publisher class over the interests of their individual consumer clients, whose claims were stayed pending arbitration and (at the time) apparently much less likely to bear fruit.

---

*Hepler* Plaintiffs' Response in
Opposition to *Colvin* Plaintiffs'
Amended Leadership Motion

Page 6

Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600

1    preparing the publishers' motion for class certification; but any number of other, harder-to-infer

2    litigation decisions may have been influenced by the fact that Vorys's bread was buttered on the

3    publishers' side. For example, their discovery requests may not have adequately addressed consumer

4    issues; or in negotiations they may have traded away discovery important to consumers against

5    discovery important to publishers. Vorys may have selected publisher-focused documents for

6    depositions, leaving documents important to consumers on the table. It is impossible to untangle

7    which decisions are substantively infected by Vorys's one-sided incentives, which is why courts

8    addressing the adequacy of class representation focus primarily on *structural* and *procedural*

9    fairness.[5] *See, e.g.*, *Ortiz*, 527 U.S. at 855 (noting that "even ostensible parity" in subclass outcomes

10   "would be insufficient to overcome the failure to provide the structural protection of independent

11   representation as for subclasses with conflicting interests").

12        Vorys may not cure this conflict by pursuing additional discovery or revisiting expert reports

13   on behalf of consumers, or even by withdrawing from their representation of publishers. *See* Wash.

14   Rules Pro. Conduct r.1.9 (prohibiting an attorney from who has formerly represented a client from

15   representing a different client in "the same or a substantially related matter in which that person's

16   interests are materially adverse to the interests of the former client"); Model Rules of Pro. Conduct

17   r.1.9 (Am. Bar Ass'n) (same). Having taken any number of legal positions on publishers' behalf,

18   Vorys may not now undermine those positions or seek to change them on consumers' behalf,

19

20        [5] Notably, courts must again inquire into procedural fairness at settlement. *See* Fed. R. Civ. P.
21   23(e)(2) (setting forth procedural factors for settlement approval); *see also, e.g.*, *In re Tableware
     Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (describing the requirement at
22   preliminary approval that the settlement "not improperly grant preferential treatment to class
     representatives or segments of the class"); *Steinberg v. CoreLogic Credco, LLC*, 2023 WL 6429824,
23   at *6 (S.D. Cal. Oct. 2, 2023); *Moorer v. StemGenex Med. Grp., Inc.*, 2021 WL 4993054, at *3 (S.D.
     Cal. Oct. 26, 2021); *Stoddart v. Express Servs.*, 2020 WL 5944449, at *3 (E.D. Cal. Oct. 7, 2020). If
24   all consumer class counsel previously represented the putative publisher class, it is unlikely the
     Court could approve any settlement Vorys might make on behalf of consumers as fair, reasonable,
25   and adequate, because the class could not be certain that consumers received full, unconflicted
     representation. At minimum, such a settlement would draw objectors and appeals, likely delaying
26   class members' access to settlement funds.

*Hepler* Plaintiffs' Response in
Opposition to *Colvin* Plaintiffs'
Amended Leadership Motion

Page 7

Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600

because it would prejudice those positions for the publishers they have represented to date. So, for example, Vorys may not offer an expert report that reaches a different conclusion on allocation of overcharge than the one they have submitted on behalf of publishers, because such a report would provide ammunition against the publishers' expert. But unconflicted counsel might well submit such a report, because the publishers' report was prepared in consultation with counsel whose interests were aligned with publishers. In short, Vorys's prior representation constrains them from fully pursuing consumers' interests.

In none of the cases Vorys cites, nor any of which the *Hepler* Plaintiffs are aware, have counsel appointed to represent *one putative class* been permitted to represent *another putative class* with an opposing allocation interest. Once any substantive litigation decisions bearing on the sides' opposing interests are made, counsel have committed themselves to their positions on behalf of the clients they represent, and cannot thereafter pursue opposed interests without prejudicing one side or the other.[6]

### 2. Vorys Have Demonstrated Their Willingness to Subordinate Consumer Interests.

The way Vorys have represented their individual clients thus far does not inspire confidence in their ability to adequately represent a *class* of consumers; indeed, having lost their battle over arbitration, Vorys's response was apparently to let their clients' cases languish and take on a representation adverse to their consumer clients' interests.[7] As shown by Bucher Law's successful

---

[6] Though *Hepler* Plaintiffs do not represent publishers and take no position on publishers' behalf, they note that there may be other non-damages matters on which publishers' and consumers' interests diverge. Most notably, publishers' ongoing, multi-product relationships with Steam, partly adversarial and partly cooperative, may lead publishers to want particular kinds of injunctive relief or to potentially prioritize injunctive relief over cash settlements. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233 (2d Cir. 2016) (holding that the "fault lines were glaring as to matters of fundamental importance" between class members who "would want to maximize cash compensation for past harm" and those who "would want to maximize restraints . . . prevent harm in the future").

[7] Apparently only one of Vorys's consumer clients has pursued arbitration, leaving their other four clients in limbo. *See* Vorys Mot. at 1 n.1.

---

*Hepler* Plaintiffs' Response in
Opposition to *Colvin* Plaintiffs'
Amended Leadership Motion

Page 8

Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600

1  efforts to defeat Steam's arbitration clause, though, these clients' fates were far from a foregone

2  conclusion.

3          No decision of the Court forced Vorys to abandon their consumer clients. Instead, Vorys

4  made a strategic decision to pursue a publisher class alongside counsel for *Wolfire* and *Dark Catt*—

5  despite the *Dark Catt* firms' grave concerns about potential dual representation—in order to secure a

6  potentially lucrative position. While that may have been the most lucrative decision at the time for

7  Vorys, or even for the publisher class they now represent, it was not the right decision for Vorys's

8  clients. Vorys's willingness to subordinate consumer interests is incompatible with adequate

9  representation of a putative consumer class.

10              **3.    Conflicts Aside, Vorys Are Not Qualified to Represent the Consumer
                        Class**

11

12          Even if Vorys were unconflicted, they lack the experience and qualifications necessary to

13  lead an antitrust case of this complexity. Rule 23 dictates that when appointing class counsel, the

14  Court "must consider . . . counsel's experience in handling class actions, other complex litigation,

15  and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). This factor weighs

    against Vorys's appointment.
16

17          Vorys have only seven attorneys who claim to litigate antitrust cases—none of whom

18  appears to have *ever* represented plaintiffs in an antitrust class action other than this one.[8] *See*

19  *Professionals*, Vorys (last visited Jan. 10, 2025), https://www.vorys.com/professionals. Vorys's lead

20  counsel touts his experience representing "plaintiffs in a multi-plaintiff commercial fraud case" and

21  reaching "class-action settlements on behalf of class members in two [non-antitrust] cases." Vorys

22  Mot. at 6-7. And none of Vorys's supporting counsel provides a single example of an antitrust case

23          ───────────────

            [8] Non-class experience with antitrust law does not suffice, because antitrust class actions
24  typically succeed or fail on the strength of their motions for class certification. *See Microsoft Corp.*
    *v. Baker*, 582 U.S. 23, 29 & n.2 (2017) (observing that "denial of class certification may sound the
25  death knell for plaintiffs," while "[c]ertification of a large class may so increase the defendant's
    potential damages" that it sounds a "'reverse death knell' . . . for it too ends the litigation as a
26  practical matter" (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978))).

1  on which he or she has worked, let alone a complex antitrust class action on behalf of plaintiffs. *Id.*

2  at 7-8. In short, it does not appear that Vorys employ a single attorney with *any* experience litigating

3  the "types of claims asserted in the action," never mind a track record of success. Fed. R. Civ. P.

4  23(g)(1)(A)(ii).

5      Vorys's experience contrasts markedly with that of the *Hepler* Plaintiffs' counsel. Cohen

6  Milstein employ *38* full-time plaintiffs'-side class action antitrust litigators—including some of the

7  most well-reputed attorneys in the antitrust bar—and have secured over *$2 billion* in settlements and

8  verdicts for antitrust plaintiffs in the last year alone. *See Hepler* Pls. Mot. to Appoint at 7-10. Each of

9  the Cohen Milstein attorneys representing the *Hepler* Plaintiffs has achieved significant, multi-

10  hundred-million-dollar settlements on behalf of plaintiffs in similar antitrust class actions. *Id.*

11  Similarly, the *Elliott* Plaintiffs' counsel Hagens Berman—whom the *Hepler* Plaintiffs have proposed

12  as a potential co-lead counsel—employ dozens of plaintiffs'-side class action antitrust litigators and

13  have an extensive history of success. *See Elliott* Pls.' Mot. to Appoint at 11-12. It is unsurprising that

14  Hagens Berman were awarded Law360's "Practice Group of the Year—Competition" last year, *see*

15  *id.* at 7, and that Cohen Milstein won the award the year before, *see* Decl. of Brent W. Johnson Ex.

16  A at 3, *In re Valve Antitrust Litig.* (Dec. 20, 2024), ECF No. 408-1.

17      This is a multi-billion-dollar antitrust class action targeting the core business model of a

18  monopolist in a $40 billion dollar industry serving hundreds of millions of consumers. Vorys simply

19  do not have the kind of experience the consumer class in such an action deserves—and, under Rule

20  23, requires—from its counsel. Cohen Milstein and Hagens Berman, two leaders of the plaintiffs'

21  antitrust bar, demonstrate the level of expertise and advocacy such a case merits.[9]

22

23      [9] Indeed, Vorys's limited work on behalf of consumers in this action only heightens these
    concerns regarding the firm's lack of experience. As the sole firm to initially bring a consumer-*only*

24  action against Steam, *see* Compl., *Colvin v. Valve Corp.*, No. 2:21-cv-00801 (C.D. Cal. Jan. 28,
    2021), ECF No. 1, Vorys presumably should have been best prepared to rebut Valve's argument that

25  Steam's consumer terms of use required arbitration. But in deciding against the *Wolfire* Plaintiffs—
    and cutting off the consumer case at the outset—the Court's five-page opinion noted that Vorys had

26  failed to "meaningfully challenge the delegation provision [in the arbitration clause] as

*Hepler* Plaintiffs' Response in
Opposition to *Colvin* Plaintiffs'
Amended Leadership Motion

Page 10

Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600

1

## III.  __CONCLUSION__

2          For the reasons set forth above, the Court should not appoint Vorys as interim co-lead

3   counsel for the developer class.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   unconscionable," which precluded any further inquiry into arbitrability. Order on Mot. to Compel
     Arb. at 3. It is basic arbitration law that any challenge to an arbitration agreement must first
24   challenge a delegation clause within the agreement specifically. *See*, e.g., *Brennan v. Opus Bank*,
     796 F.3d 1125, 1133 (9th Cir. 2015) (setting forth "the requirement that a party must specifically
25   challenge the delegation provision" before challenging an agreement to arbitrate). This failure to
     raise even a colorable defense against arbitration of their clients' claims raises serious non-conflict
26   questions as to Vorys's capacity to effectively represent a consumer class.

1  DATED this 10th day of January, 2025

2                                      /s/ Brent W. Johnson
3                                      Brent W. Johnson (*pro hac vice*)
                                       Benjamin D. Brown (*pro hac vice*)
4                                      Robert W. Cobbs (*pro hac vice*)
                                       COHEN MILSTEIN SELLERS & TOLL PLLC
5                                      1100 New York Ave. NW, Fifth Floor
                                       Washington, DC 20005
6                                      (202) 408-4600
                                       bbrown@cohenmilstein.com
7                                      bjohnson@cohenmilstein.com
                                       rcobbs@cohenmilstein.com

8                                      Christopher J. Bateman (*pro hac vice*)
9                                      Daniel Gifford (*pro hac vice*)
                                       COHEN MILSTEIN SELLERS & TOLL PLLC
10                                     88 Pine St., 14th Floor New York, NY 10005
                                       Tel: (212) 838-7797
11                                     Fax: (212) 838-7745
                                       cbateman@cohenmilstein.com
12                                     dgifford@cohenmilstein.com

13

14                                     /s/ Corrie Yackulic
15                                     Corrie Yackulic (WSBA No. 16063)
                                       CORRIE YACKULIC LAW LLC
16                                     110 Prefontaine Place S., Suite 304
                                       Seattle, WA 98104
17                                     Tel: (206) 787-1915
                                       corrie@cjylaw.com

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

1
2
3      I hereby certify that on January 10, 2025, I electronically filed the foregoing with the Clerk
4  of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF
5  recipients.
6
7  Dated:     January 10, 2025                                /s/ *Brent W. Johnson*
8                                                             Brent W. Johnson
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**LCR 7 CERTIFICATION**

I certify that this memorandum contains 3,958 words, in compliance with the Local Civil Rules

Dated:    January 10, 2025                          /s/ *Brent W. Johnson*

Brent W. Johnson

*Hepler* Plaintiffs' Response in
Opposition to *Colvin* Plaintiffs'
Amended Leadership Motion                    Page 14                    Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600