HON. JAMAL N. WHITEHEAD

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | No. 2:21-cv-00563-JNW |
| | **COLVIN PLAINTIFFS' OPPOSITION TO ELLIOTT PLAINTIFFS', HEPLER PLAINTIFFS', AND DRAKE PLAINTIFFS' MOTIONS TO APPOINT INTERIM LEAD CLASS COUNSEL** |
| This Filing Relates to: | |
| ALL ACTIONS | NOTE ON MOTION CALENDAR: January 17, 2025 |

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ...................................................................................................... 1

II. PROCEDURAL BACKGROUND ............................................................................. 1

III. LAW AND ARGUMENT ......................................................................................... 2

    A.  Vorys is the most qualified law firm under Rule 23(g) to serve as interim lead class counsel for the putative consumer class ................................. 2

        1.  Vorys is far more familiar with this case than other interim lead class counsel applicants ........................................................ 2

        2.  Vorys has done more work identifying and investigating claims in this action than Hepler Counsel, Drake Counsel, and Elliott Counsel ......................................................................................... 4

        3.  Vorys laid the groundwork for the Hepler Plaintiffs', Drake Plaintiffs', and Elliott Plaintiffs' complaints ................................. 9

    B.  Vorys does not have a conflict of interest, but Elliott Counsel do ...................... 11

        1.  The consumers' and developers' interests are aligned, and Vorys' representation in this case does not create a conflict ............................... 11

        2.  Elliott Counsel's continued representation of consumers in arbitration and litigation creates a conflict and prevents them from serving as interim lead class counsel ...................................................... 15

    C.  The argument that Colvin Plaintiffs have been dropped from *In Re Valve Antitrust Litigation* is specious ........................................................................... 17

IV. CONCLUSION ........................................................................................................ 18

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A Cemal Ekin v. Amazon Servs., LLC*, No. C14-0244-JCC, 2014 U.S. Dist. LEXIS 199367 (W.D. Wash. May 23, 2014) .......................................................................................... 4

*Boone v. Amazon.Com Servs., LLC*, No. 1:21-CV-00241-ADA-BAM, 2023 U.S. Dist. LEXIS 93655 (E.D. Cal. May 30, 2023) ................................................................................. 3

*Brown v. NFL Players Ass'n*, 281 F.R.D. 437 (C.D. Cal. 2012) ............................................... 14

*Frame-Wilson v. Amazon.com, Inc.*, No. 2:20-cv-00424 (W.D. Wash.) ................................. 3, 4

*Granata v. Pratt & Whitney*, No. 3:21-CV-01657 (SVN), 2022 U.S. Dist. LEXIS 43347 (D. Conn. Mar. 11, 2022) ............................................................................................ 10

*Grubhub Holdings, Inc., et al. v. Visa Inc., et al.*, Case No. 1:19-cv-07273 (N.D. Ill.) ............ 3, 7

*In re Amazon Return Pol'y Litig.*, No. 2:23-cv-1372, 2024 U.S. Dist. LEXIS 30916 (W.D. Wash. Feb. 22, 2024) ................................................................................................ 2, 4

*In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242 (2d Cir. 2011) ............................................................................................................................ 13

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ............................................. 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016) ............................................................................................................................ 12

*Lou v. Ma Labs.*, No. C 12-05409 WHA, 2014 U.S. Dist. LEXIS 2665 (N.D. Cal. Jan. 8, 2014) ...................................................................................................................... 12, 13

*Martinez v. State Farm Mut. Auto. Ins. Co.*, 615 F. Supp. 3d 584 (W.D. Ky. 2022) ................... 17

*Mell v. Anthem, Inc.*, 264 F.R.D. 312 (S.D. Ohio 2009) ......................................................... 14

*Moore v. Roadway Express, Inc.*, No. CV 09-1588, 2009 U.S. Dist. LEXIS 135776 (C.D. Cal. Oct. 7, 2009) ...................................................................................................... 11

*Murray v. Grocery Delivery E-Services USA Inc.*, 55 F.4th 340 (1st Cir. 2022) ....................... 13

*Nitride Semiconductors Co. v. Digi-Key Corp.*, No. 17-cv-4359 (JRT/LIB), 2020 U.S. Dist. LEXIS 262020 (D. Minn Aug. 10, 2020) ..................................................................... 17

*Ohio v. Am. Express Co.*, 585 U.S. 529 (2018) ................................................................... 7, 12

*Oliger v. Flywheel Energy Prod., LLC*, Nos. 4:20-cv-01146-LPR, 4:20-cv-01147-LPR, 2022 U.S. Dist. LEXIS 10794 (E.D. Ark. Jan. 20, 2022) .............................................. 15

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

*Pfaff v. Washington*, No. 07-5280RJB, 2007 U.S. Dist. LEXIS 90257 (W.D. Wash. Nov. 27, 2007) ............................................................................................................ 14

*Shields v. World Aquatics*, Nos. 23-15092, 23-15156, 2024 U.S. App. LEXIS 23559 (9th Cir. Sept. 17, 2024)................................................................................... 13, 14

*Soc. Servs. Union, Loc. 535, etc. v. Cnty. of Santa Clara*, 609 F.2d 944 (9th Cir. 1979) ........... 14

*Target Corp., et al. v. Visa Inc., et al.*, Case No. 1:13-cv-03477 (S.D.N.Y.)............................. 3, 7

**Other Authorities**

1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 3:75 (6th ed. 2022) .................................... 13

BLACK'S LAW DICTIONARY (11th ed. 2019) ....................................................................... 17

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11 (2004)............................................... 1

**Rules**

Fed. R. Civ. P. 23....................................................................................................... 2

Fed. R. Civ. P. 23(b)(3)............................................................................................. 16

Fed. R. Civ. P. 23(g)(1)(A)........................................................................................ 2

Fed. R. Civ. P. 23(g)(3)............................................................................................. 2

## I.    INTRODUCTION

The role of interim lead class counsel exists to protect the best interests of the putative class members.  *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11 (2004) ("[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities.").  Vorys is the law firm best suited to protect those interests in this case. As explained below, the other moving counsel all filed antitrust claims on behalf of consumers against Valve years after Vorys did, utilizing the thousands of hours that Vorys spent investigating and litigating these claims to bring their lawsuits, while lacking Vorys' specific knowledge about the applicable facts and law in this case due to the limited time they have spent working on these claims.

Vorys' involvement in this case over the past five years proves its commitment to prosecuting antitrust claims against Valve and securing relief for the putative consumer class. Hepler Counsel, Drake Counsel, and Elliott Counsel cannot and do not show a similar commitment.  The Colvin Plaintiffs respectfully request that this Court deny the motions of the Hepler Plaintiffs, Drake Plaintiffs, and Elliott Plaintiffs to appoint their counsel as interim lead class counsel.  (ECF 407, ECF 411, ECF 412).

## II.    PROCEDURAL BACKGROUND

Almost four years ago, Vorys filed suit on behalf of five named plaintiffs, and all others similarly situated, pursuing antitrust claims against Valve based on the supracompetitive commissions that Valve charges video game developers which in turn increase prices for consumers when those supracompetitive commissions are partially passed on to consumers.  *Sean Colvin et al. v. Valve Corp.* (Case No. 2:21-cv-00801 C.D. Cal.) ECF 1.  Through subsequent transfers and consolidations, the *Colvin* litigation is now pending as *In re Valve Antitrust Litigation* (Case No. 2:21-cv-00563-JNW).  *Colvin et al. v. Valve Corp.* ECF 36; ECF 29;[1] ECF 90.  The Hepler Plaintiffs, Drake Plaintiffs, and Elliott Plaintiffs only recently filed lawsuits against Valve

---

[1] All ECF citations without case names refer to the docket in this case (*In re Valve Antitrust Litigation*, Case No. 2:21-cv-00563-JNW).

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 1
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

alleging substantially similar claims to those developed by Vorys and co-counsel on behalf of the Colvin Plaintiffs. *See Elliott et al. v. Valve Corp.* ECF 1 (filed Aug. 9, 2024); *Hepler et al. v. Valve Corp.* ECF 1 (filed Oct. 23, 2024); *Drake et al. v. Valve Corp.* ECF 1 (filed Oct. 24, 2024); ECF 394 at 2 ("The plaintiffs in all cases include PC video game consumers, and they allege that Defendant Valve Corp. has used anticompetitive restraints on trade to monopolize the PC game distribution market thereby harming consumers."). Given these similarities, this Court consolidated the Hepler Plaintiffs', Drake Plaintiffs', and Elliott Plaintiffs' cases with *In re Valve Antitrust Litigation*. ECF 394 at 3. Colvin Counsel, Hepler Counsel, Drake Counsel, and Elliott Counsel have all moved for appointment as interim lead class counsel. ECF 409; ECF 407; ECF 411; ECF 412.

### III.    LAW AND ARGUMENT

Federal Rule of Civil Procedure 23 allows this Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). When deciding which law firm to appoint as interim lead class counsel, courts evaluate "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); *In re Amazon Return Pol'y Litig.*, No. 2:23-cv-1372, 2024 U.S. Dist. LEXIS 30916, at *5 (W.D. Wash. Feb. 22, 2024). On balance, these factors support appointing Vorys as interim lead class counsel over Hepler Counsel, Drake Counsel, and Elliott Counsel.

**A.    Vorys is the most qualified law firm under Rule 23(g) to serve as interim lead class counsel for the putative consumer class.**

**1.    Vorys is far more familiar with this case than other interim lead class counsel applicants.**

As Hepler Plaintiffs note, this is a "legally innovative and factually complex monopoly suit" and "[m]anaging such herculean discovery requires a deep bench of lawyers who are

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 2
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

intimately familiar with case details and strategy," underscoring the need to appoint a law firm familiar with the facts of this case and antitrust law as applied to two-sided platforms. ECF 407 at 4, 11. Vorys has become intimately familiar with the complex facts of this case by actively litigating and engaging in extensive discovery on these antitrust claims against Valve for the past four years. Declaration of Kenneth J. Rubin ("Rubin Decl.") ¶ 3, filed concurrently herewith. Vorys has also gained expertise in cases involving two-sided platforms by litigating antitrust claims against Visa and Mastercard for over a decade. *Id.*; *see Target Corp., et al. v. Visa Inc., et al.*, Case No. 1:13-cv-03477 (S.D.N.Y.); *Grubhub Holdings, Inc., et al. v. Visa Inc., et al.*, Case No. 1:19-cv-07273 (N.D. Ill.).

Hepler Counsel, who have neither litigated nor arbitrated antitrust claims against Valve on behalf of consumers, claim that "they will hit the ground running, with the advantage of familiarity with the facts and legal theory of the case." ECF 407 at 9. Elliott Counsel also claim they can "hit the ground running if they are appointed to represent the Consumer Class" based on their work in arbitration proceedings. ECF 412 at 9. Unlike these firms, Vorys does not need to hit the ground running—it has been running for years. Vorys has been involved with depositions, experts, and written discovery in this case, including Valve's production of more than 2.5 million documents. Rubin Decl. ¶ 4; *Boone v. Amazon.Com Servs., LLC*, No. 1:21-CV-00241-ADA-BAM, 2023 U.S. Dist. LEXIS 93655, at *5–6 (E.D. Cal. May 30, 2023) (appointing law firm as interim lead class counsel that initiated the case two years before filing a leadership motion and "retained three experts, analyzed data produced by Defendant, and produced reports from Plaintiffs' experts"). Vorys will need far less time to conduct discovery and is poised to reach class certification, summary judgment, and trial much faster than any other law firm seeking appointment as interim lead class counsel. Rubin Decl. ¶ 5. Appointing Vorys promotes efficiency and provides the class members with counsel most knowledgeable about this case.

Additionally, Elliott Counsel claim to have "pioneered" the antitrust theory that platform most-favored-nations clauses ("PMFN") can violate the Sherman Act in *Frame-Wilson v.*

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 3
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

*Amazon.com, Inc.*, No. 2:20-cv-00424 (W.D. Wash.).  ECF 412 at 5.  But the economics regarding PMFNs predate this "pioneering" effort by years.  *See Colvin et al. v. Valve Corp.* ECF 1 at ¶¶ 39–53 (discussing PMFN literature).  And Vorys began investigating these PMFN claims against Valve in 2019—before the *Frame-Wilson* action was filed.  Rubin Decl. ¶ 6.

Hepler Counsel, Drake Counsel, and Elliott Counsel also discuss their history working with other law firms involved in this case to assure this Court they can litigate productively and efficiently.  ECF 407 at 14; ECF 411 at 11; ECF 412 at 10.  To the extent this argument favors any law firm, it would be Vorys, the firm that has already worked collaboratively with developer counsel for the past three years in this case.  Rubin Decl. ¶ 7.  Indeed, there was initially a leadership fight on the developer side of this litigation, but the law firms, including Vorys, were able to reach a resolution and work well together over the last several years.  *Id.*; *see also* ECF 63; ECF 92.

### 2.    Vorys has done more work identifying and investigating claims in this action than Hepler Counsel, Drake Counsel, and Elliott Counsel.

Of all the firms filing motions in support of an interim lead class counsel appointment, Vorys attorneys have done the most work identifying and investigating antitrust claims on behalf of consumers in this action against Valve.  *See A Cemal Ekin v. Amazon Servs., LLC*, No. C14-0244-JCC, 2014 U.S. Dist. LEXIS 199367, at *14–15 (W.D. Wash. May 23, 2014) (appointing law firm as interim lead class counsel because it devoted more time to pre-filing investigation, filed the first complaint, and had more experience litigating claims under the applicable law, which demonstrated that the law firm "will best be able to represent the putative class members").  Vorys has spent more than 6,000 hours litigating and more than 2,000 hours arbitrating these claims over the course of four years.  Rubin Decl. ¶ 8; *In re Amazon Return Pol'y Litig.*, 2024 U.S. Dist. LEXIS 30916, at *7 (appointing law firm that dedicated the most hours to the case because that shows the law firm did "an exceedingly thorough job working up the case, raising a presumption that they are the most knowledgeable about the policies and practices at issue and best prepared to advance

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 4
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

the litigation").

The amount of time that Hepler and Drake Counsel have spent on this case pales in comparison. *See* ECF 407 at 9 (Hepler counsel admits they simply followed the progress of this litigation for years); ECF 411 at 10 (Drake Counsel supposedly investigated these claims for hundreds of hours over two years—a period that overlaps the pendency of this litigation). Elliott Counsel claim that Bucher Law attorneys have spent more than 5,500 hours litigating antitrust claims against Valve, but the bulk of that stems from work related to consumer arbitrations, *after* the Colvin Plaintiffs initiated suit and were ordered to pursue claims in arbitration. ECF 412-2 ¶¶ 6, 8; ECF 412 at 9. By contrast, the 6,000 hours that Vorys has dedicated to litigating against Valve relate to the substance of *this* litigation, including pre-suit investigation and in-case discovery, depositions, and expert-related work. Rubin Decl. ¶ 8. Vorys' litigation work is more applicable to this leadership analysis than Elliott Counsel's arbitration work, given that the law firm appointed interim lead class counsel will litigate, and not arbitrate, the consumer claims against Valve. Moreover, Vorys attorneys have spent an additional 2,000 hours working on consumer arbitrations against Valve. *Id.*

The difference between the work Vorys has done on this case and the work of other interim lead class counsel applicants is plain. Vorys started working on developing consumer antitrust claims against Valve in 2019, whereas other law firms began doing so years later, only *after* they were alerted to these claims by Vorys' own work. *Id.* ¶ 9; ECF 411 at 10 (Drake Counsel started investigating antitrust claims against Valve less than two years ago); ECF 412 at 6 (Elliott Counsel started representing individual clients in arbitrations against Valve in July 2023); ECF 407 at 9 (Hepler Counsel state that they have followed this litigation, which began in 2021 when Vorys filed the first antitrust lawsuit against Valve on behalf of consumers). Vorys filed its complaint against Valve on January 28, 2021, whereas Elliott Counsel filed on August 9, 2024, Hepler Counsel filed on October 23, 2024, and Drake Counsel filed on October 24, 2024. *Compare Colvin et al. v. Valve Corp.* ECF 1, *with Elliott et al. v. Valve Corp.* ECF 1, *and Hepler et al. v. Valve*

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 5
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

*Corp.* ECF 1, *and Drake et al. v. Valve Corp.* ECF 1.  Hepler Counsel and Drake Counsel boast that they followed this litigation for years and filed suit weeks after Valve amended its Steam Subscriber Agreement ("SSA").  ECF 407 at 9–10; ECF 411 at 10.  But Vorys filed the initial lawsuit in 2021 and actively prosecuted this case for years—both in this Court and in arbitrations—before other firms attempted to replicate these efforts.  Rubin Decl. ¶ 10.

Hepler Counsel, Drake Counsel, and Elliott Counsel claim that they are equipped with significant resources and promise to devote them to this case.[2]  ECF 407 at 11; ECF 411 at 10–11; ECF 412 at 15.  Vorys is also equipped with the resources and capital necessary to lead this case, and has already demonstrated its commitment to devoting those resources to the prosecution of this case.  ECF 409 at 12.  Indeed, Vorys has already contributed substantial resources to this litigation, and will continue to do so.  Rubin Decl. ¶ 11.  Vorys started a factual investigation into Valve's business practices on the Steam platform around August 2019.  *Id.* ¶ 12.  During this investigatory period, Vorys spoke with several economists and retained a well-credentialed economist specializing in the main economic issue—platform most-favored-nations clauses—to vet the economic theories at play.  *Id.*  Additionally, Vorys attorneys spent over 1,000 hours reviewing and coding the more than 2.5 million documents produced by Valve in *In re Valve Antitrust Litigation*.[3]  *Id.* ¶ 13.  Vorys took lead on four depositions in *In re Valve Antitrust Litigation* and assisted interim co-lead class counsel for the developers extensively with the depositions and reports of two experts.  *Id.* ¶ 14.

---

[2]  Elliott Counsel mention that "Hagens Berman consistently advances millions of dollars in litigation costs without third-party funding in matters of comparable size and complexity."  ECF 412 at 15.  Similarly, Drake Counsel state that they "commit to advance all legal fees and costs of the litigation without litigation funding."  ECF 411 at 10.  Vorys has not used third-party funding to resource its litigation efforts in this case.  Rubin Decl. ¶ 15.

[3]  Elliott Counsel promise to "maintain a robust timekeeping policy to ensure timely and detailed records of all billable time."  ECF 412 at 15.  Drake Counsel also say they will "maintain detailed, contemporaneous time records and comprehensive accounting of expenses."  ECF 411 at 10–11.  Vorys has used, and will continue to use, an accurate and detailed timekeeping system in this litigation.  Rubin Decl. ¶ 16.  This is how Vorys identified that its attorneys spent more than 1,000 hours reviewing and coding documents produced in discovery.  *Id.*

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 6
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

Hepler Counsel, Drake Counsel, and Elliott Counsel each tout their experience litigating class actions and antitrust claims generally as reason to appoint them interim lead class counsel. ECF 407 at 10–13; ECF 411 at 7–9; ECF 412 at 10–14.  But Vorys, too, has extensive experience litigating class actions and antitrust lawsuits.  ECF 409 at 9–11; *see generally* ECF 410.  This experience applies directly to the instant case: Vorys has spent more than a decade litigating another two-sided platform antitrust action.  Rubin Decl. ¶ 17.  Vorys is representing twenty-five large retailer plaintiffs across two cases alleging that Visa and Mastercard prevent competition among banks and charge monopoly prices to merchants in violation of antitrust laws.  *Id.*; *Target Corp., et al. v. Visa Inc., et al.*, Case No. 1:13-cv-03477 (S.D.N.Y.); *Grubhub Holdings, Inc., et al. v. Visa Inc., et al.*, Case No. 1:19-cv-07273 (N.D. Ill.).  Vorys' clients survived summary judgment and their experts survived *Daubert* challenges, and a trial date has been set in the *Target* matter.  Vorys' clients in the *GrubHub* matter are currently waiting for the judge in that matter to set a trial date.  Rubin Decl. ¶ 17.  The two-sided-platform theory outlined in *Amex* is central to the *Target* and *Grubhub* cases, as well as *In re Valve Antitrust Litigation*.  *See generally Ohio v. Am. Express Co.*, 585 U.S. 529 (2018); Rubin Decl. ¶ 18.  The substantial work Vorys has done in the *Target* and *GrubHub* litigation demonstrates its wherewithal to lead this case.  Rubin Decl. ¶ 18.

Elliott Counsel repeatedly reference their challenge to the SSA arbitration clause as justification for their appointment as interim lead class counsel.  ECF 412 at 4, 9, 14.  But Vorys was the first to challenge the SSA's arbitration provision as unconscionable on behalf of the Colvin Plaintiffs in 2021.  ECF 51 at 11–23; ECF 66 at 3.  This Court held that the issue of unconscionability should be determined by an arbitrator and compelled arbitration.  ECF 66 at 3, 5.  With that directive, Vorys pursued consumer arbitrations to challenge the arbitration clause as unenforceable.  Rubin Decl. ¶ 19 (Letter from Vorys and co-counsel to the American Arbitration Association dated April 19, 2024, stating: "Individual Claimants request that a Process Arbitrator be appointed to address whether the arbitration clause in the Steam Subscriber Agreement is

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 7
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

enforceable.  At least one Individual Claimant intends to raise the issue of unconscionability and resulting unenforceability of the arbitration clause, and a decision on this issue will affect each individual Claimant's obligation to arbitrate their disputes with Valve.").  While the Colvin Plaintiffs' arbitrations did not reach the merits of the claims, that does not take away from the fact that Vorys vigorously pursued the arbitrability issue on behalf of consumers.  Thus, Elliott Counsel's and Hepler Counsel's assertions that "[n]o lawyer would be seeking leadership in this case were it not for *Elliott* Counsel's efforts making class litigation possible" and "[w]ithout [Bucher Law's] initiative, no applications for leadership from any firm would be pending before this Court" are simply untrue.  ECF 412 at 5; ECF 407 at 13.  Instead, the arbitrators presiding over the Elliott Plaintiffs' cases merely reached the arbitrability issue before the arbitrators presiding over the Colvin Plaintiffs' arbitrations.  Rubin Decl. ¶ 20.  Thus, the emphasis that Elliott Counsel place on their arbitration clause challenge is overstated.

Elliott Counsel also mention that "[c]lass plaintiffs often cease litigating when arbitration is compelled in consumer cases" and emphasize that they "did not relent when arbitration was compelled here."  ECF 412 at 4.  But Elliott Counsel had not even begun litigating antitrust claims against Valve when arbitration was compelled.  *Compare Elliott et al. v. Valve Corp.* ECF 1 (Elliott Counsel's complaint filed Aug. 9, 2024), *with* ECF 66 (this Court's order compelling arbitration entered Oct. 25, 2021).  Instead, it was Vorys that pivoted from litigation to arbitration following this Court's order compelling arbitration in 2021 and continued to vigorously pursue claims through arbitration up until Valve's recent change to the SSA allowed this litigation to continue.  Rubin Decl. ¶ 21.  On the other hand, as explained in more detail below, Elliott Counsel piggybacked on this Court's decision compelling arbitration to leverage the arbitration fees in an attempt to force Valve into a quick settlement.  *Zaiger LLC v. Bucher Law PLLC*, Index No. 154124/2023, Doc. No. 32 at Slide 3 (N.Y. Sup. Ct.) (attached as Exhibit 3 to Rubin Decl.) (discussing how to weaponize arbitration to coerce settlement below fee value); Rubin Decl. ¶ 24, Ex. 3.  Elliott Counsel appear to still be pursuing arbitration as their prime strategy, even following

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 8
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

the change to the SSA.  *See Elliott et al. v. Valve Corp.* ECF 35 ¶¶ 12–13, 16; *Elliott et al. v. Valve Corp.* ECF 35-5; *Elliott et al. v. Valve Corp.* ECF 32 at 5; *see generally Valve Corp. v. Abbruzzese et al.*, Case No. 2:24-cv-01717-JNW.

Elliott Counsel refer to the 50,000 arbitration demands they filed against Valve on behalf of consumers as evidence of their work in this case.  ECF 412 at 5, 6.  If this Court is to give that weight, then of equal weight is the fact that Vorys was also involved in consumer arbitrations (with co-counsel) and made over 70,000 demands to Valve on behalf of those clients.  ECF 412 at 5; Rubin Decl. ¶ 22.  Following Valve's amendments to the SSA, Vorys ceased involvement in these arbitrations and returned to its original position—pursuing claims on behalf of a class in litigation—so as to avoid any perceived or actual conflict.[4]  Rubin Decl. ¶ 22.  Conversely, Elliott Counsel still represent consumers in arbitration, take contradictory positions in arbitration and litigation, and promote arbitration as more lucrative than class actions.  *See infra* Part III.B.2.

Finally, Drake Counsel and Elliott Counsel discuss the ways in which their law firms support diversity in the practice of law.  *See* 411 at 9; 412 at 11.  So too does Vorys.  Diversity is a core value at Vorys.  ECF 410 ¶ 4.  Vorys' commitment to diversity has created an atmosphere in which people thrive and are encouraged to use their different talents, perspectives, backgrounds, and experiences to serve our clients.  *Id.*  Likewise, Vorys believes that through its commitment to diversity, its attorneys better serve the communities in which they live and work.  *Id.*  Since 2008, Vorys has been recognized as one of the top gay-friendly workplaces in central Ohio on the Human Rights Campaign's Corporate Equality Index.  *Id.*  Vorys also earned Mansfield Certifications from 2021 to 2024.  *Id.*

### 3. Vorys laid the groundwork for the Hepler Plaintiffs', Drake Plaintiffs', and Elliott Plaintiffs' complaints.

Vorys, the firm that conducted an independent investigation and laid the groundwork for antitrust class actions against Valve, should be appointed interim lead class counsel, not the law

---

[4] The consumers who are choosing to still pursue arbitration continue to be represented by separate counsel.  Rubin Decl. ¶ 22.

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 9
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

firms that copied this work.  *See, e.g.*, *Granata v. Pratt & Whitney*, No. 3:21-CV-01657 (SVN), 2022 U.S. Dist. LEXIS 43347, at *19–20 (D. Conn. Mar. 11, 2022) (appointing counsel who were first to identify claims and did not "piggyback[] on an existing government investigation" as interim lead class counsel).  Vorys' work catalyzed the later actions filed by Elliott Counsel, Hepler Counsel, and Drake Counsel.  These other law firms piggybacked on years of work that Vorys dedicated to developing consumer antitrust claims against Valve and filed lawsuits modeled off the complaints in *In re Valve Antitrust Litigation*.  *Compare* ECF 34, *with Elliott et al. v. Valve Corp.* ECF 1, *and Hepler et al. v. Valve Corp.* ECF 1, *and Drake et al. v. Valve Corp.* ECF 1.

For example, on several occasions Elliott Counsel, Hepler Counsel, and Drake Counsel repeat—sometimes word for word—allegations from the Consolidated Amended Class Action Complaint in *In re Valve Antitrust Litigation* authored by Vorys and co-counsel.  Rubin Decl. ¶ 23; *compare* ECF 34, *with Elliott et al. v. Valve Corp.* ECF 1, *and Hepler et al. v. Valve Corp.* ECF 1, *and Drake et al. v. Valve Corp.* ECF 1.  ECF 410-6 contains a chart with several examples of the Elliott Plaintiffs' complaint parroting the exact (or nearly exact) same language used in the *In re Valve Antitrust Litigation* Consolidated Amended Class Action Complaint.  ECF 410-6; Rubin Decl. ¶ 23.  Likewise, Exhibit 1 and Exhibit 2 attached to the declaration filed concurrently herewith compare paragraphs from Hepler Plaintiffs' and Drake Plaintiffs' complaints that use substantially similar language to paragraphs in the *In re Valve Antitrust Litigation* Consolidated Amended Class Action Complaint.  *Id.* ¶ 23, Ex. 1, Ex. 2.

To defend this behavior, Elliott Counsel reference the *one* additional market they added to their complaint that is not included in the Colvin Plaintiffs' complaint.  ECF 412 at 8–9.  But this addition does not change the fact that a significant portion of their complaint comes directly from Vorys and co-counsel's complaint in *In re Valve Antitrust Litigation*.  *See* ECF 410-6.  Additionally, in an affidavit submitted to the Supreme Court of the State of New York, Mr. Bucher attached a June 6, 2022 "Mass Arbitration Slide Deck," which "contemplated bringing a mass arbitration against Valve for their anti-competitive pricing restraints."  *Zaiger LLC v. Bucher Law*

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 10
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

*PLLC*, Index No. 154124/2023, Doc. No. 31 ¶ 14 (N.Y. Sup. Ct.) (attached as Exhibit 3 to Rubin Decl.); Rubin Decl. ¶ 24, Ex. 3. The Mass Arbitration Slide Deck—prepared nearly a year and a half *after* Vorys filed the *Colvin* action—explained Bucher's plan for a "passive" approach to "[m]onitor court dockets for motions to compel class actions to arbitration, *and copycat existing legal theories* with potentially better advertising approach." *Zaiger LLC v. Bucher Law PLLC*, Index No. 154124/2023, Doc. No. 32 at Slide 6 (N.Y. Sup. Ct.) (attached as Exhibit 3 to Rubin Decl.) (emphasis added); Rubin Decl. ¶ 24, Ex. 3; *see Moore v. Roadway Express, Inc.*, No. CV 09-1588, 2009 U.S. Dist. LEXIS 135776, at *14–15 (C.D. Cal. Oct. 7, 2009) (noting that a law firm's decision to file "little more than a Johnny-come-lately lawsuit seeking to piggyback on another action . . . does not increase confidence in [that law firm's] ability to serve as lead counsel"). The theories developed by Vorys and co-counsel and outlined in the complaints filed in *In re Valve Antitrust Litigation* were the exemplar candidates for Elliott Counsel's copycat approach. *See* ECF 410-6.

Other law firms' copycat efforts should not be countenanced with an interim lead class counsel appointment, particularly when Vorys, the firm that spent the time and resources laying the groundwork to bring this class action on behalf of consumers, is also seeking appointment.

**B.    Vorys does not have a conflict of interest, but Elliott Counsel do.**

> **1.    The consumers' and developers' interests are aligned, and Vorys' representation in this case does not create a conflict.**

Elliott Counsel and Drake Counsel claim that there is an inherent conflict between consumers and developers which prevents Vorys from serving as interim lead class counsel.[5] ECF 411 at 12–14; ECF 412 at 5. This argument demonstrates a fundamental misunderstanding of

---

[5] To support this allegation, Drake Counsel cite to previous arguments made by counsel in *In re Valve Antitrust Litigation*. ECF 411 at 13 n.5. Hepler Counsel also mention these arguments. ECF 407 at 5. But this Court permitted Vorys to serve as an executive committee member for the developers in *In re Valve Antitrust Litigation* while representing the Colvin Plaintiffs. ECF 92. In fact, the law firms whose arguments Drake Counsel rely on ultimately became part of this leadership structure. *Id.*

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 11
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

antitrust cases involving two-sided platforms.  As discussed in Colvin Plaintiffs' Amended Motion to Appoint Vorys as Interim Lead Class Counsel, Valve's anticompetitive conduct has harmed *both* developers and consumers.  *See* ECF 409 at 13–16.  A cohesive damages model that accounts for harm to both sides of a two-sided platform complies with *Amex* and does not create an inherent conflict.  *See Ohio v. Am. Express Co.*, 585 U.S. 529, 547 (2018) (concluding that plaintiffs must establish anticompetitive effects on the "two-sided market . . . *as a whole*" to show anticompetitive harm by a two-sided transaction platform) (emphasis added).  Throughout the course of this litigation, consumers and developers will have a symbiotic relationship—not an adversarial one.

At the damages stage in this case, there cannot be multiple, contradictory damages models. For example, this Court cannot apply two separate damages models that each allocate different percentages of damages to consumers and developers—a cohesive damages model must apply. Rubin Decl. ¶ 25.  As this Court recently noted in its order certifying the developer class, it is proper to calculate the amount of consumer damages by determining the passthrough from developers to consumers when developers pay a lower commission. ECF 391 at 14–15. Dr. Steven Schwartz created this type of model after examining the evidentiary record in *In re Valve Antitrust Litigation* and using an informed, rational, economic analysis.  *See* ECF 343.  Dr. Schwartz determined (1) the lower commission that Valve would charge developers in the but-for world and (2) how much of the but-for-world commission developers would pass on to consumers in the form of lower prices.  *Id.* at 214–23.  In its class certification decision, this Court concluded that Dr. Schwartz used reliable methods to reach these conclusions.  ECF 391 at 14–15.

Elliott Counsel do not cite any cases to support their conflict argument.  *See* ECF 412 at 5.  As for Drake Counsel, the cases relied upon to make a conflict argument are inapposite and do not establish a conflict in this two-sided platform case.  ECF 411 at 12–14; *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233–34 (2d Cir. 2016) (discussing tension between a Rule 23(b)(3) monetary-relief class and a mandatory Rule 23(b)(2) injunctive-relief class in the settlement context); *Lou v. Ma Labs.*, No. C 12-05409 WHA, 2014 U.S. Dist.

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 12
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

LEXIS 2665, at *6–7 (N.D. Cal. Jan. 8, 2014) (analyzing conflict where counsel represented two similar classes bringing similar claims against the same defendant in two *different* actions); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (holding that any damages conflict between class members was illusory).  For example, *Murray v. Grocery Delivery E-Services USA Inc.*, *In re Literary Works in Electronic Databases Copyright Litigation*, and 1 Newberg and Rubenstein on Class Actions § 3:75 discuss conflicts in zero-sum cases where an increase to one group of plaintiffs' damages cuts into the damages available to another group of plaintiffs, typically due to a limited settlement fund that cannot compensate all plaintiffs completely.  55 F.4th 340, 345–46 (1st Cir. 2022); 654 F.3d 242, 252, 254 (2d Cir. 2011); 1 Newberg and Rubenstein on Class Actions § 3:75 (6th ed. 2022).  But this is not a zero-sum case.  Instead, this case involves a two-sided platform where different economic principles apply—the amount of consumer damages depends entirely on how much of the commission savings in the but-for world developers would pass on to consumers.

Here, economic modeling will reveal the amount of money developers would have saved if Valve had charged competitive commission fees and the portion of those savings that developers would have passed on to consumers in the form of lower video game prices.  This economic model, like the one Dr. Schwartz created, ensures both consumers and developers are fully compensated.  When this case reaches the damages stage, consumers and developers will not need to compete for their portion of the damages fund.  Instead, both consumers and developers will receive 100% of their respective damages.

The conflict argument raised by other law firms mischaracterizes the law even in class actions that do not involve two-sided platforms.  For example, in *Shields v. World Aquatics*, the Ninth Circuit Court of Appeals held that the district court abused its discretion by deciding that "representation was inadequate because swimmers 'compete for shares of a fixed pot,' meaning 'any damages formula will necessarily disfavor some swimmers.'"  Nos. 23-15092, 23-15156, 2024 U.S. App. LEXIS 23559, at *10 (9th Cir. Sept. 17, 2024).  The appellate court disagreed,

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 13
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

holding that "[a]ny such conflict would not be fundamental because each plaintiff shares the same liability and damages theory." *Id.*; *see also Brown v. NFL Players Ass'n*, 281 F.R.D. 437, 442 (C.D. Cal. 2012) (rejecting conflict argument raised against counsel who represented two groups of plaintiffs in related lawsuits because the plaintiffs "allege substantially similar claims and damages theories" and "do not have 'antagonistic interests' that would create an irreconcilable conflict for class counsel"); *Mell v. Anthem, Inc.*, 264 F.R.D. 312, 318–19 (S.D. Ohio 2009) (rejecting defendants' arguments that (1) "class counsel are improperly representing two sets of Plaintiffs with competing interests to the same interests" because the interests of the groups of plaintiffs were not in conflict and (2) the "class members have an inherent conflict against one another, because the 'pie' of proceeds per member gets sliced smaller for each class member added to the class" because this "pie argument . . . would make all actions with limited funds uncertifiable, a result clearly contrary to Rule 23(b)(1)(B) . . ."). Here, consumers and developers share the same liability and damages theory, so they are not in conflict.

Thus, even if a conflict somehow existed between consumers and developers, it would not be a fundamental one that bears on the interim lead class counsel analysis. ECF 409 at 15–16 (citing cases). Courts are hesitant to make important class action decisions based on speculative or trivial conflicts, like the type alleged here. *Id.*; *see, e.g.*, *Pfaff v. Washington*, No. 07-5280RJB, 2007 U.S. Dist. LEXIS 90257, at *13–16 (W.D. Wash. Nov. 27, 2007). And the Ninth Circuit has emphasized that "[m]ere speculation as to conflicts that may develop" from an agreed-upon damages methodology does not create a fundamental conflict. *Shields*, 2024 U.S. App. LEXIS 23559, at *10 (quoting *Soc. Servs. Union, Loc. 535, etc. v. Cnty. of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979)). As discussed above, consumers and developers agree on the damages methodology that applies to this case. Even Elliott Counsel's complaint acknowledges that the amount consumers would have paid in the but-for world following the developers' price reset is the correct measure of consumer damages. *See, e.g.*, *Elliott et al. v. Valve Corp.* ECF 1 ¶¶ 3, 5, 7 ("Absent Valve's PMFN, consumers would benefit, first, from the lower prices publishers could

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 14
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

charge for their games and in-game products on rival platforms. Consumers would also benefit from the lower market-wide platform fees that would prevail in a competitive market because, like other costs, all platform fees (including Valve's) are absorbed into the prices game publishers charge consumers."). Elliott Counsel and Drake Counsel have done little more than sling a conclusory conflict allegation at Vorys—one unsupported by law and insufficient to bar Vorys from serving as interim lead class counsel.

> **2.** **Elliott Counsel's continued representation of consumers in arbitration and litigation creates a conflict and prevents them from serving as interim lead class counsel.**

Elliott Counsel represent consumers bringing antitrust claims against Valve in both arbitration and litigation, and take diametrically opposed positions in each forum.[6] For example, in pending arbitrations, Bucher Law argues that the current SSA is *invalid* and the prior SSA's mandatory arbitration requirement is enforceable; whereas, in this Court, Elliott Counsel argue that the current SSA is *valid* and the prior SSA's mandatory arbitration requirement is unenforceable. *Compare Elliott et al. v. Valve Corp.* ECF 1 ¶¶ 13, 14, 31, *with Elliott et al. v. Valve Corp.* ECF 35 ¶¶ 12–13, 16, *and Elliott et al. v. Valve Corp.* ECF 35-5; *see also Elliott et al. v. Valve Corp.* ECF 32 at 5.

Elliott Counsel's conduct has spawned more litigation, with Valve seeking to enjoin hundreds of Bucher Law's clients from pursuing arbitrations based on the updated SSA. *See Valve Corp. v. Abbruzzese et al.*, Case No. 2:24-cv-01717-JNW, ECF 1 ¶¶ 1, 8. Indeed, Valve contends that Bucher Law has both miscommunicated and failed to communicate with its arbitration clients. *Valve Corp. v. Abbruzzese et al.* ECF 12 at 2, 3–4, 6; *see Oliger v. Flywheel Energy Prod., LLC*, Nos. 4:20-cv-01146-LPR, 4:20-cv-01147-LPR, 2022 U.S. Dist. LEXIS 10794, at \*29, \*30 (E.D. Ark. Jan. 20, 2022) (denying law firm's interim lead class counsel motion because of its "inability

---

[6] Hepler Counsel spend a substantial portion of their leadership motion discussing the benefits of appointing Hepler Counsel and Elliott Counsel as co-lead interim class counsel. *See* ECF 407 at 4, 8, 13–14. But this leadership structure would not change the fact that Elliott Counsel continue to have a conflict by actively advancing contradictory arguments in arbitration and litigation. *See generally Elliott et al. v. Valve Corp.* ECF 32.

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 15
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

to communicate with its clients," among other things, and noting that "[e]ffectively communicating with clients is a critical function of an attorney"). Bucher Law's arbitration clients have expressed "anxiety and confusion about the pending arbitrations, uncertainty about who is their attorney, and a desire to end their involvement in litigation with Valve." *Valve Corp. v. Abbruzzese et al.* ECF 12 at 3–4. Additionally, it appears that Mr. Bucher told these clients they must pay "substantial legal fees to terminate their arbitration," even though Valve will dismiss the claims at no cost and reimburse AAA fees. *Id.* at 6.

Furthermore, Bucher Law's arbitration advertisements claim that "consumers in arbitration recover hundreds of times more than in a class action" and "with the help of Bucher Law PLLC, you will often recover more [in arbitration] than you would in a class action proceeding." *Elliott et al. v. Valve Corp.* ECF 35 ¶ 4 (providing link to video in which Mr. Bucher makes the former comment at 0:34–0:38), *Elliott et al. v. Valve Corp.* ECF 27-1 at 2 (online written advertisement in which Mr. Bucher makes the latter comment). As Drake Counsel discuss, this position contradicts Elliott Counsel's responsibility as class counsel to establish "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); ECF 411 at 14–15. Vorys has always considered a class action to be the appropriate vehicle for pursuing consumer antitrust claims against Valve, and its actions have reflected that. Rubin Decl. ¶ 26. Vorys initially pursued antitrust claims against Valve through a class action on behalf of the Colvin Plaintiffs in 2021 and continued that representation until litigation was stayed pending arbitration. *Id.*; *Colvin et al. v. Valve Corp.* ECF 1; *see* ECF 34. Vorys moved to lift the stay soon after Valve amended the SSA so that this case can proceed as a class action again. Rubin Decl. ¶ 26; ECF 370.

For these reasons, reality belies Elliott Counsel's contention that they have "no conflicts to hold them back" and "will make every effort to prosecute this case successfully and maximize recover [sic] for consumers." ECF 412 at 8.

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 16
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

**C. The argument that Colvin Plaintiffs have been dropped from *In Re Valve Antitrust Litigation* is specious.**

Vorys filed a complaint alleging antitrust claims against Valve on January 28, 2021, and continuously represented the Colvin Plaintiffs through the case's transfer to the Western District of Washington, consolidation with the *Wolfire* action, stay pending arbitration, and recently renewed litigation following Valve's removal of the mandatory arbitration clause in the SSA. *See Colvin et al. v. Valve Corp.* ECF 1; *Colvin et al. v. Valve Corp.* ECF 36; ECF 29; ECF 66; ECF 362; ECF 370; Rubin Decl. ¶ 27. Other law firms mention that the Colvin Plaintiffs are not part of the operative *Wolfire* developer complaint, claiming that their consumer claims were somehow "dropped." ECF 412 at 7; *see also* ECF 407 at 6. Notably, they cite no authority for this proposition. The Colvin Plaintiffs had no obligation to participate in the complaints filed after this Court stayed their claims pending arbitration. *Martinez v. State Farm Mut. Auto. Ins. Co.*, 615 F. Supp. 3d 584, 588 (W.D. Ky. 2022) ("[Plaintiff] had no obligation to amend his complaint while the case was stayed."); *Nitride Semiconductors Co. v. Digi-Key Corp.*, No. 17-cv-4359 (JRT/LIB), 2020 U.S. Dist. LEXIS 262020, at *10–11 (D. Minn Aug. 10, 2020) ("While the case was stayed, Plaintiff had no obligation to amend its Complaint or otherwise litigate this case."). Elliott Counsel's and Hepler Counsel's argument suggests that stayed plaintiffs are required to go against court orders by continuing to litigate (and amend)—at the risk of losing claims—if other plaintiffs have active claims. This, of course, is nonsensical and would defeat the entire purpose of a stay. Stays postpone, halt, or suspend proceedings. BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "stay" as "[t]he postponement or halting of a proceeding, judgment, or the like" and "[a]n order to suspend all or part of a judicial proceeding").

When this Court stayed the Colvin Plaintiffs' claims in *In re Valve Antitrust Litigation* on October 25, 2021, the operative consumer complaint was found at ECF 34. Rubin Decl. ¶ 27. The fact that the putative developer class subsequently amended their complaint related to developer-specific claims does not somehow extinguish the Colvin Plaintiffs claims during the stay. The consumer claims have always been and remain part of this action. Indeed, this court already

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

described Sean Colvin, Susann Davis, Hope Marchionda, and Everett Stephens as "the putative consumer class plaintiffs in *In re Valve Antitrust Litigation*." ECF 394 at 5. This Court also refers to the recently consolidated cases in *In re Valve Antitrust Litigation*, which includes the Colvin Plaintiffs' case, as "pending putative consumer class action cases" and notes that "[t]he plaintiffs in all cases include PC video game consumers." *Id.* at 1, 3.

## IV. CONCLUSION

For the foregoing reasons, the Colvin Plaintiffs respectfully request that this Court deny *Hepler* Plaintiffs' Motion to Appoint Cohen Milstein Sellers & Toll PLLC as Interim Lead or Co-Lead Class Counsel (ECF 407), Plaintiffs Brandon Drake's and Eric Saavedra's Motion to Appoint Interim Co-Lead Consumer Class Counsel and Liaison Counsel (ECF 411), and Elliott Plaintiffs' Amended Motion to Appoint Hagens Berman Sobol Shapiro LLP and Bucher Law PLLC as Interim Co-Lead Class Counsel (ECF 412).

DATED: January 10, 2025.

Respectfully submitted,

ROMERO PARK PS

*/s/ H. Troy Romero*
H. Troy Romero, WSBA #19044
1019 W. James St., Ste. 102
Kent, Washington 98032
Tel: (425) 450-5000
tromero@romeropark.com

VORYS, SATER, SEYMOUR AND PEASE LLP

*/s/ Kenneth J. Rubin*
Kenneth J. Rubin *(pro hac vice)*
Timothy B. McGranor *(pro hac vice)*
Douglas R. Matthews *(pro hac vice)*
Kara M. Mundy *(pro hac vice)*
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-6400
Fax: (614) 464-6350
Email: kjrubin@vorys.com
       tbmcgranor@vorys.com
       drmatthews@vorys.com
       kmmundy@vorys.com

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Thomas N. McCormick *(pro hac vice)*
4675 MacArthur Court
Suite 700
Newport Beach, CA 92660
Telephone/Fax: (949) 526-7903
Email: tnmccormick@vorys.com

*Attorneys for Sean Colvin, Susann Davis, Hope Marchionda, Everett Stephens, and the putative class.*

COLVIN PLAINTIFFS' OPPOSITION
TO LEADERSHIP MOTIONS - 19
Case No. 2:21-cv-00563-JNW

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: (614) 464-6400

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

3   Court using the CM/ECF system, which will send notification of such filing to all CM/ECF

4   recipients.

5   DATED: January 10, 2025.

6                                        _/s/ H. Troy Romero_____
                                          H. Troy Romero, WSBA #19044

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## **LCR 7 CERTIFICATION**

I certify that this memorandum contains 6,658 words, in compliance with this Court's Order Consolidating Cases and Setting Briefing Schedule (ECF 394) and the Local Civil Rules.

DATED: January 10, 2025.

*/s/ H. Troy Romero*
H. Troy Romero, WSBA #19044

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH  43215
Tel: (614) 464-6400