# EXHIBIT A

1

The Honorable Jamal N. Whitehead

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8
AT SEATTLE

9

10
IN RE VALVE ANTITRUST LITIGATION

Case No. 2:21-cv-00563-JNW

11
**EXPERT REPORT OF JEFFREY W. STEMPEL**

12
This Filing Relates to:

13
ALL ACTIONS

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1

## INTRODUCTION

I have been retained by counsel for Brandon Drake and Eric Saavedra in connection with the above-referenced litigation. In addition to my examination of these issues, I may also respond to expert submissions and other material that may arise during remaining discovery in this matter. I reserve the right to update, revise, modify, or reconsider my opinions in light of additional information produced during discovery or at trial.

## BACKGROUND AND QUALIFICATIONS

1.    I am the Doris S. & Theodore B. Lee Professor of Law at the William S. Boyd School of Law, University of Nevada Las Vegas, where I have been a member of the faculty since 1999 and served as Associate Dean for Academic Affairs during Spring Semester 2000 and the 2000-2001 academic year.  From 1995 to 1999, I was a Professor of Law at Florida State University College of Law and Associate Dean for Academic Affairs during the 1997-98 academic year.  Prior to joining the Florida State faculty in 1995, I was Assistant Professor, Associate Professor, and Professor of Law at Brooklyn Law School in Brooklyn, New York from 1986 to 1995.  Prior to becoming a law professor, I was a civil litigation attorney and a law clerk to a United States District Judge.  My curriculum vitae is attached as Exhibit A to this Report.

2.    Since I became a full-time law professor in 1986, I have taught insurance law, contracts, statutory interpretation, civil procedure, evidence, professional responsibility, pretrial litigation, legislation and law reform, and law and social science.  I have taught professional responsibility for roughly 30 years at Florida State and UNLV.  As indicated in my CV, I am the author of books and articles regarding attorney professional responsibility.  I served on the State Bar of Nevada's Standing Committee on Ethics and Professional Responsibility from 2000-2010 and was Chair from October 2008 to July 2010.  I also served on the Supreme Court of Nevada Ethics 2000 Committee that examined the ABA Model Rules of Professional Conduct and made recommendations regarding amendments to the Nevada Rules of Professional Conduct.  I also served on the Supreme Court's committee examining the ABA Code of Judicial Conduct and making recommendations to the Court regarding Nevada law on judicial conduct.  My current CV,

2

attached as Exhibit A, reflects my writings, including those regarding insurance, contracts, and dispute resolution that frequently address issues of lawyer professional responsibility as well. I have been retained as an expert witness or consultant in disputes concerning lawyer professional responsibility and related matters such as malpractice and the misconduct of attorneys and their agents or affiliates.  My testimony has been admitted in state and federal court. Exhibit B lists all cases in which I have provided expert testimony, including those related to insurance and civil litigation.  I have also made submissions on American law in London arbitrations and submitted reports and provided advisory opinions to counsel as part of consulting retentions.  Through practice, study, teaching, and consulting, I am familiar with the history, structure, application, and construction of rules of professional conduct, including those related to conflict of interest.

3.    Numerous courts have cited my publications as authoritative.  *See*, *e.g.*, *Tortella v. RAKS Bldg. Supply, Inc*., 2024 WL 4999432, at *4 (D.N.M. Dec. 6, 2024); *North State Deli, LLC v. Cincinnati Ins. Co.*, 908 S.E.2d 802, 806 (N.C. 2024); *Masonic Temple Ass'n of Quincy, Inc. v. Patel*, 185 N.E.3d 888, 903 n.6 (Mass. 2022); *Wakonda Club v. Selective Ins. Co. of Am*., 973 N.W.2d 545, 550 (Iowa 2022); *Peterson v. Meritain Health, Inc*., 508 P.3d 696, 714–15 (Wyo. 2022); *Interstate Serv. Provider, Inc. v. Jordan*, 2021 WL 2355384, at *5 (E.D. Tex. June 9, 2021); *Jones v. Invasix Inc*., 2021 WL 325925, at *6 (M.D. Tenn. Feb. 1, 2021); *DR Distribs., LLC v. 21 Century Smoking, Inc*., 513 F. Supp. 3d 839, 868 n.9 (N.D. Ill. 2021); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2020 WL 5585137, at *2 n.1 (S.D. Fla. Sept. 16, 2020); *In re Residential Capital*, 610 B.R. 725, 739 n.13 (Bankr. S.D.N.Y 2019); *Dominion Res. SVC, Inc., v. Alstom Power, Inc.*, , 2018 WL 3752878, at *1 (D. Conn. Aug. 8, 2018); *Lupu v. Loan City, LLC*, 903 F.3d 382, 391 (3d Cir. 2018); *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 882 F.3d 952, 960 (10th Cir. 2018); *Auto-Owners Ins. Co. v. Se. Car Wash Sys.*, 184 F. Supp. 3d 625, 632 (E.D. Tenn. 2016); *Md. Cas. Co. v. Blackstone Int'l Ltd*, 114 A.3d 676, 698–99 (Md. Ct. App. 2015); *Hobson v. Indian Harbor Ins. Co*., 2015 WL 1069242, at *3 (Mich. Ct. App. Mar. 10, 2015); *Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 777 F.3d 415, 421 (7th Cir. 2015); *Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 211 (5th Cir. 2014); *S. Owners Ins. Co. v. Cooperativa De*

*Seguros Multiple*s, 143 So.3d 439, 443 n.4 (Fla. Dist. Ct. App. 2014); *Higby Crane Serv., LLC v. Nat'l Helium, LLC*, 751 F.3d 1157, 1161 (10th Cir. 2014); *R.T. Vanderbilt Co. v. Hartford Accident & Indem. Co.*, 2014 WL 1647135, at *17 n.25 (Conn. Super. Ct. Mar. 28, 2014); *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 641–42 (Minn. 2013); *Vill. of Crestwood v. Ironshore Specialty Ins. Co.*, 986 N.E.2d 678, 686 (Ill. App. Ct. 2013); *Patrick v. Teays Valley Trs., LLC*, 2012 WL 5993163, at *23 (N.D. W.Va. Nov. 30, 2012); *Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294, 1302 (11th Cir. 2012); *Scottsdale Indem. Co. v. Vill. of Crestwood*, 673 F.3d 715, 719 (7th Cir. 2012); *Lopez & Medina Corp. v. Marsh USA, Inc.*, 667 F.3d 58, 68 (1st Cir. 2012); *Cont'l Cas. Co. v. Duckson*, 826 F. Supp. 2d 1086, 1099 (N.D. Ill. 2011); *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1288 (10th Cir. 2011); *Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50, 56 n.6 (Tex. 2011); *Brown v. Genesis Healthcare Corp.*, 724 S.E. 2d 250, 278 n.89 (W.Va. 2011); *Scottsdale Indem. Co. v. Vill. of Crestwood*, 784 F. Supp. 2d 988, 994–95 (N.D. Ill. 2011); *Park Electrochemical Corp. v. Cont'l Cas. Co.*, 2011 WL 703945, at *5 (E.D.N.Y. Feb. 18, 2011); *Boston Gas Co v. Century Indem. Co.*, 910 N.E.2d 290, 302 n.24 (Mass. 2009); *Bosserman Aviation Equip., Inc. v. U.S. Liab. Ins. Co.*, 915 N.E. 2d 687, 694 (Ohio Ct. App. 2009); *Robbins v. Metro. Life Ins. Co. of Conn.*, 2008 WL 5412087, at *4 (E.D. Pa. Dec. 29, 2008); *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 745 (7th Cir. 2008); *Flowers v. USAA*, 2008 WL 2971478, at *20–21 & n.15 (Haw. Ct. App. July 30, 2008); *Amherst Country Club, Inc. v. Harleysville Worcester Ins. Co.*, 561 F. Supp. 2d 138, 149–50 (D.N.H. 2008); *In re Jacobs*, 381 B.R. 147, 158 (Bankr. E.D. Pa. 2008); *Wausau Underwriters Ins. Co. v. United Plastics Grp., Inc.*, 512 F.3d 953, 956 (7th Cir. 2008); *U.S. Fire Ins. Co. v. J.S.U.B., Inc*, 979 So. 2d 871, 879, 890, 892, 895 & n.15 (Fla. 2007); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 5, 10–12 & n.12 (Tex. 2007); *Granger v. Gov't Emps. Ins. Co.*, 140 P.3d 39, 401 n.9 (Haw. 2006); *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 889 A.2d 387, 401 n.9 (Md. 2006); *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 876 A.2d 1139, 1145–46 (Conn. 2005); *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929, 936–37 (N.J. 2005); *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 73–75, 81, 83 (Wis. 2004);

EXPERT REPORT OF JEFFREY W. STEMPEL
No. 2:24-cv-01743-JNW

Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103

*MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1211, 1214–16 (Cal. 2003); *Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15, 19 & n.3 (N.Y. 2003); *Richardson v. Nationwide Mut. Ins. Co.*, 826 A.2d 310, 331 n.22 (D.C. 2003), *rehearing en banc granted*, 832 A.2d 752 (D.C. 2003) (per curiam); *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 122 n.5 (Wash. 2000); *Kent Farms, Inc. v. Zurich Ins. Co.*, 998 P.2d 292, 295 (Wash. 2000); *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 79, 81 (Ill. 1997). Regarding lawyer professionalism and judicial ethics in particular, my work has been cited in *In re Krull*, 860 N.W.2d 38, 48 (Iowa 2015); *State v. Desmond*, 2011 WL 91984, at *7 n.62, *9 nn.81 & 86 (Del. Super. Ct. Jan. 5, 2011); *State v. Allen*, 778 N.W.2d 863, 896 n.2 (Wis. 2010); *In re Amendments to the Fla. Rules for Certified & Court-Appointed Mediators*, 762 So. 2d 441, 445 nn.5–6 (Fla. 2000); and *Ivey v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 299 P.3d 354, 361 (Nev. 2013) (Saitta J., concurring).

4.      In preparation for submitting this Report, I reviewed the materials listed in Exhibit C. In addition, I regularly review as part of my ongoing scholarship treatises, textbooks, casebooks, court decisions, and other writings pertaining to professional responsibility. I am also basing my analysis upon my experience in researching, writing about, and reviewing professional responsibility matters during the course of my scholarship and teaching as well as when retained by insurers, policyholders, insurance brokers, or counsel. I am being compensated at my normal rate of $695 per hour (one-half that rate for travel time should travel be necessary) plus reimbursement of any reasonably necessary expenses.

## **FACTUAL BACKGROUND**

5.      This case challenges Defendant Valve Corporation's purported anticompetitive conduct in the personal computer ("PC") game distribution and in-game system payment markets. Plaintiffs allege that Valve enjoys monopoly and/or market power in PC game distribution and PC in-game system payment markets. Their complaint states that Valve wields its power to stifle competition leading to higher commissions (up to 30 percent) charged to game developers (also known as "publishers") and higher prices for consumers on Valve's Steam PC gaming platform.

The complaint further alleges that Valve's Platform Most Favored Nation ("PFMN") clause is a central tool by which Valve maintains and extends its monopoly power.

6.    From the documents I have reviewed, I understand that there are four relevant consumer class action leadership applications by the following law firms: (1) Vorys Sater Seymour & Pease LLP ("*Colvin* Counsel"); (2) Bucher Law ("Bucher") and Hagens Berman Sobol Shapiro LLP ("HB") (collectively, "*Elliott* Counsel"); (3) Cohen Milstein Sellers & Toll PLLC ( "*Hepler* Counsel"), Bucher, and HB; and (4) Berger Montague PC, Cotchett, Pitre & McCarthy LLP, and Keller Rohrback LLP (collectively, "*Drake* Counsel").

7.    After *Colvin* Counsel initially filed a complaint on behalf of consumers only, they joined Quinn Emanuel Urquhart & Sullivan LLP ("Quinn") on June 11, 2021, to bring suit on behalf of both publishers and consumers. *In re Valve Antitrust Litig.* ("*Valve*"), No. 21-cv-563-JNW (W.D. Wash. June 11, 2021) (ECF No. 34). Valve moved to compel the consumer plaintiffs to arbitrate their claims, pointing to Valve's then-existing Steam Subscriber Agreement (the "Original SSA"). *Valve*, ECF No. 35. The Court granted Valve's motion and stayed the consumers' claims pending arbitration. *Valve*, ECF No. 66.

8.    While Valve's motion to compel arbitration was under consideration, *Colvin* Counsel and Quinn filed a motion for appointment as interim co-lead class counsel, *Valve*, ECF No. 38. Lockridge Grindal Nauen PLLP ("Lockridge") and Wilson Sonsini Goodrich & Rosati PC ("Wilson"), which had filed a separate class action complaint on behalf of publishers, challenged *Colvin* Counsel's leadership application. *See Valve*, ECF No. 46. Lockridge and Wilson's opposition was premised on the conflict inherent in dual representation of publishers and consumers, both of whom would be seeking overcharge recovery from the same pool of damages. *See id.* at 6-10. Their briefing emphasized that "counsel cannot zealously and fairly represent both the Developers and game buyers throughout this litigation to achieve the best possible outcome and damages award for each class independent of the outcome for the other class. Separate lead counsel are required." *Id.* at 10.

9. Because the Court granted Valve's motion to compel arbitration and stayed the consumer claims before deciding the issue of lead counsel, Lockridge and Wilson's opposition was no longer salient; the Court appointed *Colvin* Counsel to the **publisher** class executive committee. *Valve*, ECF Nos. 63, 92. The Court also acknowledged the potential conflict in dual representation of consumers and publishers as a "close[] issue." *Valve*, ECF No. 63 at 4.

10. With the consumer claims in arbitration, *Colvin* Counsel, Quinn, and other co-counsel filed a Second Amended Complaint on behalf of publishers only. *Valve*, ECF No. 127. *Colvin* Counsel allege that they spent "thousands of hours" litigating this case on behalf of publishers. *Valve*, ECF No. 373 at 5. As part of this work, *Colvin* Counsel helped prepare an expert report that asserts that publishers are entitled to at least 75% of any overcharge damages. *Valve*, ECF No. 343 ¶ 402. Valve's expert, on the other hand, concluded that publishers bear as low as 60% of the overcharge. *Valve*, ECF No. 345 ¶ 114.

11. In 2023, Bucher Law began recruiting clients for consumer arbitrations against Valve. *Elliott v. Valve Corp.*, No. 24-cv-1218-JNW (W.D. Wash. Oct. 17, 2024) (ECF No. 35 ¶ 5). In its advertising, Bucher sought potential clients by claiming that "consumers in arbitration recover hundreds of times more than in a class action." *Id.* ¶ 4. Bucher represents tens of thousands of consumer clients in arbitrations. *Elliott*, ECF No. 27 ¶ 3. However, Bucher then moved to try to get several of its consumer clients out of arbitration, arguing that the Original SSA was unenforceable. *Elliott*, ECF No. 1 ¶ 13. An arbitrator eventually agreed as to certain of Bucher's consumer clients. *Elliott*, ECF No. 32 at 3.

12. Recently, Bucher and HB filed a class action complaint against Valve on behalf of consumers. *Elliott*, ECF No. 1. The named plaintiffs in the *Elliott* complaint were previously Bucher's clients in arbitration. Bucher continues to represent thousands of other clients in arbitration (and, as discussed below, recently filed arbitrations on behalf of new clients).

13. Bucher and HB have taken inconsistent positions vis-à-vis their consumer arbitrations and their class action. For example, in their complaint and elsewhere, Bucher and HB repeatedly contended that the Original SSA was unenforceable. *See*, *e.g.*, *Elliott*, ECF Nos. 1

1    ¶¶ 13, 14, 31; *id.*, ECF Nos. 25 at 5, 35 ¶ 13.  On September 26, 2024, Valve modified its SSA

2    (the "Updated SSA") to remove the mandatory arbitration provision, for which Bucher claims

3    responsibility.  *Elliott*, ECF No. 32 at 4.  Consumers could now bring their claims in court. But

4    then, just two days after the Updated SSA was issued, Bucher seemingly reversed course, arguing

5    that the Original SSA was indeed valid and attempting to initiate 42,000 new consumer

6    arbitrations.  *Elliott*, ECF No. 35-2.  Even Bucher's co-counsel in the arbitration acknowledged

7    Bucher's inconsistent positions.  *Elliott*, ECF No. 35 ¶ 16.

8        14.    Bucher and HB have also taken inconsistent positions on whether class litigation of

9    consumers' claims is "superior to other available methods for fairly and efficiently adjudicating

10    the controversy," a prerequisite to class certification under Fed. R. Civ. P. 23(b)(3). As mentioned

11    above, Bucher advertised to potential arbitration clients that arbitration would yield superior results

12    than a class action would. *Elliott*, ECF No. 35 ¶ 4. Yet, in their Complaint, Bucher and HB

13    represent that "prosecution of separate actions by individual Class members would create a risk of

14    inconsistent or varying adjudications, establishing incompatible standards of conduct for

15    Defendant." *Id.*, ECF No. 1 ¶ 176; *see also id.* ¶ 177 ("This class action is superior to any other

16    method for the fair and efficient adjudication of this legal dispute, as joinder of all members is not

17    only impracticable, but impossible.").

18        15.    On October 18, 2024, Valve filed a petition against more than six hundred claimants

19    to enjoin these arbitrations, arguing that the Original SSA is no longer valid.  *Valve Corp. v.*

20    *Abbruzzese et al.*, No. 2:24-cv-1717 (W.D. Wash. Oct. 18, 2024) (ECF No. 1 ¶¶ 25–29).  Bucher

21    entered its appearance on behalf of at least some of the respondents.  *See Abbruzzese*, ECF Nos. 17,

22    38-1 (October 29, 2024 email from Bucher stating that it "currently represents all other remaining

23    defendants" besides one individual in this action).  Thus, in *Abbruzzese* Bucher will presumably

24    defend the enforceability of the Original SSA, but in *Elliott* it claims it is invalid, thereby taking

25    inconsistent positions before the very same Court.  Further, on October 8, 2024, Bucher

26    represented to an arbitrator that "none of the claimants before you will be challenging the

27    enforceability of the arbitration clause in Valve's [Original] SSA." *Abbruzzese*, ECF No. 25-1.

8

This is despite the fact that Bucher told the Court more than two months earlier—in its complaint with HB in *Elliott*—that the same arbitration provision was unenforceable. *Elliott*, ECF No. 1 ¶ 13. Even the arbitrator commented on Bucher's "many inconsistent representations before the Court and this tribunal." *Abbruzzese*, ECF No. 43-1 at 16.

16.    These inconsistent positions have created a procedural morass and severely confused Bucher's client base. Numerous respondents in *Abbruzzese*—arbitration claimants represented by Bucher—have expressed confusion about whether they are involved in an arbitration or a class action. *See*, *e.g.*, *Abbruzzese*, ECF No. 40-6 ("I would concur with the statement listed in the Petition . . . that I, 'appear to have been misled about what they signed up for, believing it was a class action or class action settlement that didn't exist.'"). Several have sought to withdraw from arbitration but have been unsuccessful in their attempts to contact Bucher. *See*, *e.g.*, *Abbruzzese*, ECF Nos. 40-3 ("I have no actual way to contact the attorney that hold my case on Bucher Law Firm side."), 40-12 ("I have not had any success in reaching out to the law firm to withdraw out of this."). In addition, Bucher apparently signed minor claimants without parental consent. *Abbruzzese*, ECF Nos. 40-7 (17-year-old), 40-11 (fourteen- or fifteen-year-old).

17.    On October 3, 2024, *Colvin* Counsel filed a motion to lift the stay of the consumer claims in *Valve*, ECF No. 366. It then sought to consolidate the case with *Elliott*, and to be appointed interim lead counsel for the consumer class. *Valve*, ECF No. 373; *Elliott*, ECF No. 33. Bucher and HB have done the same. *Elliott*, ECF No. 25; *Valve*, ECF No. 377. Valve has opposed *Elliott* Counsel's bid for leadership, stating that *Elliott* Counsel are conflicted. *Elliott*, ECF No. 32. *Colvin* Counsel made a similar argument in their reply brief. *Valve*, ECF No. 379, at 5. Bucher and HB have in turn opposed *Colvin* Counsel's leadership bid stating that *Colvin* Counsel are conflicted by virtue of their long representation of the game developer/publisher class. *Id.*, ECF No. 378, at 7-9.

18.    The *Drake* Plaintiffs filed their Complaint on October 24, 2024. *Drake v. Valve Corp.*, 24-cv-1743 (W.D. Wash.) (ECF No. 1). They also seek to be appointed interim co-lead class counsel for the consumer class.

19.    On December 6, 2024, the Court entered an order that consolidated *Elliott*, *Colvin*, *Hepler*, and *Drake*, and set a briefing schedule for additional leadership proposals "[t]o ensure that all parties have their say about who should be appointed as interim class counsel for the putative consumer class." *Valve*, ECF No. 394.

## ANALYSIS AND OPINION

### A.    *Colvin* Counsel Cannot Concurrently Represent Consumers and Publishers

20.    *Colvin* Counsel are not an adequate applicant for lead counsel for the consumers as well as the publishers because simultaneous representation of publishers and consumers constitutes a conflict of interest.  *See* ABA Model Rule of Professional Conduct 1.7.

21.    The duty of loyalty also requires that counsel in *Colvin* Counsel's position cannot shift its representation midstream to expand its current representation on behalf of publishers (for whom it has been litigating for the past three years as a member of the court-appointed developer executive committee) to also include consumers.

22.    For years, *Colvin* Counsel's theory of the case has been that Valve's anticompetitive conduct harmed **publishers** by charging them excessive commissions, of which some portion was passed along to consumers in the form of higher prices. It is my understanding that there is one "pool" of overcharge damages that must be allocated between the publishers and consumers. This conflict between the two groups victimized by Valve's anticompetitive conduct creates a current conflict for *Colvin* Counsel that cannot be avoided by waiver from the clients. *Colvin* Counsel cannot ethically represent both groups.

23.    The portion of overcharge that was passed has already been disputed here: *Colvin* Counsel have taken the position that 75% of the overcharge belongs to publishers, *Valve*, ECF No. 343 ¶ 402 (Schwartz Expert Report), whereas Valve's experts used a different methodology to arrive at as low as 60%, *Valve*, ECF No. 345 ¶ 114 (Valve's expert report). Consumers will have different incentives to challenge these numbers.

24.     Indeed, *Colvin* Counsel's own co-counsel in the publisher case argued that concurrent representation of both classes could present a conflict issue, *Valve*, ECF No. 46 at 6, 10–12 ("[D]ivergence in best interests carries through nearly every stage of the litigation."), and the Court acknowledged these concerns, *Valve*, ECF No. 63 at 4.

25.     It is typical for co-counsel in class actions to allocate attorneys' fees from a settlement amongst themselves based on the lodestar that each firm generated, that is, the number of hours reasonably expended by counsel multiplied by their reasonable hourly rate. Given the "thousands" of hours that *Colvin* Counsel have spent litigating the publisher case, *Colvin* Counsel have a strong financial incentive to maximize the publisher class recovery where they have generated significant lodestar. Because there is a single pool of damages, maximizing the publisher class recovery would necessarily cut into the potential recovery for the consumer class.

26.     To perhaps state the obvious, attorneys should not have litigation roles that violate Rule 1.7, which governs concurrent conflicts of interest and provides that a conflict exists where "[t]he representation of one client will be directly adverse to another client."  Rule 1.7(a)(1). *Colvin* Counsel would be in this situation if they were permitted to represent both the game publishers and the game consumers as *Colvin* Counsel propose.  The publishers and consumers will be competing for the same pool of funds—the amount overcharged by Valve because of anticompetitive activity.  If the publishers get more, the consumers will get less, and vice versa.

27.     Rule 1.7(a)(2) further provides that a conflict exists where "[t]here is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."  *Colvin* Counsel of course have substantial responsibilities to the publishers, for which *Colvin* Counsel have engaged in significant work for more than three years.  On behalf of their client publishers, *Colvin* Counsel have sought to obtain the most compensation and other relief possible.  In light of this, *Colvin* Counsel's ability to zealously seek maximum compensation and relief for the consumers is materially limited.

28.     *Colvin* Counsel face a conflict that cannot be waived.  Rule 1.7(b) provides that some conflicts may be waived if the following conditions are met.  First, the lawyers involved (and the law firm)[1] must have an objectively reasonable belief that they can provide "competent and diligent representation to each client."  Second, the representation must not be prohibited by law.  Third, the representation must not "involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before tribunal."  Fourth, *each* affected client must give *informed* consent, confirmed in writing.

29.     *Colvin* Counsel appear not to have appreciated the conflict situation: they claim not only that their representation of game publishers presents no conflict barring their representation of consumers, but that it "will benefit consumers." *Valve*, ECF No. 379, at 5. Given their statements, and practical realities, I doubt that *Colvin* Counsel have obtained written consent from the millions of consumers and thousands of publisher class members.

30.     Even if *Colvin* Counsel were to obtain such written consent, the conflict is not waivable because it falters on the third criterion for permitting waiver.  The publishers and the consumers are effectively asserting claims against one another in order to battle over their proportionate shares of a single pool of overcharge that will be finite once the amount of Valve's overcharges is calculated.

31.     I also have concluded that any attempt to waive the conflict faced by *Colvin* Counsel falters on the first criterion for waiver in that a law firm could not reasonably conclude that it was able to provide "competent and diligent" representation of the consumers seeking to maximize their proportionate share of a pool of overcharges while also seeking to maximize publishers' proportionate share of a pool of overcharges. No matter how talented and diligent, an

---

[1] Rule of Professional Conduct 1.10 imputes the conflicts of individual lawyers to their law firms. It provides that none of the lawyers in a firm may "knowingly represent a client when any one of them practicing lone would be prohibited from doing so" by Ruly 1.7.  There is a narrow exception, inapplicable here, for circumstances when the lawyer's conflict is based on a "personal interest" (e.g., a lawyer opposed to abortion in a firm that is representing Planned Parenthood) if the personal interest does not "present a significant risk of materially limiting" the firm's representation of the client.

12

attorney simultaneously representing competing parties for a single asset or item (the pool of overcharge damages) cannot reasonably be expected to avoid favoring one side at the expense of the other.

32.     The situation is akin to that of a case excerpted in the casebook I use in teaching professional responsibility:  *Fiandaca v. Cunningham*, 827 F.2d 825 (1st Cir. 1987), *as reprinted* in STEPHEN GILLERS, REGULATION OF LAWYERS 221 (13th ed. 2024).   In *Fiandaca*, New Hampshire Legal Assistance was found to have a conflict because it represented in separate cases two groups of plaintiffs (women prisoners and persons with disabilities) that both sought use of a single state facility.

33.     Although one might argue that because money is fungible, the current situation is different, I disagree.  The *Colvin* Counsel conflict here is perhaps not as physically stark as that in *Fiandaca* but it remains the case that there is a limited pool of recoverable overcharges just as there was only one building in *Fiandaca*.  All plaintiffs seek repayment of overcharges, which effectively becomes a finite sum once determined. The damages pursued are not open-ended or subject to expansion as might be the case for counsel seeking damages for future revenue of a business, pain-and-suffering for a collision victim, and the like.  When the amount of overcharge is determined, it will create a single pool of funds to be divided between the publishers and the consumers.

34.     The  same  lawyers  cannot  adequately  pursue  optimal  compensation  for  the publishers while also seeking optimal compensation for the consumers.  If *Colvin* Counsel obtain more for the publishers, they will necessarily obtain less for the consumers, an intractable conflict.

**B.     *Elliott* Counsel, Bucher/HB, Also Appear to Be Conflicted (as Valve and *Colvin* Counsel Contend)**

35.     Valve argues that Bucher/HB cannot represent a consumer class at the same time that Bucher represents thousands of individual arbitration clients. *Elliott*, ECF No. 32 at 1.

36.     Valve and *Colvin* Counsel also both argue that the inconsistent positions taken by Bucher create a conflict. *Id.* at 5; *see also Valve*, ECF No. 379 at 5.  For example, Bucher has

repeatedly claimed that mass arbitrations are preferable to and more favorable than class actions. See *Elliott*, ECF Nos. 27-1, 35 ¶ 4. But now Bucher has effectively taken the position that a class action is preferable to arbitration, *Elliott*, ECF No. 1 ¶¶ 176, 177—while at the same time continuing to represent Valve customers in arbitration actions against Valve.

37.    In addition, Bucher now represents at least some of the individuals named as respondents to *Abbruzzese*, Valve's petition to enjoin arbitrations initiated pursuant to the Original SSA, which will presumably require Bucher to argue that the Original SSA is enforceable.

38.    More pointedly, Bucher argues in the many arbitrations that remain pending, and potentially will argue in response to Valve's petition to enjoin these arbitrations, that Valve's Updated SSA is invalid, and that Valve's Original SSA and its arbitration clause are enforceable. But in the class action before the Court, Bucher/HB are contending that the Updated SSA is valid and enforceable but that the Original SSA it promotes in the arbitrations is not.

39.    These inconsistent positions not only look bad but compromise counsel's credibility, which holds substantial risk of harming the interests of its clients. The potential harm to clients could become actual and concrete if arguments made by Bucher/HB in one forum adversely affect the resolution of matters in the other forum.

40.    Further, on the day after Valve removed the arbitration provision from the Original SSA and after Bucher/HB commenced the *Elliott* action, Bucher sought to commence 42,000 new consumer arbitrations based on the same allegations and pursuant to the unenforceable arbitration provision in the Original SSA. The American Arbitration Association ("AAA") refused to administer these attempted arbitrations. Valve asked the AAA to administratively close the pending arbitrations in light of its removal of the arbitration provision from the SSA. Bucher opposed that request, arguing the Superseded SSA's arbitration provision remains valid and enforceable. *Elliott*, ECF No. 35-5.

41.    In light of Bucher's opposition, the AAA declined to close pending arbitrations and deferred the issue to a court or merits arbitrators. Bucher's co-counsel in the arbitrations even acknowledged the inconsistency. *Id.* at 3-4 ("Yeah, I won't deny that Will [Bucher] made those

Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103

representations on behalf of those clients [in *Elliott*]. But he has not made that argument for these three clients [in arbitration] nor have I. And, you know, black letter law, lawyers are allowed to make different arguments for different clients, and that's – we all do that, you know, for whatever reasons."). This "lawyers-are-always-talking-out-of-both-sides-of-their-mouth" statement is incorrect, at least in the context of this case. As a general matter, lawyers of course focus on different legal issues in different cases for different clients. However, even in separate cases, lawyers should not be arguing opposing positions where this may work to the disadvantage of a client. Further, the law firm is regarded as a single lawyer for purposes of assessing conflicts generally and of this type in particular. *See* ABA R. Prof. Conduct 1.10; Wash. R. Prof. Conduct 1.10.

42.    For example, a lawyer in Case A should not be arguing for a rule of strict liability regarding widget manufacturing while another lawyer in the same firm is arguing in Case B that widget manufacturing should not be subject to strict liability. If the lawyer prevails in Case A, this can be used against the widget maker client of the firm in Case B.

43.    This is a "positional" conflict created by the law firm taking different legal positions. What might serve clients in Case A is detrimental to clients in Case B. The law firm is not just talking out of both sides of its metaphorical mouth. It is saying something on one side that can cause damage to the client on the other side.

44.    In this case, a law firm's oscillating promotion of arbitration and class action disputing creates a situation in which the firm's success at one argument undermines its chances for success on the other, thereby disadvantaging one or more clients.

45.    Although Comment 24 to ABA Model Rule 1.7 and Comment 24 to Washington Rule 1.7 relax the prohibition on positional conflicts if the cases involved are sufficiently separate and the outcome of Case A will not be per se precedential in Case B, the Comment notes that a lawyer should not "create a precedent likely to seriously weaken the position taken on behalf of a client" and lists as factors for consideration "where the cases are pending, whether the issue is substantive or procedural, the temporal relationship between the matters, the significance of the

15

issue to the immediate and long-term interests of the clients involved and the client's reasonable expectation in retaining the lawyer," concluding that if there is "significant risk of material limitation," client consent is required.

46.     Here, of course, the inconsistent positions of Bucher/HB are present in the very same case.  The law firm conflict cannot be excused as too remote, even if the "escape hatch" of Rule 1.7 Comment 24 is applied.[2]

47.     Bucher is also involved in collateral litigation with Valve relating to Bucher's mass consumer arbitration in *Abbruzzese*.

48.     Bucher's varying approaches regarding arbitration and class action litigation dilute the effectiveness of its representation, and risk conflicting outcomes for similarly situated claimants.[3]

49.     Even if not deemed a conflict, Bucher's extensive involvement outside this litigation regarding Valve's anticompetitive conduct raises sufficient concerns that further examination of its arbitration actions seems necessary, which imposes another layer of activity upon the instant litigation.  In addition to creating additional logistical burdens in determining class

---

[2] Comment 24 has consistently struck me as too tolerant of positional conflicts.  In the days before digital data, the Internet, and search tools such as LEXIS and Westlaw, one might argue that a lawyer taking Position A in California can take Position B in New York without hurting either client.  But today, a victory for Position A in the California case will likely be used to the detriment of the lawyer's client hoping to succeed with Position B in the New York case.

The market for legal services has implicitly recognized this.  There are plaintiff tort firms and defendant tort firms, policyholder firms and insurer firms, franchisor firms and franchisee firms, labor firms and management firms and, of course, plaintiff antitrust firms and defendant antitrust firms.  Although the Bucher/HB conflict is not as stark as alleging anticompetitive conduct in Case A while denying it in Case B, its inconsistency nonetheless poses risks to the class that can be avoided by denying class counsel status to Bucher/HB.

[3] I understand that Bucher has offered an explanation for why it believes its statements on the validity of the Original SSA arbitration clause have not been inconsistent. *See Elliott*, ECF No. 41, at 10-11.  Bucher's explanation delves into substantive issues of law, such as collateral estoppel, that are beyond the scope of this Report. Regardless of the validity of this explanation, they do not alter my conclusion that Bucher is inadequate to serve as co-lead counsel for the consumer class for the reasons outlined below.

EXPERT REPORT OF JEFFREY W. STEMPEL
No. 2:24-cv-01743-JNW

Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103

counsel, this also raises serious questions regarding the adequacy of Bucher as class counsel, a point addressed below.

### C.    Bucher's Conflict is Imputed to HB

50.    Bucher's conflict is shared by HB.  HB and Bucher are in a co-counsel relationship in which they are effectively a law firm for purposes of this matter, which in turn means that the inconsistency, conflicts, or adequacy problems of Bucher are imputed to HB.  The involvement of HB in this matter cannot be separated from that of Bucher.

51.    Bucher and HB have taken numerous actions that suggest they maintain a close working relationship. For example, it is apparent that HB chose to associate with Bucher *because* of Bucher's prior representation of the four named *Elliott* Plaintiffs. According to their joint complaint, Bucher represented the four named plaintiffs in *Elliott* in their individual arbitrations before the two firms jointly filed the *Elliott* Complaint. Further, I have seen no evidence that HB had any relationship with the *Elliott* plaintiffs prior to filing their action nor that Bucher and HB have ever collaborated in any prior litigation before *Elliott.*

52.    Bucher almost certainly shared confidential information with HB that it acquired from representing those four named Plaintiffs in arbitration. It is hard to imagine how the two firms could have investigated and filed the *Elliott* Complaint without Bucher sharing information about the four named Plaintiffs with HB. Indeed, the arguments made by the four named Plaintiffs' arbitration actions, and the ruling they obtained finding the Original SSA unenforceable, was only made public once the two firms filed their joint Complaint in *Elliott*. Moreover, by signing the *Elliott* Complaint, HB certified that it complied with its duty under Rule 11(b) of the Federal Rules of Civil Procedure to conduct "an inquiry reasonable under the circumstances" to ensure that "the factual contentions" of its Complaint "have evidentiary support." *See Elliott*, ECF No. 1 at 56. Thus, it is reasonable to infer that HB learned about the circumstances of the *Elliott* plaintiffs' arbitrations before filing their joint complaint with Bucher.

EXPERT REPORT OF JEFFREY W. STEMPEL
No. 2:24-cv-01743-JNW

Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103

### D.    Conflict Situations and Adequacy of Representation

53.    In addition to teaching lawyer professional responsibility during the past 30 years and writing about professional responsibility during the past 40 years, I have taught and written about civil litigation for nearly 40 years, including addressing class actions as part of the civil procedure course I teach and the textbooks I have co-authored.

54.    One of the pre-requisites to maintaining a class action is that the named plaintiffs and counsel provide adequate representation for the class.  Fed. R. Civ. 23(a)(4). Attorneys who are conflicted in their duties and loyalties vis-à-vis different class members are per se inadequate counsel, no matter how skilled they may be. *See id.* ("One or more members of a class may sue or be sued as representative parties on behalf of all members only if . . . the representative parties will fairly and adequately protect the interests of the class.").

55.    In addition, if lawyers are oscillating between different strategies, tactics, and dispute resolution forums, this also raises questions about the adequacy of counsel—and would do so even if the waxing and waning enthusiasm for arbitration and class litigation were not deemed a sufficiently direct conflict to trigger Rule 1.7.  Class members seeking relief in litigation should be represented by counsel committed to litigation rather than counsel committed (however inconsistently) to arbitration of the same violations and disputes involving the same vendor/defendant.

56.    To fulfill the adequacy requirement of Fed. R. Civ. P. 23(a)(4), counsel for a plaintiff class must not only have untainted loyalty to the class but also zeal in pursuit of relief for the class.  When a law firm exhibits inconsistent preferences of forum (i.e., class litigation in federal court vs. mass arbitration vs. individual arbitrations), it reflects at least some loss of focus and diversion.

57.    As a result, appointment of Bucher/HB as co-lead counsel for consumers is more likely to foment disputes about adequacy and conflict of interest than would appointment of other counsel.  This in turn will affect further activity in the class action case with the potential for increasing cost and delay.

EXPERT REPORT OF JEFFREY W. STEMPEL
No. 2:24-cv-01743-JNW

Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103

58.     Consequently, Bucher/HB is significantly compromised in their ability to be lead class counsel even if not found to have a direct conflict of interest.  And, as noted above, a material limitation on lawyer loyalty or effectiveness is also disqualifying.  Bucher/HB have such a material limitation because their flirtation with or parallel track in arbitration undermines its ability to forcefully advocate for the consumer class in litigation and to enjoy the confidence of the class in pursuing class action litigation.

59.     In addition, as is the case with *Colvin* Counsel, it appears that Bucher/HB have not obtained waivers from its clients.  Bucher/HB should have been recognized the need to seek waivers from clients if Bucher/HB wanted to continue their representation.

60.     Even if there are client waivers, they may be ineffective in that the first prong of the waiver standard in Rule 1.7 requires that an objectively reasonable law firm must reasonably regard itself as "able to provide competent and diligent representation to each client" which is problematic in light of Bucher's inconsistent approaches to seeking recovery from Valve and its attendant differential treatment of its clients.

61.     Further, Bucher's professional conduct in the collateral arbitrations raises serious adequacy concerns.  In particular, Bucher's communication with its clients in the collateral arbitrations (or lack thereof) raises serious adequacy concerns. As mentioned above, there are indications that several of Bucher's arbitration clients have been unable to get in contact with it. *See*, *supra* ¶ 16. A law firm that does not respond to its clients cannot be said to be zealous in its representation.  Indeed, a lawyer violates ABA Model Rule of Professional Conduct 1.4 when she fails to "keep the client reasonably informed about the status of the matter."  Attorneys with a track record of Bucher's inconsistency and poor communication with clients, may be found inadequate under Rule 23(a)(4).

62.     Other correspondence indicates Bucher has informed some of its clients that they must pay additional sums of money or hire additional counsel in order to withdraw their arbitration demands. *See*, *supra* ¶ 16. Yet, Valve asserts that it relayed an offer to Bucher to pay the AAA arbitration fees on behalf of the respondents to its petition to enjoin Bucher's arbitrations should

19

EXPERT REPORT OF JEFFREY W. STEMPEL
No. 2:24-cv-01743-JNW

Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103

1   any of the respondents agree to dismiss their arbitrations. *Abbruzzese*, ECF No. 13 ¶ 34. ABA

2   Model Rule of Professional Conduct 1.2 provides, "A lawyer shall abide by a client's decision

3   whether to settle a matter," but it seems unlikely that Bucher has relayed this offer to his clients.

4   To the extent Bucher has not, such an ethical breach further weighs against Bucher's adequacy to

5   serve as class counsel.

6          63.    I have also reviewed documents that indicate Bucher has signed minor clients to

7   mass arbitration without their parents' knowledge or consent. *See, supra* ¶ 16. While there is no

8   per se bar on representing minor clients without parental consent, ABA Model Rule of Professional

9   Conduct 1.14 provides, "[w]hen the lawyer reasonably believes that the client has diminished

10  capacity . . . and cannot adequately act in the client's own interest, the lawyer may take reasonably

11  necessary protective action, including consulting with individuals or entities that have the ability

12  to take action to protect the client." The documents I have reviewed suggest that these minor clients

13  did not understand the nature of what they were signing up for when they agreed to participate in

14  Bucher's mass arbitration. It appears as though Bucher did not consult with the parents of these

15  clients, and it is unclear whether Bucher made any efforts to assess whether these clients had the

16  capacity to make informed choices as to whether to participate in the mass arbitration. To the

17  extent Bucher failed to make this inquiry, this also weighs against its adequacy to serve as class

18  counsel.

19         64.    I understand that *Hepler* Counsel have moved for appointment, along as with *Elliott*

20  Counsel, collectively, as Co-Lead Counsel. *Hepler* Counsel acknowledge that several other

21  litigants have "have argued that [*Elliott* Counsel's] representation of individuals in arbitration

22  creates potential problems with the adequacy of these firms' representations." *Valve*, ECF No. 407

23  at 10; *see also id.* at 1 (acknowledging potential "concern[s] about [*Elliott* Counsel's] conflicts

24  issues raised in the briefing in the *Elliott* litigation"). *Hepler* Counsel suggest that their addition

25  to the *Elliott* Counsel leadership group can "resolve any concerns about the adequacy of [*Elliott*

26  Counsel]." *Id.* at 10. I have considered *Hepler*'s proposal, and it has no impact on any of my

27  opinions related to the inadequacy of *Elliott* Counsel.

EXPERT REPORT OF JEFFREY W. STEMPEL                    Berger Montague PC
No. 2:24-cv-01743-JNW                              1818 Market Street, Suite 3600
                                                    Philadelphia, PA 19103

## <u>CONCLUSION</u>

For the reasons set forth above, based on the history of these cases and the conduct of *Colvin* Counsel and Bucher/HB, permitting either to be lead counsel for the consumers seeking overcharge damages from Valve would present serious, non-waivable conflict of interest problems pursuant to ABA Rule 1.7 and Washington Rule 1.7 that also undermine their ability to provide adequate representation to the consumer class in this litigation.

DATED: January 9, 2025.

_____

Jeffrey W. Stempel

21

EXPERT REPORT OF JEFFREY W. STEMPEL
No. 2:24-cv-01743-JNW

Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103

# EXHIBIT A

## JEFFREY W. STEMPEL

**HOME**                                                                    **WORK**

14 Canoa Hills Drive                                    William S. Boyd School of Law
Henderson, NV  89052                              University of Nevada Las Vegas
(702) 501-5746                                                4505 S. Maryland Parkway
                                                                                    Box 451003
                                                            Las Vegas, NV  89154-1003
                                                                           (702) 895-2361
                                                                    (702) 895-2482 (fax)
                                                                   jeff.stempel@unlv.edu

**BAR:**  Admitted to the Bar:

> Minnesota (1981); Nevada (2001)
> U.S. District Court, District of Minnesota (1983)
> U.S. Court of Appeals, Eighth Circuit (1985)
> U.S. Court of Appeals, Eleventh Circuit (1991)
> U.S. Supreme Court (1992)

**EDUCATION:**  J.D., Yale Law School, 1981

> B.A., University of Minnesota, 1977
> (University of Iowa, 1972-74)
> Summa Cum Laude
> Phi Beta Kappa
>
> Doctor Honoris Causa
> Universidad Pontificia Comillas
> Madrid, Spain
> November 27, 2024 Investiture

**EMPLOYMENT:**

2005 –            **Doris S. and Theodore B. Lee Professor of Law**
                       William S. Boyd School of Law
                       University of Nevada Las Vegas
                       Las Vegas, NV

2003 – 2005    **William S. Boyd Professor of Law**
                       William S. Boyd School of Law
                       University of Nevada Las Vegas
                       Las Vegas, NV

1999 – 2003    **Professor of Law**

(Associate Dean for Academic Affairs 2000–2001)
William S. Boyd School of Law
University of Nevada Las Vegas
Las Vegas, NV

1995 – 1999     **Professor of Law**
(Fonvielle and Hinkle Professor of Litigation; 1997–99)
(Associate Dean for Academic Affairs; 1997–98)
Florida State University
College of Law
Tallahassee, FL

1991 – 1995     **Professor of Law**
Brooklyn Law School
Brooklyn, New York

1988 – 1991     **Associate Professor of Law**
Brooklyn Law School
Brooklyn, New York

1986 – 1988     **Assistant Professor of Law**
Brooklyn Law School
Brooklyn, New York

1983 – 1986     **Litigation Associate**
Maslon, Edelman, Borman & Brand
Minneapolis, Minnesota

1981 – 1983     **Law Clerk**
The Honorable Raymond J. Broderick, U.S.D.J.
Eastern District of Pennsylvania
Philadelphia, Pennsylvania

## PUBLICATIONS

**Books**

LEARNING CIVIL PROCEDURE (4th ed. 2022)(with Prof. Brooke D. Coleman, Prof. Steven Baicker-McKee, David F. Herr, Esq. & Dean Michael J. Kaufman)(1st ed. 2013)(2d ed. 2015)(3d ed. 2018)(4th ed. 2022) and TEACHER'S MANUAL FOR LEARNING CIVIL PROCEDURE (all editions).

GENERAL LIABILITY COVERAGE:  KEY ISSUES IN EVERY STATE (5th ed. 2021)(with Randy J. Maniloff, Esq. and Margo Meta, Esq.)(1st ed. 2011)(2d. ed. 2012)(3d ed. 2015)(4th ed. 2018)(5th ed. 2020).

PRINCIPLES OF INSURANCE LAW (5th ed. 2020)(with Prof. Erik S. Knutsen and Prof. Peter N. Swisher) (4th ed. 2011; 3d ed. 2004); INSTRUCTOR'S MANUAL FOR PRINCIPLES OF INSURANCE LAW (5th ed. 2020).

FUNDAMENTALS OF PRETRIAL LITIGATION (11th ed. 2020)(with Prof. Roger S. Haydock and David F. Herr, Esq.)(1st ed. 1985)(2d ed. 1992) (3d ed. 1994)(4th ed. 2000)(5th ed. 2001)(6th ed. 2007)(7th ed. 2008)(8th ed. 2011)(9th ed. 2013)(10th ed. 2016) and TEACHER'S MANUAL FOR FUNDAMENTALS OF PRETRIAL LITIGATION (all editions).

FUNDAMENTALS OF LITIGATION PRACTICE (Thomson West 2018)(with Prof. Roger S. Haydock and David F. Herr, Esq.)(also 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017 Editions).

STEMPEL AND KNUTSEN ON INSURANCE COVERAGE (4th ed. 2016)(with Prof. Erik S. Knutsen); *Stempel on Insurance Contracts* (Aspen/WoltersKluwer 2006)(successor edition to *Law of Insurance Contract Disputes* (Aspen 1999)(successor edition to *Interpretation of Insurance Contracts* (1994))(supplemented annually).

MOTION PRACTICE (7th ed. 2016)(with David F. Herr, Esq. and Prof. Roger S. Haydock)(1st ed. 1985)(2d ed. 1991)(3d ed 1998) (4th ed. 2001)(5th ed. 2009)(6th ed. 2012).

LITIGATION ROAD: THE STORY OF *Campbell v. State Farm Insurance* (Thomson West 2008).

LAWYERING: PRACTICE AND PLANNING (West 1996) (with Profs. Roger S. Haydock, Peter B. Knapp, Ann Juergens & David F. Herr, Esq.).

FOUNDATIONS OF THE LAW (West 1994) (with Prof. Bailey Kuklin) and TEACHER'S MANUAL FOR FOUNDATIONS OF THE LAW (1994).

**Book Chapters**

*Information Duties in Insurance: Contract Formation and Other Issues*, III CONGRESO INTERNACIONAL DE DIREITO DO SEGURO, IX FORUM DE DIREITO DO SEGURO (2024)(Ernesto Tzirulnik, Paulo De Tarso Sanseverino, Joao Nuno Calvao de Silva & Inae Siqueira De Oliveira, eds.)(forthcoming).

*Safety in Numbers: Toward More Comprehensive Approaches to Difficult Risks* (with Erik S. Knutsen) in INSURABILITY OF EMERGING RISKS – LAW, THEORY AND PRACTICE (Ozlem Gurses & Baris Soyer, eds.)(forthcoming)

*Insuring Against "War-Lite:" The New Face of the War Exclusion in Insurance*, in PROCEEDINGS, IV CONGRESO INTERNATIONAL DE DERECHO DEL SEGUO (EL SEGURO DE PERSONAS Y LA INTELIGENCIA ARTIFICIAL (Thomson Reuters 2023)(with Erik S. Knutsen).

*American Exceptionalism: The COVID-19 Insurance Experience*, in AIDA EUROPE RESEARCH SERIES: INSURANCE LAW AND REGULATION ON COVID-19 AND INSURANCE (Maria Luisa Munoz

Paredes & Anna Tarasiuk, eds.)(2023)(with Erik S. Knutsen).

*Textual Literalism, Formalism, and Canon-Centric Construction as De Facto – and Defective – Artificial Intelligence* in Abel B. Veiga Copo & Miguel Martinez Munoz, (eds.). Proceedings, III Congreso International De Derecho Del Seguo (El Seguro De Personas y La Inteligencia Artificial (Thomson Reuters 2022)(with Erik S. Knutsen).

*Bringing Rigor to Textualism Through Artificial Intelligence* in Abel B. Veiga Copo & Miguel Martinez Munoz, eds., Proceedings, III Congreso International De Derecho Del Seguo (El Seguro De Personas y La Inteligencia Artificial (Thomson Reuters 2022)(with Erik S. Knutsen).

*Hard Battles Over Soft Law: The American Experience with the ALI Liability Insurance Restatement*, in Abel B. Veiga Copo (ed.), Dimensiones y Desafios Del Seguro De Responsabilidad Civil (Thomson Reuters 2021).

*Pre-Contractual Utmost Good Faith of the Reinsured*, in Yong Qiang Han & Gregory Pynt (eds), Carter v. Boehm and Pre-Contractual Duties in Insurance Law: A Global Perspective After 250 Years (Hart Publishing 2018).

*Pre-contractual Duties under American Insurance Law* in Yong Qiang Han & Gregory Pynt (eds), Pre-Contractual Duties in Insurance Law: Carter v. Boehm 250 Years On (Hart Publishing 2018)(with Martin Davies)(Hart Publishing 2018).

*Insurance and Climate Change Litigation*, in William C.G. Burns & Hari M. Osofsky (eds.), Adjudicating Climate Change: Sub-national, national, and supra-national approaches (Cambridge 2009).

*Punitive Damages in Bad Faith Actions Against Insurers in the USA:  The Impact of* Campbell v. State Farm, in Zeitschrift fur die Gesamte Versicherungswissenschaft, Supplement Jahestagung 2007, p. 250 (2007).

*From Johnstown to New Orleans:  Insurance of Environmental Risks in the USA* in Alexander Bruns & Zdenko Grobenski (eds.) Die Versicherung von Umweltrisiken (Insurance of Environmental Risks) 21 (2007).

**Other**

*Note on The Principles of Reinsurance Contract Law (PRICL) and The COVID-19 Health Crisis* (with Kevin Bork, Helmut Heiss, Marta Ostrowska, Ignacio Tirado, Anna Veneziano, Manfred Wandt & Oliver D. William)(2021)(PRICL in cooperation with the International Institute for the Unification of Private Law (UNIDROIT)

Rapporteur, Chapter 4 (Articles 4.1 and 4.2), *Reinsurer Liabilities Excess of Policy Limits and for Extra-Contractual Obligations*, Principles of Reinsurance Contract Law (PRICL),

PRICL Project Group in cooperation with the International Institute for the Unification of Private Law (UNIDROIT) (2022)(manuscript)

Rapporteur, Chapter 2 (Articles 2.1.1 through Article 2.4.5), *Duties of the Reinsurer and the Reinsured*, PRINCIPLES OF REINSURANCE CONTRACT LAW (PRICL), PRICL Project Group in cooperation with the International Institute for the Unification of Private Law (UNIDROIT) (2019)

## Law Review Articles

*Casinos, Covid, and Coverage: Jurisprudential and Insurance Implications of a Litigation Pandemic*, 14 UNLV GAMING L.J. 253 (2024)(forthcoming).

*The 2022 New Jersey Insurance Fair Conduct Act and the Incomplete Evolution of Policyholder Protection*, 75 RUTGERS L. REV. 185 (2022).

*Insuring Fortuity – and Intent: A Comment on Professor French's* Insuring Intentional Torts, 83 OHIO ST. L.J. ONLINE (2022)(with Erik S. Knutsen).

*Technologically Improving Textualism*, 6 NEV. L.J. FORUM, Article 2 (2022).

*A Deeper Dive Into* Nautilus: *Differentiating Insurer Efforts to Recover Defense Costs and Assessing Recoupment in the Wake of the ALI Restatement*, 56 TORT, TRIAL & INS. PRAC. L.J. 57 (2022).

*What is the Meaning of "Plain Meaning"?*, 56 TORT, TRIAL & INS. PRAC. L.J. 551 (2021).

*Rejecting Word Worship: An Integrative Approach to Judicial Construction of Insurance Policies*, 90 U. CIN. L. REV. 259 (2021)(with Erik S. Knutsen).

*Adding Context and Constraint to Corpus Linguistics*, 86 BROOK. L. REV. 389 (2021).

*Hard Battles Over Soft Law: The Troubling Implications of Insurance Industry Attacks on the American Law Institute Restatement* of the Law of Liability Insurance, 69 CLEVE. ST. L. REV. 606 (2021).

*The Elastics of Snap Removal: An Empirical Case Study of Textualism*, 69 CLEVE. ST. L. REV. 289 (2021)(with Thomas O. Main and David McClure).

*Infected Judgment: Creating Conventional Wisdom and Insurance Coverage Denial in a Pandemic*, 27 CONN. INS. L.J. 185 (2020)(with Erik S. Knutsen).

*Snap Removal: Concept; Cause; Cacophony; and Cure* 72 BAYLOR L. REV. 423 (2020)(with Thomas O. Main and David McClure).

*How to Make a Dead Armadillo: The ALI Consumer Contracts Restatement and the Perils of*

*Compromise*, 32 LOYOLA CONSUMER L. REV. 605 (2020).

*Legal Ethics and Law Reform Advocacy*, 10 ST. MARY'S J. LEG. MALPRACTICE & ETHICS 102 (2020).

*Protecting Auto Accident Victims from the UM/UIM Insurer Identity Crisis*, 26 CONN. INS. L.J. 1 (2019-2020)(with Erik S. Knutsen).

*Constructing More Reliable Law and Policy:  The Potential Benefits of the Underused Delphi Method*, 87 UMKC L. REV. 919 (2019)(with Juan Bataller-Grau, Elia Segui-Mas & Javier Vercher-Moll).

*The Techno-Neutrality Solution to Navigating Insurance Coverage for Cyber-Losses*, 122 PENN. ST. L. REV. 645 (2018)(with Erik S. Knutsen).

*Asymetry and Adequacy in Discovery Incentives: The Discouraging Implications of* Haeger v. Goodyear, 51 AKRON L. REV. 639 (2018).

*Judicial Peremptory Challenges as Access Enhancers*, 86 FORDHAM L. REV. 2263 (2018).

Hyatt v. Franchise Tax Board of California*:  Perils of Undue Disputing Zeal and Undue Immunity for Government Inflicted Injury*, 18 NEV. L.J. 61 (2017).

*An Analytic "Gap":  The Perils of Robotic Enforcement of Payment-by-Underlying-Insurer-Only Language in Excess Insurance Policies*, 52 TORT, TRIAL & INS. L.J. 807 (2017).

*Notes from a Quiet Corner:  User Concerns About Reinsurance Arbitration – and Attendant Lessons for Selection of Dispute Resolution Forums and Methods*, 9 ARB. L. REV. 93 (2017).

*The Irrepressible Myth of* Burnham *– and Its Increasing Indefensibility After* Goodyear *and* Daimler, 15 NEV. L.J. 1203 (2015).

*Enhancing the Socially Instrumental Role of Insurance:  The Emerging Opportunity Presented by Treatment of Breach of the Duty to Defend*, 5 UC-IRVINE L. REV. 587 (2015).

*Making Liquor Immunity Worse: Nevada's Undue Protection of Commercial Hosts Evicting Vulnerable and Dangerous Patrons*, 14 NEV. L.J. 866 (2014)

*Rediscovering the Sawyer Solution:  Bundling Risk for Protection and Profit*, 11 RUTGERS J. L. & PUB. POL'Y 170 (2013).

*Asymetric Dynamism and Acceptable Judicial Review of Arbitration Awards*, 5 PENN. ST. YEARBOOK ON ARB. & MED.  1 (2013).

*Stoney Road Out of Eden:  The Struggle to Recover Insurance for Armenian Genocide Deaths and Its Implications for the Future of State Authority, Contract Rights, and Human Rights*, 18

BUFF. HUM. RTS. L. REV. 1 (2012).

*Tainted Love:  Arbitral Infatuation in Derogation of Sound and Consistent Jurisprudence*, 60 KAN. L. REV. 795 (2012).

*Taking Cognitive Illiberalism Seriously:  Judicial Humility; Aggregate Efficiency; and Acceptable Justice*, 43 LOYOLA L.J. 627 (2012).

*Tending Potted Plants:  The Professional Identity Vacuum in* Garcetti v. Ceballos, 12 NEV. L.J. 703 (2012)(for *The Worst Supreme Court Case Ever?* Symposium).

*Paradox Lost:  The Potential of Restorative Attorney Discipline – with a Cautionary Call for Making Distinctions*, 12 NEV. L.J. 350 (2012).

*In Praise of Procedurally Centered Judicial Disqualification – and a Stronger Conception of the Appearance Standard:  Better Acknowledging and Adjusting to Cognitive Bias, Spoliation, and Perceptual Realities*, 30 REV. OF LITIG. 733 (2011).

Shady Grove *and the Potential Democracy-Enhancing Benefits of* Erie *Formalism*, 44 AKRON L. REV. 907 (2011).

*Misclassifying the Insurance Policy:  The Unforced Errors of Unilateral Contract Characterization*, 32 CARDOZO L. REV. 101 (2010)(with Prof. Hazel Beh).

*The Insurance Policy as Social Instrument and Social Institution*, 51 WM. & MARY L. REV. 1489 (2010)(Winner, 2009 Liberty Mutual Insurance Prize).

*Impeach Brent Benjamin Now!?  Giving Adequate Attention to Failings of Judicial Impartiality*, 47 SAN DIEGO L. REV. 1 (2010).

*Feeding the Right Wolf:  A Niebuhrian Perspective on the Opportunities and Limits of Mindful Core Concerns Dispute Resolution*, 10 NEV. L.J. 472 (2010).

*Refocusing Away From Rules Reform and Devoting More Attention to the Deciders*, 87 DENV. U. L. REV. 3335 (2010).

*The Insurance Policy as Statute*, 41 MCGEORGE L. REV. 203 (2010).

*Completing* Caperton *and Clarifying Common Sens*e *Through Using the Right Standard for Constitutional Judicial Recusal*, 29 REV. LITIG. 249 (2010).

*Playing Forty Questions:  Responding to Justice Roberts' Concerns in* Caperton *and Some Tentative Answers About Operationalizing Judicial Recusal and Due Process*, 39 SOUTHWESTERN L. REV. 1 (2009).

*The Insurance Policy as Thing,* 44 TORT, TRIAL & INS. L.J. 813 (2009).

*Chief William's Ghost: The Problematic Persistence of the Duty to Sit Doctrine*, 57 BUFF. L. REV. 813 (2009).

*The "Other" Intermediaries:  The Increasingly Anachronistic Immunity of Managing General Agents and Independent Claims Adjusters*, 15 CONN. INS. L.J. 600 (2008-2009).

*Mandating Minimum Fairness in Mass Arbitration*, 76 U. CINN. L. REV. 383 (2008).

*Adam, Martin and John:  Iconography, Infrastructure, and America's Pathological Inconsistency About Medical Insurance*, 14 CONN. INS. L.J. 229 (2007–2008).

*Keeping Arbitrations from Becoming Kangaroo Courts*, 8 NEV. L.J. 251 (2007).

*Assessing the Coverage Carnage: Asbestos Liability and Insurance After Three Decades of Dispute,* 12 CONN. INS. L.J. 349 (2006).

*Class Actions and Limited Vision: Opportunities for Improvement Through a More Functional Approach to Class Treatment of Disputes*, 83 WASH. U.L.Q. 1127 (2006).

*Lawyers, Democracy and Dispute Resolution: The Declining Influence of Lawyer-Statesmen Politicians and Lawyerly Values*, 5 NEV. L.J. 479 (2005).

*The Most Rational Branch:* Guinn v. Legislature *and the Judiciary's Role as Helpful Arbiter of Conflict*, 4 NEV. L.J. 518 (2004).

*Arbitration, Unconscionability, and Equilibrium: The Return of Unconscionability Analysis as a Counterweight to Arbitration Formalism,* 19 OHIO ST. J. ON DISP. RES. 757 (2004).

*Not So Peaceful Coexistence: Inherent Tensions in Addressing Tort Law Reform*, 4 NEV. L.J. 337 (2004).

*Malignant Democracy: Core Fallacies Underlying Election of the Judiciary*, 4 NEV. L.J. 35 (2003)

*Forgetfulness, Fuzziness, Functionality, Fairness and Freedom, in Dispute Resolution*, 3 NEV. L.J. 305 (2003).

*The Insurance Aftermath of September 11:  Myriad Claims, Multiple Lines, Arguments Over Occurrence Counting, War Risk Exclusions, the Future of Terrorism Coverage, and New Issues of Government Role*, 37 TORT & INS. L. J. 817 (2002).

*Timeless and Ahead of It's Time:*  Lachs v. Fidelity & Casualty of New York, 2 Nev. L.J. 319 (2002).

*An Inconsistently Sensitive Mind:  Richard Posner's Cerebration of Insurance Law and*

*Continuing Blind Spots of Econominalism*, 7 CONN. INS. L.J. 7 (2000–2001).

*Applying Amended Rule 26(B)(1) in Litigation:  The New Scope of Discovery*, 199 F.R.D. 396 (2001)(with David F. Herr, Esq.).

*Ulysses Tied to the Generic Whipping Post:  The Continuing Odyssey of Discovery "Reform"*, 64 L. & CONTEMP. PROBS. 197 (2001).

*Politics and Sociology in Federal Civil Rulemaking:  Errors of Scope*, 52 ALA. L. REV. 529 (2001).

*Doctors, HMOs, ERISA, and the Public Interest After* Pegram v. Herdrich, 36 TORT & INS. L.J. 687 (2001)(with Nadia von Magdenko, Esq.).

*The Inevitability of the Eclectic:  Liberating ADR from Ideology*, 2000 J. DISP. RES. 247.

*Identifying Real Dichotomies Underlying the False Dichotomy:  Twenty-First Century Mediation in an Eclectic Regime*, 2000 J. DISP. RESOL. 371.

*Theralaw and the Law-Business Paradigm Debate*, 15 J. PSYCH. L. & PUB. POL. 344 (1999).

*Embracing Descent:  The Bankruptcy of a Business Paradigm for Conceptualizing and Regulating the Legal Profession*, 27 FLA. ST. L. REV. 25 (1999).

*Judge-Made Insurance That Was Not on the Menu:* Schmidt v. Smith *and the Confluence of Text, Expectation, and Public Policy in the Realm of Employment Practices Liability*, 21 W. NEW ENG. L. REV. 283 (1999).

*Domtar Baby:  Misplaced Notions of Equitable Apportionment Create a Thicket of Potential Unfairness for Insurance Policyholders*, 25 WM. MITCHELL L. REV. 769 (1999).

*A Mixed Bag for Chicken Little:  Analyzing Year 2000 Claims and Insurance Coverage*, 48 EMORY L.J. 169 (1999).

*Reason and Pollution:  Construing the "Absolute" Pollution Exclusion in Context and in Light of its Purpose and Party Expectations*, 34 TORT & INS. L.J. 1 (1998).

*A More Complete Look at Complexity*, 40 ARIZ. L. REV. 781 (1998).

*Unmet Expectations:  Undue Restriction of the Reasonable Expectations Approach and the Misleading Mythology of Judicial Role*, 5 CONN. INS. L.J. 181 (1998).

*Contracting Access to the Courts:  Myth or Reality? Bane or Boon?* 40 ARIZ. L. REV. 965 (1998).

*Unreason in Action:  A Case Study in the Wrong Approach to Construing the Liability Insurance*

*Pollution Exclusion*, 50 Fla. L. Rev. 463 (1998).

*Continuing Classroom Conversation Beyond the Four Whys*, 29 Toledo L. Rev. 59 (1998)(with Prof. Bailey Kuklin).

*Beyond Formalism and False Dichotomies:  The Need for Institutionalizing a Flexible Concept of the Mediator's Role*, 24 Fla. St. L. Rev. 949 (1997).

*Bootstrapping and Slouching Toward Gomorrah:  Arbitral Infatuation and the Decline of Consent*, 62 Brook. L. Rev. 1380 (1996).

*Reflections of Judicial ADR and the Multi-door Courthouse at Twenty: Fait Accompli, Failed Overture, or Fledgling Adulthood?*  11 Ohio St. J. Dis. Res. 297 (1996).

*Two Cheers for Specialized Courts*, 61 Brook. L. Rev. 67 (1995).

*Condescending Contradictions:  Richard Posner and Pregnancy Discrimination*, 46 Fla. L. Rev. 193 (1994)(with Prof. Ann C. McGinley).

*Halting Devolution or Bleak to the Future?  Subrin's New-Old Procedure as a Possible Antidote to Drefuss's "Tolstoy Problem"* 46 Fla. L. Rev. 57 (1994).

*Reassessing The Sophisticated Policyholder Defense in Insurance Coverage Litigation* 42 Drake L. Rev. 807 (1993), *reprinted in* 44 Defense Law Journal 189 (1995).

*New Paradigm, Normal Science, or Crumbling Construct?  Trends in Adjudicatory Procedure And Litigation Reform*, 59 Brooklyn L. Rev. 659 (1993).

*Cultural Literacy and the Adversary System: The Enduring Problems of Distrust, Misunderstanding and Narrow Perspective*, 27 Val. U. L. Rev. 313 (1993).

*Sanctions, Symmetry, and Safe Harbors: Limiting Misapplication of Rule 11 by Harmonizing It with Pre-Verdict Dismissal Devices*, 60 Fordham L. Rev. 257 (1991), *reprinted in* 41 Defense Law Journal 239 (1992).

*Reconsidering the Employment Contract Exclusion in Section 1 of the Federal Arbitration Act: Correcting the Judiciary's Failure of Statutory Vision*, 1991 J. Disp. Res. 259.

*The Rehnquist Court, Statutory Interpretation, Inertial Burdens, and a Misleading Version of Democracy*, 22 U. Toledo L. Rev. 583 (1991).

*A Better Approach to Arbitrability*, 65 Tulane L. Rev. 1377 (1991).

*Pitfalls of Public Policy:  The Case of Arbitration Agreements*, 22 St. Mary's L.J. 259 (1990).

*All Stressed Up But Not Sure Where To Go: Pondering the Teaching of Adversarialism in Law*

*School* (Book Review Essay), 55 BROOKLYN L. REV. 165 (1989).

*A Distorted Mirror:  The Supreme Court's Shimmering View of Summary Judgment, Directed Verdict, and the Value of Adjudication*, 49 OHIO ST. L.J. 95 (1988).

*Rehnquist, Recusal, and Reform*, 53 BROOK. L. REV. 589 (1987)(winner, 1990 Sanford Levy Award).

*Why Lawyers Should Be Allowed to Advertise:  A Market Analysis of Legal Services*, 58 N.Y.U. L. REV. 945 (1983)(with Prof. Geoffrey C. Hazard, Jr. and Prof. Russell G. Pearce).

*Electoral Folklore:  An Empirical Examination of the Abortion Issue*, 1 YALE L. AND POL. REV. 1 (1982) (with William D. Morris, Ph.D.).

*An Assessment of Alternative Strategies for Increasing Access to Legal Services*, 90 YALE L.J. 122 (1980) (with Russell G. Pearce and Patrick W. Shea)(student empirical project).

**Shorter Articles, Commentary, Book Reviews, Bar Publications, Features**

*COVID Coverage Cases Conflict With Insurer Documentation*, LAW360 (May 24, 2022)(with Peter Kochenburger and Erik Knutsen).

*How Sonic Boom Risk Informs 'Physical Loss' For COVID Era*, LAW360 (April 5, 2022)(with Peter Kochenburger).

*From Quiet to Confrontational to (Potentially) Quiescent: The Path of the ALI Liability Insurance Restatement*, THE BRIEF (Fall 2020) p. 10.

*Judicial Disqualification: Federal-State Differences*, NEVADA LAWYER (March 2019), pp. 18-21.

*Professional Responsibility Pitfalls: Often But Not Always Apparent*, NEVADA LAWYER (May 2018), pp.8-12.

Comment to the Advisory Committee on the Federal Rules of Evidence (Feb. 16, 2016)(concerning proposed abolition of Rule 803(16)).

Comment to the Reporters of the ALI Restatement on the Law of Liability Insurance (submitted January 20, 2016)(Regarding Council Draft §44)

Franchise Tax Board of California v. Hyatt:  *Questions of Reciprocal Sovereign Immunity – and the Continued Force of* Nevada v. Hall (Hamilton-Griffin on Rights Blog, Dec. 28 & 29, 2015; reprinted on SCOTUSblog)(two-part commentary).

*Policyholder Rights to Independent Counsel,* NEV. LAWYER (Dec. 2015), p. 12.

*Rodney Dangerfield No More:  The American Law Institutes' Coming Restatement of the Law of*

*Liability Insurance*, Nev. Lawyer (Dec. 2015) p. 24.

Comment to the Reporters of the ALI Restatement on the Law of Liability Insurance (submitted November 18, 2015)(Regarding Preliminary Draft No. 1 §19)

Comment to the Reporters of the ALI Restatement on the Law of Liability Insurance (submitted November 18, 2015)(Regarding Preliminary Draft No. 2 §44)

*The Worst Supreme Court Case Ever?  Identifying, Assessing, and Exploring Low Moments of the High Court*, 12 Nev. L.J. 516 (2012)(Introduction to Symposium).

*Insurance in the Courts* (with Randy Maniloff, Esq. & Marc Mayerson, Esq.), Risk Management & Insurance Review (Spring 2006-2010)(semi-annual feature articles summarizing recent insurance litigation and case outcomes).

*Lawyer Professional Responsibility in Litigation*, Nev. Lawyer (Aug. 2007), p. 12.

*The Relationship Between Defense Counsel, Policyholders, and Insurers:  Nevada Rides* Yellow Cab *Toward "Two-Client" Model of Tripartite Relationship.  Are* Cumis *Counsel and Malpractice Claims by Insurers Next?*, Nev. Lawyer (June 2007), p. 20.

*The Status of the Notice/Prejudice Rule for Liability Insurance Claims in Nevada*, Nev. Lawyer (June 2007), p. 10 (with Timothy S. Menter, Esq.).

*Introduction to Symposium: Perspectives on Dispute Resolution in the Twenty-First Century*, 3 Nev. L.J. 191 (2003).

*An Overview of the Sarbanes-Oxley Act and Its Implications for Attorneys*, Nevada Lawyer (April 2003).

*The Case for an Elected Judiciary in Nevada*, Communique (April 2003).

*Introduction: Favorite Insurance Cases Symposium*, 2 Nev. L.J. 287 (2002).

*Symposium:  The Florida Tobacco Litigation -- Fact, Law, Policy, and Significance*, 25 Fla. St. U. L. Rev. 737 (1998)(served as co-chair of Symposium on Florida Tobacco Litigation and Moderator of Panel).

*Recent Case Developments* (Regular Feature, Connecticut Insurance Law Journal 1997–2001).

*Recent Court Decisions*, (Quarterly Feature, Journal of risk and insurance 1997 – 2005).

*Insurance in the Courts* (Regular Feature, Risk Management & Insurance Review (2005-2009).

*Down and Dirty in the Global Village:  Jack Webb's Guide To International Commercial*

12

*Litigation*, 6 J. TRANS. L. 367 (1997)(book review).

*Insurance Coverage and Employment Claims*, TRIAL (Nov. 1996) p. 82.

*Reading Between the Lines:  Insurance Contract Interpretation* TRIAL (September 1995) p. 74.

*Interpreting Insurance Policies*, THE COMPLEAT LAWYER (Summer 1995) *Law Notes*, p. 1.

**Treatise Chapters and Supplements**

Lead Editor, NEVADA CIVIL PRACTICE MANUAL (5th ed. 2001)(Supplements 2002, 2003, 2004. 2005, 2006, 2007, 2008, 2009).

Author, Chapter 56 (*Summary Judgment*) and Chapter 30 (*Oral Depositions*) in MOORE'S FEDERAL PRACTICE (3d ed. 1997)(quarterly supplementation Chapter 56, 1998-2012; Chapter 30, 1997-present).

Co-Author (with David F. Herr, Esq.) Chapter 6 (*Documentary Evidence*) and Chapter 10 (*Witnesses in General*) in Hon. Joseph M. McLaughlin, FEDERAL EVIDENCE PRACTICE GUIDE (Matthew Bender 1989).

Author, 1993 Supplements to Wolcott B. Dunham (ed.), NEW YORK INSURANCE LAW (1990)(Chapter 11 (*Regulation of Life Insurance Companies)*; Chapter 21 (*Non-Profit Health Care Plans*); Chapter 22 (*Other Life, Annuity, Retirement and Health Entities*; Chapter 26 (*Basic Concepts of Insurance Law*); Chapter 29 (*Representations and Warranties*); Chapter 32 (*Life Insurance Policies)*; Chapter 33 (*Life Insurance Claims)*; Chapter 34 (*Annuities and Variable Contracts*); Chapter 35 (*Accident and Health Insurance*); Chapter 40 (*Professional Liability Insurance)*; Chapter 46 (*Aviation Insurance)*; Chapter 48 (*Workers' Compensation Insurance)*; Chapter 52 (*Fidelity and Surety Insurance*).


**Additional Teaching**

*Comparative Civil Procedure and Dispute Resolution* (Insubria University, Como, Italy): July 2010, July 2011, July 2012, July 2013.

*Comparative Liability Insurance: Chile and the United States* (Adolfo Ibanez University, Santiago, Chile): December 2022.


**Professional Presentations**

An Overview of Insurance Regulation and How The Federal Government and the States Regulate Insurance -- A Practical Walk-Through of the System (as part of insurance regulation conferences sponsored by Executive Enterprises, Inc.):  October 1989 (New York); March 1990 (New York); September 25-26, 1990 (New York); March 1991 (New York); September 26-27,

1991 (New York); October 1991 (Chicago); April 1992 (New York); July 13-14, 1992 (New York); July 12-13 1993 (New York).

The Legacy of *Goldberg v. Kelly* (panel moderator at Brooklyn Law School Symposium)(May 1990)(Brooklyn, NY).

Principles of Insurance Contract Interpretation, presented at Insurance Contract and Coverage program sponsored by Executive Enterprises, Inc. (October 1990)(New York)(also served as program co-chair).

How The Sophistication of the Policyholder Can Have an Impact On Coverage, presented at Insurance Contract and Coverage Briefing sponsored by Executive Enterprises, Inc.:  October 1990 (New York); April 15-16, 1991 (New York)(also served as program co-chair).

Workshop on Drafting Effective Policy Language, presented at Insurance Contract and Coverage Briefing sponsored by Executive Enterprises, Inc.:  April 15-16, 1991 (New York)(with David F. Herr, Esq.)(also served as program co-chair).

The Impact of New Amendments to the Federal Rules of Civil Procedure Regarding Discovery and Disclosure; National Association of Securities & Commercial Attorneys (January, 1994); (Captiva, Florida).

The Value and Drawbacks of Specialized Courts, presented at Brooklyn Law School Pomerantz Lecture forum (October 1994)(Brooklyn, New York)(commenting on Pomerantz Lecture by Prof. Rochelle Dreyfuss).

More on Coverage Defenses, presented at Denying Coverage and Related Issues conference sponsored by American Conference Institute:  October 31-Nov. 1, 1994 (New York) and March 8-9, 1995 (New York).

Walking the Tightrope Between Acting in Bad Faith and Vigorously Defending, presented at Bad Faith and Punitive Damages in Insurance Claims conference sponsored by American Conference Institute:  April 6-7 1995 (New York).

Interpretation of Insurance Contracts:  Bad Faith, Duty to Defend, Duty to Settle, Related Issues, presented at Minnesota Insurance Law 1995 (conference sponsored by Minnesota Institute of Legal Education):  April 5, 1995 (Bloomington, Minnesota).

What ADR Can Learn from Litigation, presented at Ohio State University Symposium and Schwartz Lecture (April 7, 1995)(Columbus, Ohio).

How Judges Read Reinsurance Contracts presented at Mealey's Reinsurance in the Real World Conference (June 12-13, 1996)(Palm Beach, Florida).

Arbitrator Training and Panel Discussion at Mediation of 10th Annual Conference for Arbitrators and Mediators sponsored by Florida Dispute Resolution Center, August 24-25, 1996

(Orlando, Florida).

Pleading in Securities Litigation After the Securities Law Reform Act of 1995; National Association of Securities & Commercial Attorneys (Jan. 28, 1997)(Key Largo, Florida).

Insurance Coverage for Employment and Environmental Claims; Minneapolis Club Corporate Counsel (March 5, 1997)(Minneapolis, Minnesota).

How Does General Liability Coverage Manage the Fear of Liability in Today's Litigious Workplace?; Minnesota Institute of Legal Education (March 6, 1997)(Bloomington, Minnesota).

The Reasonable Expectations Doctrine in Florida, 1997 Annual Meeting of the Florida Association of Defense Counsel (Sept. 1997)(St. Petersburg, Florida).

Current Developments in American Insurance Coverage Law (Presented to Lloyd's Nonmarine Underwriters)(November 1997)(London, England).

The Florida Tobacco Litigation (Symposium Organizer and Panel Moderator)(November 1997)(Tallahassee, Florida).

The Reasonable Expectations Doctrine in the Third Decade, 1998 Association of American Law Schools Annual Meeting of the Insurance Law Section (January 6, 1998)(San Francisco, CA).

Are Courts and Juries Competent for Addressing Complex Cases?, University of Arizona/Institute for Law and Economics Symposium, Courts on Trial (April 20, 1998)(Tucson, Arizona).

Are Recent Restrictions on Jurisdiction Wise?, University of Arizona/Institute for Law and Economics Symposium, Courts on Trial (April 20, 1998)(Tucson, Arizona).

Insurance Coverage for Year 2000 Liability: An Overview, Presentation for Insurers and Counsel sponsored by Wilson, Elser, Moskowitz, Edelman & Dicker (May 4, 1998)(New York, New York).

Insurance Coverage and Employment Claims, Professional Underwriters Liability Society Symposium (March 5, 1999)(New York, New York).

Current Developments in Legal Ethics: The ABA Ethics 2000 Project, Florida Bar CLE (June 23, 1999)(Boca Raton, Florida).

Professional Responsibility Issues in Gaming Law, International Association of Gaming Attorneys (September 27, 1999)(Nassau, Bahamas).

The Current Status of Multidisciplinary Practice, Continuing Legal Education Program, Southern Nevada Women Attorneys Association (Las Vegas, Nevada, Jan. 2000).

Specialized Business Courts, Testimony before Nevada House-Senate Subcommittee on Improving Nevada Business Climate (Las Vegas, Nevada, Jan. 2000).

Current Issues in Civil Litigation, Conference of Nevada Justices, Judges & Legislators (Las Vegas, Nevada, June 2000).

Current Issues in Cyberlaw, Continuing Legal Education, State Bar of Nevada Annual Meeting (June 2000).

Liability and Insurance Issues Arising for Mold Claims, University of Nevada Las Vegas, Harry Reid Center for Environmental Studies (Las Vegas, Nevada, Oct. 18, 2001).

Professional Responsibility Issues Regarding Attorney's Fees and Liens, Clark County Continuing Legal Education (Las Vegas, Nevada, December 18, 2001).

When Insurance Plays a Role in Your Dispute, State Bar of Nevada Continuing Legal Education, Jan. 24 (Reno, NV) & Jan. 25 (Las Vegas, NV).

Perspectives on Dispute Resolution in the 21st Century, William S. Boyd School of Law and Nevada Law Journal Symposium, Jan. 25, 2002 (Las Vegas, NV).

Recent Cases Raising Questions of Professionalism, State Bar of Nevada Leadership Conference (Las Vegas, Nevada, Feb. 22, 2002).

Professional Responsibility and Celluloid Lawyers, (Nevada Inn of Court)(Las Vegas, Nevada, Feb. 25, 2002).

Negotiation Principles and Techniques, Nevada Inns of Court (Reno, Nevada)(March 13, 2002).

The Attorney-Client Privilege and Current Issues in Legal Ethics (Las Vegas, Nevada, July 26, 2002)(Clark County Bar Association CLE).

Legal Ethics for the Gaming Attorney (San Diego, California, September 13, 2002)(Annual Meeting of the International Association of Gaming Attorneys).

An Overview of the Sarbanes-Oxley Act and its Implications for Lawyers (Las Vegas, Nevada, October 29, 2002)(Lionel, Sawyer & Collins Legal Workshop).

Ethical Issues in Gaming Law (Las Vegas, Nevada, November 8, 2002)(State Bar of Nevada CLE).

Legal Ethics: The Year in Review (Las Vegas, Nevada, November 12, 2002 and Reno, Nevada, November 22, 2002)(State Bar of Nevada CLE; Standing Committee on Ethics and Professional Responsibility).

An Overview of the Sarbanes-Oxley Act and its Implications for Corporate Behavior (Las

16

Vegas, Nevada, December 10, 2002)(Northern Trust Workshop).

Judicial Selection: The Case for Appointment over Election (Las Vegas, Nevada, December 10, 2002)((UNLV Center for Democratic Culture Symposium on Judging Judges)(also moderated morning panel).

Legal Ethics and the Gaming Lawyer: The Impact of Sarbanes-Oxley (Las Vegas, Nevada, January 9, 2003)(2003 American Gaming Summit).

The Press and the Courts: Friend or Foe? (Las Vegas, Nevada, February 11, 2003)(Clark County CLE and Boyd School of Law)(moderator).

Diminished Value Claims and Auto Insurance: *Siegle v. Progressive* in Context (Miami Beach, Florida, February 21, 2003)(ABA Trial Tort & Insurance Law Section Committee on Insurance Coverage).

Remedies in Dispute Resolution (Las Vegas, Nevada, March 25, 2003)(Nevada Inn of Court and State Bar of Nevada CLE).

The Emerging Common Law of Arbitration Unconscionability (Hamden, Connecticut, April 15, 2003)(Yale-Quinnipiac Center on Dispute Resolution).

Tort Reform: Issues of Law and Policy (Las Vegas, Nevada, April 25, 2003)(Center for Democratic Culture and Boyd School of Law)(moderator).

An Update on Lawyer Regulation Under the Sarbanes-Oxley Act (Las Vegas, Nevada, May 9, 2003)(National Association of Former United States Attorneys)

Recent Lawyer and Business Regulation Affecting the Gaming Industry (Las Vegas, Nevada, May 23, 2003)(Nevada Association of Certified Public Accountants)(panel discussion).

Professional Responsibility Pitfalls for Young Lawyers (Las Vegas, Nevada, August 7, 2003)(Clark County Bar Association).

The Sarbanes-Oxley Act After One Year: Implications for Attorneys (Las Vegas, Nevada, August 21, 2003)(Clark County Bar Association).

Issues Facing Lawyers Under Sarbanes-Oxley (Las Vegas, Nevada, Sept. 23, 2003)(Association of Gaming Attorneys)

Principles of Principled Negotiation (Las Vegas, Nevada, November 3, 2003)(Western Interstate Child Support Enforcement Council; 20th Annual Training Conference).

Negotiation Workshop (Las Vegas, Nevada, November 3, 2003) (Western Interstate Child Support Enforcement Council; 20th Annual Training Conference).

Ethical Dilemmas:  What=s an Insurer to Do? (New York, New York, December 5, 2003)(Defense Research Institute).

Ethics and Civility: Nevada Ethics 2000 Committee Recommendations Concerning Professional Conduct (Las Vegas, Nevada, December 10, 2003)(Nevada Inn of Court).

Recoupment of Defense Costs (Santa Monica, California, Feb. 20, 2004)(ABA Tort Trial and Insurance Section).

An Insurer's Contractual "Right to Defend": The Tripartite Relationship and "Independent Counsel" (Tucson, Arizona, March 5, 2004)(ABA Litigation Section Insurance Coverage Committee).

The Legacy of Brown v. Board (Las Vegas, Nevada, March 10, 2004)(Nevada Inn of Court)

Corporate Ethics: How to "Travel Straight" and "In a Good Direction" and Still Survive and Thrive in the Corporate World (Panel Discussion)(Reno, Nevada, April 29, 2004)(District of Nevada Judicial Conference).

Legal Ethics: The Year in Review (Reno, Nevada, Nov. 5, 2004)

Legal Ethics: The Year in Review (Las Vegas, Nevada, Nov. 19, 2004).

The Statute of Liberty -- or Not?  Independent Counsel and the Tripartite Relationship (New York, Dec. 3, 2004)(DRI Insurance Coverage Symposium).

A Problem from Hell: Asbestos Liability and Insurance Coverage (Association of American Laws Schools Annual Meeting, Section on Insurance Law, San Francisco, California, January 7, 2005).

Is Successor Liability Insured? (ABA Tort, Trial & Insurance Section, Mid-Year Meeting, Phoenix, Arizona, Feb. 18, 2005).

Civility: An Overview (State of Nevada Board of Regents Meeting, March 11, 2005, Las Vegas, Nevada).

Class Actions and Limited Vision: Opportunities for Expanding Class Treatment Through a More Functional Approach to Class Actions (Institute for Law and Economic Policy, Symposium, Lake Las Vegas, Nevada, April 8, 2005).

Coverage for Asbestos-Related Liability: Was the Insurance Industry Unfairly Surprised? (Symposium, AAsbestos: Anatomy of a Mass Tort@; University of Connecticut School of Law, Hartford, Connecticut, Nov. 2, 2005).

Nevada Legal Ethics: The Year in Review (State Bar of Nevada Continuing Legal Education, Las Vegas, Nevada, Nov. 18, 2005).

*Campbell v. State Farm Insurance*: How a Roadside Collision Spurred 25 Years of Litigation and Changed American Law of Evidence, Legal Ethics, Punitive Damages, and Constitutional Law (Georgia-Augusta University, Goettingen, Germany, Nov. 22, 2005).

From Johnstown to New Orleans: Insurance of Environmental Risks in the USA (Symposium, Insurance of Environmental Risks, Competence Center on Insurance Science, Goettingen, Germany, Nov. 23, 2005)

The American Insurance System: An Agenda for Research and Reform (Dickinson School of Law, Pennsylvania State University, Carlisle, Pennsylvania, Dec. 5, 2005).

Insurance Coverage Coverage Issues in Nevada (National Business Institute, Las Vegas, Nevada, Oct. 12, 2006).

Nevada Legal Ethics:  The Year in Review (State Bar of Nevada, Reno, Nevada, Nov. 17, 2006 & Las Vegas, Nevada, Dec. 1, 2006).

Legal Ethics and Ex Parte Contacts (Southern Nevada Inn of Court, Las Vegas, Nevada, Jan. 9, 2007).

Keeping Arbitrations from Becoming Kangaroo Courts (Boyd School of Law-UNLV Symposium, *The 75th Anniversary of the Federal Arbitration Act*, Las Vegas, Nevada, Jan. 26, 2007).

Punitive Damages in the United States:  History, Controversy and Recent Developments (Universita Commerciale Luigi Bocconi, Milan, Italy March 5, 2007).

Insurance Punitive Damages After *Campbell v. State Farm Insurance* (German Insurance Science Association Annual Meeting, Stuttgart, Germany, March 8, 2007).

Mandating Minimal Fairness in Mass Arbitration (University of Cincinnati Corporate Law Center Symposium, *Twenty Years aft*er McMahon, Cincinnati, Ohio, March 30, 2007).

Litigation and Its Unanticipated Consequences: *Campbell v. State Farm* and the Evolving American Law of Punitive Damages (Litigation and Its Discontents Panel of the Annual Meeting of the Law and Society Association, Humboldt University, Berlin, Germany, July 26, 2007).

Ghost-Lawyering (Nevada Legal Services 25th Anniversary Symposium, October 17, 2007, Las Vegas).

Ethical Challenges for New Practitioners (Boyd School of Law Alumni CLE Symposium, November 2, 2007, Las Vegas).

Legal Ethics in Nevada:  The Year in Review (State Bar of Nevada, Nov. 16, 2007, Las Vegas and Nov. 30, 2007, Reno).

Insurance Bad Faith and Public Policy: *Campbell v. State Farm* and the Evolving American Law of Punitive Damages (Nov. 19, 2007)(Osher Lifelong Learning Institute, Las Vegas).

Recent Developments in Nevada Legal Ethics (Lionel Sawyer & Collins Continuing Legal Education, Nov. 28, 2007, Las Vegas).

The "Other" Intermediaries: The Increasingly Anachronistic Immunity of Managing General Agents and Independent Claims Adjusters (Association of American Law Schools Section on Insurance Law, New York, Jan. 5, 2008).

The Liability Regime of "Downstream" Insurance Intermediaries and Sureties (March 31, 2008)(Osher Lifelong Learning Institute, Las Vegas).

*Exxon*: Supreme Court Rules on Preemption and Punitive Damages (July 17, 2008)(ALI-ABA Audio Webcast panel discussion).

*Campbell v. State Farm*: Lessons for Lawyers (Kentucky Justice Association Annual Meeting, September 5, 2008).

Current Issues in Professional Responsibility (Lionel, Sawyer & Collins Continuing Legal Education program, Tahoe City, California, October 4, 2008).

Ethical Issues for Lawyers in Construction Defect Litigation (BVR Comprehensive Construction Defect Claims & Coverage SuperConference (Las Vegas, NV, Nov. 6, 2008).

Nevada Legal Ethics: The Year in Review (State Bar of Nevada, Las Vegas, NV, Nov. 19, 2008 and Reno, NV, Dec. 5, 2008).

Construing Insurance Policies: Four Views of the Cathedral (Insurance Law Section program, AALS Annual Meeting, Jan. 9, 2009, San Diego, CA).

Diversity in the Legal Profession (Moderator/Panelist)(Boyd School of Law, Las Vegas, NV, Feb. 5, 2009).

Motion Mania: What Do Judges (and Lawyers) Really Want in Motion Practice? (Las Vegas, NV, McKibben Inn of Court, Feb. 10, 2009).

How the Bar and Law School Can Work Together to Prepare New Lawyers for Practice in Nevada (Panelist)(Boyd School of Law, Las Vegas, NV, March 27, 2009).

Quadrangulating Insurance Policy Meaning (McGeorge School of Law, Sacramento, CA, April 10, 2009).

Recent Developments in Judicial Disqualification and Judicial Conduct (Boyd School of Law Alumni CLE, Las Vegas, NV, Oct. 16, 2009).

Preserving Points for Appeal in Opening Statements and Closing Arguments:  Objections and Plain Error (Howard McKibben Inn of Court, Las Vegas, NV, Nov. 10, 2009).

Legal Ethics:  The Year in Review (State Bar of Nevada CLE, Las Vegas, NV, Nov. 12, 2009)(simulcast to Reno, NV).

Professional Responsibility Issues for Board Counsel (Federation of State Medical Board Counsel, Las Vegas, NV, Nov. 13, 2009).

An Update on Legal Ethics (Lionel, Sawyer & Collins, Las Vegas, NV, Nov. 19, 2009).

Legal Ethics – 2009:  Highlights and Emerging Issues (State Bar of Nevada CLE, Las Vegas, NV, Dec. 21, 2009)(simulcast to additional locations).

The New Nevada Code of Judicial Conduct (Washoe County Bar Assn., Reno, NV, Feb. 10, 2010).

Bankruptcy and Dispute Resolution (Saltman Center Conference on Conflict Resolution and the Economic Crisis, Las Vegas, NV, Feb. 13, 2010).

Quadrangulating Insurance Coverage:  Four Views of the Cathedral (AALS Contracts Section Conference, Las Vegas, NV, Feb. 27, 2010).

Class Actions and Punitive Damages In the United States (Insubria University, Como, Italy, July 18, 2010).

Merit Selection of Judges (UNLV, September 15, 2010)(moderator).

Avoiding Ethical Pitfalls:  Examples from Across the Nation (Boyd School of Law, October 4, 2010).

The Insurance Policy as Social Instrument and Social Institution (Liberty Mutual Prize Lecture, Boston College, Newton, MA, Oct. 6, 2010).

Electing or Appointing Judges (Boyd School of Law, October 22, 2010)(moderator),

Avoiding Ethical Pitfalls:  Examples from Across the Nation (Lionel Sawyer & Collins CLE Program, Las Vegas, November 4, 2010)

Legal Ethics:  The Year in Review (Las Vegas, Dec. 3, 2010).

Current Issues in Judicial Disqualification:  Assessing the Landscape Post-*Caperton*, *Citizens United* and the 2007 ABA Model Code of Judicial Conduct, AALS Section on Litigation (co-sponsored by Sections on Civil Procedure and Professional Responsibility) (San Francisco, Jan. 7, 2011).

21

Current Issues in Legal Ethics (State Bar of Nevada/Boyd School of Law CLE)(Las Vegas, Nev., Feb. 4, 2011).

Fundamentals of Litigation Practice:  Drafting Effective Pleadings (ThomsonReuters (West) National Webinar, May 19, 2011).

Fundamentals of Litigation Practice:  Scope of Discovery (ThomsonReuters (West) National Webinar, June 16, 2011).

Carrigan v. Ethics Commission:  The U.S. Supreme Court Rescues Nevada from Temporary Insanity (Southern Nevada Association of Women Attorneys, Las Vegas, Nevada, July 7, 2011).

Fundamentals of Litigation Practice:  Sanctions:  Bringing and Avoiding Sanctions Motions (ThomsonReuters (West)( National Webinar, Nov. 17, 2011).

Recent Developments in Legal Ethics (Lionel, Sawyer & Collins CLE Program, Las Vegas, Nov. 17, 2011).

Fundamentals of Litigation Practice:   Post-Trial Motions (ThomsonReuters(West)(National Webinar, Dec. 15, 2011).

Legal Ethics:  The Year in Review (State Bar of Nevada CLE Program, Las Vegas, Dec. 15, 2011).

Politics, Ethics, and the Supreme Court:  The Present and Future of Supreme Court Recusal (Presenter and Panelist)(Association of American Law Schools Annual Meeting, Washington, DC, Jan. 6, 2012).

Fundamentals of Litigation Practice:  Use and Discovery of Experts (ThomsonReuters(West) (Feb. 16, 2012).

Fundamentals of Litigation Practice:  Effective Use of Interrogatories and Document Requests (ThomsonReuters(West)(March 15, 2012).

Saints & Sinners:  Ethical Issues in Marketing Legal Services (ABA Business Law Section Annual Meeting)(Las Vegas, NV, March 22, 2012).

Power Grab:  The Supreme Court's Inconsistent and Result-Oriented Arbitration Jurisprudence (Law & Society Annual Meeting, Honolulu, Hawaii, June 5, 2012).

Guido Calabresi:  The Establishment Iconoclast (Adolfo Ibanez University, Santiago, Chile August 10, 2012).

Managing the Arbitration Process for Efficiency & Economy Following the Preliminary Hearing (Training Program conducted for the American Arbitration Association, Las Vegas, Nevada,

November 7, 2012)

<u>Unfinished Business:  When Lateral Hires Become Toxic</u> (Lionel Sawyer & Collins CLE, Las Vegas, Nevada, December 6, 2012)(with Paul Hejmanowski, Esq. and A. William Maupin, Esq.).

<u>Notice and Insurance:  Reconsidering Distinctions Between Occurrence and Claims-Made Policies</u> (Lionel Sawyer & Collins CLE Presentation, Las Vegas, Nevada, December 6, 2012).

<u>Unfinished Business:  When Lateral Hires Become Toxic</u> (State Bar of Nevada Ethics Year in Review 2012, Las Vegas, Nevada, December 10, 2012)(with Paul Hejmanowski, Esq. and A. William Maupin, Esq.) .

<u>Ameliorating Exceptionalism</u> (Association of American Law Schools Annual Meeting – Health Law Section Meeting, New Orleans, Louisiana, January 5, 2013).

<u>The Duties and Liabilities of the Insurance Broker</u> (ABA Tort Trial & Insurance Practice Section Insurance Coverage Litigation Committee Midyear Program, Phoenix, Arizona, Feb. 15, 2013).

<u>Aysmetric Dynamism and Acceptable Judicial Review of Arbitration Awards</u> (Penn State Yearbook on Arbitration and Mediation Symposium on The Role of the Courts:  Judicial Review of Arbitral Awards and Mediated Settlement Agreements, Carlisle, Pennsylvania, Feb. 22, 2013).

<u>Rediscovering the Sawyer Solution:  Bundling Risk for Protection and Profit</u> (Rutgers School of Law-Camden Conference on Fragmented Risk, Camden, New Jersey, March 1, 2013).

<u>Popular Culture and Professionalism</u> (State Bar of Nevada CLE, Las Vegas, Nevada, March 8, 2013).

<u>Extraordinary Pretrial Remedies</u> (State Bar of Nevada CLE, Las Vegas, Nevada, April 18, 2013).

<u>The Insurance Policy as Social Instrument</u> (Aldolpho Ibanez University, Santiago, Chile, June 20, 2013).

<u>Popular Culture and Professionalism</u> (State Bar of Nevada/UNLV CLE, Las Vegas, Nevada, October 5, 2013).

<u>Professional Responsibility:  Cautionary Trails From Across the Country</u> (Lionel, Sawyer & Collins CLE, Las Vegas, Nevada, Nov. 21, 2013).

<u>Conflicts of Interest:  Identifying the Client and the Duties</u> (Panel Discussion at Lionel, Sawyer & Collins CLE, Las Vegas, Nevada, Nov. 21, 2013).

<u>Basics of Insurance Coverage</u> (CLE, State Bar of Nevada, Las Vegas, Nevada, Jan. 15, 2014).

<u>Hot Topics in Insurance</u> (CLE, State Bar of Nevada Annual Meeting, Newport Beach,

California, July 11, 2014).

Insurer Breach of the Duty to Defend:  What Consequences in the USA?  (Jornadas de Reccho Comercial (Chilean Commercial Law Congress), Adopho Ibanez University, Santiago, Chile, August 28, 2014).

Enhancing the Socially Instrumental Role of Insurance:  Too Often Missing the Opportunity Presented by Breach of the Duty to Defend (University of California-Irvine Symposium on The Relationship between Insurance and Legal Regulation:  Normative, Theoretical and Empirical Perspectives), Irvine, California, September 19, 2014).

Insurer Breach of the Duty to Defend:  What Consequences?  What Direction? (CLE, Lionel, Sawyer & Collins, Las Vegas, Nevada, Dec. 4, 2014).

Super-Failure of Mandated Disclosure:  The Case of Insurance (Tenth International Conference on Contracts, Contracts Section of the Association of American Law Schools, Las Vegas, Nevada, Feb. 28, 2015)

Aiding and Abetting:  The Supreme Court's Unfortunate Encouragement of Police Misconduct (Joint Program of the Federalist Society and the Black Law Students Association on Police Misconduct, Las Vegas, Nevada, April 10, 2015)

Things You Don't Know Can Hurt You.  Here Are Twelve of Them (Clark County Bar Association CLE Program in Lawyer Professional Responsibility, Las Vegas, Nevada, June 25, 2015).

Police Misconduct Litigation in the USA (Adolpho Ibanez University, Santiago, Chile, Aug. 6, 2015).

Insurance Intermediaries in the United States (University of Connecticut/Renmin Law School Conference *The U.S. & China: New Insurance Products, New Regulatory Challenges*, Oct. 9, 2015, Hartford, Connecticut).

Ethical Challenges in ADR (State Bar of Nevada Section on Alternative Dispute Resolution CLE, Psychology of Negotiation, Mediation Ethics and Appellate Court Practice Tips, Nov. 6, 2015, Las Vegas, Nevada).

Hearsay and Its Discontents: The Ancient Documents Exception as a Window (Boyd Law Alumni State Bar of Nevada CLE, Reno, Nevada, January 14, 2016).

The Ethics of Claims Handling (Defense Research Institute, Insurance Coverage and Claims Institute, Chicago, Illinois, April 7, 2016)

Excess Insurance, Attachment of Liability, and Current Controversy in the USA Surrounding Exhaustion of Underlying Limits:  The Clash between Purpose, Policy Text and Public Policy (Seminar on International Development of Insurance Law in China, Dalian, China, June 3, 2016)

Excess Insurance, Attachment of Liability, and Current Controversy in the USA Surrounding Exhaustion of Underlying Limits:  The Clash between Purpose, Policy Text and Public Policy (Beihang University, Beijing, China, June 6, 2016)

Implicit Bias, Cognitive Error & Judicial Recusal (Institute for the Advancement of the American Legal System Symposium on Best Practices for Ensuring Fairness, Transparency, and Timeliness in Recusal Practices for State Court Judges, Colorado Springs, Colorado, November 4, 2016)

Comments From a Quiet Corner:  Current Concerns Regarding Reinsurance Arbitration (Penn State Symposium, The Issues in Arbitration, State College, Pennsylvania, Feb. 3, 2017)(by electronic connection)

Legal Ethics and Law Reform Advocacy (Rutgers Workshop on Insurance, Camden, New Jersey, Oct. 20, 2017)

Judicial Peremptory Challenges and Increasing Access to Justice (Fordham Stein Center Civil Procedure Colloquium, New York, N.Y., Oct. 27, 2017)

What Went Wrong?  A Look At Professional Responsibility Pitfalls From Across the Nation (Nevada State Bar CLE:  Ethics:  The Year in Review, Las Vegas, Nevada, Nov. 7, 2017)

The American Law Institute Restatement (of the Law of Liability Insurance) and Its Discontents (Central University of Finance and Economics, Beijing, China, Dec. 11, 2017)

The Duty to Defend in USA Insurance Law (Central University of Finance and Economics, Beijing, China, Dec. 11, 2017)

The Restatement of the Law of Liability Insurance:  Is The Sky Falling? (ABA Litigation Section Insurance Coverage Litigation Committee CLE Seminar, Tucson Arizona, March 1, 2018)(Plenary Session Panel Discussion)

Rejecting Word Worship: An Integrative Approach to Construction (ALI Early Career Scholars Medal Conference, Washington, D.C., April 6, 2018)(with Erik S. Knutsen)

The Techno-Neutrality Solution to Navigating Insurance Coverage for Cyber-Losses (Penn State Law Review Symposium/CLE: *Insuring Against Cyber Risk: The Evolution of an Industry*, Pittsburgh, PA and State College, PA, April 13, 2018)(with Erik S. Knutsen)

Hard Battles Over Soft Law:  The Substantive and Political Implications of Controversy Surrounding the American Law Institutes *Restatement of the Law of Liability Insurance* (Joint Conference of the Asia-Pacific Risk and Insurance Association and the Insurance Risk and Finance Research Centre-Nanyang Technological University, Singapore, July 31, 2018)

The RLLI and Insurer Settlement Obligations (University of Connecticut Insurance Law Center

Symposium: The Restatement of the Law of Liability Insurance: The World Turned Upside Down?, Hartford, Connecticut, April 5, 2019)

The RLLI and Contract Interpretation:  Too Much Fuss About Too Little (Rutgers Center for Risk and Responsibility Symposium: Was the World Turned Upside-Down?  The ALI Restatement of the Law, Liability Insurance, Camden, New Jersey, April 12, 2019)

What Do We Meaning by "Plain Meaning"?  (American College of Coverage Counsel Annual Meeting and Symposium, Chicago, Illinois, May 9, 2019)

The Elastics of Snap Removal: Judicial Traits and Jurisprudential Divide (Fifth Annual Civil Procedure Workshop, Austin, Texas, October 25, 2019).

The Elastics of Snap Removal: Judicial Traits and Jurisprudential Divide (Bay Area Civil Procedure Forum, San Francisco, CA, November 19, 2019).

Legal Ethics and Law Reform Advocacy (19th Annual Symposium on Legal Malpractice & Ethics, St. Mary's University School of Law, San Antonio, TX, January 24, 2020).

Testing the Troublesome Surplusage Canon (6th Annual Symposium on Law & Corpus Linguistics, BYU School of Law, Provo, Utah, February 6, 2020)(with Lawrence Solan)

Alternatives to Corpus Linguistics (Symposium on Data-Driven Interpretation)(Brooklyn Law School, March 6, 2020)(Moderator/Discussant)

Venue Issues in Covid-19 Coverage Litigation (American College of Coverage Counsel virtual symposium, May 14, 2020)(Panelist)

Mock Reinsurance Arbitration (*Commercial Lines Insurance v. NatCatGmbH*)(demonstrating application of Principles of Reinsurance Law ("PRICL"), AIDA Europe Annual Meeting, Zurich, Switzerland, September 17, 2020)(via Zoom)(Presenter/Counsel)

Hard Battles Over Soft Law: The Politics of Law Reform in the USA and the ALI Restatement of Liability Insurance, Il Congreso International de Derecho de Seguros "Dimensiones y desaflos del Seguro de responsibildad civil" XL Aniversario de la Ley del Contrato del Seguro (October 7, 2020, Madrid, Spain)(via remote connection).

Avoiding Ethical Trapdoors in Gaming Law or Finding Your Way Out of Tunnels: Exploring Real World Scenarios, 2020 Gaming Law Conference (Las Vegas, Nevada, Nov. 5, 2020)(with Anthony Cabot, Esq.)(via remote connection)

COVID-19: Challenges for (Re-)Insurance Law – A Transnational Perspective (Zurich, March 25, 2021)(conducted via Zoom)(Inaugural ATILA Transatlantic Lecture on Insurance Law, European Law Institute Insurance SIG series Transatlantic Lectures on Insurance Law)(Panelist/Organizer)

A U.S. Perspective on COVID-19 Claims Following Fortunes and Settlements (AIDA International Reinsurance Working Party, Buenos Aires, May 11, 2021)(conducted via Zoom)

Liability & Insurance concerning Artificial Intelligence: Recent trends in US and EU Law (Zurich, September 23, 2021)(conducted via Zoom)(Panelist/Organizer)(European Law Institute Insurance SIG series Transatlantic Lectures on Insurance Law)

Reinfection: Examining Judicial Traits and Estimating Outcomes as Covid-19 Cases Gain Appellate Review (Chicago, Illinois; September 23, 2021)(American College of Coverage Counsel Annual Meeting)

Dictionary Use and Textual Literalism as De Facto – and Defective – Artificial Intelligence (III Congreso International de Derecho del Seguro, Madrid, Oct. 6, 2021)(via Blackboard)(with Erik S. Knutsen)

Bringing Rigor to Textualism Through Artificial Intelligence (III Congreso International de Derecho del Seguro, Madrid, Oct. 6, 2021)(via Blackboard)(with Erik S. Knutsen)

Professional Responsibility Aspects of Mentoring (Howard McKibben Inn of Court, Las Vegas, NV  February 8, 2022)(via Zoom).

(North) American Exceptionalism: The Auto Liability Version (Presentation with Erik S. Knutsen)(European Law Institute Insurance SIG series Transatlantic Lectures on Insurance Law, March 10, 2022).

Will It Be That New a Day in New Jersey?  Assessing the IFCA (Rutgers Law School Center for Risk and Responsibility, April 13, 2022)(via Zoom).

The Combative War Exclusion: Past, Present, Future; Theory and Practice (Presentation with Erik S. Knutsen)(European Law Institute Insurance SIG series Transatlantic Lectures on Insurance Law, September 29, 2022).

The New Face(s) and Future(s) of War and Related Exclusions (Presentation with Erik S. Knutsen)(IV Congreso Internacional De Derecho Del Seguro)(Universidad Pontificia Comillas, Madrid, October 14, 2022).

U.S. Insurance Law: Structural Features and Current Controversies (Universidad Pontificia Comillas, Escuela de Derecho, Madrid, Oct. 17, 2022).

U.S. Insurance Law and Politics: The Influence of Structural Factors on COVID-19 Coverage Claims (Law & Society Association Annual Meeting, San Juan, Puerto Rico, June 1, 2023).

Fissures and Fault Lines in U.S. Insurance Law: The Impact of Dual Symptoms and Multiple Forums Creating Divergent Outcomes (European Law Institute Annual Meeting - Insurance SIG Program, Vienna, Austria, September 8, 2023).

Information Duties in Insurance: Contract Formation and Other Issues (III Congresso Internacional de Direito do Seguro, IX Forum de Direito do Seguro, Brasilia, Brazil, November 8, 2023).

Fissures and Fault Lines in U.S. Insurance Law: The Impact of Dual Symptoms and Multiple Forums Creating Divergent Outcomes (ATILA Transatlantic Lectures in Insurance Law, November 16, 2023 via Zoom).

Ethics & Professional Responsibility in Gaming (2023 Gaming Law Conference, Las Vegas, NV, November 17, 2023).

Rediscovering Rawls to Repair Law (Comillas Universidad Pontificia, Madrid, November 27, 2024)(in acceptance of honorary degree).

**MEMBERSHIPS:**

Academy of Insurance (2015 – present)
American Law Institute (1991 - present)
    Adviser, *Principles of the Law of Liability Insurance* (2011-2018)
American Bar Association (1982 -present).
    (Winner, 2017 Robert B. McKay Law Professor Award of the Tort Trial and Insurance Practice Section)
    Section on Business Law
    Section on Legal Education and Admission to the Bar
    Section on Litigation
    Tort Trial & Insurance Practice Section;
American Bar Foundation (2015 – present)
American College of Coverage Counsel (2015 – present)
American Judicature Society (1984 - present)
American Association for Justice (2002 – present)
Association of the Bar of the City of New York (1988 - present);
Clark County Bar Association (2001– present)
Defense Research Institute (2003 – present)
European Law Institute (2018 – present)
    Insurance SIG (2019 – present)
Project Group, Principles of Reinsurance Contract Law (2015 – present)
Risk Insurance Management Society (2002 – present)
State Bar of Nevada
    Nevada Judicial Code Commission (2008 – 2010)
    Standing Committee on Ethics and Professionalism (2000 – 2010)(Chair, 2008 – 2010)
    Nevada Ethics 2000 Commission (2003 - 2006)

**LAW SCHOOL ACTIVITIES:**

Editor, YALE LAW JOURNAL, Volume 90 (Member, Volume 89).

Director, Thomas Swan Barristers' Union, 1980–81.
     Recipient, John Fletcher Caskey Prize, Spring, 1980.
Co-founder, YALE LAW AND POLICY REVIEW.

# EXHIBIT B

**Jeffrey W. Stempel**
**Prior Expert Testimony**

In chronological order, the following are cases in which I have testified as an expert at trial, hearing, or by deposition.

1. *Anand Diamonds v. Underwriters at Lloyd's*, Civ. No. ___ (Los Angeles County trial court)(Deposition in Los Angeles, CA, Nov. 1995).

2. *Hedback v. American Family Ins. Co.*, Bky No. 3-94-3419, Adv. No. 3-95-049 (U.S. Bankruptcy Court, D. Minn. 1997)(Deposition in Tallahassee, FL, March 1996).

3. *Village Homes at Country Walk v. American Reliance Insurance Co.*, Civ. No. 93-08494 CA 21 (11th Judicial Circuit, Dade Co., Fla.)(Deposition in Miami, FL, Jan. 1996)(Trial Testimony in Miami, October 1996).

4. *In re Consolidated "Nonfiling" Insurance Fee Litigation a/k/a Elaine M. Jordan v. Avco Financial Services of Ga.*, Civil No. 96-GL-1557-N (Northern Dist. of Ala.)(Deposition in Birmingham, Ala., January 1998).

5. *Charleston v. Floridan Company, Inc. and DuPont Trucking, Inc. v. Continental Casualty Company*, Case No. 94-1153-CAB (Circuit Court, Gadsden Co., FL)(Deposition in Tallahassee, FL, April 1998).

6. *Mahone v. Alabama Power Co.*, Case No. CV 95-2683 (Circuit Court of Jefferson County, Ala.)(Deposition in Birmingham, AL, Jan. 1999).

7. *Paratransit Ins. Co. v. Travelers Ins. Co.*, Civ. No. ____ (Orange County Dist. Court, Orlando, FL)(Deposition in Tallahassee, FL, Feb. 1999).

8. *Hillery v. Connecticut Indemnity Co.*, Civil No. ____ (Hillsborough County Dist. Ct., Tampa, Fla.)(Deposition in Tampa, Fla., March 1999).

9. *Travelers Ins. Co. v. C.M. Whalen, et al.*, Civil No. 98-4121, District of Maryland, Baltimore, Maryland)(Deposition in Baltimore, MD Sept. 1999).

10. *Woods v. Doctors Co.*, Civ. No. _____ (Second Judicial District, Washoe County, Reno, Nev.)(Deposition in Las Vegas, Nev., June 2000)(Trial testimony recorded on videotape in Reno, Nev., July 2000).

11. *Dorries v. State Farm Ins. Co.*, Civil No. ___ (Circuit Court, St. Clair County, Illinois)(Deposition in Edwardsville, Ill., June 2000).

1

12.  *Ernest Grace, et al. v. Atlantic Insurance Co.*, Case No. 99-11-CIV-J-20A (Middle District of Florida, Jacksonville, Fla.)(Deposition in Jacksonville, Fla. July 2000)(Trial Testimony in Jacksonville, Florida, January 2001).

13.  *Anheuser-Busch v. Sphere Drake*, State of Florida, County of Orange (Trial testimony in Orlando, Florida, November, 2000).

14.  *Black v. Pinsoneault*, State of Nevada, Eight Judicial District (Deposition in Las Vegas, Nevada, September 2000).

15.  *Seyfart v. Magliarditi, et al.*, State of Nevada, Eight Judicial District (Deposition in Las Vegas, Nevada, July 2001).

16.  *Brenner v. LePome*, State of Nevada, Eight Judicial District (Deposition in Las Vegas, Nevada, September 2001)(Trial testimony in Las Vegas, Jan. 15, 2002).

17.  *Daley v. Hernandez, et al.*, Attorney Lien of Noel Gage, Esq., State of Nevada, Eight Judicial District (Hearing Testimony in Las Vegas, Nevada, December 2001).

18.  *Resort at Summerlin v. Steadfast Insurance Co.*, No. CV-S-01-1342, District of Nevada (Deposition in Las Vegas, Nevada, February 2002).

19.  *Great American Insurance Co. v. Florida Rock Co.*, State of Florida, Duval County (Deposition in Las Vegas, NV, May 2002).

20.  *Kraft Foods v. American Employers Insurance Co.*, State of Texas, Civil No. __ (Deposition in Overland Park, Kansas, June 2002).

21.  *Squires v. UNUMProvident Ins. Co.*, District of Nevada (Deposition in Las Vegas, Nevada, June 2002).

22.  *Issurdutt v. Hymanson*, State of Nevada, Eighth Judicial District (Deposition in Las Vegas, Nevada, July 2002).

23.  *State of Minnesota v. Travelers Ins. Co.*, State of Minnesota, Ramsey County (Deposition in Minneapolis, Minnesota, December 2002).

24.  *Coisman v. Florida Sheriff=s Self-Insurance Fund*, State of Florida, Brevard County (Deposition in Miami, Florida, February 21, 2003).

25.  *Raytheon v. Continental Insurance Co.*, District of Massachusetts, Boston, Massachusetts (Deposition in Boston, March 12, 2003).

26.  *SMI-Owen Steel Co. v. St. Paul Fire & Marine Ins. Co.*, No. G-00149 (Deposition in Houston, Texas, June 24, 2003)(Trial testimony in Galveston, Texas, June 14, 2006).

27. *Dairy Farmers of America v. Travelers Ins. Companies* (Trial testimony in Kansas City, Missouri, July 9, 2003).

28. *Tompkins v. Marquis & Aurbach* (Testimony in State Bar of Nevada Attorney Fee Arbitration, Las Vegas, Nevada, November 25, 2003).

29. *American Medical Clinics, Inc. v. Meadows Medical Group* (Nevada State Court Case No. A397482; Dept. 4, Clark County)(Deposition in Las Vegas, Nevada, December 16, 2003).

30. *State of Minnesota v. American Hardware Mutual, et al.* (Deposition in Minneapolis, Minnesota, March 2, 2004).

31. *Pet Pantry v. Clarendon Insurance* (Deposition in Reno, Nevada, March 18, 2004)(Trial Testimony in Minden, Nevada, April 13-14, 2004).

32. *Celotex Asbestos Settlement Trust v. Travelers Casualty & Surety*, CPR File No. W-01-18 (Deposition in Las Vegas, Nevada, April 28, 2004)(arbitration hearing in Washington, DC November 2004).

33. *Vestin Mortgage v. Commonwealth Insurance* (Deposition in Las Vegas, Nevada, April 30, 2004).

34. *Shinehouse v. Duesing*, (Deposition in Henderson, Nevada, May 7, 2004).

35. *Joseph v. Zurich Life Insurance* (Deposition in Jacksonville, Florida, July 10, 2004).

36. *DuPre/Human Dynamics Corporation v. Seibels-Bruce Group* (Deposition in Phoenix, Arizona, August 10, 2004).

37. *National Casualty Co. v. Assurance Co. of America* (Deposition in Las Vegas, Nevada, December 13, 2004).

38. *Century Indemnity Co., v. Congoleum Corp.* (Deposition in Washington, DC, January 14, 2005 and via video in Las Vegas, Nevada, January 19, 2005).

39. *Continental Casualty Co. v. Robert A. Keasbey Co.*, (Deposition in Las Vegas, Nevada, February 9 and February 11, 2005 and in Chicago, Illinois May 10, 2005).

40. *XM Satellite Radio Inc. v. Great Lakes Reinsurance (UK) PLC, etc.*, AAA Case No. 50 T 195 00410 04 (Deposition in Los Angeles, California, August 30, 2005)(arbitration matter subject to confidentiality order)(Arbitration hearing testimony in Washington, DC, Nov. 30, 2005).

41. *Ascentra Insurance Agency, Inc., et al. v. Westport Insurance Corp.*, No. 76 Y 195

3

(Deposition in Las Vegas, Nevada, September 21, 2005)(arbitration matter subject to confidentiality order)(Arbitration hearing testimony in Kansas City, Mo., Oct. 13, 2005).

42. *Vig v. Pacific Indemnity* (Deposition in Las Vegas, Nevada, Oct. 28, 2005)(trial testimony in Las Vegas, Nevada, March 21, 2006).

43. *First Specialty Insurance Corp. v. Ward North American, et al.* (Deposition in Las Vegas, Nevada, Dec. 8, 2005)(Trial Testimony in Kansas City, Kansas, Nov. 15, 2006).

44. *Winn-Dixie Stores, Inc. v. XL Insurance America, Inc.* (Deposition in Las Vegas, Nevada, July 6 & July 13, 2006)(Arbitration testimony in Washington, DC, Feb. 13, 2007).

45. *Rhodes v. RLI Insurance Co., et al.*, (Deposition in Las Vegas, Nevada, Oct. 6, 2006).

46*. Thompson v. Columbus Life Ins. Co, et al.,* (Deposition in Las Vegas, Nevada, Nov. 1, 2006).

47. *Olen Development Corp. v. TIG Ins. Co*. (Deposition in Las Vegas, Nevada, Nov. 29, 2006).

48. *Jones v. Mt. Hawley Ins. Co. and RLI Ins. Co*., (Deposition in Las Vegas, Nevada, Dec. 12, 2006).

49. *Bank of Waukegan v. RLI Insurance Co*., (Deposition in Las Vegas, Nevada, June 5-6, 2007).

50. *D&J Properties, LLC v. Siena Office Park 2, LLC, et al*. (Hearing testimony in Las Vegas, Nevada, Dec. 19, 2007).

51. *MacLean Townhomes v. Charter Oak Insurance* (Deposition testimony in Las Vegas, Nevada, July 18, 2008).

52. *In Re: Receivership of Southwest Exchange, Inc. and Consolidated Litigation* (Deposition testimony in Las Vegas, Nevada, September 15, 2008).

53. *Tiara Condominium Assoc. v. Marsh USA* (Deposition testimony in New York, NY, Oct. 13, 2008).

54. *Keith v. CUNA Mutual Ins. Co*. (Deposition testimony in Takoma, Washington, Aug. 4, 2009).

55. *Clean Harbors v. Pacific Employers Insurance & National Union Insurance* (Deposition in Chicago, Illinois, January 13, 2010).

56. *Paul Steelman, Ltd. v. Westchester Insurance Co*., (Deposition in Las Vegas, Nevada, Sept. 20, 2010).

4

57. *Quam v. Flangas McMillen* (Deposition in Las Vegas, Nevada, Dec. 13, 2010).

58. *Torres v. Nevada Direct Insurance* (Deposition in Las Vegas, Nevada, Nov. 22, 2011)(trial testimony in Las Vegas, Nevada, April 5, 2012).

59. *Rau-Retke v. Metropolitan Property & Casualty Insurance Co.* (Deposition in Las Vegas, Nevada, Dec. 21, 2011).

60. *Gehlert v. Everest Insurance Co*. (Deposition in Las Vegas, Nevada, Feb. 7, 2012).

61. *Sherwin v. Infinity Insurance* (Deposition in Las Vegas, Nevada, Feb. 21, 2012).

62. *Kiefe v. Metropolitan Life Ins. Co.* (Deposition in Las Vegas, Nevada, March 27, 2012).

63. *Plant Insulation Co. v. Fireman's Fund Ins. Co.* (Deposition in San Francisco, California, April 3, 2012).

64. *Mountain Air v. Travelers Ins. Co*. (Deposition in Reno, Nevada, May 31, 2012).

65. *Phillips v. National Union Ins. Co*., (Deposition in Las Vegas, Nevada, July 30, 2012).

66. *Republic Plastics Corp. v. Willis of Texas* (Deposition in Las Vegas, Nevada, September 14, 2012).

67. *Sharp Plumbing v. National Fire & Marine Ins. Co.* (Deposition in Los Angeles, California, November 27, 2012).

68. *Thorpe Insulation Coverage Cases* (Deposition in Los Angeles, California, November 28, 2012).

69. *U-Haul, Inc. v. Kamer* (Deposition in Las Vegas, Nevada, December 3, 2012).

70. *Scottsdale Ins. Co. v. Liberty Mutual Ins. Co*. (Deposition in Henderson, NV, September 9, 2013).

71. *Association of California Water Agencies Joint Powers Insurance Authority v. Insurance Company of the State of Pennsylvania.* (Deposition in Las Vegas, NV, September 23, 2013).

72. *Farring v. Hartford Insurance Co*. (Deposition in Las Vegas, NV, October 11, 2013).

73. *Home Insurance Co. v. Cornell-Dubilier Electronics, Inc.* (Deposition in Boston, MA, Feb. 28, 2013).

74. *In re CityCenter Construction Litigation* (Deposition in Las Vegas, NV July 16 & 17, 2014).

75. *Carefirst, Inc. v. BCS Insurance Co*. (Deposition in Chicago, Illinois August 18, 2014).

76. *Reimers v. Everest Indemnity Insurance Co.* (Deposition in Las Vegas, NV October 1, 2014)(Trial testimony in Reno, Nevada, February 6, 2015).

77. *Dignity Health v. Platte River Insurance Company* (Deposition in Los Angeles, CA, December 23, 2014)(Arbitration Hearing testimony, January 23, 2015)(via telephone to arbitration in San Francisco, CA).

78. *Owens v. Metropolitan Life Insurance Co.* (Deposition in Las Vegas, NV, September 16, 2015).

79. *Schwartzer v. American Family Insurance Co*. (Deposition in Las Vegas, NV, December 23, 2015).

80. *City of Phoenix v. First State Ins. Co., et al*. (Deposition in Las Vegas, NV, January 15, 2016).

81. *RA Southeast Land Co. v. First American Title Insurance Co.* (Deposition in Henderson, NV, January 20, 2016).

82. *Chicago Bridge & Iron Co. v. Certain Underwriters and Lloyd's, London and Certain London Market Insurance Cos.* (Deposition in Las Vegas, NV, December 1, 2016).

83. *Walker v. State Farm Ins. Co.* (Deposition in Las Vegas, NV, December 29, 2016).

84. *Bacon v. AMCO Insurance Co.* (Deposition in Las Vegas, NV, December 20, 2017).

85. *Toll Brothers v. Liberty Mutual Ins. Co*. (Deposition in Las Vegas, NV, March 6, 2018).

86. *Masciotra v. American Family Insurance Co.* (Deposition in Las Vegas, NV, March 21, 2018).

87. *McKenna v. Chesnoff, et al*. (Deposition in Las Vegas, NV, April 27, 2018).

88. *International Game Technology v. Illinois National Ins. Co*. (Deposition in Henderson, NV, May 31, 2018).

89. *Dominion Resources v. Alstom, Inc.* (Deposition in Boston, MA, August 2018).

90. *Adair v. State Farm Mut. Auto. Ins. Co*. (Deposition in Las Vegas, NV, Oct. 12, 2018).

91. *Mt. Hawley Insurance Co. v. Adell Plastics Co.* (Deposition in Las Vegas, NV, March 12, 2019).

92. *Rockhill Insurance Co. v. CSAA Insurance Exchange* (Deposition in Las Vegas, NV, May 3, 2019).

93. *Sunridge Corp. v. Howard & Howard* (Deposition in Las Vegas, NV, Jan. 14, 2020)(Trial testimony in Las Vegas, NV, March 26, 2021).

94. *Zurich Ins. Co. et al. v. Covil Corp.* (Deposition in San Francisco, CA, Feb. 28, 2020).

95. *Duke Energy Carolinas v. AG Insurance SA/NV et al.* (Deposition via Zoom in Las Vegas, NV, July 27, 2020 with remote questioning and participation).

96. *Sipan v. State Farm Mutual Auto. Ins. Co.* (Deposition via Zoom in Las Vegas, NV, March 18, 2021 with remote questioning and participation).

97. *American Home Assurance Co. v. Superior Well Services, Inc.* (Deposition via Zoom in Las Vegas, NV, March 24, 2021 with remote questioning and participation).

98. *Swanson v. Acuity Insurance Co.* (Deposition in Reno, NV July 15, 2021)(Trial testimony in Las Vegas, NV December 15, 2021).

99. *Richardson v. Breeden* (Deposition via Zoom in Las Vegas, NV September 8, 2021 with remote questioning and participation).

100. *Morency v. LM Insurance Corp., et al.* (Deposition via Zoom in Las Vegas, NV November 22, 2021 with remote questioning and participation).

101. *Goldman v. Vigilant Insurance* (Deposition via Zoom in Las Vegas, NV, November 24, 2021 with remote questioning and participation).

102. *Jaime-Olaya v. State Farm Mutual Auto. Insurance Co*. (Deposition via Zoom in Las Vegas, NV, February 11, 2022).

103. *Thor Equities, LLC  v. Factory Mutual Insurance Co.* (Deposition via Zoom in Henderson, NV, March 14, 2022).

104. *KB Home v. Illinois Union Ins. Co.* (Deposition via Zoom in Henderson, NV, March 16, 2022).

105. *Feyznia v. Safeco Ins. Co. of Illinois* (Deposition via Zoom in Las Vegas, NV, April 20, 2022).

106. *Hendrix v. Progressive Direct Insurance Co.* (Deposition via Zoom in Las Vegas, NV, May 9, 2022).

107.    *Hakkasan USA, Inc. v. Endurance American Specialty Ins. Co.* (Deposition in Las Vegas, NV, June 24, 2022).

108.    *Spencer v. LM General Insurance* (Deposition via Zoom in Henderson, NV, July 20, 2022 & September 2, 2022).

109.    *Varni v. Elliott* (Deposition via Zoom in Henderson, NV, July 21, 2022 and via Zoom in Charleston, SC December 15, 2022).

110.    *Torgerson v. State Farm Mut. Auto. Ins.* (Deposition via Zoom in Eden Prairie, MN, August 25, 2022).

111.    *Kuhlman Electric Corp., et al. v. The Travelers Indemnity Co., et al.* (Deposition Part I in Las Vegas, NV October 11, 2022; Part II via Zoom in Henderson, NV, October 27, 2022).

112.    *AEP Generation Resources, Inc., et al., v. AG Insurance SA/NV, et al*. (Deposition via Zoom in Henderson, NV, October 26, 2022).

113.    *Vahey v. Black & Lobello* (Deposition in Las Vegas, NV, Feb. 1, 2023)(Trial Testimony in Las Vegas, Oct. 17, 2023).

114.    *Reed v. Owners Ins. Co.* (Deposition in Las Vegas, NV, March 3, 2023).

115.    *Pittillo v. Metropolitan Life Ins. Co.* (Deposition via Zoom in Henderson, NV, April 4, 2023).

116.    *Allianz Global Risks US Ins. Co. v. Travelers Property & Cas. Co. of America* (Deposition via Zoom in San Francisco, CA, May 8, 2023)(arbitration testimony in Charlotte, NC, May 21, 2024).

117.    *Houston Livestock Show and Rodeo v. Hallmark Financial Services, et al*. (Deposition via Zoom in Henderson, NV, July 25, 2023).

118.    *Evans v. State Farm Mutual Auto. Ins. Co*. (Deposition via Zoom in Henderson, NV, August 16, 2023).

119.    *CoBank, ACB v. Certain Underwriters* (Arbitration Hearing in Denver, Colorado, August 22, 2023).

120.    *National Surety Corp. v. Indian Harbor Ins. Co*. (Deposition via Zoom in Henderson, NV, August 30, 2023).

121.    *Laing-Black v. AAA Life Insurance Co.* (Deposition via Zoom in Henderson, NV, Oct. 26, 2023).

122.     *Hernandez v. State Farm Mut. Auto. Ins. Co.* (Deposition via Zoom in Henderson, NV, May 16, 2024).

# EXHIBIT C

**Materials Considered**

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 34 (W.D. Wash. June 11, 2021) (Consolidated Amended Class Action Complaint)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 35 (W.D. Wash. June 23, 2021) (Defendant Valve Corporation's Motion to Compel Arbitration)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 46 (W.D. Wash. Aug. 13, 2021) (Dark Catt Plaintiffs' Motion for Appointment of Co-Lead Interim Counsel for Proposed Developer Class Pursuant to Federal Rule of Civil Procedure 23(g)(3))

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 63 (W.D. Wash. Oct. 5, 2021) (Order)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 66 (W.D. Wash. Oct. 25, 2021) (Order)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECFs 91, 91-1 (W.D. Wash. July 22, 2022) (Motion for Appointment of Interim Co-Lead Counsel, with Proposed Order)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 92 (W.D. Wash. Aug. 12, 2022) (Order)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 127 (W.D. Wash. Mar. 23, 2023) (Consolidated Second Amended Class Action Complaint)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 343 (W.D. Wash. Aug. 20, 2024) (Class Certification Expert Report of Steven Schwartz, Ph.D.)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 345 (W.D. Wash. Aug. 20, 2024) (Class Certification Expert Report of Ashley Langer, Ph.D.)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 366 (W.D. Wash. Oct. 3, 2024) (Consumer Plaintiffs' Motion to Lift Stay)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 373 (W.D. Wash. Oct. 4, 2024) (Consumer Plaintiffs' Motion to Consolidate and Appoint Vorys, Sater, Seymour and Pease LLP as Interim Lead Class Counsel)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 377 (W.D. Wash. Oct. 21, 2024) (Elliott Plaintiffs' Motion to Intervene for Limited Purpose of Opposing Motion to Consolidate and Appoint Interim Class Counsel)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 378 (W.D. Wash. Oct. 21, 2024) (Elliott Plaintiffs' Opposition to Motion to Consolidate and Appoint Vorys, Sater, Seymour and Pease LLP as Interim Lead Class Counsel)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 379 (W.D. Wash. Oct. 25, 2024) (Consumer Plaintiffs' Reply in support of Motion to Consolidate and Appoint Vorys, Sater, Seymour and Pease LLP as Interim Lead Class Counsel)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 394 (W.D. Wash. Dec. 6, 2024) (Order Consolidating Cases and Setting Briefing Schedule)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 407 (W.D. Wash. Dec. 20, 2024) (Hepler Plaintiffs' Motion to Appoint Cohen Milstein Sellers & Toll PLLC as Interim Lead or Co-Lead Class Counsel)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 409 (W.D. Wash. Dec. 20, 2024) (Colvin Plaintiffs' Amended Motion to Appoint Vorys, Sater, Seymour and Pease LLP as Interim Lead Class Counsel)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 411 (W.D. Wash. Dec. 20, 2024) (Plaintiffs Brandon Drake's and Eric Saavedra's Motion to Appoint Interim Co-Lead Consumer Class Counsel and Liaison Counsel)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 412 (W.D. Wash. Dec. 20, 2024) (Elliott Plaintiffs' Amended Motion to Appoint Hagens Berman Sobol Shapiro LLP and Bucher Law PLLC as Interim Lead Class Counsel)

*In re Valve Antitrust Litig.*, 2:21-cv-00563, ECF 407 (W.D. Wash. Dec. 20, 2024) (Hepler Plaintiffs' Motion to Appoint Cohen Milstein Sellers & Toll PLLC as Interim Lead or Co-Lead Class Counsel)

*Elliott, et al. v. Valve Corporation*, 2:24-cv-01218, ECF 1 (W.D. Wash. Aug. 9, 2024) (Class Action Complaint)

*Elliott, et al. v. Valve Corporation*, 2:24-cv-01218, ECFs 25, 25-1 (W.D. Wash. Oct. 2, 2024) (Plaintiffs' Motion to Appoint Hagens Berman Sobol Shapiro LLP and Bucher Law PLLC as Interim Co-Lead Class Counsel, with supporting Proposed Order)

*Elliott, et al. v. Valve Corporation*, 2:24-cv-01218, ECF 32 (W.D. Wash. Oct. 17, 2024) (Valve Corporation's Response to Plaintiffs' Motion to Appoint Hagens Berman Sobol Shapiro LLP and Bucher Law PLLC as Interim Co-Lead Counsel)

*Elliott, et al. v. Valve Corporation*, 2:24-cv-01218, ECF 33 (W.D. Wash. Oct. 17, 2024) (Consumer Plaintiffs' Motion to Intervene)

*Elliott, et al. v. Valve Corporation*, 2:24-cv-01218, ECFs 27, 27-1 (W.D. Wash. Oct. 2, 2024) (Declaration of Will Bucher in support of Plaintiffs' Motion to Appoint Hagens Berman Sobol Shapiro LLP and Bucher Law PLLC as Interim Co-Lead Counsel, with supporting exhibit 1)

*Elliott, et al. v. Valve Corporation*, 2:24-cv-01218, ECFs 35, 35-1, 35-2, 35-5 (W.D. Wash. Oct. 17, 2024) (Declaration of Andrew J. Fuchs in support of Valve Corporation's Response to Hagens Berman Sobol Shapiro LLP and Bucher Law PLLC as Interim Co-Lead Counsel, with supporting exhibits 1, 2, and 5)

*Elliott, et al. v. Valve Corporation*, 2:24-cv-01218, ECF 41 (W.D. Wash. Oct. 23, 2024) (Omnibus Reply in support of Motion to Appoint Hagens Berman Sobol Shapiro LLP and Bucher Law PLLC as Interim Co-Lead Class Counsel)

*Elliott, et al. v. Valve Corporation*, 2:24-cv-01218, ECF 44 (W.D. Wash. Oct. 23, 2024) (Expert Report of Merri Baldwin)

*Valve Corporation v. Abbruzzese, et al.*, 2:24-cv-01717, ECF 1 (W.D. Wash. Oct. 18, 2024) (Petition to Enjoin Arbitrations)

*Valve Corporation v. Abbruzzese, et al.*, 2:24-cv-01717, ECF 13 (W.D. Wash. Nov. 4, 2024) (Declaration of Blake Marks-Dias in support of Petitioner's Ex Parte Motion Seeking Leave to Provide Communication to Respondents)

*Valve Corporation v. Abbruzzese, et al.*, 2:24-cv-01717, ECF 17 (W.D. Wash. Nov. 14, 2024) (Application for Leave to Appear Pro Hac Vice)

*Valve Corporation v. Abbruzzese, et al.*, 2:24-cv-01717, ECF 25-1 (W.D. Wash. Nov. 21, 2024) (Exhibit 1 to Declaration of Andrew J. Fuchs in further support of Valve Corporation's Petition to Enjoin Arbitrations as to Certain Respondents)

*Valve Corporation v. Abbruzzese, et al.*, 2:24-cv-01717, ECF 38-1 (W.D. Wash. Nov. 25, 2024) (Exhibit A to Declaration of Blake Marks-Dias in support of Petitioner's Opposition to Respondents Seth Weber's and Griffin Byer's Motion to Extend Time to Respond and for a Case Management Conference)

*Valve Corporation v. Abbruzzese, et al.*, 2:24-cv-01717, ECFs 40, 40-3, 40-6, 40-7, 40-11, 40-12 (W.D. Wash. Nov. 25, 2024) (Declaration of Blake Marks-Dias in support of Petitioner's Renewed Ex Parte Motion Seeking Leave to Provide Communication to Certain Respondents, with supporting exhibits C, F, G, K, and L)

*Valve Corporation v. Abbruzzese, et al.*, 2:24-cv-01717, ECF 43-1 (W.D. Wash. Nov. 29, 2024) (Exhibit A to Respondents' Reply to Motion for Extension of Time to Respond and for a Case Management Conference)

*Drake, et al. v. Valve Corporation*, 2:24-cv-01743, ECF 1 (W.D. Wash. Oct. 24, 2024) (Class Action Complaint)