# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*IN RE BROILER CHICKEN ANTITRUST LITIGATION*

This Document Relates To:

All Indirect Purchaser Actions.

No. 1:16-cv-08637

**DECLARATION OF MARY ROBINSON**

**I. Background and Qualifications.**

I am an attorney, licensed to practice in Illinois (admitted April 1975) and California (admitted January 1975), and admitted to the bars of the United States Supreme Court, the United States Court of Appeals for the Seventh Circuit, and the United States District Courts for the Northern and Central Districts of Illinois.

I am a principal in the Robinson Law Group LLC, in Chicago, Illinois. Since 2007, I have concentrated my practice in matters involving lawyer ethics and professional responsibility, including defending lawyers in disciplinary investigations and prosecutions, advising lawyers and law firms on ethical issues and obligations, and providing expert consultation and testimony. Since 2007, I have been retained and identified as an expert witness on professional responsibility issues in over 40 cases.

For the fifteen years between March 16, 1992, and March 16, 2007, I served as Administrator of the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois, having previously served between 1989 and 1992 as a Commissioner of the ARDC. As an ARDC Commissioner, I took part in setting ARDC policy. As Administrator, I was responsible, *inter alia*, for formulating and implementing policies governing the review of grievances submitted to the ARDC, for determining which matters warranted the filing of a formal disciplinary complaint alleging violations of the Illinois Rules of Professional Conduct, and for supervising the prosecution of the formal disciplinary cases. Those grievances and formal discipline prosecutions included hundreds of cases in which lawyers were alleged to have engaged in representations involving conflicts of interest.

While Administrator of ARDC, I taught the Professional Responsibility course at both Northwestern University Law School and Northern Illinois University College of Law. Each year, I presented at dozens of CLE programs throughout Illinois and nationally involving

1

lawyers' professional obligations, and I made presentations to the ABA Conference on the Role of the Court in Improving Lawyer Conduct and Professionalism, the ABA Symposium on Teaching Professional Responsibility, and the ABA CoLAP National Conference for Lawyers Assistance Programs.

Since leaving the ARDC, I have continued to make presentations to national audiences and to Illinois lawyers on professional responsibility issues. I served as a member and then Chair of the Planning Committee for the annual ABA National Conference on Professional Responsibility (2007 – 2011), a member of the ABA Committee on Ethics and Professional Responsibility (2007 – 2010), and a member of the Editorial Board of the *ABA/BNA Lawyers' Manual on Professional Conduct* (2012 – 2015). I have presented as a lecturer and panelist on professional responsibility issues for the ABA National Conference on Professional Responsibility, the National Organization of Bar Counsel, IICLE, PLI, ALI-ABA, Illinois State Bar Association, Chicago Bar Association, and various county bar associations throughout Illinois.

## 2. Matters Considered

I have been retained by Hagens Berman to offer an opinion on whether a law firm's representation of indirect purchasers, including both indirect resellers and end users, in a class action alleging anti-trust violations resulting in damages, involves a conflict of interest.

As the basis for my opinion, I was asked to consider the matters identified in the attached memorandum prepared by Hagens Berman. I have assumed the factual matter addressed in that memorandum, specifically, that at least nine class action cases have been filed in the United States District Court for the Northern District of Illinois in which the plaintiff classes allege that they have suffered monetary damages as a result of a price-fixing and supply restriction conspiracy by various defendants. At issue here are six cases brought by putative classes of indirect purchasers, two consisting of indirect purchaser resellers and four consisting of indirect purchaser consumers, all of which allege that class members overpaid for broiler chickens during a defined period as a result of the defendants' illegal conduct.

I have also accepted the accuracy of the following legal propositions addressed in the memorandum:

- In an antitrust case, injury is an essential element of the plaintiff's cause of action, and all indirect purchaser putative classes here allege that their injury consists of class members being overcharged for broiler chickens as a result of the defendants' conduct.
- For purposes of antitrust injuries alleged under certain provisions of state law, indirect resellers must plead and prove that they suffered damages because they were overcharged for broilers *and* that they did not pass through those overcharges to end users. Failure to so plead would render their complaint vulnerable to dismissal and failure to so prove would result in defeat of their claims.

2

- Conversely, end-use consumers must plead and prove that they suffered damages because retailers in the United States were overcharged as a result of the defendants' illegal conduct, *and* the retailers then passed on the overcharges to end-users. Failure to so plead would render their complaint vulnerable to dismissal and failure to so prove would result in defeat of their claims.
- The plaintiff classes will have the burden of proving that there is a reasonable method for determining on a class-wide basis whether and to what extent overcharges were passed on to each of the indirect purchasers at all levels of the distribution chain. Typically, plaintiffs accomplish that by conducting fact discovery designed to identify data relevant to showing how overcharges were absorbed or passed through, and by retention of experts to analyze the data and opine on a reasonable method for measuring, on a class-wide basis, the pass through of overcharges.
- Fact discovery on behalf of end-use consumers would focus upon obtaining financial records of indirect resellers, scrutinizing those records for evidence that overcharges were passed through, and identifying experts to analyze the data discovered and to propose methods of measuring on a class-wide basis the pass-through of overcharges.
- Conversely, in order to effectively pursue the claims of indirect resellers, class counsel must conduct discovery aimed at producing data that will show that overcharges were not passed through to consumers, and they must seek out experts who will propose and justify measures showing, on a class-wide basis, that overcharges were not passed through.
- Class certification can and will be denied if plaintiffs are unable to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members. Indirect resellers can be denied class certification if unable to demonstrate capacity to prove class-wide damages in that overcharges were not passed through, and consumers can be denied class certification if unable to demonstrate the capacity to prove class-wide damages in that overcharges *were* passed through.
- An allocation hearing, where the parties would address how a recovery would be allotted as between subclasses, would not occur until after class certification and after a recovery has been determined by way of settlement or judgment entered after trial.

### 3. Opinion

Based upon the above considerations, it is my opinion that counsel purporting to represent both indirect resellers and end-use consumers in this case would have a conflict of interest under ABA Model Rule 1.7/Illinois Rule of Professional Conduct 1.7,[1] as applicable to attorneys practicing before this Court. Local Rule 83.50.

Rule 1.7 provides as follows:

---

[1] ABA Model Rule 1.7 and Illinois Rule 1.7 are identical.

3

**RULE 1.7: CONFLICT OF INTEREST: CURRENT CLIENTS**

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Most pertinent here is subsection (a)(2) of the Rule. A lawyer representing both the class of indirect resellers of broilers and the class of end-use consumers would have a concurrent conflict of interest if there is a significant risk that the representation of either class would be materially limited by the lawyer's responsibilities to the other. Under Rule 1.7(a)(2), the focus is on whether the lawyer's ability to consider, recommend or carry out an appropriate course of action for one client will be materially limited as a result of the responsibilities to the other. ABA Model Rules of Professional Conduct, Rule 1.7, Comment [8].

On the essential element of injury, the law firm's ability to consider and carry out its responsibilities to indirect resellers 1) to plead that the class did not pass through overcharges, 2) to conduct fact discovery that will produce data supporting that assertion, 3) to retain experts to opine that data shows that overcharges were not passed through, 4) to persuade that the class should be certified because indirect resellers can prove that on a class-wide basis, they did not pass through overcharges, and 5) to then undertake to actually prove that overcharges were not passed through will necessarily be materially limited by the firm's responsibilities to end-use consumers to do just the opposite – 1) to plead that overcharges *were* passed through, 2) to obtain the financial records of the indirect resellers and comb them for data showing that overcharges were passed through, 3) to find experts who will analyze the data and propose a measure showing pass-through of overcharges on a class-wide basis, 4) to seek class certification by persuading that the consumers can show class-wide injury because overcharges were passed through, and 5) to then undertake to prove that overcharges were indeed passed through.

The option of appointing separate counsel for one of the subclasses for purposes of an allocation hearing does not cure the problem. The interests of the classes diverge at several stages before that point in the representation, and counsel will, by then, already have been put to the choice of favoring the interests of one class over those of the other.

Rule 1.7(b) allows for waiver of some concurrent conflicts. Assuming a mechanism for waiver of a concurrent conflict of interest by an uncertified class, it is my opinion that the conflict involved here cannot be waived. Rule 1.7(b) defines the circumstances under which clients can consent to representation that involves a concurrent conflict of interest as follows:

4

**RULE 1.7: CONFLICT OF INTEREST: CURRENT CLIENTS**

\* \* \*

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent.

In my opinion, it is not reasonable under the circumstances presented here to believe that the same lawyer can provide competent and diligent representation to each affected class. While it is eminently reasonable to believe that the same firm can provide competent and diligent representation to both indirect resellers and end-use consumers for purposes of pursuing the allegations of defendants' wrongful conduct, it is not reasonable to believe that the firm can provide effective representation to each of the different classes on the essential element of injury. No reasonable client would agree to be represented by an attorney in these circumstances on the understanding that at one or more points in the representation, the attorney might choose to take action and make arguments that would leave the client without a recovery in order to promote the interests of another client.

### 4. Conclusion

Representation of putative classes of indirect resellers and end-use consumers by the same class counsel in the broiler chicken antitrust litigation involves a concurrent conflict of interest as defined by Rule 1.7(a)(2). Counsel's representation of one of the subclasses for purposes of pleading, developing evidence, and undertaking to prove injury will be materially limited by counsel's responsibilities to the other class to plead and prove opposite conclusions. Because it is not reasonable to believe that the same counsel will be able to provide competent and diligent representation to both indirect resellers and end-use consumers, the conflict cannot be waived.

Respectfully submitted,

Dated: November 22, 2016

Mary Robinson

Robinson Law Group, LLC
321 S. Plymouth Ct., 14th Floor
Chicago, IL 60604
(312) 676-9874
mrobinson@robinsonlawillinois.com

5