UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

*IN RE* VALVE ANTITRUST LITIGATION

CASE NO. 2:21-cv-00563-JNW

ORDER GRANTING *HEPLER PLAINTIFFS'* MOTION TO APPOINT COHEN MILSTEIN SELLERS & TOLL PLLC AS INTERIM LEAD

## 1. INTRODUCTION

The Court must appoint interim class counsel for the putative Consumer Class in this antitrust litigation against Defendant Valve Corporation. Four groups of attorneys seek appointment: Vorys, Sater, Seymour and Pease LLP ("Vorys"); Hagens Berman Sobol Shapiro LLP and Bucher Law PLLC (together, "*Elliott* Counsel"); Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"); and a tripartite group consisting of Berger Montague PC, Cotchett, Pitre & McCarthy LLP, and Keller Rohrback LLP (together, "*Drake* Counsel"). After carefully considering the motions, responses, and replies, the Court appoints Cohen Milstein as Interim Lead Class Counsel for the putative Consumer Class.

## 2. BACKGROUND

This case arises from allegations that Valve Corporation, which operates the dominant platform for distributing PC games called "Steam," has engaged in anticompetitive practices that harm both game publishers and consumers. The litigation now encompasses claims by both groups of plaintiffs—publishers and consumers. The Court previously certified a Publisher Class and appointed class counsel. The motions now before the Court concern who will represent the putative Consumer Class. Dkt. Nos. 407, 409, 411, 412.

The procedural background of the case warrants a brief recap. In January 2021, Vorys filed the first putative consumer class action against Valve. Soon after, several game publishers filed similar claims against Valve. The Honorable John C. Coughenour consolidated the cases—the putative consumer *and* publisher class actions—under this cause number. *See* Dkt. No. 29. In October 2021, Judge Coughenour ordered the consumer plaintiffs to arbitrate pursuant to Valve's Steam Subscriber Agreement ("SSA"), staying their claims in federal court while the publisher claims proceeded on. *See* Dkt. No. 66. In July 2023, Bucher Law ("Bucher") began representing consumers in individual arbitrations against Valve. After successfully challenging the enforceability of Valve's arbitration provision in four separate arbitration proceedings, *Elliott* Counsel filed a class action complaint in August 2024. Valve eventually struck the arbitration provision from the SSA in September 2024. Subsequently, Cohen Milstein and *Drake* Counsel filed complaints on behalf of consumers in October 2024.

Each group has moved to be appointed as Interim Lead Counsel for the putative Consumer Class. The Court must now choose among the competing applications.

## 3. LEGAL STANDARD

District courts "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). When appointing interim class counsel, courts in this district typically apply the same factors considered when appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *see Pecznick v. Amazon.com, Inc.*, No. 2:22-CV-00743-TL, 2022 WL 4483123, at *4–5 (W.D. Wash. Sept. 27, 2022) (considering factors set forth at Rule 23(g)(1)(A) for the appointment of interim class counsel); *Ekin v. Amazon Servs., LLC*, No. C14-0244-JCC, 2014 WL 12028588, at *3 (W.D. Wash. May 28, 2014) (same).

The Ninth Circuit has emphasized that the adequacy of representation requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent[.]" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). The adequacy inquiry involves questions of whether the plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation. *See*

1 McLaughlin on Class Actions § 4:37 (21st ed.) (noting that the performance of "counsel in prosecuting the case is the predominant force in the overall representation provided").

When multiple groups seek appointment, "the court must appoint the applicant [who is] best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). Appointing interim class counsel is especially appropriate when there are "multiple complaints" and a "gaggle of law firms jockeying to be appointed class counsel." *Parrish v. Nat'l Football League Players Inc.*, No. C 07-00943 WHA, 2007 WL 1624601, at *9 (N.D. Cal. June 4, 2007).

## 4. DISCUSSION

All applicants here present significant experience in complex litigation and antitrust law, sufficient knowledge of the applicable law, and adequate resources to represent the class. Thus, the Court focuses its analysis on differentiating factors and potential conflict issues that bear on which applicant is best able to represent the interests of the class.

### 4.1 As a member of the Executive Committee representing the Publisher Class, Vorys has a disqualifying conflict of interest.

Vorys, though the first to file a consumer action against Valve, has a disqualifying conflict that precludes its appointment as lead counsel for the putative Consumer Class. Vorys currently serves on the Executive Committee representing the Publisher Class, Dkt. No. 92, and has spent thousands of hours working on behalf of publishers through discovery and class certification, Dkt. No. 409 at 5.

The Ninth Circuit has consistently observed that "'[t]he responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) (quoting *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995)). Similarly, in *Radcliffe v. Experian Information Solutions Inc.*, the Ninth Circuit emphasized that "[c]lass counsel has a fiduciary duty to the class as a whole and it includes reporting potential conflict issues." 715 F.3d 1157, 1167 (9th Cir. 2013).

Here, the potential conflict is not just apparent but fundamental. Vorys has already advocated for a damages model on behalf of the Publisher Class that allocates around 75–80% of the alleged overcharge to publishers, leaving only 20–25% for consumers. Dkt. No. 343 ¶ 402. This position was taken with only the publishers' interests in mind. Courts have recognized that a "conflict between class members regarding the most favorable measure of damages can create a potential conflict of interest between members of the class." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000). This case presents exactly such a situation, where consumers and publishers must allocate a fixed pool of damages from Valve's alleged overcharge.

The conflict is particularly acute because Valve's expert suggested a 60% pass-through rate, meaning consumers might be entitled to 40% of the overcharge rather than the 25% advanced by Vorys's expert. Dkt. No. 416 at 12 (citing Dkt. No. 345 ¶ 114). As the Second Circuit aptly noted in *In re Literary Works in Electric Databases Copyright Litigation*, "how can the value of any subgroup of claims be

properly assessed without independent counsel pressing its most compelling case?" 654 F.3d 242, 253 (2d Cir. 2011). Vorys cannot adequately represent consumers when it has already taken positions favoring publishers' financial interests.

Vorys's co-counsel in representing the Publisher Class previously acknowledged this conflict, arguing that "counsel cannot zealously and fairly represent both the [publishers] and [consumers] throughout this litigation to achieve the best possible outcome and damages award for each class independent of the outcome for the other class." Dkt. No. 46 at 14. They also observed that this "divergence in best interests carries through nearly every stage of the litigation—discovery, class certification, experts, and trial—and precludes the same lead counsel from representing both groups." *Id.* at 12. These admissions by Vorys's co-counsel further underscore the fundamental nature of the conflict.

As a result, Vorys cannot adequately represent consumers when it has already taken positions favoring publishers' financial interests. *See Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 345 (1st Cir. 2022) (describing "zero-sum circumstances" where "a benefit to one group of class members . . . comes at the detriment of the other class members").

### 4.2 A combination of concerns disqualifies *Elliott* Counsel.

Bucher deserves substantial credit for its successful efforts challenging Valve's arbitration provision through individual arbitrations. These efforts ultimately enabled class litigation to proceed, and the Court recognizes the importance of this work. Dkt. No. 412 at 3–4. But several concerns lead the Court to

conclude that Bucher and Hagens Berman—*Elliott* Counsel—are not best suited to represent the Consumer Class.

First, Bucher's continued representation of individual consumers in arbitration against Valve creates concerns about divided interests. The Ninth Circuit has stressed the importance of undivided loyalty in class representation. *See Rodriguez,* 563 F.3d at 968. To be sure, representing both individual arbitration claimants and a class does not inherently create a disqualifying conflict. *See Bolding v. Banner Bank*, No. C17-0601-RSL, 2021 WL 1171988, at *3 (W.D. Wash. Mar. 29, 2021) (finding no "substantive conflict" of interest in simultaneous representation of class and individual plaintiffs when individual and class claims were based on different injuries); *see also* 1 Newberg and Rubenstein on Class Actions § 3:75 (6th ed.) ("class counsel may represent multiple sets of litigants—whether in the same action or in a related proceeding—so long as the litigants' interests are not inherently opposed."). But Bucher's simultaneous pursuit of individual arbitrations and class litigation has required it to take positions that could undermine its argument that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy" under Rule 23(b)(3).

Specifically, Bucher has advertised that "consumers in arbitration recover hundreds of times more than in a class action" and that "with the help of Bucher Law PLLC, you will often recover more [in arbitration] than you would in a class action proceeding." Dkt. No. 416 at 10. These statements directly conflict with the position Bucher must take regarding superiority at class certification.

Additionally, tensions between Bucher and Valve, as shown in related litigation, *Valve Corp. v. Abbruzzese*, 24-cv-1717 (W.D. Wash.), Dkt. No. 12, suggest the potential for distracting collateral disputes that could impede the efficient prosecution of this case. Courts have recognized that "[t]he added demands and burdens of complex litigation place a premium on attorney professionalism." *In re Amazon Return Pol'y Litig.*, No. 2:23-CV-1372, 2024 WL 729204, at *3 (W.D. Wash. Feb. 22, 2024). While these concerns do not rise to the level of disqualification, they do weigh against appointing Bucher as lead counsel.

Bucher's proposed partnership with Hagens Berman does not put the Court's mind at ease. While Hagens Berman has significant antitrust experience and no direct involvement in the arbitrations, Dkt. No. 418 ¶ 4, its recent conduct in an unrelated class action gives the Court pause. *See Floyd v. Amazon.com Inc.*, No. C22-1599-KKE, 2025 WL 1094391, at *2–4 (W.D. Wash. Apr. 10, 2025) (finding counsel "misrepresented" communications with their client and failed to "candidly and/or accurately describe their client's intentions" to opposing counsel and the court); *see also* 1 Newberg and Rubenstein on Class Actions § 3:78 (6th ed.) ("[C]ounsel's integrity and professionalism" are properly considered when evaluating adequacy.). And as Newberg explains, even when such ethical concerns are not directly related to the representation of the class's interest, they may nonetheless affect the court's adequacy inquiry. *See id.* ("[C]ourts have found putative counsel inadequate where they encouraged or failed to correct false testimony by the named plaintiff, violated a court-issued protective order, or where

their actions have generated conflicts between the class representatives and the class." (citations omitted)).

In sum, while acknowledging Bucher's significant contribution in defeating Valve's arbitration provision, the Court concludes that *Elliott* Counsel's conflicting positions on arbitration versus class action superiority, ongoing representation of individual arbitration claimants, and potential for distracting collateral disputes render them less suitable than other applicants to represent the Consumer Class.

**4.3 Cohen Milstein has superior qualifications and no conflicts, making them the Court's choice to represent the putative consumer class.**

Cohen Milstein is exceptionally well-qualified to serve as Interim Lead Counsel for the Consumer Class. The firm has a strong track record in complex antitrust litigation, having secured billions of dollars in recoveries for various classes of plaintiffs. Cohen Milstein attorneys have successfully litigated many antitrust class actions, including recent victories in *Pacific Steel Group vs. Commercial Metals Co.* ($110 million trial verdict) and *Le v. Zuffa, Inc.* ($375 million settlement). Dkt. No. 407 at 10. This success demonstrates their ability to effectively represent the Consumer Class in this litigation.

Most importantly, Cohen Milstein does not have any conflicts regarding this matter. The firm has never represented any plaintiffs in arbitration against Valve and has no concurrent representation of the Publisher Class. This allows Cohen Milstein to advocate for consumers with undivided loyalty, particularly regarding the critical question of damage allocation.

While the Ninth Circuit has held that adding unconflicted counsel can sometimes remedy potential conflicts, see *Radcliffe v. Hernandez*, 818 F.3d 537, 548–49 (9th Cir. 2016); *Rodriguez*, 563 F.3d at 961 (approving counsel's steps to "neutralize the effect" of an ethical concern by "associating new counsel"), appointing Cohen Milstein alongside *Elliott* Counsel would not adequately address the concerns identified above. The continued tension between Bucher's arbitration advertising and the class superiority requirement presents an ongoing structural problem that cannot be cured merely by adding unconflicted co-counsel. Rather than placing the Consumer Class in the position of having some counsel with divided loyalties and some without, appointing entirely unconflicted counsel better serves the interests of the class by ensuring undivided loyalty from the start.

Furthermore, Cohen Milstein has shown its ability to work collaboratively with all firms involved here, including with the attorneys representing the Publisher Class. Dkt. No. 407 at 14. This collaborative approach will benefit the efficient prosecution of this case while avoiding needless disputes over conflicts.

The Court notes that *Drake* Counsel also lack conflicts that would impede representation of the Consumer Class. But *Drake* Counsel did not engage in the arbitration work that made class litigation possible and filed suit only after others had done the heavy lifting. Dkt. No. 411 at 6. While this factor alone would not be dispositive, it does suggest that Cohen Milstein, which has offered to work collaboratively with the firms that advanced consumer interests through arbitration, represents the stronger choice.

**4.4 Obligations of interim lead counsel.**

In general, interim lead counsel is tasked with coordinating the activities of the plaintiffs during the pretrial proceedings. Manual Complex Lit. § 40.22 (4th ed.). Interim lead counsel is responsible for the undertakings below:

a. Determine and present (in briefs, oral argument, or any other fashion as may be appropriate, personally or by a designee) to the Court and Valve the position of the plaintiffs on all matters arising during pretrial proceedings;

b. coordinate the initiation and conduct of discovery on behalf of plaintiffs consistent with the requirements of Fed. R. Civ. P. 26(b)(1), 26(2), and 26(g), including the preparation of joint interrogatories and requests for production of documents and the examination of witnesses in depositions;

c. conduct settlement negotiations on behalf of plaintiffs, but not enter binding agreements except to the extent expressly authorized;

d. delegate specific tasks to other counsel or committees of counsel, as authorized by the Court, in a manner to ensure that pretrial preparation for the plaintiffs is conducted efficiently and effectively;

e. enter into stipulations with Valve as necessary for the conduct of the litigation;

f. prepare and distribute periodic status reports to the Court and the parties;

g. maintain adequate time and disbursement records covering services as lead counsel;

h. monitor the activities of co-counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided; and

i. perform any other duties that may be incidental to proper coordination of plaintiffs' pretrial activities or authorized by further order of the court.

*See id.*

Counsel for plaintiffs who disagree with interim lead counsel or who have individual or divergent positions may present written and oral arguments, conduct examinations of deponents, and otherwise act separately on behalf of their clients as appropriate, as long as in doing so they do not repeat arguments, questions, or actions of lead counsel.

## 5. CONCLUSION

The Court ORDERS that Cohen Milestein's motion to appoint interim class counsel is GRANTED. Dkt. No. 407. The remaining motions to appoint interim class counsel are DENIED. Dkt. Nos. 409, 411, and 412. Vorys's initial motion to appoint interim counsel, which was included in its motion at Dkt. No. 373, is DENIED AS MOOT.

Dated this 2nd day of May, 2025.

Jamal N. Whitehead
United States District Judge