THE HON. JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | No. 2:21-cv-00563-JNW |
| This filing relates to: | **PLAINTIFF RYAN LALLY'S MOTION FOR SANCTIONS** |
| ALL ACTIONS | NOTE DATE: JULY 2, 2025 |

Plaintiff Ryan Lally respectfully moves this Court for immediate and meaningful relief in response to Defendant Valve Corp.'s willful refusal to comply with the Court's order compelling arbitration and its ongoing bad faith obstruction of the arbitration process. Valve's conduct—refusing to pay required AAA arbitration fees, unilaterally altering its arbitration agreement mid-proceeding, and effectively denying thousands of consumers any forum for redress—demonstrates a pattern of calculated defiance that undermines both the Federal Arbitration Act and the authority of this Court.

MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW

**MASON LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

This relief is necessary to restore the parties to the position contemplated by the Court's original order, to prevent further prejudice to Plaintiff and the legions of arbitration claimants, and to deter Valve and similarly situated parties from engaging in comparable obstructionist tactics in the future. Permitting Valve to evade arbitration obligations through non-payment would not only prejudice the claimants in this case but would also send a dangerous signal to other corporate defendants that they may disregard arbitration agreements and court orders with impunity.

## FACTUAL BACKGROUND

The first antitrust consumer class action against Valve was filed in January 2021. *Colvin v. Valve Corp.*, No. 2:21-cv-00650-JCC (W.D. Wash.). Shortly thereafter, several game developers filed class actions making similar claims. *Wolfire Games v. Valve Corp.*, No. 2:21-cv-00563-JCC (W.D. Wash.). The two cases were consolidated before Judge John C. Coughenour and styled *In re Valve Antitrust Litig.* ECF No. 29. On October 25, 2021, Judge Coughenour ordered the consumer plaintiffs, including Plaintiff Lally, to arbitrate their claims under Valve's Steam Subscriber Agreement ("SSA") and stayed their claims. ECF No. 66.

Plaintiff Lally is part of a larger group of approximately 70,000 individuals (the "Claimants") who each retained Mason LLP to pursue their respective antitrust claims against Valve before AAA. *See* Declaration of Gary E. Mason at ¶ 2. In July 2023, Mason LLP, acting on behalf of the Claimants, sent correspondence to notify Valve of Lally's and the other Claimants' antitrust claims and the specific remedies being sought. *Id*. at ¶ 4. The letter further conveyed the Claimants' intention to initiate individual arbitration proceedings in the event the parties were unable to resolve the claims through good-faith negotiation. *Id*.

Mason LLP began filing individual arbitrations against Valve with the American Arbitration Association ("AAA") in December 2023. Declaration of Gary E. Mason at ¶ 5. Mason LLP filed 14,911 cases with AAA that month, including a claim for Lally, and subsequently paid filing fees of about $1,518,325.00. *Id.* at ¶¶ 5–6. AAA also sent an invoice to Valve for

MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW

2

MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

$1,866,100.00, representing the filing fees on the 14,911 cases. *Id.* at ¶ 7. Valve paid those fees. *Id.*

In August 2024, Valve requested that the arbitrations be stayed pending mediation. *See* Declaration of Gary E. Mason at ¶ 10. By agreement of the Parties, AAA put all the arbitration cases on administrative hold. *Id.* Soon thereafter, on September 26, 2024, Valve removed the arbitration provision from the SSA. *Id.* at ¶ 11. The mediation, which took place in February 2025, ended in an impasse. *Id at.* ¶ 12.

On March 24, 2025, after it lifted the hold on the cases, AAA sent Valve an invoice for $20,875,400 for additional case management arbitration fees on the 14,911 arbitration claims. *See* Declaration of Gary E. Mason at ¶ 13. These fees were due upon receipt. *Id.* Valve refused and continues to refuse to pay the March 24, 2025, invoice. *Id.* ¶ 14. At the request of the consumer plaintiffs, AAA has put all their claims in suspension pending the outcome of this motion. *Id.* ¶¶ 16–17.

## ARGUMENT

Unhappy about the prospects of paying AAA more than $20 million in non-refundable administrative fees, Valve has refused to proceed with thousands of pending AAA arbitrations in direct violation of this Court's order to compel arbitration.[1]

Valve, however, is bound by the law of this case to participate in these arbitrations in good faith. It cannot strategically refuse to pay the required arbitration fees, regardless of the amount due. Where, as here, a party refuses to pay required arbitration fees, despite having the ability to do so, it has refused to arbitrate within the meaning of Section 4 of the Federal Arbitration Act

---

[1] This strategy, while creative, was not entirely dreamed up by Valve or its counsel. Many companies when faced with payment of arbitration fees flowing from their forced arbitration provisions have taking a similar tact. *See generally* Alexi Pfeffer-Gillet, *Unfair by Default: Arbitration's Reverse Default Judgment Problem*, 171 U. PENN. L. REV. 459 (2023), https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article=9804&context=penn_law_review (last visited June 10, 2025); *See also* Neal Eiseman & Brian Farkas, *Stiffing the Arbitrators: The Problem of Nonpayment in Commercial Arbitration*, 8 HARV. NEGOT. L. REV. 1 (2015), https://journals.law.harvard.edu/hnlr/2015/04/stiffing-the-arbitrators-the-problem-of-nonpayment-in-commercial-arbitration/ (last visited June 10, 2025).

MOT. FOR SANCTIONS  
CASE NO. 2:21-CV-00563-JNW

3

MASON LLP  
5335 Wisconsin Ave. NW, Suite 640  
Washington, DC 20015  
Tel: (202) 429-2290

1 ("FAA"). In such circumstances, a court may order the recalcitrant party to arbitrate "in accordance with the terms of the [arbitration] agreement" by requiring the party to pay the required arbitration fees. 9 U.S.C. § 4. *Frazier v. X Corp*, 739 F. Supp. 3d 219, 223–24 (S.D.N.Y. 2024); *see also Allemeier v. Zyppah, Inc.*, No. CV 18-7437 PA (AGRx), 2018 WL 6038340, at *4 (C.D. Cal. Sept. 21, 2018) (similar); *Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016) ("If [the appellant] had refused to pay for arbitration despite having the capacity to do so, the district court probably could still have sought to compel arbitration under the FAA's provision allowing such an order in the event of a party's 'failure, neglect, or refusal' to arbitrate").

Without this Court's immediate action, Lally's claims are at a standstill. Prevented at first from proceeding against Valve in court, his case is now belatedly and unfairly derailed by Valve's refusal to pay arbitration fees. The Court should promptly order Valve to pay the outstanding AAA invoice and proceed with arbitration.

**A.     The SSA Requires Valve to Pay the Invoiced Fees.**

In June 2021, Valve moved to compel Lally's claims to arbitration pursuant to the Federal Arbitration Act ("FAA") and the terms of the SSA. As Valve made clear, the SSA "requires arbitration between all Steam users and Valve." Def. Valve Corporation's Mot. to Compel Arbitration, ECF No. 35 at 6. Further, Valve emphasized the "consumer friendly" elements of the arbitration provision, including its agreement that, for claims less than $10,000 (like Lally's here), Valve will "reimburse filing fees," and "pay a user's share of AAA's arbitration costs." *Id*. at 7. Thus, there can be no dispute that under the SSA, Valve is required to pay AAA's fees, except for the initial payment by consumers of their filing fees, which Valve has agreed to reimburse.

Lally anticipates that Valve will argue that the SSA it relied on to compel arbitration has been "superseded" by the SSA announced in September of 2024, which removed the arbitration provision. Not so. Numerous courts, including arbitrators in related arbitration cases against Valve, have held that retroactive application of a unilateral change to an arbitration agreement, as applicable to parties with pending arbitrations, is unconscionable and unenforceable. *See* Ruling, *24 Individuals v. Valve Corp.* (Sperow, Nov. 13, 2024) (attached as Appendix); *see also Heckman*

MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW                                4

**MASON LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

*v. Live Nation Ent. Inc.*, 120 F.4th 670, 680 (9th Cir. 2024) (affirming that Live Nation's unilateral, retroactive modification of its arbitration agreement was procedurally unconscionable to "an extreme degree").

### B. Lally Has Been Prejudiced by Valve's Delay Tactics.

Lally, through counsel, filed his claim for arbitration with the AAA in December 2023. *See* Declaration of Gary E. Mason at ¶ 5. Because his claim was part of a mass filing, it took AAA several months to register his claim and invoice the parties their filing fees. *See Id.* ¶¶ 6-7. Lally paid his filing fee as did all other claimants represented by Mason LLP who filed at the same time as him. *Id.* ¶ 6. During the following months, Lally and his cohort of claimants, working with counsel for Valve and AAA administrators, attempted to work through several threshold issues and proceed to individual arbitration. *Id.* ¶ 8. Before these issues were resolved, however, counsel for Valve proposed that the parties proceed to mediation. *Id.* ¶ 10. Counsel for Lally agreed and the AAA, upon the joint request of the parties, put the arbitrations on administrative hold. Due to the availability of the preferred mediator and then the fires in California, the mediation did not take place until February 2025. *Id.* ¶ 12. During this hiatus, Valve revised its SSA to remove the arbitration provision, allowing it to later argue that AAA purportedly no longer had jurisdiction over Lally's claims and his only option was to proceed as an absent class member of the then-stayed class action.

Now, nearly four years after the Court compelled arbitration, and nearly 18 months after Lally initiated his claim in arbitration, Lally remains no closer to his day in arbitration. Valve's conduct has succeeded in denying him access to any forum for redress for over three years and caused his counsel to spend thousands of hours and hundreds of thousands of dollars on his behalf and on behalf of thousands of other claimants preparing for arbitration.

### C. Valve Has Demonstrated a Pattern of "Bad Faith" Conduct.

Valve's efforts to thwart the compelled arbitrations goes well beyond its refusal to pay for this set of arbitrations. Valve has also filed retaliatory lawsuits against various law firms representing Steam subscribers seeking to arbitrate their antitrust claims against Valve (for

MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW

5

MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

1  tortious interference and abuse of process); removed the arbitration provision from the SSA (and
2  claiming that the AAA no longer has jurisdiction); removed the SSA from the AAA registry of
3  arbitration agreements (to preclude AAA from accepting and administering any additional
4  arbitrations); and, sued hundreds of its own subscribers (to enjoin them from pursuing their
5  respective arbitrations against Valve because their counsel filed a class action claim against Valve
6  on behalf of other Valve subscribers). Valve's conduct with respect to the compelled arbitration,
7  together with its refusal to pay arbitration fees, amply demonstrates a pattern of bad faith conduct.

*i.  Valve retaliated against the law firms consumers retained to pursue arbitration.*

Zaiger LLC ("Zaiger") represents tens of thousands of individual consumers pursuing antitrust arbitrations against Valve Corporation. Order Granting Mot. to Dismiss, *Valve Corp. v. Zaiger, LLC*, No. 2:23-CV-01819-JHC (W.D. Wash. Aug. 20, 2024), ECF No. 28. After Judge Coughenour granted Valve's motion to compel arbitration and stayed the consumer class action in October of 2021, Zaiger LLC was subsequently retained by "over 50,000 clients who wished to pursue antitrust claims [against Valve]." Def. Zaiger LLC's Mot. to Dismiss at 5, No. 2:23-CV-01819-JHC (W.D. Wash. Dec. 4, 2023), ECF No. 9.

On or about March 24, 2023, Zaiger initiated its clients' arbitration proceedings against Valve by sending Valve a pre-arbitration notice of dispute letter. *Id.* On September 1, 2023, after being unable to negotiate a resolution of its clients' claims during a 30-day pre-arbitration informal dispute resolution period, Zaiger filed separate arbitration claims against Valve for five of its clients with AAA. *Id.* at 6.

In response, on October 20, 2023, Valve filed a retaliatory lawsuit against Zaiger in Washington state alleging that Zaiger's recruitment and representation of thousands of Valve subscribers with respect to their arbitration claims against Valve purportedly constitutes tortious interference with Valve's customer relationships and an abuse of process. *See* Compl., *Valve v. Zaiger*, No. 2:23-CV-01819-JHC, ECF No. 1-3. According to Valve, Zaiger's litigation strategy constitutes extortion. *See id*. at 12, ¶ 71. Zaiger removed Valve's state court complaint to federal

MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW    6

MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

court in this District where Judge Chun subsequently dismissed Valve's complaint for lack of personal jurisdiction on August 20, 2024. *See* Order Granting Mot. to Dismiss, No. 2:23-CV-01819-JHC, ECF No. 28.

Bucher Law PLLC ("Bucher") is another law firm that was retained by thousands upon thousands of Valve subscribers to represent them with their antitrust arbitration claims against Valve after this Court granted Valve's motion to compel arbitration and stayed the consumer class action Valve. *See* Defs.' Mot. to Dismiss at 7–8, *Valve Corp. v. Bucher Law, PLLC*, No. 23-2-20447-6 (Wash. Super. Ct. King Cnty. Feb. 6, 2024). Bucher Law represents at least 63,000 Valve subscribers seeking to pursue their individual arbitration claims against Valve (although it appears that 12,000 of these claimants may have switched their legal representation from Zaiger to Bucher after attorney Will Bucher left Zaiger to start Bucher Law PLLC). *See* Defs.' Mot. to Dismiss at 8, No. 23-2-20447-6 (Wash. Super. Ct. King Cnty. Feb. 6, 2024).

On or about July 12, 2023, Bucher and its co-counsel initiated their clients' arbitration claims against Valve by sending Valve a pre-arbitration notice of dispute letter regarding *inter alia* Bucher's 63,0000 clients' intent to arbitrate the antitrust claims against Valve that Valve had compelled to arbitration. *Id*. On October 2, 2023, after being unable to negotiate a resolution of certain Valve subscribers' claims against Valve during the 30-day informal dispute resolution period, over 1,000 Bucher's clients filed their arbitration claims with AAA. *Id*. at 9.

On October 20, 2023, less than three weeks after Bucher filed its first wave of arbitrations with AAA, and on the same day Valve filed its retaliatory lawsuit against Zaiger, Valve filed a substantially similar retaliatory complaint against Bucher, likewise alleging that Bucher's recruitment and representation of thousands of Steam subscribers with respect to their antitrust arbitration claims against Valve constitutes tortious interference and an abuse of process. *See* Compl. in V*alve Corp. v. Bucher Law, PLLC*, No. 23-2-20447-6 (Wash. Super. Ct. King Cnty.).[2]

---

[2] While this case is still pending against Bucher, Bucher has also filed an interlocutory appeal challenging the Superior Court's denial of Bucher's Motion to Dismiss, which is also still pending. *See Valve Corp. v. Bucher Law PLLC*, No. 86585-4, in the Washington Court of Appeals, Division I.

MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW                7

**MASON LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

The obvious inference is that Valve brought these retaliatory lawsuits against Zaiger and Bucher to dissuade other counsel and subscribers from pursuing their arbitration claims against Valve.

    ii. *Valve removed the arbitration provision from the SSA and removed its prior SSA from the AAA registry of arbitration agreements.*

To prevent Steam subscribers from pursuing their arbitration claims against Valve, Valve removed the mandatory arbitration provision from the SSA on September 26, 2024, and it has since taken the position that its removal purportedly divests the AAA of jurisdiction over any arbitrations against it, requiring AAA to dismiss all filed cases, and precluding AAA from accepting or administering any additional arbitration claims against Valve.

Valve also removed its SSA from the AAA's registry of arbitration agreements, thereby preventing additional arbitration claims from being filed with AAA under AAA rules, which require all companies that mandate the arbitration of any legal claims against it through AAA to maintain a copy of their arbitration agreements in AAA's registry of arbitration agreements. While hundreds of thousands of Steam subscribers represented by the law firms of Mason, Zaiger, and Bucher have initiated arbitration, only a fraction of them had the opportunity to file claims with the AAA before Valve blocked AAA from accepting more.

    iii. *Valve sued hundreds of its own customers.*

Evidently frustrated that some of its customers insisted on continuing with their arbitration claims after Valve changed the terms of the SSA, Valve filed a petition to enjoin hundreds of Bucher's clients from continuing with their arbitrations. *Valve Corp. v. Abbruzzese*, No. 240-cv-01717-JNW (W.D. Wash. Oct. 18, 2024). *Abbruzzese* is an attempt by Valve to force hundreds of persons back to court even though they have for many months, if not now years, pursued their claims in arbitration against Valve as it forced them to do. Valve contends that by removing its arbitration provision, there is no agreement to arbitrate, but this is actually a sophism designed to obscure the fact that this Court has already enforced the prior SSA's arbitration agreement at Valve's request and thousands of Steam users pursued that route to their detriment.

* * *

MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW   8

**MASON LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

Valve's refusal to pay AAA's latest invoice is not an isolated act but part of a broader effort to evade liability at the expense of its subscribers' rights and substantial litigant and judicial resources. Valve's litigation tactics demonstrate a "pattern of bad faith conduct" and are aggravating factors justifying sanctions.

**D.    The Court Should Compel Valve to Pay the Invoiced Fees.**

In the wake of this Court's order compelling arbitration, Mason LLP, on behalf of its Valve consumer clients, notified Valve of nearly 70,000 claims in arbitrations, and filed and paid the AAA filing fees for nearly 20,000 of those claims, including the claim filed by Lally. By May 2024, Valve was on notice that AAA would invoice it for fees of $1,400 for each of 14,911 cases (for a total of $20,876,400). *See* Declaration of Gary E. Mason at ¶ 9 and Email from Meirav Werbel, AAA, to Gary E. Mason & Charles B. Casper (May 14, 2024), attached to Declaration of Gary E. Mason as Ex. A1. The submission of the invoice was delayed six months because the parties agreed to stay the AAA arbitrations pending the mediation. *See* Declaration of Gary E. Mason at ¶¶ 10, 12-13. But soon after the mediation ended in impasse, Valve notified AAA and the claimants that it refuses to pay any further administrative fees. *See Id.* ¶¶ 12–14.

In the Ninth Circuit, the "failure to pay required costs of arbitration [is] a material breach of [a party's] obligations in connection with the arbitration." *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003). As a remedy, courts sitting in the Ninth Circuit may compel a party that willfully refuses to pay arbitration fees to arbitrate and, indeed, can even enter a default against such a party. The Ninth Circuit has expressly held that a court can compel to arbitration a party that refuses to pay for arbitration despite having the capacity to do so. *Tillman v. Tillman*, 825 F.3d 1069, 1075–76 (9th Cir. 2016).

In *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020), the court faced this very situation. In that case, DoorDash, which required delivery drivers to sign arbitration agreements, refused to pay nearly $12 million in administrative fees billed by AAA after thousands of drivers filed individual arbitrations against it, thereby preventing those arbitration from proceeding. In granting the drivers' motion to compel arbitration, Judge Alsup

MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW                    9

MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

observed that DoorDash, like Valve here, "faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause." 438 F. Supp . at 1067–68. The court continued:

> No doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.

*Id.*; *see also Tillman* at 1075 ("If [the respondent] had refused to pay for arbitration despite having the capacity to do so, the district court probably could still have sought to compel arbitration under the FAA's provision allowing such an order in the event of a party's 'failure, neglect, or refusal' to arbitrate."); *Allemeier*, 2018 WL 6038340, at *4 (defendant that breached the arbitration agreement by failing to pay fees as determined by the AAA ordered to "pay any fees that the AAA allocate[d] to it and to comply with any other requirements that the AAA imposes"); *Frazier*, 739 F. Supp. 3d at 223–24 (after party refused to pay arbitration fees, court ordered payment of required fees).

Moreover, courts may sanction a recalcitrant party by ordering the payment of arbitration fees under Federal Rule 11 (providing for sanctions for improper conduct including, but not limited to: (1) the filing of a frivolous suit or document; (2) the filing of a document or lawsuit for an improper purpose; and (3) actions that needlessly increase the cost or length of litigation) or, as in this case, where the party has clearly failed to obey a court order, 18 U.S.C. § 401 (a federal court has the power to punish disobedience to its orders); *see also Lopez v. Thermo Tech Mech. Inc.*, No. 20-CV-9113-LTS-BCM, 2023 WL 5571312, at *3 (S.D.N.Y. Aug. 29, 2023) (a party's non-payment of arbitration fees is sanctionable if motivated by bad faith); *Serv. Emps. Int'l Union Loc. 32BJ v. Preeminent Protective Servs., Inc.*, 415 F. Supp. 3d 29, 31–33 (D.D.C. 2019) (civil contempt sanctions appropriate where a party has "violated the Court's clear and unambiguous orders compelling arbitrations" through "a deliberate strategy to delay . . . ", *aff'd*, 997 F.3d 1217 (D.C. Cir. 2021)).

MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW            10

**MASON LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

Valve's refusal to pay the arbitration fees invoiced by AAA was intentional and constitutes a bad faith refusal to arbitrate and disobedience of this Court's order compelling arbitration. While Lally has attempted to arbitrate his claims in good faith, Valve has not, as exhibited by its refusal to pay arbitration fees when it has the ability to do so. This is in direct defiance of the Court's order compelling arbitration, and a part of Valve's overall strategy to avoid all the individual arbitrations to which it agreed through delay and non-payment.

Valve made its bed when it moved this court to compel arbitration and now refuses to lie in it in violation of the FAA, the parties' arbitration agreement, the AAA rules and fee schedules as well as the letter and spirit of this Court's order granting Valve's motion to compel. Moreover, allowing Valve to avoid arbitration through non-payment would undermine the integrity of the FAA and incentivize similar conduct by other corporate defendants.

This Court has the authority to order Valve to proceed in arbitration and to pay the invoiced fees and it should do so to enforce its order, to prevent further prejudice to Plaintiff Lally, and to uphold the integrity of the Federal Arbitration Act and the arbitration system writ large.

**CONCLUSION**

For the foregoing reasons, Plaintiff Lally respectfully asks this Court to grant his Motion for Sanctions and provide as follows:

- A deadline for Valve to pay fees with a requirement to certify compliance;
- An order that if Valve fails to pay by the deadline, default or adverse inference sanctions will be entered as liability in any subsequent proceedings; and
- An award of attorneys' fees and costs incurred by bringing this Motion for Sanctions.

A Proposed Order has been filed with this Motion.

MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW    11

MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

I hereby certify that this motion contains 3,742 words, in compliance with the Local Civil Rules.

Dated: June 11, 2025

**FRANK FREED SUBIT & THOMAS LLP**

By: /s/ *Michael C. Subit*
Michael C. Subit, WSBA No. 29189
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1729
Tel.: (206) 682-6711
Fax: 206-682-0401
Email: msubit@frankfreed.com

**MASON LLP**

Gary E. Mason (*pro hac vice*)
Danielle L. Perry (*pro hac vice*)
Theodore B. Bell (*pro hac vice*)
Jacob D. Eisenberg (*pro hac vice*)
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Tel.: (202) 429-2290
Email: gmason@masonllp.com
Email: dperry@masonllp.com
Email: tbell@masonllp.com
Email: jeisenberg@masonllp.com

*Attorneys for Plaintiff Ryan Lally*

MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW     12

**MASON LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290