# EXHIBIT 17

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001-8602

———

TEL: (212) 735-3000

FAX: (212) 735-2000

WWW.SKADDEN.COM

DIRECT DIAL
212-735-3529
DIRECT FAX
917-777-3529
EMAIL ADDRESS
MICHAEL.MCTIGUE@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

June 18, 2025

**VIA ELECTRONIC MAIL**

Gary E. Mason
Mason LLP
5335 Wisconsin Avenue NorthWest
Suite 640
Washington, DC 20016
gmason@masonllp.com

     RE:  *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JNW

Dear Gary:

  We write to address Plaintiff Ryan Lally's Motion for Sanctions filed in the above-referenced case on June 11, 2025. (Dkt. 467.) The motion purports to seek sanctions on the ground that Valve has refused to arbitrate Mr. Lally's putative antitrust claims before the American Arbitration Association ("AAA"). Mr. Lally's motion comes as a surprise to Valve as explained below.

  First, Mr. Lally represented to the Court that he preferred to proceed in Court and not in arbitration. Specifically, Mr. Lally argued in opposition to Valve's motion to compel arbitration that the arbitration agreement in the then-operative Steam Subscriber Agreement ("SSA")—the very agreement he now seeks to enforce—was unconscionable and unenforceable. He further asserted that arbitration under the superseded SSA ("Superseded SSA") "would deny" him "the ability to seek and obtain the statutory relief available to [him]." (*See* Dkt. 51 at 1-2, 15-16.) He also represented in his Amended Complaint that his class action was "superior to any other method for the fair and efficient adjudication of this legal dispute." (Dkt. 34 ¶ 314.) And you stated in a submission to the AAA in April 2024 that you intended to challenge the enforceability of the arbitration agreement in the Superseded SSA. (Ex. A at 1-2.)

  Based on Mr. Lally's irreconcilable about-face—first strenuously opposing arbitration, and now demanding arbitration and seeking sanctions for refusal to

Gary E. Mason
June 18, 2025
Page 2

arbitrate—we are concerned that he is being used as a pawn in your improper mass arbitration scheme and is making arguments that merely serve the interests of counsel in its improper attempt to pursue arbitrations under a superseded agreement. To this point, we note that your motion purports to seek relief not only on behalf of Mr. Lally, but also tens of thousands of other claimants. Yet Valve moved to compel arbitration—and the Court granted that motion, subject to a determination on enforceability of the arbitration agreement by the arbitrator—only with respect to the named plaintiffs in the above-referenced action. Aside from Mr. Lally, none of the thousands of claimants you purport to represent are among the named plaintiffs.[1]

Valve is also concerned that counsel is making improper attempts to duplicate proceedings given that Mr. Lally (a California resident) is a member of the putative class in *Welty v. Valve Corporation*, No. 1:25-cv-00696-SAB. You seek the same relief in *Welty* as here: sanctions for Valve's purported refusal to arbitrate.

In any event, if you had met and conferred with Valve prior to filing the motion you would have obviated the need to file it. Valve will agree to arbitrate Mr. Lally's claims before the AAA.

As you know, Valve did not pay the invoice the AAA issued for Case Management Fees on March 24, 2025, in the mass arbitration that includes Mr. Lally's claim along with 14,910 others. As Valve explained, the arbitration agreement in the Superseded SSA was deemed unenforceable in four AAA arbitrations that involved similar claims. Among other things, the arbitrator held that the arbitration agreement was unenforceable as to California residents under California law. Mr. Lally is a California resident.[2] Based on those rulings, a new class action was filed seeking to certify a class that would include Mr. Lally and all of the other claimants that are part of your mass arbitration. Valve then removed the arbitration agreement from the SSA. The current SSA requires all claims, including accrued and pending claims, to proceed in court. Given Mr. Lally's previous objection to arbitration, we believed Mr. Lally would welcome this development. Indeed, after Valve announced the current SSA, all six of Mr. Lally's co-plaintiffs promptly requested that the Court lift the stay entered in favor of arbitration of their claims in 2021 and proceed with the putative class

---

[1] In addition, the arbitration agreement in the Superseded SSA you seek to invoke expressly forecloses any "CLASS OR REPRESENTATIVE ACTION" and precludes Valve and users from "seek[ing] to combine any action . . . with any other action" without all parties' consent.

[2] You stated in a letter to the AAA dated April 19, 2024, that a decision by an arbitrator on the enforceability of the arbitration agreement in the Superseded SSA "will affect each individual Claimant's obligation to arbitrate their disputes with Valve." (Ex. A at 1-2.)

Gary E. Mason
June 18, 2025
Page 3

action. (Dkt. 370.) Valve did not oppose that request and the Court granted it. (Dkt. 395, 428.)

Based on a review of Valve's records it appears that Mr. Lally has not agreed to the current SSA; no one has logged into the Steam account referenced in Mr. Lally's complaint since June of 2023, well before Valve launched the current SSA. As such, and given that the Court compelled Mr. Lally's individual claim to arbitration, Valve is willing to proceed with arbitration before the AAA pursuant to the arbitration agreement in the Superseded SSA, updated as of April 25, 2023. Valve has requested that the AAA issue an invoice for the Case Management Fee for Mr. Lally's arbitration only. Valve will promptly pay that invoice after it is received.

Valve reserves all rights with respect to all other arbitrations, including the other arbitrations that are part of the mass arbitration with case number 01-23-0005-8758, on the grounds that (i) the arbitration agreement in the Superseded SSA has been held by a AAA arbitrator to be unenforceable and (ii) there is no longer an agreement to arbitrate between Valve and its customers.

We trust Valve's agreement to proceed with Mr. Lally's arbitration moots his sanctions motion. Please confirm promptly and by no later than June 20, 2025, that you will withdraw it.

Sincerely,

/s/ Michael W. McTigue Jr.

Michael W. McTigue Jr.

w/encl.

# EXHIBIT A




| | |
|---|---|
| Gary E. Mason | Kenneth J. Rubin |
| gmason@masonllp.com | kjrubin@vorys.com |
| (202) 429-2990 | (614) 464-5692 |

April 19, 2024

Priscilla Cortez
Manager of ADR Services
American Arbitration Association
International Centre for Dispute Resolution
45 E River Park Place West
Suite 308
Fresno, CA 93720
PriscillaCortez@adr.org

Re:   Individual Claimants v. Valve Corporation
      Case No. 01-23-0005-8758

Dear Ms. Cortez:

We write in follow-up to the parties' April 12, 2024, administrative conference call, and the AAA's request for written contentions regarding the issues each party believes should be addressed by a Process Arbitrator to be appointed by the AAA. This correspondence sets forth Individual Claimants' position with respect to this request.

Individual Claimants believe the following administrative issues should be addressed by a Process Arbitrator in advance of any individual adjudications on the merits.

1. <u>Reimbursement of AAA Filing Fees.</u>  Individual Claimants request that the AAA appoint a Process Arbitrator to address Valve's failure to promptly reimburse Individual Claimants for the fees associated with AAA arbitration. Specifically, the Steam Subscriber Agreement– the contract upon which Valve relies to compel Individual Claimants to arbitration– states that "Valve agrees to **promptly** reimburse [an Individual Claimant's] filing fee and [his or her] share if an of AAA's arbitration costs, including arbitrator compensation" where the Individual Claimant seeks "$10,000 or less." (Emphasis added.)  To date, Valve has not promptly reimbursed Individual Claimants whose demands for arbitration seek $10,000 or less.  Individual Claimants believe this is a threshold issue that is uniformly applicable to Individual Claimants and impacts the enforceability of the arbitration clause in the Steam Subcriber Agreement, and that a Process Arbitrator should address this issue in the first instance.  *See* Mass Arbitration Supplementary Rule MA-6(d)(ii) (August 2023) (allowing for the "allocation of payment advances on administrative fees, arbitrator compensation, and/or expenses" to be determined by a Process Arbitrator).

2. <u>Enforceability of Arbitration Agreement.</u>  Individual Claimants request that a Process Arbitrator be appointed to address whether the arbitration clause in the Steam Subscriber Agreement is enforceable.  At least one Individual Claimant intends to raise the issue of unconscionability and resulting unenforceability of the arbitration clause, and a decision on this

Priscilla Cortez
Manager of ADR Services
Page 2
April 19, 2024

issue will affect each individual Claimant's obligation to arbitrate their disputes with Valve. Thus, it is an appropriate administrative issue for a Process Arbitrator to address. *See* Mass Arbitration Supplementary Rule MA-6(d)(i), (iii), (v), and (f) (August 2023).

      3.    <u>Scope of Discovery.</u> Individual Claimants request that a Process Arbitrator be appointed to determine the appropriate scope of discovery in this matter. Individual Claimants will primarily request access to discovery that Valve has already compiled and produced in related antitrust litigation that Valve is currently a party to pending in the Federal District Court for the Western District of Washington, captioned *Wolfire Games LLC et al v. Valve Corporation*, Case No. 2:21-cv-00563-JJC. The only additional discovery Claimants will seek as a part of the arbitration process is information Respondent has about each of them. This additional discovery will not be burdensome as it is extremely likely that Respondent (a) has already pulled this information, or (b) will pull it as part of defending the arbitrations.

      With respect to Individual Claimants' request for the discovery from the *Wolfire* case, the Vorys firm is one of the plaintiff-side firms in the *Wolfire* case and has access to the discovery pursuant to a protective order entered into in that case. Rule 22 of the AAA's Consumer Arbitration Rules states that an "arbitrator may direct . . . specific documents and other information to be shared between the consumer and business . . . ." The Rule further states that "arbitration must remain a fast and economical process . . . ." The quickest, most economical process for discovery needed to fairly adjudicate these arbitrations is to allow Individual Claimants' attorneys—some of whom already have access to the requested discovery—to use that discovery in the arbitrations subject to the same protective order entered into in the *Wolfire* case. The use of discovery already compiled and produced by Valve in the *Wolfire* case will not result in any discovery burden on Valve in these arbitrations. Moreover, the discovery Individual Claimants seek from the *Wolfire* case is uniformly applicable to each Individual Claimant's case, and thus the issue of the appropriate scope of discovery is an issue that should be addressed by a Process Arbitrator. These are antitrust arbitrations, and each of them focuses on Respondent's conduct. It would be incongruous for one arbitration to allow limited discovery for one Claimant's case, when another arbitration may allow broader discovery. The issue of the scope of discovery with respect to Individual Claimants' arbitrations should be decided uniformly by a Process Arbitrator. *See* Mass Arbitration Supplementary Rule MA-6(d)(v) (allowing the Process Arbitrator to determine "any other administrative issue arising out of the nature of the Mass Arbitration").

      4. <u>The Propriety of Valve's Contemplated Motion to Dismiss.</u> On the April 12, 2024, administrative conference call, in addition to the issues that Individual Claimants raised set forth above, Valve requested that a Process Arbitrator be appointed to address whether Individual Claimants have complied with the terms of the Steam Subscriber Agreement such that their claims are properly before the AAA for adjudication. Valve suggested that it would raise this issue with a Process Arbitrator through a motion to dismiss. Individual Claimants dispute (1) Valve's contention that they somehow have not complied with the terms of the Steam Subscriber

Priscilla Cortez
Manager of ADR Services
Page 3
April 19, 2024


Agreement, (2) Valve's contention that this dispositive motion is appropriate, either before a Process Arbitrator or otherwise raised, and (3) Valve's contention that this particular dispositive motion is appropriate and raised in good faith given that Valve has already raised and lost this same issue in two other arbitrations within the past several months. (*See* attached AAA decisions.) Pursuant to the doctrine of non-mutual collateral estoppel, Valve should be estopped from once again raising this frivolous argument with the AAA. Finally, Valve's contention that it is appropriate for a Process Arbitrator to decide a motion to dismiss an Individual Claimants' compliance with the Steam Subscriber Agreement is directly in conflict with Valve's opposition to issue No. 2, above.

   We appreciate the AAA's time in conducting the administrative conference call on April 12, 2024, and in considering the above issues that were raised on that call. If there is any other information or documentation that would aid the AAA in considering these issues, please let us know and we would be happy to provide it.

     Sincerely,

     /s/Gary E. Mason        /s/Kenneth J. Rubin
     Gary E. Mason         Kenneth J. Rubin


cc:  Victoria Chandler (VictoriaChandler@adr.org)
    Lauren Sheller
    Jeremy Mishkin
    John G. Papianou
    Charles B. Casper
    Benjamin Goldman
    Robert E. Day
    Douglas Matthews
    Timothy B. McGranor
    Kara M. Mundy
    Danielle L. Perry
    Theodore B. Bell