THE HON. JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | No. 2:21-cv-00563-JNW |
| This filing relates to:<br><br>ALL ACTIONS | **REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>NOTE ON MOTION CALENDAR:<br><br>JULY 2, 2025 |

In June 2021, Valve aggressively moved to compel arbitration, arguing that the Steam Subscriber Agreement ("SSA") requires all claims against Valve by all users to be arbitrated individually.[1] Three years later, after facing payment of tens of millions of dollars in arbitration fees for the arbitration it forced, Valve reversed course and refuses to arbitrate, claiming the same arbitration provision it previously defended is now unenforceable.[2] Valve cannot have it both ways. The time has come to pay the piper. The Motion for Sanctions should be granted.

---

[1] *See* Valve's Mot. to Compel Arbitration at 3, *In re Valve Antitrust Litig.*, No. 2:21-cv-00563-JNW (W.D. Wash. June 23, 2021), ECF 35.
[2] *See, e.g.*, Valve's Opp'n to Pl. Lally's Mot. for Sanctions (hereafter, "Response") at 3–4, *In re Valve*, No. 2:21-cv-00563-JNW (W.D. Wash. June 26, 2025), ECF 470.

| | |
|---|---|
| REPLY BRIEF IN SUPPORT OF<br>MOT. FOR SANCTIONS<br>CASE NO. 2:21-CV-00563-JNW | **MASON LLP**<br>5335 Wisconsin Ave. NW, Suite 640<br>Washington, DC 20015<br>Tel: (202) 429-2290 |

# ARGUMENT

### A. Valve's "Offer" to Lally Was a Bad Faith Charade Designed to Evade the Court's Arbitration Order; Sanctions Are Still Warranted.

Valve's purported willingness to arbitrate Ryan Lally's claim individually is a disingenuous maneuver designed to obscure its systemic refusal to comply with AAA's fee requirements. This "offer" is procedurally impossible under AAA rules and substantively hollow, as Valve's refusal to pay the $20.8 million fee for the 14,911-claimant mass arbitration—which includes Lally—directly sabotages his ability to proceed. Lally has standing as an aggrieved party despite Valve's belated attempt to moot the issue.

### 1. *AAA Rules Render Valve's Selective Payment Impossible.*

AAA's Supplementary Rules for Mass Arbitrations explicitly require full payment of administrative fees for all claims to proceed. *See* MA-10(a), Mass Arbitration Supplemental Rules (AAA Aug. 1, 2023), attached to Declaration of Gary E. Mason ("Mason Decl."), ¶ 2, Ex. 1. Prior to the appointment of individual arbitrators, AAA can suspend the entirety of the mass arbitration if fees are unpaid. MA-10(e). Not surprisingly, Valve's non-payment of the mass arbitration invoice triggered a blanket suspension, stalling Lally's individual arbitration regardless of its belated "offer." *See* Email from C. Florio, AAA, to Parties (May 15, 2025), ECF 471-15.

AAA declined Valve's request to issue a separate invoice for Lally. *See* Email from C. Florio, AAA, to Parties (June 25, 2025), ECF 471-20. Although AAA did not state its reasoning, Lally's counsel had earlier warned AAA that Valve's proposal to terminate the mass arbitration in its entirety violated AAA's mass arbitration protocols. *See* Letter from G. Mason to C. Florio, AAA (Feb. 14, 2025), Mason Decl. ¶ 3, Ex. 2. Hence, it's Lally and the other mass arbitration claimants who are playing by AAA's rules, not Valve. By its own volition, Valve is faced with payment of a $20.8 million invoice. No amount of chicanery should relieve it of its obligation to pay.

REPLY BRIEF IN SUPPORT OF
MOT. FOR SANCTIONS
CASE NO. 2:21-cv-00563-JNW

2

MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

2.    *Lally Has Standing to Seek Payment of the AAA Invoice.*

Notwithstanding Valve's argument, Lally is not "seeking to compel Valve to pay fees for 14,910 other arbitration claimants," Resp. at 9, nor has he filed any class or representative action on behalf of the subscribers seeking to arbitrate their claims against Valve, which would be prohibited by the SSA.[3] Lally merely seeks payment of the AAA invoice, which would enable his arbitration to continue. That Lally's arbitration is bound up with other claimants has nothing to do with any actions taken by Lally. Unlike Valve, Lally is following AAA rules and seeking their enforcement.[4] Lally seeks redress for Valve's obstruction of court-ordered arbitration, not representation of absent parties.

3.    *Valve's Contradictory Conduct Shows Sanctionable Bad Faith.*

Valve's actions reveal a deliberate strategy to obstruct arbitration while feigning compliance. Valve admits it declined to pay the $20.8 million invoice for the 14,911 claims, ensuring the suspension of *all* proceedings—including Lally's. Decl. of Blake Marks-Dias in Supp. of Resp. at 6, ¶ 28, ECF 471. Its offer to arbitrate Lally individually is an empty gesture, emerging only *after* sanctions were sought, and only on the pretext that Valve's records purportedly suggest Lally might be one of the few Claimants that Valve would concede are not bound by the amended SSA. Moreover, Valve's position contradicts its 2021 motion to compel arbitration, where it insisted all claims must proceed individually. Its about-face—now resisting arbitration after failing to persuade AAA to terminate the proceedings—constitutes bad-faith gamesmanship warranting sanctions. *See Lopez v. Thermo Tech Mech. Inc.*, No. 20-CV-9113-LTS-BCM, 2023 WL 5571312, at *3 (S.D.N.Y. Aug. 29, 2023) (a party's non-payment of arbitration fees is sanctionable if motivated by bad faith); *Serv. Emps. Int'l Union Loc. 32BJ v. Preeminent Protective Servs., Inc.*,

---

[3] *See* Valve's Mot. to Compel Arbitration at 6–7, ECF 35.

[4] Since Valve concedes that Lally has a right to arbitrate, the issue of whether the other 14,910 claimants have a right to arbitrate is not before the Court. Valve agrees with that proposition as well. *See* Resp. at 8 ("while the Court need not reach the question here, Lally has not shown that the 14,910 Claimants are not bound by the Current SSA.") It suffices to say that this Court has previously held that "the arbitrator must resolve any 'disputes' regarding 'this agreement'…" Order Granting Valve's Mot. to Compel Arbitration at 3, ECF 66.

REPLY BRIEF IN SUPPORT OF
MOT. FOR SANCTIONS
CASE NO. 2:21-cv-00563-JNW

3

MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

415 F. Supp. 3d 29, 31–33 (D.D.C. 2019), *aff'd*, 997 F.3d 1217 (D.C. Cir. 2021) (civil contempt sanctions appropriate where a party has "violated the Court's clear and unambiguous orders compelling arbitrations" through "a deliberate strategy to delay . . . ").

### B. Valve's Refusal to Pay AAA's $20.8 Million Invoice Is a Violation of this Court's Order Compelling Arbitration.

Despite Valve's baseless claim that it has complied with Judge Coughenour's Order compelling arbitration, Valve's strategic refusal to pay AAA's invoice for arbitration fees is both a refusal to arbitrate and a material violation of the Court's Order. Each of its arguments fail for the reasons below.

*First*, Valve argues that its Motion to Compel Arbitration, ECF 35, had "nothing to do" with the thousands of arbitration claims brought against Valve by putative class members. But that's not true. Valve did not merely seek to compel Lally and the Named Plaintiffs to arbitration; it sought to compel all its subscribers who brought claims against it to arbitration. *See* ECF 35 at 6 (arguing that the "SSA Requires Arbitration of All Disputes Between Steam Users and Valve."). It was implicit in Valve's Motion to Compel that if the Court compelled arbitration, Valve would proceed in arbitration on any claims brought against it by its subscribers. At the same time, it matters not that Judge Coughenour's Order only compelled the named plaintiffs to arbitrate. The Court need not order absent class members to proceed to arbitration when granting a motion to compel, nor could it: the other subscribers were not parties to the litigation and were not before the Court.[5]

*Second*, Valve's recent, unsuccessful attempt to get AAA to issue a singular invoice for Lally's claim does not somehow bring it into compliance with the Court's Order. Far from it, Valve's request to AAA to invoice Lally separately was contrary to AAA's usual procedures, was

---

[5] Nor is there anything untoward about Lally's "tie" to the other 14,910 subscribers. Resp. at 10. AAA, not Lally, determined that the 14,911 individual arbitration claims met the criteria for administration as a Mass Arbitration under its rules. *See* Email from P. Cortez, AAA, to Parties (June 26, 2024), ECF 471-3.

REPLY BRIEF IN SUPPORT OF
MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW

4

MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

1  only made after Lally filed his motion for sanctions, and was denied by AAA. AAA opted instead
2  to keep these cases in suspension to allow the Claimants, including Lally, to seek relief from the
3  Court.

4      *Third*, Valve argues that Lally cited no authority holding that a party's refusal to pay
5  arbitration fees warrants sanctions. But Lally cited several cases, including courts in this Circuit,
6  standing for the proposition that courts can and do compel parties to pay arbitration fees especially
7  where, as here, the refusal to pay was strategic. *See, e.g.*, *Tillman v. Tillman*, 825 F.3d 1069, 1075–
8  76 (9th Cir. 2016) (court can compel to arbitration a party that refuses to pay for arbitration despite
9  having the capacity to do so); *Thermo*, 2023 WL 5571312, at *3 (a party's non-payment of
10 arbitration fees is sanctionable if motivated by bad faith); *Serv. Emps. Int'l*, 415 F. Supp. at 31–33
11 (civil contempt sanctions appropriate where a party has "violated the Court's clear and
12 unambiguous orders compelling arbitrations" through "a deliberate strategy to delay . . .").

13     *Fourth*, and finally, Valve's attempt to convince this Court that the proper remedy for its
14 refusal to pay arbitration fees should be the dismissal of the arbitrations or the waiver of Valve's
15 right to arbitrate is misplaced. Parties should not be empowered to jettison themselves out of
16 arbitration and back into court whenever they believe doing so would be advantageous, simply by
17 refusing to pay arbitration fees. Providing Valve with the outcome that it has been trying to
18 achieve—return to court—is not an appropriate sanction because it would do no more than reward
19 Valve for its bad faith refusal to arbitrate.

20     **C.    Valve's Update to the Steam Subscriber Agreement Is Sanctionable.**

21     Valve's removal of the arbitration provision coupled with its attempt to apply that change
22 retroactively renders Valve's conduct unconscionable and unenforceable. In the Ninth Circuit, it's
23 procedurally unconscionable to unilaterally modify a contract to apply to claims "that have accrued
24 or are known." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 683 (9th Cir. 2024). Thus, Valve's
25 attempt to apply the arbitration agreement retroactively defies both Valve's agreement to arbitrate
26 and Judge Coughenour's Order requiring Valve to do so.

27

REPLY BRIEF IN SUPPORT OF  
MOT. FOR SANCTIONS                     5  
CASE NO. 2:21-CV-00563-JNW

**MASON LLP**  
5335 Wisconsin Ave. NW, Suite 640  
Washington, DC 20015  
Tel: (202) 429-2290

Further, Lally can hardly be said to be acting in bad faith when no court or arbitrator in any case involving Lally has ruled that Valve's arbitration agreement is unconscionable. The arbitration opinion upon which Valve relies is not publicly available, has never been shared with Lally, and is limited to the arbitration in which it was rendered. "It is black-letter law that binding litigants to the rulings of cases in which they have no right to participate – let alone case[s] [sic] of which they have no knowledge – violates basic principles of due process." *Heckman*, 120 F. 4th at 684 (internal citation omitted). Thus, Valve's argument that Lally is somehow estopped from claiming Valve's conduct is sanctionable is baseless and must be denied.

### D.   Valve Violated Rule 11 Through Abusive Litigation Tactics.

Valve's claim that it "has not violated Rule 11," Resp. at 13, ignores its pattern of filing meritless lawsuits against law firms representing claimants, lawsuits against its own subscribers, and the claw-back of its consumer-friendly arbitration provision.[6] In hindsight, its original motion to compel arbitration was a tactic to delay this litigation and wear down the claimants, violating Rule 11's prohibition on filings for an "improper purpose." This Court has broad discretion to fashion a remedy to deter future misconduct, which could include payment of the AAA invoice.

### E.   Valve Committed Criminal Contempt by Defying Court Orders.

Valve's assertion that it "has not committed criminal contempt," Resp. at 14, disregards its willful violation of Judge Coughenour's Order. Valve admitted it "declined to pay" $20.8M in AAA fees for 14,911 claimants (including Lally), causing AAA to suspend proceedings. Resp. at 6–7. This was not merely a delay tactic but a deliberate sabotage of the arbitration process. That Lally has requested neither fine nor imprisonment is of no moment; criminal contempt sanctions under § 401 are court-initiated remedies for disobedience of lawful orders, not plaintiff-requested

---

[6] Valve's retaliatory lawsuit against two law firms was recently dismissed with prejudice upon appeal. *See Valve Corp. v. Bucher Law PLLC*, No. 86585-4, 2025 WL 1792620 (Wash. App. Ct. June 30, 2025). The appellate court found that "the conduct Valve complains of – the thousands of individual arbitration requests – is a direct result of its own agreement barring class actions and prohibiting collective or representative arbitration" and that Valve "is hoist[ed] by its own petard." *Id.* at *7 & n.6.

REPLY BRIEF IN SUPPORT OF
MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW

6

MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

1 penalties. Valve's refusal to comply with the arbitration order warrants sanctions for undermining
2 judicial authority. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828
3 (1994) (criminal contempt "vindicate[s] the authority of the court"); *see also Chambers v. NASCO,*
4 *Inc.*, 501 U.S. 32, 50 (1991) (federal court has inherent power to impose attorney's fees as a
5 sanction for bad faith conduct).

## CONCLUSION

For the foregoing reasons, the Motion for Sanctions should be granted.

Dated: July 2, 2025

**FRANK FREED SUBIT & THOMAS LLP**

By: */s/ Michael C. Subit*
Michael C. Subit, WSBA No. 29189
Hoge Building 1 Manhattan West
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1729
Tel.: (206) 682-6711
Email: msubit@frankfreed.com

**MASON LLP**

By: */s/ Gary E. Mason*
Gary E. Mason (*pro hac vice*)
Danielle L. Perry (*pro hac vice*)
Theodore B. Bell (*pro hac vice*)
Jacob D. Eisenberg (*pro hac vice*)
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Tel.: (202) 429-2290
Email: gmason@masonllp.com
Email: dperry@masonllp.com
Email: tbell@masonllp.com
Email: jeisenberg@masonllp.com

REPLY BRIEF IN SUPPORT OF
MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW

7

MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

I hereby certify that this motion contains 2,061 words, excluding the caption, signature blocks, and certificate of service, in compliance with Local Civil Rules.

DATED this 2nd day of July 2025.

By: */s/ Michael C. Subit*
Michael C. Subit

REPLY BRIEF IN SUPPORT OF
MOT. FOR SANCTIONS
CASE NO. 2:21-CV-00563-JNW

8

**MASON LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290