THE HON. JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE VALVE ANTITRUST LITIGATION

No. 2:21-cv-00563-JNW

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Pursuant to Local Civil Rule 7(n), Ryan Lally submits for the Court's consideration as supplemental authority the attached order and judgement from *Acharya et al v. Twitter Inc et al*, Case No. 2:2025-cv-00659-TSZ (W.D. Wash.), Dkt. No. 23 (the "Order"). The Order is relevant to Lally's Motion for Sanctions. *In re Valve* at Dkt. No. 467 (Noting date July 2, 2025).

In the Order, Judge Thomas S. Zilly grants the petitioners' motion to compel arbitration, orders Twitter to participate in the arbitrations filed against it and further orders the respondents to pay all arbitration fees consistent with the rules of Judicial Arbitration and Mediation Services ("JAMS") and the American Arbitration Association ("AAA"). As the Order does not describe the factual background or the Court's reasoning, also attached are the *Acharya* petitioners' Motion

**MASON LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

1  to Compel Arbitration, No. 2:2025-cv-00659-TSZ (W.D. Wash.), at Dkt. No. 12 (Exhibit A);

2  Respondents' Opposition to Motion to Compel Arbitration, *Id.* at Dkt. No. 20 (Ex. B); and

3  Petitioner's Reply in Support of their Motion to Compel Arbitration, *Id.* at Dkt. No. 22 (Ex. C).

4      DATED this 7th day of August, 2025.

5                                         Respectfully submitted,

6                                         By: /s/ Gary E. Mason
7                                         **MASON LLP**
                                          Gary E. Mason (*pro hac vice*)
8                                         Theodore B. Bell (*pro hac vice* )
9                                         Danielle L. Perry (*pro hac vice*)
                                          Jacob D. Eisenberg (*pro hac vice*)
10                                        5335 Wisconsin Avenue NW, Suite 640
11                                        Washington, DC 20015
                                          Telephone: (202) 429-2290
12                                        Email: gmason@masonllp.com
13                                        Email: tbell@masonllp.com
                                          Email: dperry@masonllp.com
14                                        Email: jeisenberg@masonllp.com

15

16                                        **FRANK FREED SUBIT &**
                                          **THOMAS LLP**
17                                        Michael C. Subit, WSBA No. 29189
                                          Hoge Building
18                                        705 Second Avenue, Suite 1200
                                          Seattle, Washington 98104-1729
19                                        Telephone: (206) 682-6711
                                          Fax: (206) 682-0401
20                                        Email: msubit@frankfreed.com

21                                        *Local Counsel for Plaintiff*

22

23

24

25

26

27

**<u>CERTIFICATE OF SERVICE</u>**

1

2          I hereby certify that, on August 7, 2025, a true and correct copy of the foregoing was

3   filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

4          DATED this 7th day of August, 2025.

5

6                                                          /s/ Gary E. Mason
                                                     Gary E. Mason (*pro hac vice*)
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**MASON LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

1

2

3

4          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
5                  AT SEATTLE

6   NIMIT ACHARYA, et al.,

7                  Plaintiff,
                                        C25-0659 TSZ
8          v.
                                        ORDER AND JUDGMENT
9   TWITTER, INC.; and X CORP.,

10                 Defendant.

11      THIS MATTER comes before the Court on petitioners' motion to compel

12  arbitration, docket no. 12.  Having reviewed all papers filed in support of and in

13  opposition to the motion, and having concluded that oral argument would not be

14  beneficial, the Court ORDERS and ADJUDGES as follows:

15      (1)      Petitioners' motion to compel arbitration, docket no. 12, is GRANTED.

16      (2)      Judgment is hereby ENTERED in favor of petitioners and against

17  respondents Twitter, Inc. ("Twitter") and X Corp. ("X").

18      (3)      Respondents Twitter and X are hereby ORDERED to participate in the

19  arbitrations that have been filed against them.  Respondents are further ORDERED to pay

20  all arbitration fees consistent with determinations made and applicable rules set forth by

21  Judicial Arbitration and Mediation Services ("JAMS") and the American Arbitration

22  Association ("AAA").

23

ORDER AND JUDGMENT - 1

1      (4)    All relief sought in the petition in this matter having been granted, the Clerk

2    is DIRECTED to CLOSE this case.  The Clerk is further DIRECTED to send a copy of

3    this Order and Judgment to all counsel of record.

4          IT IS SO ORDERED.

5          Dated this 1st day of August, 2025.

6

7                                              _____

8                                              Thomas S. Zilly
                                               United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER AND JUDGMENT - 2

Exhibit A

1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

11
12

| | |
|---|---|
| NIMIT ACHARYA *et al.*,<br><br>          Petitioners,<br><br>v.<br><br>TWITTER, INC. and X CORP.,<br><br>          Respondents | CASE NO.: 2:25-cv-00659<br><br>**PETITIONERS' MOTION TO COMPEL ARBITRATION**<br><br>ORAL ARGUMENT REQUESTED<br><br>NOTE ON MOTION CALENDAR:<br>June 10, 2025 |

13
14
15
16
17
18
19
20
21
22
23
24
25
26

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................. 3

III.   ARGUMENT ......................................................................................................... 7

    A.     The Parties Have Entered into a Valid Arbitration Agreement ............................ 10

    B.     The Arbitration Agreement Covers Petitioners' Claims........................................ 11

    C.     The Court Should Compel Twitter to Arbitrate and Follow the
           Rules of the Agreed-Upon Arbitration Providers, Which Require
           Twitter to Pay the Arbitration Fees........................................................................ 11

IV.    CONCLUSION..................................................................................................... 19

PET'RS' MOT. TO COMPEL ARBITRATION — i
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

# TABLE OF AUTHORITIES

## CASES

*Abernathy v. DoorDash, Inc.*,
 438 F. Supp. 3d 1062 (N.D. Cal. 2020) ............................................................ 13

*Adler v. Twitter, Inc.*,
 Case No. 3:23-cv-01788-JD (N.D. Cal) ........................................................ 4, 5

*Allemeier v. Zyppah, Inc.*,
 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018) ................................................ 14

*ASARCO LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied
 Indus. & Serv. Workers Int'l Union*,
 910 F.3d 485 (9th Cir. 2018). ......................................................................... 19

*Borodaenko v. Twitter, Inc.*,
 2023 WL 3294581 (N.D. Cal. May 5, 2023) ...................................................... 5

*Borodaenko v. Twitter, Inc.*,
 Case No. 3:22-cv-07226-AMO (N.D. Cal.) ....................................................... 4

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
 207 F.3d 1126 (9th Cir. 2000). .......................................................................... 7

*Cornet v. Twitter, Inc.*,
 2023 WL 187498 (N.D. Cal. Jan. 13, 2023) .................................................. 4, 5

*Cornet, et al v. Twitter, Inc.*,
 Case No. 3:22-cv-06857-JD (N.D. Cal. Nov. 21, 2022) ..................................... 4

*Frazier v. X Corp*,
 739 F. Supp. 3d 219 (S.D.N.Y. 2024) .................................................... passim

*Gadala v. Twitter, Inc.*,
 No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023) ....................................... 5, 8

*Hall Street Associates, L.L.C. v. Mattel, Inc.*,
 552 U.S. 576 (2008) .......................................................................................... 7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 586 U.S. 63 (2019) ..................................................................................... 7, 15

*Howard v. Ferrellgas Partners, L.P.*,
 748 F.3d 975 (10th Cir. 2014) ....................................................................... 2, 3

PET'RS' MOT. TO COMPEL ARBITRATION — ii
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ............................................................................... 7, 17

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
    363 F.3d 1010 (9th Cir. 2003) ................................................................ 13

*Line Drivers, Pickup and Delivery Local Union No. 81 v. Roadway Exp. Inc.*,
    152 F.3d 1098 (9th Cir. 1998) ................................................................ 18

*Ma v. Twitter, Inc.*,
    2025 WL 436636 (N.D. Cal. Feb. 7, 2025) ................................... passim

*Oxford Health Plans LLC v. Sutter*,
    569 U.S. 564 (2013)................................................................................. 7

*Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, Int'l Bhd. of
    Teamsters*,
    989 F.2d 1077 (9th Cir. 1993) .................................................................. 3

*Rodriguez v. Twitter, Inc.*,
    2023 WL 3168321 (N.D. Cal. May 1, 2023) ........................................ 4, 5

*Rosa v. X Corp.*,
    2024 WL 4903619 (D.N.J. Nov. 27, 2024) .............................................. 8

*Strifling v. Twitter, Inc.*,
    Case No. 4:22-cv-07739-JST (N.D. Cal.)................................................. 4

*United Paperworkers Int'l Union v. Misco, Inc.*,
    484 U.S. 29 (1987)................................................................................... 2

*Weinberg v. Twitter, Inc.*,
    4:23-cv-04016-DMR (N.D. Cal.)............................................................. 4

*X Corp v. McGrath et al.*,
    3:25-cv-00748-W-MMP (S.D.Cal. 2025) .............................................. 11

*X Corp. v. Adusei et al.*,
    4:25-cv-02926-JST (N.D.Cal. 2025) ..................................................... 10

*X Corp. v. Bahr et al.*,
    2:25-cv-02766-RGK-KES (C.D.Cal. 2025)........................................... 10

*Zeman v. Twitter, Inc.*,
    Case No. 3:23-cv-01786-SI (N.D. Cal.) .................................................. 4

## STATUTES

PET'RS' MOT. TO COMPEL ARBITRATION — iii
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

9 U.S.C. § 2 ........................................................................................................... 7

9 U.S.C. § 4 ..................................................................................................... 7, 13

PET'RS' MOT. TO COMPEL ARBITRATION — iv
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

## I.     INTRODUCTION

This case is brought on behalf of former Twitter Washington employees with whom Respondents Twitter, Inc. and X Corp. (collectively "Twitter") have refused to proceed with arbitration, despite having successfully blocked employees from pursuing their claims in court by compelling them to arbitrate their legal claims against Twitter.

After having succeeded on its motions to compel arbitration in order to block multiple class action cases from proceeding against it in court, Twitter found itself faced with more than 2,000 individual arbitration cases from its former employees. Facing that front of individual claims, for which it must pay the bulk of the arbitration fees, Twitter decided to change course and avoid these arbitrations, thus refusing to lie in the bed it has made. When ordered to pay arbitration fees by both agreed upon arbitration providers, the Judicial Arbitration and Mediation Services ("JAMS") and the American Arbitration Association ("AAA"), Twitter did an about-face and informed both JAMS and AAA that it would not proceed with these arbitrations (other than for employees who worked in California, Nevada, and Oregon).[1]

In short, despite compelling its former employees to arbitrate their claims against the company, Twitter has taken every opportunity to prevent many of them from actually pursuing their claims in arbitration. This Court should not countenance this behavior and should enter an immediate order compelling Twitter to arbitrate—and to pay the fees it has been ordered to pay by JAMS and AAA in order for those cases to proceed.

Indeed, in a substantively identical petition to compel arbitration brought on behalf of former Twitter employees in the Northern District of California, the court agreed that Twitter was responsible for paying the arbitration fees, as it has been required to do by the arbitration providers; the court further held that JAMS' determination that Twitter must pay the fees

---

[1]     In addition to these states, Twitter has proceeded with arbitration for a handful of cases in other states, for which it has paid the arbitration fees, including one in Washington.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

comported with Twitter's arbitration agreement. *See Ma v. Twitter, Inc.*, 2025 WL 436636, at *8 (N.D. Cal. Feb. 7, 2025). There, the court explained that the arbitration agreements expressly delegated the initial determination of fee allocations to the arbitration provider, and so the court could not second-guess the arbitration provider's decision. *Id.* at *7; *accord Frazier v. X Corp*, 739 F. Supp. 3d 219, 227–28 (S.D.N.Y. 2024) (holding, with respect to the same arbitration agreement at issue here, that determination of fee allocation was delegated to arbitration provider, that Twitter must abide by that determination, and that even absent delegation, the court would have reached the same conclusion as the arbitration provider)[2]; *see also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. . . . [T]hat a court is convinced [an arbitrator] committed serious error does not suffice to overturn his decision.").

Despite agreeing that arbitration was appropriate and that Twitter must pay the arbitration fees, the court in *Ma* ultimately determined, however, that it could not actually compel arbitration for employees whose cases arose outside of its district; the court thus held that employees outside the Northern District of California would need to obtain an order compelling arbitration from the district in which the arbitration would proceed (which, under the agreement, would be the location of where the petitioners worked for Twitter). 2025 WL 436636, at *10.

---

[2]     Twitter may argue that this Court should stay this case until Twitter's appeal of *Frazier* is decided by the Second Circuit. The Court should decline to do so. The FAA itself makes clear that such a stay would be inappropriate in these proceedings. *See, e.g.*, *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) (citation omitted) ("The FAA tells district courts to 'proceed summarily to the trial' of the relevant facts. 9 U.S.C. § 4. Once the facts are clear, courts must then apply state contract formation principles and decide whether or not the parties agreed to arbitrate. The object is always to decide quickly—summarily—the proper venue for the case, whether it be the courtroom or the conference room, so the parties can get on with the merits of their dispute.") (Gorsuch, J.).

PET'RS' MOT. TO COMPEL ARBITRATION — 2
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Petitioners here are therefore now filing this Motion to Compel Arbitration in Washington—where they worked for Twitter—as ordered by the court in *Ma*.[3]

Petitioners thus respectfully request that this Court follow suit and order that Twitter must arbitrate their claims – including following the rules of, and rulings by, the arbitration associations that Twitter chose to arbitrate before, namely JAMS and AAA, both of which ruled that Twitter must pay the full arbitration fees (other than filing fees, which Petitioners have already paid). And time is of the essence. Twitter is refusing to pay the arbitration fees for Petitioners' cases, preventing Petitioners from proceeding with their arbitrations. This delay frustrates the purpose underlying arbitration: "to achieve speedy and fair resolutions of disputes." *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, Int'l Bhd. of Teamsters*, 989 F.2d 1077, 1084 (9th Cir. 1993). Petitioners thus respectfully ask that the Court grant this motion promptly. *See Howard*, 748 F.3d at 977.

## II.    FACTUAL BACKGROUND

Since at least 2017, Twitter has included arbitration clauses in its standard employment agreements with employees throughout the United States, including the Petitioners in this action. *See* Declaration of Shannon Liss-Riordan (attached here as Exhibit A) at ¶¶ 2–4; Twitter's Mot. to Compel Arbitration and Supporting Declaration from Fidelma Callaghan in *Cornet, et al v.*

---

[3]    Petitioners' counsel have filed a number of similar cases to this one in other jurisdictions. The fact that so many cases must be filed around the country simply in order to ensure that Twitter complies with the "efficiency" it demanded in compelling arbitration in the first place for its employees claims against it belies its contention that it sought arbitration in order to have these disputes decided more efficiently. Such unnecessary multiplication of litigation undermines the purported goals of arbitration and has turned this litigation into a circus. Petitioners respectfully request that the Court grant this motion expeditiously so that the parties may proceed to the merits of their claims in arbitration forthwith.

Arbitration is indeed moving forward for those cases for which Twitter has agreed to pay the fees. Petitioners' counsel have completed more than 140 of these arbitration hearings to date.

PET'RS' MOT. TO COMPEL ARBITRATION — 3
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

*Twitter, Inc.*, Case No. 3:22-cv-06857-JD (N.D. Cal. Nov. 21, 2022), Dkt. 18 at 8-9 and Dkt. 18-1 at 2 (attached collectively here as Exhibit B).  The arbitration agreement requires the parties to arbitrate "any disputes arising out of or related to [an employee's] employment with Twitter, Inc. . . . or termination of employment, and survives after the employment relationship terminates." (Arbitration Agreement ¶ 1, Dkt. 1-1.) Twitter's standard arbitration agreement for at least the past several years directs that any such arbitration be brought with the arbitration provider JAMS, pursuant to the then-current JAMS Employment Arbitration Rules and Procedures. (JAMS Arbitration Agreement ¶ 5, Dkt. 1-1.) Earlier versions of the agreement did not specify an arbitration provider. (*See, e.g.*, Arbitration Agreement, Dkt. 1-2).  For those employees, Twitter and Petitioners' counsel agreed to have the arbitrations administered by another arbitration provider, AAA. *See* Ex. A (Liss-Riordan Decl.) ¶ 17.

    Since Elon Musk's acquisition of Twitter in October 2022, the company has been accused of a variety of unlawful acts, including failing to pay laid off employees promised severance payments, discriminating against employees on the basis of sex, race, age, and disability, failing to pay promised bonuses, violating the WARN Act and FMLA, and other violations.  A number of employees filed class action cases in court challenging these violations. *See e.g.*, *Cornet v. Twitter, Inc.*, Case No. 3:22-cv-06857-JD (N.D. Cal.), *transferred to D. Del.*, Case No. 1:23-cv-441-CFC (D. Del.); *Borodaenko v. Twitter, Inc.*, Case No. 3:22-cv-07226-AMO (N.D. Cal.); *Strifling v. Twitter, Inc.*, Case No. 4:22-cv-07739-JST (N.D. Cal.); *Adler v. Twitter, Inc.*, Case No. 3:23-cv-01788-JD (N.D. Cal); *Zeman v. Twitter, Inc.*, Case No. 3:23-cv-01786-SI; *Weinberg v. Twitter, Inc.*, 4:23-cv-04016-DMR (N.D. Cal.). However, any time an employee who was bound by an arbitration agreement brought a claim in court, Twitter moved to compel that employee's claim to arbitration, and Twitter was successful in those motions.  *See Cornet v. Twitter, Inc.*, 2023 WL 187498 (N.D. Cal. Jan. 13, 2023); *Rodriguez v. Twitter, Inc.*, 2023 WL 3168321 (N.D. Cal. May 1, 2023); *Gadala v. Twitter, Inc.*, No. 3:23-cv-01595-JSC

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

(N.D. Cal. May 15, 2023); *Borodaenko v. Twitter, Inc.*, 2023 WL 3294581 (N.D. Cal. May 5, 2023); *see also* Ex. A (Liss-Riordan Decl.) ¶ 3.

After Twitter succeeded in moving to compel employees' claims to arbitration in these various court cases,[4] more than 2,000 of Twitter's former employees filed arbitration claims against it. *Id.* ¶¶ 2–3.

When those arbitration demands were filed, both JAMS and AAA informed Twitter that it would be responsible for paying the full arbitration fees (other than initial filing fees for which the claimants were responsible).[5] With a few exceptions, Twitter refused to pay the full arbitration fees for all employees who worked outside California, Nevada, and Oregon. Twitter did not initially object to the application of the JAMS Minimum Standards. Rather, it filed responses to employees' arbitration demands and began paying its share of the fees. Ex. A (Liss-Riordan Decl.) ¶¶ 6–8. However, on June 2, 2023, Twitter changed course and objected to the JAMS Minimum Standards. *Id.* ¶ 13; Dkt. 1–4 (Letter from Eisner dated June 21, 2023). Twitter sent a letter to JAMS' Senior Vice President, General Counsel, Sheri Eisner, requesting that JAMS' fees be shared equally by the parties for arbitrations outside California, Nevada, or Oregon. *Id.* Ms. Eisner responded on June 21, 2023, denying Twitter's request and confirming that the JAMS Minimum Standards would apply to all of these cases and that Twitter was

---

[4]     *See, e.g.*, *Cornet v. Twitter, Inc.*, 2023 WL 187498 (N.D. Cal. Jan. 13, 2023); *Borodaenko v. Twitter, Inc.*, 2023 WL 3294581 (N.D. Cal. May 5, 2023); *Rodriguez v. Twitter, Inc.*, 2023 WL 3168321 (N.D. Cal. May 1, 2023); *see also Gadala v. Twitter, Inc.*, No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023); *Adler v. Twitter, Inc.*, No. 3:23-CV-01788 (N.D. Cal. May 12, 2023) at Dkt. 14 (Twitter's motion to compel arbitration, which was withdrawn because plaintiff opted out of arbitration).

[5]     At the outset of each JAMS arbitration, JAMS notified the parties that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Minimum Standards") would apply, which requires the employer to pay arbitration fees, other than initial filing fees. *See* Dkt. 1-4 (Letter from Eisner dated June 21, 2023). Likewise, AAA also determined under its rules that Twitter would be required to pay all arbitration fees (other than a minimal initial fee which the employees would pay). *See* Dkt. 1-8 (Email from Tacy Zysk dated July 24, 2023).

PET'RS' MOT. TO COMPEL ARBITRATION — 5
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

responsible for the full arbitration fees. *Id.* On June 28, 2023, Twitter informed JAMS that it would nevertheless refuse to pay the full fees in those cases. Dkt. 1–5 (Letter from Sari Alamuddin dated June 28, 2023). Twitter likewise informed AAA, Petitioners, and others similarly situated individuals that it would not proceed with arbitrations filed with the AAA outside California, Nevada, and Oregon, because it refuses to pay the full arbitration fees for these cases. *See* Dkt. 1-8 (Zykst July 24 email); Email from Owen Allen dated August 1, 2023 (attached here as Exhibit C); Email from Kaiser Chowdhry dated August 28, 2023 (attached here as Exhibit D). On August 1, 2023, Twitter sent an email to AAA identifying at least 130 individuals who had worked outside these states. Ex. C (Allen Email).

Thus, those arbitration cases are not proceeding. JAMS stayed the pending arbitrations outside of California, Nevada, and Oregon (hundreds of arbitrations), and consequently, dozens of initial case management conferences that were previously scheduled were cancelled. *See* Ex. A (Liss-Riordan Decl.) ¶¶ 11–16; Dkt. 1–3 (JAMS Minimum Standards) at 5 ("[I]f compliance with the Minimum Standards is in question, JAMS will, if given notice of the dispute, defer administering the arbitration for a reasonable period of time to allow the contesting party to seek a judicial ruling on the issue. JAMS will comply with that judicial determination.").

Although AAA agreed to appoint arbitrators in a small group of initial cases outside California, it stated that these arbitrations will not move forward unless Twitter pays the required arbitrator retainers, which Twitter has refused to do. *See* Dkt. 1-8 (Zykst July 24 email); Ex. C (Allen email); Ex. D (Chowdhry email); Email from Tracy Zysk dated Aug. 8, 2023 (attached here as Exhibit E). As a result, more than 100 arbitrations filed at AAA are not moving forward. Ex. A (Liss-Riordan Decl.) ¶¶ 21–23.

PET'RS' MOT. TO COMPEL ARBITRATION — 6
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

## III.  ARGUMENT

Under the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).

Where the parties have formed a valid agreement to arbitrate, and the agreement covers the dispute, the Act requires the court to compel arbitration. 9 U.S.C. § 4; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. See 9 U.S.C. § 2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.").

Where an arbitration agreement delegates an issue, "the sole question for [a court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). Otherwise, "[i]f parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* at 568–69 (quoting *Hall Street Associates, L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 588 (2008)).

As described in the Petition and herein, Twitter has refused to proceed with arbitration by refusing to pay the arbitration fees as ordered by the arbitration providers that it chose and agreed to, who have interpreted the arbitration agreements and determined that Twitter must pay these fees. Both arbitration providers, JAMS and AAA, will not proceed with the arbitrations for which Twitter has refused to pay its arbitration fees. As other courts (including some in this

PET'RS' MOT. TO COMPEL ARBITRATION — 7
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Circuit) have already explained, Twitter is obligated to participate in and cooperate with these arbitrations by paying these fees as ordered and ceasing its conduct preventing these arbitrations from proceeding. *See Frazier v. X Corp*, 739 F. Supp. 3d 219, 221 (S.D.N.Y. 2024) (granting petitioners' motion to compel arbitration and ordering "Twitter to pay all ongoing arbitration fees for petitioners' claims unless and until the individual arbitrator in each of petitioners' respective arbitrations rules to the contrary"); *Ma v. Twitter, Inc.*, 2025 WL 436636, at *7–*9 (N.D. Cal. Feb. 7, 2025) ("For the above reasons, the Court concludes that the DRA does not require any specific apportionment of fees if applicable law does not require the company to bear all costs. The Court must therefore reach the second question of who should determine the initial apportionment of fees before an arbitrator has the opportunity to decide the final apportionment….The Court concludes that the DRA [Dispute Resolution Agreement, or the arbitration agreement at issue here] delegated this question to JAMS, on whose behalf its general counsel was authorized to act…. X Corp. is therefore obligated to pay the initial arbitration fees, as ordered by JAMS, so that the arbitrations as to [Petitioners] can move forward."); *see also Gadala v. Twitter, Inc.*, No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023) (attached here as Exhibit F) ("Plaintiff shall only be required to pay the JAMS arbitration filing fee up to the amount she would pay to initiate an action in this Court; [ ] Defendants shall be required to pay all other costs of arbitration[.]"). *But see Rosa v. X Corp.*, 2024 WL 4903619, at *10–11 (D.N.J. Nov. 27, 2024), *designated as "Not For Publication"* (granting Twitter's motion to compel arbitration against litigant who brought civil suit and apportioning arbitration fees equally, after finding litigant "appear[ed] to have waived his opportunity to rebut the arguments put forth by Twitter on this topic because he has either not provided case law or properly addressed Twitter's claims").

The court in *Ma* explained why it agreed with the fulsome and caselaw-supported reasoning in *Frazier* and rejected the incomplete and faulty reasoning in *Rosa*:

In *Frazier v. X Corp.*, the court "grant[ed] the motion to compel arbitration and order[ed] Twitter to pay all ongoing arbitration fees for petitioners' claims unless and until the individual arbitrator in each of petitioners' respective arbitrations rules to the contrary." 739 F. Supp. 3d 219, 231 (S.D.N.Y. 2024). The parties agreed that "the ultimate decision of who is required to pay ongoing arbitration fees must be resolved by an individual arbitrator," *id.* at 224, and the court concluded that "interim fee determinations—or at least those relating to the Minimum Standards—will be made by JAMS in the first instance, then later reviewed by an individual arbitrator or court," *id.* at 226. The court explained that "[w]hether the Minimum Standards apply is ... a procedural issue generally reserved for the arbitrator," and that "[t]he JAMS General Counsel is, in effect, standing in the shoes of the individual arbitrator until one has ruled to the contrary." *Id.* at 227–28. However, the court went on to explain that if it were to review the decision to apply the Minimum Standards de novo, it would reach the same result as JAMS and conclude that they apply to the agreement at issue because, even though employees could opt out of arbitration after signing the DRA, they were nonetheless required to sign the DRA as a condition of employment. *Id.* at 228–30. Finally, the court concluded that requiring X Corp. to pay initial arbitration fees did not conflict with the DRA's provision that fees would be "apportioned" because requiring "that fees must be 'apportioned' does not dictate *how* the fees should be apportioned." *Id.* at 230 (emphasis in original).

Several months later, the court in *Rosa v. X Corp.* reached a contrary result, concluding that the Minimum Standards did not apply to the agreement because employees had the ability to opt out. *Rosa v. X Corp.* (designated as "not for publication"). The court concluded that Section 6 of the agreement should be "given the meaning asserted by Twitter" so as not to render the apportionment language superfluous. *Id.* at *11. It then concluded that X Corp. did not waive its right to compel arbitration by refusing to pay the initial JAMS fees, and it ordered the parties "to arbitrate pursuant to the terms of the DRA. Rosa and Twitter shall each pay half of the requisite JAMS fee in order to properly initiate arbitration proceedings as Section 6 of the DRA is given effect regarding apportionment of the initial fee-sharing since JAMS Minimum Standards [are] inapplicable." *Id.* at *12–13. *Rosa* did not cite *Frazier*, nor did it address questions regarding delegation or the meaning of "apportion."

Having reviewed both *Frazier* and *Rosa* and considered all of the parties' arguments, this Court concludes, for the reasons discussed below, that JAMS was authorized to make the initial determination regarding allocation of fees, and that its determination did not conflict with terms of the DRA. In states where applicable law does not require the employer to pay all arbitration fees, the DRA delegates apportionment of fees to the arbitrator. ECF No. 6-1 at 4 (Section 6). The arbitrator has not been able to make that determination in Petitioners' cases because X Corp.'s failure to pay fees as required by JAMS has prevented any of the arbitration proceedings from moving forward.... Accordingly, the Court defers to JAMS's determination, made by its general counsel, regarding the

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

apportionment of the initial arbitration fees and finds no basis to evaluate JAMS's interpretation of its own rules. JAMS has determined that the Minimum Standards apply, and that determination complies with the DRA.

*Ma*, 2025 WL 436636, at *8.

Without this Court's immediate action, Petitioners — for whom Twitter is refusing to engage in arbitration — are left at a standstill, prevented by their arbitration agreements from vindicating their legal rights in court, and prevented by Twitter's refusal to abide by the arbitration providers' orders from proceeding in the agreed-upon arbitral forums. Section 4 of the FAA was designed precisely to give Petitioners immediate recourse in such a situation by way of a Petition and attendant Motion to Compel Arbitration to this Court. The Court should thus promptly order Twitter to arbitrate in accordance with the terms of its agreement as interpreted by those delegated the power to make such interpretations.

## A.    The Parties Have Entered into a Valid Arbitration Agreement

There is no dispute that the parties entered into valid arbitration agreements. *See* Dkt. 1-1, 1-2 (Arbitration Agreements). Indeed, Twitter itself has repeatedly claimed that these agreements are valid and must be enforced. Ex. B at 2, 14 (Twitter's Motion to Compel Arbitration in *Cornet*) ("The arbitration agreement…is valid, binding, and legally enforceable under the Federal Arbitration Act ('FAA')…. In deciding a motion to compel arbitration under the FAA, the Court's role is limited to answering two questions: (1) does a valid agreement to arbitrate exist; and, if so, (2) does the arbitration agreement encompass the dispute or claims at issue?....Here, because the answer to both inquiries is unequivocally 'yes,' the Court should compel each of the Plaintiffs individually to arbitrate their claims."); *see also X Corp. v. Adusei et al.*, 4:25-cv-02926-JST (N.D.Cal. 2025), Petition to Compel Arbitration (attached here as Exhibit G) ¶ 56 ("[T]he DRA is a valid and enforceable agreement to arbitrate and [ ] it encompasses [Respondents'] individual claims."); *X Corp. v. Bahr et al.*, 2:25-cv-02766-RGK-KES (C.D.Cal. 2025), Petition to Compel Arbitration ¶ 30 (same); *X Corp v. McGrath et al.*,

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

3:25-cv-00748-W-MMP (S.D.Cal. 2025), Petition to Compel Arbitration ¶ 25 (same).  (Yes, even though its employees have attempted to bring their claims in arbitration, but have not been able to move forward with their cases because Twitter has refused to pay the fees it has been ordered to pay, Twitter is now seeking *to compel* some of these employees to arbitration, when Twitter is the party preventing the arbitrations from moving forward.  Petitioners' counsel intends to seek sanctions against Twitter for this conduct.)

Each Petitioner signed a copy of Twitter's Dispute Resolution Agreement, which includes a broad arbitration provision. Ex. A (Liss-Riordan Decl.) ¶ 4; Dkts. 1-2, 1-2.  As such, the Court should enforce the parties' agreement to arbitrate.

## B.    The Arbitration Agreement Covers Petitioners' Claims

The arbitration agreement contains a broad scope of coverage. Specifically, it applies "to any disputes arising out of or related to [an employee's] employment with Twitter, Inc. . . . or termination of employment, and survives after the employment relationship terminates." Dkts. 1-1, 1-2 (Arbitration Agreements). Likewise, Petitioners' claims, as well as those of Twitter's other former employees, relate to the termination of their employment. Likewise, the agreement specifically delegates "any disputes" regarding fees to the arbitrator.[6] Dkts. 1-1, 1-2. Thus, there is no question that the arbitration agreement applies to their claims.

## C.    The Court Should Compel Twitter to Arbitrate and Follow the Rules of the Agreed-Upon Arbitration Providers, Which Require Twitter to Pay the Arbitration Fees

After Petitioners, and more than 2,000 other former Twitter employees, filed their claims in arbitration, JAMS (acting through its General Counsel) determined that its Employment Minimum Standards applied to the cases. As a result, JAMS ordered that Twitter pay all arbitration fees other than the initial minimal filing fee.

---

[6]    Before an arbitrator is appointed, the agreement delegates any such disputes to the arbitration provider. *Frazier*, 739 F. Supp. 3d at 226; *Ma*, 2025 WL 436636, at *7–9.

PET'RS' MOT. TO COMPEL ARBITRATION — 11
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Twitter did not originally object to JAMS' application of the Employment Minimum Standards and, in fact, filed identical responses to each of the arbitration demands (including forty-five affirmative defenses, none of which question its obligation to pay the arbitration fees). Ex. A (Liss-Riordan Decl.) ¶¶ 7–8. Moreover, arbitrators were chosen in dozens of cases, initial status hearings began being scheduled, and final arbitration hearing dates in some cases were even set. It was only after individual arbitrators began scheduling initial status conferences, which required Twitter to pay arbitrator deposits, that Twitter objected to JAMS' application of the Employment Minimum Standards. Ex. A (Liss-Riordan Decl.) ¶¶ 6–8, 9–11. Twitter appealed the application of the Employment Minimum Standards directly to JAMS, and when JAMS denied Twitter's request to apportion the fees equally between the parties, Twitter refused to pay the fees it had been ordered to pay and stated that it would not proceed with arbitrations for employees outside California, Nevada, and Oregon. Dkt. 1-5 (Alamuddin Letter).

Likewise, after Twitter agreed to arbitrate with AAA for those employees whose arbitration agreements did not specify JAMS, AAA likewise determined that these arbitrations would proceed on the "Employment/Workplace Multiple Case Filing Administrative Fee Schedule" ("AAA Fee Schedule"). Dkt. 1-8 (July 24 Zysk email); *see also* Dkt. 1-9 (AAA Fee Schedule). Consequently, AAA issued arbitrator strike lists and ordered Twitter to pay all arbitration fees (other than initial filing fees that must be paid by claimants). Ex. A (Liss-Riordan Decl.) ¶¶ 17–23. At that point, as AAA was preparing to appoint arbitrators to individual cases, Twitter objected to the AAA Fee Schedule and refused to pay the required fees for cases outside California, Nevada, or Oregon. *Id.*; Ex. D (Chowdhry Email).[7]

---

[7]     Twitter also objected to AAA appointing a single "process arbitrator" to rule on its objection to the AAA Fee Schedule, insisting that only the individual arbitrators for each case have the authority to rule on its objection. Ex. D (Chowdhry Email). However, Twitter did not allow any arbitrators to proceed with the cases, thus allowing them to rule on its objection, because it refused to pay fees for the arbitrators outside of California, Nevada, and Oregon. *Id.*; Ex. E (Zysk Aug. 8 Email).

PET'RS' MOT. TO COMPEL ARBITRATION — 12
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

In *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020), the court faced a similar situation. In that case, the respondent employer required its workers to sign arbitration agreements, but then refused to pay nearly $12 million in administrative fees it was billed by AAA when thousands of workers filed individual arbitrations. As a result of the respondent's refusal to pay these fees, AAA would not move forward with administering the arbitrations, thereby preventing the workers from pursuing their claims. *Id.* at 1064. In granting the workers' motion to compel arbitration, Judge Alsup declared:

> For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights. The employer-side bar has succeeded in the United States Supreme Court to sustain such provisions. The irony, in this case, is that the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.

*Id.* at 1067–68.

Other courts, including in this District, have likewise found that an employer's refusal to pay arbitration fees required by the arbitration administrator constitutes a breach of the arbitration agreement. As Judge Rakoff acknowledged in *Frazier*, 739 F. Supp. 3d at 223–24, "A party who refuses to pay required arbitration fees, despite having the ability to do so, has refused to arbitrate within the meaning of Section 4. . . . In such circumstances, a court may order the recalcitrant party to arbitrate 'in accordance with the terms of the [arbitration] agreement' by requiring the party to pay the required arbitration fees." (quoting 9 U.S.C. § 4). *See also Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012–13 (9th Cir. 2003) (determining arbitrator exercised discretion by requiring one party pay all expenses because

PET'RS' MOT. TO COMPEL ARBITRATION — 13
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

governing provisions of AAA "give arbitrators the authority to apportion fees and expenses as appropriate"); *Allemeier v. Zyppah, Inc.*, 2018 WL 6038340, at *4 (C.D. Cal. Sept. 21, 2018) (finding that the defendant breached the arbitration agreement by failing to pay fees as determined by the AAA, and ordering the defendant to "pay any fees that the AAA allocate[d] to it and to comply with any other requirements that the AAA imposes").

Here, Twitter's refusal to pay the arbitration fees, as ordered by JAMS and AAA, is likewise a breach of the parties' arbitration agreement, which constitutes a failure or refusal to arbitrate by Twitter under Section 4 of the FAA. Twitter's JAMS arbitration agreement explicitly states that the arbitration shall be administered by JAMS pursuant to JAMS Employment Arbitration Rules and Procedures (JAMS Arbitration Agreement ¶ 5, Dkt. 1-1), and those rules provide that "the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee," (JAMS Rule 31, *available at* https://www.jamsadr.com/rules-employment-arbitration/english#Rule-1). Petitioners have complied with their obligations under the arbitration agreement and JAMS Rules. Similarly, Twitter agreed to proceed with arbitrations for other employees using the AAA (by agreement with Twitter), and the AAA rules similarly require the employer to pay all arbitration fees (other than the initial minimal filing fee). Yet, Petitioners and many of the thousands of other former Twitter employees who have filed claims with JAMS or AAA cannot move forward with their arbitrations until Twitter complies with these directives.

Twitter may argue that employees are not prohibited from pursuing their claims, because they could voluntarily pay the arbitration fees that they are not required to pay.  However, this option does not create an obligation for the claimants to do so, nor does it change the fact that Twitter owes the fees. *See Allemeier*, 2018 WL 6038340, at *3 ("[T]he fact that the AAA arbitration rules allow the arbitrator to ask [Petitioner] whether [Petitioner] would like to pay in order to prevent termination does not create an obligation for [Petitioner] to do so, nor does it change the fact that [Respondent] owed the unpaid fees."). In every case, the parties *could* agree to change the terms of their arbitration agreement when one party refuses to arbitrate according

PET'RS' MOT. TO COMPEL ARBITRATION — 14
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

to its terms. But this, of course, does not mean that a party's refusal to arbitrate under the agreement's *current* terms constitutes anything other than refusing to arbitrate under Section 4 of the FAA. Such an interpretation would render Section 4 entirely inoperable and parties' agreements meaningless.

Moreover, it was proper for JAMS and AAA to make this threshold determination about the apportionment of fees—which this Court is not empowered to second guess. The Supreme Court has explained:

> This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by "clear and unmistakable" evidence. To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. See 9 U.S.C. § 2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citations omitted). And here, the parties clearly and unmistakably delegated the questions at bar:

> Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to *interpretation or application of this Agreement*….[T]his Agreement also applies, without limitation, to disputes regarding the employment relationship, [and] *terms and conditions of employment*….Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all covered disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.

Dkt. 1-1 § 1 (emphasis added); *accord* Dkt. 1-2 § 1. The agreement further provides that any disputes related to the apportionment of arbitration fees are delegated to arbitration. Dkt. 1-1 § 6; Dkt. 1-2 § 6.

For most employees, the applicable arbitration agreement explicitly incorporated JAMS' Rules. *See* Dkt. 1-1. For those employees whose agreement did not include a specific arbitration provider, *see* Dkt. 1-2, the parties agreed to submit their disputes to AAA under its Employment Arbitration Rules, Ex. A (Liss-Riordan Decl.) at ¶ 17. Thus, by incorporating JAMS' and AAA's

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

rules into their agreements, Twitter (and the employees) clearly and unmistakably intended for JAMS and AAA to resolve any threshold issues, including questions about the proper allocation of arbitration fees. And, in line with this delegation of authority to decide such matters, both arbitration providers reviewed the applicable agreements, considered the parties' arguments, and concluded that Twitter was responsible for paying arbitration fees other than the initial filing fees borne by Petitioners.

JAMS' General Counsel, who also chairs JAMS' "National Arbitration Committee", made the determination that JAMS Minimum Standards applied. *See* Dkt. 1–4 (Letter from Eisner dated June 21, 2023). "The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ('NAC') or the office of JAMS General Counsel or their designees." JAMS, *JAMS Employment Arbitration Rules & Procedures* at R.1(c) (2021), https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_employment_arbitration_rules-2021.pdf. As courts have explained, the initial fee determination was delegated to JAMS' General Counsel by the parties' arbitration agreement. In *Frazier*, Judge Rakoff explained:

> In making this determination, JAMS' General Counsel was authorized to act on behalf of JAMS as an organization and carry out its duty under the JAMS Rules. *See* JAMS Rule 1(c)….As a threshold matter, there is a strong argument that the Court should defer to the JAMS General Counsel's determination rejecting these arguments. Insofar as the parties agreed to have JAMS resolve interim fee disputes, that delegation should be enforced in a similar manner as any other agreement to arbitrate….Procedural questions relating to the rules of arbitration are generally matters for the arbitrator, and not for the court, to resolve….[T]he Court sees no reason why such deference should not apply with equal force here. The JAMS General Counsel is, in effect, standing in the shoes of the individual arbitrator until one has ruled to the contrary, and so in that sense her decision is no different than that of an individual arbitrator. Further, the rationale behind this rule is that arbitrators are "comparatively more expert about the meaning of their own rule[s]," and this logic applies with equal (if not greater) force to decisions by the JAMS General Counsel.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

*Frazier v. X Corp*, 739 F. Supp. 3d 219, 227–28 (S.D.N.Y. 2024) (quoting *Howsam*, 537 U.S. at

85) (second alteration in original). Likewise, in *Ma*, Judge Tigar explained:

> The Court concludes that the DRA delegated this question to JAMS, on whose
> behalf its general counsel was authorized to act. Section 5 of the DRA specifies
> that arbitrations must be conducted under JAMS Rules. Those rules authorize
> JAMS to act before an arbitrator has been appointed, including to "issue[ ] a
> Commencement Letter" that confirms, among other things, "that JAMS has
> received all payments required under the applicable fee schedule," Rules 5(a), (b);
> to "convene ... administrative conferences to discuss any procedural matter
> relating to the administration of the Arbitration," Rule 6(a); to "determine the
> location of the Hearing," Rule 6(b); to "grant reasonable extensions of time to file
> a response or counterclaim," Rule 9(c); and to resolve "[d]isputes concerning the
> appointment of the Arbitrator," Rule 11(c). Rule 1(c) provides that "the office of
> JAMS General Counsel" may carry out "[t]he authority and duties of JAMS as
> prescribed in the Agreement of the Parties and in these Rules." Indeed, X Corp.
> does not object to—and, in fact, relies on—JAMS's general counsel's
> determination that a signed arbitration agreement is required to initiate an
> arbitration and that JAMS would therefore withdraw its invoices for filing fees in
> cases where there was neither proof of a signed agreement or court order naming
> JAMS as the arbitration provider. X Corp. thus concedes that JAMS's general
> counsel has at least some authority over initial fees. Additionally, under JAMS
> Rule 2(a), parties may "agree on any procedures not specified herein or in lieu of
> these Rules that are consistent with ... JAMS policies (including, without
> limitation, the JAMS Policy on Employment Arbitration Minimum Standards of
> Procedural Fairness ...)." That is, parties may not agree to procedures that are
> inconsistent with JAMS policies, including the Minimum Standards, which
> provide: "If JAMS becomes aware that an arbitration clause or procedure does not
> comply with the Minimum Standards, it will notify the employer of the Minimum
> Standards and inform the employer that the arbitration demand will not be
> accepted unless there is full compliance with those standards." As the *Frazier*
> court concluded, this provision "delegate[s] to JAMS the authority to make an
> initial assessment of whether the Minimum Standards are being complied with"
> and "grants JAMS the authority to do precisely what happened here: make an
> initial determination about whether the Minimum Standards apply." 739 F. Supp.
> 3d at 226….
>
> Accordingly, the Court defers to JAMS's determination, made by its general
> counsel, regarding the apportionment of the initial arbitration fees and finds no
> basis to evaluate JAMS's interpretation of its own rules. JAMS has determined
> that the Minimum Standards apply, and that determination complies with the
> DRA. Under Section 6 of the DRA, an individual arbitrator, once a case proceeds
> that far, may re-evaluate apportionment of fees—which JAMS itself
> acknowledges….

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

X Corp. is therefore obligated to pay the initial arbitration fees, as ordered by JAMS, so that the arbitrations as to [Petitioners] can move forward.

*Ma*, 2025 WL 436636, at *7–9 (citations omitted).

This Court should likewise honor the parties' delegation of fee apportionment and compel Twitter to arbitrate in accordance with JAMS' initial fee determinations.

AAA also determined that Twitter was required to pay for these arbitrations but noted that Twitter could bring the issue to the merits arbitrators' attentions after first fronting the costs of such arbitrators.[8] "When the arbitration is filed, the AAA makes an initial administrative determination [on which fee schedule to apply]. . . . If a party disagrees with the AAA's initial determination, the parties may bring the issue to the attention of the arbitrator for a final determination." *AAA Employment Arbitration Rules and Mediation Procedures* 7–8 (2016), https://www.adr.org/sites/default/files/Employment%20Arbitration%20Rules%20and%20Mediation%20Procedures%20-%20January%201%201%202016.pdf. Thus, for Petitioners who agreed with Twitter to pursue their claims in accordance with the AAA's Rules, the Court should likewise honor the delegation of the initial fee determination to AAA and compel Twitter to arbitrate in accordance with AAA's fee determination.

Whether the Court agrees with these determinations or not, JAMS' and AAA's conclusions are based upon plausible interpretations of the parties' agreements and their own arbitration rules, and therefore their rulings are entitled to stringent deference. *See Line Drivers, Pickup and Delivery Local Union No. 81 v. Roadway Exp. Inc.*, 152 F.3d 1098, 1099 (9th Cir. 1998) (alterations omitted) ("A reviewing court is bound—under all except the most limited circumstances—to defer to the decision of the arbitrator, even if that decision finds the facts and states the law erroneously."); *ASARCO LLC v. United Steel, Paper & Forestry, Rubber, Mfg.,*

---

[8] First, Twitter initially refused to do this outright, but then later suggested it may front the fees, so long as the employees agreed to waive any rights they may have to challenge any determinations against them, which the employees did not agree to do. Ex. A (Liss-Riordan Decl.) ¶ 22.

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

*Energy Allied Indus. & Serv. Workers Int'l Union*, 910 F.3d 485, 489 (9th Cir. 2018) (noting courts' review of arbitration awards are "extremely deferential").

Twitter, thus, should be compelled to arbitrate according to its agreement, which includes paying the requisite fees as ordered by JAMS and AAA, so that these arbitrations can proceed.

## IV. CONCLUSION

For the foregoing reasons, Petitioners respectfully ask this Court to grant their Motion to Compel Arbitration.

Respectfully submitted,

PETITIONERS NIMIT ACHARYA *et al.*,

By their attorneys,

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan (*pro hac vice*)
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com

Michael C. Subit, WSBA No. 29189
**FRANK FREED SUBIT & THOMAS LLP**
Suite 1200, Hoge Building
705 Second Avenue
Seattle, Washington 98104-1729
Telephone (206) 682-6711
Fax: (206) 682-0401
msubit@frankfreed.com

Dated:       May 12, 2025

PET'RS' MOT. TO COMPEL ARBITRATION — 19
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing complies with all formatting requirements of this Court and contains 6,932 words, including footnotes and headings but excluding the cover page, this certificate, the tables, and the signature blocks. I relied on the word count of the Microsoft Word computer program used to prepare this brief.

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan

PET'RS' MOT. TO COMPEL ARBITRATION — 20
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

1

2

## <u>CERTIFICATE OF SERVICE</u>

3      The undersigned, an attorney, certifies that on May 12, 2025, she filed and served the

4 foregoing document via the Court's CM/ECF system, which will send notice of the filing to all

5 counsel of record. Parties may access the filing through the Court's CM/ECF system.

6

7                                        */s/ Shannon Liss-Riordan*
       Shannon Liss-Riordan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PET'RS' MOT. TO COMPEL ARBITRATION — 21
CASE NO. 2:25-cv-00659

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Exhibit B

THE HONORABLE THOMAS S. ZILLY

1

2

3

4

5

6

7      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
8                 AT SEATTLE

9   NIMIT ACHARYA, *et al*.,                    Case No. 2:25-cv-00659-TSZ

10                  Petitioners,                **RESPONDENTS' OPPOSITION TO**
                                                **MOTION TO COMPEL ARBITRATION**
11
          v.                                    NOTE ON MOTION CALENDAR: July 7,
12                                              2025
    TWITTER, INC. and X CORP.,
13
                    Respondents.
14

15

16

17

18

19

20

21

22

23

24

25

26

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    A.    X Corp.'s Dispute Resolution Agreement ............................................................. 2

    B.    Petitioners seek arbitration without complying with the terms of the DRA .......... 3

ARGUMENT .......................................................................................................................... 5

I.    The motion should be denied because Petitioners offer no evidence that they have binding arbitration agreements with X Corp. .................................................................... 5

II.    The motion should be denied because the DRA does not require X Corp. to pay the fees Petitioners seek. ................................................................................................... 6

    A.    As an initial matter, the Court should stay resolution of this matter until the Ninth Circuit resolves the currently pending *Ma* appeal. ................................. 6

    B.    This Court should not order X Corp. to pay the arbitration fees Petitioners seek. .................................................................................................................... 8

            1.    The DRA requires Petitioners to pay their proportionate share of the arbitration fees unless and until their Arbitrator orders otherwise. ................................................................................................. 9

            2.    This Court should not give judicial force to JAMS's or AAA's attempt to excuse Petitioners from paying their share of the arbitration fees. ..................................................................................... 14

CONCLUSION ..................................................................................................................... 22

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - ii
(Case No. 2:25-cv-00659-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Abernathy v. DoorDash, Inc.*,
5
   438 F. Supp. 3d 1062 (N.D. Cal. 2020) ........................................................................6, 13, 14

6

*Adler v. Fred Lind Manor*,
   153 Wash. 2d 331, 103 P.3d 773 (2004).............................................................................10, 13
7

8

*Aland v. U.S. Dep't of the Interior*,
   No. 22-01321, 2022 WL 1539522 (N.D. Cal. May 16, 2022).................................................7

9

*Ali v. Trump*,
10
   241 F. Supp. 3d 1147 (W.D. Wash. 2017)...............................................................................7

11

*Allemeier v. Zyppah, Inc.*
   2018 WL 6038340 (C.D. Cal. Sept. 21, 2018) .........................................................................14
12

13

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013)....................................................................................................1, 9, 10, 13

14

*ASARCO LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied
Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC*,
15
   910 F.3d 485 (9th Cir. 2018) ...................................................................................................18

16

*Bahoor v. Varonis Sys., Inc.*,
17
   152 F. Supp. 3d 1091 (N.D. Ill. 2015) ....................................................................................20

18

*Bradford v. Rockwell Semiconductor Sys., Inc.*,
19
   238 F.3d 549 (4th Cir. 2001) ..................................................................................................10

20

*Brady v. Williams Cap. Grp., L.P.*,
   14 N.Y.3d 459, 928 N.E.2d 383 (2010)..................................................................................20

21

*Brook v. Peak Int'l, Ltd.*,
22
   294 F.3d 668 (5th Cir. 2002) .............................................................................................17, 19

23

*Brown v. Peregrine Enters., Inc.*,
   No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023).............................................16, 17, 18
24

25

*Carrera v. Whitepages, Inc.*,
   2025 WL 1635236 (W.D. Wash. June 9, 2025).....................................................................6, 11

26

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - iii
(Case No. 2:25-cv-00659-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)...........................................................................................................9, 10

*Essex v. Children's Place, Inc.*,
  2017 WL 6000347 (D.N.J. Dec. 4, 2017)...............................................................................21

*Frazier v. X Corp.*,
  739 F. Supp. 3d 219 (S.D.N.Y. 2024).............................................................................*passim*

*Gadala v Twitter, Inc.*
  No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023).........................................................19, 20

*Goobich v. Excelligence Learning Corp.*,
  2020 WL 5593011 (N.D. Cal. Sept. 18, 2020) .......................................................................20

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010)..................................................................................................................8

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000)..................................................................................................................10

*Howard v. Ferrellgas Partners, L.P.*
  748 F.3d 975 (10th Cir. 2014) ..................................................................................................8

*Johnson v. Walmart Inc.*,
  57 F.4th 677 (9th Cir. 2023) .....................................................................................................5

*Lamps Plus, Inc. v. Varela*,
  587 U.S. 176 (2019)...............................................................................................................8, 9

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,
  363 F.3d 1010 (9th Cir. 2003) ................................................................................................14

*Line Drivers, Pickup & Delivery Loc. Union No. 81 v. Roadway Exp. Inc.*,
  152 F.3d 1098 (9th Cir. 1998) ................................................................................................18

*Lockyer v. Mirant*,
  398 F.3d 1098 (9th Cir. 2005) ..................................................................................................7

*Ma v. Twitter, Inc.*,
  2025 WL 436636 (N.D. Cal. Feb. 7, 2025) ........................................................................7, 18

*Marino v. CVS Health*,
  698 F. Supp. 3d 689 (S.D.N.Y. 2023)...............................................................................12, 21

*Micheletti v. Uber Techs., Inc.*,
  213 F. Supp. 3d 839 (W.D. Tex. 2016)...................................................................................21

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - iv
(Case No. 2:25-cv-00659-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ...............................................................12

*Phoenix Newspapers, Inc. v. Phoenix Mailers Union Loc. 752*,
   989 F.2d 1077 (9th Cir. 1993) ................................................................9

*Rodriguez v. Four Seasons Hotels, Ltd.*,
   2009 WL 2001328 (S.D.N.Y. July 10, 2009) .........................................12

*Rosa v. X Corp.*,
   2024 WL 4903619 (D.N.J. Nov. 27, 2024) ...................................... *passim*

*Simeon v. Domino's Pizza LLC*,
   No. 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019)......................................12

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
   484 U.S. 29 (1987)..................................................................................18

*Univ. Ins., LLC v. Allstate Ins. Co.*,
   564 F. Supp. 3d 934 (W.D. Wash. 2021).................................................20

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989)..................................................................................9

*Wallrich v. Samsung Elecs. Am., Inc.*,
   106 F.4th 609 (7th Cir. 2024) .......................................................5, 6, 22

*Young v. Refined Techs., Inc.*,
   2022 WL 3012536 (C.D. Cal. June 17, 2022) ..................................12, 21

**Statutes**

9 U.S.C. § 2..................................................................................................10

9 U.S.C. § 4....................................................................................... *passim*

**Other Authorities**

*Apportionment*, Black's Law Dictionary (12th ed. 2024).............................11

Oxford English Dictionary 579 (2d ed. 1989) .............................................11

Webster's New International Dictionary 132 (2d ed. 1955)...........................11

11 *Williston on Contracts* § 32:5 (4th ed. 2024)..........................................20

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1

## **INTRODUCTION**

2      The Federal Arbitration Act permits a court to compel arbitration only "in accordance with

3  the terms of the [arbitration] agreement." 9 U.S.C. § 4; *see Am. Express Co. v. Italian Colors Rest.*,

4  570 U.S. 228, 233 (2013). Yet, with their Motion to Compel Arbitration, Petitioners seek an order

5  compelling X Corp. to pay arbitration fees its agreement does not require it to pay.

6      Petitioners claim to be former Twitter employees who entered binding arbitration

7  agreements, but they provide no evidence of that—an independent reason to deny the motion.

8      Instead, Petitioners provide sample X Corp. Dispute Resolution Agreements ("DRA")

9  (Dkts. 1-1, 1-2[1]). Those DRAs state parties will apportion fees between them where permitted by

10  law, and the individual "Arbitrator" will resolve "any [fees] disputes." DRA § 6. Petitioners ignore

11  this text, arguing that X Corp. must pay virtually all arbitration fees, and the arbitral organizations

12  (JAMS and AAA) rather than individual arbitrators may resolve allocation disputes. Yet, JAMS's

13  and AAA's positions that X Corp. should pay all fees (on which Petitioners base their motion)

14  were made without regard to the DRA's terms. Indeed, Petitioners seek an "order compelling [X

15  Corp.] … to pay the fees it has been ordered to pay by JAMS and AAA"—not an order enforcing

16  the arbitration agreement. Dkt. 12 ("Mot.") at 1. For that reason alone, the motion should be denied.

17      Nor do Petitioners reckon with the DRA's text or case law explaining that the DRA, which

18  allowed all employees to opt out, was not required as a condition of employment. Given that, both

19  the DRA and JAMS Rules require parties to pay their pro rata share of fees by default. Petitioners

20  mostly block quote from two erroneous district court decisions (*Ma* and *Frazier*), both of which

21  are currently on appeal. As the appellate courts will likely soon hold, courts should not compel

22  X Corp. to pay all arbitration fees in the guise of compelling arbitration under the DRA. This Court

23  should stay resolution of this motion until the Ninth Circuit's decision, and then deny this motion.

24  _____

25  [1] Petitioners attach two sample DRAs—an earlier version that does not incorporate JAMS Rules or select JAMS arbitrators, and a more recent version that does both. *See* Dkts. 1-1, 1-2. In all other

26  material respects, the DRAs are identical, so this brief's references to "DRA § _" throughout apply to both sample DRAs unless otherwise indicated.

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - 1
(Case No. 2:25-cv-00659-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

# BACKGROUND

### A.    X Corp.'s Dispute Resolution Agreement

Many, but not all, former Twitter employees entered an arbitration agreement—some version of the DRA—with the company. Petitioners—143 individuals who claim they are former Twitter employees who entered DRAs with the company—attach two different versions of the DRA that they say are relevant here. *See* Dkts. 1-1, 1-2. Yet, they nowhere attach a DRA signed by a single Petitioner. Nor do they offer any other evidence that they entered an arbitration agreement with Twitter or its successor X Corp.

Each version of the DRA that Petitioners attach gave employees a right to opt out by sending a form to the human resources department. DRA § 8. The agreements explained at the top: "You can choose to opt out of this Agreement—you have 30 days to opt out." *See* DRA at 1. The DRA then detailed in bold: "**Arbitration is not a mandatory condition of Employee's employment at the Company**," and if an employee opts out, he or she will "**not be subject to this Agreement.**" DRA § 8. Each version also states the DRA is "governed by the Federal Arbitration Act." DRA § 1. And Section 6 is titled, "**Paying For The Arbitration**." It states:

> [I]n all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

DRA § 6.

The relevant difference between the two DRAs concerns the designation of an arbitration provider and general incorporation of arbitral rules (if any). The earlier version does not select an arbitration provider or any arbitration rules at all. *See* Dkt. 1-2 §§ 3, 5. Section 3 of that agreement provides that "[t]he Arbitrator shall be selected by mutual agreement of the Company and the Employee." *Id.* § 3. Some former employees who entered this DRA have agreed with X Corp. to arbitration with American Arbitration Association ("AAA") arbitrators. The other DRA provides for "arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-

current JAMS Rules," with "the Arbitrator" selected by the parties or by JAMS. Dkt. 1-1 §§ 3, 5. These versions define "JAMS Rules" as "JAMS Employment Arbitration Rules and Procedures." *Id.* § 3. Given the lack of evidence accompanying Petitioners' motion, it is unclear which, if either, of these agreements any of them signed.

### B. Petitioners seek arbitration without complying with the terms of the DRA.

Although DRA § 6 requires apportionment of fees between the parties where permitted by applicable law, with any disputes regarding fees resolved by the Arbitrator alone, JAMS and AAA both decided to disregard this provision for various arbitral demands filed against X Corp.

On June 2, 2023, after JAMS began invoicing nearly all fees to X Corp. for all former employee arbitrations against it, X Corp. sent a letter to JAMS General Counsel Sheri Eisner citing Section 6 and requesting that JAMS invoice fees equally among the parties where permitted by applicable law. Lesikar Decl. ¶ 2 & Ex. A.

On June 21, 2023, Ms. Eisner responded, asserting that JAMS would apply its Policy on Employment Arbitration Minimum Standards of Procedural Fairness (requiring the employer to pay all fees "notwithstanding any contrary provision in the parties' arbitration agreement." Dkt. 1-4. Although claimants could choose to contribute to the arbitral fees, if they chose not to do so and the employer declined to pay all fees, "JAMS will decline to administer the arbitration." *Id.* Ms. Eisner also stated that even if the individual arbitrator in a given case disagreed with JAMS, JAMS retained the right to make a "final determination." *Id.* Ms. Eisner's letter does not address any contradiction between JAMS's stated policy and the DRAs, including the DRAs' delegation of disputes over fee apportionment to each individual arbitrator. *See* DRA § 6.

X Corp. responded to JAMS on June 28, 2023. Dkt. 1-5. It reiterated that JAMS's position "prevents [X Corp.] from exercising its contractual rights and improperly negates a material provision in the dispute resolution agreements." *Id.* Rather than abandon its contractual rights, X Corp. informed JAMS that it would not pay all arbitration fees where fee-sharing was lawful. *Id.*

On June 30, 2023, Ms. Eisner acknowledged Twitter's position. Lesikar Decl. ¶ 3 & Ex. B. She noted that employees could elect to waive the Minimum Standards and "share JAMS fees according to the underlying arbitration agreement clause." *Id.* Ex. B. Few have done so.

Meanwhile, AAA also decided to disregard Section 6 of the DRA for former employees pursuing claims against X Corp. before it. X Corp. and Petitioners' counsel (who represents other claimants before AAA) had a call on June 30, 2023, in which they noted their arbitral fees dispute. *See* Dkt. 1-8. AAA proposed to appoint a "Process Arbitrator" to decide the company's fees obligation, which X Corp. would have had to pay for. *Id.* X Corp. explained that having a Process Arbitrator resolve the fee dispute would violate the DRA. Dkt. 12-5. X Corp. further objected that AAA was disregarding the terms of DRA § 6 by requiring Twitter to front all arbitration fees pending arbitrators' rulings on the issue, even in jurisdictions where fee apportionment was lawful. *See* Dkt. 12-4.

After an unsuccessful attempt at mediation, X Corp. proposed to Petitioners' counsel that X Corp. would advance claimants' portion of the arbitral fees on the condition that claimants and their counsel agreed to comply with the merits arbitrators' rulings on fee sharing and reimburse X Corp. if ordered to do so. Lesikar Decl. ¶ 4 & Ex. C. Petitioners' counsel flatly rejected the proposal on behalf of all her clients and objected to paying any share of the fees. *Id.* ¶ 5 & Ex. D.

X Corp. has repeatedly made clear that it is ready and willing to pay its pro rata share of the initial fees and abide by any alternative allocation ordered by the Arbitrator in an individual arbitration pursuant to DRA § 6. *See supra*. JAMS and AAA have also made clear that if any given claimant paid half of the fees to advance the arbitration to an Arbitrator, the arbitration would proceed. *See, e.g.*, Dkts. 1-4, 1-8. Petitioners are unwilling to do so. Mot. 14-15.

## ARGUMENT

**I.     The motion should be denied because Petitioners offer no evidence that they have binding arbitration agreements with X Corp.**

Petitioners concede their motion to compel arbitration must be denied if they do not prove that "a valid agreement to arbitrate exists." Mot. 7; *see Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) ("[T]he party seeking to compel arbitration … bears the burden of proving the existence of an agreement to arbitrate[.]"). Despite this concession, Petitioners simply assert that "[t]here is no dispute that the parties entered into valid arbitration agreements." Mot. 10. While X Corp. of course agrees that the DRA is valid and enforceable for individuals who entered it and decided not to opt out, Petitioners provide *no evidence* that they fall in this category. The motion cites "Dkt. 1-1, 1-2" as Petitioners' "Arbitration Agreements," Mot. 10, but those "representative" agreements have redacted names. Dkt. 1 ¶¶ 20, 21. Petitioners have not entered into evidence a single agreement signed by a single Petitioner in this case—let alone all 143 Petitioners.[2]

The Seventh Circuit recently dealt with a similar situation in *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609 (7th Cir. 2024). There, consumers sought to compel Samsung to arbitrate, but they did not satisfy their "burden of producing a valid arbitration agreement with Samsung." *Id.* at 618. Arbitration demands and other documents "signed by counsel" are mere allegations, and no "claimant [had] submitted any declaration or otherwise attested under the penalty of perjury to the facts alleged." *Id.* at 618-19. The Court noted that under the summary-judgment-like standard for motions to compel arbitration: "Identifying a generic arbitration agreement and then independently listing the names and addresses of alleged consumers without doing anything to link those consumers to the agreement does not satisfy the 'existence of an arbitration agreement'

---

[2] Petitioners do not even identify which (if any) of them signed DRAs assigning arbitrations to JAMS arbitrators and incorporating JAMS Rules, Dkt. 1-1, which (if any) of them signed the earlier DRA not specifying an arbitral organization or set of arbitration rules, Dkt. 1-2, or which (if any) of that group separately agreed with X Corp. to proceed before AAA arbitrators. Instead, Petitioners just assert (without evidence) that "most" signed the JAMS DRA (Mot. 14-15) and "some" signed the earlier DRA (Dkt. 1 ¶ 21). This lack of evidence is fatal to their motion.

element." *Id.* at 619. The failure to adduce "any evidence aside from their allegations" meant those petitioners failed to prove the existence of a valid arbitration agreement, requiring denial of the motion to compel. *Id.*; *see also Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1065 (N.D. Cal. 2020) (case cited by Petitioners) (refusing to compel arbitration for petitioners who did not submit signed declarations or other evidence of arbitration agreement).

The same is true here. Petitioners offer nothing but (i) two "generic arbitration agreement[s]," *Wallrich*, 106 F.4th at 619, and (ii) attorney-signed hearsay allegations that all petitioners "signed a copy" of the DRA. Mot. 10-11 (citing attorney declaration that "[e]ach Petitioner signed a copy of" the DRA, Dkt. 12-1 ¶ 4).[3] None of this is admissible evidence that Petitioners entered a DRA and did not opt out and thus it falls far short of Petitioners' burden. *See Carrera v. Whitepages, Inc.*, 2025 WL 1635236, at *3 (W.D. Wash. June 9, 2025) (denying motion to compel where movant "presents no evidence" that could establish existence of agreement). For this reason alone, the motion to compel arbitration must be denied.

**II.      The motion should be denied because the DRA does not require X Corp. to pay the fees Petitioners seek.**

      **A.      As an initial matter, the Court should stay resolution of this matter until the Ninth Circuit resolves the currently pending *Ma* appeal.**

Petitioners rely heavily on two district court decisions that are currently on appeal. First, they cite and block-quote the district court decision in *Frazier v. X Corp.*, 739 F. Supp. 3d 219, 227-28 (S.D.N.Y. 2024), *appeal pending* (2d Cir. 24-1948)—the only court that has erroneously ordered X Corp. to pay ongoing arbitration fees in response to a similar motion to compel— throughout their brief. Petitioners also rely nearly as extensively on a decision from the Northern District of California, which *denied* the petitioners' motion to compel—observing in dicta that it believed JAMS could require a specific division of fees notwithstanding contrary language in the

---

[3] Petitioners do not even provide evidence that they all worked for Twitter or X Corp. Even if they did, that would not be enough because the DRA was optional, and many employees opted out. *See supra* Background. And the X Corp. motions to compel Petitioners cite involve *other* plaintiffs to explain this accusation.

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

DRA, but not ordering X Corp. to pay any fees on other grounds. *Ma v. Twitter, Inc.*, 2025 WL 436636 (N.D. Cal. Feb. 7, 2025), *appeals pending* (9th Cir. Nos. 25-1536 & 25-1695). Appeals are pending from both decisions. In contrast, the District of New Jersey in *Rosa v. X Corp.*, 2024 WL 4903619 (D.N.J. Nov. 27, 2024), held X Corp.'s agreement did not require X Corp. to bear all fees (ordering the employee to pay half of the arbitration fees), and that decision was not appealed.

The Ninth Circuit appeal in *Ma* is currently being briefed, and X Corp. anticipates arguing that the *Ma* decision was wrong to opine that X Corp. should pay nearly all fees. This Court should wait for the Ninth Circuit's decision before resolving this motion. When determining whether to issue a stay pending a related appeal, courts in the Ninth Circuit have broad discretion, considering "the competing interests that will be affected," including:

> (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."

*Ali v. Trump*, 241 F. Supp. 3d 1147, 1152 (W.D. Wash. 2017) (quoting *Lockyer v. Mirant*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

Here, the factors clearly weigh in favor of a stay. As in *Ali*, "the Ninth Circuit's rulings [in *Ma*] will likely have significant relevance to—and potentially control—the court's subsequent rulings here." 241 F. Supp. 3d at 1153. The orderly course of justice would not be served by requiring the parties and Court to rehash these issues when the pending opinion could moot them.

Nor have Petitioners identified any "damage" to them that would result from a stay because they have "not shown an urgent need to litigate this matter" or specific "harm" that would be caused by a stay. *Aland v. U.S. Dep't of the Interior*, 2022 WL 1539522, at *2 (N.D. Cal. May 16, 2022). Indeed, despite now arguing that motions to compel arbitration should be resolved "quickly" and "summarily" (Mot. 2 n.2), Petitioners offer no explanation for why they waited almost two years after the dispute arose (in June 2023, Mot. 5) to file this petition in the proper

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

venue—and they do not attempt to explain how a few additional months would cause them any prejudice.[4]

Petitioners never address the relevant factors, instead arguing in a footnote that "[t]he FAA itself makes clear that such a stay would be inappropriate in these proceedings." Mot. 2 n.2. It does no such thing. For this proposition, Petitioners cite one out-of-circuit case, but *Howard v. Ferrellgas Partners, L.P.* did not involve a stay pending appeal of a related case. 748 F.3d 975 (10th Cir. 2014). It does not mention stays at all, let alone to support the idea that the FAA disfavors them when otherwise appropriate. Instead, *Howard* faulted a trial court for spending "almost a year and half after" a motion to compel arbitration was filed on discovery and then denying arbitration because of factual disputes. *Id.* at 978. The legal dispute here, in contrast, could not be solved by the district court "'proceed[ing] summarily to [a] trial' of the relevant facts." *Id.* at 977 (quoting 9 U.S.C. § 4).

Petitioners seek an order compelling X Corp. to pay fees its DRA does not require it to pay based on legal arguments that will be considered on appeal in *Ma*. Petitioners offer no basis for this Court to ignore that impending decision, which will bind this Court. The case should be stayed until after the Ninth Circuit's decision.

### B.    This Court should not order X Corp. to pay the arbitration fees Petitioners seek.

Arbitration is "strictly a matter of consent." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). Accordingly, "arbitrators wield only the authority they are given." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). Parties "may generally shape [arbitration] agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes." *Id.* As a result, the FAA permits a court to compel arbitration only "in accordance with

---

[4] Petitioners try to make it seem like X Corp. delayed in objecting to paying fees it did not owe (Mot. 12), but in fact X Corp. objected promptly after it began receiving invoices for claimants' fees as well as its own. *See* Dkt. 1-4.

the terms of the [arbitration] agreement." 9 U.S.C. § 4. Thus, "courts must 'rigorously enforce' arbitration agreements *according to their terms*." *Italian Colors*, 570 U.S. at 233 (emphasis added); *see also, e.g.*, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985) ("[T]he purpose behind [the FAA] was to ensure judicial enforcement of privately made agreements to arbitrate.").[5]

With this motion, Petitioners seek an order directing X Corp. to pay all ongoing fees in their arbitrations based merely on JAMS's and AAA's say-so, even though the DRA does *not* require X Corp. to pay those fees and even though the DRA delegates "any" dispute regarding fees to the individual Arbitrator. Because the FAA does not permit the Court to enter an order that contravenes the DRA in these ways, the motion should be denied.

> **1.    The DRA requires Petitioners to pay their proportionate share of the arbitration fees unless and until their Arbitrator orders otherwise.**

Section 6 of the DRA specifically addresses the allocation of arbitration fees for X Corp. and employees with valid DRAs. That section, entitled "Paying For The Arbitration," makes clear that X Corp. and such employees share responsibility for arbitration fees and Arbitrator compensation unless and until their individual Arbitrator orders otherwise. DRA § 6. The section sets forth two categories of cases for arbitration fee-sharing: first, "in all cases where required by law," it states X Corp. "will pay the Arbitrator's and arbitration fees." *Id.* In contrast, "[i]f under applicable law [X Corp.] is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law." *Id.* Section 6 then makes clear who will resolve "any disputes" regarding fee allocation: "the Arbitrator." *Id.*

---

[5] Petitioners note the FAA's objective of providing a method for more "speedy and fair" dispute resolution, *e.g.*, Mot. 3, but that goal is secondary to enforcing the arbitration agreement according to its terms. *Dean Witter*, 470 U.S. at 219 ("reject[ing] the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims" and noting true purpose was to ensure "enforcement of privately made agreements"); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (similar). Indeed, the case Petitioners cite (at 3) for the efficiency principle elsewhere explains that arbitral "authority" is limited to the terms of the parties' "agreement." *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Loc. 752*, 989 F.2d 1077, 1082-83 (9th Cir. 1993); *id.* at 1085 (reversing arbitral award that exceeded authority).

1    In seeking to compel X Corp. to pay all fees, Petitioners never quote this section that

2    directly governs the parties' fee allocation. Because it refutes their arguments.

3    To start, this case falls squarely in the second category of cases in Section 6. The DRA

4    makes clear that the "applicable law" is the FAA. *See* DRA § 1 ("This Agreement is governed by

5    the [FAA] and evidences a transaction involving commerce."); 9 U.S.C. § 2 (FAA applies to any

6    "contract evidencing a transaction involving commerce"). Nothing in the FAA requires X Corp.

7    to pay all the arbitration fees here, *see Italian Colors*, 570 U.S. at 236; *Green Tree Fin. Corp.-Ala.*

8    *v. Randolph*, 531 U.S. 79, 90 (2000); *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d

9    549, 556 (4th Cir. 2001), so those fees must "be apportioned between the parties." DRA § 6.

10    Even if Washington law were to apply (and it does not), the result would be the same.

11    Petitioners allege that they are "former Twitter Washington employees," Mot. 1, so the DRA points

12    to Washington law in the alternative. *See* DRA § 1 ("If the FAA is found not to apply," the DRA

13    "is enforceable under the laws of the state in which" the employee worked "at the time [s/he]

14    enter[ed] into" the DRA). Like the FAA, Washington law imposes no requirement that would

15    compel X Corp. to pay all arbitration fees. *See Adler v. Fred Lind Manor*, 153 Wn. 2d 331, 353,

16    103 P.3d 773 (2004). Under the plain terms of DRA § 6, then, the arbitration fees must "be

17    apportioned between the parties," with "any" related disputes "resolved by the Arbitrator."

18    By requiring the fees be "apportioned between the parties," this Section forecloses

19    requiring X Corp. to pay all or effectively all the fees. If anything, this language sets as a default

20    that the parties will share fees equally, subject to the Arbitrator's discretion to allocate the fees

21    differently. That interpretation is supported by the definition of "apportion" and "apportionment"

22    as used in the DRA, which refer to division proportionally. *See Apportionment*, Black's Law

23    Dictionary (12th ed. 2024) ("Division into proportionate shares; esp., the division of rights and

24    liabilities among two or more persons or entities"); Oxford English Dictionary 579 (2d ed. 1989)

25    ("To assign in proper portions or shares; to divide and assign proportionally; to portion out, to

26    share"); Webster's New International Dictionary 132 (2d ed. 1955) ("To divide and assign in just

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - 10
(Case No. 2:25-cv-00659-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

proportion; to divide and distribute proportionally; to make an apportionment of; portion out; to allot"). For two parties, a "proportional" split between them is 50/50.

This default is confirmed by JAMS Employment Rule 31(a). As Petitioners note (at 14), the JAMS Employment Rules are incorporated into one version of the DRA. *See* Dkt. 1-1 § 5. Petitioners are wrong, however, to claim that "those rules provide that 'the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee.'" Mot. 14 (citing JAMS Rule 31, available at https://www.jamsadr.com/rules-employment-arbitration/english#Rule-31). Rule 31 in fact sets a default fees appointment that is *the opposite* of what Petitioners claim. Rule 31(a) states:

> Except as provided in paragraph (c) below, unless the Parties have agreed to a different allocation, *each Party shall pay its pro rata share of JAMS fees and expenses* as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration.

JAMS Rule 31(a) (emphasis added). Petitioners deceptively omit this language—which clearly requires them to pay their pro rata share of fees as a default unless the exception in paragraph (c) applies. And paragraph (c), from which Petitioners quote (at 14), applies only "[i]f an Arbitration is based on a clause or agreement that is required as a condition of employment." *See* JAMS Rule 31(c). Yet Petitioners never even argue that the DRA here was "required as a condition of employment."[6] It plainly was not. As described above, the DRA was optional, not mandatory, and explicitly informed employees—repeatedly and in bold font—that they were entitled to opt out. *Supra* Background. Indeed, Petitioners themselves recognize that Twitter employees could (and did) opt out of the DRA. *See* Mot. 5 n.4 (conceding X Corp. withdrew motion to compel arbitration "because plaintiff [had] opted out of arbitration").

Case law is clear that arbitration agreements like the DRA—where an employee could opt out and keep their job—are not required as a condition of employment. *See, e.g.*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) ("[A]n arbitration agreement is not adhesive if

---

[6] By not making this argument in their motion, Petitioners have waived it. *See, e.g.*, *Carrera*, 2025 WL 1635236, at *1.

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - 11
(Case No. 2:25-cv-00659-TSZ)

there is an opportunity to opt out of it."); *Young v. Refined Techs., Inc.*, 2022 WL 3012536, at *5 (C.D. Cal. June 17, 2022) (referring to "an opt-out provision" as "[o]ne of the typical indicia that a contract is not a condition of employment"); *Marino v. CVS Health*, 698 F. Supp. 3d 689, 695 (S.D.N.Y. 2023) (citing *Simeon v. Domino's Pizza LLC*, No. 2019 WL 7882143, at *5 (E.D.N.Y. Feb. 6, 2019), to hold opt-out provision "negate[d] any suggestion plaintiff was forced to enter into the Arbitration Agreement"); *Rodriguez v. Four Seasons Hotels, Ltd.*, 2009 WL 2001328, at *4 (S.D.N.Y. July 10, 2009) (plaintiff "was not required to submit to the offending mediation/arbitration provisions as a condition of employment, but was provided with the choice of opting-out"). Reviewing the same DRA at issue here, the court in *Rosa* held that the DRA's "opt-out period clearly denotes that it was not a required aspect of [the plaintiff's] employment to be under an arbitration agreement." 2024 WL 4903619, at *10.[7]

Thus, under both the JAMS Rules and the DRA, the default payment structure is "pro rata." And it is *Petitioners* who are refusing to pay their share of fees.

Petitioners' argument regarding AAA arbitrations fares no better. They do not even cite the unspecified AAA rule that supposedly "require[s] the employer to pay all arbitration fees." Mot. 14. Nor does the relevant version of the DRA even mention, let alone incorporate, any AAA rules. *See* Dkt. 1-2. Contrary to Petitioners' citation-free assertion (at 15-16), the earlier DRA does not refer to an arbitration provider or adopt any particular set of rules while making clear that the DRA is the contracting parties' "full and complete agreement relating to the formal resolution of" covered disputes. Dkt. 1-2 § 10. Instead, it directs the parties to select the Arbitrator by "mutual agreement." Dkt. 1-2 § 3. Some former employees agreed with X Corp. to select AAA arbitrators (*see* Dkt. 1-8); in doing so, those employees merely complied with their existing arbitration agreement, and did not agree with X Corp. to replace Section 6's specific fee-apportionment rules. Sections 3 and 6 must be read consistently, not so that selecting an arbitrator vitiates other parts of

---

[7] The only decision going the other way on this issue is the *Frazier* case currently on appeal, and it cited *none* of the other uniform cases with which it disagreed.

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

the DRA. For those (unidentified) Petitioners who agreed to the earlier DRA version (if any), all their agreement says about default arbitration fee-sharing is that fees "will be apportioned between the parties." DRA § 6.

Of course, the default apportionment may be modified by the Arbitrator when appropriate, for instance if a proportional allocation would impose fees "so high as to make access to the forum impracticable." *Italian Colors*, 570 U.S. at 236. At the same time, though, the mere "fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy." *Id.*; *see Adler*, 103 P.3d at 353 (party seeking to avoid fees must show the "fees would effectively prohibit him from bringing his claims"). If a former employee believes hers is the rare case calling for a different allocation, she must bring that challenge to the individual Arbitrator overseeing her arbitration, and "any disputes" regarding fee apportionment "will be resolved by the Arbitrator." DRA § 6. Unless and until the *Arbitrator* makes such a determination, the default fee apportionment is equal fee-sharing. In the meantime, Petitioners' motion seeks to order X Corp. to pay all fees regardless of whether it is "required to pay" those fees "under applicable law," directly contrary to the DRA's terms.

Petitioners' cases are off point. *See* Mot. 13-14. In none of them did the employer have a contractual right under the arbitration agreement to insist on an apportionment of fees between the parties, or on the arbitrator resolving fees disputes. *Abernathy v. DoorDash*, though light on reasoning, apparently involved an employer refusing to pay arbitration filing fees "it agreed to pay in the arbitration clause." 438 F. Supp. 3d at 1067 (involving California claimants and emphasizing that agreement was "forced … upon workers," neither of which is true here). *Allemeier v. Zyppah, Inc.* involved an employer that "simply refused to pay its portion of the filing fee," without even arguing the agreement did not require that fee. 2018 WL 6038340, at *3 (C.D. Cal. Sept. 21, 2018).

Petitioners also cite *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, which supports X Corp. 363 F.3d 1010 (9th Cir. 2003). There, the Ninth Circuit *reversed* an order requiring the respondent to pay fees, rejecting the petitioner's interpretation of a AAA rule. *Id.* at 1012-13. And

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - 13
(Case No. 2:25-cv-00659-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

the portion of the case Petitioners cite states AAA rules "give *arbitrators* the authority to apportion fees." *Id.* (emphasis added). That comports with the DRA, which gives the Arbitrator alone (not AAA or JAMS) the authority to apportion fees differently than the default pro rata fee-sharing.

In all events, the reasoning in these cases does not apply here because, unlike the agreements in those cases, the DRA and the incorporated rules do *not* require X Corp. to pay all arbitration fees and Arbitrator compensation. In contrast, DRA § 6 gives X Corp. the explicit right not to pay the disputed fees, at least unless and until the individual Arbitrator in a case orders otherwise. Under FAA § 4, this Court therefore cannot order otherwise.

### 2. This Court should not give judicial force to JAMS's or AAA's attempt to excuse Petitioners from paying their share of the arbitration fees.

Petitioners rely throughout their motion on JAMS's position that its Minimum Standards require X Corp. to pay virtually all the arbitration fees, and AAA's similar opinion that X Corp. must pay nearly all fees. But those positions cannot be reconciled with the terms of the DRA. And neither arbitral organization even attempted to square its position with the agreement. In fact, JAMS's position letter stated that it had decided to apply its Minimum Standards to all arbitration demands by former Twitter employees "notwithstanding any contrary provision in the parties' arbitration agreement." Dkt. 1-4 at 2; *see also* Dkt. 1-8 at 2-3 (AAA communication never mentioning the text of the DRA). JAMS noted that "JAMS administrative policy" was distinct from legal "protections that may apply in any given jurisdiction" and "might go further than the law requires in a particular jurisdiction," Dkt. 1-4 at 2, expressly disclaiming the DRA's distinction between jurisdictions where fee sharing is permitted or not. *See* DRA § 6. In fact, JAMS's June 30, 2023, letter recognized that "the underlying arbitration clause" would result in the parties' "shar[ing] JAMS fees." Lesikar Decl. ¶ 3 & Ex. B.[8]

---

[8] These communications from JAMS and AAA belie Petitioners' revisionist history claim that JAMS and AAA decided that X Corp. must pay all fees after having "reviewed the applicable agreements[] and considered the parties' arguments." Mot. 16.

Nor did JAMS explain why its Minimum Standards, which like JAMS Rule 31(c) apply only if an arbitration agreement "is required as a condition of employment," apply to the DRA despite employees' express ability to opt out and "not be subject to th[e] Agreement." DRA § 8. JAMS indicated that the issue of who should pay fees could be reraised with the Arbitrator in each case, Dkt. 1-4 at 2, but it decided based on its own policies that X Corp. should pay all fees for the arbitrations. And JAMS asserted that *it*—and not the Arbitrator—"will make a final determination" on the correct fee allocation. Dkt. 1-4 at 2; *see also* Dkt. 1-8 at 2 (AAA stating a "Process Arbitrator" could determine the fees issue for all AAA claimants and never mentioning DRA pointing to parties' individual Arbitrators).

JAMS's and AAA's decisions to invoice X Corp. for all arbitration fees going forward provides no basis for this Court to order X Corp. to do so—for at least two reasons: (a) the DRA nowhere contemplates JAMS or AAA making a fee-apportionment decision, and (b) the at-issue positions conflict with the DRA's plain terms.

**First**, the DRA does not give JAMS or AAA the authority to determine how arbitration fees will be shared by the parties. The DRA explicitly provides that "any dispute in this regard [the proper apportionment of fees] will be resolved by the Arbitrator." DRA § 6. The DRA and JAMS Rules themselves make clear that "the Arbitrator" is the individual appointed to hear each claimant's particular arbitration, not the arbitral organization. *See* DRA § 3 (describing selection of "the Arbitrator"); *see also, e.g.*, JAMS Rules 7, 15 (distinguishing between "JAMS" and "the Arbitrator," the individual appointed to resolve the case).

Petitioners do not reckon with this language, deliberately obfuscating the delegation of this issue to "the Arbitrator" by claiming DRA § 6 simply requires the decision to be made in "arbitration." Mot. 15. Elsewhere, Petitioners even claim that "[b]efore an arbitrator is appointed, the agreement delegates any [fees] disputes to *the arbitration provider*." Mot. 11 n.6 (emphasis added). The DRA does no such thing—hence why Petitioners do not quote, or even cite, the agreement for this proposition. On the contrary, the DRA explicitly delegates "any disputes" over

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - 15
(Case No. 2:25-cv-00659-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

fees to "the Arbitrator," not the arbitration provider. DRA § 6. Even the *Frazier* district court recognized those are separate decisionmakers. 739 F. Supp. 3d at 225.[9] This Court should reject Petitioners' invitation to ignore the plain terms of the DRA under which JAMS's and AAA's views on arbitration fee allocation are irrelevant to the material contractual obligations.

In another recent dispute in which AAA improperly tried to override an arbitration agreement through its fee schedule, the Second Circuit aptly observed that the employer "cannot be faulted for standing on its contractual entitlements." *Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023). AAA "adher[ed] to its own Fee Schedule rather than the parties' bargained-for terms," and the employer had every right to insist on the arbitration agreement's terms being applied. *See id.* at *2-3. The same principle applies here. X Corp. is simply standing on the terms of the DRA, as the FAA entitles it to do. And, as in *Brown*, X Corp. is "ready, willing, and able to proceed to arbitration on terms consistent with the [DRA]." *Id.* at *3. Its contractual right to individual, case-by-case fee apportionment by the arbitrator specifically trumps any general reference to an arbitral organization's rules.

The *Rosa* court recently evaluated X Corp.'s DRA and correctly held that JAMS's position that X Corp. must pay all arbitration fees conflicts with the agreement and should not be enforced. The court observed both that the DRA was not required as a condition of employment (and so no JAMS Rule requires X Corp. to pay all fees), 2024 WL 4903619, at *10, *12, *and* that DRA § 6 would trump any such JAMS rule in any event because the DRA requires fee apportionment where not prohibited by law and requires the arbitrator to make any contrary decision. *Id.* at *11. As a result, *Rosa* compelled the *employee* to pay their half of the initial arbitral fees—the opposite of what Petitioners seek here. *Id.* at *13.[10] No deference was owed to JAMS's erroneous

---

[9] Petitioners attempt to muddy the waters even more by citing a Supreme Court case holding that parties may delegate arbitrability questions "to the arbitrator." Mot. 15. One, this motion does not involve an arbitrability question and, two, JAMS and AAA are not the Arbitrator.

[10] Petitioners pretend *Rosa* held as much because of the petitioner's waiver of certain arguments, Mot. 8, but that is wrong. The first argument was not even arguably waived, and the Court

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - 16
(Case No. 2:25-cv-00659-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

interpretation of the DRA or its own rules. *See id.* at *10-11; *see also Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 673 (5th Cir. 2002) (concluding that AAA violated the parties' arbitration agreement because it failed to comply with the agreement's express arbitrator selection procedures and that AAA's flouting of the agreement would be valid grounds for vacating the ultimate award in appropriate case); *Brown*, 2023 WL 8800728, at *2 (faulting AAA for misapplying its rules).

These cases did not rubber stamp decisions by AAA or JAMS. Rather, they rejected the arbitral organizations' positions that conflicted with the agreements at issue.

Yet Petitioners assume throughout their motion that this Court must defer to the arbitral organizations' positions that conflict with the DRA. That is not so. As noted above, Petitioners are seeking a judicial order compelling X Corp. to pay fees, but such an order may issue *only* in accordance with the parties' agreement. Petitioners offer no support for their claim (at 15) that "this Court is not empowered to second guess" AAA's or JAMS's position (as opposed to a decision from the Arbitrator).

Rather, in arguing for deference to JAMS and AAA, Petitioners cite several inapposite cases that do not involve motions to compel arbitration at all. *See* Mot. 2, 18-19. These cases reviewed challenges to arbitration awards through motions to vacate or confirm and, in that posture, described deference owed to *arbitrators* when they have decided issues delegated to them. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37–38 (1987) (noting courts are deferential to decisions "by an arbitrator" when challenged); *Line Drivers, Pickup & Delivery Loc. Union No. 81 v. Roadway Exp. Inc.*, 152 F.3d 1098, 1099 (9th Cir. 1998) (noting in case challenging final arbitration award that courts "defer to the decision of the arbitrator" (cleaned up)); *ASARCO LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC*, 910 F.3d 485, 489 (9th Cir. 2018) (noting standard for challenge to final arbitration award, not for FAA § 4 petitions, is "extremely deferential"). Two

---

explicitly stated it "addresses all [the employee's] arguments" on the merits, despite the possibility of waiver as to the second. *Rosa*, 2024 WL 4903619, at *11.

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - 17
(Case No. 2:25-cv-00659-TSZ)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

material distinctions between those cases and this one are obvious: (1) X Corp. is not seeking a court order vacating an arbitral award or challenging the confirmation of an award—rather, Petitioners are asking the Court to intervene in an arbitration-related dispute without contractual support to do so. The deference owed to arbitrators when reviewing motions to vacate is irrelevant in other contexts. *Cf. Brown*, 2023 WL 8800728, at *2-3 (disagreeing with AAA's fee-sharing decision and providing no deference to it). And (2) in Petitioners' cases, the *arbitrator* made the decision—not the arbitration provider. That difference is salient here, since the DRA delegated fees-allocation to the Arbitrator, not JAMS or AAA. There is no basis, in law or the DRA, to defer to the position of these arbitral organizations in these circumstances.

Petitioners assert *ipse dixit* that incorporating JAMS's and AAA's rules into the DRA "clearly and unmistakably intended for JAMS and AAA to resolve any threshold issues, including questions about the proper allocation of arbitration fees." Mot. 16. As discussed above, no DRA incorporates AAA rules. *See supra* pp. 12-13. And for the DRAs that incorporate JAMS Rules, Petitioners do not identify a single rule granting JAMS this power. Instead, they block-quote *Ma*, but that decision (and *Frazier*, on which it relied) *also* fails to cite any such rule. Instead, *Ma* discusses other decisions that JAMS may make under JAMS Rules, but cites no rule giving JAMS authority to apportion fees between parties. *Compare Ma*, 2025 WL 436636, at *7 (citing JAMS Rules 5, 6, 9, 11), *with* JAMS Rule 5 (JAMS "issues a Commencement Letter" confirming whether requirements are met and fees are paid, but never granting JAMS authority to decide fee allocation disputes); JAMS Rule 6 ("JAMS may convene … administrative conferences to discuss any procedural matter"; discussion is not allocating fees); JAMS Rule 9 (JAMS's authority to "grant reasonable extensions of time to file a response" obviously does not relate to fees); JAMS Rule 11 (allowing JAMS to resolve disputes "concerning the appointment of the Arbitrator," not the allocation of fees); JAMS Rule 24(f) (noting the arbitrator, not JAMS, decides fee-allocation). This discussion only shows that the JAMS Rules are specific when granting JAMS certain

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - 18
(Case No. 2:25-cv-00659-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

administrative authority, so the lack of authority to allocate fees speaks volumes.[11] *Frazier* includes even less discussion of the DRA and arbitral Rules, instead resorting to policy discussion. 739 F. Supp. 3d at 227-30. Both *Ma* and *Frazier*, which are on appeal to the Ninth and Second Circuits, respectively, fail to identify any authority for this Court to defer to or enforce JAMS's and AAA's fee-sharing positions.[12]

"Because arbitration is a creature of contract, the AAA's [and JAMS's] departure from the contractual [fees allocation and related] process fundamentally contradicts its role in voluntary dispute resolution." *Brook*, 294 F.3d at 673. For that reason, X Corp. respectfully submits that *Frazier* and the dicta in *Ma* are wrong, and *Rosa*'s contrary holding that the express terms of the DRA (not JAMS's decision) control is much more persuasive.[13]

**Second**, and in any event, JAMS's or AAA's position cannot supersede the plain terms of the DRA. The law is clear that a general agreement to arbitrate under the rules of JAMS or AAA does not negate a contrary, specific contractual term addressing the payment of arbitration fees. As one court explained, with reasoning that applies equally here, a specific provision on fees controls over a general reference to arbitration rules. *Goobich v. Excelligence Learning Corp.*, 2020 WL 5593011, at *3 (N.D. Cal. Sept. 18, 2020) (noting that incorporation of the AAA

---

[11] Petitioners also imply (at 1-2) that *Ma* held that "JAMS's determination that Twitter must pay the fees comported with Twitter's arbitration agreement," but that is not so. *Ma* simply opined (in dicta) that JAMS had the authority to make initial determinations based on a misreading of JAMS rules and ignoring DRA § 6.

[12] Oddly, Petitioners quote a provision of the JAMS Minimum Standards—which are not incorporated into the DRA—that says JAMS must "comply with" certain judicial determinations. *See* Mot. 6. That Minimum Standards provision is inapposite because it only applies when a party "contests the enforceability of" an arbitration agreement or "if compliance with the Minimum Standards is in question." JAMS Minimum Standards at 5. But here, all parties agree the DRA is enforceable and the issue is whether the Minimum Standards apply at all. And even if this provision did apply, it says nothing about the court deferring to JAMS. *Id.*

[13] Petitioners also suggest (at 8) that the court in *Gadala v. Twitter, Inc.* ordered Twitter to pay all arbitral fees in a manner relevant to this petition. That is wrong. The parties there filed a *stipulation* to dismiss that plaintiff's class action complaint, which was entered by the Court with no legal analysis. *See Gadala*, No. 3:23-cv-01595-JSC, Dkt. 17 (N.D. Cal. May 15, 2023).

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - 19
(Case No. 2:25-cv-00659-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Employment Rules does not allow application of AAA's fee schedule if it would conflict with "the specific provision" on fee sharing in the arbitration agreement); *see also Brady v. Williams Cap. Grp., L.P.*, 14 N.Y.3d 459, 465, 928 N.E.2d 383 (2010) ("[T]he terms of the parties' Arbitration Agreement, rather than the AAA rules, control[]."); *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1100 (N.D. Ill. 2015) ("[A]ny default fee provisions in the … JAMS rules are overridden by the express Agreement that the parties signed.").

Any other interpretation of the DRA would make its express fee-sharing provision superfluous, in violation of basic contract principles. *See Univ. Ins., LLC v. Allstate Ins. Co.*, 564 F. Supp. 3d 934, 941 (W.D. Wash. 2021); 11 *Williston on Contracts* § 32:5 (4th ed. 2024) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous[.]"). Interpreting the DRA to require X Corp. to pay all arbitration fees and Arbitrator compensation in all 143 cases represented here—irrespective of "applicable law" or the claimant's ability to pay—would deprive the DRA's explicit fee-sharing provision of any meaningful effect. That is not a plausible reading of the contract.[14]

As noted above, the DRA makes clear that because no applicable law requires otherwise, the arbitration and Arbitrator fees must be "apportioned between the parties." DRA § 6. And the incorporated JAMS Employment Rules, which explicitly provide that when an agreement to arbitrate is not a condition of employment, "unless the Parties have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees and expenses." JAMS Rule 31(a). The DRA makes clear—explicitly, multiple times, and in bold font—that it is *not* a mandatory condition of employment and that employees can choose to opt out of the agreement. *Rosa*, 2024

---

[14] Petitioners may argue, as the court in *Frazier* did, 739 F. Supp. 3d at 231, that applying the Minimum Standards would not make DRA § 6 superfluous because the Minimum Standards do not apply to agreements that are individually negotiated with counsel. That argument does not work because the DRA is a form contract. The "individually negotiated" exception will never apply to it and, if Petitioners' reading is correct, DRA § 6's mandate to apportion arbitration and Arbitrator fees between the parties will indeed be superfluous.

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - 20
(Case No. 2:25-cv-00659-TSZ)

WL 4903619, at *10; *supra* pp. 2, 11-12; *see also, e.g.*, *Young*, 2022 WL 3012536, at *5 ("opt-out provision" is "[o]ne of the typical indicia that a contract is not a condition of employment"); *Marino*, 698 F. Supp. 3d at 695 (opt-out provision "negate[d] any suggestion plaintiff was forced to enter into the Arbitration Agreement"); *Essex v. Children's Place, Inc.*, 2017 WL 6000347, at *5 (D.N.J. Dec. 4, 2017) (agreement that "expressly state[s]" that it "is not a mandatory condition of employment" and "has a clear 'opt out' provision" is not a condition of employment); *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839, 848 (W.D. Tex. 2016) (existence of an opt-out provision meant "plaintiffs were not even required to accept the arbitration agreement"). Nothing about the DRA requires X Corp. to pay more than its pro rata share of the arbitration fees.[15]

**Finally**, Petitioners resort to policy arguments, claiming the arbitrations "cannot move forward" unless X Corp. pays all the fees. Mot. 14; *see id.* at 10 (claiming they "are left at a standstill, prevented" from proceeding "in court" or "from proceeding in the agreed-upon arbitral forums"). But Petitioners know that is not true. Both JAMS Rule 31(c) and AAA rules allow claimants to pay their half of the fees. Petitioners recognize as much, but then argue that "this option does not create an obligation for the claimants to do so." Mot. 14. Of course, X Corp. has argued no such thing. It has argued that the *DRA*—the arbitration agreement—creates the obligation to do so. Even if they disagree, their option to move the arbitrations forward disproves their assertion that the arbitrations "cannot" proceed to an Arbitrator unless X Corp. pays more than its share of fees.

And if a claimant does not want to take this option to move the arbitrations forward to an Arbitrator, they also have another option: ask JAMS or AAA to close their arbitration to allow

---

[15] For the same reasons, the JAMS Minimum Standards do not affect X Corp.'s obligations under the DRA. One DRA version incorporates the JAMS Employment Rules, but it does not incorporate the Minimum Standards. *See* DRA §§ 3, 5. That is unsurprising, because the Minimum Standards apply only where "an arbitration is based on a clause or agreement that is required as a condition of employment," Minimum Standards ¶ B—which the DRA explicitly is not. In any event, even if the Minimum Standards were to apply, they could not supersede the parties' explicit agreement in Section 6 of the DRA to apportion the arbitration fees between the parties.

RESPONDENTS' OPPOSITION TO MOTION TO
COMPEL ARBITRATION - 21
(Case No. 2:25-cv-00659-TSZ)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

them to proceed in court. That is what happened in *Wallrich*. Even where, unlike here, the agreement ostensibly "delegated threshold arbitration fee disputes to the AAA," and AAA responded to a refusal to pay all fees by dismissing the arbitrations, the court still did not order the employer to pay the fees but instead permitted the claimants to file suit in court. 106 F.4th at 620-22. If either JAMS or AAA closes the administrative file in a claimant's case, X Corp. is prepared to proceed against that claimant in court. Since Petitioners have the option to proceed either in court or in arbitration (assuming they accepted the DRA and did not opt out), there is no reason to override the parties' agreement, even if that were permissible under FAA § 4.

## CONCLUSION

For these reasons, the Court should deny Petitioners' motion.

DATED this 23rd day of June, 2025.

*I certify that this memorandum contains 8,397 words, in compliance with the Local Civil Rules.*

### MORGAN, LEWIS & BOCKIUS LLP

By: *s/ Claire M. Lesikar*
Claire M. Lesikar, WSBA #60406
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: claire.lesikar@morganlewis.com

Michael E. Kenneally (*admitted pro hac vice*)
James D. Nelson (*admitted pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: 202-739-3000
Email: michael.kenneally@morganlewis.com
Email: james.nelson@morganlewis.com

*Attorneys for Respondents Twitter, Inc. and X Corp.*

Exhibit C

Hon. Thomas Zilly

1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

11

12

13     NIMIT ACHARYA *et al.*,

14          Petitioners,

15     v.

16     TWITTER, INC. and X CORP.,

17          Respondents

18

CASE NO.: 2:25-cv-00659-TSZ

**PETITIONERS' REPLY IN**
**SUPPORT OF THEIR MOTION**
**TO COMPEL ARBITRATION**

NOTE ON MOTION CALENDAR:
July 7, 2025

19

20

21

22

23

24

25

26

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO          LICHTEN & LISS-RIORDAN, P.C.
COMPEL ARBITRATION — i                                           729 Boylston Street, Suite 2000
CASE NO. 2:25-cv-00659-TSZ                                      Boston, Massachusetts 02116
                                                                              (617) 994-5800

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 3

      A.    All Petitioners have signed arbitration agreements with Twitter that
            expressly delegate all relevant issues to arbitration. ............................... 3

      B.    This Court must honor JAMS' and AAA's rulings on delegated
            issues. ......................................................................................................... 4

      C.    Regardless, JAMS and AAA correctly interpreted their own
            (incorporated) rules and the parties' arbitration agreement. .................... 7

      D.    A stay pending resolution of the appeal in *Ma* is not available here. .................... 9

III.  CONCLUSION .................................................................................................. 11

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO
COMPEL ARBITRATION — i
CASE NO. 2:25-cv-00659-TSZ

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

# TABLE OF AUTHORITIES

**CASES**

*California Dep't of Toxic Substances Control v. Exxon Mobil Corp.*,
    2024 WL 645417 (E.D. Cal. Feb. 14, 2024) ....................................................... 8

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ...................................................................................... 3, 9

*Delano v. Mastec, Inc.*,
    2010 WL 4809081 (M.D. Fla. 2010) ................................................................ 9

*First Nat. Bank of Milaca v. Heimann*,
    572 F.2d 1244 (8th Cir. 1978) ......................................................................... 8

*Frazier v. X Corp*,
    739 F. Supp. 3d 219 (S.D.N.Y. 2024) ......................................................... 1, 5, 7

*Green Mountain Chrysler Plymouth Dodge Jeep v. Torti*,
    2006 WL 8567240 (D. Vt. May 3, 2006) ...................................................... 11

*Howard v. Ferrellgas Partners, L.P.*,
    748 F.3d 975 (10th Cir. 2014) ......................................................................... 9

*In re Marriage of Kostelnik*,
    381 Mont. 182 (2015) ...................................................................................... 8

*In re Marriage of Morris*,
    266 Ill. App. 3d 277 (1994) ............................................................................. 8

*Lamps Plus, Inc. v. Varela*,
    587 U.S. 176 (2019) ........................................................................................ 8

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) .................................................................................. 9, 10

*Ma v. Twitter, Inc.*,
    2025 WL 436636 (N.D. Cal. Feb. 7, 2025) ............................................. 1, 5, 10

*MacClelland v. Cellco P'ship*,
    609 F. Supp. 3d 1024 (N.D. Cal. 2022) ......................................................... 10

*Maheu v. Twitter*,
    1:25-cv-836 (S.D.N.Y. 2025) ......................................................................... 2

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO
COMPEL ARBITRATION — ii
CASE NO. 2:25-cv-00659-TSZ

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................... 9

*Nat'l Bulk Carriers v. United States*,
    183 F.2d 405 (2d Cir. 1950) ................................................................. 8

*Poland v. Martin*,
    761 F.2d 546 (9th Cir. 1985) ............................................................... 7

*Rosa v. X Corp.*,
    2024 WL 4903619 (D.N.J. Nov. 27, 2024) ....................................... 1

*Simpson v. Hand*,
    1840 WL 3924 (Pa. 1840) .................................................................... 8

*United States v. Coeur d'Alenes Co.*,
    767 F.3d 873 (9th Cir. 2014) ............................................................... 8

*Woodfield v. X Corp.*,
    No. 1:23-cv-00780-JLH (D. Del. 2023) ............................................. 1

*X Corp v. McGrath*,
    3:25-cv-00748 (S.D.Cal. 2025) ........................................................... 1

*X Corp. v. Adusei*,
    4:25-cv-02926 (N.D.Cal. 2025) ..................................................... 1, 2

*X Corp. v. Bahr*,
    2:25-cv-02766 (C.D.Cal. 2025) ......................................................... 1

**STATUTES**

9 U.S.C. § 3 ............................................................................................... 7

9 U.S.C. § 4 ............................................................................................... 7

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO
COMPEL ARBITRATION — iii
CASE NO. 2:25-cv-00659-TSZ

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

## I.    INTRODUCTION

In its opposition, Twitter repeats the same arguments that have been repeatedly rejected by multiple adjudicators — namely two different federal courts, both of the parties' chosen arbitration providers (JAMS and AAA), and the only individual arbitrator known to have explicitly addressed the issue in a written decision.[1] Despite these decisions, Twitter seeks to draw the Court into an inappropriate *de novo* review of interim arbitration decisions[2] and employ the Court's help in further delaying its former employees' efforts to have their cases arbitrated,

---

[1]    *Frazier v. X Corp*, 739 F. Supp. 3d 219, 221–31 (S.D.N.Y. 2024); *Ma v. Twitter, Inc.*, 2025 WL 436636, at *1–13 (N.D. Cal. Feb. 7, 2025); Dkt. 1-4, 1-5 (memorializing JAMS' determination that Twitter is responsible for all arbitration fees other than the case initiation fees borne by Petitioners); Dkt. 1-8, 12-4, 12-5, 21 at Ex. 3 (same as to AAA); *Woodfield v. X Corp.*, No. 1:23-cv-00780-JLH (D. Del. 2023) at Dkt. 54 (attaching arbitration decision in *Yunfeng Zhang v. Twitter, Inc., et al.*) (attached as Ex. 2) (individual arbitrator's decision holding Twitter is "required to pay all the JAMS fees and arbitrator fees (other than the initial case management fees)").  While Twitter heavily relies upon the only authority going in the opposite direction— *Rosa v. X Corp.*, 2024 WL 4903619 (D.N.J. Nov. 27, 2024), *designated as "Not For Publication*,"—this decision is both a deeply flawed outlier and a product of the parties' poor briefing. The *Rosa* court itself repeatedly noted that litigant, Rosa, had "either not provided case law or properly addressed Twitter's claims" and chided him *ad nauseam* for failing to make numerous arguments, cite caselaw, or provide evidentiary support of his factual contentions, "all the while neglecting to substantively address many of Twitter's arguments." *Id.* at *10–13. At the same time, the *Ma* court persuasively explained why, after "[h]aving reviewed both *Frazier* and *Rosa*," it found *Frazier*'s reasoning to be correct, highlighting that "*Rosa* did not cite *Frazier*, nor did it address questions regarding delegation or the meaning of 'apportion.'" *Ma*, 2025 WL 436636, at *5–9. Like the *Ma* court, this Court should decline to follow *Rosa* and instead follow the groundswell of contrary decisions requiring Twitter to pay these fees.

During arbitration proceedings, retired Washington Supreme Court Justice Faith Ireland orally stated that this was not a close question, that Twitter was required to pay the full fees under its arbitration agreement, and that she would put such a determination into a written decision, but she ultimately did not do so because Twitter argued that the arbitration should be stayed pending resolution of this dispute in court. Ex. 1 (Liss-Riordan Decl.) ¶ 3.

[2]    These tactics are not new; *Twitter* has filed several of its own Petitions to Compel Arbitration (even where employees filed arbitration demands and insisted on arbitrating) in an effort to get as many bites at the apple as possible through trying to draw courts into analyzing this fee dispute *de novo*—tactics for which the undersigned counsel have filed motions for sanctions. *See X Corp. v. Adusei*, 4:25-cv-02926 (N.D.Cal. 2025); *X Corp. v. Bahr*, 2:25-cv-02766 (C.D.Cal. 2025); *X Corp v. McGrath*, 3:25-cv-00748 (S.D.Cal. 2025).

---

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

despite agreeing to arbitrate these disputes — and by doing so, agreeing to arbitrate under the rules and jurisdiction of the arbitration providers, JAMS and AAA.[3] Twitter's efforts should be rejected, and it should be compelled to arbitrate as it agreed to do.

Twitter continues to play shell games with former employees' arbitration agreements, pretending they do not exist when convenient while readily invoking them whenever Twitter is sued in court. Although Twitter well knows that Petitioners signed these agreements (and possesses them), for the avoidance of doubt, Petitioners attach their signed agreements to this reply. Ex. 3. These agreements unambiguously delegate all relevant issues to arbitration, including the determination of arbitration fees, the application of JAMS/AAA rules, the interpretation of the agreements, and whether Petitioners were required to sign the agreements as a condition of employment. Because the parties agree that these are all delegated issues, both binding caselaw and the parties' agreed-upon rules make clear that JAMS/AAA are invested with the power to make initial fee determinations before the appointment of individual arbitrators. The Court must enforce those decisions, regardless of how it may have interpreted the agreement itself.  Notwithstanding, JAMS and AAA correctly interpreted their rules and the parties' agreements.

Perhaps recognizing its perilous position, Twitter seeks further delay, arguing for a stay pending appellate resolution of a separate case—a position another court recently rejected. *See Adusei*, 4:25-cv-02926 (N.D. Cal. 2025) at Dkt. 30 (attached as Ex. 4) (declining to stay Petition to Compel Arbitration pending the Ninth Circuit's resolution of *Ma*). Such a stay is unavailable here: The FAA requires this Court to adjudicate Petitioners' motion without delay, and a stay is

---

[3]    Before Twitter changed its mind about wanting to arbitrate cases brought by its former employees (after more than 2,000 of them filed claims), Twitter paid the fees it was ordered to pay (including for several arbitrations in Washington, as well as others around the country) which resulted in an arbitration for which the Claimant moved to enforce the award. *See* Ex. 1 (Liss-Riordan Decl.) ¶ 2; Dkt. 10-1 ¶ 7; *Maheu v. Twitter*, 1:25-cv-836 (S.D.N.Y. 2025) at Dkt. 32.

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO COMPEL ARBITRATION — 2
CASE NO. 2:25-cv-00659-TSZ

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

otherwise unwarranted.

Finally, in a new twist, Twitter now contradicts its prior unequivocal (and legally-supported) position, made in earnest to other courts, *see* Ex. 5 at 11, 17-19, that proceedings to compel arbitration under Section 4 of the FAA is the proper vehicle for resolving this fee dispute. But Twitter is estopped from making this contradictory argument. Regardless, Twitter has not refuted Petitioners' authority demonstrating that this dispute is ripe for adjudication.

## II.    ARGUMENT

### A.    All Petitioners have signed arbitration agreements with Twitter that expressly delegate all relevant issues to arbitration.

Twitter's starting argument—that it is not clear Petitioners all signed arbitration agreements—should be rejected.  Twitter knows they did, but for the avoidance of doubt, Petitioners attach their signed agreements. Ex 3.[4]

As Twitter has acknowledged to other courts, this fee dispute is "clearly encompassed by the parties' arbitration agreement" and accordingly, "[t]he FAA 'leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Ex. 5 (Twitter's Mot. to Compel Arbitration in *Woodfield*) at 13, 18 (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985)). Indeed, the arbitration agreement expressly delegates to arbitration the very issues Twitter here presses this Court to decide, including:

> any dispute arising out of or related to Employee's employment…or termination of employment,….without limitation, disputes arising out of or relating to interpretation or application of this Agreement….disputes regarding the employment relationship, [or]

---

[4]    One of the Petitioners was unable to locate a signed copy of his arbitration agreement and has thus submitted an unsigned agreement along with a signed declaration stating that he signed this standard agreement. Ex. 6. Given Twitter has not, and cannot, dispute that this Petitioner has a valid arbitration agreement, he has "prove[n] by a preponderance of the evidence that the parties formed an agreement to arbitrate." *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022).

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

1    terms and conditions of employment…. disputes that otherwise would be resolved in a

2    court of law or before a forum other than arbitration…., and any disputes [ ] that regard

     [fee apportionment].

3    Ex. 3. Thus, as Twitter has argued to other courts, *see* Ex. 5, this Court is simply not empowered

4    to decide the issues Twitter raises, including whether the agreement was "required as a condition

5    of employment," the proper interpretation of JAMS/AAA rules, and fee apportionment.

6        **B.        This Court must honor JAMS' and AAA's rulings on delegated issues.**

7            For most Petitioners, Twitter's arbitration agreement provides for arbitration "according

8    to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures

9    ('JAMS Rules')." Ex. 3; Ex. 6. The JAMS Minimum Standards are expressly incorporated into

10   the JAMS Employment Rules by Rule 2(a), which states that parties must arbitrate "consistent

11   with the applicable law and JAMS policies (including, without limitation, the JAMS Policy on

12   Employment Arbitration Minimum Standards of Procedural Fairness[).]" *JAMS Rules*, available

13   at https://www.jamsadr.com/rules-employment-arbitration/english. These Minimum Standards

14   apply when arbitration is "required as a condition of employment," which means "a condition of

15   **initial *or* continued** employment," and they require the company to bear all arbitration fees

16   other than an employee's initial filing fee. Dkt. 1-3 (emphasis added). They further make clear

17   that JAMS is responsible for initially determining their applicability. *Id.*

18           For all other Petitioners (whose agreements do not specify an arbitration provider or

19   applicable rules), Twitter agreed "to having those claims proceed with the AAA and subject to

20   AAA rules," Emails with Eric Meckley (attached as Ex. 8), and then further agreed "to authorize

21   the AAA to administer" the disputes "under its Employment Arbitration Rules, and

22   Supplementary Rules for Multiple Case Filings," AAA Agreement (attached as Ex. 9).[5]

23   _____

24   [5]        Twitter's suggestion that, for AAA Petitioners, it offered to "advance claimants' portion
     of the arbitral fees," Opp. at 4, is misleading: in exchange for agreeing to "advance" fees it was
25   already ordered to pay, Twitter demanded that such Petitioners agree to forever waive their right
     to challenge any future decisions requiring Petitioners to pay these fees—an offer Petitioners
26

As both the *Ma* and *Frazier* courts explain, the arbitration agreement and JAMS Rules (including the incorporated JAMS' Minimum Standards) delegate the initial question of fee apportionment to the JAMS General Counsel. *Ma,* 2025 WL 436636, at *7–9 (first quoting JAMS Rules, then quoting *Frazier*, 739 F. Supp. 3d at 226–28); *accord Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1184 (9th Cir. 2025). The AAA Rules likewise delegate initial fee determinations to AAA as an entity.[6]

Contrary to Twitter's claims, countless courts—including the Ninth Circuit and other courts in this Circuit—have repeatedly explained that courts must defer to these arbitration

---

rejected (and one that does not negate Twitter's failure to arbitrate in accordance with their actual agreements). *See* Dkt. 12-1 ¶ 22.

[6]      *See* Dkt. 1-9 (AAA Employment/Workplace Fee Schedule – Costs of Arbitration) (repeatedly reiterating AAA's discretion to assess fees and interpret its own fee schedules); AAA Supplementary Rules for Multiple Case Filings, *available at* https://www.adr.org/media/j1alswkc/supplementary_rules_multiplecase_filings.pdf ("In its sole discretion, the AAA has the authority to interpret and apply these Supplementary Rules. The AAA will make initial determinations with respect to administrative issues where necessary in order to apply these Supplementary Rules….Administrative fees will be billed according to the applicable Multiple Case Filings Administrative Fee Schedule. . . . .Administrative fees, as well as arbitrator compensation and expenses, for each Multiple Case Filing will be billed and must be paid prior to the AAA completing the applicable administrative procedures…..After all filing requirements have been met, including payment of the AAA's initial administrative fees, and prior to the appointment of arbitrators to determine the merits (the Merits Arbitrator(s)), any party may notify the AAA and opposing parties in writing that the party disagrees with the AAA's initial determination as to any administrative issue(s). [ ] Upon receipt of a party's written notice of disagreement with an administrative determination made by the AAA with respect to a particular Multiple Case Filing,…the AAA in its sole discretion may decide whether or not to appoint an arbitrator (the Process Arbitrator) to hear and determine the administrative issue(s)…."); *accord* AAA Employment Arbitration Rules and Mediation Procedures, *available at* https://www.adr.org/media/sj3jfivl/employmentrules_web_3.pdf ("When parties agree to arbitrate under these rules…they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct….All other procedures shall be interpreted and applied by the AAA….[T]he AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time [of] the demand for arbitration…shall be applicable.").

---

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO
COMPEL ARBITRATION — 5
CASE NO. 2:25-cv-00659-TSZ

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

providers' interpretations of their own rules with the same level of deference as individual

arbitrators. For example, in *Jones*, 129 F.4th at 1183–85, the Ninth Circuit stated:

> It strains credulity to believe that it is the business of a federal court to second-guess an independent arbitration provider's application of its own rule—a rule incorporated into the parties' agreement…. Jones may be dissatisfied with JAMS's interpretation of its own rules, but the JAMS Rules are what she agreed to and she can seek recourse within those Rules.

Moreover, the Ninth Circuit recognized that:

> [I]t is inescapable that JAMS would have to make certain procedural decisions prior to the selection of an arbitrator, not least because the Terms incorporated the JAMS Rules. Rule 1(c) states: "The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ('NAC') …." Rule 6 outlines several pre-arbitration administrative decisions that JAMS can make. Rule 11(a) conditions an arbitrator's authority to resolve disputes about the JAMS Rules on the arbitrator's being appointed, implying that at least some JAMS rules can be applied and effectuated prior to such appointment.

*Id.* at 1184.[7]

Accordingly, this Court should not conduct its own analysis of the parties' fee dispute or

the application of the JAMS/AAA Rules, JAMS Minimum Standards or AAA Fee Schedules.

---

[7]    *Accord Prudential Real Est. Affiliates, Inc. v. Prudential MGM Realty, Inc.*, 959 F.2d 241 (9th Cir. 1992) ("The AAA's application of its own rules is significant, particularly because the parties had agreed that the AAA would administer the arbitration according to AAA's commercial arbitration rules."); *Vital Pharms. Inc. v. PepsiCo Inc.*, 2022 WL 2176528, at *3 (D. Ariz. June 16, 2022) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)) ("The Court has no warrant to disturb the AAA's interpretation of its own rules."); *Hagan v. Park Miller LLC*, 2020 WL 7319357, at *4 (N.D. Cal. Dec. 11, 2020), *order clarified,* 2021 WL 1688347 (N.D. Cal. Apr. 29, 2021) ("[I]t is for the AAA, not the Court, to decide whether the AAA consumer or commercial rules apply….Even if Park Miller is right that the AAA erred in this decision, Park Miller breached its arbitration agreement by refusing to abide by the AAA's decision. Neither the parties' agreement nor any other authority cited by Park Miller empowers the Court to second-guess the AAA's decision or otherwise short-circuit the arbitration process. Park Miller must submit to arbitration and abide by the AAA's determinations regarding which AAA rules to apply."); *see also, e.g.*, *Idea Nuova, Inc. v. GM Licensing Grp., Inc.*, 2010 WL 10041842, at *3–5 (S.D.N.Y. Oct. 18, 2010) ("The…prohibition on interlocutory review of interim rulings by arbitrators similarly applies to threshold determinations by the AAA.").

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO
COMPEL ARBITRATION — 6
CASE NO. 2:25-cv-00659-TSZ

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

Rather, Twitter should be ordered to arbitrate in accordance with JAMS' and AAA's own

interpretations and applications of their own rules.

### C.   Regardless, JAMS and AAA correctly interpreted their own (incorporated) rules and the parties' arbitration agreement.

Although the Court should not engage in its own interpretation of the contractual

language and arbitral rules, if the Court reaches such issues, it should find that JAMS and AAA

correctly determined that Twitter must pay all fees other than initial filing fees.

**First,** the *Frazier* decision persuasively outlines why these agreements are indeed

required as a condition of employment, even if arbitration is not. *See Frazier*, 2024 WL

3370887, at *7–9. Also, the Minimum Standards themselves make clear that the phrase refers to

"a condition of **initial** or continued employment." Dkt. 1-4 (emphasis added). Here, employees

were required to sign these arbitration agreements *as a precondition to accepting Twitter's job*

*offer*. *See, e.g.*, Ex. 7 ("To accept this offer, please…sign and date…[the] Dispute Resolution

Agreement….This offer will expire if the signed documents are not returned by January 16,

2022."). Only after first agreeing to the arbitration agreement could Petitioners avail themselves

of the opt-out provisions, rendering the agreement required for initial employment. *Accord*

*Frazier* at *7.

**Second,** given the applicability of the JAMS Minimum Standards, Twitter's sole

remaining argument is that the contractual term "apportioned" intrinsically means "split evenly."

But a litany of blackletter contract law principles, dictionaries, and cases all make this

interpretation untenable.

For starters, when a contractual term is unambiguous, courts must simply apply "the plain

meaning that a lay person would normally attach to them," and "should not strain for

interpretations to create ambiguities where none exist." *Poland v. Martin*, 761 F.2d 546, 548 (9th

Cir. 1985). Courts are only to resort to dictionary definitions when a term is genuinely

ambiguous. *Id.* But to the extent the term "apportioned" is ambiguous, Twitter drafted the

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO
COMPEL ARBITRATION — 7
CASE NO. 2:25-cv-00659-TSZ

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

agreement and failed to make clear what it now contends the agreement says—that the fees

should be split evenly by the parties. As the drafter of the agreement, the doctrine of *contra*

*proferentem* "resolves the ambiguity against the drafter," especially given "the parties' relative

bargaining strength." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 186 (2019). Regardless, even

were the Court to turn to dictionaries as Twitter implores, "apportion" does not automatically

mean a 50/50 split (and could mean, as JAMS/AAA ordered, that Petitioners pay their case

initiation fees and Twitter pays all other fees).[8] Twitter argues that because certain dictionary

definitions of "apportion" reference allocating "proportionally," this must in turn mean "evenly."

But this is wrong.[9]

Likewise, courts interpreting the word "apportioned" in various contexts have

consistently held that it does not require equal splitting.[10]  In fact, interpreting nearly identical

---

[8]     Twitter could easily have used clear language if it intended for fees to be split equally.
*See, e.g.*, *King Cnty. v. Swiss Reinsurance Am. Corp.*, 2005 WL 8172767, at *1 (W.D. Wash.
Aug. 31, 2005) (arbitration agreement provided, "Unless otherwise allocated by the arbitrators,
all costs of the arbitration proceedings, including the fees of the arbitrators, shall be borne
equally by the parties"); *Big City Small World Bakery Cafe, LLC v. Francis David Corp.*, 265 F.
Supp. 3d 750, 754 (E.D. Mich. 2017) (arbitration agreement provided, "All fees and expenses of
the arbitration shall be borne by the parties equally").

[9]     *See, e.g.*, *First Nat. Bank of Milaca v. Heimann*, 572 F.2d 1244, 1249 (8th Cir. 1978)
("The term 'in proportion to' is not precise; it may mean any one of several things."); *Nat'l Bulk
Carriers v. United States*, 183 F.2d 405, 410 (2d Cir. 1950) (Hand, C.J., dissenting) (emphasis
added) ("I do not mean that I should divide the damages **equally**, if I were free to divide them
**proportionately** to the relative fault of the vessels. **An equal division in this case would be
plainly unjust; they ought to be divided in some such proportion as five to one**.").

[10]     *See, e.g.*, *California Dep't of Toxic Substances Control v. Exxon Mobil Corp.*, 2024 WL
645417, at *4 (E.D. Cal. Feb. 14, 2024) (citing *United States v. Coeur d'Alenes Co.*, 767 F.3d
873, 877 (9th Cir. 2014)) ("However, apportionment does not necessarily need to be exactly
proportional to fault."); *Simpson v. Hand*, 1840 WL 3924, at *6 (Pa. 1840) ("A]pportion' does
not mean equally divided."); *In re Marriage of Morris*, 266 Ill. App. 3d 277, 281 (1994) ("Just or
equitable apportionment does not necessarily mean equal division."); *In re Marriage of
Kostelnik*, 381 Mont. 182, 188 (2015) ("[C]ontrary to Daniel's argument, equitable
apportionment does not require an equal distribution of the marital estate.").

---

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO
COMPEL ARBITRATION — 8
CASE NO. 2:25-cv-00659-TSZ

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

language in an arbitration agreement, the court in *Delano v. Mastec, Inc.*, 2010 WL 4809081, at

*6 (M.D. Fla. 2010) (cleaned up), found: "[T]he arbitration agreement's provision that arbitrator

and arbitration fees 'will be apportioned between the parties by the Arbitrator in accordance with

applicable law' is not informative as to the likely allocation of arbitration fees."

### D.     A stay pending resolution of the appeal in *Ma* is not available here.

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while

a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am.*

*Co.*, 299 U.S. 248, 255 (1936). Here, the Court lacks authority to grant a stay. Even if it could

grant a stay, as another district court in this Circuit recently explained in parallel proceedings

where Twitter urged a stay in light of *Ma*, it should not do so.

"[T]he power to stay proceedings is incidental to the power inherent in every court to

control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants," *id.* at 254–55, and "[a] district court's decision to grant or deny a stay

is a matter of discretion,"[11] However, "the inherent powers of the courts may be controlled or

overridden by statute or rule,"[12] and "[b]y its terms, the [FAA] leaves no place for the exercise of

discretion by a district court, but instead mandates that district courts *shall* direct the parties to

proceed to arbitration on issues as to which an arbitration agreement has been signed."[13]

Accordingly, this Court lacks authority to stay these proceedings.

---

[11]     *Nw. Coal. for Alternatives to Pesticides v. U.S. E.P.A.*, 2012 WL 2343279, at *3 (W.D. Wash. June 20, 2012).

[12]     *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024) (quoting *Degen v. United States*, 517 U.S. 820, 823 (1996)).

[13]     *Byrd*, 470 U.S. at 218 (citing 9 U.S.C. §§ 3, 4) (emphasis in original); *accord, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) ("Congress's clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) (Gorsuch, J.).

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO
COMPEL ARBITRATION — 9
CASE NO. 2:25-cv-00659-TSZ

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

Even if the Court could stay this matter pending the Ninth Circuit's eventual decision in *Ma*, it should not do so. The party advocating "for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 254–55. But, as another federal court addressing this same fee dispute recently explained, even accepting "a stay would strongly promote judicial efficiency," Twitter "does not assert any hardship, and the Court does not conclude that the efficiencies to be gained by a stay outweigh [former employees'] asserted hardships," including delaying their ability to vindicate their rights via arbitration. Ex. 4.[14] And, given this (and other) parallel litigation and the indefinite deadline for appellate court decisions in *Ma* and *Frazier*, Twitter's requested *Landis* stay is all the more inappropriate.

Indeed, the indefinite time period of such a *Landis* Stay precludes its availability. Currently, no briefs have been submitted before the Ninth Circuit, let alone arguments scheduled. The Ninth Circuit scheduled four rounds of briefing (one of which is optional) on the cross-appeals in *Ma*, with the final round of briefing currently being due on October 15, 2025. *See Ma, et al. v. Twitter, Inc., et al.*, No. 25-1536 (9th Cir.) at Dkt.15. After all the briefs are filed, oral argument will be scheduled for "approximately 4 months [after the] completion of briefing," and then "[t]he Court has no time limit [for issuing a decision], but most cases are decided within 3 months to a year after submission." UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT, OFFICE OF THE CLERK, *Frequently Asked Questions* (last updated Dec. 2023), https://www.ca9.uscourts.gov/general/faq/. Requiring Petitioners to wait indefinitely for the Ninth Circuit to resolve this issue would be highly prejudicial.

---

[14]    *Accord MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1042 (N.D. Cal. 2022) (cleaned up) ("Delaying the ability of one to vindicate a legal claim [in arbitration] by years…conflicts with one of the basic principles of our legal system—justice delayed is justice denied."). At the same time, any purported harm to Twitter absent granting the stay—namely, having to pay arbitration fees in the first instance—is at most *de mimimus* given Twitter could seek recourse with individual arbitrators once appointed. *See Ma*, 2025 WL 436636, at *8.

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO
COMPEL ARBITRATION — 10
CASE NO. 2:25-cv-00659-TSZ

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

At the same time, as Twitter notes, an appeal of the *Frazier* decision is currently pending before the Second Circuit, and there are many other proceedings scattered across the nation addressing this very same fee dispute. Should there be a Circuit split on any issues presented by these appeals, a *Landis* Stay could spawn cascading delays via the certiorari process. "By the time an appeal, and conceivably a petition for a writ of certiorari is ruled upon, years may have elapsed. Given the unspecified but undoubtedly lengthy stay sought by [Twitter], any judicial economy must yield to the rights of the [Petitioners] to their day in court in their chosen forum." *Green Mountain Chrysler Plymouth Dodge Jeep v. Torti*, 2006 WL 8567240, at *2–3 (D. Vt. May 3, 2006).

## III.    CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court grant their Motion to Compel Arbitration.

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO
COMPEL ARBITRATION — 11
CASE NO. 2:25-cv-00659-TSZ

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

I certify that the foregoing complies with all formatting requirements of this Court and contains 4,199 words, including footnotes and headings but excluding the cover page, this certificate, the tables, and the signature blocks. I relied on the word count of the Microsoft Word computer program used to prepare this brief.

Respectfully submitted,

PETITIONERS NIMIT ACHARYA *et al.*,

By their attorneys,

Michael C. Subit, WSBA No. 29189
**FRANK FREED SUBIT & THOMAS LLP**
Suite 1200, Hoge Building
705 Second Avenue
Seattle, Washington 98104-1729
Telephone (206) 682-6711
Fax: (206) 682-0401
msubit@frankfreed.com
*Local Counsel*

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan (*pro hac vice*)
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com
*Attorneys for Plaintiffs*

Dated:      July 7, 2025

PET'RS' REPLY IN SUPPORT OF THEIR MOT. TO
COMPEL ARBITRATION — 12
CASE NO. 2:25-cv-00659-TSZ

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800