# EXHIBIT 2

| | |
|---|---|
| **From:** | Simins, Richard M. |
| **To:** | Steve@hbsslaw.com; will@bucherlawfirm.com |
| **Subject:** | Elliott et al. v. Valve |
| **Date:** | Wednesday, September 25, 2024 2:46:31 PM |
| **Attachments:** | image001.png<br>Decl of Erik Johnson.pdf |

Dear Mr. Berman and Mr. Bucher,

We've reviewed Plaintiffs' complaint in the *Elliott* action and have identified the following problems with it so far (we reserve all rights). We bring these problems to your attention pursuant to our duty under ¶5.6 of Judge Whitehead's Chambers Procedures to allow you an opportunity to replead and thus eliminate the need for us to file a motion to dismiss, which we plan to do if Plaintiffs do not cure these problems. Please let me know if you have time next week for a meet-and-confer Zoom call to discuss these defects.

- Plaintiffs have not plausibly alleged they suffered an unlawful antitrust injury based on a supracompetitive revenue share. In the developer class action, Judge Coughenour ruled that, under *Somers v. Apple*, 729 F.3d 953 (9th Cir. 2013), "an unlawful antitrust injury predicated on the payment of a supracompetitive fee cannot be plausibly alleged if that fee remains the same when a defendant did and did not have market power." *Wolfire Games, LLC v. Valve Corp.*, 2022 WL 1443744, at *4 (W.D. Wash. May 6, 2022).

    In the developer class action, the developer plaintiffs amended their complaint to avoid a 12(b)(6) dismissal on *Somers* grounds by adding allegations that Valve "acquired the World Opponent Network gaming platform in 2001 and shut it down a few years later, forcing gamers onto the Steam Platform, making Steam 'instantly … a must-have platform.'" *Id.* (citing Second Amended Complaint, Dkt. No. 68, at 16–17). That allegation was based on inaccurate information, and has been confirmed as false in the developer class action.  *E.g.*, Declaration of Erik Johnson, *In re Valve Antitrust Litigation*, 2:21-cv-00563 (Dkt. 320) (attached hereto).

- Plaintiffs have not plausibly alleged facts that could establish Valve has market power. Plaintiffs' allegation that Valve has "at least a 75% market share of the 'PC Game Distribution market'" (¶70) is not supported by any citation or factual allegations. These market share allegations are also facially implausible and contradicted by other allegations in the Complaint. Plaintiffs allege that "[r]eports indicate that the Steam Store generated around $7.4 billion from game sales in 2021, meaning Valve earns approximately $2.2 billion annually from its 30% tax [sic] on Steam sales." *Elliott* ¶10 & n.4 (citing Global PC Games Market Report 2024 (Jan. 3, 2024)). But elsewhere, when discussing Epic's market share, Plaintiffs cite an article stating that "PC digital sales in 2019 were around $30B." *Elliott* ¶ 138 & no. 68 (citing Epic Games Store, behind the numbers). If the $30 billion figure is accepted as true, Plaintiffs' allegation in ¶10 that Valve's $7.4 billion in 2021 revenue would be 24.6% of the market: not enough. The 2024 *Global PC Games Market Report* Plaintiffs cite indicates $4.5 billion in 2019

- revenue for Valve. $4.5 billion of revenue in a $30 billion market translates into an even lower market share of 15%.

- Plaintiffs also fail to plausibly allege antitrust injury because they provide only threadbare and conclusory allegations of harm. These conclusory allegations of harm are not sufficient to plausibly allege that Valve caused an antitrust injury to Plaintiffs. Plaintiffs allege only that they "purchased PC games through the Steam Store" and "paid supracompetitive prices" due to Valve's alleged "anticompetitive practices." *Elliott* ¶¶16-19. However, Plaintiffs plead no detail to support their allegation that the prices they paid were supracompetitive.

- The above defects taint all of Plaintiffs' Sherman Act claims. Plaintiffs tying claims fail for at least two additional reasons:

    - First, Plaintiffs have not alleged sufficient facts to articulate a substantially less restrictive alternative to the "tie" as required by Step 3 of the rule of reason analysis. And Plaintiffs must do so, because allegations in Plaintiffs complaint and prior court orders articulate a pro-competitive rationale for the challenged restraint under Step 2. *See, e.g.,* Compl. ¶65 n.20 (citing Steamworks Documentation for "Microtransactions (In-Game Purchases)," explaining use of Steam for in-game transactions helps prevent fraud). Moreover, in *Epic v. Apple*, Apple's requirement that App Store users must use its payment processing was found to be procompetitive because Apple is entitled to compensation for use of its IP, and requiring the use of Apple payment processing is the "easiest and most direct manner" for Apple to collect the revenue share it charges publishers for the use of its intellectual property. 559 F. Supp. 3d at 1042, *aff'd on this basis*, 67 F.4th at 985-86. So too here. Plaintiffs do not allege any plausible, substantially less restrictive alternatives for Valve.

    - Second, Plaintiffs fail to plausibly plead any antitrust injury from the alleged tie. Plaintiffs only allege that consumers suffer harm because "rival payment processors would also compete on quality, offering more innovative, secure, and reliable payment processing services to attract consumers and enhance their gameplay" and because, without the so-called tie, payment processors "could compete on fees, and there is much room for competition given that the going rate for payment processing hovers around 4%, just a small fraction of the 30% Valve charges for the same service." ¶68. But, as Plaintiffs know and allege, Valve's 30% revenue share is not merely a "payment processing fee," per se; it is the general revenue share that applies to all "game sales and in-game transactions." ¶¶37-38. And the remaining alleged harms are bald assertions. That is insufficient as a matter of law.

Thanks and looking forward to speaking with you.

Best regards,

 **Richard M. Simins** | Partner
**Montgomery McCracken Walker & Rhoads LLP**
1735 Market Street | Philadelphia, PA 19103-7505
Tel: 215-772-7303 | Mobile: 484-343-8708 | Fax: 215-731-3680 | rsimins@mmwr.com | Attorney Profile

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you.