THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | No. 2:21-cv-00563-JNW <br><br> **DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE CONSUMER COMPLAINT** <br><br> **ORAL ARGUMENT REQUESTED** |

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 2

I.  *SOMERS* IS ON POINT AND CONTROLLING ................................................................ 2

    A.    Plaintiffs' Efforts To Evade *Somers* Fail. ............................................................... 2

    B.    Plaintiffs' "Extrinsic Evidence" Arguments Are Meritless. .................................. 6

II.  PLAINTIFFS DO NOT PLAUSIBLY ALLEGE HARM TO CONSUMERS ....................... 8

III. THE COURT SHOULD DISMISS ALL COUNTS WITH PREJUDICE ............................ 11

CONCLUSION .................................................................................................................................. 12

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS - i
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*,
   108 F.3d 1147 (9th Cir. 1997) .................................................................................................. 5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ................................................................................................................ 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................. 2

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) .................................................................................................................. 6

*Destfino v. Reiswig*,
   630 F.3d 952 (9th Cir. 2011) .................................................................................................. 11

*Epic Games, Inc. v. Apple Inc.*,
   559 F. Supp. 3d 898 (N.D. Cal. 2021) ...................................................................................... 8

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ................................................................................................. 4, 7

*Frame-Wilson v. Amazon.com, Inc.*,
   591 F. Supp. 3d 975 (W.D. Wash. 2022) ............................................................................ 9, 10

*Garcia v. Holder*,
   621 F.3d 906 (9th Cir. 2010) .................................................................................................... 2

*Gerlinger v. Amazon.com, Inc.*,
   526 F.3d 1253 (9th Cir. 2008) .............................................................................................. 3, 9

*Hotel Emps. & Rest. Emps. Local 2 v. Vista Inn Mgmt. Co.*,
   393 F. Supp. 2d 972 (N.D. Cal. 2005) ...................................................................................... 8

*In re Aggrenox Antitrust Litig.*,
   199 F. Supp. 3d 662 (D. Conn. 2016) ....................................................................................... 5

*In re Apple iPhone Antitrust Litig.*,
   2022 WL 1284104 (N.D. Cal. Mar. 29, 2022) .......................................................................... 7

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 914 (9th Cir. 2015) .................................................................................................... 3

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS - ii
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

*Langere v. Verizon Wireless Servs., LLC*,
 983 F.3d 1115 (9th Cir. 2020) ................................................................................................ 2

*LLM Bar Exam, LLC v. Barbri, Inc.*,
 271 F. Supp. 3d 547 (S.D.N.Y. 2017) ...................................................................................... 5

*LLM Bar Exam, LLC v. Barbri, Inc.*,
 922 F.3d 136 (2d Cir. 2019) .................................................................................................... 6

*No Spill LLC v. Scepter Can., Inc.*,
 2022 WL 1078435 (D. Kan. Apr. 6, 2022) ............................................................................ 10

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
 472 U.S. 284 (1985) ................................................................................................................ 5

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.*,
 883 F.2d 1101 (1st Cir. 1989) ............................................................................................... 11

*Rockwell v. Chase Bank*,
 2011 WL 2292353 (W.D. Wash. June 7, 2011) ...................................................................... 7

*Rutman Wine Co. v. E. & J. Gallo Winery*,
 829 F.2d 729 (9th Cir. 1987) ................................................................................................ 11

*Somers v. Apple*,
 729 F.3d 953 (9th Cir. 2013) ......................................................................................... 1, 3, 8

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) .................................................................................................. 6

**Rules**

Fed. R. Evid. 201(b) .................................................................................................................... 7

**Other Authorities**

Jonathan B. Baker et al., *Antitrust Enforcement Against Platform MFNs*,
 127 Yale L.J. 2176 (2018) ....................................................................................................... 9

Christopher Derian, Note and Comment, Apple Inc. v. Pepper: *The Future of Software-Based
 Retail—Incalculable Damages and Duplicitous Liability*,
 16 J. Bus. & Tech. L. 317 (2021) .......................................................................................... 10

Steven Salop et al., *Developing an Administrable MFN Enforcement Policy*,
 27 Antitrust 15 (2013) ............................................................................................................. 9

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS - iii
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

Jay B. Sikes, *Antitrust Reform and Big Tech Firms*,
　Cong. Rsch. Serv., R46875, (2023) ........................................................................................ 9

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS - iv
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

# INTRODUCTION

Plaintiffs' so-called "monopoly maintenance" case, Opp'n (Dkt. 552) 8, cannot survive a motion to dismiss when they themselves allege:

- Valve set Steam's revenue share at 30% "[i]n 2005," when it had a tiny share of the market alleged in this case—"around $70 million" in gross revenues, as against Plaintiffs' allegations of "tens of billions in revenues annually" and "billions of dollars in annual digital PC game sales," CAC (Dkt. 473) ¶¶ 1, 2, 39;

- Steam remained in its "relative infancy" until 2009, CAC ¶ 172;

- Numerous big and well-resourced companies have entered the alleged market to compete with Valve, including Microsoft, Amazon, and Google, *see* CAC ¶¶ 145–52 (Epic Games), ¶¶ 153–58 (Electronic Arts), ¶¶ 159–61 (Microsoft), ¶ 162 (Ubisoft), ¶ 163 (Amazon), ¶ 164 (Google), ¶¶ 165–71 (Discord); and

- Valve has never increased prices, despite its claimed monopoly, and instead *lowered* the revenue share on Steam in 2018, CAC ¶ 60 & n.4.

Nothing about this picture is consistent with a monopoly. As the Ninth Circuit held in *Somers v. Apple*, 729 F.3d 953 (9th Cir. 2013), a plaintiff advancing an overcharge theory cannot establish injury if the allegedly supracompetitive prices remained the same "irrespective of the absence or presence of a competitor." *Id.* at 964. Here, Plaintiffs allege that Valve has *lowered* its prices in the presence of competition, which is fundamentally inconsistent with any plausible theory of antitrust injury. And Plaintiffs have failed to plausibly allege that Valve had market power when it set Steam's revenue share, which was the only thing that saved the prior developer complaints from dismissal.

Plaintiffs' Opposition offers a string of inconsistent arguments to avoid *Somers*, but none work. They argue that the Court should treat *Somers* as a narrow, one-off ruling reflecting no broader principle of law, even though it is consistent with numerous other Ninth Circuit decisions. They contend that the Court can ignore their spurious allegations about the World Opponent Network ("WON"), while also standing by those allegations based on citations to dubious internet sources. And they purport to ground their case on "basic economics," yet make the upside-down argument that Valve's 2018 decision to *reduce its revenue share* is in fact proof of a monopoly.

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 1
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

Plaintiffs likewise fail to demonstrate that the CAC plausibly alleges harm to consumers. As Valve explained in its motion to dismiss, the CAC is largely a copy-paste of the complaints brought by developers, even though Plaintiffs here purport to represent a consumer class. Plaintiffs do not dispute this point, instead offering only a smattering of inconclusive economic articles reflecting that a platform most-favored-nation policy could be *procompetitive* for consumers. And while Plaintiffs offer rhetoric about claimed consumer harm, they fail to allege even a single instance of Valve asking a developer to raise the price of a game. None of this does what the law demands—that Plaintiffs provide a sufficient basis to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Court should also reject Plaintiffs' request to replead. Plaintiffs have had the benefit of multiple decisions from Judge Coughenour on these same issues in the developer cases. And they have all the unsealed filings from those cases reflecting what discovery has revealed. But they have ignored all of that, choosing to stake their case on conclusory allegations and obvious falsities, such as their allegations about WON. While Plaintiffs now claim that they could "supplement their Complaint with discovery obtained from Publisher Plaintiffs' case," Opp'n 22, Plaintiffs have not even attempted to obtain any of that material despite negotiating access to it months ago. In sum, Plaintiffs have had every opportunity to fix the problems with their allegations and should not receive yet another bite at the apple.

## ARGUMENT

### I.   *SOMERS* IS ON POINT AND CONTROLLING

#### A.   Plaintiffs' Efforts To Evade *Somers* Fail.

Plaintiffs strain to paint *Somers*—a published Ninth Circuit decision—as an outlier narrowly limited to its specific facts. Opp'n 6. But Ninth Circuit precedent cannot be brushed off so easily. It is a decision's *reasoning*, not just its bare result on its precise facts, that constitutes binding precedent. *See, e.g.*, *Garcia v. Holder*, 621 F.3d 906, 911 (9th Cir. 2010) ("We treat reasoning central to a panel's decision as binding later panels." (citation modified)); *cf. Langere*

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 2
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

*v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1121 (9th Cir. 2020) (noting that "deference extends to the reasoning of [Supreme] Court decisions . . . not just their holdings"). Moreover, the Ninth Circuit has repeatedly echoed the same logic from *Somers* in other opinions. *See* MTD (Dkt. 523) 15 (citing *Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253 (9th Cir. 2008); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914 (9th Cir. 2015)). These precedents all stand for a straightforward proposition: An overcharge theory does not work if the defendant's prices remained the same "*before* it obtained monopoly . . . and *after* it allegedly acquired monopoly" and the plaintiff cannot allege an "obvious alternative explanation[]" for that consistent pricing. *Somers*, 729 F.3d at 964–65 (quoting *Twombly*, 550 U.S. at 567); *see Gerlinger*, 526 F.3d at 1255–56; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 918, 922. That rule, consistent with "basic economic principles," *Somers*, 729 F.3d at 964, should end Plaintiffs' case because Valve's revenue share on Steam was set before Valve allegedly acquired monopoly power, and it has only *declined* since then.

Plaintiffs offer no justification for sweeping aside all of these Ninth Circuit cases. They contend that the linchpin of *Somers* was that the defendant's prices allegedly remained the same "*after* [*the*] *monopolistic conduct stopped*." Opp'n 7. But this distorts *Somers*: Nothing in the opinion suggests that fact was dispositive. Instead, the case stands for the more general proposition that a defendant "continuously charg[ing] the same price . . . irrespective of the absence or presence of a competitor renders implausible" a plaintiff's allegation of supracompetitive prices. *Somers*, 729 F.3d at 964. Proving that point, in both *Gerlinger* and *Online DVD-Rental*, the Ninth Circuit applied the same logic even though the alleged anticompetitive conduct never ceased. *See Gerlinger*, 526 F.3d at 1255–56 (plaintiff challenged an agreement still in effect at the time of the lawsuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 922 (plaintiffs challenged Netflix's prices after its competitors exited the market, which would have entrenched Netflix's dominance rather than eliminating it). Plaintiffs address these latter two decisions only in a footnote,

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 3
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

dismissing them largely because they were resolved at the summary judgment stage. Opp'n 11 n.7. But that is no answer because Plaintiffs' own allegations reflect the same fatal flaw.

Plaintiffs also seek support from *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023), but read it out of context and mischaracterize Valve's argument. As an initial matter, Plaintiffs rely on a portion of the opinion that had nothing to do with antitrust injury, but with the separate issue of harm to competition. More importantly, while *Epic Games* rejected the argument that "a supracompetitive price must always entail a price increase," *id.* at 984, that is not Valve's argument. Valve's argument is instead that Plaintiffs have failed to plausibly plead antitrust injury where they have alleged that Valve's revenue share was set when it had a tiny market share (not the case in *Epic*); where others have entered the alleged market (not the case in *Epic*); and where Valve's revenue share has *decreased* over time (again, not the case in *Epic*).

Plaintiffs likewise cannot evade *Somers* based on their factual allegations. Plaintiffs contend that "Valve *immediately* obtained monopoly power upon entering digital PC game distribution," Opp'n 9 (emphasis added); *see* CAC ¶ 2 (alleging that Valve "quickly became the dominant player in the industry"). That claim runs aground on the CAC, where Plaintiffs alleged that Valve had "around $70 million" in gross revenue (from all activities, not just Steam) when it began selling third-party games on Steam, but also, without saying exactly when, that there are "tens of billions in revenues annually" and "billions of dollars in annual digital PC game sales." CAC ¶¶ 1, 2, 39. The notion that a new entrant with a tiny fraction of revenues could have had instant monopoly power is deeply implausible. Indeed, Plaintiffs themselves allege that Steam remained in its "relative infancy" until 2009. CAC ¶ 172.

Plaintiffs also miss the mark in arguing that "Valve did not need market power to charge commissions well above its cost structure" because "Valve's low cost structure compared to brick-and-mortar PC game retailers allowed Valve to charge commissions substantially above marginal cost." Opp'n 12. Plaintiffs offer literally no allegations about Valve's cost structure or any plausible allegations that Valve's revenue share exceeded it, even as they acknowledge that other

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 4
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

competitors, like Epic, have operated at a loss for many years after inception. *See infra* at 7–8. Indeed, if Plaintiffs' supposition were true, then the "basic economics" Plaintiffs purport to rely on would suggest that Steam should have immediately out-competed brick-and-mortar stores, rather than remaining in its "relative infancy" for several years. CAC ¶ 172; *see Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 295 (1985) (explaining that "cost savings" would "enable smaller retailers . . . to compete more effectively with larger retailers").

Plaintiffs' argument that "a digital PC game distributor could be profitable in a competitive market charging significantly lower commissions than Valve does," Opp'n 10, is a classic conclusory allegation. As explained further below, Plaintiffs offer nothing to substantiate this assertion. *See infra* Part II. Plaintiffs' theory also fails as a matter of law, because the antitrust laws do not require that a company charge the lowest conceivable price. *See, e.g.*, *In re Aggrenox Antitrust Litig.*, 199 F. Supp. 3d 662, 667 (D. Conn. 2016) (noting that "[t]he mere existence of some differential between price and marginal cost is not necessarily of concern to antitrust law" because "the ability to profitably charge a premium may be explained, for instance, by brand loyalty or something similarly innocuous").

Last, and least, Plaintiffs claim that *Somers* is distinguishable based on their allegation that Valve "slightly *lowered* its effective commission in response to Epic's announced entry into the market." Opp'n 10. This argument is flatly inconsistent with Plaintiffs' repeated allegation that Valve currently possesses, and has always possessed, monopoly power. *See, e.g.*, Opp'n 6 ("Valve Still Possesses Monopoly Power"). Because "[m]onopoly power is defined as 'the power to control prices or exclude competition,'" *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*, 108 F.3d 1147, 1154 (9th Cir. 1997) (quoting *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956)), a supposed monopolist would, by definition, not lower its prices (to the best-selling products on its platform, no less) in response to competitive pressure. *See LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 584 (S.D.N.Y. 2017) (concluding that defendant Barbi's price reductions "*undercut* an inference" of monopoly power

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 5
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

because "[t]he question . . . is why Barbri—an alleged monopolist—would discount its [prices] in order to compete"), *aff'd*, 922 F.3d 136 (2d Cir. 2019). Instead, "cutting prices in order to increase business often is the very essence of competition." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 226 (1993) (citation modified).

Plaintiffs seem to be arguing that (1) *Somers* is distinguishable because Apple kept its prices *level* in the presence of competition, Opp'n 11, and (2) Valve is a monopolist because it *lowered* its prices in the presence of competition, Opp'n 10. But using evidence of price *decreases* as proof of unlawful monopolization turns antitrust law on its head and should not be a basis to allow Plaintiffs' CAC to survive.

### B. Plaintiffs' "Extrinsic Evidence" Arguments Are Meritless.

Plaintiffs equivocate regarding their allegations about WON. They first claim that "Valve's ownership of WON is not essential to Consumer Plaintiffs' claims," Opp'n 12, disclaiming that aspect of Judge Coughenour's earlier order in the developer case. Absent those allegations, however, Plaintiffs are in the same position as the developers were in Judge Coughenour's first *Wolfire* order dismissing their complaint: Valve "has always charged the same fee to game publishers—30%," even before it allegedly became "dominant" in the market, so Plaintiffs' "allegations are not meaningfully different from *Somers v. Apple*." Dkt. 67 at 6. Indeed, all Plaintiffs point to other than WON is their claim that Valve's alleged initial 30% revenue share was a supracompetitive price. Opp'n 12–13. But as explained above, this argument rests on contradictory and conclusory allegations, and in any event runs counter to Plaintiffs' other allegations about Valve's small initial revenues and slow initial growth. *See supra* at 4–5.

So Plaintiffs then pivot to arguing that the Court should consider their WON allegations and ignore the undisputed evidence that Valve never acquired WON. Opp'n 13. But the Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). That principle applies to the WON allegations because Valve has (twice) submitted a declaration to the

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 6
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

Court, accompanied by contemporaneous documentation, establishing that "Valve never acquired or owned WON." Dkt. 231, Johnson Declaration ¶¶ 7–10 & Ex. 1 to MTD. Contrary to Plaintiffs' suggestion, the Court can and should reject their demonstrably false allegations about WON because they do nothing to suggest that these facts are "subject to reasonable dispute." Fed. R. Evid. 201(b). All Plaintiffs offer are citations to (1) an online "guide" prepared by an unidentified Steam user, who is not affiliated with Valve and signed up for Steam in 2017 (long after the alleged acquisition of WON); and (2) an article from "The Sierra Wiki"—a Wiki site about PC games that is not affiliated with Valve or Sierra. Opp'n 14 n.8. These random internet snippets are *not* a "website[] admission" by Valve, *id.*, nor do they raise any *reasonable* dispute regarding WON's ownership. *See, e.g.*, *Rockwell v. Chase Bank*, 2011 WL 2292353, at *1 (W.D. Wash. June 7, 2011) (rejecting "conclusory objection" to a motion for judicial notice because it was "not reasonable").

Plaintiffs likewise err in dismissing prior judicial opinions regarding competitors' revenue shares as improper extrinsic evidence. Plaintiffs open their opposition by asserting that "would-be competitors' public statements and actions"—specifically, those of Epic Games and Discord—"evince[] that commissions of 10-12% more than adequately cover costs." Opp'n 2. They presumably take that step because it would be illogical to posit a "but-for world" with "market rates which do not anticipate any profit in the foreseeable future." *In re Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *5 (N.D. Cal. Mar. 29, 2022). But Plaintiffs then ask the Court to ignore other public statements from those same competitors that contradict their claims. Specifically, Epic conceded in its litigation against Apple that a 12% commission is "below-cost," *Epic Games*, 67 F.4th at 968, while Discord quickly "announced" that its "low-commission strategy" was not working and discontinued its store, CAC ¶¶ 168–69. Those concessions led another district court assessing a similar claim to conclude that "[i]t is not logical" to use these particular companies as comparators. *See In re Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *4–5 ("Uncontroverted evidence shows that . . . the Epic Games Store will and is operating at a loss for the foreseeable future," while Discord is a "failed platform").

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 7
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

Plaintiffs cannot have it both ways. They cannot rely on "court filings" to claim that Valve should have a lower revenue share, CAC ¶ 178, while also asking the Court to disregard that those filings led to judicial findings flatly contradicting their claims. *See Hotel Emps. & Rest. Emps. Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 979 (N.D. Cal. 2005) (explaining that extrinsic evidence may be considered if it is "integral to the plaintiff's complaint and dispositive in the dispute, raising the spectre that plaintiff failed to incorporate [it] by reference in the complaint as a means of avoiding Rule 12(b)(6) dismissal"). It is also wholly illogical to argue that discovery might show that Epic's 12% commission is profitable when *Epic itself* has represented in similar litigation against a different platform—and that court found—that it is not. And Plaintiffs' assertion that Epic's commission will "become profitable" in the future, Opp'n 15, is implausible speculation already rejected by another court. *See Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 934 (N.D. Cal. 2021) ("While Epic Games now says it expects the Epic Games Store to become profitable by 2023, the store's projected revenue from prior years has proven overly optimistic."). The Court should thus apply *Somers* and dismiss.

## II.     PLAINTIFFS DO NOT PLAUSIBLY ALLEGE HARM TO CONSUMERS

Dismissal is also proper because Plaintiffs do not plausibly allege that Valve's conduct harms *consumers* by raising game prices. As an initial matter, Plaintiffs have not adequately pleaded the existence of an alternate revenue share that would be consistent with Valve's "cost structure." Opp'n 14; *see supra* at 4–5. Arguing that Steam's revenue share should be lower simply because another platform charges a lower price does not state an antitrust claim. *See Somers*, 729 F.3d at 965 ("[T]he bare allegation that Real Networks charged a lower introductory price does not mean that Apple charged supracompetitive prices when such variations in pricing exist even in competitive markets.").

Plaintiffs also have failed to plausibly allege facts allowing the Court to infer that, if Valve's revenue share were lower, game developers would respond by passing along any savings

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 8
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

to consumers.[1] Once again, Plaintiffs rely on what they call "basic economics" to support this point but offer only a series of inconclusive economic articles that do nothing to suggest their particular claims are plausible. Opp'n 18–19. One article recognizes that platform most-favored-nation policies ("PMFNs") can result in "benefits," including "*lower* prices," Steven Salop & Fiona Scott Morton, *Developing an Administrable MFN Enforcement Policy*, 27 Antitrust 15, 17 (2013) (emphasis added). Another states only that PMFNs "*may* make it difficult for rivals to compete with a dominant platform" but that they can also be "procompetitive," Jay B. Sikes, Cong. Rsch. Serv., R46875, *Antitrust Reform and Big Tech Firms* 63–64. And the third opines that "it is an empirical question whether [a PMFN] would be justified as procompetitive in any particular industry," Jonathan B. Baker & Fiona Scott Morton, *Antitrust Enforcement Against Platform MFNs*, 127 Yale L.J. 2176, 2185 (2018). In sum, this literature recognizes that while PMFNs can sometimes be anticompetitive and raise prices, they can also be procompetitive and lower prices. That truism does not add anything to Plaintiffs' claims about Valve's alleged PMFN. *See Gerlinger*, 526 F.3d at 1256 (rejecting similar reliance on "academic articles" that did not address whether the plaintiff "personally paid a higher price").

Plaintiffs' reliance on *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975 (W.D. Wash. 2022), is equally misplaced. That case likewise involved a "platform most favored nation" policy, but that is where the similarities to Plaintiffs' allegations end. *Id.* at 981. In *Frame-Wilson*, the plaintiffs claimed that Amazon maintained a PMFN requiring "sellers to add Amazon's fees to the cost of their products when they sell them on all external platforms." *Id.* at 991. As a result, the policy always operated to increase prices, because Amazon's fees would always sit on top of

---

[1] Plaintiffs suggest that it is "bold" for Valve to argue there might be zero pass-through because Valve took a differing position in the developer case. Opp'n 2. Not so. There, Valve argued that whether developers would "pass-through" cost savings to consumers was an "individualized," not classwide, inquiry, based on the data produced in that case. Dkt. 309 at 31. Indeed, the data relied on by plaintiffs' expert in that case showed that a significant portion of developers would "pass[] through *no* cost savings" at all. *Id.* Here, Plaintiffs offer no such data, or any allegations rendering plausible their theory of pass-through.

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 9
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

the fees other platforms charged. *Id.* Here, by contrast, Plaintiffs make no such allegation. Instead, they claim that Valve requires sellers to give Steam's customers the same or better prices than on other platforms. *Frame-Wilson* implicitly *rejected* that theory, noting that "courts have found that certain most-favored-nation and best-price provisions do not run afoul of the Sherman Act" because they actually lower costs, which "is the sort of conduct that the antitrust laws seek to encourage." *Id.* (quoting *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995)).

Indeed, unlike *Frame-Wilson*, Plaintiffs provide no examples of Valve's alleged conduct resulting in higher prices for consumers. *Id.* at 992. They instead allege several examples of Valve asking developers to *reduce* prices for games listed on Steam, which only helps consumers, CAC ¶¶ 69, 71–72, and they point to an internal Valve email relating three possible courses of action that may "[s]ometimes" be pursued, CAC ¶ 65, without allegations that any of those scenarios actually happened. Plaintiffs also again invoke the "real-world example" of *Metro Exodus*, Opp'n 20, but there is no allegation in the CAC that Valve ever tried to raise the price of this game.[2] Thus, the CAC does not include a single example of Valve pressuring developers to "*raise* prices on competing platforms," Opp'n 20, as was expressly part of the plaintiffs' theory in *Frame-Wilson*.

For all these reasons, the issue of harm to consumers can "be adjudicated on the pleadings" without discovery. Opp'n 21. "[T]he mere fact" that a complaint alleges "a causal connection between an antitrust violation and harm" does not suffice under Rule 12(b)(6). *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 537 (1983). Nor do allegations of the existence of a PMFN because "[a] most-favored-nation clause does not harm competition absent additional factual allegations." *No Spill LLC v. Scepter Can., Inc.*, 2022 WL

---

[2] As alleged, *Metro Exodus* may be an outlier. *See* Christoper Derian, Note and Comment, Apple Inc. v. Pepper*: The Future of Software-Based Retail—Incalculable Damages and Duplicitous Liability*, 16 J. Bus. & Tech. L. 317, 329 (2021) ("Some developers have moved their games over to the Epic Game Store and have sold at the same retail price that they sold on Steam, suggesting that removing that commission will not affect the prices set by the developers.").

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 10
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

1078435, at *7 (D. Kan. Apr. 6, 2022); *see also Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.*, 883 F.2d 1101, 1111 (1st Cir. 1989) (noting that such policies do "not ordinarily run afoul of the antitrust laws"). Plaintiffs here have failed to plausibly allege that Valve's claimed PMFN raises game prices for consumers, which is an independent basis for dismissing the CAC.

### III.    THE COURT SHOULD DISMISS ALL COUNTS WITH PREJUDICE

Plaintiffs apparently agree that, if they have failed to plausibly allege antitrust injury, the Court must dismiss all their claims under both state and federal law. *See* Opp'n 21. Given the deficiencies in the CAC, the Court should dismiss all counts with prejudice. While this may be "the first time" that Plaintiffs have filed a consolidated consumer complaint, *id.*, Plaintiffs do not contest that, collectively, they have submitted *four* previous complaints to this Court and repeatedly ignored Valve's warnings about the deficiencies in their claims. *See* MTD 18. There is no reason to give them yet another chance. *See Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011) ("Plaintiffs had three bites at the apple, and the court acted well within its discretion in disallowing a fourth.").

That is particularly so given Plaintiffs' litigation conduct. Plaintiffs request leave to amend so they can "supplement their Complaint with discovery obtained from Publisher Plaintiffs' case." Opp'n 22. That request fails on its face, because "[t]he purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (noting that "[i]n antitrust cases this procedure especially makes sense because the costs of discovery in such actions are prohibitive"). But more importantly, Plaintiffs have had access to that discovery record for months, and have never provided the required notice of any effort to obtain even a single document. Dkt. 482 at 2–3 (agreement that "Counsel for the putative Consumer Class shall notify Valve in writing" when they receive discovery). They have also had access to the prior decisions by Judge Coughenour on these same issues, and *years* of both public and sealed filings from the

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 11
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

developer cases. Yet they have simply copied and pasted the developers' allegations from past complaints—even when subsequent events have demonstrated that those allegations are false. Dismissal with prejudice is appropriate in these circumstances.

## CONCLUSION

The motion to dismiss should be granted with prejudice.

DATED this 24th day of October, 2025.

*I certify that this memorandum contains 4,191 words, in compliance with the Local Civil Rules.*

WILKINSON STEKLOFF LLP

*s/ Rakesh Kilaru*
Rakesh Kilaru, *Admitted Pro Hac Vice*
James Rosenthal, *Admitted Pro Hac Vice*
Max Warren, *Admitted Pro Hac Vice*
David Friedman, *Admitted Pro Hac Vice*
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
Fax: (202) 847-4005
rkilaru@wilkinsonstekloff.com
jrosenthal@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com
dfriedman@wilkinsonstekloff.com

Keri L. Arnold, *Admitted Pro Hac Vice*
Ralia E. Polechronis, *Admitted Pro Hac Vice*
Caroline Li, *Admitted Pro Hac Vice*
WILKINSON STEKLOFF LLP
130 West 42nd Street, 24th Floor
New York, New York 10036
Tel: (212) 294-8910
Fax: (202) 847-4005
karnold@wilkinsonstekloff.com
rpolechronis@wilkinsonstekloff.com
cli@wilkinsonstekloff.com

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 12
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

|   |   |
|---|---|
| 1 | *s/ Blake Marks-Dias* |
| 2 | Blake Marks-Dias, WSBA No. 28169<br>CORR CRONIN LLP |
| 3 | 1015 Second Avenue, Floor 10<br>Seattle, WA  98104 |
| 4 | (206) 625-8600 Phone<br>(206) 625-0900 Fax |
| 5 | bmarksdias@corrcronin.com |

Jessica M. Rizzo, *Admitted Pro Hac Vice*
BALLARD SPAHR LLP
1735 Market Street, Floor 51
Philadelphia, PA 19103
(215) 665-8500 (Phone)
(215) 864-8999 (Fax)
rizzoj@ballardspahr.com

Nathan M. Buchter, *Admitted Pro Hac Vice*
FOX ROTHSCHILD LLP
2000 Market Street STE 20TH FL
Philadelphia, PA 19103
Telephone (215) 299-3010
nbuchter@foxrothschild.com

Charles B. Casper, *Admitted Pro Hac Vice*
Robert E. Day, *Admitted Pro Hac Vice*
MONTGOMERY McCRACKEN WALKER & RHOADS LLP
1735 Market Street, 20th Floor
Philadelphia, PA 19103
Telephone (215) 772-1500
ccasper@mmwr.com
rday@mmwr.com

Scott M. Danner, *Admitted Pro Hac Vice*
Priyanka Timblo, *Admitted Pro Hac Vice*
HOLWELL SCHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151 (Phone)
sdanner@hsgllp.com
ptimblo@hsgllp.com

*Attorneys for Defendant Valve Corporation*

DEFENDANT VALVE CORPORATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS - 13
No. 2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005