# KILARU DECLARATION EXHIBIT 2
### Dkt No. 531.01

# REDACTED

**VALVE CORPORATION**
**STEAM DISTRIBUTION AGREEMENT - ONLINE VERSION**

This STEAM DISTRIBUTION AGREEMENT ("**Agreement**") is made and entered into by and between **Valve Corporation**, a Washington corporation, with offices located at 10900 NE 4th Street, Bellevue, WA 98004 ("**Valve**"), and the person or entity identified by you in the "Company Legal Name" field in connection with the Agreement completion process (**"Company"**), collectively the "**Parties**" and individually a "**Party**," and is effective as of the date on which Valve provides Company with notice of its acceptance ("**Effective Date**").

**RECITALS**

A. Company owns and/or has the rights to develop, publish and/or distribute certain applications.

B. Valve has an online delivery system referred to as "Steam" through which, among other things, it distributes third party applications.

C. Company wishes to grant to Valve, and Valve wishes to receive, a license to use and to distribute Company's computer applications via Steam, as set forth herein, in exchange for the compensation described herein.

**AGREEMENT**

1. **DEFINITIONS.** The following terms will have the following meanings as used in this Agreement.

   1.1 "**Adjusted Gross Revenue**" shall mean, with respect to Valve, the gross revenue actually received by Valve from Valve's exploitation of the Applications pursuant to **Section 3.2** (including, for the sake of clarity, gross revenue generated from subscription fees paid with respect to one or more Company Applications or from distribution of any DLC), less the Applicable Adjustments.

   1.2 "**Affiliate**" shall mean a person or entity that directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with a Party.

   1.3 "**Applicable Adjustments**" shall mean (a) actual costs resulting directly from returns, discounts, refunds, fraud or chargebacks for the Applications; (b) Customer Taxes, if and only to the extent that any such Customer Taxes have been included in the calculation of gross revenue earned, however, for absence of doubt the deduction under clause (b) above does not include any taxes other than Customer Taxes, including without limitation taxes on the income or business operations of Valve.

   1.4 "**Applications**" shall mean the Company computer games or other applications specified in connection with the Agreement completion process, or otherwise provided by Company to Valve for distribution over Steam, including, upon delivery to Valve, any Application Updates and any Localized Versions of such Applications.

   1.5 "**Application Updates**" shall mean any updates, corrections, and enhancements provided by Company for use by any end user of the Applications and shall include any such updates, corrections, and enhancements made available to third parties or end users. Application Updates include any DLC provided for an Application.

   1.6 "**Customer Taxes**" shall mean taxes that are imposed on a customer of Valve on the distribution, sale or license of Applications (such as sales, use, excise, value-added and other similar taxes) and that are received from such customer by Valve for payment to governmental authorities, and any withholding or repatriation tax assessed with respect to the remittance of transaction proceeds from a foreign country to Valve.

   1.7 "**Demo Version**" shall mean any demonstration versions of the Applications, if any.

   1.8 "**DLC**" shall mean any online content, features or software specific to an Application that is made available by Company for purchase, download or online access separately from the Application, whether through in-application purchase transactions or otherwise (for example, but without limiting the foregoing, Application-themed virtual items, expansion packs, additional filters, codecs, stock multimedia, game scenarios or levels, additional functionality, etc.). DLC also includes any services provided with respect to an Application in exchange for a subscription payment.

   1.9 "**Localized Version**" shall mean any versions of the Applications created for specific languages or jurisdictions.

   1.10 "**Sales Data**" shall mean non-personally identifiable sales and activation data for Steam Account Owners that is retained by Valve and typically analyzed by Valve for its own computer games, including but not limited to sales rates by country.

   1.11 "**Steam**" shall mean Valve's online delivery system. For the purposes of this Agreement, "Steam" does not include any content, including but not limited to video games, from Company, Valve, or other third parties.

   1.12 "**Steam Account Owner**" shall mean an end user of one or more of the Applications who has obtained a Steam account, agreed to Valve's Steam Subscriber Agreement, and licensed a Valve distributed version of the Applications or completed a Steamworks Product Key Authorization.

   1.13 "**Steam Installer**" shall mean the proprietary Valve software program that performs software installation functions for any Applications with which it is distributed.

   1.14 "**Steamworks**" shall mean those Steam services and features described on the Steamworks partner website found at https://partner.steamgames.com/ and any other features and services that Valve decides, in its sole discretion, to make available to Steam Account Owners and/or Company as part of Steamworks.

   1.15 "**Steamworks Product Key**" shall mean a valid Steam product authorization code generated by Valve.

   1.16 "**Steamworks Product Key Authorization**" shall mean validation by Steam of a Steamworks Product Key.

   1.17 "**Steamworks Redistributable Code**" shall mean the Steam Client and any other software code that is contained in the folder titled "redistributable_bin" within the Steamworks SDK.

VALVE_ANT_0000023

1.18   **"Steamworks SDK"** shall mean the software development toolkit for Steamworks, the Steam Installer, and any other Valve software that is delivered to or made available to Company for its use pursuant to this Agreement.

1.19   **"Term"** shall mean the term of the Agreement, as set forth in **Section 7.1**.

1.20   **"Territory"** means (a) worldwide or (b) the nations authorized for distribution by Company on Steam, if Company has restricted an Application's distribution territory through the online tools provided by Valve for this purpose.

2.   **DELIVERY.**

2.1   **Delivery.** Company shall deliver to Valve a complete copy of the Applications at least thirty (30) days prior to the first commercial release of each Application or Localized Version, or, if already commercially released as of the Effective Date, within thirty (30) days of the Effective Date. Thereafter, Company shall deliver to Valve any Localized Versions and Application Updates (in beta and final form) when available, but in no event later than they are provided to any other third party. Company shall provide these copies in object code form, in whatever format Valve reasonably requests. If Company chooses to use Steamworks decryption services, Company shall deliver the Applications in their encrypted form, in accordance with Valve's specifications, together with the decryption key for such encryption.

2.2   **Steam Compatibility.** Company shall make the Applications compatible with Steam and any Steamworks services that Company may choose to use. Company shall, in cooperation with Valve, use reasonable efforts to maintain compatibility of the Applications with future versions of Steam.

2.3   **QA.** Company shall perform quality assurance and other error testing of the Applications (including any Localized Versions and all Application Updates and other deliverables delivered pursuant to **Section 5.2**), consistent with industry standards, prior to its delivery of final versions of each to Valve.

2.4   **DLC.** If Company distributes the Application through any other (non-Steam) distribution channel, and if Company distributes any material DLC for the Application through that other channel, it will deliver the DLC to Valve at the same time such that Steam Account Owners will receive comparable DLC with customers acquiring the Application through other channels. Company is free to offer special and unique promotional content through other distribution channels, provided that material parity is maintained between Steam Account Owners and users of other distribution channels who make a comparable investment in the Application and the associated DLC.

2.5   **No Other In-Application Stores.** The parties agree that Applications distributed via Steam will not include functionality from or links or references to any store other than Steam, or any other facility for making purchases or payments. For clarification, the preceding sentence does not apply to versions of Applications that are distributed outside of Steam (whether at brick-and-mortar retail stores or online), whether or not such versions use Steamworks.

[redacted]



CONFIDENTIAL
VALVE_ANT_0000025



CONFIDENTIAL

VALVE_ANT_0000026



Services without cause, for any particular Application, upon thirty (30) days prior written notice only after the expiration of the Initial Term. Either Party may terminate the Agreement without terminating the Steamworks Services, in which case Valve will continue to provide the Steamworks Services until a Party expressly terminates the Steamworks Services, and the terms of the Agreement shall survive such termination and continue to apply for the purposes of the continuation of the Steamworks Services. Moreover, Valve may terminate the Steamworks Services without terminating the Agreement, in which case such termination will only affect the additional rights and obligations set forth in this **Section 11** – it shall not, in and of itself, terminate or otherwise effect the Agreement as a whole.

11.8    **Effect of Termination of Steamworks Services – Survival of Certain Rights and Services.**

**11.8.1** If Company has commercially distributed a Steamworks version of an Application outside of Steam prior to any termination of this the Steamworks Services with respect to that Application, then termination of the Steamworks Services without cause shall not affect Company's rights under **Section 11.2**, which rights shall survive such termination. Valve shall have the right, however, to terminate such license immediately upon notice if any claim that the Steamworks SDK infringes any intellectual property rights of a third party is partially or fully adjudicated against Valve.

**11.8.2** For as long as Valve distributes and maintains certain Steamworks features and services for its own games, Valve shall continue to provide network support for such Steamworks features and services in accordance with **Section 11.3** for the version of each Application that was current at the time of termination (the "Then-Current Version"). The licenses set forth in **Sections 3.1** (License for Valve to Use the Applications), **3.2** (Electronic Delivery License) and **3.4** (Trademark and Copyright Licenses for Applications Marketing) of the Agreement shall survive termination for this purpose.

11.8.3  For as long as the Application utilizes Steamworks, Company shall continue to provide support to end users and to Valve as set forth in **Section 5.2** (Company Support to Valve) and **5.3** (Company End User Support), for the Then-Current Version.

11.8.4  In any event where Valve terminates Company's license under **Section 11.2**, unless Valve instructs otherwise in writing, Company shall cease the use of, and cease distribution of any Applications containing, any part of the Steamworks SDK, and if requested, shall return or certify destruction of all copies of the Steamworks SDK and any Valve Confidential Information.

12.  **GOVERNING LAW AND VENUE.**

12.1  **Governing Law.**  This Agreement will be governed by and construed in accordance with the laws of the State of Washington as such laws apply to contracts performed within Washington by its residents.

12.2  **Disputes.**  Any dispute arising under, in connection with, or incident to this Agreement or concerning its interpretation will be resolved exclusively in the state or federal courts located in King County, Washington, USA, and the Parties irrevocably consent to the exclusive exercise of jurisdiction by said courts. In such a dispute, legal process may be served upon Valve or Company in the same manner as provided in Section 14.1(i), that is by a copy of legal process sent via a nationally recognized delivery service. Service shall be deemed to have been made upon delivery of process. The Parties agree not to contest any such service of legal process made pursuant to this Section.

13.  **Confidentiality.**

13.1  "**Confidential Information**" shall mean the terms and conditions of this Agreement and all other non-public information that either Party designates in writing as being confidential, or which, under the circumstances of disclosure ought to be treated as confidential, including without limitation all tangible materials (e.g., written or printed documents and computer disks or tapes) containing such information. Confidential Information may include, without limitation, information relating to released or unreleased products, marketing or promotion of any product, business policies or practices, personnel, customers or suppliers, business and financial information, pricing and sales information, technology, computer programs, unpublished works of original authorship, trade secrets, or information received from third parties (including without limitation a Party's clients, suppliers, or principals) that either Party is obligated to treat as confidential. Sales Data will be Valve Confidential Information, except that Sales Data specific to a Company Application will be Confidential Information of both Parties. Confidential Information shall not include information that: (i) is or becomes generally known or available by publication, commercial use or otherwise through no fault of receiving Party; (ii) is known by receiving Party at the time of disclosure and is not subject to restriction; (iii) is independently developed or learned by receiving Party without the use of any Confidential Information of the disclosing Party; (iv) is lawfully obtained from a third party that has the right, set forth in writing, to make such disclosure; or (v) is made generally available by disclosing Party without restriction on disclosure, or (vi) is aggregate sales and usage data for Company or an Application where Steam sales are combined with sales from other channels.

13.2  The Parties understand and agree that any Confidential Information that may from time to time be made available or become known to either Party is to be treated as confidential, is to be used solely in connection with the performance under this Agreement, and is to be disclosed only to employees and contractors who have a need for such access. Both Parties will protect Confidential Information from unauthorized dissemination and use with the same degree of care that the Parties use to protect their own like information and in no event using less than reasonable care. Moreover, and without limiting the generality of the foregoing, both Parties shall enter into and maintain written confidentiality agreements with its employees and independent contractors sufficient to enable it to comply with all provisions of this Agreement. Subject to each Party's rights as set forth herein, either Party shall return any memoranda or papers containing Confidential Information or other proprietary information belonging to the other Party promptly, upon request.

13.3  Notwithstanding anything herein to the contrary, it shall not be a breach of this provision for either Party to disclose information in accordance with any judicial, administrative, or regulatory order or as necessary to comply with any applicable law or regulation governing regulated businesses or the issuance of securities to the public; provided, however, that prompt notice be given to the non-disclosing Party of the possibility of such disclosure, and that the potentially disclosing Party shall use its best efforts to resist disclosure, including without limitation, and if commercially reasonable to do so, cooperating with the non-disclosing Party in seeking protective orders or other similar relief if available in the applicable forum.



CONFIDENTIAL

VALVE_ANT_0000029