THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE VALVE ANTITRUST LITIGATION

No. 2:21-CV-00563-JNW

**DEFENDANT VALVE CORPORATION'S NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING ITS OPPOSITION TO RYAN LALLY'S MOTION FOR SANCTIONS (DKT. 470)**

DEFENDANT VALVE CORPORATION'S
NOTICE OF SUPPLEMENTAL AUTHORITY
21-cv-00563

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## NOTICE OF SUPPLEMENTAL AUTHORITY

Pursuant to Local Civil Rule 7(n), and in connection with Defendant Valve Corporation's ("Valve") Opposition to Ryan Lally's Motion for Sanctions (Dkt. 470), Valve respectfully submits as supplemental authority the decision of the U.S. District Court for the Southern District of New York in *Poletti v. Pepsi-Cola Bottling Co. of New York, Inc.*, No. 21-CV-7603 (VSB) (RWL), 2026 WL 731006 (S.D.N.Y. Mar. 16, 2026), attached hereto as **Exhibit A**. The court in *Poletti* held that arbitration fee disputes are "'procedural issue[s] entrusted to the arbitrator or arbitral body – not the court – for resolution within that proceeding.'" 2026 WL 731006, at *4 (quoting *Frazier v. X Corp.*, 155 F.4th 87, 91 (2d Cir. 2025)).

DATED: March 25, 2026

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Defendant Valve Corporation*

DEFENDANT VALVE CORPORATION'S
NOTICE OF SUPPLEMENTAL AUTHORITY – 1
21-cv-00563

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# EXHIBIT A

2026 WL 731006
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

TERENCE J. POLETTI ET AL. on behalf of
themselves and all other similarly situated, Plaintiffs,

v.

PEPSI-COLA BOTTLING CO. OF
NEW YORK, INC. ET AL., Defendants.

21-CV-7603 (VSB) (RWL)
|
Filed 03/16/2026

**Attorneys and Law Firms**

Clifford Ryan Tucker, Patricia Rose Lynch, Sacco & Fillas,
LLP, Astoria, NY, Geoffrey Kalender, Geoffrey Kalender, PC,
New York, NY, for Plaintiffs.

Patrick G. Brady, James Joseph Sawczyn, Epstein Becker &
Green, P.C., Newark, NJ, for Defendants.

**OPINION AND ORDER: MOTION TO ENFORCE
TERMS OF ARBITRATION AGREEMENT**

ROBERT W. LEHRBURGER UNITED STATES
MAGISTRATE JUDGE

 **\*1**  The plaintiffs in this case are current and former
distributors of Pepsi-Cola Bottling Company of New York
("Pepsi Bottling") who have sued Pepsi Bottling and Pepsi
Bottling executives under the Fair Labor Standards Act and
New York Labor Law. Plaintiffs claim that Pepsi Bottling
misclassified them as independent contractors rather than
employees. They seek payment of unpaid wages, statutory
and liquidated damages, attorney's fees and other relief.
(*See* Dkt. 92 (Third Amended Complaint).) The Plaintiffs'
relationships with Pepsi Bottling are governed by Distribution
Agreements containing broad arbitration clauses requiring
that disputes related to those agreements be resolved by
arbitration administered by JAMS. On September 6, 2023,
the Court granted Defendants' motions to compel arbitration
and stayed the case in the meantime. (Dkt. 97; *see also*
Dkt. 134 (denying reconsideration).) One of the Plaintiffs,
Vincent Carrieri, filed an arbitration demand with JAMS.
The matter is back before the Court, however, because of
a dispute about the division of arbitration fees as between

Carrieri and Pepsi Bottling. Specifically, Pepsi Bottling has
moved to compel Carrieri to pay the entirety of JAMS' filing
fee and share equally in the fees and costs of arbitration. (Dkt.
143.) Directly controlling Second Circuit law prohibits the
Court from doing so. Accordingly, Pepsi Bottling's motion is
denied.

**Background**

The Court presumes the parties' familiarity with the facts and
sets forth here, to the extent not mentioned above, only those
facts sufficient to provide context for the Court's decision.

The Distribution Agreement resulted from negotiations
between Pepsi Bottling and the now-defunct New York
Pepsi-Cola Distributors Association, Inc. (the "Distributors
Association"), which was represented by counsel. Under
the Distributor Agreement, the parties agreed that any
arbitration "shall be administered by JAMS pursuant to
its Comprehensive Arbitration Rules" (the "Comprehensive
Rules"). (Gantman Decl. Ex. 2 at § 23.2.[1]) The parties
further agreed that the arbitrator shall not have the authority
to modify or amend the terms of the Distribution Agreement,
and that the decision or award of the arbitrator shall be
final and binding. (*Id.*) With respect to fees and costs, the
parties agreed that each party "shall bear its own fees, costs
and disbursements in such proceeding, unless the arbitrator
awards fees pursuant to a statute authorizing the award of such
fees." (*Id.*)

[1]     "Gantman Decl." refers to the Declaration of Lewis
        Gantman, filed April 4, 2025, at Dkt. 143-1.

Rule 31 of the Comprehensive Rules provides that each party
"shall pay its pro rata share of JAMS fees and expenses as
set forth in the JAMS fee schedule" unless the parties agree
to a different allocation. (Brady Decl. Ex. R at Rule 31(a).[2])
The JAMS fee schedule discloses that for two-party matters
the filing fee is $2,000 and "[f]or matters based on a clause or
agreement that is required as a condition of employment, the
employee is only required to pay $400" as set forth in JAMS
Policy on Employment Arbitrations, Minimum Standards of
Fairness (the "Minimum Standards"). (*Id*. Ex. S.)

[2]     "Brady Decl." refers to the Declaration of Patrick
        G. Brady, filed April 4, 2025, at Dkt. 143-4.

**\*2** The document setting forth the Minimum Standards explains that it "presents the principles and policies of JAMS on the use of arbitration for resolving employment-related disputes." (Opp. Ex. A.[3]) It also states that the Minimum Standards apply to arbitrations based on arbitration agreements that are "required as a condition of employment" and that "JAMS will administer mandatory arbitrations in employment cases only if the arbitration provision complies with JAMS Minimum Standards." (*Id*.) In determining whether the arbitration provision satisfies the Minimum Standards, JAMS limits its inquiry to a "facial review of the clause or procedure," but if a factual inquiry is required, such as to determine compliance with the Minimum Standards, that inquiry must be conducted by an arbitrator or court. (*Id*.) The Minimum Standards also state that they do not apply "if the employee was represented or advised by counsel during the negotiations." (*Id*.)

[3]   "Opp." refers to the Plaintiffs' Memorandum Of Law In Opposition, filed May 16, 2025, at Dkt. 148.

Carrieri initiated arbitration proceedings by filing a demand with JAMS on August 27, 2024 (the "Demand"). (Brady Decl. Ex. A.) Carrieri described the nature of the dispute as seeking recovery of unpaid wages under the FLSA, NYLL, and other statutes. (*Id*.) He invoked the Minimum Standards, and under payment of fees, Carrieri selected "a clause or agreement that is required as a condition of employment." (*Id*.)

On September 10, 2024, JAMS sent the parties a "Notice Of Intent To Initiate Arbitration" explaining that the arbitration would be conducted in accordance with the Comprehensive Rules but that the filing fees were being allocated pursuant to the Minimum Standards. (Brady Decl. Ex. C.) JAMS indicated that Carrieri had already paid $400 of the $2,000 filing fee and that the matter would "formally commence" upon receipt of the remining $1,600 filing fee from Pepsi Bottling. (*Id.*; *see also id.* Ex. B (invoice to Pepsi Bottling for $1,600).)

In a second notice sent the same day, JAMS explained that based on its "review of the Demand and accompanying documents JAMS has determined that the [Minimum Standards] appl[y] ... notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement." (Brady Decl. Ex. D.) JAMS stated that "[t]he parties' agreement to proceed constitutes agreement to the foregoing." (*Id*.) JAMS also indicated, however, that "[a]ny further issue about whether the Minimum Standards apply should be directed to

the arbitrator once appointed"; that "if the arbitrator believes JAMS should revisit the issue, the arbitrator may advise JAMS accordingly"; and that JAMS would then "review the issue, taking the arbitrator's position into consideration, and will make a final determination." (*Id*.)

On September 17, 2024, Pepsi Bottling objected to JAMS' application of the Minimum Standards and requested reconsideration. (Brady Decl. Ex. E.) Pepsi Bottling provided several reasons for its objection. First, it asserted that application of the Minimum Standards conflicted with the parties' arbitration agreement, which required application of the Comprehensive Rules, which, in turn, required pro rata (in Pepsi Bottling's words, "equal") sharing of JAMS fees and expenses. (*Id*.) Second, Pepsi Bottling argued that JAMS' fee decision presupposes the outcome of the parties' dispute by categorizing Carrieri as an employee, even though Carrieri is an independent contractor as set forth in the Distributor Agreement. (*Id*.) Third, Pepsi Bottling contended that Carrieri was represented by counsel during negotiation of the Distributor Agreement, thus making the Minimum Standards inapplicable. (*Id*.)

Carrieri submitted a response to Pepsi Bottling's objections, and Pepsi Bottling replied. (Brady Decl. Exs. F, G.) On December 4, 2024, JAMS notified the parties of its decision. (*Id.* Ex. H.) JAMS stated that the Comprehensive Rules will continue to apply, as would the Minimum Standards. (*Id.*) The notice explained that the Minimum Standards "are not a set of arbitration rules, but rather an administrative policy that acts as an overlay to the JAMS Rules." (*Id.*) And, JAMS advised that "[a]ny further issue with regard to the applicability of the Minimum Standards, applicable rules, or fee sharing for this matter may be raised with the arbitrator upon appointment" and that either party may participate in the arbitrator selection process without waiving any objections stated to date. (*Id*.)

**\*3** Rather than proceeding with the arbitration, Pepsi Bottling asked JAMS to stay the arbitration, including payment of any fees, pending resolution of "related threshold issues" pending in the instant case before this Court. (Brady Decl. Ex. J.) Carrieri opposed the request. (*Id.* Ex. K.) After Pepsi Bottling replied (*id.* Ex. L), JAMS denied its request for a stay. (*Id.* Ex. M.) JAMS stated that it would proceed with the arbitration and that the stay issue could be raised with the arbitrator. (*Id*.) JAMS reiterated that any further issue about whether the Minimum Standards apply should be directed to the arbitrator and, if the arbitrator advises JAMS that it should

revisit the issue, JAMS will do so, taking into account the arbitrator's position. (*Id*.)

On February 25, 2025, JAMS re-sent its September 10, 2024 invoice to Pepsi Bottling for it to pay the remaining $1,600 filing fee. (Bradly Decl. Ex. N.) Pepsi Bottling did not do so, instead responding that it would seek a Court order to enforce application of the fee-sharing provisions of the Comprehensive Rules and the Distribution Agreement. (*Id.* Ex. O.) Carrieri responded by asking JAMS to find that Pepsi Bottling has waived its right to arbitrate, terminate the arbitration proceedings, and permit Carrieri to litigate the case in court. (*Id.* Ex. P.) Pepsi Bottling replied stating that it had not waived its right to arbitrate (because JAMS' rules expressly permit a party to apply to a court for interim or provisional relief without waiver of the right to arbitrate) and that it remained prepared to arbitrate under the contractual terms agreed to by the parties. (*Id.* Ex. Q.)

Pepsi Bottling then filed the instant motion on April 4, 2025. Carrieri opposed (Dkt. 148), and Pepsi Bottling replied (Dkt. 151).

### Discussion

Just last year, the Second Circuit issued a decision that controls the outcome of the instant motion. *Frazier v. X Corp.*, 155 F.4th 87, 98 (2d Cir. 2025).[4] In *Frazier*, seven individuals fired by Twitter filed arbitration demands with JAMS pursuant to a Dispute Resolution Agreement ("DRA"). The claimants signed the DRA as an essential step in the onboarding process. Although employees could opt out of the DRA, the claimants did not do so. The DRA provided for application of "then-current JAMS Rules" and that fees would be apportioned in accordance with applicable law. The DRA provided that covered disputes included those about the DRA itself. It also indicated that any dispute about arbitration fees would be resolved by the arbitrator.

[4]     Both parties cited the District Court's decision in *Frazier*. The Second Circuit issued its decision reversing the District Court on September 2, 2025, less than three months after completion of briefing on the instant motion. Curiously, neither party advised the Court of the Second Circuit's decision.

After the claimants filed their demand, Twitter paid its share of the filing fees, answered, and participated in selecting the

arbitrator. Soon thereafter, however, Twitter objected that the DRA required arbitration fees to be shared equally and that application of JAMS' Minimum Standards conflicted with the DRA's terms, which, Twitter argued, required equal sharing of fees in jurisdictions that allowed fee sharing. Twitter refused to proceed under the Minimum Standards but stated that it remained willing to arbitrate pursuant to the terms of the DRA.

One claimant, however, paid the necessary fees so that an arbitrator could be appointed to resolve the fees issue. Following briefing, the arbitrator ruled that the Minimum Standards applied and required Twitter to pay all but the case initiation fees. Despite that ruling, Twitter claimed there was still a dispute as to whether that arbitration order applied to other arbitrations brought by different individuals before different arbitrators. Twitter refused to pay for more than half of the ongoing arbitration fees in the other cases. The claimants then filed their case to order arbitration "in accordance with the terms of the [DRA]" and compel Twitter to pay as directed by the arbitrator. The District Court granted the motion and ordered Twitter to pay the fees. Twitter appealed.

**\*4** The Second Circuit squarely held that "whether a party has failed to pay arbitration fees in an ongoing arbitral proceeding is a procedural issue entrusted to the arbitrator or arbitral body – not the court – for resolution within that proceeding." *Id.* at 91. The Court emphasized that "courts have no role under [the Federal Arbitration Act ("FAA")] to intervene to review ... an arbitral body's determination that a party has or has not met the conditions necessary for it to continue administering their arbitral proceeding." *Id*. at 98. Rather, "whether an employer is required to pay the lion's share of the arbitral fees under the Minimum Standards is precisely the kind of procedural question which grows out of the dispute and bears on its final disposition that is presumptively not for the judge, but for the arbitrator or, in this case, JAMS itself to decide." *Id*. at 100. (internal quotation marks, modifications, and citation omitted).

There are, of course, differences between the instant case and *Frazier*, but none that are material so as to warrant a different outcome. For instance, it matters not that the parties in *Frazier* had already selected an arbitrator whereas here the dispute arose before an arbitrator was appointed. Once the Court compelled arbitration and Carrieri filed his arbitration Demand with JAMS, the fee dispute became a procedural matter to be resolved by the arbitral body or arbitrator. *See*

*id.* at 99 ("a party's decision not to abide by the procedural determinations of an arbitrator or arbitral body is ordinarily not a 'failure, neglect, or refusal *to arbitrate*' under § 4 [of the FAA] – it is simply an *intra*-arbitration delinquency that arbitral bodies, like JAMS here, are empowered to manage") (emphases in original); *Brooks v. WarnerMedia Direct, LLC,* No. 23-CV-11030, 2025 WL 3073839, at \*6 (S.D.N.Y. Nov. 4, 2025) (rejecting motion to compel payment of fees and costs "required to initiate arbitration with the [American Arbitration Association ("AAA")] and stating, "the AAA's application of its own policies and its allocation of arbitral fees are procedural issues outside the purview of this Court").

Nor is *Frazier* distinguishable on the basis that the parties there did not dispute that the claimants were employees of Twitter, whereas here the parties hotly dispute whether distributors like Carrieri are employees (who are covered by FLSA and NYLL protections) or independent contractors (who do not have those protections). Pepsi Bottling states repeatedly in its briefing and the supporting declaration of its general counsel that Plaintiffs *are* independent contractors and that the Distribution Agreements refer to them as such. But just because Pepsi Bottling and the Distribution Agreements say so does not make it so. In denying reconsideration of his decision granting Pepsi Bottling's motion to compel arbitration, Judge Broderick "rejected on the merits [the] argument that the Distributor Agreements prevent Plaintiffs from arguing that they are 'employees' under the FLSA and the NYLL in arbitration." (Dkt. 134 at 10.) The question of whether Carrieri is an employee or independent contractor is a live issue for the arbitrator, not the Court, to decide.

The differences in the arbitration agreements in the two cases also do not merit a different outcome. To be sure, the arbitration provision in *Frazier* invoked the "then-current Rules," whereas the Distribution Agreement specifically incorporates JAMS' Comprehensive Rules. But that makes no difference to whether the Minimum Standards – JAMS' "overlay" to the Comprehensive Rules – apply or not, and, even if it does make a difference, JAMS as the arbitral body, or the arbitrator, must make that determination. That the DRA in *Frazier* indicated that fee disputes would be resolved by the arbitrator, while the Distribution Agreement here does not specifically say so, also makes no material difference. *Frazier* is emphatic that disputes about apportionment of arbitration fees fall under the domain of the arbitral body or the arbitrator.

**\*5** Pepsi Bottling argues that JAMS' decision with respect to fees is incompatible with the particular JAMS' rules agreed upon in the parties' Distribution Agreement as well as the Distribution Agreement's provision that "[e]ach party shall bear its own fees, costs and disbursements." But that contention – indeed the entirety of the fee dispute – requires interpretation of the Distribution Agreement and JAMS' rules – issues that fall directly within the scope of the arbitration provision the parties agreed upon. [5] (*See* Gantman Decl. Ex. 2 at § 23.1 (agreeing to arbitrate "[a]ny dispute or claim ... arising out of, or, in connection with this Agreement or the relationship of the parties").) *Frazier,* 155 F.4th at 100 ("to adopt [a contrary] position would inevitably require the court to interpret the parties' agreement, the arbitrators' rules, or both – interpretations that would otherwise ... presumptively be reserved for the arbitrator").

[5]    Pepsi Bottling's other objections to JAMS' fee determination further underscore the point. Pepsi Bottling argues that the Minimum Standards do not apply because Carrieri did not sign the Distributor Agreement as a "condition of employment" and could have opted out even after signing the agreement. Whether Carrieri was an employee, and whether his employment was "conditioned" on agreement to the Distributor Agreement and its arbitration provision, are questions that require interpretation of the Distributor Agreement and the Minimum Standards. Interpretation of the Distribution Agreement is committed by the arbitration provision to the arbitrator, and interpretation of JAMS' procedural rules is, per *Frazier*, the exclusive province of JAMS. Pepsi Bottling's other objection is that the Minimum Standards do not apply because Carrieri was a member of the Distributor Association and thus was represented by legal counsel. Carrieri counters that he had no individual representation within the meaning of the Minimum Standards. Whether representation of the trade association to which Carrieri (or more accurately his business entity) belonged equates to the representation contemplated by JAMS as precluding application of the Minimum Standards requires interpretation of JAMS' procedural rules – exactly what *Frazier* bars the Court from intruding upon.

The Court thus cannot grant the relief Pepsi Bottling seeks. [6] That does not, however, leave the parties without means

to resume arbitration. Either party could pay fees – as an advance – that it contends the other should pay and then seek reapportionment of the fees by the arbitrator or recoupment of fees and costs in the ultimate arbitration award. JAMS' rules expressly contemplate such a scenario. (*See* Brady Decl. Ex. R at Rules 6(c), 24(f), 31(c).) And, although the Court finds that Pepsi Bottling has not waived its right to arbitration at this juncture, depending on how things unfold, it is possible that Carrieri may be able to make a colorable motion to that effect at a future time. But that is a question for another day and one that Pepsi Bottling has the means to avoid altogether.

6      As alternative relief, Pepsi Bottling asks the Court to order that the arbitrator have the final word on apportionment of fees rather than merely providing a "position" that JAMS can take into account in making a final decision. That request suffers from the same limitation. The principles that prevent the Court from determining whether Carrieri must pay fees apportioned as Pepsi Bottling demands also

bar the Court from ordering that JAMS shall be prohibited from applying its own procedural rule for the final fee determination.

**Conclusion**

For the foregoing reasons, Defendants' motion is DENIED. To the extent not discussed above, the Court has considered the parties' arguments and found them to be either moot or without merit.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 143.

**\*6** SO ORDERED.

**All Citations**

Slip Copy, 2026 WL 731006

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.