THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | No. 2:21-cv-00563-JNW<br><br>**DECLARATION OF BLAKE MARKS-DIAS IN SUPPORT OF VALVE CORPORATION'S MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER** |

Blake Marks-Dias states and declares as follows:

1.      I am over 18 years of age, I have personal knowledge of the matters stated herein and I am competent to testify to these matters.

2.      I am one of the attorneys representing Defendant Valve Corporation ("Valve"), and I make this Declaration in support of Valve Corporation's Motion for Clarification Regarding Protective Order.

3.      Attached hereto as Exhibit A is a true and correct copy of the Stipulated Protective Order signed and entered on August 16, 2022.

DECLARATION OF BLAKE MARKS-DIAS IN SUPPORT OF
VALVE CORPORATION'S MOTION FOR CLARIFICATION
REGARDING PROTECTIVE ORDER – 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

4.      Attached hereto as Exhibit B is a true and correct copy of Arbitrator Mainland's Order dated May 3, 2026.

5.      Attached hereto as Exhibit C is a true and correct copy of Arbitrator Mainland's Order dated September 16, 2024.

6.      Attached hereto as Exhibit D is a true and correct copy of Arbitrator Morrill's Order dated August 20, 2025.

7.      Attached hereto as Exhibit E is a true and correct copy of Arbitrator Gilman's Order dated May 7, 2025.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 29th day of May, 2026 at Seattle, Washington.

*s/ Blake Marks-Dias*
Blake Marks-Dias

DECLARATION OF BLAKE MARKS-DIAS IN SUPPORT OF
VALVE CORPORATION'S MOTION FOR CLARIFICATION
REGARDING PROTECTIVE ORDER – 2

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# EXHIBIT A

The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

IN RE VALVE ANTITRUST LITIGATION

Case No. 2:21-cv-00563-JCC

**STIPULATED PROTECTIVE ORDER**

**NOTE ON MOTION CALENDAR:**
**AUGUST 12, 2022**

PURPOSES AND LIMITATIONS

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this agreement is consistent with LCR 26(c). It does not confer blanket protection on all disclosures or responses to discovery, the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles, and it does not presumptively entitle parties to file confidential information under seal.

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

2.  "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" MATERIAL

a.  "CONFIDENTIAL" MATERIAL

"Confidential" material shall include the following information, documents, and tangible things produced or otherwise exchanged:

i.  Non-public product, product use, or business plan or strategy information, including research and development and product use data; market information; proprietary product development or use information; non-public financial, sales, profitability, costs, or other business data, metrics or projections.

ii.  Proprietary, commercial, or client information, which is defined as:

A.  Research, development, or commercial information that is of a competitively sensitive nature and that a reasonably prudent business person in the applicable field would not release to or share with the public in the ordinary course of business, and the release of which would likely cause proprietary, competitive, or economic harm; or

B.  "Trade secret," as set forth in the Washington Trade Secrets Act, RCW 19.108.010, meaning information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

iii.  Non-public information received from, belonging to, or regarding third parties that is designated as confidential or protected under another agreement (such as a

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 2

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

non-disclosure agreement or a contract with a confidentiality provision) and which the producing party is contractually obligated to keep confidential.

b. "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" MATERIAL

"Highly Confidential – Attorney's Eyes Only" material shall include the following information, documents, and tangible things produced or otherwise exchanged:

i. Financial, proprietary, commercial, business, research and development, or customer/user/client information, that is of a highly competitively sensitive nature and that a reasonably prudent business person in the applicable field would not release to or share with the public in the ordinary course of business, and the release of which is likely to cause proprietary, competitive, or economic harm;

ii. Information related to product users, including but not limited to Steam users and Steam account information, or employees, which is not in the ordinary course of business made publicly available, is not of legitimate concern to the public, and which a reasonable product user or employee might consider personal or private; or

iii. Information produced, obtained, or used in any other litigation, court proceeding, or government action that was designated in that proceeding as "Highly Confidential," "Attorneys' Eyes Only," or similar designation indicating an intent to provide a high degree of protection of the confidentiality of such information.

3. SCOPE

The protections conferred by this agreement cover not only confidential material (as defined above) and Highly Confidential – Attorney's Eyes Only material (as defined above), but also (1) any information copied or extracted from confidential material or Highly Confidential – Attorney's Eyes Only material; (2) all copies, excerpts, summaries, or compilations of confidential material or Highly Confidential – Attorney's Eyes Only material; and (3) any testimony, conversations, or presentations by parties or their counsel that might reveal confidential material or Highly Confidential – Attorney's Eyes Only material.

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 3

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

However, the protections conferred by this agreement do not cover information that is in the public domain or becomes part of the public domain through trial or otherwise.

4.   ACCESS TO AND USE OF CONFIDENTIAL MATERIAL AND HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY MATERIAL

4.1   Basic Principles. A receiving party may use confidential material and Highly Confidential – Attorney's Eyes Only material that is disclosed or produced by another party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Confidential material and Highly Confidential – Attorney's Eyes Only material may be disclosed only to the categories of persons and under the conditions described in this agreement. Confidential material and Highly Confidential – Attorney's Eyes Only material must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this agreement.

4.2   Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose any confidential material only to:

(a)   the receiving party's counsel of record in this action, as well as employees of counsel to whom it is reasonably necessary to disclose the information for this litigation;

(b)   the officers, directors, and employees (including in house counsel) of the receiving party to whom disclosure is reasonably necessary for this litigation;

(c)   experts and consultants to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)   the court, court personnel, and court reporters and their staff;

(e)   copy or imaging services retained by counsel to assist in the duplication of confidential material, provided that counsel for the party retaining the copy or imaging service instructs the service not to disclose any confidential material to third parties and to immediately return all originals and copies of any confidential material;

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 4

(f) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the designating party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal confidential material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this agreement;

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

(h) a party's witnesses designated as 30(b)(6) representatives with respect to documents produced by the party.

4.3 <u>Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" Material.</u>  Unless otherwise ordered by the court or permitted in writing by the party or non-party designating such material, all information or items designated as <u>"HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" material shall not be disclosed to any person except those listed in subparagraphs (a), (c), (d), (e), (g) and (h) of paragraph 4.2 above.</u>

4.4 <u>Filing Confidential Material </u>and Highly Confidential – Attorney's Eyes Only Material. Before filing confidential material or Highly Confidential – Attorney's Eyes Only material, or discussing or referencing such material in court filings, the filing party shall confer with the designating party, in accordance with Local Civil Rule 5(g)(3)(A), to determine whether the designating party will remove the confidential or Highly Confidential – Attorney's Eyes Only designation, whether the document can be redacted, or whether a motion to seal or stipulation and proposed order is warranted. During the meet and confer process, the designating party must identify the basis for sealing the specific confidential or Highly Confidential – Attorney's Eyes Only information at issue, and the filing party shall include this basis in its motion to seal, along with any objection to sealing the information at issue.  Local Civil Rule 5(g) sets forth the procedures that must be followed and the standards that will be applied when a party seeks

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 5

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

permission from the court to file material under seal. A party who seeks to maintain the confidentiality of its information must satisfy the requirements of Local Civil Rule 5(g)(3)(B), even if it is not the party filing the motion to seal. Failure to satisfy this requirement will result in the motion to seal being denied, in accordance with the strong presumption of public access to the Court's files.

5.    DESIGNATING PROTECTED MATERIAL

    5.1    Exercise of Restraint and Care in Designating Material for Protection. Each party or non-party that designates information or items for protection under this agreement must take care to limit any such designation to specific material that qualifies under the appropriate standards. The designating party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this agreement.

    Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to unnecessarily encumber or delay the case development process or to impose unnecessary expenses and burdens on other parties) expose the designating party to sanctions.

    If it comes to a designating party's attention that information or items that it designated for protection do not qualify for protection, the designating party must promptly notify all other parties that it is withdrawing the mistaken designation.

    5.2    Manner and Timing of Designations. Except as otherwise provided in this agreement (see, *e.g.*, second paragraph of section 5.2(b) below), or as otherwise stipulated or ordered, disclosure or discovery material that qualifies for protection under this agreement must be clearly so designated before or when the material is disclosed or produced.

        (a)    Information in documentary form: (*e.g.*, paper or electronic documents and deposition exhibits, but excluding transcripts of depositions or other pretrial or trial proceedings),

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 6

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

the designating party must affix the words "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" to each page that contains confidential material or Highly Confidential – Attorney's Eyes Only material. If only a portion or portions of the material on a page qualifies for protection, the producing party also must clearly identify the protected portion(s) (*e.g.*, by making appropriate markings in the margins).

(b)     <u>Testimony given in deposition or in other pretrial proceedings</u>: Deposition testimony and the transcripts and video recordings thereof of depositions conducted during pretrial discovery in this litigation shall be treated as HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY for a period of 40 days, or for as many days as the parties shall agree, after receipt of such deposition transcript and/or video recordings to allow time for the deponent or counsel for that deponent, or any party or non-party or its counsel, to notify all parties of any HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY or CONFIDENTIAL Information contained therein. If a party or non-party desires to protect CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY information at trial, the issue should be addressed during the pre-trial conference.

(c)     <u>Other tangible items</u>: the producing party must affix in a prominent place on the exterior of the container or containers in which the information or item is stored the words "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY." If only a portion or portions of the information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portion(s).

5.3     <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this agreement for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to ensure that the material is treated in accordance with the provisions of this agreement.

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 7

6.      CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1     <u>Timing of Challenges</u>. Any party or non-party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a designating party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     <u>Meet and Confer</u>. The parties must make every attempt to resolve any dispute regarding confidential or Highly Confidential – Attorney's Eyes Only designations without court involvement. Any motion regarding confidential or Highly Confidential – Attorney's Eyes Only designations or for a protective order must include a certification, in the motion or in a declaration or affidavit, that the movant has engaged in a good faith meet and confer conference with other affected parties in an effort to resolve the dispute without court action. The certification must list the date, manner, and participants to the conference. A good faith effort to confer requires a face-to-face meeting or a telephone conference.

6.3     <u>Judicial Intervention</u>. If the parties cannot resolve a challenge without court intervention, the designating party may file and serve a motion to retain confidentiality under Local Civil Rule 7 (and in compliance with Local Civil Rule 5(g), if applicable). The burden of persuasion in any such motion shall be on the designating party. Frivolous challenges, and those made for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties) may expose the challenging party to sanctions. All parties shall continue to maintain the material in question as confidential or Highly Confidential – Attorney's Eyes Only until the court rules on the challenge.

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 8

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

7. <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" that party must:

(a)     promptly notify the designating party in writing and include a copy of the subpoena or court order;

(b)     promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this agreement. Such notification shall include a copy of this agreement; and

(c)     cooperate with respect to all reasonable procedures sought to be pursued by the designating party whose confidential material or Highly Confidential – Attorney's Eyes Only material may be affected.

8. <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

If a receiving party learns that, by inadvertence or otherwise, it has disclosed confidential material or Highly Confidential – Attorney's Eyes Only material to any person or in any circumstance not authorized under this agreement, the receiving party must immediately (a) notify in writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the protected material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this agreement, and (d) request that such person or persons execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

9. <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL</u>

When a producing party gives notice to receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 9

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

receiving parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order or agreement that provides for production without prior privilege review. The parties agree to the entry of a non-waiver order under Fed. R. Evid. 502(d) as set forth herein.

10.    NON TERMINATION AND RETURN OF DOCUMENTS

Within 60 days after the termination of this action, including all appeals, each receiving party must return all confidential material and Highly Confidential – Attorney's Eyes Only material to the producing party, including all copies, extracts and summaries thereof. Alternatively, the parties may agree upon appropriate methods of destruction.

Notwithstanding this provision, counsel are entitled to retain one archival copy of all documents filed with the court, trial, deposition, and hearing transcripts, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain confidential material or Highly Confidential – Attorney's Eyes Only material.

The confidentiality obligations imposed by this agreement shall remain in effect until a designating party agrees otherwise in writing or a court orders otherwise.

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 10

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED this 12th day of August, 2022.

s/ Alicia Cobb

Alicia Cobb, WSBA #48685
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Telephone (206) 905-7000
Fax (206) 905-7100
aliciacobb@quinnemanuel.com

Steig D. Olson (*pro hac vice*)
David LeRay (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue
New York, New York 10010
Telephone (212) 849-7231
Fax (212) 849-7100
steigolson@quinnemanuel.com

Adam Wolfson (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone (213) 443-3285
Fax (213) 443-3100
adamwolfson@quinnemanuel.com

Charles Stevens (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone (415) 875-6600
Fax (415) 875-6700
charliestevens@quinnemanuel.com

*Proposed Interim Co-Lead Counsel*

s/ Stephanie L. Jensen

Stephanie L. Jensen, WSBA #42042
WILSON SONSINI GOODRICH &
ROSATI P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone (206) 883-2500
Fax (206) 883-2699
sjensen@wsgr.com

Kenneth R. O'Rourke (*pro hac vice*)
Scott A. Sher (*pro hac vice*)
Allison B. Smith (*pro hac vice*)
WILSON SONSINI GOODRICH &
ROSATI, P.C.
1700 K Street, NW, Suite 500
Washington, DC 20006
Telephone (202) 973-8800
Fax (202) 973-8899
korourke@wsgr.com
ssher@wsgr.com
allison.smith@wsgr.com

W. Joseph Bruckner (*pro hac vice*)
Joseph C. Bourne (*pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
wjbruckner@locklaw.com
jcbourne@locklaw.com

*Proposed Interim Co-Lead Counsel*

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 11

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

David Golden (*pro hac vice*)
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave., 22nd Floor
Washington, D.C. 20004
Telephone (202) 204-4527
Fax (202) 204-3501
dgolden@constantinecannon.com

A. Owen Glist (*pro hac vice*)
Ankur Kapoor (*pro hac vice*)
Jeffrey I. Shinder (*pro hac vice*)
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
Telephone (212) 350-2700
Fax (212) 350-2701
oglist@constantinecannon.com

*Proposed Interim Co-Lead Counsel*

Kenneth J. Rubin (*pro hac vice*)
Timothy B. McGranor (*pro hac vice*)
Kara M. Mundy (*pro hac vice*)
VORYS, SATER, SEYMOUR AND
   PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
Telephone (614) 464-6400
Fax (614) 719-4796
kjrubin@vorys.com
tbmcgranor@vorys.com
kmmundy@vorys.com

Thomas N. McCormick (*pro hac vice*)
VORYS, SATER, SEYMOUR AND
   PEASE LLP
4675 MacArthur Court, Suite 700
Newport Beach, California 92660
Phone (949) 526-7903 | Fax (949) 383-2384
tnmccormick@vorys.com

*Proposed Interim Executive Committee
Member*

*s/ Gavin W. Skok*

Gavin W. Skok, WSBA #29766
FOX ROTHSCHILD LLP
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
Telephone: (206) 624-3600
Fax: (206) 389-1708
gskok@foxrothschild.com

Kristen Ward Broz
FOX ROTHSCHILD LLP
2020 K. St. NW, Ste. 500
Washington, DC  20006
Telephone (202) 794-1220
Fax (202) 461-3102
kbroz@foxrothschild.com

Charles B. Casper (*pro hac vice*)
MONTGOMERY McCRACKEN WALKER
& RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, PA 19103
Telephone (215) 772-1500
ccasper@mmwr.com

*Attorneys for Defendant Valve Corporation*

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 12

PURSUANT TO STIPULATION, IT IS SO ORDERED

IT IS FURTHER ORDERED that pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

DATED this 16th day of August 2022.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 13

EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Western District of Washington on _____ [date] in the case of *In re Valve Antitrust Litigation*, Case No. 2:21-cv-00563-JCC . I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Western District of Washington for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

STIPULATED PROTECTIVE ORDER
(2:21-CV-00563-JCC) - 14

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

# EXHIBIT B

**AMERICAN ARBITRATION ASSOCIATION**

---

In the Matter of the Arbitration between

**25 INDIVIDUAL CLAIMANTS**

**Case No.  01-23-0005-3536**

vs.

**VALVE CORPORATION d/b/a STEAM**

---

### ORDER RE MOTIONS TO COMPEL INFORMATION EXCHANGE

The parties in these twenty-five consumer arbitrations[1] have filed motions to compel exchanges of documents and information in anticipation of the merits hearing scheduled in four of the arbitrations to commence on September 21, 2026. I have read and considered the written submissions of Claimants and Valve concerning their respective motion. My ruling on the motions is set forth below.

### I.    VALVE'S MOTION TO COMPEL

Valve's Motion to Compel is GRANTED IN PART AND DENIED IN PART.

Claimants shall produce their gaming purchase histories, on and off of Steam, and documents sufficient to verify that Claimants made those purchases with their own funds as ordered by the arbitrator on September 16, 2026 (the 'September Order"); provided, however, that at this time Claimant need only produce such information for the four Claimants[2] whose claims will be the subject of the September 2026 hearing.

### II.    CLAIMANT'S MOTION TO COMPEL

Claimant's Motion to Compel is GRANTED IN PART AND DENIED IN PART as set forth below.

1.  Valve shall produce the unredacted Schwartz report.

2.  Claimant's motion to compel production of additional Newzoo date is DENIED.

---

[1]  The 25 matters are listed in Exhibit A hereto and are referred to herein as "the Arbitrations."

[2]   One of the four designated claimants will be unable to attend the September hearing, and Respondent will designate a fourth Claimant to appear at the hearing on or before July 7, 2026.

1

3. Claimant's motion to GRANTED as to documents showing how Microsoft estimated Valve's market share.

4. Claimant's motion to compel production of documents and communications regarding the Bethesda Launcher is GRANTED.

5. Claimant's motion to compel documents and communications relating to Activision Blizzard games on Steam is GRANTED.

6. Claimant's motion to compel production of the documents designated MSFT_VALVE_0000555 is GRANTED.

7. Claimant's motion to compel production of communications and agreements with Valve's potential competitor GOG.com or GOG.com's parent company CD Projekt Red is GRANTED.

8. Claimant's motion to compel production of documents from Epic Games is GRANTED.

9. Claimant's motion to compel Valve to identify a witness to testify about Valve's expenses is DENIED.

10. Claimant's motion to compel Valve to identify "Original Source of Data" is DENIED.

11. Claimant's motion to compel Valve to identify the third party who accessed the retainer agreement of Claimant's counsel is DENIED.

The production of documents and information pursuant to this Order shall be completed by **June 15, 2026**, except that Claimants shall produce gaming histories of the fourth Claimant whose claims will be the subject of the September 2026 hearing within 30 days after Valve identifies that Claimant.

DATED: May 3, 2026                    Richard R. Mainland, Arbitrator

**EXHIBIT A**

The following twenty-five individual AAA arbitrations are the subject of this Ruling:

| Name | AAA Case No. |
| --- | --- |
| Mcinerny | 012300053536 |
| Clarke | 012300053537 |
| Garrido | 012300053538 |
| Castaneda | 012300053539 |
| Reynolds | 012300053540 |
| Huege | 012300053541 |
| Sardisco | 012300053543 |
| Cheney | 012300053544 |
| Couzens | 012300053546 |
| Leffert | 012300053547 |
| Chaffee | 012300053548 |
| Maynard | 012300053550 |
| Gariba | 012300053551 |
| Zuniga | 012300053552 |
| Barrett | 012300053553 |
| Shingleton | 012300053554 |
| Niles | 012300053555 |
| Drommerhausen | 012300053556 |
| Pacholczak | 012300053557 |
| Huss | 012300053559 |
| Arthur | 012300053560 |
| Perlaza | 012300053561 |
| Finfrock | 012300053562 |
| Lahner | 012300053563 |
| Santos | 012300053564 |

3

# EXHIBIT C

**AMERICAN ARBITRATION ASSOCIATION**

---

**In the Matter of the Arbitration between**

**25 INDIVIDUAL CLAIMANTS**

                                            **Case No.  01-23-0005-3536**

**vs.**

**VALVE CORPORATION d/b/a STEAM**

---

## ORDER RE PRODUCTION OF DOCUMENTS

In these twenty-five consumer arbitrations,[1] it is necessary to resolve the parties' disagreement as to the proper scope of document production pursuant to Consumer Rule R-22. Claimants propose that Respondent produce the documents produced in discovery in a related federal court action, *In Re Valve Antitrust Litigation*, United State District Court for the Western District of Washington, Case No. 2:21-ev-00563-JCC] (the 'Federal Action"). Respondent objects to that proposal, contending that such a production would be overbroad, excessive, burdensome and costly.

Respondent proposes that document discovery be conducted by the parties propounding document requests in this arbitration, without reference to what discovery has occurred in the Class Action. Claimants object to this proposal, and have submitted "alternative" document production requests in the event the arbitrator does not permit discovery of the entire Federal Action discovery record. Respondent has also proposed an alternative information exchange.

### I.    NATURE OF THE DISCOVERY DISPUTE

#### A.  The Pleaded Claims

Claimants' claims are set forth in Amended Statements of Claims filed on June 21, 2024 (the "Amended Statements"). Claimants allege claims against Valve for violations of (1) Section 2 of the Sherman Act (actual and attempted monopolization), (2) Section 1 of the Sherman Act (unreasonable restraints of trade) and (3) the Washington State Consumer Protection Act. Respondent served its Answers to the Amended Statements of Claims on July 8, 2024, denying all liability to Claimants.

#### B.  Procedural Background.

---

[1]  The 25 matters are listed in Exhibit A hereto and are referred to herein as "the Arbitrations."

1

An initial case management conference among the arbitrator and counsel was held on June 4, 2024.[2] With respect to document production, Paragraph 8 of Case Management Order No. 1 ("CMO#1), prepared following the conference, provided that the parties would confer regarding the "nature, extent and timing" of exchange of information and, as to any matter on which they could not agree, would set forth their positions in letter briefs to be filed on July 3, 2024.

The parties did not agree on the scope of document production, and they set forth their positions in letter briefs as provided in CMO#1.[3] A second case management conference was held on July 9, 2024, at which counsel further described their positions respecting discovery. The arbitrator and counsel agreed to a schedule of further submissions respecting the scope of document production and scheduled a Zoom hearing respecting discovery issues for August 26, 2024.[4]

Following the July 9, 2024, conference the parties submitted the following additional documents respecting the scope of discovery:

> Valve's Brief in Opposition to Production of Cloned Discovery and Proposal for an Exchange of Information dated July 23, 2024, with a copy of a Protective Order in the Federal Action;
>
> Claimants' Alternative Information Exchange Requests filed July 23, 2024;
>
> Claimants' Reply in Support of Claimants' Proposal for Federal Evidence Disclosure dated August 6, 2024;
>
> Letter from Benjamin Goldman, Esq. to Will Bucher, Esq., dated August 6, 2024, in response to Claimants' Alternative Information Exchange Requests;
>
> Valve's Proposed Protective Order served August 6, 2024;
>
> Claimants' Reply in Support of Alternative Information Exchange Requests dated August 23, 2024, and supporting exhibits.

A conference among the arbitrator and counsel for the parties was held via Zoom on August 26, 2024. William Ward Bucher IV, Esq., Nived Rajendran, Esq., and Erik B. Atzbach, Esq., appeared for Claimants. Andrew Notaristefano, Esq., Robert Day, Esq., and Andrew Fuchs, Esq., appeared for Respondent. Heather Stout of the AAA also attended the conference.

On August 27, 2024, Valve's counsel submitted a letter to me requesting a stay of the Arbitrations in light of a recently filed consumer class action. By an email to counsel on August 28, 2024, I established a briefing scheduling on the request, extending through September 13,

---

[2] See Case Management Order No. 1 dated June 4, 2024.
[3] See letter to the Arbitrator from Will Bucher, Esq. dated July 3, 2024, letter to the Arbitrator from Robert E. Day, Esq. dated July 3, 2024, and an email from Will Bucher, Esq. to Arbitrator dated July 8, 2024.
[4] See Case Management Order No. 2 dated July 9, 2024 ("CMO#2).

2

2024. I advised counsel that although the case had not been stayed, I would not issue a ruling on the discovery issues until the stay request was resolved. After a Zoom hearing on the stay request on September 13, 2024, I issued a ruling denying a stay. Accordingly, this ruling is issued concerning ongoing discovery in the Arbitratons.

## II.    LEGAL ANALYSIS OF THE SCOPE OF RULE R-22 EXCHANGES

### A.  Positions of the Parties

Claimants seek an order requiring Valve to produce all the discovery materials from the Federal Action, a putative class action brought on behalf of PC videogame developers and publishers alleging violations of the Sherman Act and the Washington Consumer Protection Act. Claimants point to Valve's statements to the federal judge in motion proceedings that the developer and consumer claims make "identical allegations" asserting harm from the "same alleged conduct, claiming to share identical issues of causation, seeking damages from the same purported overcharge . . . .[5] Claimants concede that discovery in the Federal Action has been massive and that such a production in the Arbitrations would voluminous. However, Claimants contend that production of the entire discovery record from the Federal Action would actually be faster and less costly than "starting from scratch" and going through a lengthy process of motions to compel, objections to production, arguments over relevancy, etc. According to Claimants, the Arbitrations can take advantage of the lengthy and costly process that has already occurred in the Federal Action.

Valve objects to production of the Federal Action discovery. Valve argues that Claimants' claims are based on purchases of a "few games" during a 4-year statute of limitations period, and that production of a "staggering amount" of information regarding over 90,000 games sold by 30,000 publishers since 2003 and "detailed transactional and financial data since 2003" would be wholly "disproportionate" to those claims.[6]

Both sides have made "alternative" document production proposals, in the event I do not order production of the Federal Action discovery. Those proposals are discussed further below.

### B.  General Principles Governing Discovery in These Arbitrations

These consumer arbitrations are governed by the AAA's Consumer Arbitration Rules. Rule R-22 concerns discovery, referred to as "Exchange of Information Between the Parties." Rule R-22(a)1) provides that the arbitrator may direct production of specific documents and other information and identities of witnesses be shared between the consumer and the business, keeping in mind that the arbitration must remain a "fast and economical process." Rule R-22(d) provides that no other information beyond what is provided in Rule R-22(a) is contemplated by the Rules, unless the arbitrator determines that further information exchange is "needed to provide for a fundamentally fair process."

---

[5] Claimant's July 3, 2024, letter brief re discovery, p. 1.
[6] Valve letter brief dated July 3, 2024, pp. 1-2.

I believe that Rule R-22 should be interpreted in light of the nature of these arbitrations. These are consumer cases, but they are not *simple* or "garden variety" cases, like those claiming that a bank overcharged a consumer, or a dealer sold a defective automobile. Rather, these are antitrust cases, alleging monopolization under Section 2 of the Sherman Act and contracts in restraint of trade under Section 1. Claimants have the burden of proving *liability* under the Sherman Act. Section 2 requires proof of monopoly power and willful acquisition and maintenance of that power. Section 1 requires proof of "contracts, combinations or conspiracies" that unreasonably restrained competition. These elements can only be proved by extensive factual evidence—and likely expert testimony--covering an extended period of time.[7] And, not surprisingly, most of that evidence is in the possession of Valve and third parties, not the individual Claimants. Thus, substantial discovery is necessary in these cases, in my opinion, to provide for a "fundamentally fair process" within the meaning of Rule R-22.

Respondent points out the relatively small amount of damages that likely will be sought by these 25 Claimants. At this early stage we do not, of course, know the amounts of the damages each Claimant will seek (or the amount of attorneys' fees they will seek if they prevail on liability). Assuming those amounts are small, however, Claimants nonetheless have the burden to prove Sherman Act violations by Valve. Further, it is apparent that these 25 cases are a small subset of a much larger number of similar claims, with large damages claims in the aggregate.[8]

## C. Claimants' Request for Production of Federal Action Discovery

In a number of cases parties have sought to obtain production of discovery materials from other related litigation, referred to as "cloned" discovery. Respondent cites decisions denying such discovery. *King Cty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prods. Liability Litig.*, 2017 WL 4680242, at *2 (N.D. Cal. Oct. 18, 2017) ("Plaintiffs are not entitled to complete access to the MDL Production simply because there may be an overlap between their claims and those in the . . . consumer class action."); *Wine Distribs., Inc. v. Vitol Inc.*, 2022 WL 1489474, at *1 (N.D. Cal. May 11, 2022). However, cloned discovery has sometimes been allowed. *Garner v. Amazon.com, Inc.*, No. C21-0750RSL, 2023 U.S. Dist. LEXIS 164569, at *6 (W.D. Wash. Sep. 15, 2023); *Schneider v. Chipotle Mexican Grill, Inc.*, 2017 U.S. Dist. LEXIS 43652, 2017 WL 1101799 (N.D. Cal. Mar. 24, 2017). In general, the courts' decisions depend on the similarity of parties and claims in the two proceedings and the need for such discovery. `

Here, there is a substantial overlap of parties and claims. Valve is the defendant in the Federal Action and the respondent in the Arbitrations. The claims in the Federal Action and in the Arbitrations are similar, if not identical. Claimants Amended Statements of Claims, like the Federal Action complaint, alleges claims against Valve for violations of Sections 1 and 2 of the Sherman Act and the Washington Consumer Protection Act.[9] Indeed, the Amended Statements of Claims *incorporate by reference* the Second Amended Consolidated Class Action Complaint in

---

[7] Even if Claimants can only recover *damages* within a four-year limitations period, the evidence of *liability* is not confined to that period.

[8] Counsel have advised the arbitrator that there are some 600 AAA consumer arbitrations against Valve with assigned arbitrators.

[9] See, e.g., Mcinerney Amended Statement of Claims dated June 21, 2024

4

the Federal Action.[10]    Although the Federal Action is on behalf of games developers, and Claimants are consumers, both sets of claims rest upon the same alleged monopolization and anti-competitive conduct by Valve.    Notably, the developer plaintiffs allege that Valve's anti-competitive conduct has resulted in higher prices *to consumers.[11]*  And, as Claimants point out, in briefing in the District Court, Valve characterized the developer and consumer claims as "identical."

That said, the massive nature of the discovery that has occurred in the Federal Action must be considered.  Valve states that it has produced over 2.6 million documents and over 100 GB of detailed Steam transactional date for billions of transactions in over 100 countries during a nearly 20-year period.[12]  According to Valve, discovery has included document productions from 22 non-parties, 27 depositions of Valve fact witnesses, 5 depositions of plaintiff's witnesses and 11 third party depositions.  Valve also stated that there are 1,789 pages of reports from four expert witnesses, plus deposition transcripts for each witness.[13]  Valve contends that many of the documents produced in the Federal Action are "irrelevant and unnecessary to the Claimants' claims in these Arbitrations.

Valve also asserts that production of the entire Federal Action discovery record would be extremely costly and would substantially delay these Arbitrations, contrary to Rule R-22.  In particular, as to documents from third parties, Valve says it has confidentiality agreements with "tens of thousands" of third parties that sell their games on Steam, and those agreements require Valve to notify third parties of potential production of their confidential information so those third parties can take action to protect its confidentiality, if necessary. Those agreements required Valve in the Federal Action—and would require it to again do so here—to engage in a complex and costly notification process that included hiring an outside vendor, providing written notice to around 32,000 third parties, providing 50 days between the first notice and production of third party information to allow third parties sufficient time to oppose production or negotiate additional protections.[14]

On the present record, it is not possible to determine with precision the "relevance" of the massive discovery in the Federal Action to the Claimants' claims in the Arbitrations.  Most likely, much of the material is relevant here, and some is not.  Nor is it possible to verify the relative time, expense and delays that would result from production of the entire Federal Action discovery record, on the one hand, or a more limited production of documents (including some from the Federal Action discovery), on the other hand.  Balancing the various factors, I deny Claimants' request that Valve produce the entire Federal Action discovery record.  However, *each side* in the Arbitrations has proposed alternatives to the "cloned discovery" requested by Claimants, and in my judgment that more limited discovery should be approved, as discussed in Part II(D) below.

### D.  The Alternative Discovery Requests.

---

[10]  Amended Statements of Claims, Exhibit A.

[11]  See Class Certification Motion, pp. 23-29, and Schwartz Expert Report discussed therein.

[12]  Valve's Brief in Opposition to Production of Clone Discovery and Proposal for an Exchange of Information dated July 23, 2024, at page 2.

[13]  *Id.* at p. 3.

[14]  *Id*. at pp. 3-4.

It should be noted, first, that there is no dispute among the parties concerning production of documents *by the Claimants*. In its written submissions, Valve has proposed that Claimant produce their "gaming purchase histories, on and off Steam."[15] Claimant have not objected to this proposal, and I therefore assume that the parties are in agreement for Claimants' production. Also, the parties do not presently request production of documents *by non-parties*. The only issues, therefore, concern production *by Valve*.

In its August 6, 2024, letter, Valve made a "compromise" proposal for an information exchange. The documents described in this proposal are listed in Exhibit B to this Order. I believe, and therefore find, that the documents described by Valve are relevant and needed by Claimants and, therefore, should be produced. However, to the extent Respondent intended its proposal to be its *exclusive* production in these Arbitrations, that proposal is denied. The production shall be made subject to the additional production pursuant to Claimants' alternative proposal discussed below.

As stated above, Claimants have also made a document production proposal as an alternative to production of the entire Federal Action record. Claimants' proposal consists of 15 document production request and 5 interrogatories. However, Document Request 2 requests production of some 73 categories of documents set forth in a separate "alternative information requests.[16]

Claimants have made a sufficient showing, in my opinion, of the relevance of these requests. Valve's objections to the requests, set forth its counsel's letter to Claimants' counsel dated August 6, 2024, are generic assertions of overbroadness, irrelevancy and lack of necessity for the productions, without discussing *why* the requests suffer from these defects. And the requests clearly represent an effort to obtain a relatively small subset of relevant documents from the Federal Action, not a wholesale production of the discovery record in that action.

In its August 6, 2024, letter, Valve expresses various confidentiality concerns respecting Claimant's alternative production requests, which I address next in this Order.

First, the Valve productions pursuant to these requests may be made pursuant to a Protective Order *in these arbitrations*. Valve has submitted a proposed version, to which Claimants have not responded, at least not formally. The parties are directed to confer and submit a stipulated protective order for my approval, prior to production of the documents. If there is disputed language respecting the proposed order, the parties may each submit their preferred versions and I will determine what to include in the order. A schedule for these submissions is set forth below. Such an Order will preserve the confidentiality of the documents to be produced by Valve. And I am open to including an "attorneys' eyes only" provision in the Order.

---

[15] Letter from Valve' counsel to Claimant's counsel dated August 6, 2024, at p. 2.
[16] On July 23, 2024, Claimants served two requests, each entitled "Alternative Information Exchange Requests." The first request contains the 15 production requests and 5 interrogatories referred to above. The second request contains the 73 categories of documents requested.

6

Second, Valve has argued that Claimants' requested production would require Valve to "violate" the Protective Order issued in the Federal Action. I disagree. I have reviewed the Federal Action Protective Order provided by Valve. As to *Valve documents* there is nothing in the Federal Action Order precluding Valve from producing its documents in separate proceedings. And Valve's interests can be protected by entry of a protective order in the Arbitrations.

As for documents produced in the Federal Action by *third parties* and designated as confidential pursuant to the Protective Order, paragraph 7 of that order addresses that situation. It provides that where a party [Valve] is served with a "subpoena or a court order issued in other litigation" compelling disclosure of confidential documents subject to the Protective Order, Valve is to promptly notify the designating party and cooperate with respect to "all reasonable procedures" sought to be pursued by the designating party whose confidential material may be affected.[17] I interpret paragraph 7 to apply to arbitration proceedings and to this Order, and that the notice procedure provided in Paragraph 7 will be available to Valve and any affected non-parties. Valve has not shown that this procedure will unduly delay these Arbitrations based on the limited non-party confidential documents that may be subject to the Claimants' alternative requests.

Third, Valve states that it has "confidentiality agreements" with publishers requiring that Valve give notice to those entities and an opportunity object and seek relief or protection against production prior to any productions of their confidentiality information.[18] Valve describes the extent of those notices, and the time and expense of complying with the agreements in the massive discovery conducted in the Federal Action.[19] However, no such showing has been made as to the documents subject to Claimants' alternative requests. Significantly, those requests do not appear to request production of documents of "tens of thousands of business partners," as may have occurred in the Federal Action discovery. Further, many of the documents sought by Claimants' requests may already be subject to the Federal Action Protective Order and the procedures under Paragraph 7 of that order described above should satisfy any contractual notice requirements.

For these reasons, production by Valve will be required as to Claimants' alterative document requests.[20]

### E. Summary of the Ruling

Having read and considered the written submissions of the parties concerning the scope of document production by Claimants and Valve in these Arbitration, and having heard and considered the oral arguments of counsel at a hearing on August 26, 2024, IT IS HEREBY ORDERED as follows:

---

[17] See Protective Order, ¶ 7(c).

[18] In an email to counsel dated July 30, 2024, I requested that Valve provide me with a copy of its "standard distribution agreement." To the best of my knowledge, I have not received it, and I repeat that request herein.

[19] See August 6, 2024, letter from Valve's counsel at pp. 6-7.

[20] There is some overlap between the documents Valve has proposed to produce and those in Claimants' alternative requests. These documents do not, of course, have to be produced more than once. Also, a single production by Valve may be deemed to have been made in each of the 25 arbitrations assigned to me.

1. Claimants shall produce the documents requested by Valve on page 2 of a letter from Valve's counsel to Claimants' counsel dated August 6, 2024.

2. Respondent Valve shall produce documents listed on Exhibits B, C and D attached to this Order. To the extent that the list on Exhibit C refers to Claimant James Mcinerney, Respondent shall produce comparable documents relating to the other Claimants in these Arbitrations as well.

3. The productions pursuant to paragraphs 1 and 2 above shall be completed by **October 20, 2024,** except as to confidential non-party documents in the possession of Valve that are subject to the notice procedures specified in paragraphs 5 and 6 below.

4. These productions shall be made pursuant to the terms of a Protective Order to be entered in the Arbitrations. On or before **September 30, 2024,** the parties shall submit a Stipulated Protective Order to the Arbitrator for approval or, if the parties cannot agree on the language of such an order, separate proposed orders from each party shall be submitted. The parties are not required to produce documents pursuant to this Order until execution of the protective order.

5. As to any documents that Valve is to produce pursuant to this Order that that were produced in the Federal Action by third parties (i.e., plaintiffs or other third parties such as game developers or publishers) and that were designated by those parties as Confidential or Highly Confidential pursuant to the Federal Action Protective Order, the provisions of Paragraph 7 of the Protective Order shall apply to any such productions. Accordingly, on or before **September 30, 2024,** Valve shall do the following:

    (a) Valve shall notify any such designating party in writing that this Order may compel disclosure of information designated in the Federal Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" and include a copy of this Order.

    (b) Valve shall notify Claimants' counsel in writing that some or all of the material covered by this Order is subject to the Federal Action Protective Order;

    (c) Valve shall cooperate with respect to all reasonable procedures sought to be pursued by the designating parties whose confidential material may be affected by this order, including such parties' objections to production of their confidential documents made to the Arbitrator in these Arbitrations.

    (d) Valve shall notify any such designating third parties that their documents in the possession of Valve will be produced only after entry of a Protective Order in these arbitrations, containing terms substantially similar to those in the Federal Action Protective order.

8

(e) Valve shall notify the designating parties that if they do not communicate any objections to production of their documents by **October 20, 2024**, the arbitrator will assume they have no objections to production, subject to the terms of a Protective Order in these arbitrations as set forth above.

6.  If this Order requires Valve to produce third party documents that were *not* produced in the Federal Action and that Valve believe are subject to notice provision in its confidentiality agreements with those parties, it may give such parties notice and an opportunity to take protective action on the same terms as set forth in paragraph 5 above.

7.  A further case management conference among the arbitrator and counsel will be held on **October 31, 2024, at 11:00 a.m. (Pacific Time)** via Zoom to discuss further scheduling of these arbitrations. I will circulate a Zoom link for the conference.

DATED: September 16, 2024

Richard R. Mainland, Arbitrator

9

**EXHIBIT A**

The following twenty-five individual AAA arbitrations are the subject of this Ruling:

| Name | AAA Case No. |
|---|---|
| Mcinerny | 012300053536 |
| Clarke | 012300053537 |
| Garrido | 012300053538 |
| Castaneda | 012300053539 |
| Reynolds | 012300053540 |
| Huege | 012300053541 |
| Sardisco | 012300053543 |
| Cheney | 012300053544 |
| Couzens | 012300053546 |
| Leffert | 012300053547 |
| Chaffee | 012300053548 |
| Maynard | 012300053550 |
| Gariba | 012300053551 |
| Zuniga | 012300053552 |
| Barrett | 012300053553 |
| Shingleton | 012300053554 |
| Niles | 012300053555 |
| Drommerhausen | 012300053556 |
| Pacholczak | 012300053557 |
| Huss | 012300053559 |
| Arthur | 012300053560 |
| Perlaza | 012300053561 |
| Finfrock | 012300053562 |
| Lahner | 012300053563 |
| Santos | 012300053564 |

10

## EXHIBIT B[21]

(1) Detailed Steam account information and purchase histories for the Claimants.

(2) Documents that show how Microsoft estimated Valve's market share.

(3) Valve's standard Steam Distribution Agreement, under which a game developer and/or publisher can choose to distribute a game on Steam.

(4) Links to websites containing a wide variety of information about Steam and the videogame industry, including:

    a. Industry publications discussing Steam, competitors to Steam, and the video game industry;

    b. A website that tracks video game prices over time, both on and off Steam; and

    c. Newzoo, a video game industry data aggregator that provides free reports such as its recent report, "The Global Games Market Report 2024." See Epic Games, Inc. v. Apple Inc., 559 F. Supp. 3d 898, 989 (N.D. Cal. 2021) (describing Newzoo data as "a credible third-party report that others in the industry rely upon").

(5) Data and documents procured from third-party data aggregators that Respondent will rely on to defend against Claimants' claims.

(6) The transcripts and exhibits from the depositions in the Federal Action of the following Valve employees who work(ed) on the Steam business team—i.e., the Valve employee who manage Valve's relationships with video game publishers:

    a. Adam Klaff

    b. Alden Kroll

    c. Augusta Butlin

    d. Connor Malone

    e. DJ Powers

    f. Erik Peterson

    g. Jason Ruymen

    h. Kassidy Gerber

    i. Matt Nickerson

    j. Nathaniel Blue

    k. Ricky Uy

    l. Tom Giardino

---

[21] This listing of documents is taken from pages 2-3 of a letter from Valve's counsel to Claimant's counsel dated August 6. 2024, and provided to the Arbitrator.  The list appears under a heading "Valve's Proposed R-22 Information Exchange."

11

## EXHIBIT C[22]

1. Documents and data evidencing the dates on which James Mcinerny purchased or otherwise obtained each game in their Steam library, the identity of the game, the identity of the entity from which James Mcinerny acquired the game, the price paid for each game, the price the game was listed for in the Steam store on the date of purchase or activation, the name on the credit or debit card that was used to purchase the game, any in-game or DLC purchases James Mcinerny made associated with that game, and Valve's commission on each game purchased and each in-game transaction that occurred.

2. The documents specified in the attached file which James Mcinerny intends to rely upon in their case and chief.

3. Agreements, correspondence, and other documents concerning the acquisition or absorption of the Bethesda Launcher, or the transfer of accounts or games from accounts on the Bethesda Launcher, into Steam.

4. Agreements, correspondence, and other documents concerning the inclusion of Blizzard games on the Steam platform following the acquisition of Activision Blizzard by Microsoft.

5. Agreements with PC games publishers or developers who receive or have in the past received kickbacks or modifications to Valve's 30% commission on the Steam platform.

6. Internal communications concerning providing kickbacks, incentives, or discounts to Valve's standard 30% commission.

7. Communications with CD Projekt Red, Microsoft, Electronic Arts, Take-Two Interactive and others who qualify for volume based financial incentives regarding those incentives and the conditions to qualify for those incentives.

8. Valve's Steamworks Documentation states "We recommend pricing strategies based on our experience and we may suggest prices based on currency conversion and other factors." Please produce all correspondence and other documentation of Valve recommending or suggesting prices.

9. Documents evidencing that Valve regularly confirmed to publishers that its pricing parity policy applies in equal force regardless of whether Steam Keys are involved.

10. Communications that specify any consequences for not implementing price parity across PC game distribution platforms.

11. Communications where Valve threatened game publishers with delisting their games or other consequences if they did not comply with Valve's PMFN Policy or other pricing policies.

12. Documents and communications in which Valve uses the phrase "Most Favored Nations," "MFN," "PMFN," "same price," or "price parity."

13. Emails or other reminders with game developers or publishers concerning any price parity policy or any other restrictions on the pricing of PC games sold on Steam

14. Communications and agreements with Valve's potential competitor GOG.com or GOG.com's parent company CD Projekt Red concerning Valve's commission, Valve or GOG.com market share, requirements or requests for price parity, or GOG.com itself.

15. Communications and other documents where this language from the Valve's Steamworks Documentation is cited, interpreted, or otherwise discussed: "It's not about trying to undercut competition with a lower price."

---

[22] This list of documents is taken from a document captioned "Claimant's Alternative Information Exchange Requests" submitted to the Arbitrator and Valve's counsel on July 23, 2024. This list pertains to Claimant James Mcinerny. Substantially identical, but slightly different, lists were provided for each of the 25 Claimants.

## INTERROGATORIES

James Mcinerny requests that Valve provide answers to the following:

1. In Valve's opening motion Valve stated, "For most games, Valve's current revenue share starts at 30% of revenues received but drops to 25% or 20% once a game's sales reach certain levels." Please list all games which are not included in "most games" and explain how the revenue share works for those games.

2. In Valve's opening motion, Valve stated "if a game sells for $30, the game developer gets 70% ($21) and Valve keeps 30% ($9). Those revenue shares change to 75% ($22.50) and 25% ($7.50), or 80% ($24) and 20% ($6), if a game's sales reach certain levels." What are the criteria for reaching "the certain levels" to trigger these lower commissions?

3. In 2018, Valve told a publisher that "[w]e basically see any selling of the game on PC, Steam key or not, as a part of the same share PC market- so even if you weren't using Steam keys, we'd just choose to stop selling a game if it was always running discounts of 75% off on one store but 50% off on ours." VALVE_ANT_0265027–030, at VALVE_ANT_0265027. Would any game developer listing a game on a Steam competitor for a listed price 20% less than on Steam year-round, and offering no sales on Steam but offering periodic sales on the alternative digital distributor's platforms, violate or potentially violate any contract Valve executed with any game developer, or any documentation, terms, or policy, whether official or unofficial, Valve currently enforces or has enforced since James Mcinerny created their account?

4. For each year since James Mcinerny created their Steam account, how many total Steam Keys were generated by Valve Corp. for all games and titles?

5. For each year since James Mcinerny created their Steam account, how many total copies of games were sold on Steam?

13

**EXHIBIT D**[23]

1. Scott Lynch's deposition transcript taken on or about October 12, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

2. Gabe Newell's deposition transcript taken on or about November 21, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

3. Thomas Giardino's deposition transcript taken on or about November 2, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

4. DJ Powers's deposition transcript taken on or about September 29, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

5. Augusta Butlin's deposition transcript taken on or about October 11, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

6. Alden Kroll's deposition transcript taken on or about November 16, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

7. Connor Malone's deposition transcript taken on or about November 8, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

8. Nathaniel Blue's deposition transcript taken on or about October 4, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

9. Jason Owens's deposition transcript taken on or about December 5, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

10. Kassidy Gerber's deposition transcript taken on or about October 5, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

11. The expert report by Dr. Steven Schwartz submitted on or about February 8, 2024.

12. The expert report by Professor Joost Rietveld submitted or about February 8, 2024.

13. Malone Ex. 263, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

14. Lynch Ex. 141, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

15. Malone Ex. 261, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

16. MSFT_VALVE_000000555 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

---

[23] This list of documents is taken from a document captioned "Claimant's Alternative Information Exchange Requests" submitted to the Arbitrator and Valve's counsel on July 23, 2024. This list pertains to Claimant James Mcinerny. Substantially identical, but slightly different, lists were provided for each of the 25 Claimants.

14

17. VALVE_ANT_2602243 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

18. Kroll Ex. 304 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

19. Giardino Ex. 178 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

20. Newell Ex. 353 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

21. Powers 30(b)(6) Ex. 55 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

22. Butlin Ex. 120 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

23. Giardino Ex. 195 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

24. Butlin Ex. 131 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

25. Malone Ex. 248, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

26. Gerber Ex. 107, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

27. Blue Ex. 86, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

28. Schenck Ex. 385, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

29. Ruymen Ex. 1, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

30. Giardino Ex. 196, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

31. VALVE_ANT_0048944, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

32. VALVE_ANT_1207052, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

33. Malone Ex. 249, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

34. VALVE_ANT_0340706, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

35. VALVE_ANT_0051718, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

36. Gerber Ex. 101, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

37. Giardino Ex. 191, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

38. Powers 30(b)(6) Ex. 60, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

39. Malone Ex. 245, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

40. Ruymen Ex. 9, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

41. VALVE_ANT_1193238, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

42. Newell Ex. 346, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

43. Powers Ex. 45, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

44. Giardino Ex. 194, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

45. Kroll Ex. 305, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

46. VALVE_ANT_0262762, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

47. VALVE_ANT_1220449, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

48. Giardino Ex. 189, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

49. EPIC_VALVE_0000004, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

50. VALVE_ANT_0019722, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

51. VALVE_ANT_0042738, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

52. VALVE_ANT_0038381, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

53. VALVE_ANT_0019732, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

54. VALVE_ANT_0040316, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

55. EPIC_VALVE_0000001, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

56. EPIC_VALVE_0000391, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

57. EPIC_VALVE_0000058, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

58. Lynch Ex. 135, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

59. VALVE_ANT_1244411, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

60. VALVE_ANT_0051718–19, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

61. VALVE_ANT_2804689–693, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

62. VALVE_ANT_1170665–66, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

16

63. VALVE_ANT_0372900–08, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

64. VALVE_ANT_1225364–78, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

65. VALVE_ANT_2790480–86, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

66. VALVE_ANT_2714185–87, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

67. Malone Ex. 246, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

68. Kassidy Gerber, Dep. Tr., 10/5/2023, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

69. "Valve Transaction Data, 1/28/2017–12/31/2022," from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

70. "05_Damages.R," from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation). 71. Giardino Ex. 186, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

72. The Epic Games Store Presentation from 2019 (EPIC_VALVE_0000013–057, at EPIC_VALVE_0000021).

73. VALVE_ANT_0265027–030, at VALVE_ANT_0265027, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

EXHIBIT D

**AMERICAN ARBITRATION ASSOCIATION**
**COMMERCIAL ARBITRATION TRIBUNAL**

**STEVEN PRESCOTT AND 24 OTHER INDIVIDUAL CLAIMANTS**
**V.**
**VALVE CORPORATION D/B/A STEAM**
**AAA CASE NO. 01-23-0005-2943**

**ORDER NO. 8**
**ORDER ON CLAIMANT PRESCOTT'S MOTION TO COMPEL PRODUCTION**

This case is one of twenty-five arbitrations against Valve brought under the Mass Arbitration Supplementary Rules effective August 1, 2023, in conjunction with the Consumer Arbitration Rules of the American Arbitration Association (AAA), all with identical or near identical Demands for Arbitration except for particulars of the claimant and the amount of money in dispute, and all assigned to the undersigned Arbitrator.  A list of the cases assigned to this Arbitrator is attached as Attachment A.

**PRESCOTT'S MOTION TO COMPEL PRODUCTION**

Claimant Prescott moves for an order compelling Valve to produce "communications, agreements, and data exchanged between Valve and third-party game developers and publishers disclosed in the federal litigation styled *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JCC (W.D. Wash.), as requested in Claimant's Request for Information Exchange" and states that he is "seeking documents Valve disclosed or relied upon in the In re Valve Antitrust Litigation matter, including communications, agreements, and data exchanged between Valve and third-party game developers and publishers."  Respondent Valve takes a narrower view of what is in dispute: "This dispute is not about Valve's own documents or information, nor any confidentiality designations that Valve made. Instead, Claimants are demanding that Valve give them documents produced by third parties in response to third party subpoenas in the *Wolfire* case."  Thus, Prescott implies that Valve is refusing to produce all materials designated under the

1

*Wolfire* protective order, whether produced by Valve or third parties, and Valve claims that it is only documents produced and designated by third parties that it is not producing.

For the reasons discussed below, Prescott's motion is denied in part and granted in part,

**MATERIALS DESIGNATED AS CONFIDENTIAL AND PRODUCED BY THIRD PARTIES**

Materials designated as confidential and produced by third parties in the *Wolfire* litigation and not otherwise available to Valve will be discussed first.  A third party producing information, documents, or tangible things ("materials") in the *Wolfire* case may designate them as "Confidential" or "Highly Confidential – Attorney's Eyes Only" under the *Wolfire* Protective Order.  ℙ 5.1.  Under ℙ 4.1, a party may use such designated materials "only for prosecuting, defending, or attempting to settle *this* litigation" and may disclose them only to limited categories of individuals, which do not include the Arbitrator or Prescott's counsel here.

The *Wolfire* Protective Order makes a limited exception to these limitations in ℙ 7 in the case of "subpoenas or court orders in other litigation."  "Litigation" generally and as used in the *Wolfire* Protective Order does not include arbitration, and thus it would be a violation of the Protective Order for Valve to produce materials designated as confidential and produced by third parties in the *Wolfire* litigation and not otherwise available to Valve in this arbitration.  For that reason, Prescott's motion to compel Valve to produce such materials is denied.

**MATERIALS PRODUCED AND DESIGNATED AS CONFIDENTIAL BY VALVE**

The above discussion applies only to confidential materials produced by a third party in *Wolfire* and not otherwise available to Valve.  The Protective Order does not provide a cloak of protection for materials which Valve has in its possession, either its own materials or those of third partes, and designates as confidential under the Protective Order.  Valve's submission

2

implies that it has already produced such materials, but to the extent it has not Prescott's motion to compel Valve to produce such materials is granted.

Prescott's' motion also states that Valve has refused production "based on purported third-party confidentiality obligations, citing its Mutual Nondisclosure Agreements (MNAs)" and that "Valve has refused to produce many of the documents requested, arguing they contain or reflect confidential third-party information protected by its MNAs . . .." Valve has not responded to this assertion, maintaining that the dispute is about documents produced by third parties in response to third party subpoenas in *Wolfire*. To be clear, the ruling above extends to all third party materials in Valve's possession regardless of whether they are subject to NMAs, and regardless of whether they have been designated as confidential under the *Wolfire* Protective Order. The confidentiality of such documents will be protected by the Protective Order in this case.

SO ORDERED.

Dated: 20 August, 2025

_____
Robert B. Morrill
Arbitrator

3

# Attachment A: List Of Cases Assigned to Robert B. Morrill

| Case Number | Claimant |
| --- | --- |
| AAA Case No. 01-23-0005-2929 | |
| AAA Case No. 01-23-0005-2930 | |
| AAA Case No. 01-23-0005-2931 | |
| AAA Case No. 01-23-0005-2932 | |
| AAA Case No. 01-23-0005-2933 | |
| AAA Case No. 01-23-0005-2934 | |
| AAA Case No. 01-23-0005-2935 | |
| AAA Case No. 01-23-0005-2937 | |
| AAA Case No. 01-23-0005-2938 | |
| AAA Case No. 01-23-0005-2939 | |
| AAA Case No. 01-23-0005-2940 | |
| AAA Case No. 01-23-0005-2941 | |
| AAA Case No. 01-23-0005-2942 | |
| AAA Case No. 01-23-0005-2943 | |
| AAA Case No. 01-23-0005-2944 | |
| AAA Case No. 01-23-0005-2945 | |
| AAA Case No. 01-23-0005-2946 | |
| AAA Case No. 01-23-0005-2947 | |
| AAA Case No. 01-23-0005-2948 | |
| AAA Case No. 01-23-0005-2949 | |
| AAA Case No. 01-23-0005-2950 | |
| AAA Case No. 01-23-0005-2951 | |
| AAA Case No. 01-23-0005-2952 | |
| AAA Case No. 01-23-0005-2953 | |
| AAA Case No. 01-23-0005-2954 | |

# EXHIBIT E

**AMERICAN ARBITRATION ASSOCIATION** | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

## <u>May 7, 2025 ORDER</u>

AAA Case Nos. 01-23-0005-7451 & 01-23-0005-7459

Individual Claimants (see case numbers above)
-vs-
Valve Corporation d/b/a Steam

---

This matter comes before the undersigned Arbitrator upon (1) the Motion for Partial Summary Judgment ("Motion") filed by the Individual Claimants and (2) the Request of the Individual Claimants for the production of the FRCP 30(b)(6) deposition taken of Wolfire Games, LLC (the "Wolfire Deposition") in the *In re Valve Antitrust Litigation* pending in the United States District Court for the Western District of Washington as Case. No. 2:21-cv-00563-JCC ("*Wolfire*"). Having considered all submissions, arguments, and authorities by the parties in association with these matters, the Arbitrator hereby rules as follows:

The background in these cases is well known by the parties and has been documented elsewhere. It is not necessary to recount it here, and – given that the hearings are set to begin Monday – it would be counterproductive to write a lengthy order revisiting such matters and explaining all of the Arbitrator's reasoning. Instead, the Arbitrator's rulings are briefly summarized and set forth below.

## I.   MOTION FOR PARTIAL SUMMARY JUDGMENT

By their Motion, Claimants asked the Tribunal to make the following findings:

1)   That Valve is liable for *per se* violations of the Sherman Act by engaging in and enforcing illegal pricing agreements with its competitors.

2)   That Valve is liable for *per se* violations of the Sherman Act by engaging in and enforcing illegal post-and-hold requirements with its competitors.

3)   That the statute of limitations for the filing of these claims was tolled by the *Wolfire* class, filed in the Western District of Washington at Seattle on April 27, 2021.

The first two requested findings were addressed and denied by prior Order issued April 28, 2025. At that time, the Arbitrator reserved the third request for further briefing by the Parties. That briefing has now been completed and reviewed. Accordingly, this Order addresses that sole remaining issue, and GRANTS Claimants' request for a tolling finding. Among other reasons justifying the finding that the filing of Claimants' claims was tolled by the filing of *Wolfire*, Valve itself represented this was the case in its lawsuit against Claimants in the United States District Court, Western District of Washington at Seattle, seeking to enjoin their arbitrations. *See* Valve Corporation's Memorandum of Points and Authorities in Support of Petition to Enjoin Arbitrations, Case No. 2:24-cv-1717, filed October 18, 2024 at docket n. 2, United States District Court, Western District of Washington at Seattle. Valve's opposition does not dispute having made this representation (and it is reflected in the public record from that case) nor does it even attempt any explanation or argument to show why Valve should be permitted to take a contrary position now. Moreover, Valve's

{03494321.DOCX;-1}

representation to the federal court is correct. Under *American Pipe,* tolling applies as of the filing of *Wolfire* on April 27, 2021. *See American Pipe Construction Co. v. Utah*, 414 U.S. 538, 554 (1974).

## II.    WOLFIRE DEPOSITION

In the April 30, 2025, prehearing conference held in these matters, Claimants asked to receive a copy of the Wolfire Deposition. The request was untimely, but the Arbitrator requested submissions from the parties, including a copy of the Protective Order from *Wolfire*, to further inform her decision. Upon review of the materials, the Arbitrator has determined that Claimants' belated request is, in part, prejudicial due to the terms of the Protective Order that applies to portions of the Wolfire deposition.

Thus, having reviewed the Protective Order and other submissions by the parties, Claimants' request is GRANTED IN PART and DENIED IN PART. Valve is not required to produce any portions of the Wolfire Deposition that were designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY by Wolfire or any party other than Valve. By May 9, 2025, Valve shall produce the remaining portions of the Wolfire Deposition transcript (*i.e.,* those that have <u>not</u> been designated under the *Wolfire* Protective Order or have <u>only</u> been designated by Valve under the *Wolfire* Protective Order) to Claimants.

## III.    CONCLUSION

In summary:

(1)    Claimants' Motion for a finding that the statute of limitations for the filing of these claims was tolled by the April 27, 2021 filing of *Wolfire* is GRANTED.

(2)    Claimats' request for production of the Wolfire Deposition is GRANTED IN PART and DENIED IN PART as follows:

> (a) By May 9, 2025, Valve shall produce any portions of the Wolfire Deposition that either have <u>not</u> been designated under the *Wolfire* Protective Order or have <u>only</u> been designated by Valve under the *Wolfire* Protective Order.

> (b) Valve is not required to produce any portions of the Wolfire Deposition that were designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY by Wolfire or any party other than Valve.

**SO ORDERED.**

Dated: May 7, 2025

Arbitrator Signature: _____

Stacey Gilman, Arbitrator

{03494321.DOCX;-1}                                          2