# EXHIBIT 10

# (Dkt No. 450.10)

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

**Page 1**

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

_____

                                    ) Case No.

IN RE VALVE ANTITRUST LITIGATION    ) 2:21-cv-00563-JCC

                                    )

_____

VIDEO-RECORDED DEPOSITION UPON ORAL EXAMINATION OF

RICKY UY

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

_____

9:04 A.M.

OCTOBER 24, 2023

701 FIFTH AVENUE, SUITE 5100

SEATTLE, WASHINGTON

REPORTED BY: CARLA R. WALLAT, CRR, RPR

WA CCR 2578, OR CSR 16-0443, CA CSR 14423

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 50

on a new game.  They'd say, Hey, here's a game, we want to launch it sometime next year.  And they would tell you about the game and tell you about the price they were thinking and tell you about the time period they were thinking and just say, Do you have any thoughts?

Q.  Can you recall specifically any instances where a developer or a partner asked you to provide input on the launch price?

A.  I cannot recall specific instances, but I know that it has happened.

Q.  Can you recall any instances where a partner asked you to provide input on post-launch prices?

A.  Again, not specific instance, but I can -- I know that it's happened.

Q.  So you know that -- that it's happened; you just can't recall specifically with which developers it's happened?

A.  I can't recall the specific instance.

Q.  Can you recall which developers it happened with?

A.  Honestly, no, because I can't recall a specific instance.  But there would be several developers who would share plans about changing price post-launch because they generally don't just change price and then like -- like, randomly.  It's like an

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 51

event.  Typically, it's to lower the price.  Because after launch over time, usually prices go down the older a product is, if it's going to go down at all.  But it was always the partners' choice.

Q.  And were the partners asking you to provide input on -- or recommendations on what price they should lower the product to with post-launch?

MS. BROZ:  Objection to the form.

A.  No.  They would generally have an idea of what they want to set it to and would look for red flags.

Q.  (BY MR. RUBIN)  When you say "would look for red flags," what do you mean?

A.  What I mean is typically -- well, not typically.  But -- well, customers care a lot about price, and so by a "red flag," I mean they would often say, Hey, here's our plan, do you think it's a good plan?  And a red flag would be something where we think a lot of customers would be upset with the plan.  So, yeah.

Q.  Why would customers -- give an example of why a customer -- let me start the question over.

Give an example of why you would believe customers would be upset with a -- a partner's pricing plan.

MS. BROZ:  Objection to the form.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 52

A.  Let's say he wanted to -- a partner was going to raise a price of a game to $1,000.  You know, I can't guarantee it, but I would presume that would not be received well by customers if the game was previously, say, $20.

Q.  (BY MR. RUBIN)  Do you ever recall a partner attempting to or asking your opinion on raising the price of a $20 game to $1,000?

A.  No.

Q.  Can you think of any other examples that would cause a red flag in your eye?

MS. BROZ:  Objection to the form.

A.  Specifically in regards to price?

Q.  (BY MR. RUBIN)  Yes.

A.  Typically -- well, it's very specific.  I'd have to have a specific example.  I mean, partners would have to go into great detail and each game would be, you know, in a different state.  The communities would already be responding to it in its current state. And so it's -- it's very specific as to how that might affect them.

Q.  Are there any real-life examples of pricing red flags that you can remember?

MS. BROZ:  Objection to the form.

A.  I'm trying to think.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 231

REPORTER'S CERTIFICATE

I, CARLA R. WALLAT, CCR, CSR, RPR, CRR, the undersigned Certified Court Reporter, authorized to administer oaths and affirmations in and for the states of Washington (2578), Oregon (16-0443), and California (14423) do hereby certify:

That the sworn testimony and/or proceedings, a transcript of which is attached, was given before me at the time and place stated therein; that any and/or all witness(es) were duly sworn to testify to the truth; that the sworn testimony and/or proceedings were by me stenographically recorded and transcribed under my supervision.  That the foregoing transcript contains a full, true, and accurate record of all the sworn testimony and/or proceedings given and occurring at the time and place stated in the transcript; that a review of which was requested; that I am in no way related to any party to the matter, nor to any counsel, nor do I have any financial interest in the event of the cause.

WITNESS MY HAND AND DIGITAL SIGNATURE this 1st day of November, 2023.

_____

CARLA R. WALLAT, RPR, CRR

Washington CCR #2578, Expires 1/5/2024

Oregon CSR #16-0443, Expires 9/30/2024

California CSR #14423, Expires 1/31/2024