# EXHIBIT 10

# (Dkt No. 454.10)

**Page 1**

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

————————————————————————————————————

IN RE VALVE ANTITRUST LITIGATION

Case No. 2:21-cv-00563-JCC

————————————————————————————————————

April 18, 2024

9:08 a.m.

\*\*\* HIGHLY CONFIDENTIAL --

ATTORNEYS' EYES ONLY \*\*\*

DEPOSITION of STEVEN SCHWARTZ, pursuant to Notice, held at the offices of MONTGOMERY, MCCRACKEN, WALKER & RHOADS LLP, 437 Madison Avenue, New York, New York before Wayne Hock, a Notary Public of the State of New York.

S. Schwartz - HIGHLY CONFIDENTIAL - AEO whether it is an exercise of market power to compel people to play the game on the Internet as opposed to giving them the option to make the choice to do so or not. That's the exercise of market power.

Again, whether that is anticompetitive is a question that I have not analyzed, but it is surely an exercise of market power.

Q.    So is it your testimony that companies today who sell a product that requires an Internet connection are exhibiting market power?

A.    If they sell a product that requires an Internet connection and don't allow people who have purchased an earlier version of that product that does not require an Internet connection to nonetheless use the Internet connection, that would be an exercise of market power.

Q.    Okay.

What's the World Opponent Network?

A.    I'm sorry?

S. Schwartz - HIGHLY CONFIDENTIAL - AEO

Q.     What is the World Opponent Network, if you know?

A.     I don't know.

MR. LERAY: We have been going a little over an hour.

THE WITNESS:  I mean, if we're at a good stopping point, we can stop. If you want to finish the line, we can do that, too.

MR. CASPER: If you'd like to take a break now, it would be fine.

THE WITNESS:  If we don't take a break now, are you going to be in a better stopping point in ten minutes?

MR. CASPER: This is fine.

THE WITNESS:  Okay.

THE VIDEOGRAPHER: The time is 2:44 p.m., and we are going off the record.

(Whereupon a break was taken)

THE VIDEOGRAPHER: The time is 3:04 p.m., and we're back on the record.

Q.    Good afternoon again, Dr.

Page 181

S. Schwartz - HIGHLY CONFIDENTIAL - AEO

Schwartz.

A.    Thank you.  Good afternoon.

Q.    Are you familiar with the concept of quality-adjusted pricing?

A.    Yes.

Q.    And how does that play out in this case, in your view?

A.    So the notion of quality-adjusted pricing is that, when a customer views a price or a seller sets a price, they do so recognizing the bundle of attributes of the product that they have and use price as a way to signal the quality attributes or the feature attributes of the product and will oftentimes -- I don't want to say always, I don't want to say sometimes -- but often adjust price or observe adjusted prices not based on the sticker price but based on the bundle of features, of the bundle of attributes that are associated with the product.

So that for example, you can imagine a product that sells for $10 and

Page 288

CERTIFICATION BY REPORTER

I, Wayne Hock, a Notary Public of the State of New York, do hereby certify:

That the testimony in the within proceeding was held before me at the aforesaid time and place;

That said witness was duly sworn before the commencement of the testimony, and that the testimony was taken stenographically by me, then transcribed under my supervision, and that the within transcript is a true record of the testimony of said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, that I am not interested directly or indirectly in the matter in controversy, nor am I in the employ of any of the counsel.

IN WITNESS WHEREOF, I have hereunto set my hand this 24th day of April, 2024.

Wayne Hock