THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE VALVE ANTITRUST LITIGATION,

No. 2:21-cv-00563-JNW

**DEFENDANT VALVE CORPORATION'S MOTION TO EXCLUDE OPINIONS OF STEVEN SCHWARTZ**

**NOTE ON MOTION CALENDAR: AUGUST 25, 2025**

**FILED UNDER SEAL**

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*,
  135 F. Supp. 2d 1031 (N.D. Cal. 2001) ................................................................. 8

*Att'y Gen. of Okla. v. Tyson Foods, Inc.*,
  565 F.3d 769 (10th Cir. 2009) ........................................................................... 5

*Avila v. Willits Env't Remediation Tr.*,
  633 F.3d 828 (9th Cir. 2011) ............................................................................ 3

*Braun v. Lorillard Inc.*,
  84 F.3d 230 (7th Cir. 1996) .............................................................................. 5

*Claar v. Burlington N. R. Co.*,
  29 F.3d 499 (9th Cir. 1994) ........................................................................... 3, 8

*Comcast v. Behrend.*,
  569 U.S. 27 (2013)........................................................................................ 12

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) ............................................................................ 7

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ............................................................................ 2

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ............................................................................ 3

*Epic Games, Inc. v. Apple Inc.*,
  559 F. Supp. 3d 898 (N.D. Cal. 2021) ................................................................. 6

*FTC v. Microsoft Corp.*,
  681 F. Supp. 3d 1069 (N.D. Cal. 2023) ............................................................... 6

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)................................................................................... 11, 12

*Hardeman v. Monsanto Co.*,
  997 F.3d 941 (9th Cir. 2021) .......................................................................... 10

*Houserman v. Comtech Telecomms. Corp.*,
  509 F. Supp. 3d 1301 (W.D. Wash. 2020)........................................................... 13

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - i
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

*In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*,
    524 F. Supp. 2d 1166 (N.D. Cal. 2007) ........................................................................ 3

*In re Incretin-Based Therapies Prods. Liab. Litig.*,
    524 F. Supp. 3d 1007 (S.D. Cal. 2021) ........................................................................ 8

*In re Live Concert Antitrust Litig.*,
    863 F. Supp. 2d 966 (C.D. Cal. 2012) ........................................................................ 13

*In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
    341 F. Supp. 3d 213 (S.D.N.Y. 2018) ........................................................................ 7

*In re Roundup Prods. Liab. Litig.*,
    390 F. Supp. 3d 1102 (N.D. Cal. 2018) ...................................................................... 10

*In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prods. Liab. Litig.*,
    424 F. Supp. 3d 781 (N.D. Cal. 2020) ........................................................................ 3

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) .............................................................................................. 3, 8, 11

*La Gorce Palace Condo. Ass'n, Inc. v. Blackboard Specialty Ins. Co.*,
    586 F. Supp. 3d 1300 (S.D. Fla. 2022) ...................................................................... 10

*Lara v. First Nat'l Ins. Co. of Am.*,
    25 F.4th 1134 (9th Cir. 2022) ...................................................................................... 11

*Laumann v. National Hockey League*,
    117 F. Supp. 3d 299 (S.D.N.Y. 2015) ........................................................................ 8, 9

*Nelson v. Tenn. Gas Pipeline Co.*,
    243 F.3d 244 (6th Cir. 2001) ...................................................................................... 11

*PacTool Int'l, Ltd. v. Kett Tool Co., Inc.*,
    2012 WL 3637391 (W.D. Wash. 2012) ........................................................................ 8

*Rayzberg v. County of Los Angeles*,
    2024 WL 3469038 (C.D. Cal. 2024) .......................................................................... 13

*Reilly v. Apple Inc.*,
    578 F. Supp. 3d 1098 (N.D. Cal. 2022) ...................................................................... 5

*Rosen v. Ciba–Geigy Corp.*,
    78 F.3d 316 (7th Cir. 1996) ........................................................................................ 11

*Teradata Corp. v. SAP SE*,
    124 F.4th 555 (9th Cir. 2024) ...................................................................................... 5

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - ii
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

*Trademark Research Corp. v. Maxwell Online, Inc.,*
  995 F.2d 326 (2d Cir. 1993) .................................................................................... 14

*United States v. Grinnell Corp.,*
  384 U.S. 563 (1966) ............................................................................................. 6

*Unknown Party v. Arizona Bd. of Regents,*
  2022 WL 4481519 (D. Ariz. 2022) .......................................................................... 12

*Wade-Greaux v. Whitehall Lab'ys, Inc.,*
  874 F. Supp. 1441 (D.V.I.) .................................................................................... 8

*Weisgram v. Marley Co.,*
  528 U.S. 440 (2000) ............................................................................................. 3

*White v. Ford Motor Co.,*
  312 F.3d 998 (9th Cir. 2002) ................................................................................ 13

**Rules**

Fed. R. Evid. 702 ..................................................................................................... 3, 7

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - iii
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

## INTRODUCTION

Rule 702 serves "to ensure that junk science is kept out of the federal courtroom." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.18 (9th Cir. 1995). Federal courts thus routinely exclude expert testimony that is (1) results-oriented and made-for-litigation; (2) based on unprecedented or unscientific methods; (3) reliant on untested or unsupported assumptions; or (4) outside the expert's area of expertise. Plaintiffs' economic expert, Dr. Steven Schwartz, runs the table on these foundational Rule 702 flaws by:

- Offering a novel market definition—a core element of all of Plaintiffs' claims—based on a nonsensical results-driven approach unused by anyone else, ever;

- Basing his damages model on market shares from his inadmissible market;

- Taking a series of unreliable and unscientific shortcuts in estimating pass-through, which the Court acknowledged is a key element of damages, *see* Dkt. 392 (Class Certification Order), at 14;

- Offering an economic model of impact (his so-called "Platform Competition Model" or "PCM") that no court or economist has endorsed, depends on counterfactual assumptions, and contradicts Plaintiffs' theory of harm; and

- Offering an accounting opinion when he admittedly has no accounting expertise.

None of this is allowed. The Court should exclude these opinions under Rule 702.

## LEGAL STANDARD

A party offering expert testimony must prove, by a preponderance of the evidence, that the testimony is reliable. Fed. R. Evid. 702; *see Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). The court must "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

The court must apply "exacting standards of reliability." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000). Courts must exclude expert testimony when (i) it is "unduly results-driven," *In*

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - 1
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

*re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prods. Liab. Litig.*, 424 F. Supp. 3d 781, 797 (N.D. Cal. 2020); (ii) the expert "cherry-pick[s]" data and "reject[s] or ignor[es] . . . the great weight of the evidence that contradicts his conclusion," *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007); or (iii) it lacks the "hallmark[s]" of scientific rigor, *see Claar v. Burlington N. R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994). An expert must also be qualified to provide each opinion proffered. *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011).

## ARGUMENT

### I.     Dr. Schwartz's Relevant Market Opinions Should Be Excluded.

Plaintiffs pleaded a relevant market of "PC game distribution," *see, e.g.*, Dkt. 127 (Second Consolidated Am. Class Action Compl. ("SCAC")) ¶¶ 26, 60, 67, and the Court evaluated Plaintiffs' class certification motion by reference to the "PC video game digital distribution market," Dkt. 392 (Class Certification Order), at 17. Presumably having realized there is no plausible argument that Valve has market power in any such markets, Dr. Schwartz now sets forth a much *narrower* market of "third-party digital PC game distribution via platforms." Ex. 1 (Schwartz Rebuttal Rpt.) ¶ 18.

To arrive at this mouthful of a description, Dr. Schwartz makes a significant move: He excludes what he calls "first-party distribution"—*i.e.*, sales made through a channel owned or operated by a game's publisher. Ex. 2 (Schwartz Opening Rpt.) ¶ 95.[1] If, for example, a publisher other than Valve sells a game on Steam, that transaction is a third-party sale in Dr. Schwartz's market. *See id.* ¶ 139 n.388. But if the publisher sells the same game on its own website or game store, the transaction is a first-party sale outside his market. *See id.* ¶¶ 95, 139 n.388. This new

---

[1] Valve's expert, Professor Lesley Chiou, explains that the relevant market here should also include game sales on consoles, like Xbox, PlayStation, or Nintendo's Switch, as well as other distribution methods. Ex. 3 (Corrected Chiou Rpt.) ¶¶ 18, 190–249. While Dr. Schwartz's exclusion of consoles is also methodologically unsound, *see* Dkt. No. 319 (Valve's Opp'n to Class Certification), at 5–7, the Court need not revisit that issue to exclude his market opinions.

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - 2
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

approach leads to at least three peculiar outcomes.

*First*, only some games sold on a particular platform count under Dr. Schwartz's approach. Using Steam as an example, games made by Valve are *out* of Dr. Schwartz's market, but games made by other publishers—which are listed for sale right next to Valve's games—are *in* the market. *See id.* ¶¶ 95, 139 n.388.

*Second*, the same PC game will be in-market on some platforms and out-of-market on others. For example, *Call of Duty*, a popular game made by Activision Blizzard, is *in* the market when sold on Steam, but *out* of the market when sold on Battle.net, a platform owned and operated by Activision. *See* Ex. 4 (Schwartz Dep.) 86:17–87:13.

*Third*, under Dr. Schwartz's approach, some of the most popular PC games are not in the market at all, and thus not relevant to competition, because they are sold only by their publishers. This category includes Epic's *Fortnite* (one of the most popular games in history), *Minecraft*, and many other games that are played by hundreds of millions of consumers and generate billions of dollars. *E.g.*, *id.* 29:22–30:16.

As explained below, these distinctions have no basis in market realities and are proof that Dr. Schwartz has adopted an impermissible methodology designed to artificially shrink the market and inflate Valve's market share. Because Dr. Schwartz's approach is at odds with sound economics, industry norms, and common sense, it should be excluded.

***Nobody has ever used Dr. Schwartz's market definition methodology.*** Dr. Schwartz cannot identify any external validation for his relevant market or its core features, such as his first-versus-third party distinction. As a starting point, there are established methods that antitrust experts use to assess market definition, such as the Hypothetical Monopolist Test and/or the "SSNIP" test. *See, e.g.*, *Teradata Corp. v. SAP SE*, 124 F.4th 555, 565 (9th Cir. 2024) (calling HMT a "standard approach"). Dr. Schwartz does not use these methods. Ex. 2 (Schwartz Opening Rpt.) ¶ 55. He instead offers only a limited *qualitative* assessment of factors he declares relevant,

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - 3
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

which leads to an overly narrow market. *See generally id.* ¶¶ 60–126; Ex. 3 (Corrected Chiou Rpt.) ¶ 72.

Because Dr. Schwartz has adopted a novel made-for-the-case methodology, the Court must ensure he faithfully applies the scientific method. *See Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 780–81 (10th Cir. 2009); *Braun v. Lorillard Inc.*, 84 F.3d 230, 234–35 (7th Cir. 1996) (similar). That is particularly so where, as here, the expert's market definition indisputably excludes "otherwise identical products" that allow "users to accomplish the same basic task"— such as the exact same video game on a different platform. *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1108 (N.D. Cal. 2022) (quotations omitted).

Dr. Schwartz cannot meet this standard. He cannot identify a single expert who ever constructed a market like his in a case involving video games. Ex. 4 (Schwartz Dep.) 100:6–101:23. He cannot identify a single industry in which his first-versus-third party distinction would be relevant to market definition. *See id.* 97:23–98:17. And he cannot identify a single document endorsing the list of firms he believes are in the market. *Id.* 102:15–105:19. These acknowledgments are powerful evidence of a relevant market driven by Dr. Schwartz's desired outcomes rather than market realities. *United States v. Grinnell Corp.*, 384 U.S. 563, 572 (1966) (defined markets must conform to "commercial realities").

Making matters worse, Dr. Schwartz admits disregarding evidence that contradicts his market definition, beginning with reputable third-party data sources that ████████████ ████████████████████████████████████████████████ Dr. Schwartz acknowledges that gaming companies commonly rely on these third-party data sources in assessing the market. *See* Ex. 4 (Schwartz Dep.) 105:21–106:3. These sources include Newzoo data, which (1) Plaintiffs cited in their Complaint in support of the broader "PC game distribution market," Dkt. 127 (SCAC), ¶116; (2) Dr. Schwartz himself relies on it in the case, Ex. 2 (Schwartz Opening Rpt.) ¶¶ 112–113 & nn.314, 317; (3) Plaintiffs' other expert, Professor Joost Rietveld, has called "reliable," Ex. 5 (Rietveld Dep.) 122:24–123:10; and (4) at least one court called "a

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - 4
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

credible third-party report that others in the industry rely upon," *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 989 n.437 (N.D. Cal. 2021), *aff'd in part, rev'd in part and remanded*, 67 F.4th 946 (9th Cir. 2023). But Dr. Schwartz does not consult Newzoo or other accepted sources in creating his market because █████████████████████████████████████████

Dr. Schwartz further admits to not even *considering* available documentary evidence contradicting his approach. *See, e.g.*, Ex. 6 (Schwartz Dep. Ex. 30), at 2 (████████████████████ ██████████████████████████████████████████████████████████ ); Ex. 7 (Testimony of J. Ryan, *FTC v. Microsoft Corp.*, 681 F. Supp. 3d 1069 (N.D. Cal. 2023)) (Sony executive asserting that PC is a "very direct competitor" to PlayStation). It is a classic "methodological failing" for an expert to "choose[] not to consider evidence that undercuts his opinion[.]" *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 252 (S.D.N.Y. 2018), *aff'd sub nom. In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113 (2d Cir. 2020).

**Dr. Schwartz uses unreliable and unscientific methods in calculating his market share.** To build his market, and calculate Valve's market share, Dr. Schwartz purports to add up revenue data for "third-party digital PC game distribution via platforms" from the class period. In so doing, Dr. Schwartz cherry-picks his inputs and makes another series of unscientific and unprincipled choices.

*First*, Dr. Schwartz admits to excluding revenues from multiple third-party PC platforms that meet his market definition. These decisions increase Valve's market share by reducing the size of the "pie" representing the overall market. But Dr. Schwartz admits the only basis for these decisions is his say-so. For example:

- He lists as "n/a," or $0, the revenues for three third-party PC distribution platforms in his market share table (Discord, EA App, and itch.io). Ex. 2 (Schwartz Opening Rpt.), Attach. E-1. But he has *no revenue data* for these platforms and thus inputs $0 based entirely on assumptions, not evidence. *See* Ex. 4 (Schwartz Dep.) 38:24–40:11;

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - 5
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

- He includes revenues for digital PC game sales from Target and Best Buy, but excludes sales from Wal-Mart and Amazon on the assumption they have $0 in revenue, despite acknowledging that all four retailers sell games in the same way. *Id.* 36:17–38:6; and

- He includes revenues from three third-party platforms that largely resell Steam Keys but excludes *dozens* of other similar platforms based on a similarly unjustified assumption that their revenues must be zero. *Id.* 31:8–32:2, 33:22–36:9.

Making such unsubstantiated assumptions is a disqualifying Rule 702 error. *See Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (Rule 702 does not allow expert testimony based on "unsubstantiated speculation and subjective beliefs." (quotations omitted)); *PacTool Int'l, Ltd. v. Kett Tool Co., Inc.*, 2012 WL 3637391, at *4 (W.D. Wash. 2012) (excluding expert testimony when "PacTool has failed to show that the Report's proffered conclusions are connected to the underlying data by anything other than the *ipse dixit* of [their expert]").

*Second*, in assembling revenue data for other companies, Dr. Schwartz deviates from his own avowed outside-of-litigation principles. In a presentation given before he offered opinions here, Dr. Schwartz stressed that "[b]efore you can decide how to use data in your case analysis and presentation, you need to understand context and source!"  Ex. 8 (Schwartz Dep. Ex. 28), at 5; *accord id.* at 2. For *almost a third* of the firms he actually used in his market calculation, Dr. Schwartz admits he has no understanding of "context or source" for his data. For these companies, Dr. Schwartz extrapolates their revenues from isolated and unexplained numbers in a *different company's slide deck*. Ex. 9 (Schwartz Dep. Ex. 7), at 6. Indeed, he testified over and over that he did "not know ▮▮▮▮ source or methodology" in coming up with these numbers. Ex. 4 (Schwartz Dep.) 49:24–53:11. Stark inconsistency between an expert's out-of-court pronouncements and in-court behavior is a classic Rule 702 concern. *See In re Incretin-Based Therapies Prods. Liab. Litig.*, 524 F. Supp. 3d 1007, 1043 (S.D. Cal. 2021), *aff'd*, 2022 WL 898595 (9th Cir. 2022); *Wade-Greaux v. Whitehall Lab'ys, Inc.*, 874 F. Supp. 1441, 1479 (D.V.I.) (same), *aff'd*, 46 F.3d 1120 (3d Cir. 1994); *see also Kumho*, 526 U.S. at 152.

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - 6
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

In sum, Dr. Schwartz at best relies on "mere subjective beliefs [and] unsupported speculation" in his market construction. *Claar*, 29 F.3d at 502; *see also Laumann v. National Hockey League*, 117 F. Supp. 3d 299, 315, 319 (S.D.N.Y. 2015); *Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041–42 (N.D. Cal. 2001). At worst, he is cherry-picking inputs and manipulating data to justify his preordained conclusion. *Incretin*, 524 F. Supp. 3d at 1039. Either way, his methods are impermissible.

***The absurd results created by Dr. Schwartz's market definition confirm its unreliability.*** Judges exclude expert testimony where counterintuitive results indicate a failed methodology. For instance, in *Laumann*, the court excluded an antitrust damages model that was "so far removed from actual [consumer] preferences and tastes that a finder of fact could only speculate as to the reasons for the model's seemingly nonsensical results." 117 F. Supp. 3d at 318. Even though the expert "might have uncovered data" that supported his model with "some extra legwork," there was "too great an analytical gap between the data and the opinion proffered." *Id.* at 318–19 (internal quotation marks omitted). Just so here.

The example of *Call of Duty* ("*CoD*") epitomizes the absurdity of Dr. Schwartz's method. Multiple digital PC platforms sell *CoD*, and Dr. Schwartz agrees consumers are unlikely to purchase it more than once. Ex. 4 (Schwartz Dep.) 83:16–84:21. If a consumer buys *CoD* on Steam or the Epic Games Store, the revenues are in Dr. Schwartz's market as "third-party sales." *Id.* 86:17–87:7. But if a consumer buys *CoD* on Battle.net, owned by *CoD*'s producer, the revenues are "first-party" and thus out of the market. *See id.* 87:8–13. And if a consumer buys *CoD* on Microsoft's PC store, the revenues would have been *in* the market prior to October 14, 2023, when Microsoft finalized its purchase of Activision, but *out* of the market the next day and thereafter. *Id.* 90:20–94:8, 96:15–97:9. Nor is this an isolated outcome; Dr. Schwartz's methodology yields the same conclusion any time a game is sold through both first- and third-party channels or acquired by a platform operator. *See* Dkt. 182-1 (Schwartz Class Rpt.), ¶ 305 (same results for *Rocket League*, published by Psyonix and then acquired by Epic).

DEFENDANT VALVE CORPORATION'S MOTION TO EXCLUDE OPINIONS OF STEVEN SCHWARTZ - 7
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

None of this makes sense, and nobody besides Dr. Schwartz describes consumer behavior or competition in the video game industry this way. The unifying thread of his method is that it seeks to inflate Valve's market share at all costs—an outcome-oriented approach that has no place before a jury.

## II.    Dr. Schwartz's Damages Opinions Should Be Excluded.

### A.    Dr. Schwartz's Damages Model Depends On His Flawed Market Analysis.

The failure of Dr. Schwartz's market definition requires rejecting his damages model. After setting forth his market definition and his account of total revenues in that market, Dr. Schwartz calculates Steam's share of that market, Ex. 2 (Schwartz Opening Rpt.) ¶ 139 & n.388, which is a critical input into his damages model, *id.* ¶¶ 394, 414. Indeed, he admits that both damage figures he offers depend on his precise estimate of Valve's market share, which derives from his artificially shrunken market definition. Ex. 4 (Schwartz Dep.) 293:20–294:4. Because Dr. Schwartz's market definition is fundamentally unreliable, *see supra*, at 3–8, his damages estimates must be excluded as well. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 961 n.12 (9th Cir. 2021); *La Gorce Palace Condo. Ass'n, Inc. v. Blackboard Specialty Ins. Co.*, 586 F. Supp. 3d 1300, 1311 (S.D. Fla. 2022).

### B.    Dr. Schwartz Has No Reliable Measure Of Pass-Through, Which Is Essential To An Accurate Calculation Of Damages.

At the class certification stage, the Court recognized that accurately assessing damages would require accurately estimating pass-through (i.e., how much of any reduction in Valve's revenue share would be passed on to game purchasers in the form of a lower price, versus retained by the developers as damages). Dkt. 392 (Class Certification Order), at 14. But Dr. Schwartz's methodology for calculating pass-through is fundamentally unscientific.

Dr. Schwartz attempts to calculate pass-through by looking at the changes in prices for games that earned more than $10 million but less than $50 million in sales on Steam, triggering a 5 percent revenue share reduction. Ex. 2 (Schwartz Opening Rpt.) ¶¶ 457–61. But as he

acknowledges, there are other reasons why game prices may fluctuate over time besides a commission-rate change, including COVID-19 and game age. Ex. 4 (Schwartz Dep.) 318:3–319:9; Ex. 10 (Ricky Uy Dep.) 51:1–4. Yet he did nothing to account for these factors.

The law required Dr. Schwartz to do more. *See In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1117 (N.D. Cal. 2018), *aff'd sub nom. Hardeman*, 997 F.3d 941, 961 n.12; *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 253 (6th Cir. 2001). And he knows it. Before offering opinions here, Dr. Schwartz gave a talk that made clear that the scientific method requires an expert to control for confounding variables (like COVID-19 or game age). *See, e.g.*, Ex. 8 (Schwartz Dep. Ex. 28), at 22 ("We need to establish the distinct effect of the behavior at issue—separate from other things going on in the market and the economy—to determine the damages."); *id.* at 12, 14. That Dr. Schwartz as a retained expert ignores his views as a non-retained economist is a sign that he is not "employ[ing] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152.

### III.    Dr. Schwartz's Models Of Class-Wide Impact Should Be Excluded.

Unlike experts in many other cases, Dr. Schwartz does not rely on his damages model to establish, through common proof, the separate essential element of antitrust injury. *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022). Instead, he relies principally on his Platform Competition Model, or PCM, to show class-wide impact from Valve's alleged platform most-favored nation ("PMFN") policy. *Cf.* Ex. 4 (Schwartz Dep.) 344:17–22. His PCM has no apparent precedent and no business in court.

Dr. Schwartz created his PCM based on a theoretical 2016 economic paper developed by Andre Boik and Kenneth Corts that has never been turned into a data-based economic model in the nine years following its release. Ex. 11 (Langer Rpt.) ¶ 68; Ex. 12 (Langer Dep.) 67:5–68:2, 71:7–22. As with Dr. Schwartz's market definition, the novelty of this model should give the Court pause in accepting it as proof of antitrust impact. *See supra*, at 4–6; *see also Rosen v. Ciba–Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) ("Law lags science; it does not lead it."). Dr. Schwartz's

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - 9
2:21-cv-00563-JNW

execution of the PCM confirms the concerns.

For starters, Dr. Schwartz's PCM involves unrealistic assumptions that do not fit the facts of this case, meaning there is too great of an "analytical gap between the data and the opinion proffered" under Rule 702. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). His model involves *two* competing platforms, *one* solitary publisher, and *one* single game. Ex. 1 (Schwartz Rebuttal Rpt.) ¶¶ 301–03. That alone renders it a poor fit for this case, which involves multiple platforms, over 32,000 publishers, and hundreds of thousands of games. His PCM also predicts publishers will have high marginal costs even though Dr. Schwartz believes the opposite is true. *Compare* Ex. 13 (Schwartz Suppl. Rpt.), Suppl. Table 4, *with* Ex. 2 (Schwartz Opening Rpt.) ¶ 451. And in his PCM, the sole publisher has negative economic profits on Steam and either negative or zero total economic profits on the two platforms combined. Ex. 2 (Schwartz Opening Rpt.) ¶¶ 335–37. Put another way, the representative publisher has no incentive to remain on either platform. This is nonsense; businesses do not stay in an unprofitable market. Dr. Schwartz does nothing to address these massive mismatches between his PCM and reality. *Joiner*, 522 U.S. at 146; *Unknown Party v. Arizona Bd. of Regents*, 2022 WL 4481519, at *11 (D. Ariz. 2022) ("Although experts have broad leeway to rely on assumptions when formulating opinions, there is a limit.").

Dr. Schwartz's PCM also does not fit his theory of liability, in violation of *Comcast v. Behrend*. 569 U.S. 27, 35 (2013) ("[A]ny model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.'" (citation omitted)). His theory of harm is that Valve does *not* require prices to be precisely equal across platforms. Indeed, he now acknowledges that he does not believe Valve requires game prices to match perfectly, has looked at pricing for only 49 games, and has no evidence of enforcement against the overwhelming majority of publishers. Instead, he now claims it is sufficient to present "anecdotal evidence" that Valve enforces its alleged PMFN against only an undefined subset of the "largest publishers." Ex. 4 (Schwartz Dep.) 165:16–172:7, 180:17–181:21. But the one game in his PCM has the same price, to the penny, on both platforms—so his

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - 10
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

PCM, as applied to the class, involves exact price parity for *all* games and *all* publishers. *See* Ex. 13 (Schwartz Suppl. Rpt.), Suppl. Table 4; Ex. 1 (Schwartz Rebuttal Rpt.), Table 3. This mismatch between Schwartz's PCM and theory of harm independently requires exclusion.

As a fallback, Dr. Schwartz offers a "yardstick" measure of impact based on comparisons to the fees charged by online retail and vacation home marketplaces. Ex. 2 (Schwartz Opening Rpt.) ¶¶ 360, 362–71. This alternative fails because these marketplaces are not remotely comparable to Steam. *See, e.g.*, *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 976 (C.D. Cal. 2012). Dr. Schwartz also offers a claimed "empirical" assessment of how Valve supposedly responded to Epic Game Store's entry. Ex. 2 (Schwartz Opening Rpt.) ¶¶ 378–84. But his one-sided account relying on cherry-picked facts is neither empirical nor admissible. *See* Ex. 3 (Corrected Chiou Rpt.) ¶¶ 119–37, Exs. 2 & 3; Ex. 11 (Langer Rpt.) ¶¶ 231–35; *see also, e.g.*, *Rayzberg v. County of Los Angeles*, 2024 WL 3469038, at *4 (C.D. Cal. 2024) ("[I]t is inappropriate for experts to become a vehicle for factual narrative." (cleaned up)).

## IV.    Dr. Schwartz's Accounting Opinions Should Be Excluded.

Dr. Schwartz also improperly manipulates financial data to claim that Valve has an excessive profit margin consistent with a monopolist. Ex. 2 (Schwartz Opening Rpt.) ¶¶ 148–52. Dr. Schwartz initially claimed that his manipulations were consistent with accounting principles, despite disclaiming accounting expertise. *See id.* ¶ 152 n.408 ███████████████ ███████████████); Ex. 14 (Schroeder Rpt.) ¶¶ 17, 52; Ex. 15 (Schwartz Class Dep.) 270:13–25. After seeing the report filed by the accounting expert ███████████ ███████████████, *see generally* Ex. 14 (Schroeder Rpt.), Dr. Schwartz relabeled his opinions as exclusively "economic," *see* Ex. 1 (Schwartz Rebuttal Rpt.) ¶¶ 118–24.

Whatever the label, Dr. Schwartz's opinion is fatally flawed. As Mr. Schroeder explains, Dr. Schwartz is offering accounting opinions. Ex. 14 (Schroeder Rpt.) ¶ 51. Dr. Schwartz admits to being unqualified to apply those standards, and so his opinion should be excluded. *See White v. Ford Motor Co.*, 312 F.3d 998, 1008–09 (9th Cir. 2002); *Houserman v. Comtech Telecomms.*

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - 11
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

*Corp.*, 509 F. Supp. 3d 1301, 1304 (W.D. Wash. 2020) ("[R]eliance upon GAAP and other industry standards constitutes . . . expert methodology." (cleaned up)).

This is not new territory for Dr. Schwartz. In *Trademark Research Corp. v. Maxwell Online, Inc.*, the Second Circuit upheld a decision to "forbid Dr. Schwartz from opining" on an accountant's work—a matter "where it seem[ed] . . . that he [was] verging over into an area where he is not an expert." 995 F.2d 326, 338 (2d Cir. 1993). This Court should exclude the similarly flawed accounting conclusions here, regardless of Dr. Schwartz's efforts to recast them as purely "economic."

## CONCLUSION

Valve respectfully requests that the Court exclude Dr. Schwartz's opinions on market definition, antitrust impact, and damages, as well as his accounting opinions.

DATED this 27th day of May, 2025.

*I certify that this memorandum contains 4,160 words, in compliance with the Local Civil Rules.*

WILKINSON STEKLOFF LLP

s/ *Rakesh Kilaru*
Rakesh Kilaru, *Admitted Pro Hac Vice*
James Rosenthal, *Admitted Pro Hac Vice*
Max Warren, *Admitted Pro Hac Vice*
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
Fax: (202) 847-4005
rkilaru@wilkinsonstekloff.com
jrosenthal@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Keri L. Arnold, *Admitted Pro Hac Vice*
Ralia E. Polechronis, *Admitted Pro Hac Vice*
Caroline Li, *Admitted Pro Hac Vice*
WILKINSON STEKLOFF LLP
130 West 42nd Street, 24th Floor
New York, New York 10036
Tel: (212) 294-8910
Fax: (202) 847-4005
karnold@wilkinsonstekloff.com

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - 12
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

rpolechronis@wilkinsonstekloff.com
cli@wilkinsonstekloff.com

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
Eric A. Lindberg, WSBA No. 43593
Todd T. Williams, WSBA No. 45032
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, WA 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com
elindberg@corrcronin.com
twilliams@corrcronin.com

Jessica M. Rizzo, *Admitted Pro Hac Vice*
BALLARD SPAHR LLP
1735 Market Street, Floor 51
Philadelphia, PA 19103
(215) 665-8500 (Phone)
(215) 864-8999 (Fax)
rizzoj@ballardspahr.com

Nathan M. Buchter, *Admitted Pro Hac Vice*
FOX ROTHSCHILD LLP
2000 Market Street STE 20TH FL
Philadelphia, PA 19103
Telephone (215) 299-3010
nbuchter@foxrothschild.com

Charles B. Casper, *Admitted Pro Hac Vice*
Robert E. Day, *Admitted Pro Hac Vice*
MONTGOMERY McCRACKEN WALKER &
RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, PA 19103
Telephone (215) 772-1500
ccasper@mmwr.com
rday@mmwr.com

Scott M. Danner, *Admitted Pro Hac Vice*
Priyanka Timblo, *Admitted Pro Hac Vice*
HOLWELL SCHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151 (Phone)
sdanner@hsgllp.com
ptimblo@hsgllp.com

*Attorneys for Defendant Valve Corporation*

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF STEVEN SCHWARTZ - 13
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005