THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE VALVE ANTITRUST LITIGATION,

No. 2:21-cv-00563-JNW

**DEFENDANT VALVE CORPORATION'S MOTION TO EXCLUDE OPINIONS OF JOOST RIETVELD**

**NOTE ON MOTION CALENDAR: AUGUST 25, 2025**

**FILED UNDER SEAL**

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

**TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page(s)**

*Avila v. Willits Env't Remediation Tr.,*
    633 F.3d 828 (9th Cir. 2011) ............................................................................... 4, 7

*Berlyn, Inc. v. Gazette Newspapers, Inc.,*
    214 F. Supp. 2d 530 (D. Md. 2002) ........................................................................ 4

*Cabrera v. Cordis Corp.,*
    134 F.3d 1418 (9th Cir. 1998) ............................................................................... 5

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993) ............................................................................................ 2, 3

*Davis v. Carroll,*
    937 F. Supp. 2d 390 (S.D.N.Y. 2013) ................................................................... 11

*Epic Games, Inc. v. Apple, Inc.,*
    67 F.4th 946 (9th Cir. 2023) ................................................................................. 9

*In re Acetaminophen–ASD-ADHD Prods. Liab. Litig.,*
    2024 WL 3357608 (S.D.N.Y. 2024) ..................................................................... 6

*In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.,*
    524 F. Supp. 2d 1166 (N.D. Cal. 2007) ............................................................. 3, 10

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. and Prods. Liab. Litig.,*
    174 F. Supp. 3d 911 (D.S.C. 2016) ...................................................................... 7

*In re Mirena IUD Prods. Liab. Litig.,*
    713 F. App'x 11 (2d Cir. 2017) ............................................................................ 6

*In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II),*
    341 F. Supp. 3d 213 (S.D.N.Y. 2018) ................................................................ 3, 12

*In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II),*
    982 F.3d 113 (2d Cir. 2020) ................................................................................. 12

*Kumho Tire Co., Ltd. v. Carmichael,*
    526 U.S. 137 (1999) ............................................................................................. 6

*Lust ex rel. Lust v. Merrell Dow Pharms., Inc.,*
    89 F.3d 594 (9th Cir. 1996) ................................................................................. 7

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

*Rayzberg v. County of Los Angeles,*
   2024 WL 3469038 (C.D. Cal. 2024)................................................................................. 2, 8

*Taylor v. County of Pima,*
   2023 WL 2652602 (D. Ariz. 2023)..................................................................................... 2

*Virginia Vermiculite Ltd. v. W.R. Grace & Co.-Conn.,*
   98 F. Supp. 2d 729 (W.D. Va. 2000) ................................................................................. 4

*Wade-Greaux v. Whitehall Lab'ys, Inc.,*
   874 F. Supp. 1441 (D.V.I.) ............................................................................................... 7

*Wade-Greaux v. Whitehall Lab'ys, Inc.,*
   46 F.3d 1120 (3d Cir. 1994)............................................................................................. 7

*White v. Ford Motor Co.,*
   312 F.3d 998 (9th Cir. 2002) ........................................................................................... 2

**Rules**

Fed. R. Evid. 702 ........................................................................................................*passim*

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - ii
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

## INTRODUCTION

Plaintiffs' proffered industry expert, Professor Joost Rietveld, has morphed into a conduit for Plaintiffs' favored fact evidence. His reports are full of opinions he admits he is not qualified to opine on and topics he has no personal knowledge of, supported by documents that were seemingly handed to him by Plaintiffs' Counsel without his inquiring any further. None of this is proper. Rule 702 limits experts to opinions within their area of expertise and prevents them from offering dressed-up lay testimony that usurps the role of the jury.

*First*, Professor Rietveld should not be allowed to offer opinions on key economic issues in this case, like market definition, market power, and procompetitive benefits. He admits he is not an economist. But he nevertheless seeks to offer what he terms "economicsy" glosses on these same topics. *See* Ex. 1 (Rietveld Dep.) 37:17–38:14. For example, he opines on whether video gaming platforms constitute "viable alternatives" to Steam, *see, e.g.*, Ex. 2 (Rietveld Response Rpt.) ¶¶ 40–83, which is just another way of opining on substitutability and market definition. He opines that Steam is "dominant" within the "business segment," Ex. 1 (Rietveld Dep.) 90:22–91:10, which is disguised language for discussing monopoly power. And he seeks to respond to the opinions of Valve's expert economist Professor Gautam Gowrisankaran regarding whether the challenged conduct could have procompetitive effects, even though he acknowledges that is a task for an economist (which he admittedly is not). Without qualifying expertise to offer any of these opinions, Professor Rietveld would simply be offering the jury lay opinions under the cloak of a court-approved expert. At a minimum, these opinions will confuse the jury and, even worse, improperly influence its fact-finding.

*Second*, Professor Rietveld should not be allowed to testify about Valve's alleged platform most-favored-nation policy ("PMFN") policy. He admits he is "not offering an expert opinion about whether or not Valve has a PMFN." *Id.* 188:20–189:23. Yet his reports are full of discussions of Valve's alleged PMFN and evidence he claims is consistent with a PMFN. An expert cannot narrate facts and documents on an issue about which he has no expert opinions.

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - 1
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

*Third*, Professor Rietveld should not be allowed to testify about various ways in which Steam is allegedly "worsening" for developers over time. By his own admission, Professor Rietveld has no relevant expertise on any of the issues he addresses, has done nothing to evaluate how Steam stacks up to its competitors, and has not even attempted to consider the significant evidence undercutting his views. Instead, he is, in every meaningful respect and using his own words—"just documenting what has been written by others." Ex. 1 (Rietveld Dep.) 325:22–326:3. There is nothing scientific or "expert" about a witness rehashing facts from small, cherry-picked sets of documents on issues he knows nothing about.

In short, the Court should prevent Professor Rietveld from taking the stand to serve as a poorly-informed narrator of Plaintiffs' case and limit him to issuing opinions on topics he previously addressed (and that Valve did not attempt to exclude), such as the history of video game production, Dkt. 182-2 (Rietveld Class Rpt.) ¶¶ 21–48, digital distribution of PC games, *id.* ¶¶ 83–121, and the extent of multihoming in the industry, *id.* ¶¶ 139–65; Ex. 3 (Rietveld Opening Rpt.) ¶ 5 (incorporating opinions from Class Report).

## LEGAL STANDARD

Expert witnesses may testify only within their area of expertise. *White v. Ford Motor Co.*, 312 F.3d 998, 1008–09 (9th Cir. 2002). Experts who do not are "essentially [offering] a lay opinion." *Id.* Courts have held that "[a]n expert may not narrate the facts of the case, except insofar as certain facts bear on the expert opinion, since it is 'inappropriate for experts to become a vehicle for factual narrative.'" *Rayzberg v. County of Los Angeles*, 2024 WL 3469038, at *4 (C.D. Cal. 2024) (citation omitted); *see also Taylor v. County of Pima*, 2023 WL 2652602, at *4 (D. Ariz. 2023) (citations omitted) (expert testimony is inadmissible if it simply "presents a narrative of the case which a lay juror is equally capable of constructing").

When assessing the reliability of potential expert testimony under Rule 702, courts inquire into whether the reasoning or methodology underlying the expert's testimony is scientifically valid and can be properly applied to the facts at issue. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - 2
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

579, 592 (1993). Expert opinions must be excluded when they are not grounded in accepted principles and methodologies in the relevant area of expertise. *Id.* at 589 (Rule 702 "is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline."). Expert testimony also should be excluded when an expert reaches his conclusion by "cherry-picking" favorable evidence "and rejecting or ignoring the great weight of the evidence that contradicts his conclusion." *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007); *see also In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 252 (S.D.N.Y. 2018) (expert "choos[ing] not to consider evidence that undercuts his opinion" is a "methodological failing"), *aff'd sub nom. In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113 (2d Cir. 2020).

## ARGUMENT

### I. Professor Rietveld's Thinly Disguised Opinions On Key Economic Issues Should Be Excluded.

Professor Rietveld is an Associate Professor of Strategic Management at University College of London ("UCL"). He claims expertise in strategic management, platform competition, and the video game industry. Ex. 1 (Rietveld Dep.) 33:15–24. He is not, however, an economist. *Id.* 35:12–14. While he claims to have been a reviewer for some "economicsy" journals, he does not consider himself an expert in the field of economics and does not have a Ph.D. in economics. *Id.* 35:12–23, 37:17–38:14. Yet he offers many opinions addressing the core economic issues in this case.

#### A. The Court Should Exclude Disguised Testimony About Market Definition And Monopoly Power.

Rietveld concedes that defining the relevant market "is an exercise that is performed by economists and not by someone such as [him]self." Ex. 4 (Rietveld Class Dep.) 65:5–15. Given his lack of economic training, he further disclaims any expertise relevant to identifying substitutes

DEFENDANT VALVE CORPORATION'S MOTION TO EXCLUDE OPINIONS OF JOOST RIETVELD - 3
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

and complements in the field of economics generally, Ex. 1 (Rietveld Dep.) 102:2–15; Ex. 4 (Rietveld Class Dep.) 126:21–127:14, and as to the video game industry specifically, Ex. 1 (Rietveld Dep.) 99:3–22. And he purports to concede that he is solely relying on the opinions of Plaintiffs' economics expert Dr. Steven Schwartz on the key issues related to the relevant market. Ex. 1 (Rietveld Dep.) 59:25–60:9, 68:10–23; Ex. 5 (Rietveld Reply Rpt.) ¶ 46.

Yet Professor Rietveld still intends to improperly opine on market issues before the jury. He offers extensive opinions about which gaming platforms are, to use his language, "viable alternatives" to Steam. *See, e.g.*, Ex. 2 (Rietveld Response Rpt.) ¶¶ 40–83. When asked how his concept of "alternatives" differs from the economic concept of "substitutes," he could not explain any difference between the two. Ex. 1 (Rietveld Dep.) 102:3–15. Similarly, he intends to opine that Steam is "dominant" in what he calls the relevant "industry" or "business segment." *Id.* 86:6–16 ("It is my opinion that Steam is a dominant distribution platform in the PC gaming segment and in the PC video game industry."). There is no apparent difference between that opinion and the opinion that Valve has monopoly power (which Rietveld admits he is unqualified to give).

Even an expert who has experience in the industry at issue "does not [have] license to offer opinions as to antitrust economics and relevant market analysis." *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530, 538 (D. Md. 2002) ("The experience one has in a given trade, however extensive and however closely related to the 'business side' of that industry, does not render one presumptively qualified to define that industry's markets." (citations omitted)); *Virginia Vermiculite Ltd. v. W.R. Grace & Co.-Conn.*, 98 F. Supp. 2d 729, 733 (W.D. Va. 2000) ("Individuals with experience in defining markets [in the relevant industry] would not possess the skill and training of a professional economist necessary to define a relevant market for antitrust purposes."). It follows that Professor Rietveld should not be permitted to offer opinions about the key economic questions in this case, even if they are cloaked in conveniently non-economic language. *See Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011) (affirming exclusion of opinion falling outside expert's area of expertise).

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - 4
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

In addition, these opinions should be excluded because Professor Rietveld lacks a reliable methodology in forming them. He admits that his "field of management is, generally speaking not tasked with defining relevant markets" and that "what constitutes an industry" is "for management . . . a hard thing to define." Ex. 4 (Rietveld Class Dep.) 174:14–22. He is not aware of an accepted definition of the term "viable alternative" in his field and concedes that he is "unaware" of an accepted methodology within his field for determining whether firms are "viable alternatives." Ex. 1 (Rietveld Dep.) 103:16–21. Nor has he attempted to set forth an accepted methodology for defining the "relevant business segment," or an analysis of "who is in and who is not." *Id.* 95:23–96:10; *see id.* 83:11–16 (admitting he was not even asked to "conclusively define the PC game industry").

Professor Rietveld's opinions related to the relevant "industry" or "business segment," Steam's alleged "dominance," and "viable alternatives" to Steam are thus independently inadmissible because they are not based on any accepted methodology within the field of management. *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) (excluding testimony where expert did not "demonstrate that he followed a scientific method embraced by at least some other experts in the field").

## B.      The Court Should Also Exclude Testimony About Procompetitive Benefits.

While Professor Rietveld offers extensive opinions purportedly rebutting Professor Gowrisankaran's opinions on procompetitive benefits, Ex. 5 (Rietveld Reply Rpt.) ¶¶ 73–89, he acknowledges that assessing procompetitive benefits is "an exercise mostly done by economists," Ex. 4 (Rietveld Class Dep.) 86:14–87:11; Ex. 1 (Rietveld Dep.) 261:18–263:3 ("It is my understanding that in antitrust matters it is typically the economist who conducts the analysis to ascertain whether something or some policy is anticompetitive or procompetitive."). And he admits that this assessment "involves certain technical analysis that [he has] not been trained to

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - 5
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

conduct." Ex. 1 (Rietveld Dep.) 262:19–263:3. His opinions on this economic topic should be excluded for that reason alone.

Moreover, Professor Rietveld's work cannot withstand scrutiny on its own terms because he did not rely on any valid methodology in his own field to support his conclusions. He admits that he did not conduct any quantitative analysis to arrive at those conclusions. *Id.* 265:11–19. Instead, he offers only a selective review of academic economic literature on procompetitive benefits that he conducted *for the very first time* while preparing his Response Report. *See* Ex. 2 (Rietveld Response Rpt.), App. C; Ex. 1 (Rietveld Dep.) 267:5–268:24. Rule 702 does not allow an expert to manufacture expertise he admittedly lacked prior to being retained. *See In re Acetaminophen–ASD-ADHD Prods. Liab. Litig.*, 2024 WL 3357608, at *14 (S.D.N.Y. 2024) ("In determining whether the witness has the relevant experience, courts 'consider the degree to which that experience was developed for litigation.'") (citations omitted); *In re Mirena IUD Prods. Liab. Litig.*, 713 F. App'x 11, 15 (2d Cir. 2017) (affirming exclusion of experts who "lacked pre-litigation expertise" and "developed their theories for the purposes of this litigation").

Professor Rietveld's analysis is also incomplete and results-oriented. In his purportedly systematic review of the literature, he excludes a widely-cited, highly relevant paper by Johansen and Vergé that discusses procompetitive benefits. Professor Rietveld says he omits this paper because it is an "unpublished working paper." Ex. 1 (Rietveld Dep.) 270:6–19; Ex. 2 (Rietveld Response Rpt.), App. C at 35 n.62. But Professor Rietveld admits to citing working papers in his own publications. Ex. 1 (Rietveld Dep.) 273:19–274:24. He also acknowledges that over half (15 of 28) of the articles he included in his review cited the article he excluded, *id.* 281:16–25. And in his own scholarly work, Rietveld considers and cites relevant papers cited more than ten times by articles he has identified on the same topic. *Id.* 249:11–257:6. Inconsistency between an expert's out-of-court versus in-court methodology is grounds for exclusion under 702. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (the court must "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - 6
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

expert in the relevant field"); *Wade-Greaux v. Whitehall Lab'ys, Inc.*, 874 F. Supp. 1441, 1479 (D.V.I.) (same), *aff'd*, 46 F.3d 1120 (3d Cir. 1994).

Ultimately, Rietveld acknowledges that "it could potentially be helpful to have a look" at the Johansen and Vergé, paper, Ex. 1 (Rietveld Dep.) 277:17–278:8, but that is something an expert should do *before* reaching his opinions. Courts routinely exclude this kind of selective literature review, particularly on a topic where the expert has no expertise. *See, e.g., Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 597–98 (9th Cir. 1996) (excluding expert's selective literature review); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. and Prods. Liab. Litig.*, 174 F. Supp. 3d 911, 929 (D.S.C. 2016) (rejecting expert for "cherry-picking articles based on the authors' biases"); *see also Avila*, 633 F.3d at 839.

**II.    Rietveld's Testimony Regarding Valve's Alleged PMFN Should Be Excluded Because It Consists of An Improper Factual Narrative Divorced from Any Expert Opinion.**

Rietveld admits that he is "not offering an expert opinion about whether or not Valve has a PMFN." Ex. 1 (Rietveld Dep.) 188:20–189:23. Nor could he do so. He has not examined any pricing data equipping him to opine on the existence or enforcement of Valve's alleged PMFN. *Id.* 194:25–195:6. He did not conduct a "cause-and-effect" analysis that would allow him to determine whether any alleged PMFN had adverse effects in the market, including whether it caused another third-party gaming platform to exit the market. *Id.* 198:14–200:22, 202:5–203:2. He does not have the requisite economic expertise to determine whether a policy, such as a PMFN, is anti-competitive or procompetitive. *Id.* 261:18–262:2; *see also supra* I.B. And despite having worked in the video gaming industry for years, including at a publisher with a game on Steam, Rietveld admits *he had never heard of Valve's alleged PMFN before reading the Complaint in this action.* Ex. 4 (Rietveld Class Dep.) 55:24–56:12.

Notwithstanding these admissions, Professor Rietveld lays out evidence that, in his view, "strongly suggest[s]" Valve has a PMFN on price and content and how it is enforced. Ex. 1

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - 7
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

(Rietveld Dep.) 189:24–190:14; *see, e.g.*, Ex. 3 (Rietveld Opening Rpt.) ¶ 32 (claiming that Valve uses "Steam Keys in conjunction with its parity requirements" to maintain Valve's alleged dominance); Ex. 2 (Rietveld Response Rpt.) ¶ 174 ("[A]s Plaintiffs allege and Dr. Schwartz opined, Valve's parity requirements enable it to maintain its supra-competitive commission rates."); *see also id.* ¶¶ 82, 95, 132, 146, 155, 156–57, 161–63, 172, 175–79. This is not an expert opinion—it is just him serving as a mouthpiece for Plaintiffs' factual narrative on a fundamental issue in the case.

The law is clear on this topic: "An expert may not narrate the facts of the case, except insofar as certain facts bear on the expert opinion, since it is 'inappropriate for experts to become a vehicle for factual narrative.'" *Rayzberg*, 2024 WL 3469038, at *4. This makes good sense. Allowing such narrative testimony usurps the jury's role in evaluating and weighing evidence. Rietveld admits he has no basis to provide expert testimony about Valve's alleged PMFN. His lay testimony about that subject is of no legitimate use to the jurors.

**III.    Rietveld's Opinions Regarding "Quality Degradation" On Steam Should Be Excluded Because He Lacks Expertise And His Conclusions Are Based on Cherry-Picked Evidence.**

Continuing on theme, Professor Rietveld admits he has no personal or professional expertise to opine on how Valve's alleged lack of incentive to innovate has led to supposed quality degradation on Steam through diminished game discoverability, poor customer support, ineffective content moderation, and possible money-laundering on the platform. *See, e.g.*, Ex. 1 (Rietveld Dep.) 27:20–28:11, 313:15–24; Ex. 3 (Rietveld Opening Rpt.) ¶¶ 102–22, 129–32. Instead, he is, for the most part, "just documenting what has been written by others." Ex. 1 (Rietveld Dep.) 325:22–326:3. And the evidence he purports to "document[]" is incomplete and one-sided. *Id.* 325:22–326:17.

Indeed, Professor Rietveld acknowledges that he created a Steam account to "see[] what the platform looks like" and "what the user experience is" *after* he had formed his opinions in this

case. *Id.* 148:15–149:13, 151:18–152:15. He never created an account on Activision Blizzard's PC gaming platform, Battle.net, or on Microsoft's Game Pass, and could not recall whether he had created an account on the Epic Games Store to draw any sort of comparison with the Steam experience. *Id.* 159:5–160:21. Simply put, he offers comparative opinions about a platform without any knowledge of the platform or its comparators. These poorly-informed opinions on "quality degradation" are not valid expert testimony and have no place in court.

## A.    Game Discoverability

Professor Rietveld's opinion that Steam is "overcrowd[ed]" and that games cannot find their audiences should be excluded. Ex. 3 (Rietveld Opening Rpt.) ¶¶ 129–32. At the outset, these are odd opinions for Plaintiffs' expert to be offering in this antitrust class action. His complaint seems to be that too many developers are putting too many games on Steam—in other words, that there are too many class members, even though he is offering opinions on behalf of all of them; and that there is too much output, even though the antitrust laws seek to protect increased output. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 983 (9th Cir. 2023) ("Market power is the ability for a defendant to profitably *raise* prices by *restricting* output.") (emphasis added) (citing *Ohio v. Am. Express Co.*, 585 U.S. 529, 549 (2018)); Ex. 1 (Rietveld Dep.) 285:7–16 ("The data strongly suggests that, both after Greenlight and after Steam Direct, there have been many more games released onto the platform than before those changes."). He unsurprisingly identifies no basis in his field of expertise for opining on these topics.

Professor Rietveld also fails to conduct any investigation of the features Steam has adopted to facilitate game discoverability, much less a comparison of game discoverability on Steam with other platforms. *See supra* III. Worse still, Professor Rietveld *disregards* evidence regarding the extensive innovations that Valve has adopted to continually improve discoverability of games as the platform grew. For example, at Plaintiffs' request, Valve designated a corporate witness, Al Farnsworth, on game discoverability who testified at length about the workings of Valve's curated marketing and algorithmic visibility. *See generally* Ex. 6 (Farnsworth 30(b)(6) Dep.) 7:11–22;

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - 9
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

8:17–9:4; 12:7–21; 13:1–21. Yet Professor Rietveld ignores this and does not cite Mr. Farnsworth's deposition in his list of materials considered for any of his reports. Ex. 3 (Rietveld Opening Rpt.), App. B; Ex. 2 (Rietveld Response Rpt.), App. B; Ex. 5 (Rietveld Reply Rpt.), App. B; Ex. 1 (Rietveld Dep.) 11:4–12:2, 56:13–21 (all materials relied upon are listed in his reports). His opinions are thus the type of one-sided, results-oriented expert testimony that should be rejected. *In re Bextra*, 524 F. Supp. 2d at 1176.

**B.    Customer Support**

Rietveld's opinion that Valve's "poor customer service" has further diminished the platform's quality should be excluded for the same reasons. Ex. 3 (Rietveld Opening Rpt.) ¶¶ 102–06. Rietveld admits he has no personal experience working on customer service issues in the gaming industry and has not published any papers that relate to that issue. Ex. 1 (Rietveld Dep.) 313:15–24. He also admits that he has not compared Steam's customer service with that of any other third-party PC gaming platform. *Id.* 313:25–314:9.

In support of his opinions, Rietveld focuses primarily on a handful of public reports that Steam's customer support offerings were deficient more than a decade ago (well before the class period) as though nothing has changed in the intervening years. Ex. 3 (Rietveld Opening Rpt.) ¶¶ 102–05. Once again, Professor Rietveld is simply restating facts about which he has no expertise or personal knowledge. And he disregards countervailing evidence that Valve has since invested heavily in customer support and earned the reputation it enjoys today for having some of the most reliable customer support in the industry. For example, Rietveld cites the IGN article quoting senior Valve employee Erik Johnson admitting in 2015 that Valve had "a lot of work" to do on its customer support system. *Id.* ¶ 103. But Mr. Johnson later testified that in that very same year (2015) that Valve did the work it needed to do: Valve fired most of its in-house customer support employees and ███████████████████████████████, such that Steam's current "reputation is actually quite good." Ex. 7 (Johnson Dep.) 227:10–229:11. Rietveld wholly ignores Mr. Johnson's testimony in all of his reports. Ex. 1 (Rietveld Dep.) 307:4–310:6.

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - 10
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

Rietveld's selective presentation and review warrants exclusion under Rule 702. *See Davis v. Carroll*, 937 F. Supp. 2d 390, 418 (S.D.N.Y. 2013) ("Where . . . expert testimony rests on inadequate factual foundations, problematic assumptions, or a misleadingly partial selection of relevant facts, it must be excluded under Rule 702." (citations omitted)).

## C.    Content Moderation

Rietveld's subjective views of content moderation on Steam should likewise be rejected. Ex. 3 (Rietveld Opening Rpt.) ¶¶ 118–22 (opining that Valve's failure to enforce its stated rules of conduct lowers the quality of the platform for developers). Once again, Rietveld has no professional or personal experience dealing with content moderation on a platform. Ex. 1 (Rietveld Dep.) 316:4–11. Nor does he offer any analysis comparing Steam's efforts to moderate content with those of other PC gaming platforms. Ex. 3 (Rietveld Opening Rpt.) ¶¶ 118–22.

The only evidence Rietveld cites are four letters to Valve from various members of Congress expressing concern about offensive speech by users on Steam. *See id.* ¶¶ 118–21. Rietveld ignores, however, Valve's four letters *responding* to Congress, in which Valve describes the extensive measures it takes to curb speech violating Steam's Online Conduct rules and details the number of users whose use of the platform has been restricted for violating those rules. *See e.g.*, Ex. 1 (Rietveld Dep.) 316:19–322:22; Ex. 8 (Rietveld Dep. Ex. 15); Ex. 9 (Rietveld Dep. Ex. 16). In fact, when presented with two of these letters at his deposition, Rietveld admitted that was the first time he had ever even seen them. Ex. 1 (Rietveld Dep.) 321:11–15, 322:19–22.

## D.    Money Laundering

Rietveld opines that Steam "may be" used to facilitate money laundering. Ex. 3 (Rietveld Opening Rpt.) ¶¶ 113–17. But at his deposition, he could not even express his opinion on this topic without looking at his report. Ex. 1 (Rietveld Dep.) 324:24–325:11. He does not have any idea what Steam does to monitor money laundering or other fraud on Steam. *Id.* 326:9–12. He has no opinion on what Steam could do to improve the way in which it deals with money laundering. *Id.* 326:4–8. He cannot recall reviewing the testimony of Valve employee Chris Boyd, who was

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - 11
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005

designated as Valve's 30(b)(6) witness on, among other things, Valve's policies for curbing money laundering. *Id.* 326:13–17; Ex. 10 (Boyd 30(b)(6) Dep.) 7:24–8:6. And he admits that he is not even critical of the steps that Steam takes to monitor money laundering. He is just "documenting what has been written by others on this topic." Ex. 1 (Rietveld Dep.) 325:22–326:3. Regurgitating what other outside commentators have said about a topic without considering any of the evidence that has actually been submitted in this case is in no way an admissible expert opinion. Rietveld's "opinions" on this topic should be excluded. *In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig.*, 341 F. Supp. at 241–42.

## CONCLUSION

For the foregoing reasons, Valve respectfully requests that the Court exclude Professor Rietveld's opinions regarding economic issues, Valve's alleged PMFN, and so-called worsening conditions on Steam.

DATED this 27th day of May, 2025.

*I certify that this memorandum contains 4,114 words, in compliance with the Local Civil Rules.*

WILKINSON STEKLOFF LLP

*s/ Rakesh Kilaru*
Rakesh Kilaru, *Admitted Pro Hac Vice*
James Rosenthal, *Admitted Pro Hac Vice*
Max Warren, *Admitted Pro Hac Vice*
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
Fax: (202) 847-4005
rkilaru@wilkinsonstekloff.com
jrosenthal@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com

Keri L. Arnold, *Admitted Pro Hac Vice*
Ralia E. Polechronis, *Admitted Pro Hac Vice*
Caroline Li, *Admitted Pro Hac Vice*
WILKINSON STEKLOFF LLP
130 West 42nd Street, 24th Floor
New York, New York 10036
Tel: (212) 294-8910

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - 12
2:21-cv-00563-JNW

Fax: (202) 847-4005
karnold@wilkinsonstekloff.com
rpolechronis@wilkinsonstekloff.com
cli@wilkinsonstekloff.com

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
Eric A. Lindberg, WSBA No. 43593
Todd T. Williams, WSBA No. 45032
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, WA  98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com
elindberg@corrcronin.com
twilliams@corrcronin.com

Jessica M. Rizzo, *Admitted Pro Hac Vice*
BALLARD SPAHR LLP
1735 Market Street, Floor 51
Philadelphia, PA 19103
(215) 665-8500 (Phone)
(215) 864-8999 (Fax)
rizzoj@ballardspahr.com

Nathan M. Buchter, *Admitted Pro Hac Vice*
FOX ROTHSCHILD LLP
2000 Market Street STE 20TH FL
Philadelphia, PA 19103
Telephone (215) 299-3010
nbuchter@foxrothschild.com

Charles B. Casper, *Admitted Pro Hac Vice*
Robert E. Day, *Admitted Pro Hac Vice*
MONTGOMERY McCRACKEN WALKER &
RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, PA 19103
Telephone (215) 772-1500
ccasper@mmwr.com
rday@mmwr.com

Scott M. Danner, *Admitted Pro Hac Vice*
Priyanka Timblo, *Admitted Pro Hac Vice*
HOLWELL SCHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151 (Phone)
sdanner@hsgllp.com
ptimblo@hsgllp.com

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - 13
2:21-cv-00563-JNW

*Attorneys for Defendant Valve Corporation*

DEFENDANT VALVE CORPORATION'S MOTION TO
EXCLUDE OPINIONS OF JOOST RIETVELD - 14
2:21-cv-00563-JNW

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000/Fax: (202) 847-4005