THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE VALVE ANTITRUST LITIGATION

No. 2:21-cv-00563-JNW

**PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DR. GAUTAM GOWRISANKARAN**

**FILED UNDER SEAL**

**NOTE ON MOTION CALENDAR:
August 22, 2025**

MOT. TO EXCLUDE DR. GOWRISANKARAN
CASE NO. 21-CV-00563-JNW

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON  98101
TEL: (206) 905-7000

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................. 4

    A.    Dr. Gowrisankaran's Opinions of "Valve's Procompetitive Effects on the Video Game Industry" Have Nothing to Do with a PMFN ...........................................4

    B.    Dr. Gowrisankaran's Opinions on "Procompetitive Effects of the Alleged Conduct" Have Nothing to Do with a PMFN .......................................................4

    C.    Dr. Gowrisankaran Did Not Construct a "Counterfactual" World to Analyze Any Procompetitive Effects of Valve's PMFN ..........................................................6

III.    LEGAL STANDARD ........................................................................................ 6

IV.    ARGUMENT ..................................................................................................... 7

    A.    Dr. Gowrisankaran's Opinions Do Not "Fit" This Case....................................7

    B.    Dr. Gowrisankaran's Opinions Are Unreliable ..................................................9

V.    CONCLUSION ................................................................................................ 12

MOT. TO EXCLUDE DR. GOWRISANKARAN
CASE NO. 21-CV-00563-JNW

i

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON  98101
TEL: (206) 905-7000

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Apotex, Inc. v. Cephalon, Inc.*,
   2017 WL 10963610 (E.D. Pa. May 24, 2017) ...............................................................8

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
   613 F. Supp. 3d 1308 (S.D. Cal. 2020), aff'd, 9 F.4th 1102 (9th Cir. 2021) ..........................12

*Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*,
   683 F.3d 1144 (9th Cir. 2012) ..............................................................................7

*In re Broiler Chicken Grower Antitrust Litig.*,
   2024 WL 2194349 (E.D. Okla. May 15, 2024) ................................................................9

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ..............................................................................................10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ..........................................................................................1, 7

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ...............................................................................7

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ............................................................................8, 10

*In re Generic Pharms. Pricing Antitrust Litig.*,
   2024 WL 4980784 (E.D. Pa. Dec. 3, 2024), 2025 WL 478178 (E.D. Pa. Feb.
   12, 2025) .........................................................................................................9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .....................................................................................3, 7, 10

*Microsoft Corp. v. Motorola, Inc.*,
   2013 WL 4008822 (W.D. Wash. Aug. 5, 2013) ................................................................9

*Murray v. S. Route Maritime SA*,
   870 F.3d 915 (9th Cir. 2017) ...............................................................................7

*NCAA v. Alston*,
   594 U.S. 69 (2021) .................................................................................1, 7, 8, 10

*NCAA v. Bd. of Regents of Univ. of Okla.*,
   468 U.S. 85 (1984) ............................................................................................11

*Ohio v. Am. Express Co.*,
    585 U.S. 529, 138 S. Ct. 2274 (2018)........................................................................1, 7

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    714 F. Supp. 3d 65 (E.D.N.Y. 2024) ......................................................................7, 11

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    254 F.R.D. 597 (N.D. Cal. 2008)........................................................................3, 11, 12

*Ray v. National Collegiate Athletic Association*,
    No. 1:23-cv-00425 WBS CSK, 2025 WL 775753 (E.D. Cal. Mar. 11, 2025) .......................10

*In re Impax Labs, Inc.*,
    2019 WL 1552939 (F.T.C. 2019), *aff'd sub nom. Impax Labs., Inc. v. FTC*,
    994 F.3d 484 (5th Cir. 2021) ...............................................................................1, 8

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004).........................................................................12

*Rovid v. Graco Children's Prods. Inc.*,
    No. 17-cv-01506-PJH, 2018 WL 5906075 (N.D. Cal. Nov. 9, 2018) ....................................10

*United States of America, et al. v. JetBlue Airways Corporation et al.*,
    Case No. 1:23-cv-10511-WGY (W.D. Wash Nov. 17, 2023) .................................................10

*United States v. Sandoval-Mendoza*,
    472 F.3d 645 (9th Cir. 2006) .................................................................................7

*In re Valve Antitrust Litig.*,
    No. 2:21-cv-00563-JNW, 2024 WL 4893373 (W.D. Wash. Nov. 26, 2024) ...........................2

**Rules**

Fed. R. Evid. 702 .............................................................................1, 3, 6, 9, 12

**Other Authorities**

ANTITRUST LAW: AN ANALYSIS OF ANTITRUST PRINCIPLES AND THEIR
    APPLICATION ¶1504 (5th ed. 2023)............................................................................8

Logically Fallacious, "Affirming The Consequent," available at
    https://www.logicallyfallacious.com/logicalfallacies/Affirming-the-
    Consequent (last visited May 26, 2025) ...............................................................11

## I.    INTRODUCTION

The Plaintiff Publisher Class hereby moves, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude certain opinions proffered by Valve Corporation's expert economist Dr. Gautam Gowrisankaran.  Specifically, the Publisher Class moves to exclude Dr. Gowrisankaran's proffered opinions in sections 3 and 4 of his Expert Report dated January 27, 2025, on "Valve's Procompetitive Effects on the Video Game Industry" and "Procompetitive Effects of the Alleged Conduct."  Kapoor Decl. Ex. 1.[1]

The Supreme Court has made clear that, in cases governed by the antitrust "rule of reason" analysis (as here) which weighs a restraint of trade's procompetitive effects against its anticompetitive effects, the question is the "challenged restraint's" "'actual effect on competition.'"  *NCAA v. Alston*, 594 U.S. 69, 81-84, 96-98 (2021) ("*NCAA*") (quoting *Ohio v. Am. Express Co.*, 585 U.S. 529, 138 S. Ct. 2274, 2284 (2018)).  To the extent a defense expert like Dr. Gowrisankaran wants to discuss the procompetitive effects of the defendant's conduct, they must tie their claimed procompetitive effects to what is challenged in the case, not just discuss what they view as positive aspects of the defendant's business generally, untethered to the challenged conduct.  *See id*; *see also In re Impax Labs, Inc.*, 2019 WL 1552939, at *31 (F.T.C. 2019) ("Impax must 'articulate the specific link between the challenged restraint and the purported justification,' and demonstrate that the restraint in fact 'advance [s] procompetitive goals.'"), *aff'd sub nom. Impax Labs., Inc. v. FTC*, 994 F.3d 484 (5th Cir. 2021).

In this case, Plaintiffs challenge Valve's imposition of a Platform Most-Favored Nations provision (PMFN) that requires publishers of PC video games sold on Valve's Steam platform not to offer better prices to consumers on other platforms (price parity) and not to offer differentiated content to consumers on other platforms (content parity).  Plaintiffs contend that Valve's PMFN undermines other platforms' ability to compete with Steam, thereby maintaining

---

[1]  Citations to "Kapoor Decl. Ex." refer to exhibits to the Declaration of Ankur Kapoor (May 27, 2025).

MOT. TO EXCLUDE DR. GOWRISANKARAN
CASE NO. 21-CV-00563-JNW

1

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON  98101
TEL: (206) 905-7000

Steam's monopoly in the distribution of PC games and enabling Valve to charge supra-competitive commissions to PC game publishers. *In re Valve Antitrust Litig.*, No. 2:21-cv-00563-JNW, 2024 WL 4893373, at *2 (W.D. Wash. Nov. 26, 2024). At the class certification stage, this Court recognized that Plaintiffs presented "evidence that Valve communicates this portion of the PMFN Policy in a roundabout manner and through various means[,]" "includ[ing] [in] certain contract terms associated with providing Steam Keys, one-off discussions with game companies, and various messages in industry forums[,]" all of which "contributes to a common industry understanding of Valve's price-parity expectation." *Id*. at *10.

Notwithstanding the title of section 4 of Dr. Gowrisankaran's Expert Report, "Procompetitive Effects of the Alleged Conduct," Dr. Gowrisankaran does not analyze the "actual effect on competition" of Valve's PMFN—because he flatly denies that the PMFN exists. Kapoor Decl. Ex. 2, Reply Merits Expert Report of Gautam Gowrisankaran, Ph.D. (Apr. 25, 2025) ¶ 28 ("There is no PMFN and there is no price parity"), ¶ 31 ("there is no PMFN and no competitive harm"). Having opined that there is no PMFN, it would ***not be possible*** for him to connect the aspects of Valve's conduct that he highlighted in his opening report to the conduct challenged in this case.

Neither does section 3 of Dr. Gowrisankaran's Expert Report assess any procompetitive effects of the PMFN. Section 3 discusses only firms' general investment incentives, Valve's decision to "vertically integrate" in 2005 by offering other publishers' PC games for sale on Steam, and other features that Steam has added over time—none of which Plaintiffs challenge as anticompetitive and none of which Dr. Gowrisankaran causally links to the Steam PMFN.

By claiming Valve engaged in "procompetitive conduct" untethered from the challenged restraint on competition, Dr. Gowrisankaran offers opinions that do not "fit" this case and must be excluded under *Daubert*.

Even if Dr. Gowrisankaran's musings on Valve's supposed influence on the video-game industry were relevant, his analyses are not methodologically reliable under *Daubert*. To be reliable, an expert must "employ[] in the courtroom the same level of intellectual rigor that

MOT. TO EXCLUDE DR. GOWRISANKARAN
CASE NO. 21-CV-00563-JNW

2

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON  98101
TEL: (206) 905-7000

characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Even if an economist does not believe that the challenged conduct exists, an economist could analyze such conduct's competitive effects by constructing a "counterfactual" economic model of the market with such conduct and comparing it to a model without such conduct—an approach that Dr. Gowrisankaran has employed and characterized as standard in other antitrust cases and in his academic writing.  But Dr. Gowrisankaran did not do that in this case, instead claiming that he "didn't need to construct a counterfactual world."  Kapoor Decl. Ex. 3, Gowrisankaran Dep. Tr. 43:08-46:23.  The fatal flaw in Dr. Gowrisankaran's approach is that he cannot point to any procompetitive effects created by the PMFN in the actual world, because his opinion is that the PMFN does not exist. Therefore, the only way for him to have assessed the economic effects of such a PMFN would have been to model a counterfactual world with such a PMFN, which he did not do.  Dr. Gowrisankaran's methodological failure means that he effectively assumes that because (as he claims) Steam is valuable today, it must be because of the conduct he claims does not exist.  That makes no sense and is unreliable.  *Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 605-607 (N.D. Cal. 2008).

In short, Dr. Gowrisankaran's proffered opinions on procompetitive effects have nothing to do with any procompetitive effects of Valve's conduct that the Publisher Class challenges in this case, and therefore his opinions do not "fit" the facts of this case and will not "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702.  Neither is his approach reliable.  The Court should exercise its gatekeeping function under Rule 702 and exclude Sections 3 and 4 of Dr. Gowrisankaran's opening report.

MOT. TO EXCLUDE DR. GOWRISANKARAN
CASE NO. 21-CV-00563-JNW

3

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON  98101
TEL: (206) 905-7000

## II.    FACTUAL BACKGROUND

### A.    Dr. Gowrisankaran's Opinions of "Valve's Procompetitive Effects on the Video Game Industry" Have Nothing to Do with a PMFN

Section 3 of Dr. Gowrisankaran's Opening Report consists of 60 pages reciting the economic incentives of firms generally to invest in capital, as well as the history of Steam and PC game distribution. Neither the concept nor the term "PMFN" appears anywhere in those 60 pages, nor does the concept of price parity. Indeed, the term "price parity" appears only once in Section 3 in a footnote in the title of a news article about the effectiveness of sales events. Kapoor Decl. Ex. 1 ¶ 64b n.118.

None of Dr. Gowrisankaran's discussion in section 3 concerns the PMFN restraint that Plaintiffs challenge in this case. Instead, Dr. Gowrisankaran merely discusses Valve's decision to "vertically integrate" by digitally distributing third-party games in addition to its own, and the advantages of digital distribution over distribution via physical media in brick-and-mortar stores. Kapoor Decl. Ex. 1 ¶¶ 47-54, 58-64. He also discusses how digital third-party PC game distribution platforms, like Steam, enjoy network effects from multiple publishers offering their games to consumers, which attract more consumers to the platform. *Id.* ¶¶ 58-60. Dr. Gowrisankaran also discusses publishers' monetization approaches and how Valve's commission purportedly benefits publishers. *Id.* ¶¶ 64-66. Dr. Gowrisankaran concludes that "Valve was one of the pioneers in offering digital distribution services, and has—since the inception of Steam as a digital platform—innovated to provide value to both consumers and publishers." *Id.* ¶ 69; *see also id.* ¶¶ 66-107. Finally, section 3 of Dr. Gowrisankaran's Expert Report discusses the growth of the video-game industry broadly and beyond PC games. Kapoor Decl. Ex. 1 ¶¶ 111-124.

### B.    Dr. Gowrisankaran's Opinions on "Procompetitive Effects of the Alleged Conduct" Have Nothing to Do with a PMFN

Section 4 of Dr. Gowrisankaran's Expert Report purports to offer procompetitive effects from a PMFN which, in his opinion, does not exist. Again, there is no discussion of the supposed procompetitive effects flowing from Valve's PMFN. The only mentions of "price

parity" or "PMFN" are in his recitations of Plaintiffs' allegations, Kapoor Decl. Ex. 1 ¶¶ 134, 148, and in footnotes in the titles of academic literature that does not address Valve's PMFN, *id.* ¶ 131 nn. 253, 254; Kapoor Decl. Ex. 3, Gowrisankaran Dep. Tr. 35:21-37:22.

Section 4.1 of Dr. Gowrisankaran's Expert Report generally discusses the economic concept of "free-riding" and how "measures that mitigate free-riding *can* have procompetitive effects." Kapoor Decl. Ex. 1 ¶ 126 (emphasis added). As he conceded at deposition, however, this discussion is "theoretical" and not tied to Valve's PMFN. Kapoor Decl. Ex. 3, Gowrisankaran Dep. Tr. 35:21-37:22.

Section 4.2 discusses how Steam Keys "can have procompetitive benefits" and "are vulnerable to free-riding." Kapoor Decl. Ex. 3, Gowrisankaran Dep. Tr. 37:23-38:17. Steam Keys are alphanumeric codes provided by Valve to publishers who can then sell the keys to consumers. A Steam Key enables the consumer to access the Steam version of the game. Kapoor Decl. Ex. 1 ¶ 8. Dr. Gowrisankaran states that "having Steam keys without any restrictions also would result in an incentive for game publishers to use Steam keys to free-ride on Steam's platform and marketing services." Kapoor Decl. Ex. 1 ¶ 135. He discusses how Valve limits the number of Steam Keys based on the quantity of actual or expected Steam sales to mitigate free-riding. *Id.* ¶ 147.

But Plaintiffs do not contend that Valve acted anticompetitively by limiting the number of Steam Keys in the market. Rather, Plaintiffs allege that Valve restrained competition by requiring *price and content parity* for any publisher utilizing Steam Keys, even if the games they sell elsewhere are *not* Steam-Key versions of their games. Dkt. 181 at 6-8. Although Dr. Gowrisankaran states that "it makes economic sense for Valve to limit how Steam keys can be priced" to mitigate free-riding, Kapoor Decl. Ex. 1 ¶ 135, he does not explain how any *pricing restrictions* on Steam Keys address free-riding—again because, in his view, no such restrictions exist. Kapoor Decl. Ex. 3, Gowrisankaran Dep. Tr. 277:12-280:25.

Finally, section 4.3 discusses the notion that Valve "has stronger incentives to invest in marketing support for publishers if it protects itself from free-riding." Kapoor Decl. Ex. 1 at 96.

MOT. TO EXCLUDE DR. GOWRISANKARAN
CASE NO. 21-cv-00563-JNW

5

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

Dr. Gowrisankaran confirmed in his deposition that "*[t]he point of Section 4.3 is not to provide a discussion of that conduct" "that Plaintiffs are challenging in this case*." Kapoor Decl. Ex. 3, Gowrisankaran Dep. Tr. 38:18-39:12 (emphasis added).

### C.   Dr. Gowrisankaran Did Not Construct a "Counterfactual" World to Analyze Any Procompetitive Effects of Valve's PMFN

In his prior expert trial testimony on behalf of the U.S. Department of Justice Antitrust Division's challenge to JetBlue Airways' acquisition of Spirit Airlines in 2023, Dr. Gowrisankaran testified that a standard methodology for an economist to evaluate competitive effects in antitrust cases "is to say conceptually what would the world look like if the merger [the challenged conduct in that case] were not to go forward [the current world], and then what would the world look like if the merger were to go forward [the challenged conduct], and then ask what's the difference between those two worlds." Kapoor Decl. Ex. 4, Gowrisankaran 2023/11/17 Trial Tr., ECF 415 at 15:17-16:05; Kapoor Decl. Ex. 3, Gowrisankaran Dep. Tr. 50:03-51:25 (confirming trial testimony as truthful and accurate); *see also* Kapoor Decl. Ex. 5, C. Bruegge, G. Gowrisankaran & A. Gross, "Using Policy Functions to Estimate Merger Impacts: an Application to JetBlue-Spirit" (Feb. 15, 2025) (working paper) ("The canonical approach to analyze mergers in differentiated product industries is to start with an equilibrium model with discrete choice demand, estimate preferences and costs by imposing a model of competition such as Bertrand pricing, and use the model to simulate counterfactual outcomes (Nevo, 2000).").

Dr. Gowrisankaran, however, did not construct a counterfactual economic model or "but-for world" to assess the competitive effects of Valve's PMFN. In his view, he "didn't need to construct a counterfactual world with a PMFN" given his opinion "that there's no PMFN." Kapoor Decl. Ex. 3, Gowrisankaran Dep. Tr. 43:08-44:15.

## III.   LEGAL STANDARD

Under *Daubert* and Federal Rule of Evidence 702, the trial court acts as a gatekeeper to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand."

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). The relevance requirement asks whether the evidence is a "fit" with the issues to be decided, and whether it tends to help the trier of fact understand or determine a fact in issue. *Daubert*, 509 U.S. at 591; *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006). The reliability requirement asks whether the reasoning or methodology underlying the testimony is scientifically valid. *Murray v. S. Route Maritime SA*, 870 F.3d 915, 922 (9th Cir. 2017). The proponent of expert testimony has the burden to establish by a preponderance of the evidence that the proffered testimony is relevant and reliable under the applicable substantive law. *Daubert*, 509 U.S. at 592 n.10.; *accord Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1146, 1154 (9th Cir. 2012).

## IV.    ARGUMENT

### A.    Dr. Gowrisankaran's Opinions Do Not "Fit" This Case

The task at hand here is a rule-of-reason analysis that weighs the anticompetitive effects of Valve's PMFN against its procompetitive effects (if any). In *NCAA*, the Supreme Court described that task as a three-step analysis that focuses entirely on the "challenged restraint":

> "[T]he plaintiff has the initial burden to prove that ***the challenged restraint*** has a substantial anticompetitive effect." Should the plaintiff carry that burden, the burden then "shifts to the defendant to show a procompetitive rationale ***for the restraint***." If the defendant can make that showing, "the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means."

594 U.S. at 96-97 (quoting *Ohio v. Am. Express Co.*, 585 U.S. 529, 138 S. Ct. 2274, 2284 (2018)) (emphases added); *accord In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 714 F. Supp. 3d 65, 83 (E.D.N.Y. 2024) (discussing how the rule-of-reason framework

MOT. TO EXCLUDE DR. GOWRISANKARAN
CASE NO. 21-CV-00563-JNW

7

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON  98101
TEL: (206) 905-7000

analyzes whether the "'challenged action has had an actual adverse effect on competition'" and whether the defendant "offer[s] a procompetitive justification for the challenged conduct").[2]

"The whole point of the rule of reason is to furnish 'an enquiry meet for the case, looking to the circumstances, details, and logic of a restraint . . . .'" 594 U.S. at 97.  That is why an antitrust defendant "must articulate the specific link between the challenged restraint and the purported justification, and demonstrate that the restraint in fact advance[s] procompetitive goals." *In re Impax Labs, Inc.*, 2019 WL 1552939, at *31 (F.T.C. 2019), *aff'd sub nom. Impax Labs., Inc. v. FTC*, 994 F.3d 484 (5th Cir. 2021).  Discussing *Impax*, the leading antitrust treatise notes that "[t]he FTC correctly" rejected the defendant's proffered procompetitive benefits because, "[f]irst of all, they did not flow from the challenged delay [of competition]; and second, they were independent of it."  Phillip E. Areeda (late) & Herbert Hovenkamp, ANTITRUST LAW: AN ANALYSIS OF ANTITRUST PRINCIPLES AND THEIR APPLICATION ¶1504 (5th ed. 2023).

For the same reason, purported justifications not tied to the challenged restraint are irrelevant to the analysis. *See, e.g.*, *NCAA*, 594 U.S at 99 ("The trouble for the NCAA, though, is . . . that the [district] court found the NCAA failed 'to establish that the challenged compensation rules ... have any direct connection to consumer demand.'"); *Apotex, Inc. v. Cephalon, Inc.*, 2017 WL 10963610, at *2 (E.D. Pa. May 24, 2017) (excluding evidence and testimony on alleged procompetitive effects in markets for drugs unrelated to the drug at issue because such evidence would confuse the jury).

This is where Dr. Gowrisankaran's analysis fails.  Dr. Gowrisankaran has not "articulate[d] the specific link between the challenged restraint" in this case—Valve's PMFN— and his proffered procompetitive effects. *Impax*, 2019 WL 1552939, at *31.  Nor has he "demonstrate[d] that the [PMFN] in fact advance[s] procompetitive goals." *Id.* (internal

---

[2]  If the parties proceed through all three steps, but the plaintiff fails in proving a substantially less restrictive alternative, there is a fourth step in which the anticompetitive effects are weighed against any non-pretextual procompetitive benefits. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 993-94 (9th Cir. 2023).  The only way a defendant wins is if the plaintiff fails at the first or fourth steps. *Id.*

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON  98101
TEL: (206) 905-7000

quotations omitted). Because it is his opinion that "[t]here is no PMFN and there is no price parity," Kapoor Decl. Ex. 2, Reply Merits Expert Report of Gautam Gowrisankaran, Ph.D. (Apr. 25, 2025) ¶ 28, he cannot and does not even try to attribute any of his proffered procompetitive effects to Valve's PMFN. §§ II.A. & II.B, *supra*. Dr. Gowrisankaran and Valve cannot have it both ways—they cannot deny that the challenged conduct exists *and* claim that the challenged conduct benefits consumers. To do so is a non sequitur.

Dr. Gowrisankaran's failure to link his claimed procompetitive effects to the PMFN renders his opinions irrelevant under antitrust law and requires exclusion under Federal Rule of Evidence 702. *See, e.g.*, *In re Broiler Chicken Grower Antitrust Litig.*, 2024 WL 2194349, at *14 (E.D. Okla. May 15, 2024) (excluding expert opinion on the procompetitive benefits of information sharing because challenged conduct was not information sharing broadly, but sharing pay data on grower compensation which had the effect of suppressing grower compensation). Permitting Dr. Gowrisankaran to proffer "procompetitive justifications" untethered from the conduct that the Publisher Class challenges would only serve to confuse the issues for the jury. *In re Generic Pharms. Pricing Antitrust Litig.*, 2024 WL 4980784 (E.D. Pa. Dec. 3, 2024), *on reconsideration in part*, 2025 WL 478178 (E.D. Pa. Feb. 12, 2025) (excluding defense expert who would be "likely to confuse a potential jury" because she "does not explain in her report how the 'other' pricing tools she describes may have affected the actual prices of the bellwether drugs during the relevant time periods. Her opinions are thus speculative because she makes no attempt to connect these tools to the generics drug industry."); *see also Microsoft Corp. v. Motorola, Inc.*, 2013 WL 4008822, at *24 (W.D. Wash. Aug. 5, 2013) ("This testimony simply is not relevant to this case and has the potential to confuse the jury."). The opinions he offers in Sections 3 and 4 of his expert report should be excluded on this ground alone.

### B.      Dr. Gowrisankaran's Opinions Are Unreliable

Beyond his testimony simply being irrelevant, Dr. Gowrisankaran does not even attempt to comport with the methodological rigors of Rule 702. As the expert proffering a procompetitive justification on behalf of a defendant, Dr. Gowrisankaran is not a rebuttal expert,

MOT. TO EXCLUDE DR. GOWRISANKARAN
CASE NO. 21-cv-00563-JNW
9
QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

but instead bears the burden of proof.  *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 985-86 (9th Cir. 2023) (quoting *NCAA*, 594 U.S. at 96) ("[T]he burden shifts [] to the defendant to 'show a procompetitive rationale for the restraint[s].'").  His opinion cannot carry that burden.

The hallmark of reliability is whether an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Rovid v. Graco Children's Prods. Inc.*, No. 17-cv-01506-PJH, 2018 WL 5906075, at *3 (N.D. Cal. Nov. 9, 2018) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).  Dr. Gowrisankaran does not employ the "same level of intellectual rigor" that *he himself has applied* in antitrust analysis, and thus certainly cannot be said to satisfy the "practice of an expert in the relevant field."  While testifying for the federal government in *United States of America, et al. v. JetBlue Airways Corporation et al.,* Case No. 1:23-cv-10511-WGY (W.D. Wash Nov. 17, 2023), Dr. Gowrisankaran explained under oath that "a pretty standard way of" assessing competitive effects "is to say conceptually what would the world look like if the [conduct] were not to go forward, and then what would the world look like if the [conduct] were to go forward, and then to ask what's the difference between those two worlds."  Kapoor Decl. Ex. 4, Gowrisankaran 2023/11/17 Trial Tr., ECF 415 at 15:17-16:05.  Dr. Gowrisankaran's testimony comports with his academic work, in which he explains the same methodological approach.  Kapoor Decl. Ex. 5, C. Bruegge, G. Gowrisankaran & A. Gross, "Using Policy Functions to Estimate Merger Impacts: an Application to JetBlue-Spirit" (Feb. 15, 2025) (working paper).  That methodology— comparing the actual world (with the conduct) to the but-for world (without the conduct)—is standard practice in all antitrust cases.  *Ray v. National Collegiate Athletic Association*, No. 1:23-cv-00425 WBS CSK, 2025 WL 775753, at *2 (E.D. Cal. Mar. 11, 2025) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 36 (2013)) ("'But-for' analysis refers to the practice in antitrust cases of calculating classwide damages based on what class members' economic position would have been absent the alleged antitrust violations (i.e., in the world that would have existed but for the alleged violation.)").

Dr. Gowrisankaran does not compare the actual world (with the conduct) to the but-for world (without the conduct) as required.  Instead, he denies that the conduct in the actual world has occurred, claiming the PMFN ***does not exist***.  Kapoor Decl. Ex. 2, Reply Report ¶ 12b.  Thus Dr. Gowrisankaran is, at best, applying a nonsensical test—comparing the actual world (allegedly without the conduct) to the but-for world (without the conduct).  His analysis should be discarded on that basis alone.

Dr. Gowrisankaran does opine that output has increased and prices decreased over time ***in the actual world***.  Kapoor Decl. Ex. 1 ¶¶ 17, 112-13.  That again misses the mark—Dr. Gowrisankaran is comparing the past real world (allegedly without the conduct) to the current real world (allegedly without the conduct).  That made up comparison is also off base, and it has unsurprisingly been rejected.  *See, e.g., NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 107 (1984) (rejecting Defendants' output trend argument, and comparing real-world output and the output that "would otherwise be"); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 714 F. Supp. 3d 65, 83 (E.D.N.Y. 2024) ("Output, prices, and quality are compared to the levels that might be observed but for the challenged restraints (a hypothetical scenario often referred to as the 'but-for world').").

Nonetheless, even if Dr. Gowrisankaran ***did*** assume or opine that the PMFN existed, his analysis would fail.  An expert cannot rely on the mere fact of actual world success to prove ***why*** a product was successful.  In concluding Valve's conduct must be procompetitive because Steam is a great product, Kapoor Decl. Ex. 1 ¶ 69, Dr. Gowrisankaran commits a fundamental logical flaw: "affirming the consequent."[3]

*Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 605-607 (N.D. Cal. 2008), is illustrative.  There, the patent-infringement plaintiff's expert opined that "the claimed inventions caused the commercial success of their products."  *Id.* at 605.  As described by the court, "[h]is

---

[3]  *See* Logically Fallacious, "Affirming The Consequent," available at https://www.logicallyfallacious.com/logicalfallacies/Affirming-the-Consequent (last visited May 26, 2025).

reasoning appears to be: the [defendants'] products incorporate Rambus's claimed inventions; those products have been successful; *ergo* Rambus's inventions caused the products' success." *Id*. The court concluded that "Rule 702(2) demands more," *id*., explaining that Rambus's expert did not explain why other "devices failed to succeed in the market." *Id*. at 608.

Dr. Gowrisankaran's opinions suffer from similar flaws. Despite generically discussing "prevention of free-riding" as a justification for the conduct at issue, Dr. Gowrisankaran never opines that the PMFN prevents free-riding, Kapoor Decl. Ex. 1 § 4; Kapoor Decl. Ex. 3, Gowrisankaran Dep. Tr. 35:21-37:22. Although he spills substantial ink explaining that Steam is a desirable product, *see, e.g.*, Kapoor Decl. Ex. 1, Exhibit 1 at 48-49, he offers no opinions about whether or how Valve's PMFN enhances the desirability of Steam, *see generally id.* § 3 (not discussing the PMFN).

Overall, Dr. Gowrisankaran offers little more than an avenue through which Valve can launder hearsay about market participants liking Steam. *See e.g.*, Kapoor Decl. Ex. 1 ¶ 103 nn.199, 208. Dr. Gowrisankaran's regurgitation of hearsay from news articles and deponents is not a "methodology"; rather Dr. Gowrisankaran "is simply providing a narrative of [Valve's] theory of the case, which 'is properly presented through percipient witnesses and documentary evidence.'" *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322-23 (S.D. Cal. 2020), aff'd, 9 F.4th 1102 (9th Cir. 2021) (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004)). Dr. Gowrisankaran should be held to the same standard he was held in prior cases and in his academic work. His opinions here are unreliable and should be excluded.

## V.    CONCLUSION

For the foregoing reasons, Sections 3 and 4 of Dr. Gowrisankaran's opening report, and his associated testimony, should be excluded.

DATED:    May 27, 2025

/s/ Alicia Cobb

Alicia Cobb, WSBA #48685
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Phone (206) 905-7000
Fax (206) 905-7100
aliciacobb@quinnemanuel.com

Steig D. Olson (*pro hac vice*)
David LeRay (*pro hac vice*)
Nic V. Siebert (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 Fifth Ave
New York, New York 10016
Phone (212) 849-7000
Fax (212) 849-7100
steigolson@quinnemanuel.com
davidleray@quinnemanuel.com
nicolassiebert@quinnemanuel.com

Adam Wolfson (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Phone (213) 443-3285
Fax (213) 443-3100
adamwolfson@quinnemanuel.com

Ankur Kapoor (*pro hac vice*)
Noah Brecker-Redd *(pro hac vice)*
CONSTANTINE CANNON LLP
6 East 43rd St., 26th Floor
New York, NY 10017
Phone (212) 350-2700
Fax (212) 350-2701
akapoor@constantinecannon.com
nbrecker-redd@constantinecannon.com

Respectfully submitted,

/s/ Tyre L. Tindall

Tyre L. Tindall, WSBA #56357
McKinney Wheeler, WSBA #60635
WILSON SONSINI GOODRICH &
ROSATI P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Phone (206) 883-2500
Fax (866) 974-7329
ttindall@wsgr.com
mckinney.wheeler@wsgr.com

Kenneth R. O'Rourke (*pro hac vice*)
Jordanne M. Steiner (*pro hac vice*)
WILSON SONSINI GOODRICH &
ROSATI, P.C.
1700 K Street, NW, Suite 500
Washington, DC 20006
Phone (202) 973-8800
Fax (866) 974-7329
korourke@wsgr.com
jsteiner@wsgr.com

W. Joseph Bruckner (*pro hac vice*)
Joseph C. Bourne (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Phone (612) 339-6900
Fax (612) 339-0981
wjbruckner@locklaw.com
jcbourne@locklaw.com
lmmatson@locklaw.com

Kyle Pozan (*pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
1165 N. Clark Street, Suite 700
Chicago, IL 60610
Phone (312) 205-8968
kjpozan@locklaw.com

Kristie A. LaSalle *(pro hac vice)*
LOCKRIDGE GRINDAL NAUEN PLLP
265 Franklin Street, Suite 1702
Boston, MA 02110
Phone: (617) 535-3763
kalasalle@locklaw.com

*Publisher Plaintiff Class Counsel*

## WORD COUNT CERTIFICATION

I certify that this memorandum contains 4,181 words, in compliance with the Local Civil Rules.

Dated: May 27, 2025

/s/ *Alicia Cobb*
Alicia Cobb, WSBA #48685

MOT. TO EXCLUDE DR. GOWRISANKARAN
CASE NO. 21-CV-00563-JNW

14

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

**CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2025, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which will send notification of such filing to counsel of record. I also caused a true and correct copy of the foregoing to be served on counsel for Valve via email.

Dated: May 27, 2025

/s/ *Alicia Cobb*
Alicia Cobb, WSBA #48685

MOT. TO EXCLUDE DR. GOWRISANKARAN
CASE NO. 21-CV-00563-JNW

15

QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON  98101
TEL: (206) 905-7000