# EXHIBIT 4

# (Dkt No. 456.04)

```
              UNITED STATES DISTRICT COURT
           DISTRICT OF MASSACHUSETTS (Boston)

                                      No. 1:23-cv-10511-WGY
                                      Vol. 2, Pages 82-153


UNITED STATES OF AMERICA, et al
          Plaintiffs

vs.


JETBLUE AIRWAYS CORPORATION,
et al,
          Defendants



                    ********



            For Bench Trial Before:
            Judge William G. Young




            United States District Court
            District of Massachusetts (Boston)
            One Courthouse Way
            Boston, Massachusetts 02110
            Friday, November 17, 2023



                    ********
```

Exhibit
4
05/09/2025
Gowrisanakran

```
    REPORTER:  CHERYL B. PALANCHIAN, RMR, CRR
            Official Court Reporter
          United States District Court
        One Courthouse Way, Boston, MA 02110
```

Pressure Index."

So my GUPPI analysis, what it does is it takes a couple of simple inputs, so notably it takes the margins for airlines and then it takes the relative price between the two different airlines, JetBlue and Spirit, and then it just takes some very simple modeling of where people would substitute to, if prices were risen.

And what it does is it calculates what are the incentives to raise prices. And so all of the figures that I show here are saying what are the incentives -- that's what a GUPPI index is -- what are the incentives for JetBlue and for Spirit to raise prices after the merger occurs, if it were to go forward.

Q.   Doctor, what were the results of your GUPPI analysis?

A.   So I put the results here for the 51 presumption markets, the same ones that I've testified to with the yellow and blue bars, for instance. And what I find, and just looking at the left columns where it says "Spirit," is that Spirit has an incentive to raise prices a substantial amount in a lot of these markets.

And so many of these values, the first 35 of them, the GUPPI is over 10 percent. And that means that if JetBlue were to acquire Spirit, JetBlue would have an incentive doing nothing else, no repositioning or anything, but just a straight unilateral incentive to raise Spirit's prices by

10 percent or more in 30, 35 of these markets.

Q.   And, Doctor, is this analysis consistent with defendants' post-merger plans?

A.   Yes, it is.

Q.   How so?

A.   What the defendants want to do is that they plan to eliminate Spirit after the merger.  And Spirit offers low prices.  So this analysis, part of the reason that there's an incentive to raise prices on Spirit is because the prices are low.  And what the defense wants to do by eliminating Spirit, it's effectively the same as saying we're raising the price so high that nobody can choose Spirit.

So all in all, these incentives that I'm seeing in the GUPPI, it doesn't surprise me that the defendants' plans for the merger are very consistent with them.

MR. BATTAGLIA:  Slide 34, please.

Q.   All right, Doctor.  I'd like to switch topics and take a look at your analysis of the likely competitive effects from this merger.  And first let's look at the econometric framework you've implemented to evaluate competitive effects.

Dr. Gowrisankaran, at a high level can you please explain your approach for analyzing the likely competitive effects of this transaction?

A.   Yes.  So what I do as an economist and econometrician

here is, and this is a pretty standard way of doing this, is to say conceptually what would the world look like if the merger were not to go forward, and then what would the world look like if the merger were to go forward, and then to ask what's the difference between those two worlds.

Q.   And, Doctor, how does the elimination of Spirit factor into this analysis?

A.   Well, what's particular about this particular proposed merger is that the parties have indicated that they plan to eliminate Spirit as a competitor from the market.  And so because the parties want to eliminate Spirit and turn all the Spirit planes, and this whole Spirit business model, get rid of it and turn those planes into JetBlue planes, what that means is that there's a potential for consumer harm and for net harm even in markets where JetBlue currently doesn't compete.

     And the reason for this is that the merger will result in the loss of Spirit Airlines even in markets where Spirit is there and JetBlue isn't there.  And so that's one thing that's different from the standard analysis, and one thing where I really want to take that into account in order to get an accurate view of the competitive effects of this merger.

     MR. BATTAGLIA:  Slide 37, please.

Q.   Doctor, what quantitative analysis did you rely on to

identify the likely competitive effects of the proposed merger?

A.    What I did is because, as I said, the proposed merger will eliminate Spirit in all markets, what I need to do is to understand what would happen as a result of this merger is to say how much value does Spirit bring to the market. How much is Spirit lowering prices for rivals and overall market prices because of being in the market.

And so, as an econometrician, what I wanted to do is to try to find something in the data that most closely resembles the variation that occurs when Spirit is in a market or is not in a market.  And what I used was entry events.  And these are, in my opinion, reasonable natural experiments that help illustrate what would happen if we have Spirit as a competitor.  And then what I can do is to say, well, now understanding what happens if Spirit is entered in the market, I can flip that and say the merger would result in Spirit not being in the market and I could understand how much prices would go up if Spirit were removed from the market.

MR. BATTAGLIA:  Slide 38, please.

Q.    So, Doctor, how did you use entry events to identify competitive effects?

A.    So what I wanted to do to identify competitive effects is to say let me systematically look at all of the entry