HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | Case No.  2:21-cv-00563-JNW |
| | [PROPOSED] BRIEF OF AMICI CURIAE OPPOSING VALVE'S MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER |
| | Note On Motion Calendar: June 22, 2026 |

Amici curiae, by and through counsel, file this brief to respectfully provide the Court with authority and argument in opposition to Defendant Valve Corporation's ("**Valve**") motion for clarification. Dkt. 607.

[PROPOSED] BRIEF OF AMICI CURIAE
IN OPPOSITION TO VALVE'S MOTION
FOR CLARIFICATION

Page i

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

TABLE OF CONTENTS

I. Statement of Identity and Interest ........................................................... 1

II. Introduction ........................................................................................... 2

III. Procedural History ............................................................................... 4

IV. Argument ............................................................................................. 5

    A.  Valve's Motion Presents No Article III Case or Controversy. ......................... 5

    B.  Valve Seeks an Advisory Opinion Forbidden by Article III. ........................... 8

    C.  The Federal Arbitration Act Prohibits Valve's Midstream Appeal of Arbitrator Mainland's Discovery Orders........................................................ 10

    D.  Valve's Motion Is Not a Proper Request for Clarification, and Its Timing and Forum Choice Confirm Its Improper Tactical Purpose. ............ 13

V. Conclusion ......................................................................................... 16

[PROPOSED] BRIEF OF AMICI CURIAE    Page ii        BAILEY DUQUETTE P.C.
IN OPPOSITION TO VALVE'S MOTION            800 FIFTH AVENUE, SUITE 101-800
FOR CLARIFICATION                  SEATTLE, WASHINGTON 98104
                                  T 206.353.8021 | F 888.233.5869

## I. STATEMENT OF IDENTITY AND INTEREST

Amici curiae are twenty-five consumers prosecuting individual arbitrations against Valve. They demanded arbitration after Valve compelled the consumer claims in this action to arbitration. Dkt. 66. Because they are not parties here, this brief refers to them as the "Absent Claimants."

The Absent Claimants have a direct and immediate interest in Valve's Motion for Clarification. Dkt. 607. Valve asks this Court to negate discovery orders entered at the Absent Claimants' request in their arbitrations. The discovery at issue is evidence the Absent Claimants intend to use at hearings scheduled for September 2026. Granting Valve's motion and proposed relief would therefore deprive the Absent Claimants of discovery that Valve has already been ordered to produce.

Yet Valve filed its motion here, where the Absent Claimants are not parties, rather than in *Valve Corp. v. Abbruzzese*, No. 2:24-cv-01717-JNW (W.D. Wash.), where Valve sued them to enjoin their arbitrations and where they appear through counsel. The Absent Claimants thus face the prospect of an order affecting their arbitral rights in this proceeding where they cannot respond as parties or appeal as of right.

No party before the Court shares that interest, and no party responded to Valve's motion. The Absent Claimants submit this brief to provide the perspective

of the consumers whose discovery rights Valve seeks to defeat and to assist the Court in assessing its jurisdiction.

## II. INTRODUCTION

Two days after this Court refused to act "as a super-arbitrator to override the rulings of the forum Valve invoked because Valve now prefers a different one," *Abbruzzese*, Dkt. 169 at 30, Valve returned with a motion seeking substantially the same relief under a different label: a "Motion for Clarification." Dkt. 607. In substance, Valve asks this Court to neutralize discovery orders entered in ongoing arbitrations and to endorse the interpretation of the protective order that Valve presented—and lost—before the arbitrator.

Arbitrator Richard Mainland rejected Valve's contention that this Court's protective order barred production. He ordered production under the protections contemplated by that order: notice to every designating party, an opportunity to object, and production under a parallel protective order. Dkt. 95 ("Protective Order"), ¶ 7 ("Paragraph 7"). No designating party objected. Valve nevertheless did not produce the documents. When Arbitrator Mainland again compelled production, Valve sought relief here on the eve of the deadline.

The motion fails for four independent reasons. First, it presents no Article III case or controversy. No party before this Court opposes Valve's interpretation, threatens sanctions, or seeks enforcement of the Protective Order. Valve's asserted injury is speculative, and the requested ruling would neither bind the Absent Claimants nor alter the arbitral orders.

[PROPOSED] BRIEF OF AMICI CURIAE    Page 2    BAILEY DUQUETTE P.C.
IN OPPOSITION TO VALVE'S MOTION                         800 FIFTH AVENUE, SUITE 101-800
FOR CLARIFICATION                                       SEATTLE, WASHINGTON 98104
                                                        T 206.353.8021 | F 888.233.5869

Second, Valve seeks an advisory opinion. It asks for "guidance" and "confirmation," but no conclusive decree this Court could enter would resolve the operative discovery dispute. At most, Valve would obtain a legal opinion to deploy against nonparties elsewhere.

Third, the Federal Arbitration Act does not permit Valve to appeal an interlocutory discovery ruling in the middle of an arbitration. Judicial review ordinarily occurs before arbitration begins or after a final award, not whenever a party loses a procedural dispute.

Fourth, Valve identifies no ambiguity requiring clarification. Paragraph 7 already addresses compelled disclosure in other proceedings, and Arbitrator Mainland followed it. Valve instead asks the Court to add a substantive prohibition that the Protective Order does not contain. Its delay and choice of forum confirm that it seeks not clarification, but obstruction and a different result.

Beyond these defects, the same conduct addressed in *Abbruzzese* appears here. Valve compelled arbitration, tested the waters, and then sought retroactive judicial relief when the process no longer favored it. There, Valve asked the Court to enjoin the arbitrations based on a later-amended consumer agreement. Here, it asks the Court to undo discovery rulings entered after Valve lost before the arbitrator. In both instances, Valve seeks to rewrite the consequences of arbitration after the fact. The Court should categorically reject this improper litigation tactic.

### III. PROCEDURAL HISTORY

On September 7, 2024, Arbitrator Janice Sperow rejected Valve's contention that this Court's Protective Order prohibited production and directed Valve to use Paragraph 7's third-party notice procedure. Ex. A.

Nine days later, Arbitrator Richard Mainland granted the Absent Claimants' motion to compel and reached the same conclusion. Ex. B. He ordered Valve to notify each designating party, cooperate with any objection or other reasonable procedure the party pursued, and advise that production would occur only under a protective order substantially similar to the one entered here. *Id*. at 7–9.

The order gave designating parties until October 20, 2024, to object. Arbitrator Mainland entered the parallel protective order on November 8, 2024. Ex. C. No designating party objected.

Valve nevertheless did not produce the documents. On May 3, 2026, Arbitrator Mainland again ordered production, this time by June 15, 2026, and again rejected Valve's contention that compliance would violate this Court's Protective Order. Ex. D.

On May 29, 2026—17 days before the production deadline—Valve filed its "Motion for Clarification Regarding Protective Order." Dkt. 607. Valve "seeks the Court's guidance as to its obligations" and asks the Court to "confirm" that compliance with Arbitrator Mainland's May 3 order would violate the Protective Order. *Id.*

Valve filed its motion here, where the Absent Claimants are not parties, rather than in *Abbruzzese*, where Valve sued them and they appear through counsel. The parties to this case had until June 16, 2026, to respond. None did. Valve thus asks this Court to displace an arbitral discovery ruling at the request of the party that lost, without the parties that obtained the ruling before it.

## IV. ARGUMENT

Valve's motion fails at the threshold and on its own terms. No adverse party is before the Court, no concrete injury supports jurisdiction, and no order entered here would bind the Absent Claimants or alter the arbitral discovery orders. Valve therefore seeks only an advisory opinion—and, worse, one designed to secure the mid-arbitration review the FAA forbids. Nor does Valve identify any ambiguity requiring clarification; it asks the Court to add a substantive prohibition the Protective Order does not contain. Whatever its label, the motion is an unauthorized collateral appeal and should be denied.

**A.      Valve's Motion Presents No Article III Case or Controversy.**

Valve asks this Court to resolve a dispute that is not between the parties before it. Arbitrator Mainland has twice rejected Valve's position and ordered production subject to protections mirroring this Court's Protective Order. No designating party objected after receiving notice, and no party in this case responded to Valve's motion by the June 16, 2026 deadline. Because the requested clarification would neither bind the Absent Claimants nor alter the arbitrator's

[PROPOSED] BRIEF OF AMICI CURIAE       Page 5
IN OPPOSITION TO VALVE'S MOTION
FOR CLARIFICATION

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

production order, Valve has presented no justiciable controversy for this Court to resolve.

Article III limits federal courts to actual cases or controversies. A party seeking federal judicial relief must establish (1) a concrete and particularized injury that is "actual or imminent, not conjectural or hypothetical"; (2) a causal connection between that injury and the challenged conduct, rather than "the independent action of some third party not before the court"; and (3) a likelihood that the requested relief will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). The same constitutional limitation bars federal courts from adjudicating "friendly", "feigned", or "collusive" disputes. *Flast v. Cohen*, 392 U.S. 83, 100 (1968).

No adverse dispute is before this Court. The Absent Claimants—the only persons opposing Valve's position on production—are not parties here. And no party that is before the Court has asserted a contrary position. The developer plaintiffs did not object after receiving notice in the arbitration, and they did not respond to Valve's motion here. While their silence does not establish collusion, it confirms that the dispute Valve describes is not being litigated between adverse parties in this matter. A justiciable controversy must be "definite and concrete" and must affect "the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937). Here, no party before the Court contests Valve's requested interpretation, asserts that Valve has violated the Protective Order, or threatens Valve with sanctions. The Court therefore has no "existing

[PROPOSED] BRIEF OF AMICI CURIAE
IN OPPOSITION TO VALVE'S MOTION
FOR CLARIFICATION

Page 6

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

controversy between persons who have arrayed themselves in opposition to each other" to resolve. *Lion Mfg. Corp. v. Kennedy*, 330 F.2d 833, 840 (D.C. Cir. 1964). Valve may consider an advance ruling useful, but Article III does not permit courts to furnish legal opinions outside "the clashing interests and the concrete facts of a true lawsuit." *Id.*

Valve also fails to establish an injury in fact. Its claimed injury is the possibility of sanctions for violating this Court's Protective Order. But that possibility is speculative. Arbitrator Mainland concluded that production is consistent with the order, entered a parallel protective order, and required Valve to follow Paragraph 7's notice procedure. No designating party objected within the prescribed period, and Valve identifies no party that has threatened sanctions or even asserted that compliance would violate the Protective Order. A threatened injury must be "credible, not 'imaginary or speculative.'" *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010). Valve's conjectural fear of future sanctions does not qualify because it lacks credibility.

To the extent Valve feigns injury from the arbitral production order, Valve's requested relief cannot redress that injury. Neither Arbitrator Mainland nor the Absent Claimants are parties here, and a clarification of this Court's Protective Order would neither vacate nor modify the arbitral order. As *Lujan* explains, a district court ruling does not redress an injury when it would not bind the third parties whose conduct causes that injury. 504 U.S. at 569. The Ninth Circuit likewise distinguishes the issuing court's authority over its protective order from

[PROPOSED] BRIEF OF AMICI CURIAE          Page 7          BAILEY DUQUETTE P.C.
IN OPPOSITION TO VALVE'S MOTION                                800 FIFTH AVENUE, SUITE 101-800
FOR CLARIFICATION                                              SEATTLE, WASHINGTON 98104
                                                               T 206.353.8021 | F 888.233.5869

the collateral tribunal's authority over discovery: "Even if the issuing court modifies the protective order, it does not decide whether the collateral litigants will ultimately obtain the discovery materials." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1133 (9th Cir. 2003).

Nor is Valve's alleged injury fairly traceable to any conduct that this motion asks the Court to remedy. Any obligation to produce arises from Arbitrator Mainland's order and the Absent Claimants' discovery request—the independent actions of third parties who are not before this Court. *Lujan*, 504 U.S. at 560–61.

Valve's motion therefore fails at every turn. There is no adverse dispute between the parties before this Court, no actual or imminent threat of sanctions, and no relief this Court can grant that would redress Valve's claimed injury. Those defects leave Valve with no case or controversy, only a request for an advisory opinion.

## B.      Valve Seeks an Advisory Opinion Forbidden by Article III.

Article III forbids federal courts from rendering advisory opinions or deciding questions that cannot affect the rights of the litigants before them. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). A federal judgment must resolve "a real and substantial controversy" through "a decree of a conclusive character," not merely advise "what the law would be upon a hypothetical state of facts." *Id.* (cleaned up). That limitation confines federal courts to questions presented in an adversarial context and in a form capable of judicial resolution. *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007).

Valve's motion asks for the very thing Article III prohibits. Valve "respectfully **seeks the Court's guidance** as to its obligations under the Stipulated Protective Order" and asks the Court to "**confirm Valve's interpretation**" of that order. Dkt. 607 at 2, 4 (emphases added). Those formulations accurately describe the relief sought: guidance and confirmation. But neither would conclusively determine the rights of anyone before this Court. The Absent Claimants are not parties here, Arbitrator Mainland is not subject to this Court's jurisdiction, and the requested clarification would not vacate or modify his production order. At most, Valve would obtain a legal opinion that it intends to use against nonparties to further frustrate compelled arbitrations and protect its monopoly pricing practices.

Valve attempts to manufacture a controversy by asserting that it "does not believe that it can lawfully comply with Arbitrator Mainland's May 3 Order." Dkt. 607 at 3. But a party's unilateral belief does not create an Article III controversy. No party in this matter disputes production, threatens sanctions, or requests enforcement of the Protective Order. More importantly, the tribunal confronting the concrete production dispute has already rejected Valve's position: "Valve has argued that Claimants' requested production would require Valve to 'violate' the Protective Order issued in the Federal Action. I disagree." Ex. B at 7. Valve's dissatisfaction with that ruling may explain why it wants a second opinion. It does not create an adverse dispute here.

Valve's claimed hardship thus reduces to this: it must act without a court's blessing for the reading it prefers of an order it drafted. That is "the same hardship

experienced by anyone who must act without the guidance of a definitive interpretation of the law." *Seattle Pac. Univ. v. Haas*, 626 F. Supp. 539, 542 (W.D. Wash. 1985). Valve's position is weaker still: it has received a ruling governing the pending production dispute; it simply wants a different answer from a court whose ruling would not bind the Absent Claimants seeking production.

*Lion Manufacturing* squarely rejects that request. An "authoritative advance legal opinion" may be useful to the party seeking it, but "it is not the business of courts to furnish such opinions outside the framework of the clashing interests and the concrete facts of a true lawsuit." 330 F.2d at 840. Valve seeks exactly that: a second, nonbinding legal opinion to deploy in a proceeding involving parties who are absent from this case. That is advice, not adjudication, and Article III gives this Court no power to provide advisory opinions. The request is even more improper because Valve seeks "guidance" in the middle of an ongoing arbitration, where the FAA independently bars the judicial intervention Valve requests.

## C. The Federal Arbitration Act Prohibits Valve's Midstream Appeal of Arbitrator Mainland's Discovery Orders.

The Federal Arbitration Act sharply limits judicial intervention in an ongoing arbitration. A district court's authority ordinarily extends to decisions that "bookend the arbitration itself": determining arbitrability at the beginning and reviewing a final award under 9 U.S.C. §§ 9–11 at the end. *In re Sussex*, 781 F.3d 1065, 1071 (9th Cir. 2015). Once arbitration begins, the court's involvement stops; the FAA does not otherwise authorize intervention before a final award. *Id.*; *accord Blue Cross Blue Shield of Mass. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011)

[PROPOSED] BRIEF OF AMICI CURIAE    Page 10
IN OPPOSITION TO VALVE'S MOTION
FOR CLARIFICATION

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

("[J]udges must not intervene in pending arbitration to direct arbitrators to resolve an issue one way rather than another. Review comes at the beginning or the end, but not in the middle.")

The Ninth Circuit has therefore held that pre-award judicial review should be entertained, "if at all, only in the most extreme cases." *Aerojet-Gen. Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973). Allowing an interlocutory appeal from an arbitrator's ruling would frustrate arbitration's purpose by introducing the expense and delay of extended court proceedings. *Id.* Reaffirming *Aerojet-General*, *In re Sussex* observed that the Ninth Circuit had never approved a pre-award intervention of this kind. 781 F.3d at 1072–73.

Valve seeks precisely the mid-arbitration review those binding decisions reject. Arbitrator Mainland's September 16, 2024 and May 3, 2026 orders are discovery rulings issued during ongoing arbitrations, not final awards. In those orders, Arbitrator Mainland considered Valve's argument that the Protective Order barred production, rejected it, and required production subject to Paragraph 7's notice procedure and a parallel protective order. Valve now asks this Court to declare that compliance with the May 3 order would violate the Protective Order. Whatever its caption, the motion asks the Court to countermand the arbitrator's discovery ruling before the arbitrations conclude.

The Ninth Circuit's protective-order cases point in the same direction. *Foltz* preserves a limited role for the court that issued a protective order: that court may determine whether its order bars access to protected materials. 331 F.3d at 1133.

[PROPOSED] BRIEF OF AMICI CURIAE    Page 11    BAILEY DUQUETTE P.C.
IN OPPOSITION TO VALVE'S MOTION    800 FIFTH AVENUE, SUITE 101-800
FOR CLARIFICATION    SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

But it does not decide whether collateral litigants will ultimately obtain those materials, and it must "refrain from embroiling itself in the specific discovery disputes applicable only to the collateral suits." *Id*. Instead, "disputes over the ultimate discoverability of specific materials covered by the protective order must be resolved by the collateral courts." *Id*. Valve's proposed order crosses that line; it asks the Court not to interpret the order but to declare unlawful the production the collateral forum has already compelled.

Nor does production threaten any interest the law protects. A producing party's wish to make collateral litigation more burdensome "is not legitimate prejudice," and whatever legitimate interest it retains "in continued secrecy . . . can be accommodated by placing [collateral litigants] under the restrictions . . . contained in the original protective order." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990). That is exactly what Arbitrator Mainland did, entering a parallel order with the same confidentiality and attorneys'-eyes-only protections. *Compare* Protective Order (Dkt. 95) *with* Ex. C.

Even on its own terms, this is not the hypothetical "extreme case" that *Aerojet-General* left open. Arbitrator Mainland preserved the documents' confidentiality, required notice to every designating party, and afforded those parties an opportunity to object. No designating party did. Valve identifies no severe irreparable injury or manifest injustice that could justify immediate intervention. Its speculative concern about possible sanctions falls far short.

Whether Arbitrator Mainland correctly interpreted the Protective Order is therefore not the question before this Court. Even an asserted legal error would not entitle Valve to immediate judicial correction. The FAA channels judicial review to the end of the arbitration, after a final award and on the limited grounds Congress specified. *In re Sussex*, 781 F.3d at 1071–72. Indeed, *In re Sussex* found clear error when a district court intervened based on its prediction that the eventual award would be vacated for arbitrator partiality. Valve presents a considerably weaker case: an ordinary discovery dispute subject to parallel confidentiality protections.

Valve chose arbitration, lost a discovery dispute there, and now seeks an interlocutory do-over here. A different caption does not change the relief sought. As this Court recently explained, it does not sit "as a super-arbitrator to override the rulings of the forum Valve invoked because Valve now prefers a different one." *Abbruzzese*, Dkt. 169 at 30. The FAA requires Valve to complete the arbitration, not interrupt it with a collateral appeal disguised as a motion for clarification.

**D.   Valve's Motion Is Not a Proper Request for Clarification, and Its Timing and Forum Choice Confirm Its Improper Tactical Purpose.**

No Federal Rule specifically provides for a "motion for clarification," but courts recognize a narrow power to clarify an order whose meaning is ambiguous. The distinction is critical: clarification may explain what the Court originally decided; it may not alter the order's substantive effect or supply a new decision. *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168–69 (D.D.C. 2011). Rule 60(a) similarly permits clarification only when it remains faithful to the court's

original intent and does not "change the operative, substantive terms" of the order. *Garamendi v. Henin*, 683 F.3d 1069, 1077–80 (9th Cir. 2012).

Valve identifies no ambiguity requiring clarification. Paragraph 7 expressly addresses an order issued in other litigation that compels disclosure of protected material. It requires notice to the designating parties and cooperation with any procedures they pursue; it does not categorically prohibit production. Arbitrator Mainland applied that procedure, required notice, entered a parallel protective order, and allowed every designating party to object. None did. Valve nevertheless asks this Court to "clarify" that compliance with the arbitral production order would violate the Protective Order. That would not clarify the existing order. It would add a substantive prohibition the order does not contain and reverse the result produced by its express procedures.

Treating Valve's motion as a request to modify the Protective Order under Rule 26(c) fares no better. Valve has not requested modification, identified changed circumstances, or attempted to establish good cause for replacing Paragraph 7's existing procedure with an absolute bar on production. More fundamentally, Valve asks the Court to use its Protective Order to decide the ultimate discoverability of particular materials in another proceeding—the very inquiry that *Foltz* leaves to the forum overseeing collateral discovery. *See supra* § IV.C.

Valve's choice of forum compounds the problem. Its proposed order expressly targets discovery relief obtained by the Absent Claimants, yet Valve filed the motion in a case in which the Absent Claimants are not parties. As amici, the Absent

[PROPOSED] BRIEF OF AMICI CURIAE    Page 14    BAILEY DUQUETTE P.C.
IN OPPOSITION TO VALVE'S MOTION    800 FIFTH AVENUE, SUITE 101-800
FOR CLARIFICATION    SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Claimants may assist the Court only with its permission; they have no right to control the litigation, initiate proceedings, seek affirmative relief, or appeal an adverse ruling. *See Stanley v. Ayers*, No. 07-cv-04727-EMC, 2021 WL 121191, at \*2 (N.D. Cal. Jan. 13, 2021). Valve thus seeks to defeat the benefit of the Absent Claimants' discovery orders in a proceeding where they lack the ordinary procedural rights of parties.

That maneuver echoes conduct this Court recently criticized. When Valve rewrote its consumer agreement, it communicated directly with represented adversaries rather than through their lawyers: "A litigant who wants something from an opposing party who has counsel asks the lawyer. Valve did the opposite." *Abbruzzese*, Dkt. 169 at 22. The procedural setting differs, but the tactic is familiar. A litigant seeking an order that would defeat an adversary's existing rights ordinarily proceeds where that adversary can participate as a party. Valve again did the opposite.

The timing confirms that Valve is not seeking genuine clarification. Arbitrator Mainland first rejected Valve's interpretation and ordered production in September 2024. Valve did not ask this Court to clarify the Protective Order then. It waited more than 20 months, until May 29, 2026—only 17 days before the June 15 production deadline—to seek relief. And it filed here, where the Absent Claimants are not parties, rather than in *Abbruzzese*, where Valve had already sued them and where they appear through counsel. That sequence supports one

[PROPOSED] BRIEF OF AMICI CURIAE IN OPPOSITION TO VALVE'S MOTION FOR CLARIFICATION

Page 15

inference: Valve did not seek clarification when clarification would have been timely; it sought delay when production became imminent.

Nor does any uncertainty remain. Arbitrator Sperow rejected Valve's interpretation in September 2024 and directed Valve to invoke Paragraph 7's notice procedure. Ex. A. Arbitrator Mainland likewise rejected Valve's interpretation, implemented Paragraph 7's safeguards, and ordered production. Ex. B at 7. Valve's motion does not identify a question those rulings left unanswered. It asks this Court to confirm the position that Valve presented and lost.

A motion that identifies no ambiguity, seeks a substantive change, excludes the parties most directly affected, and arrives only when compliance becomes unavoidable is not a good-faith request for clarification. Valve has clarity. What it seeks is delay and a different answer. The Court should reject this procedural maneuver because no rule or authority permits Valve to obtain the substantive relief it seeks under the guise of clarification.

## V. CONCLUSION[1]

Valve's motion presents no case or controversy, seeks an advisory opinion, asks for the mid-arbitration intervention the FAA forbids, and identifies no ambiguity to clarify. For each of these independent reasons, the Court should deny the motion.

---

[1] In compliance with Local Rules W.D. Wash. LCR 7(o)(4) and Fed. R. App. P. 29(a)(4)(E), no party or party's counsel authored this brief or contributed money to fund or submit the brief and no other person contributed money to fund or prepare the brief.

DATED this ___ day of ____, 2026

BAILEY DUQUETTE P.C.

By: _____
William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.353.8021
E: will@baileyduquette.com

*Attorney for Amici*

# Exhibit A



## SECOND ORDER FOR IN CAMERA PRODUCTION

24 individual claimants
v.
Valve Corporation d/b/a Steam, respondent

This order applies to: Case Nos. 01-23-0005-3478, 01-23-0005-3479, 01-23-0005-3480, 01-23-0005-3481, 01-23-0005-3483, 01-23-0005-3484, 01-23-0005-3485, 01-23-0005-3487, 01-23-0005-3488, 01-23-0005-3489, 01-23-0005-3490, 01-23-0005-3491, 01-23-0005-3492, 01-23-0005-3493, 01-23-0005-3494, 01-23-0005-3496, 01-23-0005-3498, 01-23-0005-3499, 01-23-0005-3500, 01-23-0005-3501, 01-23-0005-3502, 01-23-0005-3503, 01-23-0005-3504, and 01-23-0005-3505 before Arbitrator Janice L. Sperow.

The parties continue to dispute the scope of the initial information exchange in these proceedings. This order adjudicates the outstanding party discovery issues with respect to *in camera* review.

## PARTY DISCOVERY DISPUTES

The Arbitrator ordered a staggered information exchange consisting of initial disclosures, wish list exchange, and supplemental productions. See CMC1 Order, dated 06/12/24. Pursuant to the CMC1 Order, the initial exchange on July 2, 2024 should have included any readily available information identifying the Valve-related games purchased by each individual claimant and the source from which it was purchased if known, any information regarding the relevant market(s) which respondent allegedly monopolizes, and all readily available information regarding claimants' purchases related to Valve/Steam products. See id. Apparently, that initial exchange did not occur.

Thereafter, pursuant to the CMC1 Order, claimants submitted their wish lists to respondent requesting specific information exchange. See Wishlist. Respondent objected and submitted a counter-proposal on July 25, 2024. After meet and confer attempts proved unsuccessful, claimants requested Arbitrator assistance.

The Arbitrator held a second Case Management Conference (CMC2) on July 26, 2024 to resolve the parties' impasse over the initial exchange of information in these proceedings. See CMC2 Order, dated 07/27/24. After full oral argument, the Arbitrator, *inter alia*, granted respondent's request for a protective order, granted claimants' request for claimant-specific data, denied claimants' request for full duplicative production of discovery in the parallel federal developer action, ordered the production of discrete aspects of that discovery subject to the protective order, ordered an *in camera* review of specific requests, accepted the information respondent agreed to produce, and narrowed claimants' request for expert reports. See id. The Arbitrator held two further Case Management Conferences on August 11, 2024 and September 4, 2024 during which the parties continued to argue the scope of the information exchange. See CMC3 Order, dated 08/11/24; CMC4 Order, dated 09/04/24; Order on Wish list Discovery Dispute, dated 09/04/24.

**IN CAMERA REVIEW**

To resolve the disputes over the scope of the information exchange and respondent's confidentiality objections, the Arbitrator ordered an initial *in camera* review and reserved decision on additional *in camera* review pending further briefing and review of the federal action's protective order. Having now reviewed the parties' letter briefs and the protective order, the Arbitrator rules as follows.

**The Federal Protective Order**

The federal court protective order protects as confidential trade secret information, non-public fiscal, business, and product information, third-party information protected under another protective order, and competitively sensitive proprietary information. See Stipulated Protective Order, dated 08/16/22. The order protects as highly confidential user information, highly sensitive fiscal information which cannot be released to the public without causing harm, and information designated highly confidential in other litigation. See id. The order limits disclosure of confidential and highly confidential information to specific categories of individuals "unless otherwise ordered by the court or permitted in writing by the designating party." See id. at ¶¶4.2-4.3. If a tribunal compels a party to produce information designated as confidential or highly confidential, the party must notify the designating party and include a copy of the order compelling production. See id. at ¶7.

***In Camera* Order**

The protective order permits the designating party to permit disclosure to persons not listed in the protective order's enumerated categories. Accordingly, the Arbitrator orders that respondent produce all wish list documents, designated as confidential or highly confidential *by respondent*, for *in camera* inspection by September 13, 2024. With respect to documents designated by parties or non-parties, other than respondent or Microsoft (which is the subject of a supplemental protective order), respondent shall email the designating party and attach a copy of this order and a copy of this tribunal's protective order by September 13, 2024, alerting them to the invocation of paragraph 7 of the protective order and the production of their designated information for *in camera* review.

The notice email shall be drafted and submitted to claimants' counsel and the Arbitrator by September 10, 2024 for review and comment. The notice email shall explain that the Arbitrator will order respondent to send the designating party another email notice if she intends to order the document's production to claimants' counsel. In other words, the initial notice shall alert the designating party that their information will be shared *in camera* only with the Arbitrator and that they will only receive a second notice, if upon *in camera* inspection, the Arbitrator determines that the information should be produced – subject to the protective order in these cases – to claimants' counsel. For information designated as highly confidential by a third-party, the Arbitrator will restrict any such production to attorneys' eyes only and prohibit disclosure to individual claimants.

The protective order also permits the disclosure of designated confidential and highly confidential information upon court order. Therefore, separately, respondent shall seek the court's permission to disclose the information subject to its protective order with the Arbitrator

2

for in camera review and, if found material to the current cases, to claimants' counsel subject to the protective order in these cases. The request will attach a copy of the protective order in these cases and this order and invite the court to amend the order as it deems appropriate to protect the information subject to its order. Respondent shall submit a draft request to claimants' counsel and the Arbitrator for review and comment by September 13, 2024. Respondent shall report back to this tribunal any instructions from the court by September 30, 2024, subject to the court's docket and availability.

As this order will be shared outside these cases, it does not address the specifics of any requested information. The Arbitrator will issue a separate order, as necessary and appropriate, that will address the specific categories of information on claimants' wish list.

**IT IS SO ORDERED**.

This Order shall continue in effect unless and until amended by subsequent order of the Arbitrator.

September 7, 2024
*/s/ Janice L. Sperow*

Janice L. Sperow, Arbitrator

# Exhibit B

**AMERICAN ARBITRATION ASSOCIATION**

---

**In the Matter of the Arbitration between**

**25 INDIVIDUAL CLAIMANTS**

**Case No.  01-23-0005-3536**

**vs.**

**VALVE CORPORATION d/b/a STEAM**

---

## ORDER RE PRODUCTION OF DOCUMENTS

In these twenty-five consumer arbitrations,[1] it is necessary to resolve the parties' disagreement as to the proper scope of document production pursuant to Consumer Rule R-22. Claimants propose that Respondent produce the documents produced in discovery in a related federal court action, *In Re Valve Antitrust Litigation*, United State District Court for the Western District of Washington, Case No. 2:21-ev-00563-JCC] (the 'Federal Action"). Respondent objects to that proposal, contending that such a production would be overbroad, excessive, burdensome and costly.

Respondent proposes that document discovery be conducted by the parties propounding document requests in this arbitration, without reference to what discovery has occurred in the Class Action. Claimants object to this proposal, and have submitted "alternative" document production requests in the event the arbitrator does not permit discovery of the entire Federal Action discovery record. Respondent has also proposed an alternative information exchange.

### I.    NATURE OF THE DISCOVERY DISPUTE

#### A. The Pleaded Claims

Claimants' claims are set forth in Amended Statements of Claims filed on June 21, 2024 (the "Amended Statements"). Claimants allege claims against Valve for violations of (1) Section 2 of the Sherman Act (actual and attempted monopolization), (2) Section 1 of the Sherman Act (unreasonable restraints of trade) and (3) the Washington State Consumer Protection Act. Respondent served its Answers to the Amended Statements of Claims on July 8, 2024, denying all liability to Claimants.

#### B.  Procedural Background.

---

[1]  The 25 matters are listed in Exhibit A hereto and are referred to herein as "the Arbitrations."

1

An initial case management conference among the arbitrator and counsel was held on June 4, 2024.[2]  With respect to document production, Paragraph 8 of Case Management Order No. 1 ("CMO#1), prepared following the conference, provided that the parties would confer regarding the "nature, extent and timing" of exchange of information and, as to any matter on which they could not agree, would set forth their positions in letter briefs to be filed on July 3, 2024.

The parties did not agree on the scope of document production, and they set forth their positions in letter briefs as provided in CMO#1.[3]  A second case management conference was held on July 9, 2024, at which counsel further described their positions respecting discovery. The arbitrator and counsel agreed to a schedule of further submissions respecting the scope of document production and scheduled a Zoom hearing respecting discovery issues for August 26, 2024.[4]

Following the July 9, 2024, conference the parties submitted the following additional documents respecting the scope of discovery:

> Valve's Brief in Opposition to Production of Cloned Discovery and Proposal for an Exchange of Information dated July 23, 2024, with a copy of a Protective Order in the Federal Action;
>
> Claimants' Alternative Information Exchange Requests filed July 23, 2024;
>
> Claimants' Reply in Support of Claimants' Proposal for Federal Evidence Disclosure dated August 6, 2024;
>
> Letter from Benjamin Goldman, Esq. to Will Bucher, Esq., dated August 6, 2024, in response to Claimants' Alternative Information Exchange Requests;
>
> Valve's Proposed Protective Order served August 6, 2024;
>
> Claimants' Reply in Support of Alternative Information Exchange Requests dated August 23, 2024, and supporting exhibits.

A conference among the arbitrator and counsel for the parties was held via Zoom on August 26, 2024. William Ward Bucher IV, Esq., Nived Rajendran, Esq., and Erik B. Atzbach, Esq., appeared for Claimants.  Andrew Notaristefano, Esq., Robert Day, Esq., and Andrew Fuchs, Esq., appeared for Respondent.  Heather Stout of the AAA also attended the conference.

On August 27, 2024, Valve's counsel submitted a letter to me requesting a stay of the Arbitrations in light of a recently filed consumer class action.  By an email to counsel on August 28, 2024, I established a briefing scheduling on the request, extending through September 13,

---

[2]  See Case Management Order No. 1 dated June 4, 2024.
[3]  See letter to the Arbitrator from Will Bucher, Esq. dated July 3, 2024, letter to the Arbitrator from Robert E. Day, Esq. dated July 3, 2024, and an email from Will Bucher, Esq. to Arbitrator dated July 8, 2024.
[4]  See Case Management Order No. 2 dated July 9, 2024 ("CMO#2).

2024. I advised counsel that although the case had not been stayed, I would not issue a ruling on the discovery issues until the stay request was resolved. After a Zoom hearing on the stay request on September 13, 2024, I issued a ruling denying a stay. Accordingly, this ruling is issued concerning ongoing discovery in the Arbitratons.

## II.     LEGAL ANALYSIS OF THE SCOPE OF RULE R-22 EXCHANGES

### A.  Positions of the Parties

Claimants seek an order requiring Valve to produce all the discovery materials from the Federal Action, a putative class action brought on behalf of PC videogame developers and publishers alleging violations of the Sherman Act and the Washington Consumer Protection Act. Claimants point to Valve's statements to the federal judge in motion proceedings that the developer and consumer claims make "identical allegations" asserting harm from the "same alleged conduct, claiming to share identical issues of causation, seeking damages from the same purported overcharge . . . .[5] Claimants concede that discovery in the Federal Action has been massive and that such a production in the Arbitrations would voluminous. However, Claimants contend that production of the entire discovery record from the Federal Action would actually be faster and less costly than "starting from scratch" and going through a lengthy process of motions to compel, objections to production, arguments over relevancy, etc. According to Claimants, the Arbitrations can take advantage of the lengthy and costly process that has already occurred in the Federal Action.

Valve objects to production of the Federal Action discovery. Valve argues that Claimants' claims are based on purchases of a "few games" during a 4-year statute of limitations period, and that production of a "staggering amount" of information regarding over 90,000 games sold by 30,000 publishers since 2003 and "detailed transactional and financial data since 2003" would be wholly "disproportionate" to those claims.[6]

Both sides have made "alternative" document production proposals, in the event I do not order production of the Federal Action discovery. Those proposals are discussed further below.

### B.  General Principles Governing Discovery in These Arbitrations

These consumer arbitrations are governed by the AAA's Consumer Arbitration Rules. Rule R-22 concerns discovery, referred to as "Exchange of Information Between the Parties." Rule R-22(a)1 provides that the arbitrator may direct production of specific documents and other information and identities of witnesses be shared between the consumer and the business, keeping in mind that the arbitration must remain a "fast and economical process." Rule R-22(d) provides that no other information beyond what is provided in Rule R-22(a) is contemplated by the Rules, unless the arbitrator determines that further information exchange is "needed to provide for a fundamentally fair process."

---

[5]  Claimant's July 3, 2024, letter brief re discovery, p. 1.
[6]  Valve letter brief dated July 3, 2024, pp. 1-2.

3

I believe that Rule R-22 should be interpreted in light of the nature of these arbitrations. These are consumer cases, but they are not *simple* or "garden variety" cases, like those claiming that a bank overcharged a consumer, or a dealer sold a defective automobile. Rather, these are antitrust cases, alleging monopolization under Section 2 of the Sherman Act and contracts in restraint of trade under Section 1. Claimants have the burden of proving *liability* under the Sherman Act. Section 2 requires proof of monopoly power and willful acquisition and maintenance of that power. Section 1 requires proof of "contracts, combinations or conspiracies" that unreasonably restrained competition. These elements can only be proved by extensive factual evidence—and likely expert testimony--covering an extended period of time.[7] And, not surprisingly, most of that evidence is in the possession of Valve and third parties, not the individual Claimants. Thus, substantial discovery is necessary in these cases, in my opinion, to provide for a "fundamentally fair process" within the meaning of Rule R-22.

Respondent points out the relatively small amount of damages that likely will be sought by these 25 Claimants. At this early stage we do not, of course, know the amounts of the damages each Claimant will seek (or the amount of attorneys' fees they will seek if they prevail on liability). Assuming those amounts are small, however, Claimants nonetheless have the burden to prove Sherman Act violations by Valve. Further, it is apparent that these 25 cases are a small subset of a much larger number of similar claims, with large damages claims in the aggregate.[8]

## C. Claimants' Request for Production of Federal Action Discovery

In a number of cases parties have sought to obtain production of discovery materials from other related litigation, referred to as "cloned" discovery. Respondent cites decisions denying such discovery. *King Cty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prods. Liability Litig.*, 2017 WL 4680242, at *2 (N.D. Cal. Oct. 18, 2017) ("Plaintiffs are not entitled to complete access to the MDL Production simply because there may be an overlap between their claims and those in the . . . consumer class action."); *Wine Distribs., Inc. v. Vitol Inc.*, 2022 WL 1489474, at *1 (N.D. Cal. May 11, 2022). However, cloned discovery has sometimes been allowed. *Garner v. Amazon.com, Inc.*, No. C21-0750RSL, 2023 U.S. Dist. LEXIS 164569, at *6 (W.D. Wash. Sep. 15, 2023); *Schneider v. Chipotle Mexican Grill, Inc.*, 2017 U.S. Dist. LEXIS 43652, 2017 WL 1101799 (N.D. Cal. Mar. 24, 2017). In general, the courts' decisions depend on the similarity of parties and claims in the two proceedings and the need for such discovery. `

Here, there is a substantial overlap of parties and claims. Valve is the defendant in the Federal Action and the respondent in the Arbitrations. The claims in the Federal Action and in the Arbitrations are similar, if not identical. Claimants Amended Statements of Claims, like the Federal Action complaint, alleges claims against Valve for violations of Sections 1 and 2 of the Sherman Act and the Washington Consumer Protection Act.[9] Indeed, the Amended Statements of Claims *incorporate by reference* the Second Amended Consolidated Class Action Complaint in

---

[7] Even if Claimants can only recover *damages* within a four-year limitations period, the evidence of *liability* is not confined to that period.

[8] Counsel have advised the arbitrator that there are some 600 AAA consumer arbitrations against Valve with assigned arbitrators.

[9] See, e.g., Mcinerney Amended Statement of Claims dated June 21, 2024

4

the Federal Action.[10]    Although the Federal Action is on behalf of games developers, and Claimants are consumers, both sets of claims rest upon the same alleged monopolization and anti-competitive conduct by Valve.    Notably, the developer plaintiffs allege that Valve's anti-competitive conduct has resulted in higher prices *to consumers.*[11]  And, as Claimants point out, in briefing in the District Court, Valve characterized the developer and consumer claims as "identical."

That said, the massive nature of the discovery that has occurred in the Federal Action must be considered.  Valve states that it has produced over 2.6 million documents and over 100 GB of detailed Steam transactional date for billions of transactions in over 100 countries during a nearly 20-year period.[12]  According to Valve, discovery has included document productions from 22 non-parties, 27 depositions of Valve fact witnesses, 5 depositions of plaintiff's witnesses and 11 third party depositions.  Valve also stated that there are 1,789 pages of reports from four expert witnesses, plus deposition transcripts for each witness.[13]  Valve contends that many of the documents produced in the Federal Action are "irrelevant and unnecessary to the Claimants' claims in these Arbitrations.

Valve also asserts that production of the entire Federal Action discovery record would be extremely costly and would substantially delay these Arbitrations, contrary to Rule R-22.  In particular, as to documents from third parties, Valve says it has confidentiality agreements with "tens of thousands" of third parties that sell their games on Steam, and those agreements require Valve to notify third parties of potential production of their confidential information so those third parties can take action to protect its confidentiality, if necessary. Those agreements required Valve in the Federal Action—and would require it to again do so here—to engage in a complex and costly notification process that included hiring an outside vendor, providing written notice to around 32,000 third parties, providing 50 days between the first notice and production of third party information to allow third parties sufficient time to oppose production or negotiate additional protections.[14]

On the present record, it is not possible to determine with precision the "relevance" of the massive discovery in the Federal Action to the Claimants' claims in the Arbitrations. Most likely, much of the material is relevant here, and some is not.  Nor is it possible to verify the relative time, expense and delays that would result from production of the entire Federal Action discovery record, on the one hand, or a more limited production of documents (including some from the Federal Action discovery), on the other hand.  Balancing the various factors, I deny Claimants' request that Valve produce the entire Federal Action discovery record.  However, *each side* in the Arbitrations has proposed alternatives to the "cloned discovery" requested by Claimants, and in my judgment that more limited discovery should be approved, as discussed in Part II(D) below.

### D.  The Alternative Discovery Requests.

---

[10]  Amended Statements of Claims, Exhibit A.

[11]  See Class Certification Motion, pp. 23-29, and Schwartz Expert Report discussed therein.

[12]  Valve's Brief in Opposition to Production of Clone Discovery and Proposal for an Exchange of Information dated July 23, 2024, at page 2.

[13]  *Id.* at p. 3.

[14]  *Id*. at pp. 3-4.

It should be noted, first, that there is no dispute among the parties concerning production of documents *by the Claimants*. In its written submissions, Valve has proposed that Claimant produce their "gaming purchase histories, on and off Steam."[15] Claimant have not objected to this proposal, and I therefore assume that the parties are in agreement for Claimants' production. Also, the parties do not presently request production of documents *by non-parties*. The only issues, therefore, concern production *by Valve*.

In its August 6, 2024, letter, Valve made a "compromise" proposal for an information exchange. The documents described in this proposal are listed in Exhibit B to this Order. I believe, and therefore find, that the documents described by Valve are relevant and needed by Claimants and, therefore, should be produced. However, to the extent Respondent intended its proposal to be its *exclusive* production in these Arbitrations, that proposal is denied. The production shall be made subject to the additional production pursuant to Claimants' alternative proposal discussed below.

As stated above, Claimants have also made a document production proposal as an alternative to production of the entire Federal Action record. Claimants' proposal consists of 15 document production request and 5 interrogatories. However, Document Request 2 requests production of some 73 categories of documents set forth in a separate "alternative information requests. [16]

Claimants have made a sufficient showing, in my opinion, of the relevance of these requests. Valve's objections to the requests, set forth its counsel's letter to Claimants' counsel dated August 6, 2024, are generic assertions of overbroadness, irrelevancy and lack of necessity for the productions, without discussing *why* the requests suffer from these defects. And the requests clearly represent an effort to obtain a relatively small subset of relevant documents from the Federal Action, not a wholesale production of the discovery record in that action.

In its August 6, 2024, letter, Valve expresses various confidentiality concerns respecting Claimant's alternative production requests, which I address next in this Order.

First, the Valve productions pursuant to these requests may be made pursuant to a Protective Order *in these arbitrations*. Valve has submitted a proposed version, to which Claimants have not responded, at least not formally. The parties are directed to confer and submit a stipulated protective order for my approval, prior to production of the documents. If there is disputed language respecting the proposed order, the parties may each submit their preferred versions and I will determine what to include in the order. A schedule for these submissions is set forth below. Such an Order will preserve the confidentiality of the documents to be produced by Valve. And I am open to including an "attorneys' eyes only" provision in the Order.

---

[15] Letter from Valve' counsel to Claimant's counsel dated August 6, 2024, at p. 2.
[16] On July 23, 2024, Claimants served two requests, each entitled "Alternative Information Exchange Requests." The first request contains the 15 production requests and 5 interrogatories referred to above. The second request contains the 73 categories of documents requested.

Second, Valve has argued that Claimants' requested production would require Valve to "violate" the Protective Order issued in the Federal Action. I disagree. I have reviewed the Federal Action Protective Order provided by Valve. As to *Valve documents* there is nothing in the Federal Action Order precluding Valve from producing its documents in separate proceedings. And Valve's interests can be protected by entry of a protective order in the Arbitrations.

As for documents produced in the Federal Action by *third parties* and designated as confidential pursuant to the Protective Order, paragraph 7 of that order addresses that situation. It provides that where a party [Valve] is served with a "subpoena or a court order issued in other litigation" compelling disclosure of confidential documents subject to the Protective Order, Valve is to promptly notify the designating party and cooperate with respect to "all reasonable procedures" sought to be pursued by the designating party whose confidential material may be affected.[17] I interpret paragraph 7 to apply to arbitration proceedings and to this Order, and that the notice procedure provided in Paragraph 7 will be available to Valve and any affected non-parties. Valve has not shown that this procedure will unduly delay these Arbitrations based on the limited non-party confidential documents that may be subject to the Claimants' alternative requests.

Third, Valve states that it has "confidentiality agreements" with publishers requiring that Valve give notice to those entities and an opportunity object and seek relief or protection against production prior to any productions of their confidentiality information.[18] Valve describes the extent of those notices, and the time and expense of complying with the agreements in the massive discovery conducted in the Federal Action.[19] However, no such showing has been made as to the documents subject to Claimants' alternative requests. Significantly, those requests do not appear to request production of documents of "tens of thousands of business partners," as may have occurred in the Federal Action discovery. Further, many of the documents sought by Claimants' requests may already be subject to the Federal Action Protective Order and the procedures under Paragraph 7 of that order described above should satisfy any contractual notice requirements.

For these reasons, production by Valve will be required as to Claimants' alterative document requests.[20]

### E. <u>Summary of the Ruling</u>

Having read and considered the written submissions of the parties concerning the scope of document production by Claimants and Valve in these Arbitration, and having heard and considered the oral arguments of counsel at a hearing on August 26, 2024, IT IS HEREBY ORDERED as follows:

---

[17] See Protective Order, ¶ 7(c).

[18] In an email to counsel dated July 30, 2024, I requested that Valve provide me with a copy of its "standard distribution agreement." To the best of my knowledge, I have not received it, and I repeat that request herein.

[19] See August 6, 2024, letter from Valve's counsel at pp. 6-7.

[20] There is some overlap between the documents Valve has proposed to produce and those in Claimants' alternative requests. These documents do not, of course, have to be produced more than once. Also, a single production by Valve may be deemed to have been made in each of the 25 arbitrations assigned to me.

1. Claimants shall produce the documents requested by Valve on page 2 of a letter from Valve's counsel to Claimants' counsel dated August 6, 2024.

2. Respondent Valve shall produce documents listed on Exhibits B, C and D attached to this Order. To the extent that the list on Exhibit C refers to Claimant James Mcinerney, Respondent shall produce comparable documents relating to the other Claimants in these Arbitrations as well.

3. The productions pursuant to paragraphs 1 and 2 above shall be completed by **October 20, 2024,** except as to confidential non-party documents in the possession of Valve that are subject to the notice procedures specified in paragraphs 5 and 6 below.

4. These productions shall be made pursuant to the terms of a Protective Order to be entered in the Arbitrations. On or before **September 30, 2024,** the parties shall submit a Stipulated Protective Order to the Arbitrator for approval or, if the parties cannot agree on the language of such an order, separate proposed orders from each party shall be submitted. The parties are not required to produce documents pursuant to this Order until execution of the protective order.

5. As to any documents that Valve is to produce pursuant to this Order that that were produced in the Federal Action by third parties (i.e., plaintiffs or other third parties such as game developers or publishers) and that were designated by those parties as Confidential or Highly Confidential pursuant to the Federal Action Protective Order, the provisions of Paragraph 7 of the Protective Order shall apply to any such productions. Accordingly, on or before **September 30, 2024,** Valve shall do the following:

   (a) Valve shall notify any such designating party in writing that this Order may compel disclosure of information designated in the Federal Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" and include a copy of this Order.

   (b) Valve shall notify Claimants' counsel in writing that some or all of the material covered by this Order is subject to the Federal Action Protective Order;

   (c) Valve shall cooperate with respect to all reasonable procedures sought to be pursued by the designating parties whose confidential material may be affected by this order, including such parties' objections to production of their confidential documents made to the Arbitrator in these Arbitrations.

   (d) Valve shall notify any such designating third parties that their documents in the possession of Valve will be produced only after entry of a Protective Order in these arbitrations, containing terms substantially similar to those in the Federal Action Protective order.

8

(e) Valve shall notify the designating parties that if they do not communicate any objections to production of their documents by **October 20, 2024**, the arbitrator will assume they have no objections to production, subject to the terms of a Protective Order in these arbitrations as set forth above.

6. If this Order requires Valve to produce third party documents that were *not* produced in the Federal Action and that Valve believe are subject to notice provision in its confidentiality agreements with those parties, it may give such parties notice and an opportunity to take protective action on the same terms as set forth in paragraph 5 above.

7. A further case management conference among the arbitrator and counsel will be held on **October 31, 2024, at 11:00 a.m. (Pacific Time)** via Zoom to discuss further scheduling of these arbitrations. I will circulate a Zoom link for the conference.

DATED: September 16, 2024

_____
Richard R. Mainland, Arbitrator

9

## **EXHIBIT A**

The following twenty-five individual AAA arbitrations are the subject of this Ruling:

| Name | AAA Case No. |
| --- | --- |
| Mcinerny | 012300053536 |
| Clarke | 012300053537 |
| Garrido | 012300053538 |
| Castaneda | 012300053539 |
| Reynolds | 012300053540 |
| Huege | 012300053541 |
| Sardisco | 012300053543 |
| Cheney | 012300053544 |
| Couzens | 012300053546 |
| Leffert | 012300053547 |
| Chaffee | 012300053548 |
| Maynard | 012300053550 |
| Gariba | 012300053551 |
| Zuniga | 012300053552 |
| Barrett | 012300053553 |
| Shingleton | 012300053554 |
| Niles | 012300053555 |
| Drommerhausen | 012300053556 |
| Pacholczak | 012300053557 |
| Huss | 012300053559 |
| Arthur | 012300053560 |
| Perlaza | 012300053561 |
| Finfrock | 012300053562 |
| Lahner | 012300053563 |
| Santos | 012300053564 |

10

## EXHIBIT B[21]

(1) Detailed Steam account information and purchase histories for the Claimants.

(2) Documents that show how Microsoft estimated Valve's market share.

(3) Valve's standard Steam Distribution Agreement, under which a game developer and/or publisher can choose to distribute a game on Steam.

(4) Links to websites containing a wide variety of information about Steam and the videogame industry, including:

a. Industry publications discussing Steam, competitors to Steam, and the video game industry;

b. A website that tracks video game prices over time, both on and off Steam; and

c. Newzoo, a video game industry data aggregator that provides free reports such as its recent report, "The Global Games Market Report 2024." See Epic Games, Inc. v. Apple Inc., 559 F. Supp. 3d 898, 989 (N.D. Cal. 2021) (describing Newzoo data as "a credible third-party report that others in the industry rely upon").

(5) Data and documents procured from third-party data aggregators that Respondent will rely on to defend against Claimants' claims.

(6) The transcripts and exhibits from the depositions in the Federal Action of the following Valve employees who work(ed) on the Steam business team—i.e., the Valve employee who manage Valve's relationships with video game publishers:

a. Adam Klaff

b. Alden Kroll

c. Augusta Butlin

d. Connor Malone

e. DJ Powers

f. Erik Peterson

g. Jason Ruymen

h. Kassidy Gerber

i. Matt Nickerson

j. Nathaniel Blue

k. Ricky Uy

l. Tom Giardino

---

[21] This listing of documents is taken from pages 2-3 of a letter from Valve's counsel to Claimant's counsel dated August 6. 2024, and provided to the Arbitrator.  The list appears under a heading "Valve's Proposed R-22 Information Exchange."

11

## EXHIBIT C[22]

1. Documents and data evidencing the dates on which James Mcinerny purchased or otherwise obtained each game in their Steam library, the identity of the game, the identity of the entity from which James Mcinerny acquired the game, the price paid for each game, the price the game was listed for in the Steam store on the date of purchase or activation, the name on the credit or debit card that was used to purchase the game, any in-game or DLC purchases James Mcinerny made associated with that game, and Valve's commission on each game purchased and each in-game transaction that occurred.

2. The documents specified in the attached file which James Mcinerny intends to rely upon in their case and chief.

3. Agreements, correspondence, and other documents concerning the acquisition or absorption of the Bethesda Launcher, or the transfer of accounts or games from accounts on the Bethesda Launcher, into Steam.

4. Agreements, correspondence, and other documents concerning the inclusion of Blizzard games on the Steam platform following the acquisition of Activision Blizzard by Microsoft.

5. Agreements with PC games publishers or developers who receive or have in the past received kickbacks or modifications to Valve's 30% commission on the Steam platform.

6. Internal communications concerning providing kickbacks, incentives, or discounts to Valve's standard 30% commission.

7. Communications with CD Projekt Red, Microsoft, Electronic Arts, Take-Two Interactive and others who qualify for volume based financial incentives regarding those incentives and the conditions to qualify for those incentives.

8. Valve's Steamworks Documentation states "We recommend pricing strategies based on our experience and we may suggest prices based on currency conversion and other factors." Please produce all correspondence and other documentation of Valve recommending or suggesting prices.

9. Documents evidencing that Valve regularly confirmed to publishers that its pricing parity policy applies in equal force regardless of whether Steam Keys are involved.

10. Communications that specify any consequences for not implementing price parity across PC game distribution platforms.

11. Communications where Valve threatened game publishers with delisting their games or other consequences if they did not comply with Valve's PMFN Policy or other pricing policies.

12. Documents and communications in which Valve uses the phrase "Most Favored Nations," "MFN," "PMFN," "same price," or "price parity."

13. Emails or other reminders with game developers or publishers concerning any price parity policy or any other restrictions on the pricing of PC games sold on Steam

14. Communications and agreements with Valve's potential competitor GOG.com or GOG.com's parent company CD Projekt Red concerning Valve's commission, Valve or GOG.com market share, requirements or requests for price parity, or GOG.com itself.

15. Communications and other documents where this language from the Valve's Steamworks Documentation is cited, interpreted, or otherwise discussed: "It's not about trying to undercut competition with a lower price."

---

[22] This list of documents is taken from a document captioned "Claimant's Alternative Information Exchange Requests" submitted to the Arbitrator and Valve's counsel on July 23, 2024. This list pertains to Claimant James Mcinerny. Substantially identical, but slightly different, lists were provided for each of the 25 Claimants.

## INTERROGATORIES

James Mcinerny requests that Valve provide answers to the following:

1. In Valve's opening motion Valve stated, "For most games, Valve's current revenue share starts at 30% of revenues received but drops to 25% or 20% once a game's sales reach certain levels." Please list all games which are not included in "most games" and explain how the revenue share works for those games.

2. In Valve's opening motion, Valve stated "if a game sells for $30, the game developer gets 70% ($21) and Valve keeps 30% ($9). Those revenue shares change to 75% ($22.50) and 25% ($7.50), or 80% ($24) and 20% ($6), if a game's sales reach certain levels." What are the criteria for reaching "the certain levels" to trigger these lower commissions?

3. In 2018, Valve told a publisher that "[w]e basically see any selling of the game on PC, Steam key or not, as a part of the same share PC market- so even if you weren't using Steam keys, we'd just choose to stop selling a game if it was always running discounts of 75% off on one store but 50% off on ours." VALVE_ANT_0265027–030, at VALVE_ANT_0265027. Would any game developer listing a game on a Steam competitor for a listed price 20% less than on Steam year-round, and offering no sales on Steam but offering periodic sales on the alternative digital distributor's platforms, violate or potentially violate any contract Valve executed with any game developer, or any documentation, terms, or policy, whether official or unofficial, Valve currently enforces or has enforced since James Mcinerny created their account?

4. For each year since James Mcinerny created their Steam account, how many total Steam Keys were generated by Valve Corp. for all games and titles?

5. For each year since James Mcinerny created their Steam account, how many total copies of games were sold on Steam?

13

# EXHIBIT D[23]

1. Scott Lynch's deposition transcript taken on or about October 12, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

2. Gabe Newell's deposition transcript taken on or about November 21, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

3. Thomas Giardino's deposition transcript taken on or about November 2, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

4. DJ Powers's deposition transcript taken on or about September 29, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

5. Augusta Butlin's deposition transcript taken on or about October 11, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

6. Alden Kroll's deposition transcript taken on or about November 16, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

7. Connor Malone's deposition transcript taken on or about November 8, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

8. Nathaniel Blue's deposition transcript taken on or about October 4, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

9. Jason Owens's deposition transcript taken on or about December 5, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

10. Kassidy Gerber's deposition transcript taken on or about October 5, 2023, with the accompanying exhibits, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

11. The expert report by Dr. Steven Schwartz submitted on or about February 8, 2024.

12. The expert report by Professor Joost Rietveld submitted or about February 8, 2024.

13. Malone Ex. 263, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

14. Lynch Ex. 141, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

15. Malone Ex. 261, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

16. MSFT_VALVE_000000555 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

---

[23] This list of documents is taken from a document captioned "Claimant's Alternative Information Exchange Requests" submitted to the Arbitrator and Valve's counsel on July 23, 2024. This list pertains to Claimant James Mcinerny. Substantially identical, but slightly different, lists were provided for each of the 25 Claimants.

14

17. VALVE_ANT_2602243 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

18. Kroll Ex. 304 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

19. Giardino Ex. 178 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

20. Newell Ex. 353 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

21. Powers 30(b)(6) Ex. 55 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

22. Butlin Ex. 120 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

23. Giardino Ex. 195 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

24. Butlin Ex. 131 from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

25. Malone Ex. 248, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

26. Gerber Ex. 107, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

27. Blue Ex. 86, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

28. Schenck Ex. 385, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

29. Ruymen Ex. 1, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

30. Giardino Ex. 196, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

31. VALVE_ANT_0048944, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

32. VALVE_ANT_1207052, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

33. Malone Ex. 249, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

34. VALVE_ANT_0340706, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

35. VALVE_ANT_0051718, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

36. Gerber Ex. 101, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

37. Giardino Ex. 191, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

38. Powers 30(b)(6) Ex. 60, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

39. Malone Ex. 245, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

15

40. Ruymen Ex. 9, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

41. VALVE_ANT_1193238, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

42. Newell Ex. 346, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

43. Powers Ex. 45, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

44. Giardino Ex. 194, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

45. Kroll Ex. 305, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

46. VALVE_ANT_0262762, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

47. VALVE_ANT_1220449, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

48. Giardino Ex. 189, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

49. EPIC_VALVE_0000004, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

50. VALVE_ANT_0019722, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

51. VALVE_ANT_0042738, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

52. VALVE_ANT_0038381, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

53. VALVE_ANT_0019732, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

54. VALVE_ANT_0040316, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

55. EPIC_VALVE_0000001, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

56. EPIC_VALVE_0000391, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

57. EPIC_VALVE_0000058, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

58. Lynch Ex. 135, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

59. VALVE_ANT_1244411, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

60. VALVE_ANT_0051718–19, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

61. VALVE_ANT_2804689–693, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

62. VALVE_ANT_1170665–66, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

16

63. VALVE_ANT_0372900–08, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

64. VALVE_ANT_1225364–78, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

65. VALVE_ANT_2790480–86, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

66. VALVE_ANT_2714185–87, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

67. Malone Ex. 246, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

68. Kassidy Gerber, Dep. Tr., 10/5/2023, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

69. "Valve Transaction Data, 1/28/2017–12/31/2022," from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

70. "05_Damages.R," from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation). 71. Giardino Ex. 186, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

72. The Epic Games Store Presentation from 2019 (EPIC_VALVE_0000013–057, at EPIC_VALVE_0000021).

73. VALVE_ANT_0265027–030, at VALVE_ANT_0265027, from In re: Valve Antitrust Litigation (formerly captioned Wolfire Games and William Herbert et al v. Valve Corporation).

17

# Exhibit C

## AMERICAN ARBITRATION ASSOCIATION

---

**In the Matter of the Arbitration between**

**25 INDIVIDUAL CLAIMANTS**

**Case No. 01-23-0005-3536**

**vs.**

**VALVE CORPORATION d/b/a STEAM**

---

### PROTECTIVE ORDER

1. <u>PURPOSES AND LIMITATIONS</u>

Information exchange in these arbitrations is likely to involve production of confidential, proprietary, or private information for which special protection may be warranted. Accordingly, the tribunal enters the following Protective Order. This order does not confer blanket protection on all disclosures or responses to information requests, the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.[1]

2. <u>"CONFIDENTIAL" and "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY"</u> <u>MATERIAL</u>

    a. "CONFIDENTIAL" MATERIAL "Confidential" material shall include the following information, documents, and tangible things produced or otherwise exchanged:

---

[1] This order is applicable in the twenty-five arbitrations listed on Exhibit B hereto.

1

i.    Non-public product, product use, or business plan or strategy information, including research and development and product use data; market information; proprietary product development or use information; non-public financial, sales, profitability, costs, or other business data, metrics or projections.

ii. Proprietary, commercial, or client information, which is defined as:

A. Research, development, or commercial information that is of a competitively sensitive nature and that a reasonably prudent business person in the applicable field would not release to or share with the public in the ordinary course of business, and the release of which would likely cause proprietary, competitive, or economic harm; or

B. "Trade secret," as set forth in the Washington Trade Secrets Act, RCW 19.108.010, meaning information, including a formula, pattern, compilation, program, device, method, technique, or process that:

1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

iii. Non-public information received from, belonging to, or regarding third parties that is designated as confidential or protected under another agreement (such as

2

a nondisclosure agreement or a contract with a confidentiality provision) and which the producing party is contractually obligated to keep confidential.

b. "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" MATERIAL

"Highly Confidential – Attorney's Eyes Only" material shall include the following information, documents, and tangible things produced or otherwise exchanged:

i. Financial, proprietary, commercial, business, research and development, or customer/user/client information, that is of a highly competitively sensitive nature and that a reasonably prudent business person in the applicable field would not release to or share with the public in the ordinary course of business, and the release of which is likely to cause proprietary, competitive, or economic harm;

ii. Information related to product users, including but not limited to Steam users and Steam account information, or employees, which is not in the ordinary course of business made publicly available, is not of legitimate concern to the public, and which a reasonable product user or employee might consider personal or private; or

iii. Information produced, obtained, or used in any other litigation, court proceeding, arbitration, or government action that was designated in that proceeding as "Highly Confidential," "Attorneys' Eyes Only," or similar designation indicating an intent to provide a high degree of protection of the confidentiality of such information.

3. SCOPE

The protections conferred by this order cover not only confidential material (as defined above) and Highly Confidential – Attorney's Eyes Only material (as defined above), but also (1) any information copied or extracted from confidential material or Highly Confidential – Attorney's

3

Eyes Only material; (2) all copies, excerpts, summaries, or compilations of confidential material or Highly Confidential – Attorney's Eyes Only material; and (3) any testimony, conversations, or presentations by parties or their counsel that might reveal confidential material or Highly Confidential – Attorney's Eyes Only material.

However, the protections conferred by this order do not cover information that is in the public domain or becomes part of the public domain.

4. ACCESS TO AND USE OF CONFIDENTIAL MATERIAL AND HIGHLY CONFIDENTIAL – ATTORNEY'S EYES-ONLY MATERIAL

4.1 Basic Principles. Confidential material and Highly Confidential – Attorney's Eyes Only material may be disclosed only to the categories of persons and under the conditions described in this order. Confidential material and Highly Confidential – Attorney's Eyes Only material must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this order. A receiving party may use confidential material and Highly Confidential – Attorney's Eyes Only material that is disclosed or produced by another party or by a non-party only for prosecuting, defending, or attempting to settle the twenty-five (25) arbitrations in which this order is entered. This order does not, however, preclude a recipient of Confidential material and Highly Confidential – Attorney's Eyes Only material from applying to the arbitrators in other arbitrations for permission to use those materials in those arbitrations. The decisions respecting any such application shall be made solely by the arbitrators in any such arbitrations, including decisions on whether the material may be used in such arbitrations, and the terms and conditions of any protective order entered in such arbitrations. Each party reserves its right, in any such arbitration, to oppose any application for permission to use the materials in that arbitration. This order expresses no opinion on whether

4

Confidential materials or Highly Confidential –Attorneys' Eyes Only materials should be used in other arbitrations or, if such use is allowed, what terms and conditions should be imposed.

4.2 Disclosure of "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" Material. Unless otherwise ordered by the tribunal or permitted in writing by the designating party, a receiving party may disclose any material designated as 'CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY'S EYES ONLY" only to:

a. (1) Attorneys of record in this proceeding, as well as employees of counsel to whom it is reasonably necessary to disclose the information for this proceeding; and (2) officers, directors, and employees (including in-house counsel) of the receiving party to whom disclosure is reasonably necessary for this proceeding;

b. experts and consultants to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

c. the tribunal, tribunal personnel, and their staff.

d. during their testimony, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the designating party or ordered by the tribunal. Pages of transcribed testimony or exhibits to testimony that reveal confidential material must be separately bound by the tribunal reporter and may not be disclosed to anyone except as permitted under thisorder;

e. the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

f. copy or imaging services retained by counsel to assist in the duplication of confidential material to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

g. any other person that the designating party agrees to in writing.

## 5. DESIGNATING PROTECTED MATERIAL

5.1 Exercise of Restraint and Care in Designating Material for Protection. Each party or non-party that designates information or items for protection under this order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The designating party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this agreement. Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or delay the case development process orto impose unnecessary expenses and burdens on other parties) expose the designating party to sanctions. If it comes to a designating party's attention that information or items that it designated for protection do not qualify for protection, the designating party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2 Manner and Timing of Designations. Except as otherwise provided in this order (see, e.g., second paragraph of section 5.2(b) below), or as otherwise stipulated or ordered, disclosure or discovery material that qualifies for protection under this order must be clearly so designated before or when the material is disclosed or produced.

6

a. <u>Information in documentary form</u>: (e.g., paper or electronic documents and testimony exhibits, but excluding transcripts of testimony or other prehearing or hearing proceedings), the designating party must affix the words "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" to each page that contains confidential material or Highly Confidential – Attorney's Eyes Only material. If only a portion or portions of the material on a page qualifies for protection, the producing party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

b. <u>Testimony given in proceedings</u>: Testimony and the transcripts and video recordings thereof in this arbitration shall be treated as HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY for a period of 40 days, or for as many days as the parties shall agree, after receipt of such transcript and/or video recordings to allow time for the witness or counsel for that witness, or any party or non-party or its counsel, to notify all parties of any HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY or CONFIDENTIAL Information contained therein.

c. <u>Other tangible items</u>: the producing party must affix in a prominent place on the exterior of the container or containers in which the information or item is stored the words "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY." If only a portion or portions of the information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portion(s).

5.3 <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's

7

right to secure protection under this order for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to ensure that the material is treated in accordance with the provisions of thisorder.

If any Document, Testimony or Information that qualifies for designation as "Confidential" or "Highly Confidential - AEO" is inadvertently produced without such designation, the Party that inadvertently produced the Document, Testimony or Information shall give written notice of such inadvertent production within twenty (20) days of discovery of the inadvertent production, together with a copy of the subject Document, Testimony or Information designated as "Confidential" or "Highly Confidential - AEO" (the "Inadvertent Production Notice").

Upon receipt of the Inadvertent Production Notice, the receiving party must make reasonable efforts to ensure that the material is treated in accordance with the provisions of this order. The Party that received the inadvertently produced Document, Testimony or Information shall promptly destroy it and all copies thereof, or, at the expense of the producing Party, return it and all copies thereof to counsel for the producing Party, and retain only the Document, Testimony or Information containing the "Confidential" or "Highly Confidential - AEO" designation.

Should the receiving Party choose to destroy such inadvertently produced Document, Testimony or Information, the receiving Party shall notify the producing Party in writing of such destruction within ten (10) days of receipt of written notice of the inadvertent production. This provision is not intended to apply to any inadvertent production of any Information protected by attorney-client or work-product privileges, which is addressed in paragraph 9 below. To the extent that the provisions in this paragraph conflict with any applicable law regarding waiver of confidentiality through the inadvertent production of Documents, Testimony or Information, such law shall govern.

8

## 6. CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1 Timing of Challenges. Any party or non-party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a designating party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2 Procedures for Resolving Challenges. A party wishing to challenge the designations of materials as Confidential or Highly Confidential – Attorney's Eyes Only may apply to the tribunal for an order removing or modifying the designations. Before making such an application, the parties shall attempt to resolve the dispute regarding Confidential or Highly Confidential – Attorney's Eyes Only designations without tribunal involvement. To that end, the parties shall engage in a good faith conference in an effort to resolve the dispute without tribunal action. All parties shall continue to maintain the material in question as Confidential or Highly Confidential – Attorneys' Eyes Only until the tribunal rules on the challenge.

## 7. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a party is served with a subpoena or a tribunal order issued in other litigation or arbitration that compels disclosure of any information or items designated in this arbitration as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" that party must:

9

a. promptly notify the designating party in writing and include a copy of the subpoena or tribunal order;

b. promptly notify in writing the party who caused the subpoena or order to issue in the other litigation or arbitration that some or all of the material covered by the subpoena or order is subject to this order. Such notification shall include a copy of thisorder; and

c. cooperate with respect to all reasonable procedures sought to be pursued by the designating party whose confidential material or Highly Confidential – Attorney's Eyes Only material may be affected.

## 8. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a receiving party learns that, by inadvertence or otherwise, it has disclosed confidential material or Highly Confidential – Attorney's Eyes Only material to any person or in any circumstance not authorized under this order, the receiving party who inadvertently produced must immediately (a) notify in writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the protected material and promptly destroy it, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this order, and (d) request that such person or persons execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

## 9. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

The inadvertent disclosure of material designated attorney-client privilege or work product privilege shall not constitute or be construed as a waiver of any applicable protection for that

10

material. That is, all disclosures not made to support an affirmative use of material designated attorney-client privilege or work product privilege in support of a party's claim or defense shall be regarded as inadvertent, and the producing party is hereby deemed to have taken reasonable steps to prevent disclosure, regardless of any argument or circumstances suggesting otherwise. Any material designated attorney-client privilege or work product privilege the producing party claims as privileged or protected shall, upon written request, promptly be returned to the producing party and/or destroyed, at the producing party's option.

10. <u>NON TERMINATION AND RETURN OF DOCUMENTS</u>

Within 60 days after the termination of this arbitration, including all appeals, each receiving party must return all confidential material and Highly Confidential – Attorney's Eyes Only material to the producing party, including all copies, extracts and summaries thereof. Alternatively, the parties may agree upon appropriate methods of destruction. Notwithstanding this provision, counsel are entitled to retain one archival copy of all documents filed with the tribunal, testimony and hearing transcripts, correspondence, testimony and hearing exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain confidential material or Highly Confidential – Attorney's Eyes Only material. The confidentiality obligations imposed by this order shall remain in effect until a designating party agrees otherwise in writing or a tribunal orders otherwise.

IT IS SO ORDERED:

Dated this 8th day of November 2024

Richard R. Mainland
Arbitrator

11

## EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, , [print or type full name], of [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Protective Order that was issued by Arbitrator Richard R. Mainland in AAA Case No. _____ on _____ .

I agree to comply with and to be bound by all the terms of this Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I agree to submit to the Arbitrator's authority for the purpose of enforcing the terms of this Protective Order through sanctions and all other remedies permitted by law, even if such enforcement proceedings occur after termination of this action. I further agree that any legal proceeding necessary to confirm any arbitral award or order against me shall be commenced and maintained exclusively in any state or federal court having subject matter jurisdiction and located either in King County, Washington. I agree to submit to the jurisdiction of such a court for that purpose, even if such enforcement proceedings occur after termination of this action.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

## EXHIBIT B

The following twenty-five individual AAA arbitrations are subject to this Protective Order:

| Name | AAA Case No. |
| --- | --- |
| Mcinerny | 012300053536 |
| Clarke | 012300053537 |
| Garrido | 012300053538 |
| Castaneda | 012300053539 |
| Reynolds | 012300053540 |
| Huege | 012300053541 |
| Sardisco | 012300053543 |
| Cheney | 012300053544 |
| Couzens | 012300053546 |
| Leffert | 012300053547 |
| Chaffee | 012300053548 |
| Maynard | 012300053550 |
| Gariba | 012300053551 |
| Zuniga | 012300053552 |
| Barrett | 012300053553 |
| Shingleton | 012300053554 |
| Niles | 012300053555 |
| Drommerhausen | 012300053556 |
| Pacholczak | 012300053557 |
| Huss | 012300053559 |
| Arthur | 012300053560 |
| Perlaza | 012300053561 |
| Finfrock | 012300053562 |
| Lahner | 012300053563 |
| Santos | 012300053564 |

13

# Exhibit D

**AMERICAN ARBITRATION ASSOCIATION**

---

**In the Matter of the Arbitration between**

**25 INDIVIDUAL CLAIMANTS**

                                         **Case No.  01-23-0005-3536**

**vs.**

**VALVE CORPORATION d/b/a STEAM**

---

### ORDER RE MOTIONS TO COMPEL INFORMATION EXCHANGE

The parties in these twenty-five consumer arbitrations[1] have filed motions to compel exchanges of documents and information in anticipation of the merits hearing scheduled in four of the arbitrations to commence on September 21, 2026. I have read and considered the written submissions of Claimants and Valve concerning their respective motion. My ruling on the motions is set forth below.

### I.       VALVE'S MOTION TO COMPEL

Valve's Motion to Compel is GRANTED IN PART AND DENIED IN PART.

Claimants shall produce their gaming purchase histories, on and off of Steam, and documents sufficient to verify that Claimants made those purchases with their own funds as ordered by the arbitrator on September 16, 2026 (the 'September Order"); provided, however, that at this time Claimant need only produce such information for the four Claimants[2] whose claims will be the subject of the September 2026 hearing.

### II.      CLAIMANT'S MOTION TO COMPEL

Claimant's Motion to Compel is GRANTED IN PART AND DENIED IN PART as set forth below.

1.  Valve shall produce the unredacted Schwartz report.

2.  Claimant's motion to compel production of additional Newzoo date is DENIED.

---

[1]  The 25 matters are listed in Exhibit A hereto and are referred to herein as "the Arbitrations."
[2]   One of the four designated claimants will be unable to attend the September hearing, and Respondent will designate a fourth Claimant to appear at the hearing on or before July 7, 2026.

1

3. Claimant's motion to GRANTED as to documents showing how Microsoft estimated Valve's market share.

4. Claimant's motion to compel production of documents and communications regarding the Bethesda Launcher is GRANTED.

5. Claimant's motion to compel documents and communications relating to Activision Blizzard games on Steam is GRANTED.

6. Claimant's motion to compel production of the documents designated MSFT_VALVE_0000555 is GRANTED.

7. Claimant's motion to compel production of communications and agreements with Valve's potential competitor GOG.com or GOG.com's parent company CD Projekt Red is GRANTED.

8. Claimant's motion to compel production of documents from Epic Games is GRANTED.

9. Claimant's motion to compel Valve to identify a witness to testify about Valve's expenses is DENIED.

10. Claimant's motion to compel Valve to identify "Original Source of Data" is DENIED.

11. Claimant's motion to compel Valve to identify the third party who accessed the retainer agreement of Claimant's counsel is DENIED.

The production of documents and information pursuant to this Order shall be completed by **June 15, 2026**, except that Claimants shall produce gaming histories of the fourth Claimant whose claims will be the subject of the September 2026 hearing within 30 days after Valve identifies that Claimant.

DATED: May 3, 2026                    Richard R. Mainland, Arbitrator

**EXHIBIT A**

The following twenty-five individual AAA arbitrations are the subject of this Ruling:

| Name | AAA Case No. |
|---|---|
| Mcinerny | 012300053536 |
| Clarke | 012300053537 |
| Garrido | 012300053538 |
| Castaneda | 012300053539 |
| Reynolds | 012300053540 |
| Huege | 012300053541 |
| Sardisco | 012300053543 |
| Cheney | 012300053544 |
| Couzens | 012300053546 |
| Leffert | 012300053547 |
| Chaffee | 012300053548 |
| Maynard | 012300053550 |
| Gariba | 012300053551 |
| Zuniga | 012300053552 |
| Barrett | 012300053553 |
| Shingleton | 012300053554 |
| Niles | 012300053555 |
| Drommerhausen | 012300053556 |
| Pacholczak | 012300053557 |
| Huss | 012300053559 |
| Arthur | 012300053560 |
| Perlaza | 012300053561 |
| Finfrock | 012300053562 |
| Lahner | 012300053563 |
| Santos | 012300053564 |

3

4