THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | No. 2:21-cv-00563-JNW<br><br>**DECLARATION OF BLAKE MARKS-DIAS IN SUPPORT OF VALVE CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER** |

Blake Marks-Dias states and declares as follows:

1.      I am over 18 years of age, I have personal knowledge of the matters stated herein and I am competent to testify to these matters.

2.      I am one of the attorneys representing Defendant Valve Corporation ("Valve"), and I make this Declaration in support of Valve Corporation's Reply in Support of its Motion for Clarification Regarding Protective Order.

3.      Attached hereto as Exhibit A is a true and correct copy of emails to/from Arbitrator Mainland regarding Valve's Motion for Clarification Regarding Protective Order.

DECLARATION OF BLAKE MARKS-DIAS IN SUPPORT OF
VALVE'S REPLY IN SUPPORT OF ITS MOTION FOR
CLARIFICATION RE PROTECTIVE ORDER – 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

4.       Attached hereto as Exhibit B is a true and correct copy of Arbitrator Jossen's Order dated June 4, 2026.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 22nd day of June, 2026 at Seattle, Washington.


s/ Blake Marks-Dias
Blake Marks-Dias


DECLARATION OF BLAKE MARKS-DIAS IN SUPPORT OF
VALVE'S REPLY IN SUPPORT OF ITS MOTION FOR
CLARIFICATION RE PROTECTIVE ORDER – 2

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# EXHIBIT A

**Fuchs, Andrew J (HOU)**

| | |
|---|---|
| **From:** | Richard Mainland <richard@mainlandadr.com> |
| **Sent:** | Sunday, June 7, 2026 1:14 PM |
| **To:** | Fuchs, Andrew J (HOU) |
| **Cc:** | William Bucher; Andrew C. Indorf; Erik Atzbach; Ryan Bailey; Judson Crump; Zachary Horn; Jayla Howard; Taylor Jeppson; Michael Mitchell; Ariel Thatcher; Tyler Whitney; Daniel Wright; xinlin@moni.law; jing@moni.law; valveteam@moni.law; Dorit Ungar Black; Lauren Cole; Priyanka Timblo; Scott M. Danner; Daniel M. Horowitz; bmarksdias@corrcronin.com; Milstead, Virginia (LAC); McInerney, Colm P (NYC); McTigue Jr., Michael W (NYC); Tavakoli, Shaud G (NYC); gavins@valvesoftware.com; aaafiling@valvesoftware.com; Slawe, Meredith C (NYC); Sarah Maher; Christine Sun; Valve SASMF Team DL; AAA Jill Roettger; Spence Colburn; Zachary Garrett; Muhammad Mustafa |
| **Subject:** | [Ext] Re: Wolfire Filing |

Receipt confirmed.

The May 3 discovery order remains in effect and is not stayed.

As I previously advised counsel, I will be out of the country and unavailable from June 7 (today) through June 27.

Richard Mainland
Arbitrator

On Sat, Jun 6, 2026 at 4:08 PM Fuchs, Andrew J <Andrew.Fuchs@skadden.com> wrote:

Arbitrator Mainland:

You issued the below order without giving Valve an opportunity to respond to Mr. Bucher's lengthy submission yesterday. Indeed, Mr. Bucher's submission contains numerous factual misstatements of which you should be aware before reversing your prior order. As just one example, Mr. Bucher's submission states that no third-parties objected to production of their documents to Mr. Bucher. This is inaccurate. As we have previously explained, third-parties provided such objections to Valve (and we understand directly to Mr. Bucher).

Mr. Bucher is also mistaken when he argues that the claimants in front of you, his clients, cannot contest Valve's US District Court motion for clarification of that court's protective order. That is nonsense. Mr. Bucher's clients can appear in the *Wolfire* case for the limited purpose of making their views on the protective order known. Indeed, many of the third parties whose data is at stake here have done just that, including Electronic Arts (Dkt. 136), Nintendo (Dkt. 137), Microsoft (Dkt. 186), Humble Bundle (Dkt. 187), and Epic Games (Dkt. 188). W.D. Wash. Case No. 2:21-cv-00563-JNW. So have other third parties, including individual Steam users (Dkts. 206-208) and a developer (Dkt. 212).

We respectfully ask that you give Valve an opportunity to respond to Mr. Bucher's June 5th submission on the schedule you previously proposed so it can correct these and other misstatements by Mr. Bucher and you can make a more balanced evaluation of the issues.

1

Valve reserves all rights on the ground that there is no agreement to arbitrate in the Steam Subscriber Agreement.

Respectfully,

Andrew

---

**From:** Richard Mainland <richard@mainlandadr.com>
**Sent:** Saturday, June 6, 2026 1:51 PM
**To:** William Bucher <will@bucherlawfirm.com>
**Cc:** Fuchs, Andrew J (HOU) <Andrew.Fuchs@skadden.com>; Andrew C. Indorf <aindorf@hsgllp.com>; Erik Atzbach <erik@atzbachlex.com>; Ryan Bailey <ryan@bucherlawfirm.com>; Judson Crump <judson@judsonecrump.com>; Zachary Horn <zachary@bucherlawfirm.com>; Jayla Howard <jayla@bucherlawfirm.com>; Taylor Jeppson <taylor@bucherlawfirm.com>; Michael Mitchell <michael@bucherlawfirm.com>; Ariel Thatcher <ariel@bucherlawfirm.com>; Tyler Whitney <tyler@bucherlawfirm.com>; Daniel Wright <daniel@bucherlawfirm.com>; xinlin@moni.law; jing@moni.law; valveteam@moni.law; Dorit Ungar Black <dblack@hsgllp.com>; Lauren Cole <lcole@hsgllp.com>; Priyanka Timblo <ptimblo@hsgllp.com>; Scott M. Danner <sdanner@hsgllp.com>; Daniel M. Horowitz <dhorowitz@hsgllp.com>; bmarksdias@corrcronin.com; Milstead, Virginia (LAC) <Virginia.Milstead@skadden.com>; McInerney, Colm P (NYC) <Colm.McInerney@skadden.com>; McTigue Jr., Michael W (NYC) <Michael.McTigue@skadden.com>; Tavakoli, Shaud G (NYC) <Shaud.Tavakoli@skadden.com>; gavins@valvesoftware.com; aaafiling@valvesoftware.com; Slawe, Meredith C (NYC) <Meredith.Slawe@skadden.com>; Sarah Maher <SMaher@hsgllp.com>; Christine Sun <csun@hsgllp.com>; Valve SASMF Team DL <DLVALVEST@skadden.com>; AAA Jill Roettger <JillRoettger@adr.org>; Spence Colburn <SColburn@hsgllp.com>; Zachary Garrett <zgarrett@hsgllp.com>; Muhammad Mustafa <mmustafa@hsgllp.com>
**Subject:** [Ext] Re: Wolfire Filing

Dear Counsel: I have reviewed Claimant's June 5, 2026, letter in response to Valve's June 1, 2026, letter requesting that my May 3, 2026, order compelling production of documents by Valve be held in abeyance pending resolution of a motion for clarification filed recently by Valve in the federal court. I have also reviewed and considered further Valve's June 1, 2026 letter.

I have concluded that there should be no further stay of Valve's obligation to comply with my May 3 discovery order. My June 3, 2026, email order imposing a temporary stay of the discovery order through the July 7, 2026, status conference is hereby vacated and is no force or effect. The May 3 discovery order remains in effect, including its June 15, 2026, deadline for completion of document production.

This ruling is directed solely to Valve's discovery obligations in this arbitration. It does not enjoin Valve from engaging in any court proceedings.

Richard Mainland

Arbitrator

On Fri, Jun 5, 2026 at 11:30 AM William Bucher <will@bucherlawfirm.com> wrote:

Arbitrator Mainland,

Claimants' letter and proposed order is attached. As stated earlier, I will make myself available any time, any hour, any day to be heard on the issue before you leave.

Will Bucher

Bucher Law PLLC

202-997-3029

1000 Brickell Ave

STE 715 - Mailbox 1004

Miami, FL 33131

On Fri, Jun 5, 2026 at 9:47 AM Richard Mainland <richard@mainlandadr.com> wrote:

Counsel:  I will await receipt of Claimant's further submission before deciding whether a Zoom call is necessary.

RIchard Mainland

Arbitrator

Richard Mainland

Arbitrator

3

On Fri, Jun 5, 2026 at 7:46 AM William Bucher <will@bucherlawfirm.com> wrote:

Arbitrator Mainland,

Pursuant to the below, we will send you our letter later today. Unfortunately Valve's choice to file their motion to vacate your order in a forum where these claimants are not parties, means that emergency relief will be required before your travels. Absent an order before you leave, there is a real possibility you will return to nearly three years of work being undone by Valve and its coconspirators' recently filed sham litigation, without the claimants even having the opportunity to be heard.

I will make myself available any time, any hour, any day to be heard on the issue before you leave. If there is a time that works for you for a video or teleconference, please let me know I'll get a calendar invite to all sides circulated.

Will Bucher

Bucher Law PLLC

202-997-3029

1000 Brickell Ave

STE 715 - Mailbox 1004

Miami, FL 33131

On Thu, Jun 4, 2026 at 9:47 AM William Bucher <will@bucherlawfirm.com> wrote:

Arbitrator Mainland,

We will get you our response by end of day tomorrow given your schedule. Among the issues is that Valve has not sought to add these claimants as parties to the action in *Wolfire* which they filed their purported motion to quash your order, which Valve frames as a motion for clarification. As non-parties, these claimants have no ability to contest Valve's comically one-sided request to "clarify" the court's order in *Wolfire*. Instead, it will be "contested" by counsel representing Valve's coconspirators, who presumably are quite fine with an interpretation that keeps their illegal agreements secret. We will need this tribunal to order Valve to take steps to ensure these claimants can be heard at all. Given that Valve noticed this motion for a date while you are away, this will need

4

to get resolved now. We are deeply sorry you continue to have to deal with urgent situations manufactured by Valve Corporation, particularly in the days leading up to your international trip.

Will Bucher

Bucher Law PLLC

202-997-3029

1000 Brickell Ave

STE 715 - Mailbox 1004

Miami, FL 33131

On Thu, Jun 4, 2026 at 9:32 AM Richard Mainland <richard@mainlandadr.com> wrote:

Counsel:  I welcome briefing on the issue of the stay requested in Valve's June 1, 2026, letter.  However, I will be out of the country and unavailable from June 7, 2026, through June 27, 2026.  That is why I proposed revisiting the stay issue at our scheduled July 7 status conference.  The issue can of course be briefed in my absence, but it need not be on the accelerated schedule suggested by Mr. Bucher.  I suggest that Claimants submit their response to Valve's letter by June 15, 2026, and that Valve respond by June 26, 2026.

Richard Mainland

Arbitrator

On Wed, Jun 3, 2026 at 5:18 PM William Bucher <will@bucherlawfirm.com> wrote:

Arbitrator Mainland,

We respectfully request that your order staying Valve's obligation to produce documents, originally ordered to be produced **by October 20, 2024** be vacated pending an opportunity for claimants to correct the numerous misrepresentations in Valve's letter and update you on the court's finding that Valve's attempt force these claimants out of arbitration was unconscionable and unenforceable. Valve has been

5

withholding this vital information for years. Valve's "forever litigation" tactic, where one court defeat is followed days later by a new court filing and accompanying request for a stay, will mean these arbitrations will literally never get resolved. We waited 608 days for the last court ruling even though Valve promised it would get resolved in 28 days. We cannot delay again just days after Valve's tactics were deemed unconscionable and unethical by the federal court. If anything, this is the time for sanctions, not stays.

We propose submitting our briefing in response to Valve's letter by May 9 with oral argument held May 11, in advance of the deadline as it existed in your most recent order.

Will Bucher

Bucher Law PLLC

202-997-3029

1000 Brickell Ave

STE 715 - Mailbox 1004

Miami, FL 33131

On Wed, Jun 3, 2026 at 4:54 PM Richard Mainland <richard@mainlandadr.com> wrote:

Counsel: I have reviewed your recent letters respecting (1) potential testimony by Ian Cheney at the September 2026 hearing; and (2) Valve's motion for clarification filed in *Wolfire*.

As for Mr. Cheney's potential testimony, he was initially identified by Valve as one of the two Claimants to be designated by Valve to appear at the September 2026 hearing. Mr. Cheney was thought to be unavailable due to the inability of Claimants' counsel to communicate with him. Claimants now, in Mr. Atzbach May 21, 2026, letter and Mr. Cheney's declaration, indicate that Mr. Cheney is available to testify at the hearing. However, based on the information set forth in the May 21 letter and accompanying materials, and in Valve's May 29, 2026, response letter, I decline to prevent Valve from identifying another witness to appear at the hearing in lieu of Mr. Cheney. Valve shall identify both of its proposed Hearing Claimants (which need not include Mr. Cheney) not later than the July 7, 2026 status conference.

6

As for possible amended demands, by Mr. Cheney and/or the rest of the 25 claimants, such amendments will be allowed only upon a noticed motion and a showing of good cause for the amendment(s). Claimant's May 21 letter merely states that Mr. Cheney "intends to amend his demand" and that the other Claimant also "intend to file amended arbitration demands." This letter does not purport to move for leave to amend or make a showing of good cause for such amendments. If Claimants wish to pursue possible amendments, they may submit a motion for leave to amend, giving Valve sufficient time to respond prior to the July 7, 2026 conference. We will then hold a hearing on any such motions at that time.

I acknowledge receipt of Valve's June 1, 2026, letter attaching a copy of its motion for clarification in *Wolfire*. I am willing to stay the May 3 order requiring production of documents that could be affected by resolution of the motion for clarification. However, this stay will remain in effect only until July 7, 2026. We will assess the situation further at the time and will determine whether any further stay is warranted.

Richard Mainland

Arbitrator

On Mon, Jun 1, 2026 at 11:50 AM Fuchs, Andrew J <Andrew.Fuchs@skadden.com> wrote:

Arbitrator Mainland:

Please find attached a letter regarding a motion for clarification Valve filed with the district court in the *Wolfire* action.

Valve reserves all rights that these arbitrations should be closed.

Respectfully,

Andrew

7

**Andrew J. Fuchs**
**Counsel**

**Skadden, Arps, Slate, Meagher & Flom LLP**

845 Texas Ave., Suite 2300 | Houston | Texas | 77002
**T: +1.312.407.0971 | F: +1.312.827.9326**
**andrew.fuchs@skadden.com**

------------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===============================================================================

--

**Richard R. Mainland**

Arbitrator - Mediator

2266 Westridge Road

Los Angeles CA 90049

Phone:  310-476-4544

email:  richard@mainlandADR.com

8

--

**Richard R. Mainland**

Arbitrator - Mediator

2266 Westridge Road

Los Angeles CA 90049

Phone:  310-476-4544

email:  richard@mainlandADR.com

--

**Richard R. Mainland**

Arbitrator - Mediator

2266 Westridge Road

Los Angeles CA 90049

Phone:  310-476-4544

email:  richard@mainlandADR.com

--

**Richard R. Mainland**

Arbitrator - Mediator

2266 Westridge Road

Los Angeles CA 90049

Phone:  310-476-4544

email:  richard@mainlandADR.com

--------------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===========================================================================

--
**Richard R. Mainland**
Arbitrator - Mediator
2266 Westridge Road
Los Angeles CA 90049
Phone:  310-476-4544
email:  richard@mainlandADR.com

# EXHIBIT B



**AMERICAN ARBITRATION ASSOCIATION** | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between

**23 Individual Claimants**

**-vs-**

**Valve Corporation d/b/a Steam**

## ORDER OF ARBITRATOR Re: Claimants' Motion to Compel Further Responses to Discovery

On May 27, 2026, from 1:00PM to 3:50 PM the parties engaged in a Status Conference regarding these 23 individual matters. During the Status Conference Claimants' Motion to Compel Further Responses to Discovery was extensively discussed.

After vigorous discussion, I, Sanford Jossen, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Arbitration Agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the arguments of the Parties, each represented by Counsel, with respect to Claimants' Motion to Compel Further Responses to Discovery as discussed at the Status Conference on May 27, 2026, do hereby, provide this *Interim Ruling,* as follows:

The following attendees participated in the Hearing:

| | |
|---|---|
| For Claimants: | Will Bucher, Esq.<br>Zachary Horn, Esq.<br>Daniel Wright, Esq.<br>Frank Palermo, Esq. |
| For Respondents: | Andrew Fuchs, Esq.<br>Shaun Tavakoli, Esq.<br>Claire Addis, Esq.<br>Max Miller, Esq. |
| Court Reporter: | Paula Bekker, CSR. |

## Introduction:

These cases involve antitrust claims asserted by individual purchasers of computer games offered for sale by Respondent. The claims are part of 23 separate Arbitrations involving similar allegations before this Arbitrator, as well as a case pending in the Federal District Court for the State of Washington. Respondent is one of the primary developers and distributors of computer games. The allegations presented by Claimants are well known to the parties, and the Arbitrator does not believe it is necessary or productive

to repeat them here.

The following matters were discussed at this Hearing:

1. **The pending motion in Federal District Court in Washington to enjoin the Arbitration proceedings:**

During the Hearing, Mr. Tavakoli advised the Arbitrator that the Federal Court in Washington held a Hearing on Valve's Motion for a Preliminary Injunction to enjoin the Arbitration proceedings. According to Mr. Tavakoli, a Ruling is expected within a week, but the Court has delayed issuing a Ruling for the past 19 months. The parties have agreed to notify the Arbitrator as soon as a Ruling is provided by the Federal Court.

**Ruling:** The parties shall immediately notify the Arbitrator of the Ruling by the Federal Court including provision of a copy of the Order or Ruling to the American Arbitration Association and the Arbitrator immediately upon receipt of said Order from the Federal Court.

2. **Claimant's Motion to Compel Further Responses to Discovery from Valve:**

A lengthy discussion took place regarding Claimant's Motion to Compel Further Responses from Valve to the following discovery requests:

   I. **Exchange of information Request Number 3:**

   Claimants originally sought "The entire Federal record including declarations, affidavits, transcripts and any video or audio recordings of depositions, transcripts of testimony from, and documents produced in, In Re: Valve Antitrust Litigation (formally captioned Wolf-Fire Games and William Herbert et. al. Vs. Valve Corporation) to the full extent permitted by Arbitrator Jossen following his review of the Wolf-Fire Protective Order."

   II. **Exchange of Information Request Number 4:**

   Claimants seek "…all documents originally produced by third parties to Valve in the Federal Court litigation."

   During the discussion of Claimants discovery requests, it was discussed as to what restrictions, if any, are there that preclude Valve from giving Claimants the Federal record that Claimants have requested including documents and records produced by third parties pursuant to the Protective Order in the Federal Action. The Protective Order was reviewed by the parties and the Arbitrator and vigorous discussion took place during which various approaches were discussed as to whether third-party documents could be produced by Valve and what alternative discovery vehicles were available to Claimants. The Arbitrator explained that it is his intention to balance fairness and the opportunity to present all evidence other than that subject to legal objection while balancing the rights of third parties, who are not party to this Arbitration, given the parameters of the Protective Order in place in the Federal action.

   According to Mr. Bucher, Section 7, Page 9 of the Protective Order provides for production of the record from the Wolf-Fire case. According to Mr. Fuchs Claimant's requests seek

documents produced *by third parties* which are "highly confidential" or "attorney eyes only" under the Protective Order and Valve *cannot* produce these documents under the Protective Order as it is written.

## Documents Reviewed:

The Arbitrator has read, reviewed and considered the following documents:

1. Claimants' Motion to Compel Further Discovery [undated but sent to the Arbitrator on March 18, 2026] along with Order Re: Production of Documents [in Case No. 01-23-0005-3536] dated September 16, 2024 [signed by Arbitrator Richard R. Mainland], Exhibit "A" [list of individual Claimants], List featured in Valve's proposed R-22 Information Exchange [Exhibit "B"], Claimants' Alternative Information Exchange Requests [Exhibit "C"], Interrogatories, Claimants' Alternative Information Exchange Requests [Exhibit "D"] and, a "list of videogame distributors and/or sellers Valve considers a competitor to Steam", and a list of Companies Valve entered into an agreement for the sale or distribution of PC video games with the following game distributors and/or sellers" [Exhibit "D"];

2. Respondent's Opposition to Claimants' Motion to Compel Information Exchange along with the following documents filed concurrently thereto: [Exhibit "A"]: Claimants' Motion to Compel Information Exchange; [Exhibit "B"]: Respondent's Amended Response to Claimants Information Exchange; [Exhibit "C"]: Stipulated Protective Order in re Valve Antitrust Litigation pending in United States District Court for the Western District of Washington; [Exhibit "D"]: Order Number 8 – Order on Claimant Prescott's Motion to Compel Production in the Prescott and 24 Others Individual Claimants v. Valve Arbitration; [Exhibit "E"]: May 7, 2025 Order in Individual Claimants v. Valve Corporation Arbitration; [Exhibit "F"]: Respondent's Exchange of Information Requests in the Dudley v. Valve Corporation Arbitration; [Exhibit "G"]: Respondent's Opposition to Claimants' Motion to Compel Information Exchange (in this arbitration); [Exhibit "H"]: Valve's Amended Request for Exchange of Information from each Claimant (in this arbitration); [Exhibit "I"]: Partial transcript of Evidentiary Hearing (volume 7) dated December 16, 2025 in Peterson, Horazeck, Dawkins and Lynn Arbitrations; [Exhibit J]: partial transcript of telephonic hearing dated March 2, 2026 in this Arbitration;

3. Email dated May 15, 2026 from Will Bucher regarding procedure to be followed at the evidentiary hearing and demand to produce live testimony.

## RULING ON CLAIMANT'S MOTION TO COMPEL FURTHER DISCOVERY:

Claimants' Motions are granted in part and denied in part as follows:

### III.   Exchange of Information Request Number 3:

Claimants originally sought "The entire Federal record including declarations, affidavits, transcripts and any video or audio recordings of depositions, transcripts of testimony from, and documents produced in, In Re: Valve Antitrust Litigation (formally captioned Wolf-Fire Games and William Herbert et al V. Valve Corporation) to the full extent permitted by Arbitrator Jossen following his review of the Wolf-Fire Protective Order."

In their Motion, Claimants indicate that "Valve satisfied this request by offering Claimants documents produced in the following Arbitrations in satisfaction of Request Number 3: Gilman, Goins, and McSorley."

By their Motion, Claimants seek essentially the following:

1. Documents relied upon by Valve's experts in the Federal case;

2. Data and reports derived from NewZoo upon which Valve relied with respect to opinions provided by its experts;

3. Video recordings of the depositions of Valve's employees.

While the Arbitrator is not privy to the Federal legislation and has no knowledge as to the extent of documents and materials existing or produced in that matter, it appears, from representation of the parties, that Valve has produced a substantial amount of documentation responsive to this request.

Claimants seek to expand upon their original request and have the Arbitrator consider compelling Valve to produce documents which were *not* specifically requested in Information Request Number 3. With respect to documents relied upon by Valve's experts in the Federal case, those documents may not be relevant here if Valve utilizes other experts in this Arbitration. Should Valve designate experts to be called in this case, Claimants can request all documents Valve's experts rely upon for purposes of formulating any opinions those experts intend to offer.

There is nothing in Claimants' Request Number 3 making reference to NewZoo.

With respect to video or audio recordings of depositions of Valve employees, Valve has represented that it does not have such recordings and there is nothing to produce. Valve is ordered to provide a written Declaration verifying same.

With respect to the production of documents received from third parties, such information appears to come under paragraphs 2 (a) B (iii) and b.iii of the Stipulated Protective Order dated August 12, 2022 in the Federal action [Hereinafter, "The Protective Order"] and would appear to initially be precluded from production under paragraph 4.1 of the Stipulated Protective Order in the Federal action. Paragraph 4.1 of the Protective Order states specifically "Basic Principles. A receiving party may use confidential material and highly confidential – attorney's eyes only material that is disclosed or produced by another party or by a nonparty *in connection with this case only* for prosecuting, defending, or attempting to settle *this litigation*. Confidential material and highly confidential – attorney's eyes only material may be disclosed only to the categories of persons and under the conditions described in this agreement. Confidential material and highly confidential – attorney's eyes only material must be stored or maintained by receiving party at a location and in a secure manner that insures that access is limited to persons authorized under this agreement." [Emphasis Added.]

Paragraph 4.2 of the Protective Order clearly limits those to whom confidential and highly confidential – attorney eyes only materials can be disclosed. This paragraph does not

provide for the disclosure of confidential materials involving the parties in other litigations or arbitration.

Consequently, it would appear that Valve, by the terms of the Stipulated Protective Order, is initially precluded from producing materials received from third parties in the Federal litigation and producing same here. However, Paragraph 7 of the Protective Order addresses "Protected Materials Subpoenaed or Ordered Produced in Other Litigation". The Arbitrator will not engage in semantics here. In the Arbitrator's opinion the term "litigation" and the term "arbitration" both engender adversarial proceedings where the parties present testimony and evidence and the merits are determined by a trier of fact, whether Judge, Jury or Arbitrator. The processes, while more or less formal, are ultimately one and the same and the terms are essentially synonymous.

Paragraph 7 of the Protective Order seems to provide a procedure for the production of confidential materials produced by non-parties in the Federal litigation which is sought for production in other litigation[s] as follows:

"If a party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designate needed in this action as "Confidential" or "Highly Confidential – attorney's eyes only" that party must:

(a) Promptly notify the designating party in writing and include a copy of the subpoena or court order;

(b) Promptly notify in writing the party who because the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this agreement. Such notification shall include a copy of this agreement; and

(c) Cooperate with respect to all reasonable procedures sought to be pursued by the designating party whose confidential material or-highly confidential – attorney's eyes only material may be affected.

### RULING:

It seems to this Arbitrator that discovery of non-party produced materials is a two part process. First, a Claimant must issue a Subpoena for the requested documents. Secondly, the Protective Order requires Valve, *upon receipt of a Subpoena or an order* seeking production of documents which come within the categorizations of confidential or attorney's eyes only to follow the procedure set forth in paragraph 7 of the Protective Order where production of confidential materials produced by non-parties is sought for use in "other litigation[s]". Consequently, Valve need not respond *directly* to the exchange of information requested in Request Nos. 3 and 4. Claimant can issue a Subpoena to Valve seeking those documents and Valve must follow the procedure set forth in paragraph 7 of the Protective Order before any production need be made.

## IV.   **Exchange of Information Request Number 4:**

Claimants seek "…all documents originally produced by third parties to Valve in the

Federal Court litigation."

According to Claimant, Valve has agreed to produce approximately 150 documents produced by third parties to Valve in the Wolf-Fire action, that are not designated Attorney's eyes only or confidential.

**RULING**:

As discussed above, the Protective Order will not permit disclosure of documents originally produced by third parties to Valve in the Federal Court litigation. The Ruling with respect to exchange of information Request Number 3 is incorporated by reference herein.

**V.    Exchange of information Request Number 5(a):**

Claimants seek documents from 2011 through 2025 in the following categories:

     a.  Mergers, or "absorptions" of accounts from game developers independent game launchers and ecosystems for account authorizations into steam's game launcher and ecosystem for account authorizations.

Respondent contends that the request is overbroad in time and, while not necessarily asserted, is vague with respect to the "absorption of accounts" or "migration of accounts".

**RULING:**

This request is granted in part and denied in part. The request, as made, is overbroad in time. After considering the basis for Claimants' Request, Respondent shall produce the following documents to Claimants:

A verified response confirming that for a period commencing 5 years prior to the earliest date that a claim was filed in this matter, to the date of filing of said claim, that there has been no transfer, migration, absorption, or receipt, of Bethesda.net and/or Bethesda Launcher accounts to Steam/Valve or similar mergers or "absorptions".

**VI.    Exchange of information request number 5(c):**

Claimants seek "Documents from 2011 through 2015 in the following categories:

     b.  "Free and/or non-monetary compensation, I. E. Software/hardware vouchers, vacations, travel, invitations to use/visit valve CEO Gabe Newell's multiple yachts and other similar benefits provided to Valve's competitors, including employees of those competitors."

Valve responded by stating, in part, "[T]hat it is not aware of documentation pertaining to non-de minimis, free and/or nonmonetary compensation in the form of software/hardware vouchers, vacations, travel, invitations to use/visit Valve CEO Gabe Newell's yachts."

Claimant contends that this response is inadequate and that "Valve can make an effort to determine which competitors are also on those same yachts."

**RULING**:

Valve has responded adequately to this request by indicating that there are no documents which are responsive. Claimant can utilize an interrogatory to obtain the identity of anyone who has received the items sought in this request.

For the foregoing reason, Claimants' Motion to Compel a further response to this request is denied

## VII. Amended Special Interrogatory Number 3:

Amended Special Interrogatory Number 3 provided as follows:

In 2018, Valve told a publisher that "[w]e basically see any selling of the game on PC, Steam key or not, as a part of the same share PC market- so even if you weren't using Steam keys, we'd just choose to stop selling a game if it was always running discounts of 75% off on one store but 50% off on ours." VALVE_ANT_0265027–030, at VALVE_ANT_0265027. For each of the following PC video game sales and distribution methods, please select whether Valve considers them part of the PC video game market (commerce of video games playable on a PC). Please mark the appropriate box indicating yes or no.

PC video game sales and distribution method.

PC video games sold on websites and distributed through independent game launchers or direct downloads outside of Steam ecosystem (i.e. Escape from Tarkov and BSG launcher)

PC video games sold and distributed through game launchers/online storefronts that offer games from multiple developers (i.e. Epic Games Store and launcher, gog.com and GOG Galaxy launcher)

PC video games sold and distributed by online storefronts by providing Steamkeys (i.e. Amazon.com, g2a) PC video games sold and distributed by online storefronts by providing non-Steamkey keys or direct downloads such as Epic Games launcher keys, gog.com keys, Microsoft Store keys (i.e. HumbleBundle and Amazon gaming)

PC video games sold and streamed through the cloud (i.e. Amazon Luna and Nvidia GeForce Now)

PC video games sold and distributed by brick and mortar stores via physical boxes with a SteamKey inside. (i.e. Gamestop, BestBuy, and Target)

PC video games sold and distributed by brick and mortar stores via physical boxes

containing physical media such as USB drives or CD-ROMs."

Valve's response states in part:

"…Valve disputes that the relevant market is the "PC market" or "PC video game market" or "PC game sales and distribution market" or "commerce of video games playable on a PC….Subject to and without waiver of these objections, Valve answers as follows:

Valve considers each of the items referenced in Amended Interrogatory No. 3's chart to be a potential competitor to Steam to the extent that the entities described sell or distribute video games or content, whether directly or via keys. See infra Valve's Original Response to Interrogatory No. 5 for examples within each of these categories…."

### RULING:

The Arbitrator finds that Valve has adequately responded to this interrogatory by acknowledging that each of the descriptions is a potential competitor to Steam to the extent that those entities sell or distribute video games or content. No further response need be given by Valve to this interrogatory and Claimants' Motion as to this interrogatory is denied.

## VIII. AMENDED SPECIAL INTERROGATORY #4:

Claimants' interrogatory states:

"The Epic Games Store Presentation from 2019 states that Steam had a 95%+ market share of all third-party digital PC games sales. EPIC_VALVE_0000013–057, at EPIC_VALVE_0000021. What is Valve's best estimate of its market share in the PC game distribution market, and how did Valve calculate that estimate? As ordered by Arbitrator Jossen's November 4 order."

Valve's Response (incorporating its original response) states:

"This Interrogatory rests on the assumption or contention that a separate "PC game distribution market" exists and that Valve participates in that market. These assumptions or contentions have not been established or proven and Valve does not concede or adopt them through its response here. Regardless of market definition, Valve does not in the ordinary course make estimates of Steam's market share and therefore has no responsive information to provide. Valve otherwise objects to this Interrogatory to the extent that it would call for Valve to perform new work, make new estimates or calculations, or prematurely provide information that is the subject of expert testimony (which will be disclosed in accordance with AAA rules and any applicable scheduling order or agreement). In addition to its Original Response to Interrogatory No. 4, Valve further responds as follows: Interrogatory No. 4 quotes from a document (EPIC VALVE 0000013-057) produced by third-party Epic Games, not Valve, in In re Valve Antitrust Litigation, Case No. 2:21-cv-00563-JCC (W.D. Wash.). Epic Games marked this document as Attorney's Eyes Only and thus Valve does not have access to it.

**RULING:**

This interrogatory fails to specify a time period or point of reference for a provision of Valve's best estimate of its market share in the PC game distribution market and further fails to provide a definition for "PC game distribution market". Valve further disputes "that the PC market exists".

The parties shall meet and confer in order to determine a point of reference for a response to this interrogatory and the interrogatory shall be interpreted such that the term "PC game distribution market" shall include each of the descriptions contained in Amended Special Interrogatory Number 3 above which Valve concedes is a competitor to S 90 team to the extent that those entities sell or distribute video games or content. If Valve has no internal estimates which are responsive to this request, it shall provide a verified response accordingly.

Claimants' Motion is granted in part as set forth above.

## IX.  AMENDED SPECIAL INTERROGATORY #5:

Claimants' interrogatory states:

"The Epic Games Store Presentation from 2019 states that "no PC store with nonexclusive content has built market share over 2%." EPIC_VALVE_0000013–057, at EPIC_VALVE_0000021 (cleaned up). Since 2014, which companies are Valve's competitors in PC game sales and distribution? [Re-propounded as Amended Special Interrogatories #5, #6, and #7, per Arbitrator Jossen's November 4, 2025 Order]."

Valve's Response (incorporating its original response) is as follows:

"The document referred to in the Amended Interrogatory No. 5 was not produced by Valve. It is unclear what the relationship is between Claimants' statement with respect to this document and the question posed to Valve in this Amended Interrogatory No. 5. Valve objects to this Interrogatory on the grounds that it purports to define a relevant market as the market for "PC game sales and distribution" and to have Valve adopt that market definition, which Valve declines to do because market definition is a disputed issue and is the subject of expert testimony. Valve also objects to this Interrogatory to the extent that it would call for Valve to perform new work or prematurely provide information that is the subject of expert testimony (which will be disclosed in accordance with AAA rules and any applicable scheduling order or agreement).

Subject to and without waiver or limitation of the foregoing objections, Valve responds as follows: Every video game distributor and/or seller is potentially an alternative to Steam and could be considered to compete with Steam when distributing or selling video games. From January 1, 17 2014, to the present, examples included, but are not limited to, the examples listed in Valve's Original Response to Interrogatory No. 5."

**RULING:**

Valve has identified 46 game distributors and/or sellers from January 1, 2014 to the present in its response to the original interrogatory. Valve is ordered to provide a further response which indicates whether each entity listed is considered by Valve to be a competitor to Steam in the sale or distribution of PC video games or content, notwithstanding the manner in which such materials are sold or distributed.

## X.    AMENDED SPECIAL INTERROGATORY #6:

Claimants' interrogatory states:

"For each of the companies identified in Special Interrogatory #5, please identify whether Valve has entered into any agreement for the sale or distribution of PC video games in table format similar to the table in Special Interrogatory #3, with columns for yes and no.

Valve's Response:

"Valve objects to this Interrogatory on the grounds that it purports to define a relevant market as the market for "PC game sales and distribution" and to have Valve adopt that market definition, which Valve declines to do because market definition is a disputed issue and is the subject of expert testimony. Subject to and without waivers of this objection, Valve responds as follows: Valve, as Claimants' counsel is aware, makes agreements regarding distribution on Steam of games made or published by entities that may also be competitors in distributing games and may be listed in Special Interrogatory #5. Beyond those agreements, Valve does not make agreements with such competitors regarding how they or Valve distribute or sell games or content. In addition, Valve has made agreements with Nintendo, Sony and Microsoft to ship certain Valve games on Xbox, PlayStation, and Nintendo."

Valve contends that its response is complete and states "to the extent that the entity is acting as a steam partner (I. E., Working with valve to sell its games on steam in the capacity of the developer/publisher), that entity is not acting as a competitor to steam. To the contrary, to the extent that the entity is running their own stores 1/3 party distributor or self-distributing directly to consumers as a first party seller, that entity is acting as competitor of Steam."

With respect to the 46 entities identified by Steam, Respondent shall provide a further response indicating whether it has entered into any agreement for the sale or distribution of PC video games with each named entity. This can be provided simply by identifying the entity and responding "yes" or "no".

All responses provided by Respondent should be as full and complete as possible. A responding party is required to provide complete and straightforward answers to interrogatories based on all information reasonably available. A party must furnish all responsive information within their knowledge or reasonably available to them. If they are unable to respond, they shall so state.

## SCHEDULING OF EVIDENTIARY HEARING:

### Type of Hearing

The Zwick matter will be the first Arbitration to proceed in these 23 individual Arbitrations.

__X__ An **in-person/Video/Hybrid evidentiary hearing** in the Zwick matter will commence before the Arbitrator at 9:00 AM on July 13, 2026 to July 17, 2026 by Zoom or at a location to be determined for an estimated 5 day(s) of hearing time, inclusive of arguments. If additional time is needed the parties are ordered to meet and confer and the Arbitrator will endeavor to accommodate all parties. If live testimony in person is to be provided, the parties are ordered to so advise the Arbitrator and meet and confer as to location [such as AAA offices] in order to make arrangements at least 30 days before the Arbitration.

Each party will be given approximately 20 hours to present their positions. The parties must provide the hearing information to all required participants and are encouraged to provide a schedule detailing the order in which participants and witnesses will be called upon.

Hybrid methods agreed to by the Arbitrator and parties [for each respective Claimant, as applicable]:

__X__ Telephone – AAA Case Administrator will provide the conference call information within the Notice of Hearing.

__X__ In-Person – Location: To Be Determined in advance if desired by the parties.

__X__ Videoconference will be hosted by:

__X__ Claimant or Respondent through ZOOM.

### Witnesses for Hearing

**No later than thirty [30] days** *before* **this Evidentiary Hearing as scheduled above, the parties shall serve and file a disclosure of witnesses, including any experts reasonably expected to be called at the Hearing. The disclosure of witnesses shall include the full name of each witness and a summary of anticipated testimony.** If certain required information is not available, the disclosure shall so state.

NOTE: The parties must provide the hearing information to all required participants and are encouraged to provide a schedule detailing the order in which participants and witnesses will be called at the Zwick Hearing.

Pursuant to the Order of January 20, 2026, absent agreement to the contrary or stipulation of the parties, all testimony in the Zwick Arbitration, [which shall be the first Arbitration in this collection of cases], shall be provided by live testimony. That includes Claimant[s]. At this Arbitration Valve shall produce the following witnesses:

1. Augusta Butlin;
2. Tom Giardino;
3. Nathaniel Blue;
4. Kassidy Gerber.

## WebFile® Hearing Exhibits

The parties and arbitrator(s) agree to utilize the WebFile® Hearing Exhibits space to transmit hearing exhibits instead of exchanging hard or electronic copies. **The arbitrator will activate the use of this space. Hearing exhibits, including any joint exhibits, are due no later than 15 days before the hearing**, as scheduled above

- The AAA does not require a copy of the hearing exhibits and will not maintain these exhibits within the case file.
- Each party shall bring sufficient copies to the hearing for the arbitrator(s), the other party, and the witness.
- The parties shall attempt to agree upon and submit a jointly prepared consolidated and comprehensive set of joint exhibits.
- Each proposed exhibit shall be pre-marked for identification using the following designations:

| Party | Exhibit # | To Exhibit # |
|---|---|---|
| Claimant | C1 | C250 |
| Respondent | R1 | R250 |
| Joint | J1 | J500 |

If more exhibits are required, the parties will be accommodated and not limited to the numbers set forth here.

This Order shall continue in effect unless and until amended by subsequent order of the Arbitrator.

_6/4/26_
Date

_Sanford Jossen, Arbitrator_