EXHIBIT A

THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE VALVE ANTITRUST LITIGATION

No. 2:21-cv-00563-JNW

**[PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE OPPOSING VALVE'S MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER**

[PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE OPPOSING VALVE'S
MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER
(No. 2:21-cv-00563-JNW)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................2

ARGUMENT ...............................................................................................................3

      A.    Valve's Motion for Clarification Is Not A Midstream Appeal of Arbitrator Mainland's Discovery Order.........................................................3

      B.    Valve's Motion Is A Proper Request For Clarification. .............................4

      C.    Article III Does Not Bar Valve's Motion. ..................................................7

CONCLUSION.............................................................................................................9

[PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE OPPOSING VALVE'S
MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER
(No.2:21-cv-00563-JNW) – 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**INTRODUCTION**

On May 3, 2026, AAA Arbitrator Richard Mainland issued an order directing Valve to produce documents received from Plaintiffs and third parties in discovery in this action designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" under the protective order issued by this Court ("Protective Order") ("Mainland Order"). Valve believes that complying with the Mainland Order would cause Valve to violate the Protective Order. Accordingly, on May 29, 2026, Valve Corporation ("Valve") filed the Motion for Clarification Regarding Protective Order (the "Motion for Clarification"), seeking the Court's guidance as to its obligations under the Protective Order. Specifically, Valve seeks clarification as to whether Section 7 of the Protective Order permits Valve to produce confidential documents produced by Plaintiffs and third parties in this action to claimants in private arbitration, in which neither Plaintiffs nor the third parties who produced documents are parties.[1]

The Motion for Clarification is the appropriate procedural mechanism to obtain such clarification because this is the court that issued and would enforce the Protective Order. Courts in the Ninth Circuit (including this very Court) grant motions for clarification where, as here, a court's order is subject to differing interpretations or where a party is uncertain about the scope of the order or its obligations thereunder. *See, e.g.*, *O.H. v. Secret Harbor*, No. 2:23-cv-60, 2024 WL 664405, at *1 (W.D. Wash. Feb. 16, 2024) (Whitehead, J.) ("[M]otions for clarification are appropriate when parties are uncertain about the scope of a ruling or when the ruling is reasonably susceptible to differing interpretations." (citation omitted)).

Amici curiae, the twenty-five consumers prosecuting individual arbitrations against Valve before Arbitrator Mainland ("*Amici*"), claim to have an interest in the interpretation of the Protective

---

[1] The 25 claimants here are among thousands of arbitration claimants represented by *Amici*'s counsel who have or will seek such documents. We also note that this Court recognized that *Amici's* counsel's "continued representation of individual consumers in arbitration against Valve creates concerns about divided interests." (ECF. No. 441, at 7-9.) This conflict is present here, as *Amici*'s counsel is taking action that does not appear to be in the best interests of the certified and putative classes pending before this Court.

[PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE OPPOSING VALVE'S MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER (No.2:21-cv-00563-JNW) – 2

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Order.[2] However, they chose not to use Federal Rule of Civil Procedure 24 (permissive intervention) or an *amicus* brief to ask this Court to interpret the Protective Order consistent with their views. Rather, *Amici* ask the Court to *not decide* the merits of the Motion for Clarification on procedural grounds. For the reasons set forth below, each of these arguments is without merit and contrary to well-settled law.

**ARGUMENT**

*Amici* raise four procedural arguments in an effort to prevent the Court from granting the Motion for Clarification. First, *Amici* argue that Valve's motion is a midstream appeal of the Mainland Order. Second, *Amici* argue that Valve's motion is not a proper request for clarification. Third, *Amici* argue that Valve's motion presents no Article III case or controversy. Fourth, *Amici* argue that Valve's motion is an advisory opinion forbidden by Article III. None of these arguments have merit for the reasons described below and the Motion for Clarification should be granted. Further, the fact that *Amici* are trying to prevent this Court from deciding the Motion for Clarification is a tacit concession that Valve's interpretation of Section 7 of the Protective Order is correct.[3]

**A.** **Valve's Motion for Clarification Is Not A Midstream Appeal of Arbitrator Mainland's Discovery Order.**

*Amici* argue that Valve's Motion for Clarification is a mid-arbitration review or form of interlocutory appeal of the arbitrator's orders. (Br. at 10-13.) This argument misstates the nature of Valve's motion and the relief that Valve seeks.

Valve does not ask this Court to overturn or change Arbitrator Mainland's decision. The Motion for Clarification only seeks to clarify *Valve's obligations* under the *Protective Order*.

---

[2]   *Amici* do not have a direct interest in the interpretation of the Protective Order because they are not parties in this case receiving confidential documents or third-parties producing documents thereunder. Rather, *Amici* hope to use the Protective Order to their advantage by requiring Valve to produce confidential documents of parties and third-parties to this action in the arbitrations. This entire exercise could have been avoided if *Amici* sought documents directly from the parties and third parties whose documents are at issue. Valve has been unnecessarily thrust into an untenable position.

[3]   None of the parties or third parties whose documents are being sought in arbitration have opposed Valve's motion or objected to its interpretation of Section 7, implying their agreement with it.

---

[PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE OPPOSING VALVE'S
MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER
(No.2:21-cv-00563-JNW) – 3

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Specifically, Valve seeks to clarify its obligations pursuant to its understanding that the procedure set forth in Section 7 of the Protective Order for disclosing documents designated as "Confidential" or "Highly Confidential – Attorney's Eyes Only" is limited to subpoenas and orders issued by courts and does not include arbitral orders. (ECF No. 607-1, Proposed Order at 2.)

Valve's Motion for Clarification is not an appeal of any kind. Nor does the motion request that the Court overturn or interfere with arbitrators' orders or enjoin any arbitrator from enforcing arbitral discovery orders in their tribunals. For this same reason, *Amici's* argument that Valve's motion "asks this Court to countermand the arbitrator's discovery ruling" is inaccurate. (Br. at 11.) Arbitrator Mainland, as with all other arbitrators, will decide whether to enforce the Mainland Order and issue any discovery order, regardless of this Court's opinions or rulings. *Amici* even acknowledge that this Court cannot vacate or modify the Mainland Order. (Br. at 7, 9.)

The authorities that *Amici* cite all involve requests to review and vacate arbitrators' decisions or other inapplicable scenarios, none of which involve a court clarifying its own order. Thus, *Amici*'s authorities are inapposite. *See, e.g., In re Sussex*, 781 F.3d 1065, 1076 (9th Cir. 2015) (granting writ of mandamus in response to district court's mid-arbitration intervention to remove arbitrator for partiality); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1133-34 (9th Cir. 2003) (reviewing district court's refusal to modify a protective order to allow access to sealed records); *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635-38 (7th Cir. 2011) (holding that district court could not direct arbitrator to de-consolidate arbitrations); *Aerojet-Gen. Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973) (holding that a district court can properly consider immediate judicial review of arbitrator's selection of location for the hearing in extreme cases).

### B.   Valve's Motion Is A Proper Request For Clarification.

*Amici* argue that this Court should not consider the Motion for Clarification because there is no ambiguity in the Protective Order. However, *Amici* misstate the legal standard and ignore that there are differing interpretations of the Protective Order.

---

[PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE OPPOSING VALVE'S MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER (No.2:21-cv-00563-JNW) – 4

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Consistent with other courts in the Ninth Circuit, this Court has held that "motions for clarification are appropriate when parties are uncertain about the scope of a ruling or when the ruling is reasonably susceptible to differing interpretations." *O.H. v. Secret Harbor*, No. 2:23-cv-60, 2024 WL 664405, at *1 (W.D. Wash. Feb. 16, 2024) (Whitehead, J.) (quoting *N. Alaska Env't Ctr. v. Haaland*, No. 3:20-cv-00187-SLG, 2023 WL 3661998, at *3 (D. Alaska May 25, 2023)); *see also Harvey v. Means*, No. 2:23-cv-1712, 2024 WL 229581, at *2 (W.D. Wash. Jan. 22, 2024) (Whitehead, J.) (granting motion for clarification to require exchange of exhibits within 24 hours); *Yellow Rose Prods., Inc. v. Pandora Media, LLC*, No. 2:22-cv-809-MCS-MAR, 2023 WL 6932560, at *2 (C.D. Cal. Sep. 29, 2023) (granting plaintiffs' motion for clarification of the court's protective order where "both parties have reasonable, yet conflicting interpretations"). Courts in the Ninth Circuit have also granted motions for clarification specifically regarding uncertain interpretations of protective orders. *See, e.g.*, *Disability Rts. Wash. v. Meneses*, No. 3:22-cv-05651-RJB, 2024 WL 278975, at *2-4 (W.D. Wash. Jan. 25, 2024) (granting a motion to clarify a protective order as it pertained to disclosing a nonparty's protected information).[4]

Here, the Protective Order is apparently susceptible to differing interpretations, creating uncertainty about its scope. As set forth in the Motion for Clarification, the plain language of the Protective Order appears to prohibit Valve from producing documents third parties produced in this case and designated Confidential or Highly-Confidential Attorney's Eyes Only under the Protective Order except in certain limited circumstances that do not apply to arbitrations. Neither Plaintiffs nor the third parties whose documents are sought in arbitration opposed Valve's motion or objected to Valve's interpretation, implying their agreement with it. On the other hand, counsel for the proposed

---

[4]   *See also United States v. Bowman*, No. 1:19-cr-000158-DCN, 2024 WL 730085, at *1, *4 (D. Idaho Feb. 22, 2024) (granting a motion for clarification as to whether and how the court's protective orders applied to specified conduct going forward); *United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 1459444, at *5-6 (N.D. Cal. Apr. 9, 2010) (granting a motion "for clarification or modification" of a protective order and clarifying the scope of counsel's obligations under it); *Broussard v. Violet*, 1989 WL 251405, at *1-2 (C.D. Cal. Oct. 11, 1989) (granting a "motion to clarify the protective order" and clarifying that the order "does not prevent any party from disclosing any information or document independently acquired from third-party sources").

---

[PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE OPPOSING VALVE'S MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER (No.2:21-cv-00563-JNW) – 5

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Amici* have urged a contrary interpretation that permits their thousands of arbitration clients to obtain third-parties' confidential documents through Valve. Most arbitrators have not accepted that interpretation. For example, Arbitrators Gilman and Morrill have agreed with Valve. (Exs. 1 and 2.)

Some arbitrators, including Arbitrator Mainland, have accepted *Amici's* counsel's contrary interpretation of the Protective Order. However, even these arbitrators have acknowledged the difficulty of interpreting the Protective Order. For example, Arbitrator Mainland acknowledged that "it's an issue that can go either way." (Ex. 3, October 31, 2024 Tr. at 40:4-5.) Likewise, Arbitrator Jossen recognized that the issue was "very, very, very complex" and that he was "grappling with it" (Ex. 4, May 27, 2026 Conference Tr. at 52:8-16), and even "perplexed" by it (*id.* at 132:21-25), as it was his view that the Protective Order did not "contemplate [the] circumstance [of arbitration]" (*id.* at 75:16-25, 78:6-10.) Even *Amici's* counsel has admitted that Valve's reading of the Protective Order was reasonable, stating: "I'm not saying that Valve Corporation's reading is, you know, unintelligible or makes no sense." (Ex. 3 at 42:2-5.)

Given the Protective Order has been susceptible to differing interpretations, the Motion for Clarification is both appropriate and necessary for Valve to clarify *its obligations* under the Protective Order. *Amici*'s other arguments can be quickly dispatched.

*Amici* argue that Valve's choice of forum robs *Amici* of the "ordinary procedural rights of parties" (Br. at 15), and that they "face the prospect of an order . . . in this proceeding where they cannot respond as parties or appeal as a right" (Br. at 1.) This is just a variation of the flawed argument that the Motion for Clarification is a midstream appeal of the Mainland Order. As set forth *supra*, this Court is the appropriate forum to interpret and clarify *its own order* and *Valve's obligations thereunder*. It is also worthwhile to note that *Amici's* counsel has unambiguously represented to one arbitral tribunal that it was the correct approach to seek guidance from this Court as the Court that issued the Protective Order. When advocating for an order requiring Valve to produce documents that third-parties produced in this case and designated Confidential or Highly-Confidential Attorney's Eyes Only under the Protective Order, *Amici*'s co-counsel said: "But look,

[PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE OPPOSING VALVE'S
MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER
(No.2:21-cv-00563-JNW) – 6

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

if I'm wrong, and you issue the order, Valve has a clear remedy *in front of one tribunal. They go back to that exact judge*" who "*signed this protective order.*" (Ex. 4 at 92:1-3(emphasis added).)[5]

It is also telling that *Amici* could have sought to intervene in this action for the limited purpose of making their interpretation of the Protective Order known to the Court, which would obviate all or most of their supposed concerns, or used their proposed *amicus* brief for that same purpose. *Amici* chose not to do so.

Finally, *Amici* argue that the timing of Valve's Motion for Clarification demonstrates that it is improper. (Br. at 15.)[6] That is factually inaccurate as Valve made its Motion for Clarification several weeks after Arbitrator Mainland first issued an order that Valve believes would require it to violate the Protective Order. Although *Amici's* counsel has sought these documents in numerous arbitrations, the issue had not previously reached a point where it was necessary to burden this Court with a motion for clarification. In any event, the argument that Valve could have sought clarification earlier is irrelevant because there is an actual need for clarification at the present time.

**C.    Article III Does Not Bar Valve's Motion.**

*Amici* make two separate arguments that Article III bars Valve's Motion for Clarification: (1) Valve's motion presents no Article III case or controversy (Br. at 5-8), and (2) Valve seeks an advisory opinion forbidden by Article III (Br. at 8-10). Neither has merit.

**1.    Valve's Motion Does Not Lack An Article III Case Or Controversy.**

*Amici* argue that Article III prohibits this Court from clarifying its own order because there is no case or controversy. (Br. at 5-8.) However, tellingly, none of *Amici's* cited cases stand for this

---

[5]    *Amici* argue that Valve's Motion for Clarification should have instead been brought in *Valve Corp. v. Abbruzzese*, No. 2:24-cv-01717-JNW (W.D. Wash.), where *Amici* are parties. However, the *Abbruzzese* court bears no relationship to the Protective Order. It cannot clarify an order that it did not enter and parties to the Protective Order and third-parties that produced documents thereunder have not appeared or been involved in *Abbruzzese.*

[6]    *Amici* argue that Valve should have brought this motion in September 2024. (Br. at 15-16.) Although wrong, this concedes the presence of a live controversy even two years ago and thus undermines *Amici's* Article III standing arguments.

---

[PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE OPPOSING VALVE'S
MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER
(No.2:21-cv-00563-JNW) – 7

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

proposition.[7] To the contrary, well-settled Ninth Circuit authority squarely permits courts to clarify their own orders where an order is subject to multiple interpretations or where the scope of a party's obligations under the order is unclear. *See supra* at Sec. B. Some courts have addressed and rejected the argument that Article III precludes a party from seeking clarity from the court regarding an order to avoid "unwitting contempts." *See, e.g.*, *Abelyan v. OneWest Bank*, No. CV 09-7163 CAS (AGRx), 2011 WL 2357654, at *1 (C.D. Cal. June 13, 2011) ("[A] person subject to an injunction always has the right to ask the court that is administering it whether it applies to conduct in which the person proposes to engage. If this looks like a request for an 'advisory opinion,' it is one that even a federal court can grant, in order to prevent unwitting contempts." (citation omitted)).[8]

In any event, even if the Article III case or controversy requirements applied in the way *Amici* argue, Valve is not asking the Court for guidance on some hypothetical set of facts or outcomes. Valve presently faces immediate conflicting obligations under both the Mainland Order and this Court's Protective Order. *See supra* at Sec. B. And Valve's concerns about sanctions for violating the Protective Order are not "imaginary or speculative." (Br. at 7.) A party to a protective order is bound to comply with it. Courts in the Ninth Circuit have sanctioned parties for violating protective orders. *See, e.g.*, *Leftenant v. Blackmon*, No. 2:18-CV-01948-EJY, 2022 WL 363841, at *2 (D. Nev. Feb. 7, 2022) (awarding sanctions based on violations of the court's protective order); *Play Visions, Inc. v. Dollar Tree Stores, Inc.*, No. C09-1769 MJP, 2011 WL 2292326, at *6-9 (W.D. Wash. June 8, 2011) (imposing sanctions on the plaintiff and its counsel for discovery misconduct, including an

---

[7] Notably, none of *Amici's* cited cases are decided in the context of a motion for clarification of a court's own order or administration of an injunction, but rather recite the general principles of Article III. For example, *Lion Manufacturing Corp. v. Kennedy*, 330 F.2d 833, 840 (D.C. Cir. 1964), found, unremarkably, that a complaint presented no case or controversy where the plaintiffs alleged only a generalized fear that the Attorney General may enforce a law against them, rather than an actual concrete threat to plaintiffs in particular.

[8] For this very reason, *Amici's* arguments that Valve's requested relief cannot redress any "injury from the arbitral production order" and that there is no "adverse dispute" or adverse parties before the Court (Br. at 6-8), both misstates the law and misconstrues the limited relief that Valve seeks (i.e., clarification of *Valve's obligations* under the Protective Order).

---

[PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE OPPOSING VALVE'S
MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER
(No.2:21-cv-00563-JNW) – 8

undisputed protective-order violation where counsel provided a damages expert with confidential materials without giving the advance notice required by the protective order).[9]

### 2.    Valve's Motion Is Not An Advisory Opinion Forbidden By Article III.

*Amici* also argue that Valve's Motion for Clarification is an improper advisory opinion "forbidden by Article III." (Br. at 8-10.) This Article III standard does not apply to motions for clarifications of a court's own order for the reasons discussed *supra*. Courts also acknowledge that, even if a motion for clarification *appears* like an advisory opinion, a federal court *always* has "discretion to clarify" (and in fact *should* clarify) its own orders or injunctions "if a party enters upon transactions which raise doubts as to [its] applicability." *See, e.g., Pac. Bioscience Lab'ys, Inc. v. Home Skinovations, Inc.*, No. C15-0689JLR, 2017 WL 1179392, at *3 (W.D. Wash. Mar. 30, 2017) ("A party 'subject to an injunction always has the right to ask the court that is administering it whether it applies to conduct in which the person proposes to engage[,]'" and "[t]o the extent that such a motion for clarification 'looks like a request for an 'advisory opinion,' it is one that even a federal court can grant, in order to prevent unwitting contempts" (citation omitted)); *see also Abelyan*, 2011 WL 2357654, at *1 (same).[10]

### CONCLUSION

For the reasons set out above, *Amici's* attempt to prevent the Court from clarifying the meaning of Section 7 of the Protective Order and Valve's obligations thereunder should be rejected.

DATED this 29th day of June 2026

---

[9]    *Amici* imply that no third-parties have objected to their documents being produced in the arbitrations to counsel for the *Amici*. That is false, although unnecessary to further address here.

[10]    Even if the Article III standard somehow was relevant, *Amici's* own authority acknowledges that an advisory opinion is "an opinion advising what the law would be upon a hypothetical state of facts." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citation omitted). There is nothing "hypothetical" about the conflicting obligations Valve presently faces under both the Mainland Order and this Court's Protective Order.

---

[PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE OPPOSING VALVE'S
MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER
(No.2:21-cv-00563-JNW) – 9

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

I certify that this memorandum contains 3,097 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

*s/ Blake Marks-Dias*

Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Rakesh Kilaru, *Admitted Pro Hac Vice*
James Rosenthal, *Admitted Pro Hac Vice*
Max Warren, *Admitted Pro Hac Vice*
David Friedman, *Admitted Pro Hac Vice*
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
Fax: (202) 847-4005
rkilaru@wilkinsonstekloff.com
jrosenthal@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com
dfriedman@wilkinsonstekloff.com

Keri L. Arnold, *Admitted Pro Hac Vice*
Ralia E. Polechronis, *Admitted Pro Hac Vice*
Caroline Li, *Admitted Pro Hac Vice*
WILKINSON STEKLOFF LLP
130 West 42nd Street, 24th Floor
New York, New York 10036
Tel: (212) 294-8910
Fax: (202) 847-4005
karnold@wilkinsonstekloff.com
rpolechronis@wilkinsonstekloff.com
cli@wilkinsonstekloff.com

*Attorneys for Defendant Valve Corporation*

[PROPOSED] RESPONSE TO BRIEF OF AMICI CURIAE OPPOSING VALVE'S
MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER
(No.2:21-cv-00563-JNW) – 10

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# EXHIBIT 1



**AMERICAN ARBITRATION ASSOCIATION®** | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

## May 7, 2025 ORDER

AAA Case Nos. 01-23-0005-7451 & 01-23-0005-7459

Individual Claimants (see case numbers above)
-vs-
Valve Corporation d/b/a Steam

This matter comes before the undersigned Arbitrator upon (1) the Motion for Partial Summary Judgment ("Motion") filed by the Individual Claimants and (2) the Request of the Individual Claimants for the production of the FRCP 30(b)(6) deposition taken of Wolfire Games, LLC (the "Wolfire Deposition") in the *In re Valve Antitrust Litigation* pending in the United States District Court for the Western District of Washington as Case. No. 2:21-cv-00563-JCC ("*Wolfire*"). Having considered all submissions, arguments, and authorities by the parties in association with these matters, the Arbitrator hereby rules as follows:

The background in these cases is well known by the parties and has been documented elsewhere. It is not necessary to recount it here, and – given that the hearings are set to begin Monday – it would be counterproductive to write a lengthy order revisiting such matters and explaining all of the Arbitrator's reasoning. Instead, the Arbitrator's rulings are briefly summarized and set forth below.

## I.    MOTION FOR PARTIAL SUMMARY JUDGMENT

By their Motion, Claimants asked the Tribunal to make the following findings:

1) That Valve is liable for *per se* violations of the Sherman Act by engaging in and enforcing illegal pricing agreements with its competitors.

2) That Valve is liable for *per se* violations of the Sherman Act by engaging in and enforcing illegal post-and-hold requirements with its competitors.

3) That the statute of limitations for the filing of these claims was tolled by the *Wolfire* class, filed in the Western District of Washington at Seattle on April 27, 2021.

The first two requested findings were addressed and denied by prior Order issued April 28, 2025. At that time, the Arbitrator reserved the third request for further briefing by the Parties. That briefing has now been completed and reviewed. Accordingly, this Order addresses that sole remaining issue, and GRANTS Claimants' request for a tolling finding. Among other reasons justifying the finding that the filing of Claimants' claims was tolled by the filing of *Wolfire*, Valve itself represented this was the case in its lawsuit against Claimants in the United States District Court, Western District of Washington at Seattle, seeking to enjoin their arbitrations. *See* Valve Corporation's Memorandum of Points and Authorities in Support of Petition to Enjoin Arbitrations, Case No. 2:24-cv-1717, filed October 18, 2024 at docket n. 2, United States District Court, Western District of Washington at Seattle. Valve's opposition does not dispute having made this representation (and it is reflected in the public record from that case) nor does it even attempt any explanation or argument to show why Valve should be permitted to take a contrary position now. Moreover, Valve's

representation to the federal court is correct. Under *American Pipe,* tolling applies as of the filing of *Wolfire* on April 27, 2021. *See American Pipe Construction Co. v. Utah*, 414 U.S. 538, 554 (1974).

## II.    WOLFIRE DEPOSITION

In the April 30, 2025, prehearing conference held in these matters, Claimants asked to receive a copy of the Wolfire Deposition. The request was untimely, but the Arbitrator requested submissions from the parties, including a copy of the Protective Order from *Wolfire*, to further inform her decision. Upon review of the materials, the Arbitrator has determined that Claimants' belated request is, in part, prejudicial due to the terms of the Protective Order that applies to portions of the Wolfire deposition.

Thus, having reviewed the Protective Order and other submissions by the parties, Claimants' request is GRANTED IN PART and DENIED IN PART. Valve is not required to produce any portions of the Wolfire Deposition that were designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY by Wolfire or any party other than Valve. By May 9, 2025, Valve shall produce the remaining portions of the Wolfire Deposition transcript (*i.e.,* those that have not been designated under the *Wolfire* Protective Order or have only been designated by Valve under the *Wolfire* Protective Order) to Claimants.

## III.    CONCLUSION

In summary:

(1)    Claimants' Motion for a finding that the statute of limitations for the filing of these claims was tolled by the April 27, 2021 filing of *Wolfire* is GRANTED.

(2)    Claimats' request for production of the Wolfire Deposition is GRANTED IN PART and DENIED IN PART as follows:

> (a) By May 9, 2025, Valve shall produce any portions of the Wolfire Deposition that either have not been designated under the *Wolfire* Protective Order or have only been designated by Valve under the *Wolfire* Protective Order.

> (b) Valve is not required to produce any portions of the Wolfire Deposition that were designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY by Wolfire or any party other than Valve.

**SO ORDERED.**

Dated: May 7, 2025

Arbitrator Signature: _____
                              Stacey Gilman, Arbitrator

EXHIBIT 2

**AMERICAN ARBITRATION ASSOCIATION**
**COMMERCIAL ARBITRATION TRIBUNAL**

**STEVEN PRESCOTT AND 24 OTHER INDIVIDUAL CLAIMANTS**
**V.**
**VALVE CORPORATION D/B/A STEAM**
**AAA CASE NO. 01-23-0005-2943**

**ORDER NO. 8**
**ORDER ON CLAIMANT PRESCOTT'S MOTION TO COMPEL PRODUCTION**

This case is one of twenty-five arbitrations against Valve brought under the Mass Arbitration Supplementary Rules effective August 1, 2023, in conjunction with the Consumer Arbitration Rules of the American Arbitration Association (AAA), all with identical or near identical Demands for Arbitration except for particulars of the claimant and the amount of money in dispute, and all assigned to the undersigned Arbitrator. A list of the cases assigned to this Arbitrator is attached as Attachment A.

**PRESCOTT'S MOTION TO COMPEL PRODUCTION**

Claimant Prescott moves for an order compelling Valve to produce "communications, agreements, and data exchanged between Valve and third-party game developers and publishers disclosed in the federal litigation styled *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JCC (W.D. Wash.), as requested in Claimant's Request for Information Exchange" and states that he is "seeking documents Valve disclosed or relied upon in the In re Valve Antitrust Litigation matter, including communications, agreements, and data exchanged between Valve and third-party game developers and publishers." Respondent Valve takes a narrower view of what is in dispute: "This dispute is not about Valve's own documents or information, nor any confidentiality designations that Valve made. Instead, Claimants are demanding that Valve give them documents produced by third parties in response to third party subpoenas in the *Wolfire* case." Thus, Prescott implies that Valve is refusing to produce all materials designated under the

1

*Wolfire* protective order, whether produced by Valve or third parties, and Valve claims that it is only documents produced and designated by third parties that it is not producing.

For the reasons discussed below, Prescott's motion is denied in part and granted in part,

**MATERIALS DESIGNATED AS CONFIDENTIAL AND PRODUCED BY THIRD PARTIES**

Materials designated as confidential and produced by third parties in the *Wolfire* litigation and not otherwise available to Valve will be discussed first.  A third party producing information, documents, or tangible things ("materials") in the *Wolfire* case may designate them as "Confidential" or "Highly Confidential – Attorney's Eyes Only" under the *Wolfire* Protective Order.  ₽ 5.1.  Under ₽ 4.1, a party may use such designated materials "only for prosecuting, defending, or attempting to settle **this** litigation" and may disclose them only to limited categories of individuals, which do not include the Arbitrator or Prescott's counsel here.

The *Wolfire* Protective Order makes a limited exception to these limitations in ₽ 7 in the case of "subpoenas or court orders in other litigation."  "Litigation" generally and as used in the *Wolfire* Protective Order does not include arbitration, and thus it would be a violation of the Protective Order for Valve to produce materials designated as confidential and produced by third parties in the *Wolfire* litigation and not otherwise available to Valve in this arbitration.  For that reason, Prescott's motion to compel Valve to produce such materials is denied.

**MATERIALS PRODUCED AND DESIGNATED AS CONFIDENTIAL BY VALVE**

The above discussion applies only to confidential materials produced by a third party in *Wolfire* and not otherwise available to Valve.  The Protective Order does not provide a cloak of protection for materials which Valve has in its possession, either its own materials or those of third partes, and designates as confidential under the Protective Order.  Valve's submission

2

implies that it has already produced such materials, but to the extent it has not Prescott's motion to compel Valve to produce such materials is granted.

Prescott's' motion also states that Valve has refused production "based on purported third-party confidentiality obligations, citing its Mutual Nondisclosure Agreements (MNAs)" and that "Valve has refused to produce many of the documents requested, arguing they contain or reflect confidential third-party information protected by its MNAs . . .." Valve has not responded to this assertion, maintaining that the dispute is about documents produced by third parties in response to third party subpoenas in *Wolfire*. To be clear, the ruling above extends to all third party materials in Valve's possession regardless of whether they are subject to NMAs, and regardless of whether they have been designated as confidential under the *Wolfire* Protective Order. The confidentiality of such documents will be protected by the Protective Order in this case.

SO ORDERED.

Dated: 20 August, 2025

_____
Robert B. Morrill
Arbitrator

3

## Attachment A: List Of Cases Assigned to Robert B. Morrill

| Case Number | Claimant |
|---|---|
| AAA Case No. 01-23-0005-2929 | |
| AAA Case No. 01-23-0005-2930 | |
| AAA Case No. 01-23-0005-2931 | |
| AAA Case No. 01-23-0005-2932 | |
| AAA Case No. 01-23-0005-2933 | |
| AAA Case No. 01-23-0005-2934 | |
| AAA Case No. 01-23-0005-2935 | |
| AAA Case No. 01-23-0005-2937 | |
| AAA Case No. 01-23-0005-2938 | |
| AAA Case No. 01-23-0005-2939 | |
| AAA Case No. 01-23-0005-2940 | |
| AAA Case No. 01-23-0005-2941 | |
| AAA Case No. 01-23-0005-2942 | |
| AAA Case No. 01-23-0005-2943 | |
| AAA Case No. 01-23-0005-2944 | |
| AAA Case No. 01-23-0005-2945 | |
| AAA Case No. 01-23-0005-2946 | |
| AAA Case No. 01-23-0005-2947 | |
| AAA Case No. 01-23-0005-2948 | |
| AAA Case No. 01-23-0005-2949 | |
| AAA Case No. 01-23-0005-2950 | |
| AAA Case No. 01-23-0005-2951 | |
| AAA Case No. 01-23-0005-2952 | |
| AAA Case No. 01-23-0005-2953 | |
| AAA Case No. 01-23-0005-2954 | |

EXHIBIT 3

# Hearing Transcript

Case Number: N/A
Date: October 31, 2024

In the matter of:

# JAMES McINERNEY, et al. v VALVE CORP.

# HEARING

Reported by:
PAULA BEKKER-MURPHY



Steno
Official Reporters

1100 Glendon Avenue
Suite 1850
Los Angeles, CA 90024
concierge@steno.com
310.573.8380

AMERICAN ARBITRATION ASSOCIATION

COMMERCIAL ARBITRATION TRIBUNAL


JAMES McINERNEY & 24 Other
Individual Claimants,

            Claimants,

vs.

VALVE CORP.,

            Respondent.
_____/


REMOTE HEARING - STATUS CONFERENCE

                - - -

Thursday, October 31st, 2024

2:00 P.M. EST - 4:10 P.M. EST

Held Before: Arbitrator Richard Mainland


Stenographically Reported by:
Paula Bekker-Murphy
STENO
Concierge@Steno.com
(888) 707-8366

Page 38

So -- I respectfully, Arbitrator, I agree that you said in your order, I interpret paragraph 7 to apply to arbitration proceedings, but you don't actually say that that's what the Federal Court protective order says or explain how it applies to arbitration procedures.

ARBITRATOR MAINLAND:  I think I'm interpreting it -- and I'm not going to say this is a definitive statement of my reasoning.  But the whole purpose, as I understand it, of the protective order is that the third parties are producing documents that they feel are confidential, and they -- Valve was really willing, and claimants were willing, to treat them as confidential subject to a protective order, and that without -- and that any further dissemination of those documents presumably would not be done without the permission of the Federal Court or another tribunal that the Federal Court would defer to in that respect, but that Valve couldn't simply decide to -- oh, we've been sued in some arbitrations here.  I'm going to start disclosing these third-party confidential documents.

But the Court seemed to acknowledge

Page 39

there could be other proceedings that -- in which those documents might be sought from Valve, and that that should -- in that case, whether by subpoena or court order, that production should not be made by Valve without giving these third parties the opportunity to object and be heard, assuming they even care.

But let's assume that, as you say, these are the sensitive documents from these third-party standpoints, they should be given the opportunity to object if they want to and be heard.  That -- as a matter of substance, that should not depend on whether the documents are sought by a subpoena or a court order, and that the Courts -- the Courts dealt -- came up with language, presumably not in the context, for example, of saying, well, I know there are a bunch of arbitrations out here, but I'm excluding those.  I'm just going to have this notice and objection procedure for court litigation, not for arbitrations.

My belief would be that the Court wasn't even thinking about arbitrations at that point.  And that's why I don't -- I think the Court was actually just concerned that these third parties

Page 40

be given an opportunity to object if compulsory process was served on Valve requiring Valve to produce those documents.

So I understand your position.  I think it's an issue that can go either way.  And I understand your position is that -- your position is that only your position is correct.

MR. FUCHS:  Well --

ARBITRATOR MAINLAND:  You may be correct on that, and we'll find out what a court says if it ever comes to a court decision on that issue.

MR. FUCHS:  Yeah.  And I guess, Arbitrator, the one just final thing I'd say on it is, I appreciate the logic that you've applied to that question, but I think you've acknowledged that although that might be what you could imagine the Court might have intended if it thought about arbitrations, that's not the language in the Court's order.

And I think -- I think you'd also acknowledge that parties cannot violate court orders based on what they think the Court should have said, what language the Court should have included in its orders.  And that's -- and that's simply where we are.

Page 41

ARBITRATOR MAINLAND:  That is where we are.  And let me just say that in terms of the -- your description of the horrendous practical and other problems that would be incurred if you went into -- Valve went into court and asked the Court to modify its protective order, I'm not impressed with those arguments.  Let me just say I don't -- I don't see the insuperable practical problems, but I do understand why Valve does not want to produce those documents in these arbitrations.

So in any event, Mr. Bucher, you were indicating an interest in saying something?

MR. BUCHER:  Absolutely.  I mean, I think we keep starting from the premise that a court modification would be necessary.  I just don't agree with that.  The title of Section 7 refers to litigation, and then the language says "a subpoena or court order issued in another litigation."  It doesn't say "a subpoena or court order issued by another court."  It says "in another litigation."

And so clearly that is contemplating that there could be subpoenas or court orders issued in litigations that did not concern a

Page 42

court. I also -- so I don't think any modification is necessary. I think that that is the correct reading. I'm not saying that Valve Corporation's reading is, you know, unintelligible or makes no sense, but I think that's the correct reading.

But I also think a question that is even a more threshold question is, well, if that reading is wrong, what does that mean? Valve Corporation is taking the position that without Section 7, this is like a secrecy order. This is like top secret. You can never disclose it. But that -- but if you eliminate Section 7 from that protective order, it means they can disclose it all they want in response to a court order.

So even if it were true that that section only addressed the Court, the correct reading would be, well, then there's -- they don't even need to do anything. They don't even need to provide notice. They've been ordered to do something by a court and now they can produce it.

I don't know that it makes sense to relitigate this here. I mean, I think you've already ruled on this, and I think you're attuned

Page 43

to these issues, but I just don't find it credible when Valve says they're worried about being sanctioned by the Federal Court. They've made the argument. You've rejected it. You've rejected it in writing. You've issued an order that pursuant to the SSA, you have the full power to issue the same orders that a court could. Pursuant to the Federal Arbitration Act, you have the full power to issue subpoenas. You've ruled, and I can't imagine any judge is going to come and sanction Valve Corporation for complying with your order having made the argument. That just seems unlikely to me.

And I fear that what's going on here is this is just being used as a way to withhold or redefine the scope of production here. I don't know -- you know, I see your agenda. I don't want to overlap points, and I want to make sure we're moving through it. I feel like we've been talking about 3. I don't know to what extent we're done on 2.

ARBITRATOR MAINLAND: Actually, I had one other question on 2, but then we can get into 3 which is important, obviously.

In terms of the October 28th letter from

Page 44

Mr. McTeague, Mr. Fuchs, the -- that letter does not -- it states that Valve is willing to produce or plans to produce various categories of documents subject to entry of a protective order, but it doesn't relate that to the documents that I ordered produced by the September 16th order. Can you enlighten me on that?

MR. FUCHS: So putting aside the ones covered by the Wolfire protective order, I believe that it covers everything else, and that's part of what we're trying to do here. By simply producing all these documents, we're actually producing more than was requested. But if there's -- ultimately if there's something that Mr. Bucher thinks that was ordered that isn't included here, he can follow up, but I think it covers those categories.

ARBITRATOR MAINLAND: Okay. Then I'm ready to go on to the protective order issues. And let me say that I have received proposed protective orders from both sides. Actually, I received one last summer from Valve, but I received a -- then I received one in early October from Mr. Bucher's firm, and then with the October 28th letter from Mr. McTeague that

Page 45

attached another proposed protective order from Valve.

And I've gone -- I've gone through that order, and they're -- and the -- I basically compared that order as the applicable one that Valve is proposing and compared that back with Mr. Bucher's proposal in early October.

And there -- I will, first of all, say that, Mr. Fuchs, I think the Valve order of October 28th does make an effort to actually track and use language from Mr. Bucher's order on certain issues so that there are some parts of it that aren't in dispute, but then there are several key and important areas of differences between the two orders that I thought we might hear from counsel on in this conference today.

MR. FUCHS: Yeah. And I think there are really -- so as Mr. Bucher said in his e-mail from this morning, we haven't had a chance -- we haven't had the opportunity -- the parties' schedules didn't work, apparently, and so we haven't spoken by phone.

But the parties have been speaking by phone more generally about this protective order border issue, because this same one has come

Page 90

ARBITRATOR MAINLAND: I anticipate both sides making a number of arguments to the Court.

And, Mr. Tavakoli, I think in your -- just to circle back for a second to this potential briefing on a request for a temporary stay, I think it would be meaningful, if you have any authority on arbitrators' authority to stay their arbitrations, then that would be helpful as opposed to courts staying arbitrations or staying court proceedings. And also, factually, a little bit more information on when and how you think this petition to enjoin is going to get resolved by the Court.

MR. TAVAKOLI: Yeah, and I'll say on the first point that there are not published decisions of arbitral decisions, awards, so we're likely not to be submitting those.

But what I can say is that arbitrators have entered stays, including in a number of the matters that Mr. Bucher is litigating here and under the exact same facts. And that under Rule 23, you have the inherent authority to ensure that the arbitrations proceed in the most efficient way. And it's fundamentally inefficient to have -- you know, first, to have,

Page 91

you know, parallel court and arbitration proceedings where claimant's counsel concedes that he is forum shopping, but second and more fundamentally, where you have a pending petition in court, which is the only forum that can resolve the question to enjoin the arbitrations.

ARBITRATOR MAINLAND: Okay. I think that comes to the end of my agenda. And I will send out a simple e-mail to counsel today just confirming the specific short-term dates for things to happen that we've agreed to. If I get them wrong, be sure to call it to my attention. And I'll look forward to hearing back from you.

MR. BUCHER: Thank you, Arbitrator.

ARBITRATOR MAINLAND: Okay. Thank you all.

MR. FUCHS: Thank you, Arbitrator.

ARBITRATOR MAINLAND: Yep. Bye now.

(Time noted: 4:10 p.m.)

Page 92

COURT CERTIFICATE

STATE OF FLORIDA      }

BROWARD COUNTY        }

I, PAULA BEKKER-MURPHY, Stenographic Court Reporter, State of Florida at Large, certify that I was authorized to and did stenographically report the foregoing proceedings and that the transcript is a true and complete record of my stenographic notes.

Dated this 31st day of October, 2024.

_____
PAULA BEKKER-MURPHY
Stenographic Court Reporter

EXHIBIT 4

# Hearing Transcript

Case Number: 01-23-0005-3067

Date: January 23, 2005

In the matter of:

# WRIGHT & 24 OTHER INDIVIDUAL CLAIMANTS v VALVE CORP.

# HEARING

# TELEPHONIC HEARING



Reported by:
Paula Bekker-Murphy



Steno
Agency, Inc.

1100 Glendon Avenue
Suite 1850
Los Angeles, CA 90024
concierge@steno.com
(888) 707-8366

AMERICAN ARBITRATION ASSOCIATION

COMMERCIAL ARBITRATION TRIBUNAL

CASE NUMBER: 01-23-0005-3067


TYLER WRIGHT & 24 OTHER
INDIVIDUAL CLAIMANTS,

                Claimants,

    vs.

VALVE CORPORATION,

                Respondent.
_____/



                TELEPHONIC HEARING

                    -   -   -


            Wednesday, May 27th, 2026

            1:00 P.M. EST - 3:50 P.M. EST

        Held Before: Arbitrator Sanford Jossen

                    -   -   -







Stenographically Reported By:
Paula G. Bekker
STENO
Concierge@Steno.com
(888) 707-8366

Page 10

testify in this action, then those experts would, as is customary, have to produce any documents that they rely upon in order to provide their various opinions, and that that is a way claimants would be able to obtain all of the documents that the Valve experts rely upon for formulating their opinions.

With respect to Newzoo, Valve indicated in its response that it had nothing to produce. I ordered in my tentative, which you'll get, that Valve provide a written declaration verifying same. I mean, if they have nothing, they have nothing. And if they say under penalty of perjury they have nothing, then, you know, if something pops up later, that is going to be troublesome. But if they have nothing to produce, you know, and they've -- they've made the effort to look, which should be in their declaration, then they've got nothing to produce. I feel that I'm, you know, bound by the protective order.

I did note, you know, from the documents provided in the dispute, in the litigation, in the motions to compel, in the opposition, that other arbitrators felt

Page 11

similarly bound by the protective order, and so that was my tentative there.

MR. BUCHER: Well, thank you so much for giving us a chance to comment on the tentative. I agree with your conclusion. I completely disagree with the outcome. So I 100 percent agree, arbitration is litigation. We are on the same page there. And if you can pull up the protective order, you will see that when there is documents requested in other litigation, there's a whole section called "Protected materials subpoenaed or ordered produced in other litigation." And that section does not say you cannot produce it. It says the exact opposite. It says --

ARBITRATOR JOSSEN: Tell me which section -- Mr. Bucher, make it easier for me. What section? I'll take another look at it.

MR. BUCHER: Section 7, page 9 of the PDF in our version of the Wolfire protective order.

MR. FUCHS: And, Arbitrator Jossen, the problem with --

ARBITRATOR JOSSEN: Hold on. Hold on. Please identify yourself because I'm not

Page 12

familiar with all of the voices, and this way --

MR. FUCHS: Of course.

ARBITRATOR JOSSEN: -- will be clear as well.

MR. FUCHS: It's Andrew Fuchs.

The problem with Section 7 is that it refers to a subpoena or court order issued in other litigation. So the problem here is that there's no court to order the production.

ARBITRATOR JOSSEN: Well, riddle me this. You know, doesn't that beg the question, you know, is that -- is that something that should be presented to the Federal Court for an order for production in the arbitration? I mean, that clears everybody. I realize it -- it might lead to an outcome you might not want, but, you know, if that's what the protection -- protective order provides, you know, that fundamental criteria, wouldn't the Federal Court be the right place for the claimant to bring their motion?

MR. FUCHS: Mr. Bucher is certainly free to seek relief from the Federal Court.

Page 13

ARBITRATOR JOSSEN: I'll take another look at, you know, Section 7, page 9, you know, and I'll see if I -- if I'm going to change my opinion in the tentative that I've written that you should get -- you know, you should get it today, I would think. You know, no -- certainly no later than tomorrow, because I made various changes to it last night and sent it off this morning. I'll take a look at it.

MR. FUCHS: Yeah. But, Arbitrator Jossen --

MR. BUCHER: While we're all here, we would like to -- you know, I'd like to -- I want to give you a minute to pull it up. Do you have it up in front of you, Arbitrator?

ARBITRATOR JOSSEN: No, I don't have it up in front of me. That --

MR. BUCHER: I'd like to walk through it now because I think you've reached the right conclusion, which is that arbitration is other litigation, but the wrong result. Because the section says, hey, as long as you do these three things, you can produce it in other litigation.

Page 50

of this is -- you know, we've hit a brick wall here. There's nothing happening in the arbitrations at all. And whatever it is I decide, whatever it is I order no longer means anything. It's all moot.

So I would think that maybe what we should do -- and I'm not kicking the can down the road. I'm just trying to be practical here. Maybe what we should do is hope that the Court keeps its words, issues its order, whichever way it goes, and if it does deny the motion for preliminary injunction, then I would ask the Court as part of its order to clarify, you know, use of the protective order and discovery and production of non-party items, you know, for use in the arbitration. Is that a practical result or a practical approach?

MR. FUCHS: I think it makes -- I do think, why don't we just table this, and then after the Court issues its order, we can come back to it and figure out how to -- how to proceed.

ARBITRATOR JOSSEN: You know, I'll just digress for a second. A long time

Page 51

ago -- you know, for those of you that don't know me, I'm practicing 44 years. So a long time ago, I was invited into a judge's chamber. You know, very impressed by that. And he had a big round table. All right? This is 40 years ago, let's say, you know, before computers and, you know, when people were typing things with electric typewriters with carbon paper, if some of you could actually imagine that. Some of you know what carbon paper is. Okay?

And I remember sitting down at this big round table, and this judge had -- he must have had -- I don't know -- you know, 10 or 12 stacks that were like two feet tall or more. They were probably all summary judgments, reflecting back on it. I remember looking at it and just saying, how can anybody -- how could anybody read, process, you know, all of this, you know, and in some cases, unfortunately, find the needle in the haystack. Because we all know attorneys who, you know, don't -- you know, don't realize judges are impatient. They're irascible. They're really busy. Okay? And to put

Page 52

everything right up front, like on the first page, here's why there is or is not an issue of material fact. You know, you don't have to dig and get to page 40 and our fourth -- you know, our fourth point. You know, I always -- I, you know, try to make it easy.

But, you know, this is what we've got here. You know, we've got -- we've got a lot of stuff to go through. And we all agree this is very, very, very complex stuff. And -- and, you know, we have to, at the end -- or I have to, as the arbitrator sitting in the middle, have to find the fair path for everybody. And -- and that's what I'm really trying to do. Believe me, I'm just grappling with it. Okay?

If we're going to table this, then I'll have to instruct the AAA not to issue the order that I've just sent them because I don't want to, you know, get ahead of myself. When do we expect this court order?

MS. ROETTGER: Arbitrator Jossen, if you sent us an order this morning, we do not have it, so I would have to ask you to resend it.

Page 53

ARBITRATOR JOSSEN: Okay. All right.

MS. ROETTGER: Or if you're not going to send it, you know, just let us know. But we don't have anything currently from you.

ARBITRATOR JOSSEN: Okay. Probably because my -- my super -- my super assistant Susan just hasn't gotten to that particular task on her -- on her agenda today, which might be good.

When are we -- when is the Judge's order expected in the application for the preliminary injunction?

MR. FUCHS: He said -- last week he said in a week's time, so he was indicating we would have it, you know, this week.

ARBITRATOR JOSSEN: Well, I guess we could be hopeful and that he isn't one of those judges with those 12 stacks sitting on his round conference table. But probably more, you know. Probably more.

I visited a federal judge a couple of years ago, and he told me he had like 1,000 -- you know, in his chambers, he told me he had like 1,000 matters pending. I was like, how do you do that? You know, how do

HEARING - JANUARY 23, 2005                TELEPHONIC HEARING                JOB NO. 2766021
WRIGHT & 24 OTHER INDIVIDUAL CLAIMANTS v VALVE CORP.

Page 54

you do that?  Including criminal matters, you know, where they'd have these -- I don't know what -- you know, cocaine conspiracies or whatever it was that was going on, you know, with -- you know, with 50 different defendants, you know.  I don't even -- how do you even take all the appearances, you know?  I have no idea how these people do that.  But, you know, here we are.  We all agree the wheels of justice turn exceedingly slow.

What does everybody want me to do here?  You know, at this point we've talked about a lot of different methods.  And I'm certainly happy, you know, to revisit my tentative order which hasn't gone out yet.  But it seems like the better thing is, is we table it and wait for the Judge to do what they do.  And if the Judge does not enjoin the arbitrations, then I would certainly ask, you know, from both sides for clarification as to the extent of the protective order and -- and some of these other issues.

MR. FUCHS:  It's -- again, it's -- Arbitrator Jossen, it's Andrew Fuchs.  That works for us in that we table this and then

Page 55

we'll come back together and figure out how best to proceed after the Court rules.

ARBITRATOR JOSSEN:  Should I stop going -- you know, going through all of the materials on the summary judgment?

MR. BUCHER:  This is Mr. Bucher here.  We strongly object to all of this.  What you just proposed is to stay this entire litigation indefinitely.

ARBITRATOR JOSSEN:  No.

MR. BUCHER:  We already briefed and you decided this, Arbitrator.  Why do we have to keep going back to order after order?  We already wasted nine months on this.  We briefed it.  We won.  We need to get to trial with the evidence we need.  Courts may be slow.  You don't need to be.  Issue the order to give us the information we need.  If Valve wants to go try and quash it, if Valve wants to run to court and tell this judge who can't make a ruling for two years that, hey, I need something from you, let Valve do that.  We are absolutely not staying these whole proceedings while we wait for this Court to rule.

Valve told you in their papers 19

Page 56

months ago that we would have a ruling from this Court within a month.  They said it's teed up as a 30-day motion.  19 months later, we don't have an order.  The purpose of arbitration isn't to be extra slow.  It's not to have the slowness of court plus the delay of arbitration.  It's to sidestep all of that and get the job done.

So we strenuously oppose you staying these cases.  We've already had to delay this trial four times.  What you should do is you should issue an order, and Valve can follow the terms of the protective order.

Mr. Zwick is not a party to this protective order.  This is Valve's problem.  Valve wrote this protective order.  If Valve wrote it in a manner that was confusing or lacks clarity, that's on them.  And they can go to court and seek clarification with the Court.  But this is not Mr. Zwick's obligation, and it's not your obligation, Arbitrator.  Right now, what you need to do is fairly decide Mr. Zwick's dispute in a prompt manner.  Valve has the evidence you need to consider to do that.  You should order them to

Page 57

produce it.  And Valve can take whatever next step they want to take at that point.

But I -- we should not be waiting.  Let's get the order issued.  If they want to take that order to the Court, they can take it now.  They can take it after the Judge allegedly issues an order on the preliminary injunction.  Whatever Valve wants to do with it, they can do with it.  They can sue Mr. Zwick again.  They've already sued him once.  They can sue him again to try and quash the subpoena and say they can't be enforced.

But your job is to keep this case on track to a prompt resolution.  So that doesn't mean we stop reading the summary judgment documents.  It doesn't mean we stop preparing for trial.  That means we move forward fastly and efficiently with the arbitration.

ARBITRATOR JOSSEN:  Look, I don't feel that's unfair.  I mean, I feel like that argument is fair because that serves all parties.  You know, all parties are here in an arbitration, which, by the way, you know -- you know, notwithstanding the reservation of rights, you know, was the -- Valve -- you

HEARING - JANUARY 23, 2005                  TELEPHONIC HEARING                      JOB NO. 2766021
WRIGHT & 24 OTHER INDIVIDUAL CLAIMANTS v VALVE CORP.

Page 74

efficient.  That seems manifestly inefficient.

ARBITRATOR JOSSEN:  I don't disagree, but there's a little problem of the protective order.  Okay?  And I don't know that I disagree with the argument -- with Mr. Fuchs' argument that -- that Valve is in the middle here.  If you're asking Valve to produce third-party, non-party documents, then they are in the middle, and then the protective order comes into play.

Look, let me -- let me just, you know, reiterate what I said earlier.  It's -- you know, I'm just circling around here.  I need to balance, you know, open discovery, so to speak, subject to legal objections, you know, versus -- versus the -- you know, the concerns of these third parties and the protective order.  I'm going to look at the protective order again.  I do think that -- I'll say it again.  I think the terms "litigation" and "arbitration" are essentially synonymous.

But the problem that I have as the arbitrator is this.  Okay?  You know, we all talk about following the law.  I've had several situations as an arbitrator where I've

Page 75

followed the law to an outcome that I didn't personally disagree with -- you know, I didn't personally agree with, to be perfectly honest with you.  It's troublesome and -- and difficult.  But if one is really going to adhere to that concept of following the law, you know, sometimes that's where it takes you, you know, unfortunately.  One may personally disagree with the outcome that the law mandates.

You know, example, you know, is a Lyft or Uber driver an employee or independent contractor?  You know, what does the law say and what does it seem like in real life?  You know, that isn't this case, obviously.  You know, I'm stuck here with a protect -- with a protective order that doesn't exactly -- that didn't apparently contemplate this circumstance.  And I have to figure out -- I have to figure out -- I have to figure out what to do in this circumstance given that protective order.  At the end of the day, we have -- what we're talking about here really is property that belongs to people that aren't here and how are their rights protected.

Page 76

Because I agree, I don't think that Valve can just -- they can't just willy-nilly give this stuff.  Even if they did give this stuff, even if I ordered that they give -- gave this -- the materials, you know, they'd have to comply with the protective order which may not lead to them producing the materials in the end anyway.

Maybe the -- you know, we've talked about various different things to do; to table this -- you know, very various different things to do.  You know, maybe the cleanest way for all concerned, you know, notwithstanding that it's -- that it's additional work for you, Mr. Bucher -- and -- and the last thing I want to do is, you know, create tasks for people, you know -- is to issue subpoenas to these third parties, which I sign, it takes Valve out of the loop, and it also -- you know, it circumvents, so to speak, the protective order.  Because if one says a protective order, you know, it doesn't apply -- you know, doesn't -- it doesn't apply here because this isn't -- you know, it doesn't contemplate or address arbitration,

Page 77

you know, that may be the way to go.  I've got to think about this a little bit.

You know, as I -- you know, as I think about it, I kind of somewhat favor that approach, you know, of get me the subpoenas, I'll sign them, you could send them to the third parties, and, you know, if that -- maybe they'll produce a document subject to a protective order that addresses this arbitration.  Might be the way to go.

You know, table -- tabling it and waiting, I don't know.  You know, I'm not big on that because I'm just seeing that conference table with, you know, 12 stacks of stuff for some federal judge to -- you know, to read while they've got, you know -- you know, 1,000 criminal cases in front of them, which you all know -- you know, we all know has to take precedent -- precedence.

I have to think about all this.  I mean, we don't really need to argue it out anymore unless we could come to some solution, which it does not appear that we can.  I'm kind of, you know, thinking about, you know, favoring this -- the approach of your issuing

Page 90

Valve filed a month late.  Deny the summary judgment motion.  That's simple.  If you get halfway through a stack of documents and you think it's complicated, that's your summary judgment decision right there, Arbitrator. Summary judgment has got to be no reasonable fact-finder, when faced with the evidence, could interpret it in our favor.  We had arbitrator after arbitrator find Valve liable. It's not a summary judgment issue here.  Some have found in favor of Valve.  I mean, that's exactly the case that goes to trial, a case where sometimes you win and sometimes you lose.

So deny that motion.  I'd like a subpoena against Valve for the documents we've been requesting for three years.  I'd like to do this in one court.  Absolutely let's keep those dates on the calendar.  I mean, in this scenario where we gotta issue all these individual subpoenas, we're going to need those dates just to open the hearings to start collecting evidence.  So, you know, it may be that we don't use those dates for the core of the case for Valve's witnesses, but we use

Page 91

those for third parties, if that's the approach we take.  Let's get this going.

So yes, we absolutely are in favor of holding those dates on the calendar in some capacity.  I hope you'll think about it and efficiency will prevail.  You know, if you were faced with a protective order that said in no circumstance will you turn over these documents in arbitration, okay.  I understand your point, Arbitrator.  But that's not what it says.  And if you -- you know, to the extent you think there's vagueness, well, make the call.  Make the efficient call.

I don't think this Judge -- I'll be honest.  One, I don't think this Judge thought about this precise wording at all because it was a stipulated motion.  But I think if you'd ask the Judge on the day he signed it, hey, I know you say "subpoena" or "court order in other litigation," does that mean that we can't give the documents over in the arbitrations that you just compelled?  And he'd say, no, that's another litigation.

But look, if I'm wrong, and you issue the order, Valve has a clear remedy in front

Page 92

of one tribunal.  They go back to that exact judge and they say, Judge, you signed this protective order, I move to quash, and the Judge would tell them.  But that seems like clearly the more efficient route.  That's what I'd like to do.  So I'd like to get a subpoena.

And look, you can do both.  You can issue subpoenas to Valve and you can issue subpoenas to the other 25.  We can move in parallel.  So let's get you a subpoena for Valve for this.  Valve can move to quash.  At the same time, we can be seeking the same information from the -- all the individuals in the case.  We can set the date to take that information from them when the hearing opens in July, and we can start moving things forward.  So that's where I would like to see this go.

And look, none of that's saying -- maybe, you know, Mr. Fuchs is right and the Judge says, oh, yeah, I sanction you if you turn this over.  Well, okay.  Then, you know, they won't turn it over.  I don't think that's how the Judge is going to rule.  But

Page 93

then we got one judge who could decide, and if that judge doesn't decide, then we've already teed up to figure out who consents, to figure out who shows up to the hearing and just gives us the information voluntarily.

For the ones who don't, for the ones who are going to oppose, those people will begin the Court proceedings for them.  And then at least we've got everything rolling, everything moving towards a conclusion.  So that's where I would like to see this wrap up here today.

ARBITRATOR JOSSEN:  Mr. Fuchs --

MR. FUCHS:  Well, I --

ARBITRATOR JOSSEN:  Hold on.  Hold on. You know, hypothetically if I issued an order, okay -- I mean, I don't know why I'd have to issue a subpoena.  You know, if I issued an order -- and again, this is hypothetically -- that these documents in Exchange 3 and 4, you know, the Court documents be produced, procedurally, do you agree with Mr. Bucher that your remedy is to proceed to federal court and, you know, seek remedy, you know, in one place, one time?

Page 134

Mr. Fuchs, Mr. Tavakoli, Ms. Addis, Mr. Miller, and Ms. Bekker, the hardest working here among us, okay, thank you all. And, of course, Ms. Roettger, appreciate you all the time.

Ms. Roettger, if you do get the order from my office, hold on to it. Don't send it out because I have to, you know, take another look at everything and refigure things out --

MS. ROETTGER: I'm sorry. I'm just having a little bit of difficulty hearing you. Did you say if the order is sent to us from your assistant, that we should hold it and not transmit it to the parties? Is that correct?

ARBITRATOR JOSSEN: Correct. You know, I mean, if the right hand doesn't know what the left hand is doing, and Susan sent the order to you while I'm here, you know, on this here, just hold it and don't send it out. Okay?

MS. ROETTGER: Okay. Will do.

ARBITRATOR JOSSEN: All right. Thank you, everybody. Have a great afternoon. And, you know, everybody do the best you can to be good people and make it a better planet.

Page 135

MS. ADDIS: Thank you.

ARBITRATOR JOSSEN: Okay. Thank you everybody. Thank you for all your efforts.

Ms. Bekker, I guess we could go off record now.

(Time noted: 3:50 P.M. EST.)

Page 136

                COURT CERTIFICATE


STATE OF FLORIDA        }
BROWARD COUNTY          }



        I, PAULA G. BEKKER, Stenographic Court Reporter, State of Florida at Large, certify that I was authorized to and did stenographically report the foregoing proceedings and that the transcript is a true and complete record of my stenographic notes.

        Dated this 27th day of May, 2026.


        _____
        PAULA G. BEKKER
        Stenographic Court Reporter