UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION | CASE NO. 2:21-cv-00563-JNW<br><br>ORDER DENYING PLAINTIFF LALLY'S MOTION FOR SANCTIONS |

## 1. INTRODUCTION

This matter comes before the Court on Plaintiff Ryan Lally's motion for sanctions. Dkt. No. 467. In 2021, Valve moved to compel Lally and his co-plaintiffs to arbitrate their antitrust claims, and Judge Coughenour granted that motion. Two years later, Lally's counsel filed 14,911 individual arbitrations against Valve, Lally's among them. The American Arbitration Association ("AAA") billed Valve $20,875,400 in case management fees for the group. Valve declined to pay. Lally now asks the Court to sanction Valve in the amount of the full invoice.

The Court denies the request. Valve does not refuse to arbitrate with Lally. It agreed to arbitrate his claim, asked AAA to issue an invoice covering his case alone,

and promised to pay that invoice on receipt. Lally is entitled to no relief on his own behalf. And the rest of the invoice covers fees for 14,910 people who are not before the Court. Lally may not litigate their claims for them.

Having considered the briefing and the controlling law, the Court finds oral argument unnecessary. The Court DENIES the motion for the reasons below. And because the Court does not rely on the parties' supplemental filings to get there, it DENIES AS MOOT and Lally's motions to strike Valve's notices of supplemental authority. Dkt. Nos. 580; 587.

## 2. BACKGROUND

In this consolidated case, the named plaintiffs for the putative consumer class ("Consumer Plaintiffs") bring antitrust claims against Defendant Valve Corporation over its product, Steam. Steam is an online platform for distributing PC games. On October 25, 2021, the Court compelled the Consumer Plaintiffs to arbitrate their claims because the Steam Subscriber Agreement contained a mandatory arbitration provision. Dkt. No. 66 at 4–5. The Court stayed their claims pending arbitration. *Id.* at 5.

To initiate his arbitration, Consumer Plaintiff Ryan Lally retained the law firm of Mason LLP. According to the firm, Lally is one of roughly 70,000 individuals who each retained it to pursue antitrust claims against Valve before AAA. Dkt. No. 468 ¶ 2. In December 2023, Mason LLP began filing individual arbitrations against Valve with AAA. It filed 14,911 arbitrations that month, including Lally's. *Id.* ¶ 5. Those claimants paid $1,518,325 in AAA filing fees, and Valve paid the $1,866,100

that AAA billed to it. *Id.* ¶ 6–7. Valve says it later reimbursed the claimants for their filing fees. Dkt. No. 470 at 6.

In August 2024, AAA suspended those cases so the parties could mediate. Dkt. No. 468 ¶ 10. The following month, Valve issued an updated SSA with a forum selection clause that generally prohibits arbitration. Dkt. No. 471-6 at 8. Where the original SSA required arbitration, the updated SSA states:

> You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.

*Id*. According to Valve, the updated SSA terminates all pending arbitrations against it, so it need not keep arbitrating. After Valve changed the SSA, all Parties to this putative class action—except Lally—agreed to move forward with this litigation, and the Court lifted the stay as to them. *See* Dkt. Nos. 370; 395; and 428.

In February 2025, Valve asked AAA to close the arbitrations Mason LLP had brought, including Lally's, arguing that the updated SSA contains no arbitration provision. Dkt. No. 471 ¶ 26. AAA refused, lifted its stay, and sent Valve an invoice for case administration fees totaling $20,875,400 (or $1,400 per case). *Id.* ¶ 27. Because the cases together make up a "mass arbitration" under AAA's rules, the invoice has a single line item rather than a separate line item for each arbitration. Dkt. No. 471-11 at 4. Valve refused to pay the invoice, standing by its position that it need not arbitrate because it had removed the arbitration provision from the SSA. Dkt. No. 471 ¶ 27. That refusal to pay kept the arbitrations, including Lally's, from going forward. *Id.* ¶ 28.

In June 2025, Lally filed this motion, asking for sanctions of $20,875,400—the sum of AAA's invoice. Dkt. Nos. 467 at 11; 471-11 at 4. After he filed, Valve agreed to pay the fees for Lally's arbitration and to proceed with that case alone. Dkt. No. 471 ¶ 34. Valve says it changed course because, once Lally moved for sanctions, it reviewed its records and determined that the SSA modification does not apply to him, specifically. *Id.* Valve still refuses to pay for the other 14,910 arbitrations, asserting that those claimants have no right to continue their arbitrations. *Id.*

On June 18, 2025, Valve notified AAA that it would arbitrate Lally's claim and asked for an invoice covering his fees alone rather than the fee for the whole mass arbitration. Dkt. No. 471-17. In response, Lally's counsel asked AAA *not* to issue an individual invoice because doing so could moot this motion for sanctions. Dkt. No. 471-18 at 3 (" If AAA were to issue an individual invoice, and Valve paid it, Valve could argue in response to Lally's Motion for Sanctions that the basis of the motion is moot. Thus, Valve could further delay paying the March 24 invoice."). AAA declined to issue the invoice and told the parties that Lally's arbitration would remain stayed pending an order from this Court. Dkt. No. 471-20 at 2. Since then, AAA has said that it will close all 14,911 arbitrations if it does not receive case administration fees from Valve.

This is not the only case about Valve's refusal to arbitrate consumer antitrust claims. In May 2025—before Lally filed this motion—Mason LLP filed a putative class action in California state court, seeking the same arbitration fees from Valve on behalf of California antitrust claimants. *See Welty v. Valve Corp.*, Case No. 2:25-

cv-02450-JNW, Dkt. No. 1-1 ¶ 50. Lally is a California resident and appears to be a member of that putative class. *Welty* was removed and later transferred to this Court.

In other related litigation before this Court, *Valve Corporation v. Abbruzzese et al.*, Case No. 2:24-cv-01717-JNW, Valve petitions to permanently enjoin hundreds of consumer antitrust arbitrations against it, arguing that the updated SSA terminates those arbitrations. The Court recently denied Valve's motion for a preliminary injunction there, finding Valve unlikely to succeed on the merits. *Id.*, Dkt. No. 169. The Court then certified an interlocutory appeal and stayed the case at Valve's request. *Id.*, Dkt. No. 192. The Ninth Circuit has not yet decided whether to hear that appeal.

## 3. DISCUSSION

### 3.1 Lally lacks standing to assert the claims of other individuals arbitrating against Valve.

A litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (citation modified); *Cieklinski v. NLRB*, F. App'x. 727, 728 (9th Cir. 2007) ("Petitioners lack standing to challenge the NLRB's order . . . setting aside the award of damages to unidentified traveling workers" because plaintiffs generally must assert their own legal rights). Lally does not contest this point or argue that he may seek relief for the other claimants. He argues instead that he does *not* "seek[] to compel Valve to pay fees for 14,910 other arbitration claimants" and that he "merely seeks payment of the AAA invoice,

which would enable *his* arbitration to continue." Dkt. No. 475 at 3. (quotation omitted) (emphasis added).

The Court disagrees with Lally's characterization. True, if the Court grants the motion and requires Valve to pay the mass arbitration fee, Lally's arbitration will go forward. But the math tells the rest of the story. The invoiced amount includes the $1,400 fee for each of the 14,911 cases. Lally has one of those cases. The other 14,910 belong to people who are not before the Court, and their fees make up $20,874,000 of the total Lally seeks. Nothing in the record shows that Valve must pay all of it for Lally's arbitration alone to proceed.

A litigant may sometimes assert another person's rights, but only if he has a "close relationship" with the person who holds the right and that person faces a "hindrance" to protecting his own interests. *Kowalski*, 543 U.S. at 129–130. Neither condition is met. Lally shares counsel with the 14,910 claimants and identifies no other connection to them. And nothing stops them from protecting themselves—one of them has already filed a putative class action in California seeking these very fees, and Lally is a member of that putative class. Dkt. Nos. 471 ¶ 30; 471-14.

Lally's motion is a request for other people's money, and the rule against asserting other people's rights bars it. Whether he is owed anything himself is taken up below.

### 3.2 Valve is not refusing to arbitrate with Lally.

Lally fares no better on his own account. Whatever it is called, the relief he seeks is an order making Valve pay arbitration fees so his arbitration can go

forward. The Federal Arbitration Act allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" to petition a district court for an order compelling arbitration. 9 U.S.C. § 4. A refusal to arbitrate is a prerequisite to that relief. *Jacobs v. USA Track & Field*, 374 F.3d 85, 86 (2d Cir. 2004). Where the other side is trying to arbitrate, there is no failure, neglect, or refusal, and so no one to be aggrieved by one. *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1181 (9th Cir. 2025).

Valve is not refusing to arbitrate with Lally. It told his counsel it would proceed, asked AAA for an invoice covering his case alone, and committed to pay that invoice on receipt. Dkt. No. 471-17 at 4. Lally's counsel then asked AAA to deny Valve's request, and said plainly that the reason was to keep this motion alive. Dkt. No. 471-18 at 3.

Lally answers that AAA's rules made Valve's offer an empty gesture, because administrative fees in a mass arbitration must be paid in full before AAA completes its administrative procedures. Dkt. No. 475 at 2. Perhaps so. But Valve asked AAA to issue an individual invoice and promised to pay it, and Lally asked AAA to refuse. A party cannot oppose the very payment that would give him what he says he wants and then ask the Court to sanction his opponent for not paying. Whatever AAA's rules require, they do not turn Valve's willingness to arbitrate with Lally into a refusal to arbitrate with him.

**3.3 Alternatively, the requested sanctions are not appropriate.**

Lally asks for sanctions under the Court's inherent power and under Federal Rule of Civil Procedure 11.[1] Lally establishes neither.

Start with inherent power. "All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders." *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001). "Courts have the ability to address the full range of litigation abuses through their inherent powers." *Id.* To impose sanctions under that power, a district court must make a "specific finding of bad faith conduct or conduct 'tantamount' to bad faith." *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). Any monetary sanction imposed must be reasonable. *In re Matter of Yagman*, 796 F.2d 1165, 1184 (9th Cir.1986).

The multi-million-dollar sanction Lally asks for is not one the Court can impose. Nearly all of it goes to fees for people who are not before the court and go far beyond righting any wrongs that Lally has suffered due to Valve's actions. Because sanctioning Valve for its conduct against Lally, alone, in the amount of $20,875,400 would be unreasonable, the Court does not address whether Valve's actions constitute bad faith. Nothing in this Order should be read as a finding that it did or did not.

---

[1] The Parties' briefing also discusses civil and criminal contempt, but the motion does not ask the Court to hold Valve in contempt. *See* Dkt. No. 467 at 11–12. Accordingly, the Court does not address contempt.

Turning to Rule 11, its "central purpose . . . is to deter baseless filings." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). To comply with the rule, attorneys must certify that they have made a "reasonable inquiry" and determined that their filings are grounded in law and fact and are presented for a proper purpose. *Id.*; Fed. R. Civ. P. 11(b). "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(b)(2). The movant must also satisfy the rule's "safe harbor provision," which "gives an attorney the opportunity to withdraw or correct a challenged filing by requiring a party filing a Rule 11 motion to serve the motion 21 days before filing the motion." *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1150 (9th Cir. 2003). Those requirements are mandatory, and informal warnings will not do. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 788–89 (9th Cir. 2001).

Lally did not serve this motion on Valve twenty-one days before filing it. *See* Dkt. No. 471-17 (explaining that Valve would have agreed to arbitrate with Lally had it known of the motion before Lally filed it). That failure alone is reason to deny Rule 11 sanctions. Beyond it, Lally fails to articulate how Valve violated Rule 11(b) *in this case*. Instead, he relies on Valve's broader conduct in other proceedings, pointing to a "pattern of filing meritless lawsuits against law firms representing claimants" in arbitration and "[meritless] lawsuits against its own subscribers." Dkt. No. 475 at 6. Whether Valve's filings in other cases violate Rule 11 is an issue that must be decided in those cases—not here as a general, overarching matter.

Accordingly, the Court denies Lally's request for $20,875,400 in Rule 11 sanctions.

**3.4 Lally's remaining arguments are unpersuasive.**

Lally argues that "courts can and do compel parties to pay arbitration fees especially where, as here, the refusal to pay was strategic." Dkt. No. 475 at 5. He cites *Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016), in which the Ninth Circuit found that a district court likely can compel a party to pay its arbitration fees when that party has been compelled to arbitrate and refuses to do so. *Id.* (citing 9 U.S.C. § 4). But in *Tillman*, the Ninth Circuit did not address whether an individual may move for the payment of fees in a non-party's arbitration—the key issue here.

Lally also relies on *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020), and the facts there do resemble the facts here. In *Abernathy*, thousands of DoorDash couriers filed individual arbitrations over their classification as independent contractors, having each allegedly clicked through a contract with a mandatory arbitration provision. *Id.* at 1064. The couriers paid over $1,200,000 in AAA filing fees and DoorDash refused to pay its $12,000,000 in AAA administrative fees, arguing that the couriers should pursue relief through class action litigation. *Id.* "Following [DoorDash's] failure to pay the necessary fees, AAA closed all of the [courier's] files[.]" *Id.* at 1066.

The couriers petitioned the district court for an order compelling arbitration and payment of the corresponding fees under Section 4 of the FAA.[2] The court reviewed evidence about each petitioner to decide which ones had valid arbitration agreements with DoorDash. *Abernathy*, 438 F. Supp. 3d at 1065. Based on the evidence, the court found that 5,010 petitioners had arbitration agreements with DoorDash and thus ordered DoorDash to arbitrate those cases. *Id*. at 1065–67. The couriers separately asked the court to make DoorDash pay their fees and costs related to the arbitration under a California statute, and the court denied that request because the statute does not apply retroactively and the events at issue predated it. *Id*. at 1065–67. The court also acknowledged DoorDash's hypocrisy in forcing couriers into arbitration, then trying to force them into class litigation once the costs of arbitration exceeded what it wanted to pay. *Id*. at 1067–68.

So the *Abernathy* court entered an order to arbitrate. What it did not enter is an order making DoorDash pay the fees and costs of those arbitrations. The only relief *Abernathy* granted is the relief Valve has already offered Lally—an arbitration, with Valve paying for it. But *Abernathy* is an apt comparison in one respect. Valve moved to compel the Consumer Plaintiffs to arbitrate, and it won. Thousands of Steam subscribers then brought their own arbitrations under the provision Valve had just defended. Valve removed that provision a year later and took the position that the change ended those arbitrations. When AAA refused to

[2] Under Section 4, if the district court is satisfied "that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

close them and invoiced Valve $20,875,400, Valve declined to pay. That is the same about-face the *Abernathy* court described, and the Court has detailed its concerns with Valve's position concerning the updated SSA at length in *Valve Corp. v. Abbruzzese*, Case No. 2:24-cv-01717-JNW, Dkt. No. 169, denying Valve's motion for a preliminary injunction. This resemblance to *Abernathy*, however, does not entitle Lally to the relief he seeks.

## 4. CONCLUSION

Accordingly, the Court DENIES Plaintiff Lally's motion for sanctions, Dkt. No. 467, and DENIES AS MOOT his motions to strike Valve's notices of supplemental authority, Dkt. Nos. 580; 587.

Dated this 21st day of August, 2026.

Jamal N. Whitehead
United States District Judge