THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE VALVE ANTITRUST LITIGATION<br><br>This Document Relates to:<br>Publisher Plaintiffs | Case No. 2:21-cv-00563-JNW<br><br>**PUBLISHER PLAINTIFFS' RESPONSE TO INTERVENOR VICKI SHOTBOLT'S CROSS-MOTION FOR CLARIFICATION REGARDING PROTECTIVE ORDER** |



QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

## INTRODUCTION

Vicki Shotbolt's cross-motion seeks an impermissible advisory opinion, attempts an end-run around well-established procedures to request discovery materials from U.S. litigants and non-parties, and, if granted, would deprive Publisher Plaintiffs ("Plaintiffs") of a meaningful opportunity to respond to attempts to disclose their confidential documents. For these reasons, and as discussed below, Plaintiffs oppose Shotbolt's cross-motion.

The Protective Order entered by this Court provides the procedure for a party to disclose materials designated as "Confidential" or "Highly Confidential – Attorney's Eyes Only" if the party "is served with a subpoena or a court order issued in other litigation[.]" Dkt. No. 95 ¶ 7. After AAA Arbitrator Richard Mainland ordered Valve to produce confidential documents produced by Plaintiffs and third parties in this case, Valve moved for clarification that the Protective Order does not permit such disclosure. Dkt. No. 607. Valve submitted a proposed order that would limit disclosure "to subpoenas and court orders issued by federal and state courts *in the United States*," Dkt. No. 607-1 (emphasis added), but provided no argument in favor of that geographic limitation. Consumers involved in the arbitrations with Valve sought leave from this Court to file an opposition to Valve's motion as amici curiae. Dkt. No. 674. Plaintiffs followed with their own request to respond to both Valve and amici, Dkt. No. 680, asserting that the Protective Order, which governs all discovery material produced in this litigation, does not allow for the disclosure of materials designated as "Confidential" or "Highly Confidential – Attorney's Eyes Only" in separate consumer arbitrations. All three motions remain under consideration.

In the meantime, Vicki Shotbolt has acted as the class representative for opt-out collective proceedings under the UK Competition Act on behalf of "UK-based consumers who purchased PC games and/or additional content for such games" ("UK Proceeding"). Dkt. No. 688 ("Pearman Decl.") ¶¶ 4, 7. At the June 22, 2026 case management conference ("CMC") in the UK Proceeding, the Competition Appeal Tribunal of the United Kingdom ("CAT") ordered Valve to disclose documents it had already produced to Plaintiffs in this matter. *Id.* ¶ 1. Valve was also ordered to disclose (1) "the identities of the third parties who produced material in the US

Proceedings"; (2) "how many documents each third party produced"; and (3) "information as to the categories of documents produced by third parties." *Id.* ¶ 6.

During the CMC, counsel for Shotbolt and Valve discussed at length the proper order of operations for requesting and obtaining documents produced by Plaintiffs in this litigation. Valve informed the CAT of its motion for clarification pending before this Court and its proposed order which, if granted by this Court precisely as written by Valve, would limit ¶ 7 of the Protective Order to U.S. federal and state courts. *Id.* Ex. 6 ("Tr.") at 59:26–60:4. Valve urged the CAT to wait until the Court decided this issue before ordering Valve to disclose third-party documents and potentially "plac[ing] Valve at risk of . . . penal sanctions" in the United States. *Id.* at 60:1–13. Shotbolt's counsel, on the other hand, asked the CAT to notify this Court of the possibility of a third-party disclosure order in the UK Proceeding, and offered to draft a letter for the CAT to consider. *Id.* at 97:23–98:3. The CAT declined to do so, noting that it would be more appropriate for Shotbolt to "seek[] to intervene in whatever way is possible within the US courts." *Id.* at 98:7–12.

Shotbolt anticipates that the CAT will hear issues relating to the disclosure of Plaintiffs' documents sometime after November 2, 2026, "at which point the Tribunal may order Valve to re-produce" those materials. Pearman Decl. ¶ 15. Regardless, she moved to intervene, Dkt. No. 686, in this case—prior to the issuance of such an order—and cross-moved to seek "clarification" as to whether the disclosure of confidential material in response to a discovery order issued by a foreign court would violate the Protective Order, *see* Dkt. Nos. 687, 687-1.

Plaintiffs oppose Shotbolt's cross-motion because it (1) seeks an impermissible advisory opinion, (2) attempts to bypass existing procedure for requesting discovery materials from U.S. litigants and non-parties, and (3) deprives Plaintiffs of a meaningful opportunity to respond to disclosure of their confidential documents. In the event the Court allows Shotbolt to file supplemental briefing on foreign discovery, Plaintiffs respectfully request leave to respond in order to preserve their legitimate privacy and confidentiality interests.

## ARGUMENT

### A. Shotbolt Seeks an Impermissible Advisory Opinion.

Courts "adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Concurrently with this duty, courts should refrain from "issu[ing] advisory opinions" or "declar[ing] rights in hypothetical cases." *Id.* By doing so, courts avoid "premature adjudication" and "entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Shotbolt's cross-motion, however, asks the Court to do what is "constitutionally forbidden": issue an opinion on a speculative issue that is not ripe for review. *U.S. v. Guzman-Padilla*, 573 F.3d 865, 879 (9th Cir. 2009).

Shotbolt seeks clarification of whether ¶ 7 of the Protective Order permits disclosure of confidential documents based on orders issued by foreign courts or judicial bodies. But she also concedes numerous times that the CAT has not actually ordered the disclosure of Plaintiffs' confidential documents.[1] *See, e.g.*, Pearman Decl. ¶ 15 ("Valve has not yet been ordered to produce the third-party materials from the US Proceedings."); Dkt. No. 687 at 8 (same). In fact, following the most recent CMC in the UK Proceeding, the CAT merely ordered Valve to provide a list of the third parties who produced discovery in this case, the number of documents produced, and the categories of documents produced. Pearman Decl. Ex. 5 ¶ 6. The CAT also expressed that it did not think it would be "appropriate for the Tribunal to be writing" to the Court on the issue of compelling discovery of Plaintiffs' documents. Tr. 98:7–12. Shotbolt's assertion that the CAT will reconvene after November 2, 2026 "to address issues arising from the US Valve Documents" and

[1] Plaintiffs dispute the relevance of their documents to Shotbolt, who represents consumers in the UK Proceeding. It is highly questionable that Plaintiffs' documents are of any material significance in Shotbolt's case, or that the disclosure of such documents is necessary to dispose fairly of the consumer claim in the CAT. *See* Armitage Decl. ¶ 10. Thus, Plaintiffs maintain that Shotbolt could not satisfy the necessary jurisdictional requirements or thresholds for the CAT to order disclosure of Plaintiffs' documents, as they are also non-parties to the UK Proceeding and domiciled outside the UK. *Id.* ¶¶ 7(a), 12–13.

"*may* order Valve to re-produce Third Party Materials from the US Proceeding[,]" Dkt. No. 687 at 8, does not provide a definitive or concrete issue for the Court to adjudicate at this time.

Valve's proposed order modifying ¶ 7 in the Protective Order to limit it to orders and subpoenas from courts "in the United States" does not create a justiciable controversy for the Court to consider. *See* Dkt. No. 607-1; *see, e.g.*, *Doe v. Apple Inc.*, Civ. No. 3:22-2575, 2023 WL 3301795, at *5 (S.D. Ill. May 8, 2023) (noting that a proposed order does not constitute a pleading or present a justiciable issue). At this point the proposed order language is nothing more than Valve's proposal, and Valve does not discuss it in its accompanying motion for clarification, as conceded at the CMC, Tr. 65:5–9, and as discussed by Shotbolt herself, *see* Dkt. No. 687 at 7–8. Ultimately, Valve's inclusion of language that would limit ¶ 7 to U.S. courts is unsupported and immaterial to the motion to clarify the Protective Order's application to U.S. arbitrations, and Shotbolt cannot hinge her motion to clarify upon it.

Characterizing the motion as a request for "clarification" also does not clear the constitutional hurdle. Without an actual order from the CAT or even a document request, the Court "cannot properly . . . give a party legal advice" as to whether the sought-after materials are discoverable under the Protective Order. *Tucson v. Seattle*, Civ. No. 23-17, 2024 WL 4290297, at *1 (W.D. Wash. Sept. 25, 2024) (refusing to provide an advisory opinion regarding whether a party's hypothetical action would comply with a prior order); *see also MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, Civ. No. 17-2522, 2018 WL 11468492, at *2 (C.D. Cal. Nov. 26, 2018) (declining to "clarify" stipulated protective order and interpret stipulated protective order as allowing the production of private information because "[a]bsent information about what *specific* discovery requests are at issue . . . the Court will not issue an order that is, in effect, an advisory opinion compelling production"). Federal courts do not have "the constitutional authority to clarify a hypothetical situation not before it." *Brown v. Google, LLC*, Civ. No. 4:20-3664, 2023 WL 4336718, at *1 (N.D. Cal. May 1, 2023); *see also In re Morning Song Bird Food Litig.*, Civ. No. 12-1592, 2015 WL 12791471, at *1, 3 (S.D. Cal. Feb. 6, 2015) (declining to "curtail the scope of . . . existing confidentiality agreements" where the motion did not inform the court "of the exact

language the Plaintiffs challenge; the identities of the former employees and contractors Plaintiffs seek to interview; their job titles and a description of their roles; and the circumstances of their departures.”).

None of Shotbolt’s cited case law supports her contention that the Court could permissibly provide “clarification” here. The court in *ODS Technologies* was considering a “motion for enforcement of protective order” where the movant made a specific challenge about whether the protective order would prohibit a specific individual from viewing confidential information. *ODS Techs., L.P. v. Magna Entm’t Corp.*, 583 F. Supp. 2d 1141, 1142–43 (C.D. Cal. 2008). *Thakur v. Trump* is inapposite because it discussed whether a court could determine if a preliminary injunction had been violated while the preliminary injunction order was on appeal. 795 F. Supp. 3d 1168, 1178 (N.D. Cal. 2025). And *Idaho Wool Growers* was decided in response to a specific motion to clarify a prior judgment by a party to that judgment, not an intervenor. *Idaho Wool Growers Ass’n v. Schafer*, Civ. No. 08-394, 2009 WL 3806371, at *1 (D. Idaho Nov. 9, 2009).

### B. Shotbolt’s Cross-Motion Attempts to Bypass Established Methods for Seeking Discovery Produced in This Case.

To be clear, avenues exist for foreign private litigants to seek discovery from U.S. citizens, but moving for “clarification” of a protective order is not one of them. Courts typically consider discovery requests from foreign courts or private foreign parties under 28 U.S.C. § 1782. *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 911 (N.D. Cal. 2019); *see also* Armitage Decl. ¶ 13. Section 1782 provides that a U.S. federal court “may order” a person under its jurisdiction “to give testimony or produce documents ‘for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person.’” *Matter of Lufthansa Technik AG*, Civ. No. 11-1386, 2011 WL 13586068, at *1 (W.D. Wash. Oct. 6, 2011) (quoting 28 U.S.C. § 1782). It was enacted to encourage “efficient assistance to participants in international litigation[.]” *In re Gliner*, 133 F.4th 927, 932 (9th Cir. 2025) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004)).

Upon receipt of such an application, the Court could consider whether the requesting party meets the statutory requirements under § 1782 and weigh the four discretionary factors outlined in *Intel Corp.*[2] *In re Degitechnic*, Civ. No. 07-414, 2007 WL 1367697, at *3 (W.D. Wash. May 8, 2007). But Shotbolt does not make such a request, and her motion does not discuss any of the relevant factors for the Court to consider.

The Hague Convention on the Taking of Evidence in Civil or Commercial Matters, Aug. 8, 1972, 23 U.S.T. 2555, 847 U.N.T.S. 231 (the "Hague Convention"), of which both the United States and the United Kingdom are signatories, also creates procedures for cross-national discovery requests. The Hague Convention "prescribes certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state." *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 524 (1987). Shotbolt's motion makes no mention of the Hague Convention.

Each of these established discovery procedures would be a more legitimate means to request Plaintiffs' documents than Shotbolt's motion for "clarification," which does not actually request any discovery or create any live controversy to adjudicate. *See MSP Recovery Claims*, 2018 WL 11468492, at *2.

### C. Shotbolt's Cross-Motion Does Not Give Plaintiffs a Meaningful Opportunity to Respond.

Shotbolt's attempt to circumvent foreign discovery processes by asking for an advisory opinion also deprives Plaintiffs of a meaningful opportunity to raise legitimate concerns about the privacy of their produced materials, fully weigh the discovery against the costs and burdens that

---

[2] Even if a requesting party meets § 1782's statutory requirements, a district court is not required to grant the petition but instead may make its decision in consideration of: "(1) whether the application seeks discovery from a party that 'is a participant in the foreign proceeding[;]' (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance[;]' (3) whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions' or a foreign country's policies; and (4) whether the request is 'unduly intrusive or burdensome.'" *Nichiei Intec Co., Ltd.*, Civ. No. 2:23-00066, 2023 WL 7001666, at *2 (W.D. Wash. Oct. 24, 2023) (quoting *Intel Corp.*, 542 U.S. at 264–65).

discovery would impose, and obtain reasonable costs for producing those materials and the work product they generated in this litigation.[3]

Although there is no specific discovery request for Plaintiffs or the Court to consider, Valve's counsel told the CAT at the CMC that they had collected about 50,000 documents from Plaintiffs and third parties in this litigation, and emphasized that "many of them are highly confidential." Tr. 56:7–13. Shotbolt's cross-motion makes cursory and unsubstantiated reassurances that such confidential materials would be subject to "comparable protections" in the UK Proceedings, but the record proves otherwise. In reality, when asked whether differences existed between U.S. and UK laws on privilege, counsel for Valve conceded "they are broadly aligned, but the overlap isn't complete." *Id.* at 33:7–15.

The Confidentiality Ring Order ("CRO") entered in the UK Proceeding shows the gap in protection that Plaintiffs would likely suffer if Valve were ordered to disclose Plaintiffs' produced documents. It provides for a single layer of confidentiality and membership is limited only to those listed in Part A as "Confidentiality Ring Members": Vicki Shotbolt, Class Representative's counsel and experts, certain Valve employees, and Valve's counsel and experts. Pearman Decl. Ex. 7 ("CRO"), Part A; Armitage Decl. ¶¶ 7(c), 18, 23. The rights and obligations in the CRO run exclusively between the individuals on this list. CRO ¶ 5.3; Armitage Decl. ¶¶ 22, 25.

As the CRO is written, Plaintiffs—who are nonparties in the UK Proceeding and not included in the CRO—would have no right to raise disputes. CRO ¶ 5.8.2; Armitage Decl. ¶¶ 22, 25. If their documents are disclosed, Plaintiffs would be wholly reliant on the parties in the UK Proceeding—one of whom, Valve, is adverse to Plaintiffs in the present litigation—to protect the confidentiality of their information. *Id.* And if Shotbolt were to contest the confidentiality of a

[3] Although § 1782 petitions are typically considered on an ex parte basis, subjects of a § 1782 subpoena can exercise their due process rights by moving to quash or modify the subpoena. *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). In addition, courts have given the subject of the foreign discovery the opportunity to respond to a § 1782 subpoena on numerous occasions. *See, e.g.*, *In re Consultants*, Civ. No. 16-80118, 2016 WL 3124609, at *2 (N.D. Cal. June 3, 2016) (listing cases).

document, no mechanism allows Plaintiffs, the owners of the documents, to be notified of the dispute or to justify the document's confidentiality. Armitage Decl. ¶ 25(a). Only Valve, Plaintiffs' adversary in this action, has the ability to respond to a confidentiality challenge. *Id.* This is particularly problematic because the CAT's guidance presumes that documents older than five years are not subject to claims of confidentiality. *Id.* ¶ 22. Plaintiffs also would not be able to object to requests for disclosure, CRO ¶ 6, Armitage Decl. ¶ 25(c); object to the inclusion of new members to the CRO, Armitage Decl. ¶¶ 7(d), 25(b); or seek enforcement in cases of breach, CRO ¶ 10, Armitage Decl. ¶ 25.

Plaintiffs have provided only a preview of their concerns here. If the Court resolves to consider a formal petition for discovery from Shotbolt or the CAT, Plaintiffs respectfully request the opportunity to more fully brief these issues as a discussion of the undue burdens such disclosure would pose and potential solutions for protecting Plaintiffs' interests.

## CONCLUSION

For these reasons, the Court should deny Shotbolt's Cross-Motion for Clarification Regarding Protective Order.



QUINN EMANUEL URQUHART & SULLIVAN
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
TEL: (206) 905-7000

DATED: August 31, 2026

Respectfully submitted,

/s/ Alicia Cobb

Alicia Cobb, WSBA #48685
Matthew Hosen, WSBA #54855
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
Phone (206) 905-7000
Fax (206) 905-7100
aliciacobb@quinnemanuel.com
matthosen@quinnemanuel.com

Steig D. Olson (*pro hac vice*)
David LeRay (*pro hac vice*)
Nic V. Siebert (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
Phone (212) 849-7000
Fax (212) 849-7100
steigolson@quinnemanuel.com
davidleray@quinnemanuel.com
nicolassiebert@quinnemanuel.com

Adam Wolfson (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Phone: (213) 443-3285
Fax: (213) 443-3100
adamwolfson@quinnemanuel.com

Ankur Kapoor (*pro hac vice*)
Noah Brecker-Redd (*pro hac vice*)
CONSTANTINE LLP
22 Vanderbilt Avenue, 15th Floor
New York, NY 10017
Phone (212) 350-2700
Fax (212) 350-2701
akapoor@constantinellp.com
nbrecker-redd@constantinellp.com

*I certify that this memorandum contains 2,890 words, in compliance with the Local Civil Rules.*

/s/ Tyre L. Tindall

Tyre L. Tindall, WSBA #56357
McKinney Wheeler, WSBA #60635
WILSON SONSINI GOODRICH & ROSATI P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Phone (206) 883-2500
Fax (866) 974-7329
ttindall@wsgr.com
mckinney.wheeler@wsgr.com

Kenneth R. O'Rourke (*pro hac vice*)
Jordanne M. Steiner (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1700 K Street, NW, Suite 500
Washington, DC 20006
Phone (202) 973-8800
Fax (866) 974-7329
korourke@wsgr.com
jsteiner@wsgr.com

W. Joseph Bruckner (*pro hac vice*)
Joseph C. Bourne (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Phone: (612) 339-6900
Fax: (612) 339-0981
wjbruckner@locklaw.com
jcbourne@locklaw.com
lmmatson@locklaw.com

Kyle Pozan (*pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
1165 N. Clark Street, Suite 700
Chicago, IL 60610
Phone: (312) 205-8968
kjpozan@locklaw.com

Kristie A. LaSalle (*pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
265 Franklin Street, Suite 1702
Boston, MA 02110
Phone: (617) 655-6100
kalasalle@locklaw.com

*Publisher Plaintiff Class Counsel*