# EXHIBIT 1

COMPETITION APPEAL TRIBUNAL

# PRACTICE DIRECTION 2/2026

## DISCLOSURE: MANAGEMENT OF CONFIDENTIAL INFORMATION

### Introduction

1. This Practice Direction sets out the Tribunal's general approach to confidentiality. It supersedes Practice Direction 1/2024.

2. The Tribunal continues to see large volumes of documents subject to excessive and unparticularised claims to confidentiality, and the use of overly complex confidentiality rings. This increases costs, causes unnecessary difficulties in hearings, and is not consistent with the principles of open justice. This Practice Direction is intended to ensure that confidentiality is dealt with proportionately, efficiently and in a timely manner during proceedings. Failure to observe it may have costs consequences.

### Confidential treatment of information

3. When considering claims for confidentiality, the Tribunal's starting point will be Rule 102 of the Competition Appeal Tribunal Rules 2015, which limits the use of documents disclosed for the purpose of the proceedings.

4. When considering whether information needs any further confidential protection, the Tribunal will need to consider: (i) the sensitivity of the relevant information; and (ii) how to balance different interests with regard to disclosure of that information in the proceedings, taking into account in particular the importance of the information to the case, or stage of the case.

*Sensitivity*

5. As a starting point, when considering the sensitivity of information, the Tribunal will, pursuant to Rule 101(2), have regard to the need to protect:

   (a) information the disclosure of which would in the Tribunal's opinion be contrary to the public interest;

   (b) commercial information the disclosure of which would or might, in the Tribunal's opinion, significantly harm the legitimate business interests of the undertaking to which it relates; and

(c) information relating to the private affairs of an individual the disclosure of which would, or might, in the Tribunal's opinion, significantly harm that person's interests.

6. Whether information falls within one or more of the above categories and should be considered sensitive will require a fact-specific analysis in any given case. In conducting that analysis, the Tribunal will consider whether a reasonable person in the position of the relevant party could regard the information as sensitive, in the context of the usage and practices in the relevant sector. The subjective view of the party claiming confidentiality will not be decisive as to whether the information concerned is sensitive.

7. In relation to commercial information, the Tribunal will take into account whether the disclosure of the information would likely put the party at a competitive disadvantage or give competitors an advantage.

8. In relation to information concerning an individual, the party claiming confidentiality must show how disclosure of that information might cause significant harm to that individual. Disclosure of an individual's name in itself will not normally be regarded as sensitive.

9. The Tribunal would not normally expect information with the following characteristics to be sensitive:

   (a) data or other information that is more than five years old;

   (b) information that is unspecific or general;

   (c) statements that are aspirational rather than containing sensitive strategic content; and

   (d) information that is already in the public domain or can readily be deduced from information in the public domain.

10. There should, however, be no assumption that data or other information that is less than five years old is necessarily sensitive. More recent information may cease to be sensitive where subsequent developments have superseded it or deprived it of the qualities that made it sensitive.

*Balancing different interests*

11. In managing the disclosure of sensitive information, the Tribunal will balance the interests of the receiving party in having the fullest possible access to relevant documents against the interests of the disclosing party, including third parties, in preserving the confidentiality of sensitive information.

12. The Tribunal may also have to balance the public interest against the interests of the disclosing party. In such cases, the Tribunal will need to weigh the public interest in maintaining confidentiality against a countervailing public interest in disclosure. For example, a claim for confidentiality may be displaced by the public interest in the information entering the public domain where it reveals serious wrongdoing. On the other hand, there may be reasons of national security or public policy that militate against disclosure of sensitive information.

13. The significance of the information in the proceedings will be material to the balance between disclosure and confidentiality. The nature of the proceedings may also be relevant to that balance. For example:

(a) In Competition Act 1998 and other regulatory appeals there is likely to be information from third parties, including competitors or business counterparts of the appellant, which legitimately requires protection. There may also be information held by the competition authority or regulator whose disclosure may be contrary to the public interest.

(b) In private proceedings, particularly between parties operating in the same market, complex issues of commercial sensitivity may arise. These may include competition concerns where the documents contain information on commercial strategy, costs or margins. There may also be questions of third-party confidentiality arising from the disclosure of regulatory investigation material: see e.g. Practice Direction relating to disclosure and inspection of evidence (14 March 2017) and the directions given in *Commercial Buyers Group v Associated Lead Mills* (order of 31 March 2023).

(c) In collective proceedings, commercial sensitivity is unlikely to be a basis for withholding disclosure to a class representative who is not active in the relevant industry or business. It may, however, be necessary to restrict documents from wider dissemination, such as to class members. Any disclosure to class members should take account of (among other things) the size and composition of the class, and whether it is reasonably necessary for them to review the documents or a confidential summary thereof.

**Claiming confidential treatment**

14. The burden is on the party claiming confidentiality to produce clear and cogent evidence that explains why its information should be treated as confidential. In accordance with Rule 101(1), any claim for confidentiality must refer to the precise words, figures or passages claimed to be confidential and must be supported by specific reasons rather than general assertions. The Tribunal will expect any confidentiality designation to be limited to what is strictly necessary and will not readily accept that the entire contents of a document or a whole class of documents are confidential.

15. There may be occasions when unparticularised or "blanket" designations of confidentiality may be appropriate as a pragmatic and proportionate first step early in proceedings, for example where a party is disclosing information from other proceedings or where the volume of material to be disclosed makes an assessment of each specific document impractical at the outset. However, that approach should be limited to documents or categories of documents that genuinely require it. Blanket designation invariably defers resolution of confidentiality issues and must therefore be justified by a clear explanation of why it is necessary at that stage, together with a proportionate plan for resolving those issues which minimises the demand on the parties and the Tribunal.

16. Many cases before the Tribunal involve significant third-party sensitive information. Such situations often require the third party to be notified of the disclosure and given an opportunity to consent or object. Depending on the number of documents and third parties involved, this can create significant procedural complexity and cost, distracting from the substantive issues in the proceedings. The Tribunal should be made aware of all

procedural and practical issues regarding third-party confidentiality at the earliest opportunity, with proposals as to how those issues should be resolved in sufficient time before trial.

**The protection of sensitive information**

17. Different types of information may require different degrees of protection, according to their value and potential for misuse.

18. The most common means of protecting sensitive information is a confidentiality ring under Rule 101(3). Although some information may require several tiers of confidential protection through "outer" and "inner" confidentiality rings, that increases cost and complexity and should be used sparingly.

19. Where confidentiality rings are used, it should be exceptional for a case to proceed to trial without any client representative of a party being able to see information that is likely to play a substantial part in the proceedings. That will be particularly important where legal representatives or experts need instructions on that material. This may require at least one client representative of the relevant party to be included in the ring. In determining whether such representatives are appropriate, the Tribunal will take into account, among other things:

   (a) the role of those representatives in the business and in other litigation in which they are or may be involved. In particular, where client representatives are involved in making ongoing business decisions that may affect competition between the entities whose sensitive information is at issue, inclusion in the ring is unlikely to be appropriate;

   (b) the extent to which the involvement of those representatives is necessary to provide relevant instructions to the party's legal representatives and experts;

   (c) the position of other key stakeholders such as litigation funders and/or ATE insurers, and the need for them to receive full and clear information, recognising that confidential summaries of underlying materials may suffice where those materials contain sensitive material; and

   (d) the need for even-handed access between claimant and defendant representatives.

20. The Tribunal will generally expect parties to provide a non-confidential copy of a pleading, skeleton argument, witness statement or expert report referred to or quoted in open court to a non-party upon request: see §9.66 of the Tribunal's Guide to Proceedings 2015. For other documents (or, in exceptional circumstances, for pleadings, skeleton arguments, witness statements and expert reports), parties are referred to Rule 102(2) of the Competition Appeal Tribunal Rules 2015 and reminded that the Tribunal may make an order disapplying Rule 102(2)(a) in respect of a document which has been disclosed, even where the document has been read to or by the Tribunal, or referred to, at a hearing which has been held in public.

**Confidentiality Protocol**

21. The parties should generally seek to agree how sensitive information can best be protected in a Confidentiality Protocol, which should be kept under review as the case

develops. Work on such a protocol should ideally start before the commencement of proceedings (as part of pre-action correspondence) but in any event should be considered at the earliest possible time in the proceedings.

22. The parties should provide the Confidentiality Protocol to the Tribunal at an appropriate stage in the proceedings and identify when the Tribunal can most usefully engage with confidentiality issues. If the initial case management conference is too early to deal with confidentiality, the parties should propose another suitable time for the Tribunal to consider the matter, bearing in mind that it should be considered before directions for disclosure or directions to trial are made.

23. The Confidentiality Protocol should typically cover:

(a) the nature and extent of any sensitive information in respect of which each party may require protection, including any third-party information;

(b) any general principles that may assist in determining whether information requires protection;

(c) whether and for what reason the parties propose any blanket confidentiality designations, and the proposed timing (if any) for de-designation;

(d) any confidentiality rings which the parties have put in place or propose to put in place;

(e) how and when confidentiality claims will be made and challenged before the Tribunal;

(f) the highlighting scheme or any codes to be used in any confidential bundle; and

(g) when and how the Tribunal will review the treatment of confidential material for use at trial.

**Preparation for trial**

24. The parties and the Tribunal should consider the confidential treatment of material at trial before the trial bundles are prepared. This should take place no later than the pre-trial review but may need to occur at an earlier hearing if greater time is needed to prepare the trial bundles. The parties should, at this stage, be in a position to confirm:

(a) the proposed steps to ensure that confidential material in the trial bundle is kept to a minimum; and

(b) how information treated as confidential will be managed at trial.

25. Confidential information should be clearly identified in confidential hearing bundles that comply with paragraph 6 of Practice Direction 1/2026. Parties should also explain any colour shading used and should set out which categories of information may be referred to and when during the hearing. If codes are being used for individuals or entities, a key must also be provided to the Tribunal.

26. Where confidentiality disputes remain and the Tribunal is satisfied that there is no material detrimental effect on open justice, a party may indicate that although it does not agree with a confidentiality claim, it will not devote resources to challenging it and (subject to the Tribunal ruling otherwise) is content for discussion of that material to take place in a closed session at trial.

The Hon Mrs Justice Bacon
President

**10 August 2026**