# EXHIBIT 3

# Hearing Transcript

**Case Number: N/A**
**Date: October 31, 2024**

**In the matter of:**

# JAMES McINERNEY, et al. v VALVE CORP.

# HEARING

CERTIFIED COPY

Reported by:
PAULA BEKKER-MURPHY

**Steno**
**Official Reporters**

**1100 Glendon Avenue**
**Suite 1850**
**Los Angeles, CA 90024**
**concierge@steno.com**
**310.573.8380**

AMERICAN ARBITRATION ASSOCIATION

COMMERCIAL ARBITRATION TRIBUNAL

JAMES McINERNEY & 24 Other Individual Claimants,

Claimants,

vs.

VALVE CORP.,

Respondent.

________________________________/

REMOTE HEARING - STATUS CONFERENCE

\- - -

Thursday, October 31st, 2024

2:00 P.M. EST - 4:10 P.M. EST

Held Before: Arbitrator Richard Mainland

Stenographically Reported by:
Paula Bekker-Murphy
STENO
Concierge@Steno.com
(888) 707-8366

So -- I respectfully, Arbitrator, I agree that you said in your order, I interpret paragraph 7 to apply to arbitration proceedings, but you don't actually say that that's what the Federal Court protective order says or explain how it applies to arbitration procedures.

ARBITRATOR MAINLAND: I think I'm interpreting it -- and I'm not going to say this is a definitive statement of my reasoning. But the whole purpose, as I understand it, of the protective order is that the third parties are producing documents that they feel are confidential, and they -- Valve was really willing, and claimants were willing, to treat them as confidential subject to a protective order, and that without -- and that any further dissemination of those documents presumably would not be done without the permission of the Federal Court or another tribunal that the Federal Court would defer to in that respect, but that Valve couldn't simply decide to -- oh, we've been sued in some arbitrations here. I'm going to start disclosing these third-party confidential documents.

But the Court seemed to acknowledge



there could be other proceedings that -- in which those documents might be sought from Valve, and that that should -- in that case, whether by subpoena or court order, that production should not be made by Valve without giving these third parties the opportunity to object and be heard, assuming they even care.

But let's assume that, as you say, these are the sensitive documents from these third-party standpoints, they should be given the opportunity to object if they want to and be heard. That -- as a matter of substance, that should not depend on whether the documents are sought by a subpoena or a court order, and that the Courts -- the Courts dealt -- came up with language, presumably not in the context, for example, of saying, well, I know there are a bunch of arbitrations out here, but I'm excluding those. I'm just going to have this notice and objection procedure for court litigation, not for arbitrations.

My belief would be that the Court wasn't even thinking about arbitrations at that point. And that's why I don't -- I think the Court was actually just concerned that these third parties



be given an opportunity to object if compulsory process was served on Valve requiring Valve to produce those documents.

So I understand your position. I think it's an issue that can go either way. And I understand your position is that -- your position is that only your position is correct.

MR. FUCHS: Well --

ARBITRATOR MAINLAND: You may be correct on that, and we'll find out what a court says if it ever comes to a court decision on that issue.

MR. FUCHS: Yeah. And I guess, Arbitrator, the one just final thing I'd say on it is, I appreciate the logic that you've applied to that question, but I think you've acknowledged that although that might be what you could imagine the Court might have intended if it thought about arbitrations, that's not the language in the Court's order.

And I think -- I think you'd also acknowledge that parties cannot violate court orders based on what they think the Court should have said, what language the Court should have included in its orders. And that's -- and that's simply where we are.



ARBITRATOR MAINLAND: That is where we are. And let me just say that in terms of the -- your description of the horrendous practical and other problems that would be incurred if you went into -- Valve went into court and asked the Court to modify its protective order, I'm not impressed with those arguments. Let me just say I don't -- I don't see the insuperable practical problems, but I do understand why Valve does not want to produce those documents in these arbitrations.

So in any event, Mr. Bucher, you were indicating an interest in saying something?

MR. BUCHER: Absolutely. I mean, I think we keep starting from the premise that a court modification would be necessary. I just don't agree with that. The title of Section 7 refers to litigation, and then the language says "a subpoena or court order issued in another litigation." It doesn't say "a subpoena or court order issued by another court." It says "in another litigation."

And so clearly that is contemplating that there could be subpoenas or court orders issued in litigations that did not concern a

court. I also -- so I don't think any modification is necessary. I think that that is the correct reading. I'm not saying that Valve Corporation's reading is, you know, unintelligible or makes no sense, but I think that's the correct reading.

But I also think a question that is even a more threshold question is, well, if that reading is wrong, what does that mean? Valve Corporation is taking the position that without Section 7, this is like a secrecy order. This is like top secret. You can never disclose it. But that -- but if you eliminate Section 7 from that protective order, it means they can disclose it all they want in response to a court order.

So even if it were true that that section only addressed the Court, the correct reading would be, well, then there's -- they don't even need to do anything. They don't even need to provide notice. They've been ordered to do something by a court and now they can produce it.

I don't know that it makes sense to relitigate this here. I mean, I think you've already ruled on this, and I think you're attuned



to these issues, but I just don't find it credible when Valve says they're worried about being sanctioned by the Federal Court. They've made the argument. You've rejected it. You've rejected it in writing. You've issued an order that pursuant to the SSA, you have the full power to issue the same orders that a court could. Pursuant to the Federal Arbitration Act, you have the full power to issue subpoenas. You've ruled, and I can't imagine any judge is going to come and sanction Valve Corporation for complying with your order having made the argument. That just seems unlikely to me.

And I fear that what's going on here is this is just being used as a way to withhold or redefine the scope of production here. I don't know -- you know, I see your agenda. I don't want to overlap points, and I want to make sure we're moving through it. I feel like we've been talking about 3. I don't know to what extent we're done on 2.

ARBITRATOR MAINLAND: Actually, I had one other question on 2, but then we can get into 3 which is important, obviously.

In terms of the October 28th letter from



Mr. McTeague, Mr. Fuchs, the -- that letter does not -- it states that Valve is willing to produce or plans to produce various categories of documents subject to entry of a protective order, but it doesn't relate that to the documents that I ordered produced by the September 16th order. Can you enlighten me on that?

MR. FUCHS: So putting aside the ones covered by the Wolfire protective order, I believe that it covers everything else, and that's part of what we're trying to do here. By simply producing all these documents, we're actually producing more than was requested. But if there's -- ultimately if there's something that Mr. Bucher thinks that was ordered that isn't included here, he can follow up, but I think it covers those categories.

ARBITRATOR MAINLAND: Okay. Then I'm ready to go on to the protective order issues. And let me say that I have received proposed protective orders from both sides. Actually, I received one last summer from Valve, but I received a -- then I received one in early October from Mr. Bucher's firm, and then with the October 28th letter from Mr. McTeague that



attached another proposed protective order from Valve.

And I've gone -- I've gone through that order, and they're -- and the -- I basically compared that order as the applicable one that Valve is proposing and compared that back with Mr. Bucher's proposal in early October.

And there -- I will, first of all, say that, Mr. Fuchs, I think the Valve order of October 28th does make an effort to actually track and use language from Mr. Bucher's order on certain issues so that there are some parts of it that aren't in dispute, but then there are several key and important areas of differences between the two orders that I thought we might hear from counsel on in this conference today.

MR. FUCHS: Yeah. And I think there are really -- so as Mr. Bucher said in his e-mail from this morning, we haven't had a chance -- we haven't had the opportunity -- the parties' schedules didn't work, apparently, and so we haven't spoken by phone.

But the parties have been speaking by phone more generally about this protective order border issue, because this same one has come

ARBITRATOR MAINLAND: I anticipate both sides making a number of arguments to the Court.

And, Mr. Tavakoli, I think in your -- just to circle back for a second to this potential briefing on a request for a temporary stay, I think it would be meaningful, if you have any authority on arbitrators' authority to stay their arbitrations, then that would be helpful as opposed to courts staying arbitrations or staying court proceedings. And also, factually, a little bit more information on when and how you think this petition to enjoin is going to get resolved by the Court.

MR. TAVAKOLI: Yeah, and I'll say on the first point that there are not published decisions of arbitral decisions, awards, so we're likely not to be submitting those.

But what I can say is that arbitrators have entered stays, including in a number of the matters that Mr. Bucher is litigating here and under the exact same facts. And that under Rule 23, you have the inherent authority to ensure that the arbitrations proceed in the most efficient way. And it's fundamentally inefficient to have -- you know, first, to have,



you know, parallel court and arbitration proceedings where claimant's counsel concedes that he is forum shopping, but second and more fundamentally, where you have a pending petition in court, which is the only forum that can resolve the question to enjoin the arbitrations.

ARBITRATOR MAINLAND: Okay. I think that comes to the end of my agenda. And I will send out a simple e-mail to counsel today just confirming the specific short-term dates for things to happen that we've agreed to. If I get them wrong, be sure to call it to my attention. And I'll look forward to hearing back from you.

MR. BUCHER: Thank you, Arbitrator.

ARBITRATOR MAINLAND: Okay. Thank you all.

MR. FUCHS: Thank you, Arbitrator.

ARBITRATOR MAINLAND: Yep. Bye now.

(Time noted: 4:10 p.m.)



COURT CERTIFICATE

STATE OF FLORIDA }
BROWARD COUNTY }

I, PAULA BEKKER-MURPHY, Stenographic Court Reporter, State of Florida at Large, certify that I was authorized to and did stenographically report the foregoing proceedings and that the transcript is a true and complete record of my stenographic notes.

Dated this 31st day of October, 2024.

PAULA BEKKER-MURPHY
Stenographic Court Reporter