# EXHIBIT 4

# Hearing Transcript

Case Number: 01-23-0005-3067
Date: January 23, 2005

In the matter of:

# WRIGHT & 24 OTHER INDIVIDUAL CLAIMANTS v VALVE CORP.

# HEARING

## TELEPHONIC HEARING

CERTIFIED COPY

Reported by:
Paula Bekker-Murphy

Steno
Agency, Inc.

1100 Glendon Avenue
Suite 1850
Los Angeles, CA 90024
concierge@steno.com
(888) 707-8366

AMERICAN ARBITRATION ASSOCIATION

COMMERCIAL ARBITRATION TRIBUNAL

CASE NUMBER: 01-23-0005-3067

TYLER WRIGHT & 24 OTHER
INDIVIDUAL CLAIMANTS,

Claimants,

vs.

VALVE CORPORATION,

Respondent.
________________________________/

TELEPHONIC HEARING

- - -

Wednesday, May 27th, 2026

1:00 P.M. EST - 3:50 P.M. EST

Held Before: Arbitrator Sanford Jossen

- - -

Stenographically Reported By:
Paula G. Bekker
STENO
Concierge@Steno.com
(888) 707-8366

Page 50

of this is -- you know, we've hit a brick wall here. There's nothing happening in the arbitrations at all. And whatever it is I decide, whatever it is I order no longer means anything. It's all moot.

So I would think that maybe what we should do -- and I'm not kicking the can down the road. I'm just trying to be practical here. Maybe what we should do is hope that the Court keeps its words, issues its order, whichever way it goes, and if it does deny the motion for preliminary injunction, then I would ask the Court as part of its order to clarify, you know, use of the protective order and discovery and production of non-party items, you know, for use in the arbitration. Is that a practical result or a practical approach?

MR. FUCHS: I think it makes -- I do think, why don't we just table this, and then after the Court issues its order, we can come back to it and figure out how to -- how to proceed.

ARBITRATOR JOSSEN: You know, I'll just digress for a second. A long time

Page 51

ago -- you know, for those of you that don't know me, I'm practicing 44 years. So a long time ago, I was invited into a judge's chamber. You know, very impressed by that. And he had a big round table. All right? This is 40 years ago, let's say, you know, before computers and, you know, when people were typing things with electric typewriters with carbon paper, if some of you could actually imagine that. Some of you know what carbon paper is. Okay?

And I remember sitting down at this big round table, and this judge had -- he must have had -- I don't know -- you know, 10 or 12 stacks that were like two feet tall or more. They were probably all summary judgments, reflecting back on it. I remember looking at it and just saying, how can anybody -- how could anybody read, process, you know, all of this, you know, and in some cases, unfortunately, find the needle in the haystack. Because we all know attorneys who, you know, don't -- you know, don't realize judges are impatient. They're irascible. They're really busy. Okay? And to put

Page 52

everything right up front, like on the first page, here's why there is or is not an issue of material fact. You know, you don't have to dig and get to page 40 and our fourth -- you know, our fourth point. You know, I always -- I, you know, try to make it easy.

But, you know, this is what we've got here. You know, we've got -- we've got a lot of stuff to go through. And we all agree this is very, very, very complex stuff. And -- and, you know, we have to, at the end -- or I have to, as the arbitrator sitting in the middle, have to find the fair path for everybody. And -- and that's what I'm really trying to do. Believe me, I'm just grappling with it. Okay?

If we're going to table this, then I'll have to instruct the AAA not to issue the order that I've just sent them because I don't want to, you know, get ahead of myself. When do we expect this court order?

MS. ROETTGER: Arbitrator Jossen, if you sent us an order this morning, we do not have it, so I would have to ask you to resend it.

Page 53

ARBITRATOR JOSSEN: Okay. All right.

MS. ROETTGER: Or if you're not going to send it, you know, just let us know. But we don't have anything currently from you.

ARBITRATOR JOSSEN: Okay. Probably because my -- my super -- my super assistant Susan just hasn't gotten to that particular task on her -- on her agenda today, which might be good.

When are we -- when is the Judge's order expected in the application for the preliminary injunction?

MR. FUCHS: He said -- last week he said in a week's time, so he was indicating we would have it, you know, this week.

ARBITRATOR JOSSEN: Well, I guess we could be hopeful and that he isn't one of those judges with those 12 stacks sitting on his round conference table. But probably more, you know. Probably more.

I visited a federal judge a couple of years ago, and he told me he had like 1,000 -- you know, in his chambers, he told me he had like 1,000 matters pending. I was like, how do you do that? You know, how do

Page 74

efficient. That seems manifestly inefficient.
ARBITRATOR JOSSEN: I don't disagree, but there's a little problem of the protective order. Okay? And I don't know that I disagree with the argument -- with Mr. Fuchs' argument that -- that Valve is in the middle here. If you're asking Valve to produce third-party, non-party documents, then they are in the middle, and then the protective order comes into play.
Look, let me -- let me just, you know, reiterate what I said earlier. It's -- you know, I'm just circling around here. I need to balance, you know, open discovery, so to speak, subject to legal objections, you know, versus -- versus the -- you know, the concerns of these third parties and the protective order. I'm going to look at the protective order again. I do think that -- I'll say it again. I think the terms "litigation" and "arbitration" are essentially synonymous.
But the problem that I have as the arbitrator is this. Okay? You know, we all talk about following the law. I've had several situations as an arbitrator where I've

Page 75

followed the law to an outcome that I didn't personally disagree with -- you know, I didn't personally agree with, to be perfectly honest with you. It's troublesome and -- and difficult. But if one is really going to adhere to that concept of following the law, you know, sometimes that's where it takes you, you know, unfortunately. One may personally disagree with the outcome that the law mandates.
You know, example, you know, is a Lyft or Uber driver an employee or independent contractor? You know, what does the law say and what does it seem like in real life? You know, that isn't this case, obviously. You know, I'm stuck here with a protect -- with a protective order that doesn't exactly -- that didn't apparently contemplate this circumstance. And I have to figure out -- I have to figure out -- I have to figure out what to do in this circumstance given that protective order. At the end of the day, we have -- what we're talking about here really is property that belongs to people that aren't here and how are their rights protected.

Page 76

Because I agree, I don't think that Valve can just -- they can't just willy-nilly give this stuff. Even if they did give this stuff, even if I ordered that they give -- gave this -- the materials, you know, they'd have to comply with the protective order which may not lead to them producing the materials in the end anyway.
Maybe the -- you know, we've talked about various different things to do; to table this -- you know, very various different things to do. You know, maybe the cleanest way for all concerned, you know, notwithstanding that it's -- that it's additional work for you, Mr. Bucher -- and -- and the last thing I want to do is, you know, create tasks for people, you know -- is to issue subpoenas to these third parties, which I sign, it takes Valve out of the loop, and it also -- you know, it circumvents, so to speak, the protective order. Because if one says a protective order, you know, it doesn't apply -- you know, doesn't -- it doesn't apply here because this isn't -- you know, it doesn't contemplate or address arbitration,

Page 77

you know, that may be the way to go. I've got to think about this a little bit.
You know, as I -- you know, as I think about it, I kind of somewhat favor that approach, you know, of get me the subpoenas, I'll sign them, you could send them to the third parties, and, you know, if that -- maybe they'll produce a document subject to a protective order that addresses this arbitration. Might be the way to go.
You know, table -- tabling it and waiting, I don't know. You know, I'm not big on that because I'm just seeing that conference table with, you know, 12 stacks of stuff for some federal judge to -- you know, to read while they've got, you know -- you know, 1,000 criminal cases in front of them, which you all know -- you know, we all know has to take precedent -- precedence.
I have to think about all this. I mean, we don't really need to argue it out anymore unless we could come to some solution, which it does not appear that we can. I'm kind of, you know, thinking about, you know, favoring this -- the approach of your issuing

subpoenas. You know what you want. You could get me the subpoenas, I'll sign them. And the parties, you know, have every right to -- you know, to object or produce as the case may be. And -- and this way Valve is not in the middle. And, you know, the protective order, as I said, doesn't seem to contemplate this circumstance as it's written, and I feel bound by that. I don't agree with it, you know, necessarily, but I feel bound by it.

And there's, you know, the problem that I have as the arbitrator. I'd like to see discovery. I'd like to see things produced so everybody's got the chance to present their case as fully and as completely as they feel that they can, subject to any legal objections that are appropriate.

MR. BUCHER: When you talk about circumventing Valve, I guess I got some issues here. First, Valve wrote the protective order for the Judge to sign. It was a stipulated protective order, so I'm not feeling real warm and fuzzy about Valve wrote themselves a protective order that's vague, and now I gotta do a bunch more work because of how they wrote



their protective order. They're in the middle of that. That's their -- their issue. I didn't sign this protective order. My client didn't sign it.

You're talking about issuing -- I don't know -- 25 subpoenas, 25 court cases to enforce them all, filing fees on those court cases. That alone is going to be, you know, thousands of dollars, if not tens of thousands of dollars just in fees, hundreds if not thousands of hours of time. All of this to get documents that Valve has right now.

They can give us -- and look, yeah, they have to follow Section 7. One thing you'll notice is not in Section 7, Arbitrator, is an option not to produce the documents. It doesn't say you'll notify the designated party, and if the designated party objects, then you don't give them over. That's nowhere in Section 7. So I think clearly you can issue a subpoena. I think you can issue a subpoena to Valve. I know of no rule -- it's atypical, but I don't know of any rule that says you can't subpoena Valve.

And it may seem appealing to you to



have us go do thousands of hours of work and spend tens of thousands of dollars to get what we could get in two minutes from Valve, but that's not the point of arbitration. If Valve feels stuck in the middle, they put themselves in the middle.

The reason these other companies aren't parties as co-conspirators is this is individual arbitration. That's what Valve wrote in its contract before it changed its mind because it was losing and didn't want to lose more money.

So I'm not -- this is -- you know, you can say this seems reasonable. This is manifestly unreasonable. But I just want to be clear here. As long as Mr. Fuchs commits not to object to these subpoenas -- because you keep saying Valve doesn't want to be in the middle. Why should they get -- I want to revisit that. Why should they get the opportunity to object to third-party subpoenas?

If their whole deal is, look, we're just stuck in the middle, let's get Valve out of this game. We'll show you the subpoenas,



you'll sign them, and if the third parties have a problem, they can deal with it. Why should Valve get any opportunity to cause more chaos after seeing these subpoenas? I don't get it. Can you explain that to me, Arbitrator? If the whole idea here is let's get Valve out, why are we letting Valve stay in this if that's the approach we're going to take?

MR. FUCHS: Arbitrator Jossen, I think this -- we've really beaten this horse. And so I think -- I think it -- you know, respectfully, I think it's time to move on.

ARBITRATOR JOSSEN: Any other issues we need to discuss?

MS. ROETTGER: Arbitrator Jossen, this is -- sorry, Mr. Bucher. Go ahead.

ARBITRATOR JOSSEN: Who's speaking?

MR. BUCHER: This is Mr. Bucher --

MS. ROETTGER: That was Jill --

ARBITRATOR JOSSEN: Wait. I'm hearing two people, a woman and a man. Okay. Let's have one at a time.

Mr. Bucher?

MR. BUCHER: Sure. I just wanted to

Page 90

Valve filed a month late. Deny the summary judgment motion. That's simple. If you get halfway through a stack of documents and you think it's complicated, that's your summary judgment decision right there, Arbitrator. Summary judgment has got to be no reasonable fact-finder, when faced with the evidence, could interpret it in our favor. We had arbitrator after arbitrator find Valve liable. It's not a summary judgment issue here. Some have found in favor of Valve. I mean, that's exactly the case that goes to trial, a case where sometimes you win and sometimes you lose.

So deny that motion. I'd like a subpoena against Valve for the documents we've been requesting for three years. I'd like to do this in one court. Absolutely let's keep those dates on the calendar. I mean, in this scenario where we gotta issue all these individual subpoenas, we're going to need those dates just to open the hearings to start collecting evidence. So, you know, it may be that we don't use those dates for the core of the case for Valve's witnesses, but we use

Page 91

those for third parties, if that's the approach we take. Let's get this going.

So yes, we absolutely are in favor of holding those dates on the calendar in some capacity. I hope you'll think about it and efficiency will prevail. You know, if you were faced with a protective order that said in no circumstance will you turn over these documents in arbitration, okay. I understand your point, Arbitrator. But that's not what it says. And if you -- you know, to the extent you think there's vagueness, well, make the call. Make the efficient call.

I don't think this Judge -- I'll be honest. One, I don't think this Judge thought about this precise wording at all because it was a stipulated motion. But I think if you'd ask the Judge on the day he signed it, hey, I know you say "subpoena" or "court order in other litigation," does that mean that we can't give the documents over in the arbitrations that you just compelled? And he'd say, no, that's another litigation.

But look, if I'm wrong, and you issue the order, Valve has a clear remedy in front

Page 92

of one tribunal. They go back to that exact judge and they say, Judge, you signed this protective order, I move to quash, and the Judge would tell them. But that seems like clearly the more efficient route. That's what I'd like to do. So I'd like to get a subpoena.

And look, you can do both. You can issue subpoenas to Valve and you can issue subpoenas to the other 25. We can move in parallel. So let's get you a subpoena for Valve for this. Valve can move to quash. At the same time, we can be seeking the same information from the -- all the individuals in the case. We can set the date to take that information from them when the hearing opens in July, and we can start moving things forward. So that's where I would like to see this go.

And look, none of that's saying -- maybe, you know, Mr. Fuchs is right and the Judge says, oh, yeah, I sanction you if you turn this over. Well, okay. Then, you know, they won't turn it over. I don't think that's how the Judge is going to rule. But

Page 93

then we got one judge who could decide, and if that judge doesn't decide, then we've already teed up to figure out who consents, to figure out who shows up to the hearing and just gives us the information voluntarily.

For the ones who don't, for the ones who are going to oppose, those people will begin the Court proceedings for them. And then at least we've got everything rolling, everything moving towards a conclusion. So that's where I would like to see this wrap up here today.

ARBITRATOR JOSSEN: Mr. Fuchs --

MR. FUCHS: Well, I --

ARBITRATOR JOSSEN: Hold on. Hold on. You know, hypothetically if I issued an order, okay -- I mean, I don't know why I'd have to issue a subpoena. You know, if I issued an order -- and again, this is hypothetically -- that these documents in Exchange 3 and 4, you know, the Court documents be produced, procedurally, do you agree with Mr. Bucher that your remedy is to proceed to federal court and, you know, seek remedy, you know, in one place, one time?

Send it to me and we'll follow it, and that'll be our roadmap. I mean, you know, guided -- you know, guided, again, by fairness and also guided by the -- by the fact that witnesses are going -- you know, at least for the Zwick case, witnesses are going to testify live. Okay? Don't need repetition for following cases if there are cases to follow. But for the first case, witnesses are going to testify live.

You could lay it out any way that you want. That's fine by me. I'll be happy to see it. And, you know, if that helps everybody -- you know, this is -- look, at the end of the day, my friends, this is your case. You can lay out the roadmap however you want, you know. And it makes sense to agree on it, you know, given everything that I've -- live testimony, fairness, everybody gets to testify, et cetera, you know. So if you can lay out a roadmap, lay out a roadmap. That would certainly be helpful. That's fine by me.

You know, I'll just digress for a second. I won't name the Federal Judge. But



I was arbitrating a case a while ago, and one of the attorneys lamented to me that the Federal Judge here in LA had something like 35 different deadlines in their pre-trial order. Okay? You know, how much more complicated can you make it?

You know, get together, figure out a roadmap that works for everybody, make it simple, send it to me, let me look at it, and unless there's something that really troubles me, you know, we'll follow it. You know, it shouldn't be too hard to -- you know, for experienced trial attorneys and experienced attorneys to create their own plan for the evidentiary hearing in this case. I mean, that shouldn't be something we're fighting about. People are going to testify that -- you know, we're not using canned testimony. You know, we're going to do it the way it should be done.

So yes, that's fine, Ms. Addis. Long answer to a simple end. Yes, you can do that.

MS. ADDIS: Okay. Thank you very much.

ARBITRATOR JOSSEN: Sorry if I made it



more complicated than it is.

MS. ADDIS: No. No. That is helpful. Thank you.

ARBITRATOR JOSSEN: I should have just said yes.

MS. ROETTGER: And just to interject, this is Jill with the AAA. Arbitrator Jossen -- and maybe I'm misunderstanding -- if the dates have been set for the evidentiary hearings in these matters, or when they're set, just a reminder to please send that in writing in some type of order to the AAA so we can get that calendared and get the proper notice out to the parties.

ARBITRATOR JOSSEN: Will do. I'm typing -- typing that as you spoke, Ms. Roettger. And thank you for reminding me to do that.

Okay. Is there anything further that we need to address here today? I hope we've gotten some clarity here. I'm troubled -- I'm perplexed, you know, on the discovery with respect to the protective order. You know, I will confess that. I'm going to look at it carefully.



Again, I'll summarize by saying I want to balance fairness with respect to the rights of the third parties and the four corners of the protective order, which I suspect when it was written and when it was -- you know, by -- you know, when it was written by the drafters and signed by the Judge, probably didn't contemplate this circumstance. I will do the best that I can. You know, given all the -- all of the -- all of our discussion, the burdens to the claimants, you know, 25 subpoenas all over the country, I will do the best I can to -- to figure it out.

MR. BUCHER: Thank you, Arbitrator. We appreciate your time and dedication to this matter.

ARBITRATOR JOSSEN: Doing my best, I promise you that.

Anything else anybody needs to address?

MR. FUCHS: Thank you for your time, Arbitrator.

MS. ADDIS: Thank you.

ARBITRATOR JOSSEN: It's my pleasure. Mr. Bucher, Mr. Horn, Mr. Wright, Mr. Palermo,

Mr. Fuchs, Mr. Tavakoli, Ms. Addis, Mr. Miller, and Ms. Bekker, the hardest working here among us, okay, thank you all. And, of course, Ms. Roettger, appreciate you all the time.

Ms. Roettger, if you do get the order from my office, hold on to it. Don't send it out because I have to, you know, take another look at everything and refigure things out --

MS. ROETTGER: I'm sorry. I'm just having a little bit of difficulty hearing you. Did you say if the order is sent to us from your assistant, that we should hold it and not transmit it to the parties? Is that correct?

ARBITRATOR JOSSEN: Correct. You know, I mean, if the right hand doesn't know what the left hand is doing, and Susan sent the order to you while I'm here, you know, on this here, just hold it and don't send it out. Okay?

MS. ROETTGER: Okay. Will do.

ARBITRATOR JOSSEN: All right. Thank you, everybody. Have a great afternoon. And, you know, everybody do the best you can to be good people and make it a better planet.



MS. ADDIS: Thank you.

ARBITRATOR JOSSEN: Okay. Thank you everybody. Thank you for all your efforts.

Ms. Bekker, I guess we could go off record now.

(Time noted: 3:50 P.M. EST.)



COURT CERTIFICATE

STATE OF FLORIDA }
BROWARD COUNTY }

I, PAULA G. BEKKER, Stenographic Court Reporter, State of Florida at Large, certify that I was authorized to and did stenographically report the foregoing proceedings and that the transcript is a true and complete record of my stenographic notes.

Dated this 27th day of May, 2026.

______________________________
PAULA G. BEKKER
Stenographic Court Reporter