The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

IN RE: VALVE ANTITRUST LITIGATION

Case No. 2:21-cv-00563-JNW

**JOINT CASE MANAGEMENT STATEMENT AND DISCOVERY PLAN**

Pursuant to Federal Rule of Civil Procedure 26(f) and Local Civil Rule 26(f) of the U.S. District Court for the Western District of Washington, Counsel for Plaintiffs and Defendant Valve Corporation ("Valve") (collectively, the "Parties") held a conference on November 10, 2026. The Parties hereby submit this Joint Case Management Statement and Discovery Plan as an outcome of that conference and their subsequent discussions.

**1. Statement of the Nature and Complexity of the Case**

***Plaintiffs' Statement.*** Valve exercises its monopoly power over digital PC video game distribution to lock gamers and game publishers into its distribution platform, Steam, and prevent would-be competitors from effectively competing in the digital PC game distribution market. Valve accomplishes these ends by requiring publishers that wish to sell games on Steam to agree to a Platform Most Favored Nation ("PMFN") provision, which Valve enforces to prevent game publishers from selling their games for a lower price or with added features on any digital PC game distribution platform other than Steam. Competitor platforms consequently cannot entice publishers (or gamers) to migrate away from Steam by offering lower-priced or higher-quality games, maintaining Valve's longstanding stranglehold over PC gaming. As a result, Valve charges publishers supracompetitive commissions on every initial game sale and every subsequent purchase of downloadable and/or "in-app" content, which are built into the prices consumers pay Valve for PC games.

In sum, Valve uses these monopolistic policies and practices to acquire and maintain monopoly power in the digital PC game distribution market, harming competition, game publishers, and consumers, in violation of Sections 1 and 2 of the Sherman Act and the Washington State Consumer Protection Act. Plaintiffs, on behalf of themselves and the proposed Class, seek (1) to recover damages for the supracompetitive PC game prices they have paid; and (2) an injunction permanently barring Valve from engaging in further unlawful, monopolistic conduct affecting digital PC game distribution.

***Valve's Statement.*** Valve denies Plaintiffs' claims. Valve operates in a highly competitive environment and does not have monopoly power in any properly defined market. Valve does not

impose or enforce the PMFN alleged by Plaintiffs, nor has it engaged in any form of anticompetitive conduct. On the contrary, Valve has continually improved its offerings in the face of robust competition, lowered its revenue share, and developed a platform that is beneficial for both developers and consumers.

Valve has not acquired or maintained monopoly power through anticompetitive conduct, entered into any unreasonable restraint of trade, or harmed competition, publishers, or consumers. In addition, Plaintiffs cannot establish injury or damages, or that they are entitled to injunctive relief, on their own behalf or for the proposed Class. Plaintiffs also cannot establish that class certification is proper under Rule 23. Plaintiffs' claims under Sections 1 and 2 of the Sherman Act and the Washington Consumer Protection Act thus fail.

**2. Proposed Deadline for Joining Additional Parties**

***Joint Statement.*** The Parties do not propose joining additional parties at this time and therefore propose that joinder may occur only by leave of Court.

**3. Consent to Assignment of Magistrate Judge**

***Joint Statement.*** The Parties do not consent to try this case before a Magistrate Judge.

**4. Discovery Plan Set Forth in Federal Rule of Civil Procedure 26(f)(3)**

***Plaintiffs' Statement.*** Plaintiffs propose the following schedule of discovery and related deadlines:

| EVENT | DATE |
|---|---|
| Service of initial disclosures | November 24, 2026 |
| Deadline for Parties to propose any amendments or supplements to the ESI Protocol, Protective Order, or Expert Protocol | December 8, 2026 |
| Substantial completion of transactional data production | February 23, 2027 |
| Substantial completion of Parties' document productions | March 25, 2027 |
| Final deadline for service of third-party document subpoenas | May 24, 2027 |
| Close of fact discovery | August 27, 2027 |

| | |
|---|---|
| Deadline to (1) file Plaintiffs' motion for class certification accompanied by the evidence and declarations on which they rely; and (2) disclose Plaintiffs' expert report(s) for class certification | September 27, 2027 |
| Deadline to (1) file Valve's class certification opposition accompanied by the evidence and declarations on which Valve relies; (2) disclose Valve's expert report(s) for class certification; and (3) file Valve's *Daubert* motions on Plaintiffs' expert(s) for class certification | November 29, 2027 |
| Deadline for Parties to depose the other Party's expert(s) for class certification | January 13, 2028 |
| Deadline to (1) file Plaintiffs' class certification reply; (2) disclose Plaintiffs' rebuttal expert report(s) for class certification; (3) file Plaintiffs' oppositions to Valve's *Daubert* motions; and (4) file Plaintiffs' *Daubert* motions on Valve's expert(s) for class certification | February 28, 2028 |
| Deadline to (1) file Valve's *Daubert* replies; and (2) file Valve's oppositions to Plaintiffs' *Daubert* motions | March 29, 2028 |
| Deadline to file Plaintiffs' *Daubert* replies | April 28, 2028 |
| Deadline for Parties to disclose their respective expert report(s) on the merits | 60 days after any grant of class certification |
| Deadline for Parties to disclose their respective rebuttal expert report(s) on the merits | 120 days after any grant of class certification |
| Deadline for Parties to disclose their respective reply expert report(s) on the merits | 150 days after any grant of class certification |
| Deadline for Parties to depose the other Party's expert(s) on the merits | 180 days after any grant of class certification |
| Deadline for Parties to (1) file motions for summary judgment; and (2) file *Daubert* motions on the other Party's expert(s) on the merits | 225 days after any grant of class certification |
| Deadline for Parties to (1) file summary judgment oppositions; and (2) file *Daubert* oppositions | 270 days after any grant of class certification |
| Deadline for Parties to (1) file summary judgment replies; and (2) file *Daubert* replies | 290 days after any grant of class certification |

Plaintiffs oppose Valve's proposal to delay entering a scheduling order until the Parties have reached agreement on the scope of discovery, as that will only further delay discovery. The Court can and should set dates for fact and expert discovery now. *See* Fed. R. Civ. P. 16(b)(1)-(2) (requiring

the Court to issue a scheduling order "as soon as practicable" after either receiving the Parties' Rule 26(f) report or convening a scheduling conference). Valve has already delayed discovery in this case by refusing to participate in a Rule 26(f) conference until ordered by the Court to do so. *See* Pls.' Mot. to Set Scheduling Conf., Dkt. No. 678; Order Granting Pls.' Mot., Dkt. No. 707. Deadlines are the principal incentive parties have for negotiating, and without them, litigation often grinds to a standstill. In the absence of the deadlines imposed by the Court's scheduling conference, Valve has delayed engaging even on non-controversial preliminary stipulations and appears to have done very little to streamline discovery negotiations, as discussed below. The "good cause" standard set by Rule 16(b)(4) for modifying a scheduling order amply provides for genuinely unexpected contingencies while ensuring that the parties work diligently to move their dispute toward resolution.

Valve's principal excuse for delaying setting a case schedule is Plaintiffs' requests for Valve's transactional data. But Valve's complaints are not well taken.

*First*, contrary to Valve's suggestion, Plaintiffs first indicated that they would seek "Valve's transaction-by-transaction data that would allow for the identification of consumers' individual purchases on Steam" on May 13, 2026, Ex. 1 to Mot. at 8, Dkt. No 678-2, more than *six months* before serving draft data requests on Valve to facilitate scheduling negotiations on November 17, 2026. In the interim, Valve appears to have made no progress scoping this data to inform the Parties' discussions.

*Second*, Valve's only stated reason why the case should be delayed while the parties negotiate data is the "massive" volume of data involved. But that is a specious argument unmoored from facts. Transactional databases generally are maintained as simple text values with a limited number of fields recorded per transaction. The size of databases produced in comparably sized litigations range from hundreds of gigabytes to approximately 100 terabytes, with most recent cases falling between 5 and 30 terabytes. In the Publisher Class case, Valve's data production was less than 400 gigabytes.

Even if the data produced by Valve involved production of data substantially larger than similar cases, modern enterprise systems can write this volume of data onto hard drives in a matter

of a few days.[1] It *does* take a long time for parties to arrange production of transactional data, but nearly all of that time is expended ensuring that the *right* responsive data is produced—understanding how the data is structured and what its fields mean.[2] That process is substantially the same across cases and takes roughly similar time periods from case to case.[3] Indeed, in *this* case it should take *less* time than usual, because Valve has already produced "rolled up" (aggregated) transactional data to the Publisher Class, and Plaintiffs have already identified many of the fields to be produced in "unrolled" form.

*Third*, although Valve argues it will take time to determine how the data can be produced while safeguarding confidentiality and privacy interests, Valve itself recognizes the data will be subject to the operative protective order and ESI protocol in this case, *see infra* Paragraph 4.D, addressing Valve's ostensible concerns. Procedures for handling security concerns are well established in complex litigation; typically, sensitive personal data is "hashed"—anonymized with unique values—before production. The details of these processes and protections vary according to the needs of the case, but Valve suggests no reason why its customer data requires uniquely schedule-resistant consideration.

Separately, Valve's proposed schedule inappropriately lengthens class certification proceedings by more than two months by requiring the parties to complete expert discovery before briefing the class certification and related *Daubert* motions. That proposal should be rejected. Valve's proposal seeks to unwind the *jointly stipulated* case schedule entered in the Publisher Class's case, around which Plaintiffs' proposed case schedule was designed. *See* Def.'s Stipulated Mot. for

---

[1] Modern standard enterprise hard drives offer sustained transfer speeds of 275 MB/s, which for 70 TB of data would require less than four days. *See* Shane Downing, *Seagate Exos M 30TB HDD Review*, Tom's Hardware (Sep. 6, 2025), https://www.tomshardware.com/pc-components/hdds/seagate-exos-m-30tb-hdd-review.

[2] Voluminous data typically takes more time for plaintiffs to *work with*, because experts must engage with the substance of what is produced; in particular, the time spent "cleaning" transactional data to create workable datasets increases with volume. *See infra* Paragraph 5.K. But it does not significantly affect the time taken to *produce* the data.

[3] For this reason, Valve's argument that "if Plaintiffs narrow their request, discovery could move more quickly" is basically wrong, insofar as it suggests time savings from narrowed requests would be significant. As for Plaintiffs' requested 2008 start date, Plaintiffs note that Valve's production to the Publisher Class begins in 2004.

Entry of Case Schedule, Dkt. No. 97; Order re Def.'s Stipulated Mot., Dkt. No. 98. Furthermore, as previously noted by the Publisher Class, Valve's proposal upends the standard practice in complex antitrust class actions to sequence class certification expert discovery and briefing simultaneously. *See* Mem. re Case Schedule at 3-4 & n.1, Dkt. No. 94 (citing cases); *see also* Fed. R. Civ. P. 23(c)(1) (noting the Court must determine whether to certify a class action "[a]t an early practicable time"). The Court should reject Valve's attempt to significantly lengthen this case.

Though Valve's argument for delaying discovery deadlines focuses near-exclusively on data, it offers no reason why it should *also* delay proposed deadlines for substantial completion of document productions or third party-subpoenas. Because of the significant overlap in liability evidence between the publisher class case and this one, Plaintiffs expect that the process of identifying and reviewing additional documents responsive to Plaintiffs' Requests for Production to be faster than typical complex litigations, and believe the proposed March 23, 2027 deadline is appropriate.

Valve proposes shortening the period allotted for disclosing reply merits expert reports from 28 days to 20 days. Plaintiffs believe 28 days is already an aggressive schedule for reply reports, especially for Plaintiffs, who bear the burden of proof, and that 20 days would unreasonably compress the time experts have to digest the opposition's rebuttals and produce quality reply reports. Valve's proposal extends their time to prepare summary judgment and *Daubert* motions and compresses Plaintiffs' time to prepare responsive briefs to an even shorter time than Valve allows to prepare them. The burden of briefing summary judgment typically falls unequally on plaintiffs, who must marshal an enormous amount of evidence to establish triable issues of fact and law. Plaintiffs believe the six-week interval proposed to prepare summary judgment responses and the hundreds of exhibits that often accompany them is the minimum needed; they do not oppose an equivalent period for the parties to prepare their summary judgment and *Daubert* motions if the Court deems it appropriate.

Valve has generally proposed adjusting intervals that Plaintiffs propose in two- and four-week increments to 15- and 30-day increments where they do not substantially alter the proposed

sequencing of case milestones. Plaintiffs do not oppose such an adjustment if the Court prefers this approach. Plaintiffs also do not oppose scheduling adjustments to accommodate the Publisher Class's trial and reasonable preparation time, provided that they do not lead to substantially unequal divisions of time between the parties for comparable work. Indeed, Plaintiffs' trial team will likely devote significant time to observing the Publisher Class's trial in preparation for their own and would seek similar accommodations. Once a schedule for discovery and the Publisher Class's trial dates are set, the Parties can meet and confer to propose any needed modifications to accommodate these concerns.

***Valve's Statement.*** Valve proposes the following schedule of discovery and related deadlines, which sets forth timelines keyed to the close of fact discovery rather than a date certain, in recognition of the need for the Parties to continue to meet and confer about an appropriate timeline for responding to Plaintiffs' Requests for Production. The Parties cannot propose specific dates—and would just be guessing about timeframes—until they reach agreement on the scope of discovery, or at minimum the breadth and scope of Plaintiffs' initial requests as to Valve's transactional data, which Valve received for the first time on November 17, 2026.

While Valve is still trying to scope the size and production timeframe for the data Plaintiffs have requested (which Valve does not concede is appropriate in any respect),[4] Valve underscores that the production requested by Plaintiffs in their November 17, 2026 Requests for Production is enormous. Among many other things, Plaintiffs seek individual-by-individual, transaction-by-transaction data for *all* consumer purchases of games, DLC, in-app products, and more. Plaintiffs suggest that they notified Valve about their desire to obtain such data back in May 2026. But that does not provide the whole picture. When the parties had their initial Rule 26(f) conference on November 10, Valve informed Plaintiffs that if they continued to request such data, it would be incredibly voluminous and time-consuming to process, produce, and rendered unusable for litigation

[4] Valve is working diligently to determine the amount of time required to produce the data Plaintiffs have requested, in usable form, and will be prepared to provide further updates at the December 1, 2026 conference.

purposes. Armed with that information, Plaintiffs came back to Valve last week seeking such data going back to 2008—*almost two decades*.

In short, the data set Plaintiffs seek is massive—and far exceeds the significant volume of data in the developer case, in large part because the developer class did not seek transaction-by-transaction data. Collecting such data, preparing it for production, transmitting it in a secure fashion, and then processing it so it is usable will be a time-consuming process no matter what the parties ultimately agree to. And based on Plaintiffs' opening bid for data, the schedule they propose is flat-out impossible. It would take far, far more than the three months they have suggested (which also span multiple holidays) to produce, in usable form, what they appear to want.

Valve accordingly believes it would be more productive for the Parties to continue to meet and confer about what data makes sense to produce, how it can be produced while maintaining confidentiality and privacy obligations, and what amount of time is needed for that production. (Of course, if Plaintiffs narrow their request, discovery could move more quickly.) Therefore, Valve proposes establishing a case management framework and case deadlines keyed to the fact discovery cutoff, and that the Parties continue to meet and confer about when that date should be and subsequently propose specific dates to the Court. Valve is not interested in delay and Plaintiffs' claims to the contrary are simply baseless. To confirm the point, Valve would be willing to provide specific dates to the Court within a week of reaching agreement with Plaintiffs on the scope of data discovery, and, if the Court wishes, report back by a date certain on the progress of those negotiations.

Regarding Plaintiffs' position that Valve's proposal inappropriately lengthens class certification proceedings, Valve first notes that it is not bound by a case schedule in a separate case, stipulated or otherwise, and its proposed schedule does not "unwind" anything. Moreover, conducting expert discovery in full before briefing in the class stage makes good sense for this case in particular. As Plaintiffs suggest, this case will involve significantly more data than the Publisher case, apparently requiring "unrolled" rather than aggregated data for virtually every purchase on Steam. Class certification will therefore depend heavily on a new, larger, and more complex dataset

than in the Publisher case. As such, running expert discovery to completion prior to briefing will permit the Court to decide class certification and *Daubert* challenges on a full record rather than on the partial record that Plaintiffs desire. Given that Fed. R. Civ. P. 23(c)(1) does not define "practicable" to mean "as fast as possible," the ability for the Court to consider a full record when it rules on class certification and *Daubert* in exchange for two more months of discovery is a schedule equally as practicable as Plaintiffs'. Moreover, it will streamline the briefing and presentation of issues to the Court for all expert reports to be exchanged prior to class certification and Daubert briefing rather than allowing Plaintiffs to complicate the record with new expert reports, submitted along with their class certification reply brief, to which Valve will have limited ability to respond. Valve does not categorically object to providing Plaintiffs with more time for certain parts of the case. Valve, like Plaintiffs, wants to ensure this case moves expeditiously. That said, Valve believes that Plaintiffs have appropriate time for each phase of the case under its proposed schedule.

In addition, and as discussed during the Parties' Rule 26(f) conference, Valve requests that the deadlines account for flexibility around the time of any trial setting in the developer trial.

| **EVENT** | **DATE** |
|---|---|
| Service of initial disclosures | November 24, 2026 |
| Deadline for Parties to propose any amendments or supplements to the ESI Protocol, Protective Order, or Expert Protocol | December 8, 2026 |
| Substantial completion of transactional data production | [Subject to further conferral] |
| Substantial completion of Parties' document productions | [Subject to further conferral] |
| Final deadline for service of third-party document subpoenas | [Subject to further conferral] |
| Close of fact discovery | 180 days after substantial completion of transactional data production |
| Deadline to disclose Plaintiffs' expert report(s) for class certification | 30 days after close of fact discovery |

| | |
|---|---|
| Deadline to disclose Valve's expert report(s) for class certification | 60 days after close of fact discovery |
| Deadline to disclose Plaintiffs' rebuttal expert report(s) for class certification | 90 days after close of fact discovery |
| Deadline for Parties to depose the other Party's expert(s) for class certification | 120 days after close of fact discovery |
| Deadline to file Plaintiffs' motion for class certification accompanied by the evidence and declarations on which they rely | 150 days after close of fact discovery |
| Deadline to (1) file Valve's class certification opposition accompanied by the evidence and declarations on which Valve relies; and (2) file Valve's *Daubert* motions on Plaintiffs' expert(s) for class certification | 195 days after close of fact discovery |
| Deadline to (1) file Plaintiffs' class certification reply; (2) file Plaintiffs' oppositions to Valve's *Daubert* motions; and (3) file Plaintiffs' *Daubert* motions on Valve's expert(s) for class certification | 225 days after close of fact discovery |
| Deadline to (1) file Valve's *Daubert* replies; and (2) file Valve's oppositions to Plaintiffs' *Daubert* motions | 245 days after close of fact discovery |
| Deadline to file Plaintiffs' *Daubert* replies | 265 days after close of fact discovery |
| Deadline for Parties to disclose their respective expert report(s) on the merits | 60 days after any grant of class certification |
| Deadline for Parties to disclose their respective rebuttal expert report(s) on the merits | 120 days after any grant of class certification |
| Deadline for Parties to disclose their respective reply expert report(s) on the merits | 140 days after any grant of class certification |
| Deadline for Parties to depose the other Party's expert(s) on the merits | 170 days after any grant of class certification |
| Deadline for Parties to (1) file motions for summary judgment; and (2) file *Daubert* motions on the other Party's expert(s) on the merits | 215 days after any grant of class certification |
| Deadline for Parties to (1) file summary judgment oppositions; and (2) file *Daubert* oppositions | 260 days after any grant of class certification |

| | |
|---|---|
| Deadline for Parties to (1) file summary judgment replies; and (2) file *Daubert* replies | 280 days after any grant of class certification |

### A. Exchange of Initial Disclosures

***Joint Statement.*** The Parties agree to exchange their initial disclosures on November 24, 2026.

### B. Subjects, Timing, and Phasing of Discovery

***Plaintiffs' Statement.*** In addition to the discovery completed by the Publisher Class and Valve, which Plaintiffs received pursuant to this Court's Order, Dkt. No. 482, Plaintiffs anticipate reasonable discovery, including documents and data concerning:

- historical and current price information and transactional data for digital PC game sales via Steam and third-party digital PC game distribution platforms, including "unrolled" transactional data not provided to the Publisher Class;
- digital PC game publishers' obligations under Valve's PMFN provision;
- the enactment and enforcement of Valve's PMFN provision, including changes to or continuation of Valve policies related to Valve's PMFN;
- Valve's employees and officers primarily charged with enacting and enforcing Valve's PMFN provision and with tracking and comparing prices and sales of digital PC games via Steam and third-party digital PC game distribution platforms;
- digital PC game publishers' internal costs and pricing decisions;
- digital PC game consumers' purchasing behavior and preferences between digital PC game distribution platforms; and
- such other topics as may emerge as relevant and proportional to the case.

Additionally, if the proposed Consumer Class is certified, Plaintiffs will seek class member names and contact information from Valve for purpose of class notice.

Plaintiffs propose separate timelines for fact and expert discovery, though they differ with Valve on its proposal to delay class certification briefing until the end of expert discovery. *See supra* Paragraph 4. Plaintiffs agree that class and merits expert discovery should be phased.

***Valve's Statement.*** Valve denies that it engages in any anticompetitive conduct. In addition to the voluminous discovery to which Plaintiffs already have access, Valve will engage in good faith with Plaintiffs' discovery requests in order to provide them with further discovery as appropriate, to include both additional documents and data. Valve reserves all rights to object to the nature of Plaintiffs' anticipated discovery.

In addition to discovery on the topics in Plaintiffs' disclosure, Valve anticipates that it will engage in its own reasonable discovery, including but not limited to documents, data, and testimony from Plaintiffs and third parties concerning:

- Plaintiffs' and other Steam users' purchase history on Steam and other game distribution platforms;
- Plaintiffs' and other Steam users' interaction with the video game ecosystem;
- competition in the video game industry;
- the choices available to video game developers and consumers; and
- communications and analyses from Plaintiffs and third parties bearing on the facts of this suit.

Valve believes that phased class discovery, allowing for two phases of expert discovery on class and merits issues, as noted *supra*, is proper.

### C. Electronically Stored Information ("ESI")

***Plaintiffs' Statement.*** The Court entered the Publisher Class and Valve's stipulated ESI protocol, Dkt. No. 110, which addresses preservation, search, and production requirements. The Parties agree that they will meet and confer and propose to the Court any stipulation modifying or specifying the unique obligations for the Parties by no later than December 8, 2026. The data that Valve has already produced to Plaintiffs and that Valve will produce is or will be designated "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY." Stipulated Protective Order at 3, Dkt. No. 95. Through this process, Plaintiffs are amenable to negotiating mutual restrictions on the Parties' use of AI technologies, including appropriate security measures to prevent inadvertent disclosures or use of confidential materials in training datasets.

***Valve's Statement.*** In addition to the ESI protocol cited by Plaintiffs, Dkt. No. 110, Valve proposes that Plaintiffs refrain from using Valve's data and productions with any AI tool without express written consent from Valve outlining the parameters of any such use.

**D. Privilege Issues**

***Joint Statement.*** The Court entered the Parties' Joint Stipulation Regarding Discovery, Dkt. No. 482, which (by incorporating the Publisher Class and Valve's Stipulated Protective Order, Dkt. No. 95) addresses the inadvertent production of privileged information and other privilege waiver issues pursuant to Rule 502(d) and (e) of the Federal Rules of Evidence. The Parties agree that they will meet and confer as necessary if circumstances arise necessitating a stipulation modifying or specifying the unique obligations described in the previously referenced Stipulation and Order.

**E. Proposed Limitations on Discovery**

***Joint Statement.*** The Parties agree to follow the Federal Rules of Civil Procedure for the exchange of written discovery and conducting depositions but reserve rights to seek leave of the Court at the appropriate time to change the number of depositions pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(i) or the number of interrogatories pursuant to Federal Rule of Civil Procedure 33(a)(1).

**F. The Need for Any Discovery Related Orders**

***Joint Statement.*** To minimize duplication between Plaintiffs' case and the Publisher Class's case, the Parties previously proposed—and the Court entered—their Joint Stipulation Regarding Discovery, under which Plaintiffs received and accessed discovery completed by the Publisher Class and Valve. Dkt. No. 482. At this time, the Parties have identified no need for the entry of any other discovery related orders.

**5. Items Set Forth in Local Civil Rule 26(f)(1)**

**A. Prompt Case Resolution**

***Joint Statement.*** The Parties are committed to litigating this case as efficiently as possible and will attempt to resolve disputes between themselves and present any disputes that may arise to

the Court in an efficient manner. To that end, where applicable, the Parties will utilize the District's Expedited Joint Motion Procedure for discovery disputes. *See* Local Civil Rule 37(a)(2).

**B. Alternative Dispute Resolution ("ADR")**

***Joint Statement.*** The Parties agree to discuss the possibility of engaging in settlement negotiations or participation in ADR at an appropriate time.

**C. Related Cases**

***Plaintiffs' Statement.*** Plaintiffs identify the following related cases, which were consolidated with this litigation (Dkt. No. 394):

- *Elliot v. Valve Corp.*, No. 2:24-cv-01218-JNW (W.D. Wash. filed Aug. 9, 2024)
- *Hepler v. Valve Corp.*, No. 2:24-cv-01735-JNW (W.D. Wash. filed Oct. 23, 2024)
- *Drake v. Valve Corp.*, No. 2:24-cv-01743-JNW (W.D. Wash. filed Oct. 24, 2024)

Plaintiffs further identify the Publisher Class's related case, whose main docket is the same as this case: *In re Valve Antitrust Litig.*, No. 2:21-cv-00563-JNW (W.D. Wash. filed Apr. 27, 2021). Although the Publisher Class's and the proposed Consumer Class's cases involve certain overlapping issues, the cases concern different classes with their own injuries and distinct discovery needs. Key fact and expert discovery, especially regarding class certification issues, remains outstanding for the proposed Consumer Class. Because of this, and because the Publisher Class's case is significantly further along than the proposed Consumer Class's case and near trial-ready (*e.g.*, the Publisher Class was certified, the class notice and opt-out period has finished, and Valve's motion for summary judgment was denied), Plaintiffs propose that the two cases proceed on independent schedules.

Plaintiffs further identify the following related cases, which use main dockets distinct from this case:

- *Valve Corp. v. Abbruzzese*, No. 2:24-cv-01717-JNW (W.D. Wash. filed Oct. 18, 2024)
- *Smith v. Valve Corp.*, No. 2:25-cv-01478-JNW (W.D. Wash. filed Aug. 5, 2025)
- *Valve Corp. v. Fish*, No. 2:25-cv-01729-JNW (W.D. Wash. filed Sep. 8, 2025)

- *Valve Corp. v. Graber*, No. 2:25-cv-01730-JNW (W.D. Wash. filed Sep. 8, 2025)
- *Valve Corp. v. Lefebvre*, No. 2:25-cv-01731-JNW (W.D. Wash. filed Sep. 8, 2025)
- *Valve Corp. v. Lucas*, No. 2:25-cv-01732-JNW (W.D. Wash. filed Sep. 8, 2025)
- *Valve Corp. v. Birenbaum*, No. 2:25-cv-01975-JNW (W.D. Wash. filed Oct. 10, 2025)
- *Valve Corp. v. Vicente*, No. 2:25-cv-01976-JNW (W.D. Wash. filed Oct. 11, 2025)
- *Welty v. Valve Corp.*, No. 2:25-cv-02450-JNW (W.D. Wash. filed Nov. 10, 2025)
- *Gabriel v. Valve Corp.*, No. 2:25-cv-02657-JNW (W.D. Wash. filed Dec. 22, 2025)
- *Valve Corp. v. Irias*, No. 2:26-cv-00698-JNW (W.D. Wash. filed Feb. 27, 2026)
- *Valve Corp. v. Schaefer*, No. 2:26-cv-01806-JNW (W.D. Wash. filed May 26, 2026)

The proposed Consumer Class's case involves only minimal overlapping issues with these cases, some of which currently are on appeal, which primarily concern the arbitrability of individual consumer plaintiffs' claims against Valve or the validity of arbitral rulings. *See Valve Corp. v. Users of Valve's Video Game Platform, Steam*, No. 26-05123 (9th Cir. filed Aug. 11, 2026). Key fact and expert discovery, especially regarding class certification issues, remains outstanding for the proposed Consumer Class and is expected to be unaffected by the resolution of the arbitral issues raised in these cases. Therefore, Plaintiffs propose that this case proceed on an independent schedule from these cases.

Finally, Plaintiffs further identify the following related cases, which use main dockets distinct from this case:

- *Rockman v. Microsoft Corp.*, No. 2:26-cv-01876-JNW (W.D. Wash. filed May 31, 2026)
- *Shimota v. Activision Blizzard, Inc.*, No. 3:26-cv-12291-TSH (N.D. Cal. filed October 21, 2026), originally filed as No. 26-CIV-06739 (Cal. Super. Ct. filed Aug. 27, 2026)

Although the proposed Consumer Class's case involves some overlapping allegations and issues with *Rockman* and *Shimota*, those cases concern different classes with their own injuries, theories

of harm, defendants, and discovery needs. *Rockman* names only Microsoft as a Defendant, not Valve, and articulates a horizontal price-fixing conspiracy theory that differs substantially from the theory of the case pursued by the proposed Consumer Class here. *Shimota*, recently removed to federal court, alleges claims on behalf of a proposed class of California residents exclusively under California law against Valve and ten PC game publishers, articulating horizontal and vertical price-fixing theories that differ substantially from the theory of the case pursued by the proposed Consumer Class here.

To the extent the issues in these cases overlap with those of the Consumer Class, they likely fall within the ambit of the Court's Order Appointing Interim Lead Counsel, *see* Dkt. No. 441 at 11-12, and represent an attempt to circumvent Interim Lead Counsel's strategic decisions.

Microsoft has filed a motion to dismiss and a motion to stay discovery in *Rockman*, both of which remain outstanding. Similarly, *Shimota* was recently removed to federal court, and Valve has indicated its intention to file a motion to transfer the case to this Court. *See* Administrative Mot. at 1, *Shimota*, No. 3:26-cv-12291 (N.D. Cal. Oct. 23, 2026), Dkt. No. 14. Plaintiffs support the proposed transfer. Defendants have not yet responded to the *Shimota* plaintiffs' complaint but have proposed doing so after the forthcoming motion to transfer is decided. *See id.* at 3-4. Neither case has entered discovery or appears likely to enter discovery soon. Meanwhile, key fact and expert discovery, only some of which may arguably be relevant to *Rockman* and/or *Shimota*, remains outstanding for the proposed Consumer Class in this case. Rather than delaying the proposed Consumer Class's case or resolving hypothetical discovery and procedural issues before any dispositive motions have been fully briefed in *Rockman* and *Shimota*, Plaintiffs propose that this case proceed on an independent track from those two cases.

***Valve's Statement.*** Valve agrees that the cases identified by Plaintiffs are related but disagrees with some of Plaintiffs' characterization of these cases.

Regarding *Shimota*, Valve does not agree that it "differs substantially" from this case. The complaint in *Shimota* was brought by two plaintiffs in the *Elliot* action mentioned above, and both are represented by Bucher Law Firm. *Shimota* and the instant case involve similar causes of action,

parties, and facts, and the filing of *Shimota* represents an effort to end-run this Court's appointment of Interim Lead Counsel. These reasons, among others, are why Valve has requested that it be transferred to this District. *See* Mot. to Transfer Case, *Shimota*, No. 4:26-cv-12291 (N.D. Cal. Nov. 20, 2026), Dkt. No. 105.

Regarding *Rockman*, the allegations brought against Microsoft overlap with those here. Although Valve is not named in the Complaint as a Defendant, it too represents an effort by the Bucher Law Firm to circumvent this Court's Interim Lead Counsel appointment order.

In addition, this matter has significant overlap with consumer arbitrations filed against Valve, and the related federal cases listed on Page 10, *supra*. The arbitrations involve a similar core set of factual allegations, witnesses, and theories of harm. Indeed, the class definition articulated by Plaintiffs in this case does not exclude those who have filed arbitrations against Valve.

**D. Discovery Management**

***Plaintiffs' Statement.*** As noted above, Plaintiffs are committed to litigating this case as efficiently as possible. To that end, Plaintiffs propose that the Parties (i) reserve the right to seek leave of the Court at the appropriate time to change the number of depositions pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(i), *see supra* Paragraph 4.E; (ii) share all discovery obtained from third parties; (iii) schedule monthly case management conferences with the Court, to be convened over Zoom, which Plaintiffs' counsel have found helpful, allowing the Court to stay apprised of the Parties' progress and keep the litigation on schedule; (iv) utilize the District's Expedited Joint Motion Procedure for discovery disputes, *see supra* Paragraph 5.A; (v) jointly advise the Court whether the assistance of a Magistrate Judge would be helpful when the Parties are better positioned to participate productively in settlement negotiations or ADR, *see supra* Paragraph 5.B; and (vi) use the Court's Form of Pretrial Order, *see* Local Civil Rule 16.1.

***Valve's Statement.*** Valve does not believe that the Parties need scheduled monthly case management conferences with the Court. Instead, the Parties should schedule such conferences with the Court as needed. Valve otherwise does not oppose Plaintiffs' positions.

### E. Anticipated Discovery Sought

***Plaintiffs' Statement.*** To obtain reasonable discovery on the subjects laid out above, *see supra* Paragraph 4.B, Plaintiffs anticipate seeking discovery from Valve, third-party digital PC game distribution platforms, and third-party digital PC game publishers.

***Valve's Statement.*** To obtain reasonable discovery, Valve anticipates seeking discovery from Plaintiffs and third parties, including but not limited to third parties that publish video games, sell video games, purchase video games, play video games, or are familiar with the video game ecosystem.

### F. Phasing Motions

***Plaintiffs' Statement.*** Plaintiffs anticipate that their proposed discovery plan above represents an efficient phasing of motions. *See supra* Paragraph 4.

***Valve's Statement.*** Valve anticipates that its proposed phased discovery plan above represents an efficient phasing of motions. *See supra* Paragraph 4.

### G. Preservation of Discoverable Information

***Plaintiffs' Statement.*** Plaintiffs request preservation of all data and documents responsive to their anticipated discovery, *see supra* Paragraph 4.B, in accordance with the preservation obligations set forth in the operative ESI protocol (to be amended or supplemented by the Parties), Dkt. No. 110; *see supra* Paragraph 4.C. Consistent with their claims, Plaintiffs have preserved relevant documents, including communications and materials regarding their purchase of digital PC games.

***Valve's Statement.*** Valve requests preservation of all data and documents responsive to its anticipated discovery, *see supra* Paragraph 4.B, in accordance with the preservation obligations set forth in the operative ESI protocol (to be amended or supplemented by the Parties), Dkt. No. 110; *see supra* Paragraph 4.C. Valve is following its preservation obligations for this matter.

### H. Procedures for Handling Inadvertent Production of Privileged Information

***Joint Statement.*** The Parties maintain that the handling of inadvertent production of privileged information shall be subject to those procedures set forth in the Stipulated Protective

Order, Dkt. No. 95, and that any proposed modifications thereto be submitted to the Court no later than December 8, 2026. *See supra* Paragraph 4.D.

**I. ESI Protocols**

***Plaintiffs' Statement.*** Plaintiffs maintain that the case will involve the preservation and production of ESI, consisting of documents and data maintained by the Parties in the ordinary course of business and subject to preexisting preservation obligations related to the Publisher Class's case. Subject to further amendment or supplement, *see supra* Paragraph 4.C, Plaintiffs propose that the Parties adopt a modified version of the Court's Model Agreement Regarding Discovery of Electronically Stored Information in Civil Litigation, *see* Dkt. No. 110.

***Valve's Statement.*** Valve agrees that this case will involve the preservation and production of ESI, including documents and data maintained by the Parties in the ordinary course of business, some of which is subject to preexisting preservation obligations related to the Publisher Class's case. Valve agrees to use the Agreement Regarding Discovery of Electronically Stored Information in Civil Litigation, *see* Dkt. No. 110, and will meet and confer with Plaintiffs on any proposed modifications they seek.

**J. Alternative Treatment of ESI**

***Plaintiffs' Statement.*** Given the Parties' proposal that they adopt the ESI Protocol, Dkt. No. 110, this topic is not applicable. Any proposed modifications to the ESI Protocol, including any protocols to govern the use of Technology-Assisted Review (TAR) or AI in further discovery, will be proposed to the Court by December 8, 2026.

***Valve's Statement.*** As noted above, Valve does not consent to Plaintiffs using Valve data or productions with any AI tool without express written consent from Valve regarding the parameters of such usage.

**K. Schedule for Class Certification**

***Plaintiffs' Statement.*** As set forth in their proposed case schedule, *see supra* Paragraph 4, Plaintiffs plan to move for class certification approximately ten months after the commencement of fact discovery.

Plaintiffs wish to emphasize that this ambitious class certification schedule is *highly dependent* on securing needed transactional data, not yet produced in the case, by February 23, 2027. In the Publisher Class case, as the proposed Consumer Class understands it, Valve produced daily "roll-up" data that summed the results of all sales of all titles sold by each publisher. For certification of a Consumer Class, however, Interim Lead Counsel expect to need "unrolled" data with records of each individual sale. But because the data is expected to be extremely voluminous, Interim Lead Counsel expect that it will require weeks, if not months, of processing to understand and "clean" the data into a form which can be used by Consumer Class experts. Should Valve fail to timely produce transactional data, or should the production be faulty and require modification, an extension of the discovery and briefing schedule will likely be necessary.

***Valve's Statement.*** As set forth in its proposed case schedule, *see supra* Paragraph 4, Valve's proposed schedule for class certification begins with expert class discovery, followed by motions practice. In total, Valve's proposed schedule allows the class phase to conclude roughly nine months after fact discovery ends.

As described above, Plaintiffs' proposed data requests seek the production of nearly twenty years of disaggregated consumer data for *every* purchase on Steam during that time, and the production of nearly a decade of pricing history for *every* PC game, DLC, and in-app product available on Steam. Valve received Plaintiffs' requests for this transactional data for the first time on November 17, 2026. It is simply not possible to meet Plaintiffs' proposed February 23, 2027 production deadline or anything close to it given the enormous volume of data Plaintiffs have requested. Valve remains committed to meeting and conferring on this issue with Plaintiffs and moving forward as efficiently as possible given the scope of the requests.

**6. Discovery Deadline**

***Plaintiffs' Statement.*** Plaintiffs propose that fact discovery shall close approximately nine months after the Court's entry of a scheduling order and that class expert discovery shall close four weeks after Valve's disclosure of its Rebuttal Expert Report(s). *See supra* Paragraph 4. Plaintiffs propose a separate merits expert discovery period following any grant of class certification.

***Valve's Statement.*** Valve proposes that fact discovery shall close approximately six months after it substantially completes the production of its transactional data and that the class expert phase shall end 265 days after the close of fact discovery. Valve proposes a separate merits expert discovery period following any grant of class certification.

**7. Individualized Trial Program**

***Joint Statement.*** The Parties do not believe that the Court's individualized trial program is appropriate for this action.

**8. Other Suggestions for Shortening or Simplifying the Case**

***Joint Statement.*** The Parties propose, following the impending trial in the Publisher Class's case, that they meet and confer as appropriate to discuss whether any issues may be narrowed by stipulation or by motion, as well as any potential means to expedite the presentation of evidence at trial.

**9. Date the Case Will Be Ready for Trial**

***Joint Statement.*** The Parties cannot currently anticipate the date on which this case will be ready for trial, as it will depend in substantial part on the timing of the Court's rulings on class certification and summary judgment as well as the scope of disputed issues at trial. *See supra* Paragraph 4.

**10. Trial Type**

***Joint Statement.*** The Parties request a trial by jury.

**11. Trial Length**

***Plaintiffs' Statement.*** At this stage of the case, when the exact scope of the issues to be tried is not clear, Plaintiffs believe it is premature to project the length of the trial. Plaintiffs therefore propose that the Court request the Parties to estimate the trial length at a later stage, after any ruling on forthcoming motions for class certification and/or summary judgment.

***Valve's Statement.*** Valve does not anticipate that the complexity of the issues to be tried in this case will be materially different from those in the Publisher Class's case. In that case, the parties have agreed to a 50-hour trial, allocating 25 hours per side. Valve believes that this case can be tried

in a similar or shorter duration but believes the Parties can revisit the issue as the case approaches trial.

**12. Names, Addresses, and Telephone Numbers of All Trial Counsel**

Counsel for Plaintiffs

COHEN MILSTEIN SELLERS & TOLL PLLC

Benjamin D. Brown (*pro hac vice*)
Brent W. Johnson (*pro hac vice*)
Robert W. Cobbs (*pro hac vice*)
William Friedman (*pro hac vice forthcoming*)
Nathaniel D. Regenold (*pro hac vice*)
Ezer Smith (*pro hac vice*)
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Tel: (202) 408-4600
bbrown@cohenmilstein.com
bjohnson@cohenmilstein.com
rcobbs@cohenmilstein.com
wfriedman@cohenmilstein.com
nregenold@cohenmilstein.com
esmith@cohenmilstein.com

Christopher J. Bateman (*pro hac vice*)
Daniel Gifford (*pro hac vice*)
88 Pine St., 14th Floor
New York, NY 10005
Tel: (212) 838-7797
cbateman@cohenmilstein.com
dgifford@cohenmilstein.com

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman (WSBA No. 12536)
Sean R. Matt (WSBA No. 21972)
Xiaoyi Fan (WSBA No. 56703)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
steve@hbsslaw.com
sean@hbsslaw.com
kellyf@hbsslaw.com

Ben M. Harrington (*pro hac vice*)
Roxana Moussavian (*pro hac vice*)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Tel: (510) 725-3034
benh@hbsslaw.com
roxana.moussavian@hbsslaw.com

CORRIE YACKULIC LAW LLC

Corrie Yackulic (WSBA No. 16063)
110 Prefontaine Place S., Suite 304
Seattle, WA 98104
Tel: (206) 787-1915
corrie@cjylaw.com

Counsel for Valve

WILKINSON STEKLOFF LLP

Rakesh Kilaru (*pro hac vice*)
James Rosenthal (*pro hac vice*)
Max Warren (*pro hac vice*)
David Friedman (*pro hac vice*)
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
rkilaru@wilkinsonstekloff.com
jrosenthal@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com
dfriedman@wilkinsonstekloff.com

Keri L. Arnold (*pro hac vice*)
Ralia E. Polechronis (*pro hac vice*)
Caroline Li (*pro hac vice*)
130 West 42nd Street, 24th Floor
New York, NY 10036
Tel: (212) 294-8910
karnold@wilkinsonstekloff.com
rpolechronis@wilkinsonstekloff.com
cli@wilkinsonstekloff.com

CORR CRONIN LLP

Blake Marks-Dias (WSBA No. 28169)
1015 Second Avenue, Floor 10
Seattle, WA 98104
Tel: (206) 625-8600
bmarksdias@corrcronin.com

BALLARD SPAHR LLP

Jessica M. Rizzo (*pro hac vice*)
1735 Market Street, Floor 51
Philadelphia, PA 19103
Tel: (215) 665-8500
rizzoj@ballardspahr.com

FOX ROTHSCHILD LLP

Nathan M. Buchter (*pro hac vice*)
Two Commerce Square
2001 Market Street, Suite 1700
Philadelphia, PA 19103
Tel: (215) 299-3010
nbuchter@foxrothschild.com

HOLWELL SCHUSTER & GOLDBERG LLP
Scott M. Danner (*pro hac vice*)
Priyanka Timblo (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
Tel: (646) 837-5151
sdanner@hsgllp.com
ptimblo@hsgllp.com

**13. Scheduling Complications to Be Considered in Setting a Trial Date**

***Joint Statement.*** The Parties are not currently aware of scheduling conflicts in setting a trial date.

**14. Deadline for Corporate Disclosure Statement**

***Joint Statement.*** Valve submitted its corporate disclosure statement on November 6, 2026. *See* Dkt. No. 716.

**15. Deadline to Serve Parties Who Have Not Been Served**

***Joint Statement.*** All parties have been served.

**16. Additional Considerations Under Federal Rule of Civil Procedure 16(c)(2)**

Local Civil Rule 16(a)(1) instructs the Parties attending the Court's Scheduling Conference to be prepared to discuss "those matters listed in Fed. R. Civ. P. 16(c)(2) and 26(f) and LCR 26(f)." The items listed in Fed. R. Civ. P. 26(f) and LCR 26(f) are discussed above. The Parties believe additional considerations listed in Fed. R. Civ. P. 16(c)(2) largely duplicate the material above, are not applicable to this case, or are premature at this stage of the case and should be deferred for later consideration.

Dated: November 24, 2026

Respectfully submitted,

*/s/ Corrie Yackulic*
Corrie Yackulic (WSBA No. 16063)
CORRIE YACKULIC LAW LLC
110 Prefontaine Place S., Suite 304
Seattle, WA 98104
Tel: (206) 787-1915
corrie@cjylaw.com

*Liaison Counsel for the Proposed Consumer Class*

Benjamin D. Brown (*pro hac vice*)
Brent W. Johnson (*pro hac vice*)
Robert W. Cobbs (*pro hac vice*)
William Friedman (*pro hac vice forthcoming*)
Nathaniel D. Regenold (*pro hac vice*)
Ezer Smith (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Tel: (202) 408-4600
bbrown@cohenmilstein.com
bjohnson@cohenmilstein.com
rcobbs@cohenmilstein.com
wfriedman@cohenmilstein.com
nregenold@cohenmilstein.com
esmith@cohenmilstein.com

Christopher J. Bateman (*pro hac vice*)
Daniel Gifford (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
199 Water Street, 21st Floor
New York, NY 10038
Tel: (212) 838-7797
cbateman@cohenmilstein.com
dgifford@cohenmilstein.com

*Interim Lead Class Counsel for the Proposed Consumer Class*

*/s/ Steve W. Berman*
Steve W. Berman (WSBA No. 12536)

*/s/ Sean R. Matt*
Sean R. Matt (WSBA No. 21972)

/s/ Xiaoyi Fan
Xiaoyi Fan (WSBA No. 56703)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
steve@hbsslaw.com
kellyf@hbsslaw.com

Ben M. Harrington (*pro hac vice*)
Roxana Moussavian (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Tel: (510) 725-3034
benh@hbsslaw.com
roxana.moussavian@hbsslaw.com

*Additional Counsel for the Proposed Consumer Class*

WILKINSON STEKLOFF LLP

/s/ Rakesh Kilaru
Rakesh Kilaru, *Admitted Pro Hac Vice*
James Rosenthal, *Admitted Pro Hac Vice*
Max Warren, *Admitted Pro Hac Vice*
David Friedman, *Admitted Pro Hac Vice*
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
Fax: (202) 847-4005
rkilaru@wilkinsonstekloff.com
jrosenthal@wilkinsonstekloff.com
mwarren@wilkinsonstekloff.com
dfriedman@wilkinsonstekloff.com

Keri L. Arnold, *Admitted Pro Hac Vice*
Ralia E. Polechronis, *Admitted Pro Hac Vice*
Caroline Li, *Admitted Pro Hac Vice*
WILKINSON STEKLOFF LLP
130 West 42nd Street, 24th Floor
New York, New York 10036
Tel: (212) 294-8910
Fax: (202) 847-4005
karnold@wilkinsonstekloff.com
rpolechronis@wilkinsonstekloff.com
cli@wilkinsonstekloff.com

*/s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
Eric A. Lindberg, WSBA No. 43593
Todd T. Williams, WSBA No. 45032
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, WA 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com
elindberg@corrcronin.com
twilliams@corrcronin.com

Jessica M. Rizzo, *Admitted Pro Hac Vice*
BALLARD SPAHR LLP
1735 Market Street, Floor 51
Philadelphia, PA 19103
(215) 665-8500 (Phone)
(215) 864-8999 (Fax)
rizzoj@ballardspahr.com

Nathan M. Buchter, *Admitted Pro Hac Vice*
FOX ROTHSCHILD LLP
Two Commerce Square
2001 Market Street, Suite 1700
Philadelphia, PA 19103
Tel: (215) 299-3010
nbuchter@foxrothschild.com

Scott M. Danner, *Admitted Pro Hac Vice*
Priyanka Timblo, *Admitted Pro Hac Vice*
HOLWELL SCHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151 (Phone)
sdanner@hsgllp.com
ptimblo@hsgllp.com

*Attorneys for Defendant Valve Corporation*